## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SANHO CORPORATION,

                Plaintiff,

    v.

KAIJET TECHNOLOGY
INTERNATIONAL LIMITED, INC., and
KAIJET TECHNOLOGY
INTERNATIONAL CORPORATION,
INC., doing business as "J5Create"; and
DOES 1-10,

                Defendants.

C.A. No. 1:18-cv-05385-SDG

**Jury Trial Demanded**

## THIRD AMENDED COMPLAINT

COMES NOW Plaintiff SANHO CORPORATION ("Plaintiff"), by and

through its undersigned counsel, and files this Third Amended Complaint against

Defendant KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., and

KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC., doing

business as J5Create and DOES 1-10 (collectively "Defendant" or "Kaijet"),

averring as follows:

//

## **INTRODUCTION**

1.      This action arises from defendant Kaijet's unlawful infringement and counterfeiting of plaintiff Sanho Corporation's intellectual property in contravention of federal law and Georgia law.

2.      Plaintiff is a small business –  a computer electronics business – headquartered in Fremont, CA.  Plaintiff has invested substantial resources in the creation and invention of its products for its business, including, but not limited to, the multi-function docking station at-issue in this case, known as the HYPERDRIVE product.

3.      As forth below, defendant Kaijet has unfairly and unlawfully copied and infringed upon Sanho's intellectual property rights, attempted to palm-off counterfeit goods in an attempt to trick and deceive consumers, intended to interfere with Plaintiff's economic advantage and contracts, and misappropriate Plaintiff's intellectual property.  This conduct by Defendant constitutes unfair competition and must be restrained. Plaintiff has suffered and continues to suffer harm as a result of Defendant's unfair business practices.  Accordingly, Plaintiff prays for monetary and injunctive relief, as set forth herein.

//

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

5.      This Court has personal jurisdiction over the Defendant because, among other things, defendants reside within this judicial district and the acts of infringement complained of herein occurred in the State of Georgia and in this judicial district.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b),(c), 1400(a),(b).

## THE PARTIES

7.      Plaintiff is a Delaware corporation with its principal place of business in Fremont, CA.

8.      Defendant Kaijet Technology International Limited, Inc. ("Kaijet US"), doing business as j5Create, is a Delaware corporation with its headquarters in Kennesaw, Georgia.   Kaijet US was formed by Kaijet Taiwan, Steven Liao, and Jessica Liao for the purpose of selling products, such as the accused devices in this case, within the United States including in Georgia.

9.      Defendant Kaijet Technology International Corporation, Inc. ("Kaijet Taiwan"), doing business as j5Create, is a Taiwanese business entity.

10.    Kaijet Taiwan operates through a physical office located in Georgia, in which State its officers and directors also operate on the ground in Georgia.

11.    There is such unity of interest and ownership that separate personalities of Kaijet US and Kaijet Taiwan no longer exist and failure to disregard their separate identities would result in fraud and/or injustice.  For example, officers, directors, and the shareholders or owners of the defendant entities are the same, and these overlapping individuals exercise control over the internal affairs and/or daily operations of both entity defendants and profit from the infringement.  Alter ego liability is appropriate.

12.    Kaijet US makes no distinction between Kaijet US and Kaijet Taiwan conducting operations, for example, when using the j5 logo in connection with the manufacturing, marketing, sale, and offering for sale of j5create products.  Both Kaijet entities operate under the trade name "j5".  There are no bonafide written contracts between the defendants as they are essentially one and the same.

13.    Kaijet US describes Kaijet US and Kaijet Taiwan operations to its potential and actual customers as if such operations were conducted by a single entity.  Kaijet US holds itself out, as a single, unified entity with Kaijet Taiwan.

14.     Kaijet US and Kaijet Taiwan conduct activities in the United States and Georgia through its subsidiaries and affiliates.  On information and belief, Kaijet US is not adequately capitalized.

15.     Kaijet US and Kaijet Taiwan, and at all relevant times, were acting in concert in their conduct and activities in the United States, abroad, and in the State of Georgia, aiding and abetting one another in the scheme.

16.     The overlapping officers, directors, and owners of Kaijet US and Kaijet Taiwan directly exercise control over the conduct of Kaijet US, and vice versa, and directly control affiliated business entities in Europe, Canada, and elsewhere abroad.

17.     Upon information and belief, Steven Liao and Jessica Liao, are family members, and are the owners, officers, directors, and/or managers of Kaijet US and Kaijet Taiwan.

18.     Upon information and belief, at all times relevant hereto, Kaijet US and Kaijet Taiwan were acting in unison, and/or as the agents, ostensible agents, employees, servants, partners, aiders and abettors, co-conspirators, and/or joint venturers of one another, and in performing the acts and course of conduct set forth herein, defendants were acting within the course and scope of such agency or employment, and defendants controlled, approved, ratified, permitted, condoned

and/or affirmed the acts and course of conduct set forth herein.  Both defendants operated within the United States, and in Georgia, to infringe Plaintiff's intellectual property.

19.    Further, Kaijet US and Kaijet Taiwan, through their owners, officers, directors, and affiliates, jointly crafted and executed a plan to unlawfully exploit the consumer markets in the United States and in the State of Georgia, including specifically targeting Plaintiff and intending to disrupt Plaintiff's economic advantage in an unfair manner, and Kaijet Taiwan performed several overt acts in furtherance of their plan within the State of Georgia, including delivery of the accused products, and aiding and abetting the same, within the United States and in Georgia.

20.    Defendant, including Kaijet Taiwan, was aware at all times aware that its activities would cause infringing product to be delivered and sold within the United States and in Georgia.

21.    Kaijet US claims that Kaijet Taiwan, *inter alia*, is responsible for conduct that was alleged in Plaintiff's Second Amended Complaint, including but not limited to the development, design, manufacture, sale, and import of the infringing products into and delivery throughout the United States and the State of Georgia.

22.    Kaijet US and Kaijet Taiwan both directed and participated in the marketing, sale, and offer for sale of their infringing products at Best Buy Stores and other retail outlets in the United States, abroad, and in the State of Georgia, aiding and abetting the same in addition to direct infringement by each defendant.

23.    Kaijet US and Kaijet Taiwan specifically targeted Plaintiff's patented, copyrighted, and trademarked intellectual property in the United States and in the State of Georgia in order to engage in unfair competition.

24.    The objective of Defendant's plan was to willfully infringe on Plaintiff's intellectual property, harm Plaintiff's market share, and economic advantage, and unlawfully palm Plaintiff's property off to consumers in the marketplace, specifically in Georgia and both defendant entities took action in furtherance of this illegal conduct and scheme.

25.    Kaijet US and Kaijet Taiwan had a mutual understanding that they will accomplish the plan's unlawful objective.

26.    Kaijet US and Kaijet Taiwan are co-conspirators, and aiding and abetting one another and the scheme, in carrying out the acts to violate the Patent Act and other intellectual property laws at issue in this complaint as set forth below.

27.    Kaijet Taiwan knew or should have known that its activities in furtherance of the plan would have an effect in the United States and in the State of Georgia.

28.    Plaintiff does not know the true names and capacity of defendants sued herein as DOES 1-10, and therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes, and on the basis of that information and belief alleges, that each of the defendants was in some manner legally responsible for the events and happenings alleged in this complaint and for Plaintiff's damages.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

## THE CONTROVERSY

29.    Plaintiff has invested substantial money, resources, and time in the creation and invention of its products.

30.    Plaintiff, on or around December 5, 2016, released the "HYPERDRIVE" product, which is a multi-function docking station.

31.    Plaintiff is the assignee of United States Patent No. US D813,875 S (the "875 Patent"), which is a design patent embodying the HYPERDRIVE invention. Plaintiff owns all right, title and interest in the '875 Patent.  A true and correct copy of the 875 Patent is attached hereto as **Exhibit A**.  Plaintiff is also the

assignee of United States Patent No. US D855,616 S (the "616 Patent"), which is a design patent embodying the HYPERDRIVE invention.  Plaintiff owns all right, title and interest in the '616 Patent.  A true and correct copy of the '616 Patent is attached hereto as **Exhibit E**.

32.    The packaging containing the HYPERDRIVE is the subject of a United States copyright registration.  The effective date on the registration is May 4, 2018.  Plaintiff owns all right, title, and interest to the copyright registration.  A true and correct copy of the registration and packaging of the HYPERDRIVE is attached hereto as **Exhibit B**.

33.    The U.S. Patent and Trademark Office determined that trademark registration number 5,442,707 for "HYPERDRIVE" met all requirements for federal registration and issued a Certificate of Registration, with a registration date of April 10, 2018, to Plaintiff Sanho Corporation for the HYPERDRIVE trademark.  A true and correct copy of the Trademark Electronic Search System (TESS) record for the registration of the HYPERDRIVE trademark is attached hereto as **Exhibit C**.

34.    Plaintiff has invested substantial resources in its intellectual property, business, and goodwill relating to the HYPERDRIVE, its brand reputation,

trademarks, trade dress, patents, and copyrights relating to the invention and product.

35.     Plaintiff's public release of the HYPERDRIVE product received significant acclaim, and was widely disseminated and reported to the public, for instance, throughout the media.  Plaintiff successfully raised and was the recipient of more than $3.1M through Indiegogo, Inc., an international crowdfunding website, and also through Kickstarter.com, "the world's largest funding platform for creative projects." Plaintiff presented the HYPERDRIVE at numerous trade shows, including, but not limited to the Consumer Electronics Show in Las Vegas, NV, and the product was featured and widely acclaimed throughout the media and press, having garnered and earned a level of fame, secondary meaning, and distinction.  As a result, Plaintiff has built and amassed a loyal following of a significant group of consumers who seek out and purchase Plaintiff's products including specifically the HYPERDRIVE and related products.

36.     HYPERDRIVE started shipping in or around January 2017.  Notably, Plaintiff had been using the Hyper and HYPERDRIVE mark on its products in commerce, which had gained secondary meaning, with regard to the quality, warranties, and affiliation with the Sanho and HYPERDRIVE brand names in the marketplace.

37.    On or around October 2017, and earlier, Defendant Kaijet copied, misappropriated, and began selling counterfeit versions of the HYPERDRIVE, which it labeled deceptively the "ULTRADRIVE."  Defendant targeted Plaintiff and obtained access to the product through the wide dissemination, and media that stemmed from the demand for Plaintiff's invention, hard-work, creativity, investments, marketing efforts, including the anticipation of a significant group of consumers, who were intending to purchase HYPERDRIVE from Plaintiff.

38.    Defendant intended to interfere with Plaintiff's rights and economic advantage, by attempting to trick consumers into purchasing a counterfeit product which purported to be the same, labeled as "ULTRADRIVE," which Defendant had intentionally counterfeited, labeled, and packaged in a confusing manner to resemble the HYPERDRIVE, intentionally in order to deceive consumers who believed that they were purchasing a genuine version of the "HYPERDRIVE." Defendant's product misappropriated, *inter alia*, the overall design, including the 2 USB-C input connectors and shape, among other features as set forth below.  To make matters worse, Defendants also copied the packaging of Plaintiff's product – for example, Defendants copied the product and packaging, including, but not limited to, the following:

a.    <u>On the front of Packaging</u>:

- Similar expression of idea

- Similar total concept and feel

- Similar sounding product name, "UltraDrive" vs "HYPERDRIVE"

- Same product brand name placement on top left corner

- Similar product window cutout on the front left of the box

- Similar product description below the product window cutout

- Same image of MacBook Pro on the front right of the box

- Same call outs to "4K HDMI" and "50Gbps" speed

- Similar orange color highlights

- Similar placement of components

- Text and placement of the text on packaging

b.    On the back of Packaging:

- Similar expression of idea

- Similar total concept and feel

- Similar product image with 13" MacBook Pro on the back top of the box

- Similar product description below the product image

- Similar placement of components

- Text and placement of the text on packaging

*See* attached **Exhibit D**.

39.    The HYPERDRIVE and ULTRADRIVE involve the same type of artwork and design on multi-function docking station boxes or packaging, both utilize the same materials, and both occur in the same commercial setting.

40.    There is a substantial likelihood that the counterfeit products have caused, or will cause confusion among Plaintiff's current and future customers.

41.    Defendant has no authorization, excuse or justification for counterfeiting the product.

42.    Defendants intentionally copied the image, form, and design of Plaintiff's product in order to misappropriate Plaintiff's ideas, inventions, efforts, investments, and assets, to seek unjust enrichment, and to trick consumers into believing that the source of the product was plaintiff Sanho Corporation.

43.    As a result of Defendant's conduct, Plaintiff is suffering irreparable harm.  Plaintiff's third party relationships are being interfered with along with loss of market share and sale of related products.  Additionally, Plaintiff has suffered financial losses and injury to its intellectual property and goodwill.  Plaintiff's injuries include, but are not limited to, increased marketing and advertising costs, research and development costs, time, and lost market share, revenue and profits

that would have been realized but for Defendant's conduct.  Defendants have also sold inferior products, causing further harm to Plaintiff, its goodwill, its brand reputation, and continue to threaten to cause irreparable harm on an ongoing basis including during the pendency of this lawsuit.

44.    Defendant specifically targeted Plaintiff and its economic relationship intending to interfere with Plaintiff's economic advantage, and the contract between Plaintiff and Best Buy, as well as interfere with the relationship between Plaintiff and its customers, as well as Plaintiff's economic rights and its fair market share.  Defendant actually interfered with said contracts and relationships, through unlawful methods, including infringement and unfair business practices, that caused actual disruption to Plaintiff's economic advantage and contractual and economic relationships.

45.    On information and belief, on or around 2017, Defendant falsely represented to Best Buy that its products did not infringe any third party intellectual property, even though Defendant had knowledge that it had copied the HYPERDRIVE product and its packaging, from Plaintiff.

46.    Defendant advertises, sells, and offers for sale the infringing product within this judicial district.

47.    Defendant unlawfully copied Plaintiff's product and packing, knowing that the injury to Plaintiff would occur within this judicial district.

48.    As set forth herein, in and around 2017, it came to Plaintiff's attention that Defendant and/or its agents had advertised, sold, and offered for sale products embodying the 875 Patent and 616 Patent and furthermore that Defendant and/or its agents had copied Plaintiff's copyrighted packaging with respect to Plaintiff's multi-function docking station product known as the HYPERDRIVE.  Plaintiff has notified Defendant of the particular aspects of its infringement, but Defendant has maliciously, oppressively, and fraudulently continued its counterfeiting including after the filing of the original complaint, ignoring Plaintiff's demands and has further infringed and continues to infringe the HYPERDRIVE trademark used on the HYPERDRIVE through its deceptive labeling of and on the ULTRADRIVE.

49.    Defendant does not have any license, authorization, permission or consent to use Plaintiff's packaging, trademark, copyrights, patents, or intellectual property.

50.    On or around November 20, 2017, Plaintiff sent written notice to Defendant regarding Defendant's infringement and demanded that Defendant immediately cease and desist.  In or around 2018, Defendant refused to cease and desist from its infringing activities and refused to respond to a complaint filed in

the Northern District of California based on jurisdictional grounds and without any

legitimate justification for its infringement.

51.    Defendant has and continues to refuse to cease and desist.  Defendant

asserted meritless and frivolous technical excuses – such as challenges to

jurisdiction – instead of substantive reasons why it was not required to stop its

unlawful infringement of Plaintiff's intellectual property, and Defendant has

continued to infringe and trample upon Plaintiff's intellectual property rights in a

manner that constitutes unfair competition.  Defendant continued to offer its

infringing counterfeit product online, and Defendant continues to sell the

infringing product at Best Buy locations.

52.    Indeed, Plaintiff is entitled to injunctive relief and redress for

Defendant's willful, intentional and purposeful use and exploitation of Plaintiff's

intellectual property with full knowledge that such use constitutes infringement of,

and is in disregard of, Plaintiff's rights, also constituting unfair business practices.

Without preliminary injunctive relief, Defendant will be allowed to violate the

intellectual property rights of Plaintiff during the pendency of this lawsuit.

53.    Defendant's conduct caused Plaintiff irreparable harm.  Defendant's

conduct also caused lost profits, price erosion, lost sales of other products, and has

deprived Plaintiff of the capacity to control its own reputation since the infringing

product is less well made than Plaintiff's product. Furthermore, by selling the infringing product, Defendant has interfered with Plaintiff's business relationships and has unlawfully misappropriated and converted Plaintiff's intellectual property to its own being unjustly enriched through its unfair and unlawful – indeed intentional – conduct. The harm includes, in addition, some categories of irreparable harm which may be difficult to calculate.

54.     Plaintiff's general losses and damages exceed $75,000.

## CLAIMS FOR RELIEF

### COUNT I
**(Infringement of United States Design Patent No. D813,875 S and United States Patent No. US D855,616 S)**
**(35 U.S.C. § 271, *et seq.*)**

55.     Plaintiff incorporates by reference the allegations contained in paragraph 1-38 above.

56.     Plaintiff provided actual notice to Defendant of its infringement, including without limitation the filing of the original complaint in the Northern District of California in 2018. An additional cease and desist letter was sent to the defendants on November 12, 2019. Notice was provided to Defendants through numerous other means.

57.     In spite of such repeated notices, Defendant has engaged in a pattern of conduct demonstrating: Defendant's awareness of the 875 Patent and the 616

Patent; the objectively high likelihood that Defendant's actions constitute direct and indirect infringement of the valid and enforceable 875 Patent and 616 Patent; and that this objectively-defined risk was so obvious that Defendant knew or should have known it.

58.    Defendant has infringed and continues to infringe the 875 Patent and 616 Patent by, *inter alia*, making, using, offering to sell, or selling in the United States, including in the State of Georgia, within this District, and in California, among other places, products infringing the 875 Patent and the 616 Patent in violation of 35 U.S.C. § 271, *et. seq.*, including but not limited to Defendant's making, using, offering for sale and sale of the infringing "ULTRADRIVE" products and inducing infringement of the patents in suit.

59.    Defendant infringes the 875 Patent and 616 Patent because, *inter alia*, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design of the 875 Patent and 616 Patent and the design of the ULTRADRIVE are substantially the same, the resemblance being such as to deceive or confuse such an ordinary observer, inducing him to purchase on supposing it to be the other.  For example, the ULTRADRIVE shown below (the bottom picture) appears to be the same or substantially the same as the embodiment of the 875 Patent (top picture), and the same or substantially the same

as the embodiment of the 616 Patent (middle picture), in the eye of an ordinary observer, and therefore constitutes infringement of the design patents:





FIG. 4



60.    Defendant's blatant acts of infringement of the 875 Patent and 616 Patent is willful, and as shown, was undertaken without any authority, permission or license from Plaintiff.  Defendant's infringing activities violate 35 U.S.C. § 271.

61.    Defendant's infringement has damaged and continues to damage and injure Plaintiff.  The injury to Plaintiff is irreparable and will continue unless and until Defendant is enjoined from further infringement.

62.    Plaintiff is entitled to a complete accounting of all revenue and profits derived by Defendant from the unlawful conduct alleged herein, as well as, a preliminary and permanent injunction, and Defendant's total profit and/or statutory damages pursuant to 35 U.S.C. § 289.

63.    Defendant has engaged and is engaged in willful and deliberate infringement of the 875 Patent and 616 Patent.  Such willful and deliberate infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285.

64.    Plaintiff is entitled to a permanent injunction preventing Defendant from further infringing the 875 Patent and 616 Patent.

//

## COUNT II
**(Trademark Infringement Under Lanham Act § 32)**
**(15 U.S.C. 1114)**

65.     Plaintiff incorporates by reference the allegations contained in paragraph 1-45 above.

66.     The U.S. Patent and Trademark Office determined that Plaintiff's trademark for the "HYPERDRIVE" mark, registration number 5,442,707 (the "707 Mark"), met all requirements for federal registration and issued a Certificate of Registration to Plaintiff Sanho Corporation for the trademark.  *See* Exhibit B.

67.     Plaintiff use of the 707 Mark occurred prior to the use by Defendant.

68.     Defendants have been manufacturing, importing, selling, distributing, and otherwise marketing in interstate commerce, similar products infringing the 707 Mark.

69.     Defendant's purpose and intent in infringing the mark was and is to deceive customers.

70.     Defendants have committed and, unless enjoined by this Court, will continue to commit the infringing acts alleged above, with full knowledge of Plaintiff's prior rights in the trademark, with willful and intentional disregard of Plaintiff's rights.

71.     Defendant's use of the infringing marks as described above has

caused and, unless enjoined by this Court, will continue to cause confusion in the mind of customers as to the relationship or affiliation between the parties.

72.    Defendant's use of the ULTRADRIVE name comprises an infringement of Plaintiff's registered trademark of the 707 Mark, and is likely to cause confusion, mistake and deception of the pubic as to the identity an origin of Plaintiff's goods.

73.    By reason of Defendants' acts and practices in violation of Section 32 of the Lanham Act as set forth above, Plaintiff has suffered and will continue to suffer injury and damages.

74.    By reason of Defendant's conduct, Defendant has caused and, unless such acts and practices are enjoined by the Court, will continue to cause immediate irreparable harm to Plaintiffs for which there is no adequate remedy at law.

## COUNT III
**(Unfair Competition Under Lanham Act § 43(a))**
**(15 U.S.C. 1125(a))**

75.    Plaintiff repeats and hereby incorporates herein by reference, as though specifically pleaded herein, the allegations of the preceding paragraphs.

76.    The 707 Mark has become uniquely associated with and identifies Plaintiff as the source for the HYPERDRIVE as well as the packaging for the product.

77.    Defendant's use of the ULTRADRIVE name is a deliberate and willful effort to deceive, mislead, and confuse consumers to enable Defendant to trade-off of Plaintiff's reputation and goodwill in the HYPERDRIVE by infringing on the 707 Mark and trade dress.  Defendant, as set forth herein, is also infringing the HYPERDRIVE packaging in a manner that constitutes copyright infringement, in addition to the patent infringement, described above.

78.    Defendant's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act.

79.    By reason of Defendant's conduct, Plaintiff has suffered and will continue to suffer damage to their business, reputation and goodwill.

80.    By reason of Defendant's conduct, Defendant has caused and, unless enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law.

81.    Plaintiff is entitled to a preliminary injunction to be made permanent upon entry of final judgment, preventing Defendant's conduct.

## COUNT IV
### (Copyright Infringement)
### (17 U.S.C. §§ 106 and 501)

82.    Plaintiff re-alleges and incorporates by reference all paragraphs of this Complaint.

83.     Through their conduct averred herein, Defendant has infringed Plaintiff's copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

84.     Defendant had access to Plaintiff's work, including, but not limited to, through the widely disseminated news and attention regarding the HYPERDRIVE.

85.     The two works (the packaging of the HYPERDRIVE and the packaging of the ULTADRIVE) are "substantially similar." *See* ¶ 19; Exhibit D.

86.     Defendant copied, *inter alia*, the expression, subject matter, shapes, colors, materials, and arrangement of the representation protected by Plaintiff's copyright.

87.     Defendant has actually copied Plaintiff's work; and the copying is illegal because a substantial similarity exists between the Defendant's work and Plaintiff's.

88.     The effect of Defendant's conduct is one of substantial duplication and appropriation of Plaintiff's expression.

89.     Defendant's acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

90.     As a direct and proximate result of said infringement by Defendant, Plaintiff is entitled to damages, including, but not limited to, statutory damages, as

well as other damages permitted under the Copyright Act, in an amount to be proven at trial.

91.    Plaintiff is also entitled to Defendant's profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

92.    Plaintiff further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

93.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediately, and irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed and believed and on that basis avers that unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiff's rights.  Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct.

### COUNT V
**(Violation of Georgia's Uniform Deceptive Trade Practices Act)**
**(O.C.G.A. § 10-1-370, *et. seq.*)**

94.    Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 74 of this Complaint as if fully set forth herein.

95.    This count is for intellectual property infringement and unfair competition and deceptive trade practices under Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et. seq*.

96.    The knowingly and willful misappropriation and use by Defendant of Sanho's multi-function docking station packaging, trade dress, and the copyright, trademark, and patent relating thereto, in the State of Georgia, for the accused product, constitutes a deceptive trade practice in violation of O.C.G.A. § 10-1-372(a)(1)-(3), (5).  As a result Plaintiff has suffered harm including lost profits.

97.    By Defendant's conduct, including but not limited to its unauthorized misappropriation of Plaintiff's HYPERDRIVE invention and product, Defendant will unfairly receive the benefit of Plaintiff's rights under the law, and goodwill achieved over time and at great labor and expense by Plaintiff. Defendant's use of Plaintiff's HYPERDRIVE will unjustly enrich Defendant and will place Plaintiff's valuable reputation and goodwill in the hands of Defendant, over whom Plaintiff has no control.

98.    Defendant's use of Plaintiff's HYPERDRIVE causes a likelihood of confusion or of misunderstanding as to the source of Defendant's goods, or a likelihood of confusion or of misunderstanding as to the sponsorship, approval, or certification of Defendant's goods by Plaintiff.

99.    Defendant's activities cause a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with Plaintiff, and a likelihood of confusion or of misunderstanding as to the certification by Plaintiff of Defendant's goods.

100.    Defendant's conduct is comprised of violations of O.C.G.A. § 10-1-372, including violation of subsec. (a)(1) for passing off goods or services as those of another; violation of subsec. (a)(2) for causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; violation of subsec. (a)(3) for causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; and violation of subsec. (a)(5) for representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have.

101.    Defendant's infringement was, and continues to be, willful, and intended to cause harm to Plaintiff including irreparable harm and disruption of Plaintiff's economic rights and third party relationships.

102.    Defendant will, if not enjoined by this Court, continue its acts of infringement and deceit set forth above, which acts have caused, and will continue to

cause, Plaintiff immediate and irreparable harm. Pursuant to O.C.G.A. § 10-1-373, Plaintiff is entitled to an Order of this Court enjoining Defendant's unlawful activities. Plaintiff has no adequate remedy at law.

103.    As a result of Defendant's conduct set forth above, Plaintiff has been, and continues to be, irreparably damaged. Pursuant to O.C.G.A. § 10-1-373, Plaintiff is entitled to a judgment for, among other things: (1) injunctive relief; (2) for such sum as the Court deems just; and (3) Plaintiff's attorney's fees and costs of this action.

### COUNT VI
### (Unfair Competition)
### (O.C.G.A. § 23-2-55)

104.    Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

105.    Defendant's unauthorized use of Plaintiff's patent and the HYPERDRIVE, its packaging, design, and marking, is likely to cause confusion, to cause mistake, or to deceive purchasers and customers as to the source, origin, affiliation, or sponsorship of Defendant. The consuming public is likely to believe Defendant's product originates from, or is sponsored or affiliated with, the source of products bearing Plaintiff's marks and designs, and that Defendant's use of

Plaintiff's intellectual property is authorized when, in fact, Defendant has no such authorization.

106.   Defendant's unauthorized use of imitations of Plaintiff's inventions and marks and copyright registrations has been intentionally, deliberately, willfully, and wantonly undertaken with a view and purpose of trading on and benefiting from the substantial reputation and goodwill associated with Plaintiff's products.

107.   Defendant's conduct constitutes unfair competition in violation of O.C.G.A. § 23-2-55 and the common law of the State of Georgia.

108.   As a direct and proximate result of Defendant's unlawful conduct, as herein alleged, Plaintiff has suffered irreparable damage and inherently unquantifiable injury and harm to its businesses, reputation, and customer goodwill. Such conduct has caused Defendant to achieve sales and profits to which it is not entitled.

109.   Defendant's conduct has caused substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief, Defendant's profits, and Plaintiff's actual damages, costs, and reasonable attorneys' fees.

110.  The acts of Defendant complained of herein showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise

the presumption of conscious indifference to the consequences of those actions, and thus form a basis for punitive damages under O.C.G.A. § 51-12-5.1(b).

**COUNT VII**
**COMMON LAW MISAPPROPRIATION AND UNFAIR COMPETITION**

111.    Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 91 of this Complaint as if fully set forth herein.

112.    The Defendant's aforesaid acts constitute misappropriation of Plaintiff's trademarks, trade dress, copyrights, patent, and goodwill and are in violation of Georgia's Common Law of Unfair Competition since the Defendant's infringement of the HYPERDRIVE is likely to cause confusion, mistake, and/or deception.

113.    Defendant's conduct described herein is intentional and willful.

114.    Plaintiff reserves its right to proffer evidence and seek an award of punitive damages.

115.    Plaintiff has already suffered substantial damages as a result of the Defendant's acts of misappropriation and unfair competition.  Absent entry of an injunction by this Court, Plaintiff will continue to suffer irreparable injury including the loss of related product sales, disruption of its business relationships, and further injury to its brand, goodwill, and reputation.

//

## COUNT VIII

### PUNITIVE DAMAGES

116.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 96 of this Complaint as if fully set forth herein.

117.   The tortious conduct described herein was committed by Defendants, and each of them, intentionally, willfully, maliciously, wantonly, and with utter disregard to the consequences to Plaintiff.  Because Defendants have acted with specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

118.   In addition to full compensatory damages and all other relief sought herein, Plaintiff is entitled to an award of punitive damages against Defendants, and each of them, in an amount to be determined by the enlightened conscience of the jury sufficient to deter Defendants from engaging in such conduct in the future. Defendant's infringement has at all times been willful and continued despite notice from Plaintiff, continuing through the date of filing of this this amended complaint, after notice to Defendant.  Defendant intended to cause the harm.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendants  as follows:

1.     That judgment be entered in favor of Plaintiff against Defendant;

2.     That Defendant(s) be declared to have infringed, induced others to infringe, and/or committed acts of contributory infringement, with respect to the claims of the subject U.S. Patents;

3.     That Defendant(s), their officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, successors, and all others in active concert or participation with them or acting on their behalf be preliminarily, and permanently, enjoined from further infringement of the subject U.S. Patents;

4.     That Defendants, their officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, successors, and all others in active concern or participation with them or acting on their behalf be preliminarily and permanently enjoined from:

   a.  Using the 707 Mark, or any colorable imitation thereof;

   b.  Using any trademark that imitations or is confusingly similar to or in any way similar to the 707 Mark, or that is likely to cause confusion, mistake,

deception, or public misunderstanding as to the origin of Plaintiff's products

or their connectedness to Defendants; and

c.  Engaging in any trade practices whatsoever, including those complained

of herein, which tend to unfair compete with or injure Plaintiff's business

and the goodwill associated therewith;

5.    That Defendant be required to file with the Court and serve on Plaintiff

within thirty (30) days after entry of the Injunction, a report in writing under oath

setting forth in detail the manner and form in which Defendant has complied with

the Injunction;

6.    That, pursuant to 15 U.S.C. § 1117, Defendant be held liable for all damages

suffered by Plaintiff resulting from the acts alleged herein;

7.    That, pursuant to 15 U.S.C. § 1117, Defendants be compelled to account to

Plaintiff for any and all profits derived by it from its illegal acts complained of

herein;

8.    That the Defendants be ordered pursuant to 15 U.S.C. § 1118 to deliver up

for destruction all containers, labels, signs, prints, packages, wrappers, receptacles,

advertising, promotional material or the like in possession, custody or under the

control of Defendant bearing a trademark found to infringe Plaintiff's trademark

rights;

9.      That this matter be declared an "exceptional case" pursuant to 15 U.S.C. §

1117, and that said Defendant be ordered to pay Plaintiff's attorney fees and costs;

10.     That Plaintiff be awarded compensatory, lost profits, and special damages

for the infringement in an amount to be determined at trial; the extent of

Defendant's total profit and revenue realized and derived from its infringement of

the '857 patent, and actual damages to Plaintiff in an amount not less than a

reasonable royalty for Defendant's infringement and/or as provided pursuant to 35

U.S.C. § 289;

11.     Treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful and

deliberate infringement, and as permitted under other applicable laws;

12.     An award of costs together with Plaintiff's reasonable attorney's fees

pursuant to 35 U.S.C. § 285 for this case being exceptional, and as permitted under

other applicable laws;

13.     That Plaintiff be awarded an injunction and damages pursuant to all

available remedies for copyright infringement, including, but not limited to, actual

damages and profits and/or statutory damages, costs, and attorney's fees;

14.     For restitution;

15.     That Plaintiff be awarded punitive damages;

16.   That the Court otherwise award Plaintiff enhanced damages and attorneys' fees;

17.   That Plaintiff be awarded pre-judgment interest;

18.   For any statutory damages or penalties;

19.   For an accounting of, and the imposition of a constructive trust with respect to, Defendant's profits attributable to their infringements of intellectual property; and

20.   For such other and further relief as the Court may deem just and proper.

WHEREFORE, a demand for jury trial is made.


Respectfully submitted,

Dated: November 14, 2019

**ARI LAW, P.C., and,**
**HILL, KERTSCHER & WHARTON, LLP**

**HILL, KERTSCHER & WHARTON, LLP**

By: /s/ Steven G. Hill
STEVEN G. HILL, GA Bar No. 354658
MARTHA L. DECKER, GA Bar No. 420867
3350 Riverwood Parkway, Suite 800
Atlanta, Georgia 30339
Telephone: (770) 953-0995
Facsimile: (770) 953-1358
Email:      sgh@hkw-law.com
                md@hkw-law.com

**ARI LAW, P.C.**
ALI A. AALAEI, *admitted pro hac vice*
California State Bar No. 254713
90 New Montgomery St., Suite 900
San Francisco, CA 94105
Tel:  415-830-9968
Fax:  415-520-9456
Email:     ali@arilaw.com


Attorneys for Plaintiff
SANHO CORPORATION

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SANHO CORPORATION,

                    Plaintiff,

    v.

KAIJET TECHNOLOGY
INTERNATIONAL LIMITED, INC., and
KAIJET TECHNOLOGY
INTERNATIONAL CORPORATION,
INC., doing business as "J5Create"; and
DOES 1-10,

                    Defendants.

C.A. No. 1:18-cv-05385-SDG

**Jury Trial Demanded**

## CERTIFICATE OF SERVICE

I certify that on the 14th day of November 2019, I caused to be electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following participants and law firm who are registered CM/ECF users, and will be served by the CM/ECF system.

Bob Carlson
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
bob@leehayes.com

Robert A. Madayag, III
Ryan P. Gentes
LEE & HAYES, P.C.
1175 Peachtree Street, NE
100 Colony Square, Suite 2000
Atlanta, Georgia 30361
RobM@leehayes.com
Ryan.Gentres@leehayes.com

This 14th day of November,

By: */s/* Steven G. Hill
STEVEN G. HILL
GA Bar No. 354658
*Counsel for Sanho Corporation*

THIRD AMENDED COMPLAINT, 1:18-CV-05385-SDG