# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>     Plaintiff,<br><br> v.<br><br>KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC., and<br>KAIJET TECHNOLOGY<br>INTERNATIONAL CORPORATION,<br>INC., doing business as "j5create"; and<br>DOES 1-10,<br><br>     Defendants. | C.A. No. 1:18-cv-05385-SDG<br><br>**Jury Trial Demanded** |

### Sanho Corporation's Brief in Support of Motion for Preliminary Injunction

COMES NOW plaintiff SANHO CORPORATION (Sanho), by and through its undersigned counsel, and files this Brief in support of its Motion for Preliminary Injunction with respect to Defendant KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., Defendant KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC., and DOES 1-10 (collectively Kaijet), doing business as j5create. Sanho seeks an order enjoining Kaijet from selling the accused device within the United States until resolution of this case pursuant to Fed. R. Civ. Proc. 65 in order to preserve and protect the status quo.

## __INTRODUCTION__

Plaintiff Sanho Corporation will suffer immediate and irreparable harm unless defendant Kaijet's infringing conduct is preliminarily enjoined before trial. This Motion involves plaintiff Sanho's "HyperDrive" device, U.S. Design Patent, D855616 ("616 Patent") which protects Sanho's designs, and Kaijet's infringing "UltraDrive," which nearly perfectly copies plaintiff's design:

Kaijet's UltraDrive                    Sanho's HyperDrive



This motion demonstrates that Sanho (1) has a likelihood of success on the merits, (2) will suffer irreparable harm if an injunction does not issue, (3) that the harm it will suffer without an injunction is greater than the harm the opposing party will suffer if the injunction is granted, and (4) that the public interest will not be disserved by the issuance of the injunction. Accordingly, there is good cause for, and equity supports, the issuance of an injunction, in order to preserve the status quo and avoid inequitable harm which will occur if Kaijet is not enjoined.

## RELEVANT PROCEDURAL HISTORY

On May 25, 2018, Sanho filed its complaint against Kaijet in U.S. District Court for the Northern District of California. (Dkt. 1). On November 23, 2018, this case was transferred to U.S. District Court for the Northern District of Georgia. (Dkt. 24). On January 29, 2019, Sanho filed its Second Amended Complaint, [Dkt. 39], and on February 22, 2019, Kaijet filed its Answer thereto. (Dkt. 53). On August 20, 2019, Sanho received notice of recordation assignment of the 616 Patent.[1] On August 22, 2019, counsel for Sanho communicated to counsel for Kaijet that Sanho intended to assert the 616 Patent in this action. Sanho's counsel tendered a draft of a Third Amended Complaint ("TAC"), which asserted the 616 Patent, and a draft of a stipulation for the filing of the TAC. On August 30, 2019, counsel for Kaijet US refused to so stipulate.[2] The next business day, on September 3, 2019, Sanho filed a motion for leave to file its TAC. (Dkt. 69). On November 7, 2019, the Court granted the motion, and on November 14, 2019 Sanho filed its TAC. (Dkt. 87 at 6). This motion was filed the next day.

---

[1] Chin Decl., ¶2, Ex. 1.

[2] Declaration of Plaintiff's Counsel Benjamin Martin in Support of Plaintiff's Preliminary Injunction Motion (Martin Decl.) ¶2, Ex. 1

## FACTUAL BACKGROUND

I. **Sanho and its HyperDrive.**

Sanho is a small business that designs, develops and sells consumer electronics products and is headquartered in Fremont, California.[3] For many years, Sanho has been selling its products under its mark 'HyperDrive.'  In 2016 Sanho developed a multi-functioning docking station for Apple's MacBook Pro laptops. The device has ports into which other Sanho products can be plugged—it is thus a gateway device that leads to the sale of Sanho's other downstream products. Sanho named the device 'HyperDrive'—it is Sanho's flagship product.[4]

A. Sanho Established the HyperDrive's Brand Recognition.

Sanho invested substantial resources cultivating the HyperDrive's brand, product recognition and goodwill.[5]  Sanho presented the HyperDrive at numerous trade shows, including the Consumer Electronics Show in Las Vegas, which is the most important consumer electronic product convention in the U.S. The HyperDrive was extremely well received, enjoyed wide acclaim in the technology-focused media, and garnered demand.

---

[3] Chin Decl., ¶3.
[4] Chin Decl., ¶5.
[5] Chin Decl., ¶6.

B. Sanho Secured Millions of Dollars in Funding for the HyperDrive.

In 2016, building upon the excitement generated, Sanho initiated fundraising campaigns through Indiegogo and Kickstarter, showing the product:



Sanho's obtained more than $3.1 million in financing from the public, which established and further increased the demand for its design and the HyperDrive.[6]

C. The HyperDrive's Acclaim Drew the Attention of Best Buy.

Sanho did not license the HyperDrive design to any party. Rather, after invention it undertook all efforts to bring the HyperDrive to market, investing significantly therein. Sanho sought to fully capitalize on HyperDrive's accrued brand recognition by rightfully monopolizing the HyperDrive's unique design.[7]

Thereafter, Sanho's decision not to license the HyperDrive's design paid off when Best Buy—one of the leading retailers in the U.S.—signed a contract with Sanho to buy the HyperDrive, and then sell it in Best Buy brick and mortar stores and online at bestbuy.com.[8] The HyperDrive's sales to Best Buy's customers

---

[6] Chin Decl., ¶8.

[7] Chin Decl., ¶11.

[8] Chin Decl., ¶12.

exceeded Sanho and Best Buy's expectations from March 2017 until October 2017—the point in time when Kaijet's multi-function docking station started selling at Best Buy too. Sales dropped substantially thereafter.[9]

## II.    **The Kaijet Defendants and the UltraDrive.**

Kaijet and Sanho are direct competitors in the computer peripheral industry.[10] Unlike Sanho, Kaijet is a large multi-national company operating under the mark 'j5create'.  Kaijet holds out their j5create brand as "one of the largest computer accessory brands" and they maintain offices in the U.S., Taiwan, Europe and Canada.[11]  In addition to selling at Best Buy, Kaijet sells its products at Office Depo, Office Max, Fry's Electronics, Staples, Adorama, and Walmart.[12]

### A.  Kaijet Copied the HyperDrive.

In the course of discovery in this case, Kaijet produced e-mails between Kaijet's employees and Best Buy's employees, and between Kaijet's employees and individuals working for Select Sales, Inc., which is a company that Kaijet hired to help Kaijet sell its UltraDrive at Best Buy.  On June 28, 2017, Andy Miller (with Select Sales) forwarded to Chuck Atkins (Kaijet's Vice-President of

---

[9] Chin Decl., ¶13.

[10] Chin Decl., ¶14.

[11] https://en.j5create.com/pages/about-us
[12] https://en.j5create.com/pages/where-to-buy

Marketing & Sales) Andy Miller's earlier e-mail that summarized a ███████

███████ by Jacob Durkin (Best Buy's Merchant Analyst) of the HyperDrive's

success at Best Buy.  Andy Miller's June 28, 2017 e-mail stated, "███████████

███████████████████████████████████████████████████ and

included a URL hyperlink to the HyperDrive's sale page at bestbuy.com.[13]  The

subject lines of Kaijet's e-mails are "██████████████████████."

June is an important date in this case: E-mails between Jessica Liu (Kaijet's

Chief Executive Officer) and Chuck Atkins reflect that on June 28, 2017, Kaijet

was considering ██████████████████.  After Chuck Atkins ███████████

██████████████████████ on June 28, 2017, later that day, Chuck

Atkins e-mailed Steven Lyu (Kaijet's Chief Operating Officer) and Jessica Liu █

████████████████████████████████████████████████

████████████████████████████████████████████"[14]

Jessica Liu responded, ████████████████████████████████

████████████████████████████████████████

██████"[15] Chuck Atkins replied, ████████████████████████████

---

[13] Martin Decl. ¶¶3, 4, Ex. 2, emphasis added.
[14] Martin Decl. ¶5, Ex. 3, emphasis added.
[15] Martin Decl. ¶5, Ex. 3, emphasis added.

██████████████████████████████████."[16]  The June 28, 2017 e-mail exchange

shows that Kaijet ████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████.[17]  But Kaijet did not develop "something similar"—Kaijet

flatly copied the HyperDrive's design.

*Kaijet interfered with the Best Buy-Sanho relationship.* On September 7,

2017, Andy Miller and Chuck Atkins exchanged e-mails about ████████████████

██████████████████████████████████████ Andy

Miller and Chuck Atkins discussed ████████████████████████████████

████████████████████████████ The stated plan was to

████████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████. Chuck Atkins confirmed, "████████

███████████████████████████████████████"[18]

*Kaijet copied the color of the HyperDrive.* The following week, on

September 13, 2017, Jessica Liu and Chuck Atkins discussed ████████████████

---

[16] Martin Decl. ¶5, Ex. 3.

[17] Martin Decl. ¶ 4, Ex. 2.

[18] Martin Decl. ¶8, Ex. 6.

████████████████ Jessica Liu disclosed that she ██████████████

████████████████████████████████████████████████████

██████████████ To that email, Jessica Liu attached ████████████████

██████████████. Chuck Atkins replied, ██████████████[19]

*Kaijet copied the name of Sanho's product.*.  On September 13, 2017,

Jessica Liu asked Chuck Atkins, "████████████████████████

██████████████" Chuck Akins responded, "██████████████

██████████████" (emphasis added). Jessica Liu replied, ██████████

██████████████████████████████████."[20]

*Kaijet purchased a HyperDrive and sent it to Taiwan to copy its design.*

The day after Chuck Akins asked Jessica Liu, "██████████████████

██████████████" on September 14, 2017, Cindy Lin (with Kaijet in Taiwan)

asked Chuck Atkins to "████████████████████████████

██████████████" Chuck Atkins responded "██████████████."  The

following day Chuck Atkins confirmed, "████████████████████████

---

[19] Martin Decl. ¶9, Ex. 7.
[20] Martin Decl. ¶10, Ex. 8, emphasis added.

██████████████████████████.''  On September 19, 2017, Cindy Lin

confirmed, ''██████████████████████████.''[21]

Kaijet needed less than a month to copy the HyperDrive's design and deliver

the imitations.  By October 2017, Kaijet was importing and selling a multi-function

docking station at Best Buy that was virtually identical to the HyperDrive.

## III.    The HyperDrive's Design is Patent Protected.

### A. Sanho Has Vigorously Enforced its Patents.

Since the HyperDrive's public release, counterfeits have appeared in the

marketplace.  When discovered, Sanho has diligently responded with cease and

desist letters and litigation if necessary.  As the HyperDrive is Sanho's flagship

product, Sanho has expended substantial resources in policing the HyperDrive's

patented-protected design, and the market has largely acquiesced or discontinued

selling infringing devices.[22]  Except for Kaijet.

For example, in the third quarter of 2019 alone Red Points Solutions issued

1,475 discontinuation notices on the 616 Patent, of which 1,219 were confirmed

---

[21] Martin Decl. ¶12, Ex. 10.
[22] Chin Decl. ¶15.

discontinued—an 82% success rate.[23] Sanho has done everything in its power to police its exclusivity rights in the 616 Patent.[24]

      B.  <u>After Cease & Desist Letters, and Third Amended Complaint,</u>
           <u>Kaijet Refuses to Halt Sale of the UltraDrive</u>.

On November 13, 2019, Sanho tendered to Kaijet a cease and desist letter to Kaijet's principals through counsel on the basis that Kaijet's UltraDrive infringed on the designs protected under the 616 Patent.[25]  The letter inquired whether Kaijet would stop selling the UltraDrive pending the resolution of this case.  Kaijet did not respond.  Kaijet has made it clear that under no circumstances will it stop selling the UltraDrive—neither a cease & desist letter, nor a patent infringement action has dissuaded Kaijet.  Equity calls for injunctive relief.

IV.   <u>Sanho Continues to Suffer Irreparable Harm From the Sale of UltraDrive</u>.

In addition to Mr. Daniel Chin's declaration, Sanho also offers evidence of irreparable harm through the expert declaration of Mr. Scott Hampton.

---

[23] Chin Decl. ¶24.
[24] *Id*. at ¶25.
[25] Martin Decl. ¶13, Ex. 11.

## **ARGUMENT**

The Patent Act gives the "right to exclude others from making, using, offering for sale, or selling the [patented] invention."[26] This right is born from the U.S. Constitution's Intellectual Property Clause, which guarantees inventors' "exclusive Right to their respective…Discoveries."[27] The UltraDrive is an attack on Sanho's exclusivity rights.

### I.    **Sanho Meets the Standard for a Preliminary Injunction.**

To obtain a preliminary injunction, the movant must show (1) that it has a likelihood of success on the merits, (2) that it will suffer irreparable harm if an injunction does not issue, (3) that the harm it will suffer without an injunction is greater than the harm the opposing party will suffer if the injunction is granted, and (4) that the public interest will not be disserved by the issuance of the injunction.[28] Sanho meets each of these elements.

### II.    **The Court Should Enjoin Kaijet Pending a Decision on the Merits.**

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention […] infringes the patent."[29] A defendant infringes upon a design

---

[26] 35 U.S.C. § 154(a)(1).
[27] U.S. Const. art. I, § 8, cl. 8.
[28] *Reebok, Int'l v. J. Baker, Inc.,* 32 F.3d 1552, 1555 (Fed. Cir. 1994).
[29] 35 U.S.C. § 271(a).

patent by "appl[ying] the patented sign, or any *colorable imitation thereof*, to any article of manufacture for the purpose of sale[.]" 35 U.S.C. § 289 (emphasis added).  The UltraDrive violates patent infringement law.

### A. Sanho is Likely to Succeed on the Merits of Its Infringement Claim.

A plaintiff evidences a likelihood of success on the merits in a patent infringement case by showing that it will likely prove infringement, and that the patent will likely withstand a validity challenge by the infringer.[30]

#### i.  The UltraDrive is an Infringing Product.

Courts apply the ordinary observer test on design infringement claims, which states:

> if, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.[31]

Courts view the design "in its entirety, for…[the] overall appearance of the article[.]"[32]  The ordinary observer test controls and "[i]nfringement can be found

---

[30] *Amazon.com, Inc. v. Barnes and Noble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

[31] *Egyptian Goddess, Inc. v. Swisa*, Inc., 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (citing *Gorham Co. v. White*, 81 U.S. 511 (1871)).

[32] *L.A. Gear, Inc. v. Thomas McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Circ. 1993).

even if the accused and the patented designs are not identical."[33] "[O]verall ornamental visual impression" is the focus on the ordinary observer test, and not unclaimed or functional features.[34]

Applying the ordinary observer test, Kaijet's UltraDrive is the same, or substantially the same, as the embodiments of the 616 Patent.[35] And the products in question are also so similar that they are confused by Best Buy customers and even by Best Buy itself.[36] This rampant confusion supports the ordinary observer standard. "[I]f the resemblance is such as to deceive such an observer, inducing him or purchase on supposing it to be the other, the first one patented is infringed by the other."[37] The patented design and the UltraDrive share the same overall ornamental shape and appearance; they are substantially similar in the eyes of any reasonable ordinary observer. Thus, Sanho is likely to succeed on the merits.

---

[33] *Voltstar Technologies, Inc. v. Amazon.com, Inc.,* 2014 WL 3725860 at *2 (N.D. Ill. July 28, 2014); 35 U.S.C. §289 ("infringement" includes "colorable imitation[s]").

[34] *OddzOn Prods., Inc. v. Just Toys, Inv*., 122 F.3d 1396, 1405 (Fed. Cir. 1997); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995).

[35] *See* Dkt. 88, pp.18-19; Aalaei Decl., ¶2, Ex. A.

[36] Hampton Decl., ¶¶30 (and Figure Nos. 2 and 3); Chin Decl. ¶21.

[37] *Gorham* at 528; see *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 1000 (Fed. Cir. 2015), (citing *Gorham* and crediting expert opinion "that ordinary purchases would be likely to mistake the [accused] designs for the [patented design]").

Sanho is also likely to prevail on its <u>willful</u> patent infringement claim. From e-mails turned over in discovery, we know when Kaijet decided to copy the HyperDrive's design, and how Kaijet did it.  On June 28, 2017, Kaijet decided to "███████████████████████" ███████████████ after learning that Best Buy "███████████████████████.[38] We know that in September 2017, Chuck Atkins ████████████████████████████████████████████ █████████████████.[39]  The copying process took less than a month; by October 2017, the UltraDrive began selling at Best Buy.  We also know that Kaijet decided to offer the UltraDrive in space grey after Jessica Liu reported that she "████ ████████████████████████████████"[40] Substantial evidence shows that Kaijet willfully and brazenly copied the design embodied by the 616 Patent.  Sanho demonstrates a strong likelihood of success on its infringement claim—indeed, the evidence accompanying this motion compels a finding that Kaijet willfully and contemplatively infringed on Sanho's patent rights.

### ii.  The 616 Patent is Valid.

---

[38] Martin Decl. ¶5, Ex. 3.
[39] Martin Decl. ¶12, Ex. 10.
[40] Martin Decl. ¶9, Ex. 7.

The 616 Patent is presumed to be valid unless proven otherwise by clear and convincing evidence.[41] The main reason for this presumption is that a patent will only be granted after a USPTO Examiner has made a thorough assessment. This presumption establishes a likelihood of success on the validity issue, absent a challenge by the accused infringer.[42] If the accused infringer shows a "substantial question" of patent invalidity, then the burden shifts to the patentee to show the accused infringer's argument lacks "substantial merit." *Id*.

Kaijet has not and cannot raise a substantial question on the validity of the 616 Patent. Acquiescence by the industry in the patent holder's rights further support validity.[43] Here, Sanho is not only entitled to the presumption of validity, but it has also shown that the marketplace has respected Sanho's patent rights and in large part ceased any infringing activity, further supporting validity.[44] Accordingly, Defendants are unlikely to be able to prove invalidity, by clear and convincing evidence.[45]

  B.  <u>Sanho Will Be Irreparably Harmed by Kaijet's Infringement</u>.

---

[41] 35 U.S.C. § 282.

[42] *Tinnus Enters., LLC v. Telebrands Corp*., 846 F.3d 1190, 1205 (Fed. Cir. 2017).

[43] *Smith Int'l, Inc. v. Hughes* Tool Co., 718 F.2d 1573, 1578 (Fed. Cir. 1983).

[44] Chin Decl. ¶¶15, 24.

[45] *Titan Tire Corp. v. Case New Holland, Inc*., 566 F.3d 1372, 1379-1380, (Fed. Cir. 2009).

While "the existence of a likely infringer in the market may suffice to demonstrate irreparable harm because of the difficulty of protecting a right to exclude through monetary remedies,"[46] Sanho herein evidences substantial irreparable harm from Kaijet's interference with the Sanho-Best Buy relationship, customer confusion about the products in question, damage to brand reputation and goodwill, loss of sales on Sanho's downstream products, lost market share, price erosion, and loss of reasonable return on investment, all of which have been held by the courts to constitute a sufficient basis for a preliminary injunction order.

    i. *Interference with the Sanho-Best Buy Contractual Relationship.*

Sanho should be enjoying the exclusive sale of its patent-protected multi-function docking station at Best Buy—but the sale of the UltraDrive next to the HyperDrive in Best Buy makes it impossible.[47]  Irreparable harm is imminent.  The UltraDrive's sale at Best Buy is clearly interfering with Sanho's relationship with Best Buy, which is premised on Sanho's exercise of its exclusive rights as to the 616 Patent.[48]   In October 2017, Kaijet delivered and began selling the UltraDrive

---

[46] *Id.* at 1380 (internal quotes omitted).
[47] Hampton Decl. ¶24-25.
[48] Hampton Decl. ¶29.

right next to the HyperDrive at Best Buy, thereby disrupting Sanho's relationship with Best Buy and customers.[49]

Worse, Kaijet sought to sabotage the Best Buy-Sanho relationship. E-mails disclosed in discovery show that Kaijet planned to "███████" and ████████



████████. Kaijet's Vice-President of Marketing and Sales admitted over e-mail that ████████████████████████

████████████████████████

████████████"[50]  Equity calls for an injunction.

    ii.  *Market Confusion Damages Brand Reputation and Goodwill.*

Rampant confusion between the UltraDrive and the HyperDrive adversely impacts Sanho's brand and ability to market itself as the HyperDrive's exclusive provider.  For example, purchasers of the UltraDrive, when seeking customer service on the UltraDrive, reach out to Sanho and not Kaijet.[51]  Best Buy also confuses UltraDrive with HyperDrive—for example, when it mistakenly sends returns of

---

[49] Chin Decl. ¶¶13, 16; Hampton Decl. ¶35.
[50] Martin Decl. ¶8, Ex. 6.
[51] Hampton Decl., ¶30 (and Figure No. 2 thereunder).

UltraDrive to Sanho and not Kaijet.[52]  Kaijet infringement of the 616 Patent has damaged Sanho's goodwill and reputation as the inventor of the HyperDrive.[53] Harm caused by customer confusion, and brand and damage, are not easily subject to dollar-specific quantification,[54] which satisfies the irreparable harm prong.[55]

The inferiority of the UltraDrive's exacerbates the irreparable harm. The UltraDrive receives less favorable customer rating reviews[56] and has nearly ██████ ████████████████████████████████████████.[57] This drastically worsens the irreparable harm to Sanho's brand. If a customer has bad experience with the UltraDrive, and confuses the two devices, Sanho's brand reputation and goodwill are forever adversely affected and lost.  Customer confusion diverts Sanho customers. The UltraDrive's less-favorable reviews that are posted on the HyperDrive's Best Buy online sale page increasingly injur Sanho's goodwill.[58] Indeed, "[i]rreparable harm flows from a competitor's attempts to usurp the pioneering company's market position and goodwill."[59]

---

[52] Hampton Decl., ¶31 (and Figure No. 3 thereunder).
[53] Hampton Decl., ¶¶33, 44; Chin Decl. ¶21.
[54] Hampton Decl., ¶22.
[55] *Multi-Channel TV Cable Co.*, *supra,* 22 F.3d at 552.
[56] Hampton Decl., ¶¶27, 46; Chin Decl. ¶22.
[57] Hampton Decl., ¶47.
[58] Chin Decl. ¶23.
[59] *Emory University v. Nova Biogenics, Inc.*, 2008 U.S. Dist. LEXIS 57642, *12

iii. *Lost of Sales on Sanho's Downstream Products*.

"[T]he loss of customers and the loss of future downstream purchases are difficult to quantify, [and] these considerations support a finding that monetary damages would be insufficient..."[60]  Similarly, because the HyperDrive is a gateway product that drives sales of Sanho's downstream related products, it is the most important component of Sanho's product line.[61]  Thus, a HyperDrive purchaser is likely to purchase Sanho's other peripherals to use with it, and not from competing brands.[62]  When a consumer purchases an UltraDrive, Sanho loses the sale of the HyperDrive *and* the sales of Sanho's downstream products.[63] Sanho cannot fully calculate its monetary damages under these circumstances.

iv. *The UltraDrive's Direct Competition with the HyperDrive Causes Sanho to Lose Market Share*.

Kaijet directly competes with Sanho in the multi-function docking station market.[64]  Direct competition suggests that Sanho has suffered, and will continue to

---

(N.D. Ga.2008).

[60] *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1337 (Fed. Cir. 2012).

[61] Chin Decl. ¶19.

[62] Chin Decl. ¶20.

[63] Chin Decl. ¶19.

[64] Hampton Decl., ¶29; Chin Decl. ¶14.

suffer, irreparable harm.[65] There are other competitors in the market; however, public acquiescence to the design protected in the 616 Patent has created a two-supplier market: the UltraDrive and the HyperDrive.[66]  Sanho has not licensed its patent-protected design to anyone.[67] In *Douglas Dynamics, LLC v. Buyers Prod. Co.,*[68] the Federal Circuit directed the district court to enter an injunction where "the evidence shows that [patentee] had never licensed the infringed patents, and intentionally chose not to, so that it could maintain market exclusivity." The same circumstances in the instant case necessitate injunctive relief.  Each UltraDrive purchase unfairly damages the fair market and causes irreparable damage to Sanho through a variety of means including but not limited to lost market share.[69]

The HyperDrive's share of the docking station market has steadily declined as the UltraDrive has captured a larger share.[70]  A damage award cannot compensate this loss.[71]  Injunctive relief is available when the parties are "direct competitors" and the patentee offered evidence that "that Defendants took some

---

[65] *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012).

[66] Hampton Decl., ¶33.

[67] Chin Decl. ¶11.

[68] 717 F.3d 1336, 1345 (Fed. Cir. 2013)

[69] Hampton Decl., ¶28.

[70] Hampton Decl., ¶35 (Table No. 1 thereunder).

[71] Hampton Decl., ¶¶36-38.

sales away from Plaintiff by selling the infringing [product]."[72] A reduced market

share lessens Sanho's ability to reach potential customers.  In this sense too, loss of

market share is an unquantifiable harm since a larger market share leads to more

exposure, which leads to more business development opportunities.[73]

Kaijet's siphoning of market share and violating the law of the United States

has not been accidental.  Of all the national retailers with whom Kaijet otherwise

contracts to sell its j5create products[74], Kaijet selected Best Buy to carry the

UltraDrive. [75]  Kaijet *targeted* Sanho and the HyperDrive's Best Buy consumer

base.  Best Buy displays products in its brick and mortar stores in close proximity;

products sold on bestbuy.com are similarly presented.[76]  As a result, Sanho is

competing against its own patented design for Best Buy's customers.  This is

unfair and causes irreparable harm to Sanho's reputation and brand.[77]

---

[72] *Canon, Inc. v. Color Imaging, Inc*., 292 F. Supp. 3d 1339 (N.D. Ga., Feb. 22, 2018).

[73] Hampton Decl., ¶23.

[74]  https://en.j5create.com/pages/where-to-buy (Kaijet sells j5create products at Office Depo, Office Max, Fry's Electronics, Staples, Adorama, and Walmart).

[75] Dkt. 18-1 at ¶5 ("KaiJet sells the JCD382 Ultradrive exclusively to Best Buy").

[76]https://www.bestbuy.com/site/laptop-accessories/docking-stations/pcmcat251600050011.c?id=pcmcat251600050011 (the HyperDrive and the UltraDrive are presented within the same webpage under the category 'docking stations').

[77] Hampton Decl., ¶28; *see also Douglas Dynamics, LLC v. Buyers Prods. Co.,* 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("[w]here two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented

v.  *Price Erosion*.

Kaijet's sale of the UltraDrive is significantly eroding HyperDrive's price.[78]

Kaijet's e-mails reveal it intended price erosion, in order to "put a dent in the

Hyperdrive business."[79]  The Federal Circuit observed why this is unfair:

> Competitors change the marketplace. Years after infringement has
> begun, it may be impossible to restore a patentee's (or an exclusive
> licensee's) exclusive position by an award of damages and a permanent
> injunction. Customers may have established relationships with
> infringers. The market is rarely the same when a market of multiple
> sellers is suddenly converted to one with a single seller by legal fiat.
> Requiring purchasers to pay higher prices after years of paying lower
> prices to infringers is not a reliable business option.[80]

Thus, price erosion is strong evidence of irreparable harm.[81] In *Purdue Pharma,*

the Federal Circuit upheld the district court's irreparable harm finding "[g]iven the

testimony of likelihood of price erosion and loss of market position[.]"[82]

Pressured to match the UltraDrive's decreasing price, the HyperDrive is suffering

irreversible price erosion.  As such, there is a likelihood of immediate irreparable

harm in the absence of injunctive relief.

---

inventions.").
[78] Hampton Decl., ¶¶39-43.
[79] Martin Decl. ¶14, Ex. 12.
[80] *Polymer Tech., Inc. v. Bridwell* 103 F.3d 970, 975-76 (Fed. Cir. 1996).
[81] *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1358 (Fed. Cir. 2001) (*Purdue Pharma*).
[82] *Id. at* 1368.

vi. *Loss of Potential Return on Investment*.

Sanho invested heavily in developing the HyperDrive's brand and product recognition and bringing the HyperDrive to market to fully capitalize on the HyperDrive's patent-protected design.[83] Sanho would have had a greater return on its original investment, and would be on a different course had Kaijet not introduced a competing infringing product into the market.  The difficulty in measuring this loss makes the harm suffered no less devastating or irreparable.[84]

The Balance of Hardships Favors Entry of a Preliminary Injunction.

The Court must consider whether the balance of equities tips in the favor of granting the injunction.[85] Rather than fair competition, Sanho is forced to compete against its own patented design.[86] Absent injunctive relief, Kaijet would continue capturing market share from Sanho.  Moreover, courts are not sympathetic to any hardship self-inflicted by undertaking knowing infringement.[87]

---

[83] Chin Decl. ¶¶6, 11.

[84] Hampton Decl., ¶51; *see also Reebok Int'l, Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1557 (Fed. Cir. 1994) (recognizing "future infringement…may have market effects never fully compensable in money").

[85] *Winter*, *supra*, 129 S. Ct. at 374.

[86] *Robert Bosch LLC v. Pylon Mfg. Corp*., 659 F.3d 1142, 1156 (Fed. Cir. 2011) ("requiring [patentee] to compete against its own patented invention…places a substantial hardship on [the patentee]").

[87] *See Pfizer, Inc. v. Teva Pharms. USA*, 429 F.3d 1364, 1382 (Fed Cir. 2005) ("Simply put, an alleged infringer's loss of market share and customer

Kaijet is a large multi-national company that sold products to Best Buy before Sanho released the HyperDrive. Other than the infringing UltraDrive, Kaijet still sells over 150 products, under its j5create brand, which it claims is "one of the largest computer accessory brands."[88] In contrast, the HyperDrive is Sanho's flagship product that accounted for ███ of Sanho's revenue.[89] Thus, the balance of hardship element favors Sanho.[90]

C. The Public Interest Favors Entry of an Injunction.

Rarely will the public interest be seriously affected by the grant or denial of a preliminary injunction in a design patent case. The 616 Patent does not concern a design that is critical to national security, or to public health or welfare. Additionally, the public's interest is in the enforcement of patent rights.[91] Accordingly, this factor weighs in favor of Sanho.

---

relationships, without more, does not rise to the level necessary to overcome the loss of exclusivity experienced by a patent owner due to infringing conduct."); *Smith Int'l, Inc., v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed.Cir.1983).

[88] Hampton Decl., ¶53; https://en.j5create.com/pages/about-us (Kaijet's website).
[89] Chin Decl. ¶5.
[90] *Windsurfing Int'l Inc. v. AMF, Inc.,* 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so selected.").

[91] *Sanofi– Synthelabo v. Apotex, Inc.,* 470 F.3d 1368, 1383 (Fed. Cir. 2006).

## **CONCLUSION**

The Court should grant a preliminary injunction.

Dated: November 15, 2019          **ARI LAW, P.C.,**
                                 **HILL, KERTSCHER & WHARTON, LLP**


                                 By: _/s/ Steven G. Hill_____

                                 **HILL, KERTSCHER & WHARTON, LLP**
                                 STEVEN G. HILL, GA Bar No. 354658
                                 MARTHA L. DECKER, GA Bar No. 420867
                                 3350 Riverwood Parkway, Suite 800
                                 Atlanta, Georgia 30339
                                 Telephone: (770) 953-0995
                                 Facsimile: (770) 953-1358

                                 **ARI LAW, P.C.,**
                                 ALI A. AALAEI, CA Bar No. 254713
                                     *(admitted pro hac vice)*
                                 BENJAMIN MARTIN, CA Bar No. 257452
                                     *(admitted pro hac vice)*
                                 ALEXANDER CHEN, CA Bar No. 245798
                                     *(admitted pro hac vice)*
                                 90 New Montgomery St., Suite 900
                                 San Francisco, CA 94105
                                 Tel: 415-830-9968
                                 Fax: 415-520-9456

                                 Attorneys for Plaintiff
                                 SANHO CORPORATION

## CERTIFICATION OF COMPLIANCE

I hereby certify that the forgoing brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B) [Times New Roman 14-point] and does not exceed the page limit set forth in LR 7.1(D).


Dated: November 15, 2019          **ARI LAW, P.C.,**
                                  **HILL, KERTSCHER & WHARTON, LLP**


                                  By: /s/ Steven G. Hill

                                  **HILL, KERTSCHER & WHARTON, LLP**
                                  STEVEN G. HILL, GA Bar No. 354658
                                  MARTHA L. DECKER, GA Bar No. 420867
                                  3350 Riverwood Parkway, Suite 800
                                  Atlanta, Georgia 30339
                                  Telephone: (770) 953-0995
                                  Facsimile: (770) 953-1358

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>          Plaintiff,<br><br>   v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., and KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC., doing business as "J5Create"; and DOES 1-10,<br><br>          Defendants. | C.A. No. 1:18-cv-05385-SDG<br><br>**Jury Trial Demanded** |

## CERTIFICATE OF SERVICE

I certify that on the 15th day of November 2019, I caused to be electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following participants and law firm who are registered CM/ECF users, and will be served by the CM/ECF system.

Bob Carlson
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
bob@leehayes.com

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, 1:18-CV-05385-SDG

Robert A. Madayag, III
Ryan P. Gentes
LEE & HAYES, P.C.
1175 Peachtree Street, NE
100 Colony Square, Suite 2000
Atlanta, Georgia 30361
RobM@leehayes.com
Ryan.Gentres@leehayes.com

This 15th day of November,

By: */s/* Steven G. Hill
STEVEN G. HILL
GA Bar No. 354658
*Counsel for Sanho Corporation*

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, 1:18-CV-05385-SDG