UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br>      Plaintiff,<br><br>      v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC., doing business as "J5Create"; and DOES 1-10,<br>      Defendants. | Civil Action No.<br>1:18-cv-05385-SDG |

**ORDER**

This matter is before the Court on Plaintiff Sanho Corporation's ("Sanho") Motion for Preliminary Injunction [ECF 91]. Following oral argument on December 6, 2019, the Court denied Sanho's motion. This order is intended to supplement the Court's oral findings. For the reasons stated during the hearing and below, Sanho's motion is **DENIED**.

**I.     BACKGROUND**

   **a.     Procedural Background**

On May 25, 2018, Sanho filed its initial Complaint against Defendant KaiJet Technology International Limited, Inc. ("KaiJet US"), asserting that Sanho is the owner, by assignment of all rights, in U.S. design patent D813,875 (the "'875Patent"). The '875 Patent claims the ornamental design for a multi-

function docking station.¹ Sanho's initial Complaint alleged KaiJet US infringed the '875 Patent by the sale of KaiJet US's Ultra Drive product.²

On August 6, 2019, Sanho's principal and Chief Executive Officer, Kien Hoe Daniel Chin, was issued U.S. design patent D855,616 (the "'616 Patent"). On November 14, 2019, pursuant to this Court's Order,³ Sanho filed the operative Third Amended Complaint.⁴ That pleading added KaiJet Technology International Corporation, Inc. ("KaiJet Taiwan") as a named Defendant. It also asserts that Mr. Chin assigned the '616 Patent to Sanho and that KaiJet US is infringing both the '875 Patent and the '616 Patent.⁵

On November 15, 2019, Sanho filed the instant Motion for Preliminary Injunction.⁶ Sanho's motion is based solely on its assertion of infringement of the '616 Patent.⁷ The motion is silent as to any causes of action based on theories other than infringement of the design claimed in the '616 Patent. On November 18, 2019,

---

1   ECF 1 ¶¶ 11, 16.

2   ECF 1 ¶¶ 24-29.

3   ECF 87.

4   ECF 88.

5   ECF 89 ¶ 55-64 & Exs. A & E.

6   ECF 91.

7   ECF 91-1, at 12-16.

the Court set a hearing on the preliminary injunction motion, in lieu of Sanho filing a reply brief. On December 3, 2019, KaiJet US, the sole Defendant to have been served at the time Sanho's motion was filed, opposed the preliminary injunction.[8] On December 6, 2019, the Court heard oral argument by counsel for Sanho and KaiJet US.[9]

## II.   LEGAL STANDARD

"The Federal Circuit has exclusive jurisdiction over an appeal from a district court when that court's jurisdiction is based at least in part on a claim arising under the patent laws of the United States." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) (*citing* 28 U.S.C. §§ 1295(a), 1338(a)). *See also Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1228 (Fed. Cir. 2011) ("The proper construction of a patent's claims is an issue of Federal Circuit law."). Because Sanho's Motion is premised on an assertion of design patent infringement, there is a threshold question of whether the Federal Circuit applies any different standard than the Eleventh Circuit to the evaluation of a preliminary injunction motion. While the Federal Circuit reviews the grant or denial of a preliminary

---

[8]   ECF 96. On January 7, 2020, Sanho effected service of process on KaiJet Taiwan [ECF 118; ECF 119].

[9]   ECF 102.

injunction using the law of the regional circuit, "the Federal Circuit has itself built a body of precedent applying the general preliminary injunction considerations to a large number of factually variant patent cases, and gives dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1363 (Fed. Cir. 2016) (*quoting Trebro Mfg., Inc. v. FireFly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014)). Nonetheless, both the Eleventh Circuit and Federal Circuit utilize the same four-part test to resolve a motion for preliminary injunction. *See, e.g.*, *Murata Mach.*, 830 F.3d at 1363; *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). Thus, to rule on Sanho's preliminary injunction motion, the Court looks primarily to Federal Circuit precedent.

"A preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004) (*quoting Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)). *See also U.S. Pharm. Corp. v. Trigen Labs., Inc.*, No. 1:10-cv-0544-WSD, 2011 WL 446148, at *6 (N.D. Ga. Jan. 27, 2011) (*citing Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003)). Supreme Court precedent from the oft-cited *Winter v. Natural Resources Defense Council, Inc.* decision instructs courts to apply a four-factor analysis to a motion for preliminary

injunction: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." 555 U.S. 7, 20 (2008). *See also Apple v. Samsung*, 695 F.3d 1370, 1373–74 (Fed. Cir. 2012) (same).

In granting or denying a preliminary injunction, a court must "state the findings and conclusions that support its action." Fed. R. Civ. P. 52(a)(2). "A limited analysis may support a trial court's denial of a preliminary injunction so long as the district court concludes that some of the requisite preliminary injunction factors disfavor the movant." *Murata Mach.*, 830 F.3d at 1364 (*citing Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 973–74 (Fed. Cir. 1996)).

### III. ANALYSIS

With these principles in mind, the Court now considers the four *Winter* factors as they relate to Sanho's preliminary injunction motion.

#### a. Likelihood of Success on the Merits

"With regard to the first factor—establishing a likelihood of success on the merits—the patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely

withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).

Sanho's motion accuses KaiJet US of infringing the '616 Patent through sales of KaiJet's j5create Product.[10] KaiJet US, of course, argues the product is non-infringing. Additionally, KaiJet US argues that the '616 Patent is invalid, which Sanho denies. The record is insufficient to support a conclusion that Sanho is likely to succeed on the merits of its infringement contention. The Court further finds that KaiJet US raises substantial questions concerning the validity of the '616 Patent.

### i. Infringement Allegation

The Patent Act provides that design patents are distinct from utility patents; design patents may be issued for an "*ornamental design* for an article of manufacture." 35 U.S.C. § 171 (emphasis added). Features of the design dictated by functional considerations are not subject to patent protection. *OddzOn Prods. Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

Infringement analysis of a design patent first begins by interpreting the claimed design. Where a design contains both functional and non-functional

---

[10]   *See generally* ECF 91.

elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent. *Id*. The scope of the design is limited to the ornamental aspects of the design and does not extend to the broader general design concept. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015).

The parties here agree that the test for design patent infringement is the "ordinary observer test;" that an accused design infringes a design patent when it is so similar to the claimed design that a purchaser who is deemed to be familiar with the prior art would be deceived by the similarity between the claimed and accused designs, "inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (*quoting Gorham Co. v. White*, 81 U.S. 511, 528 (1872)). When the accused design and the patent's design are "sufficiently distinct" and "plainly dissimilar," the patent holder fails as a matter of law to meet the burden to prove infringement. *Id*. at 678. *See also Ethicon Endo-Surgery*, 796 F.3d at 1336. If the claimed and the accused designs are not plainly dissimilar, the infringement analysis will benefit from comparing the claimed design and accused design with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical observer familiar with the prior art. *Egyptian Goddess*, 543 F.3d at 678.

"[W]hen the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id*. at 676.

During oral argument, Sanho proffered examples of both its product and Kaijet US's product ("the Accused Product") as viewed in their respective packaging at that time. Sanho asserted that, as viewed in their respective packaging, the top view of each product is most prominently displayed. KaiJet US responded by citing to Federal Circuit precedent holding that "one cannot establish design patent infringement by showing similarity of only one part of a patented design if the designs as a whole are substantially dissimilar." *Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993). That is, a proper analysis requires assessment of each design as a whole.

KaiJet US's Response papers include an analysis performed by Professor Kevin Shankwiler, a Senior Lecturer and Undergraduate Program Coordinator in the School of Industrial Design, College of Design (formerly College of Architecture) at the Georgia Institute of Technology. Shankwiler expressed the opinion that the overall design of the Accused Product is not substantially the same as that claimed in the '616 Patent, and that the two designs are not similar,

such that when the ordinary observer test is applied, the resemblance between those two designs would not deceive such an observer.[11] He asserts that the '616 Patent depicts an article having completely flat top and bottom surfaces which result in squared-off end faces making a 90° angle at each end, whereas the Accused Product has tapered ends and faces.[12] Thus, Shankwiler concluded that the Accused Product does not have the same overall shape.[13]

Shankwiler also noted other design differences, including: a material transition on the front and rear faces of the Accused Product, in contrast to the solid faces claimed in the '616 Patent; a lip or indent extending around the circumference of the bottom face of the '616 Patent design which is not present in the Accused Product; two pill-shaped solid protrusions extending from one face of the '616 Patent's design in contrast to hollow connectors on the Accused Product; and placement of the connectors closer to the center in the Accused Product than in the claimed design.[14]

---

[11]   ECF 98-6, ¶ 30.

[12]   *Id.* ¶ 31a, comparing Fig. 5 of the '616 Patent with an image of the front end of the Accused Product.

[13]   *Id.*

[14]   *Id.* ¶¶ 31b-f.

Additionally, Shankwiler stated that the tapered ends featured in the Accused Product are also apparent in a prior art design and further that the '616 Patent "makes prominent use of squared-off end faces."[15] Shankwiler opined that an ordinary observer familiar with prior art would recognize the squared-off ends to depart from the prior art and thus be a significant feature of the '616 design not found in the Accused Product.[16]

Sanho raised an evidentiary objection to consideration of Shankwiler's opinion, arguing his opinions should not be considered as expert testimony. Based on the background and experience proffered in Shankwiler's declaration, the Court overruled the objection.[17] Federal Circuit authority supports consideration of expert testimony in design patent cases. *E.g.*, *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1313 (Fed. Cir. 2013) ("In civil litigation involving a design [patent], an expert's testimony is most helpful" in obviousness analysis; holding "the district court erred by categorically disregarding the [expert's] Declaration."). *See also Ethicon Endo-Surgery*, 796 F.3d at 1330 (discussing with approval expert opinion testimony on alternative designs); *Egyptian Goddess*,

---

[15] *Id.* ¶ 32.

[16] *Id.*

[17] ECF 102; ECF 103.

543 F.3d at 681 (assessing the opinion of each party's expert as to ordinary observer's perception of claimed and accused designs); *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1565 (Fed. Cir. 1988) (citing Avia's "evidence in the form of an expert's declaration analyzing infringement" based on ordinary observer test), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d at 671–79 (announcing revised test for design patent infringement); *Lakewood Eng'g & Mfg. Co. v. Lasko Metal Prod. Inc.*, No. 99 C 3693, 2001 WL 1012573, at *2 (N.D. Ill. Aug. 31, 2001) ("The Federal Circuit has recognized that expert testimony and testimony by a defendant's employee are proper evidence upon which a jury could rely in deciding that a design patent has been infringed.").

The Court credits the testimony of Shankwiler in determining that the design of the Accused Product is distinct and plainly dissimilar to the design claimed in the '616 Patent, based on his observation as well as by comparison with the prior art. Accordingly, and based on the record before the Court, Sanho has not satisfied its burden to show that it is likely to succeed on the merits of its infringement claim.

### ii. Validity of the '616 Patent

At the preliminary injunction stage, the court "does not resolve the validity question, but rather must . . . make an assessment of the persuasiveness of the

challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." *Titan Tire*, 566 F.3d at 1377 (citations omitted). Plaintiff "must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue." *Id.* "[I]f the trial court concludes there is a 'substantial question' concerning the validity of the patent, meaning that the alleged infringer has presented an invalidity defense that the patentee has not shown lacks substantial merit, it necessarily follows that the patentee has not succeeded in showing it is likely to succeed at trial on the merits of the validity issue." *Id.* at 1379.

KaiJet US argues there are substantial questions concerning the validity of the '616 Patent. KaiJet US's opposition included materials produced by Sanho in discovery showing that there is a substantial question whether the '616 Patent is invalid because it was on sale before the date of the patent application. 35 U.S.C. §102(a)(1).[18] The manner in which Sanho came to sell this device also creates a substantial question as to whether Mr. Chin is the actual inventor of the design claimed in the '616 Patent. The evidence indicates the ornamental design of the product had already been completed before Sanho acquired the right to sell it. The

---

18   ECF 96-3 ¶¶ 4–6; ECF 98-2 (Gentes Decl. Exhibits A, C SEALED).

design claimed in the '875 Patent appears to be very similar to the design of the '616 Patent, as confirmed by Shankwiler, and the '875 Patent was not designed by Mr. Chin.[19] This evidence raises a substantial question as to whether he actually invented the design of the '616 Patent.

Based on the record before it, the Court finds there are substantial questions regarding validity of the '616 Patent with respect to (1) whether the '616 Patent was on sale before the date of application; and (2) whether Mr. Chin is the actual inventor of the design claimed in the '616 Patent.

### b. Irreparable Harm

KaiJet US asserts, and Sanho does not dispute, that KaiJet US began selling the Accused Product to Best Buy in the United States in October 2017. As discussed above, and as apparent from a comparison of the '875 and '616 Patent drawing figures, these two patents claim very similar subject matter. Sanho asserts that KaiJet US's sale of the Accused Product infringes both patents, and Sanho first filed a complaint for infringement of the '875 Patent in May 2018. Yet, Sanho did not file the instant motion for a preliminary injunction with respect to the '616 Patent until November 2019.

---

[19] ECF 98-6, ¶ 43.

The Court finds that Sanho's delay in seeking preliminary relief is significant and militates against a finding of irreparable harm. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). *See also Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016). Sanho's explanation that it assessed its case of infringement of the '616 Patent as stronger than the '875 Patent is unpersuasive. The harm alleged by Sanho from infringement of the '875 Patent was similar to that alleged from the '616 Patent and was premised on KaiJet US's sales of the same Accused Product. The fact that Sanho did not seek injunctive relief in connection with the '875 Patent when the case was filed in May 2018, or at any point before filing the instant motion in November 2019, weighs against a finding of irreparable harm.

The Court further finds that, if Sanho is ultimately successful, monetary damages can redress any alleged harm. The declaration by Sanho's expert shows the methodology by which damages can be quantified. Sanho has not met its burden to show special circumstances justifying the extraordinary relief of an injunction prior to trial. *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991).

### c. Balance of Equities

In evaluating the third *Winter* factor, the Court must weigh the harm Sanho has shown it will likely suffer, absent a preliminary injunction, against the harm KaiJet US will likely suffer if the Court provides injunctive relief.

Sanho argues that it will be forced to compete against its own patented invention if no injunction issues and that KaiJet US will continue to capture market share from Sanho. Sanho suggests "courts are not sympathetic to any hardship self-inflicted by undertaking knowing infringement."[20] It also argues that KaiJet sells over 150 products, suggesting that enjoining the sale of the one Accused Product would not be a significant harm to KaiJet US. KaiJet US responds that the status quo for the past two years has seen Sanho and KaiJet US competing for sales in the marketplace alongside several other manufacturers and that injunctive relief would alter, rather than preserve, that state of affairs.

The Court finds that the balance of hardships weighs against entering a preliminary injunction. Based on the record, it appears that many other manufacturers sell competing products. To grant the preliminary relief Sanho seeks would pluck a single competitor—KaiJet US—out of a crowded market.

---

[20]  ECF 93, at 24.

While Sanho may be disadvantaged by having KaiJet US continue as a market competitor, the balance of equities tips in favor of KaiJet US. *See Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990) ("The hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating.").

### d. Public Interest

As to the last factor, the Court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citations omitted). Sanho argues that the public interest "is in the enforcement of patent rights."[21] While true, that interest is counterbalanced when the likelihood of success on the merits has not been established or there is a substantial question about whether the patent is invalid. *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) ("Although the public interest inquiry is not necessarily or always bound to the likelihood of success on the merits . . . we agree . . . that the public interest is best served by enforcing patents that are likely valid and infringed."). The public interest is further served by the promotion of robust competition in the marketplace. *See, e.g., Ill. Tool Works*,

---

[21] ECF 93, at 25.

906 F.2d at 684 (recognizing public interest in alleged patent infringer's continuing right to compete in marketplace where patentee was only remotely likely to successfully show infringement at trial); *Otsuka Pharm. Co. v. Torrent Pharm. Ltd., Inc.*, 99 F. Supp. 3d 461, 507 (D.N.J. 2015) (finding public interest in increased competition in marketplace for generic pharmaceuticals supported denial of injunction); *E.I. Du Pont de Nemours & Co. v. MacDermid, Inc.*, No. CIV.A. 06-3383(MLC), 2008 WL 4952450, at *33 (D.N.J. Nov. 19, 2008) ("The public interest in free competition outweighs the public interest in enforcing a patent where there is a substantial question as to the patent's validity."). Therefore, the Court finds the fourth factor favors denial of the preliminary injunction as well.

## IV.   CONCLUSION

Sanho's Motion for Preliminary Injunction [ECF 91] is **DENIED**.

**SO ORDERED** this the 22nd day of January 2020.

Steven D. Grimberg
United States District Court Judge