```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF GEORGIA
 2                         ATLANTA DIVISION

 3

 4  SANHO CORPORATION,           ) DOCKET NO. 1:18-CV-5385-SDG
                                 )
 5           PLAINTIFF,          ) ATLANTA, GEORGIA
                                 ) DECEMBER 20, 2019
 6           V.                  )
                                 )
 7  KAIJET TECHNOLOGY            )
    INTERNATIONAL LIMITED, INC., )
 8  DOING BUSINESS AS "J5CREATE" )
    AND DOES 1-10,               )
 9                               )
             DEFENDANTS.         )
10

11

12              TRANSCRIPT OF TELEPHONE CONFERENCE
             BEFORE THE HONORABLE STEVEN D. GRIMBERG
13                  UNITED STATES DISTRICT JUDGE

14

15  APPEARANCES OF COUNSEL:

16  FOR THE PLAINTIFF:          ALI A. AALAEI
                                BENJAMIN MARTIN
17
    FOR THE DEFENDANTS:         ROBERT J. CARLSON
18                              RYAN GENTES

19

20  COURT REPORTER:            ANDY ASHLEY
                               1949 U. S. COURTHOUSE
21                             75 TED TURNER DRIVE
                               ATLANTA, GEORGIA  30303-3361
22                             (404) 215-1478

23

24  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
    PRODUCED BY COMPUTER.
25
```

```
 1                  P R O C E E D I N G S
 2  (ATLANTA, FULTON COUNTY, GEORGIA; DECEMBER 20, 2019
 3  IN CHAMBERS.)
 4          THE COURT:  GOOD AFTERNOON.  THIS IS JUDGE GRIMBERG.
 5  I APOLOGIZE FOR THE DELAY.  WE WERE HAVING SOME PHONE ISSUES ON
 6  THIS END, BUT WE ARE HERE.  I'M HERE WITH A COURT REPORTER
 7  TRANSCRIBING THIS PROCEEDING.  WE'RE HERE ON THE MATTER OF
 8  SANHO CORPORATION V. KAIJET TECHNOLOGY, CASE NUMBER
 9  1:18-CV-5385.  IF WE CAN HAVE THE APPEARANCES OF COUNSEL
10  BEGINNING WITH THE PLAINTIFF.
11          MR. AALAEI:  GOOD AFTERNOON, THIS IS ALI ARI AALAEI
12  FOR PLAINTIFF SANHO CORPORATION.
13          THE COURT:  GOOD AFTERNOON.
14          MR. MARTIN:  GOOD AFTERNOON, YOUR HONOR, THIS IS
15  BENJAMIN MARTIN WITH ARI LAW FOR SANHO CORPORATION.
16          THE COURT:  GOOD AFTERNOON.  AND FOR THE DEFENDANT.
17          MR. CARLSON:  GOOD AFTERNOON, YOUR HONOR.  FOR
18  DEFENDANT KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC. BOB
19  CARLSON OF LEE & HAYES SEATTLE OFFICE.
20          THE COURT:  GOOD AFTERNOON.
21          MS. GENTES:  GOOD AFTERNOON, YOUR HONOR.  ALSO FOR
22  KAIJET RYAN GENTES FROM THE ATLANTA OFFICE OF LEE & HAYES.
23          THE COURT:  GREAT.  GOOD AFTERNOON, EVERYONE.  WE ARE
24  HERE ON I THINK INITIALLY IT WAS A -- WELL, WE HAVE DISCOVERY
25  DISPUTES RAISED I BELIEVE BY BOTH PARTIES PURSUANT TO THE
```

1   COURT'S STANDING ORDER, AND WE -- IF I RECALL WE HAD DISCUSSED

2   THE FACT THAT THIS WAS STILL OUTSTANDING DURING OUR HEARING FOR

3   INJUNCTIVE RELIEF, AND THERE WAS -- I BELIEVE THE PARTIES WERE

4   TO ATTEMPT TO CONFER TO SEE IF THOSE ISSUES COULD BE WORKED OUT

5   AS WELL AS TO CONFER REGARDING THE DEFENDANT'S MOTION FOR MORE

6   DEFINITE STATEMENT.  I PRESUME THOSE CONFERENCES TOOK PLACE; IS

7   THAT RIGHT, MR. AALAEI?

8           MR. AALAEI:  YES, YOUR HONOR, WE'VE MET AND CONFERRED

9   ON BOTH THE DISCOVERY ISSUES AS WELL AS THE RULE 12(E) MOTION,

10  THAT'S CORRECT.

11          THE COURT:  OKAY.  WELL, I GUESS IT DIDN'T WORK OUT

12  SINCE WE'RE HERE.  SO LET'S TAKE THE ISSUES ONE BY ONE UNLESS

13  YOU -- UNLESS THE PARTIES WILL TELL ME THAT SOME OF THESE

14  ISSUES HAVE BEEN NARROWED, BUT STARTING WITH THE PLAINTIFF'S

15  DISCOVERY DISPUTE, THE FIRST ISSUE RELATES TO KAIJET'S

16  REFERENCE IN ITS RESPONSES TO REQUESTS FOR PRODUCTION THAT IT

17  WAS PRODUCING NONPRIVILEGED DOCUMENTS, AND SO THE PLAINTIFF

18  NOTED THAT NO PRIVILEGE LOG HAD BEEN PRODUCED.

19          WHO IS TAKING THE LEAD ON THIS CALL, MR. CARLSON OR

20  MS. GENTES; WOULD YOU LIKE TO RESPOND THAT?

21          MR. CARLSON:  YES, YOUR HONOR, BOB CARLSON.  THIS IS

22  ONE AREA THAT I THINK WE DON'T HAVE A DISAGREEMENT ON.  WE'VE

23  AGREED THAT WE WILL PRODUCE A PRIVILEGE LOG.  THERE ARE NO

24  SUBSTANTIAL DOCUMENTS WITHHELD I THINK OTHER THAN DIRECT

25  COMMUNICATIONS BETWEEN COUNSEL AND CLIENT, SO WE HAVE THAT, AND

4

```
1   WE'LL RESPOND IN ESSENTIALLY THE SAME WAY THAT SANHO DID ON THE
2   SAME TOPICS.  SO WE DON'T OBJECT TO PRODUCING A PRIVILEGE LOG,
3   AND WE WILL DO SO.
4           THE COURT:  OKAY.  AND HOW LONG DO YOU NEED FOR
5   THAT?
6           MR. CARLSON:  I BELIEVE WE HAVE A DRAFT COMPLETE, AND
7   I HAVE TO DEFER TO MY COLLEAGUE MS. GENTES.  IS THAT READY TO
8   GO, RYAN?
9           MS. GENTES:  YES, IT IS.
10          THE COURT:  OKAY.  THEN I'LL ORDER THE PRIVILEGE LOG
11  TO BE PRODUCED BY MONDAY, DECEMBER 23RD, AND IN THE FUTURE AND
12  I THINK THIS IS CONSISTENT WITH MY STANDING ORDER DON'T OBJECT
13  ON PRIVILEGE GROUNDS AND DON'T CHARACTERIZE A RESPONSE AS
14  NONPRIVILEGED UNLESS YOU AFFIRMATIVELY HAVE DOCUMENTS THAT ARE
15  PRIVILEGED THAT ARE RESPONSIVE TO THE REQUEST.
16          I FIND IT HARD TO BELIEVE THAT THERE ARE PRIVILEGED
17  DOCUMENTS THAT YOU KNOW OF THAT ARE RESPONSIVE TO ALL 42
18  REQUESTS.  I COULD BE WRONG, BUT UNLESS THAT'S TRUE, I WOULD
19  ASK YOU IN THE FUTURE TO ONLY RAISE A PRIVILEGE OBJECTION OR
20  MAKE REFERENCE TO NONPRIVILEGED DOCUMENTS IF YOU AFFIRMATIVELY
21  KNOW THAT THEY ARE PRIVILEGED DOCUMENTS THAT ARE BEING WITHHELD
22  BECAUSE IT CAUSES CONFUSION.
23          MR. CARLSON:  UNDERSTOOD, YOUR HONOR, WE'LL TAKE THAT
24  TO HEART.
25          THE COURT:  THE NEXT ITEM IS WITH REGARD TO -- I
```

1 PRESUME THIS IS A REQUEST FOR PRODUCTION NUMBER 2; IS THAT

2 RIGHT, MR. AALAEI --

3          MR. AALAEI:  YES, YOUR HONOR.

4          THE COURT:  -- SEEKING DOCUMENTS RELATING TO

5 KAIJET'S, QUOTE, FORMATION AND ORGANIZATIONAL STRUCTURE.

6 PLAINTIFF INDICATED THAT KAIJET PRODUCED ONE -- I DON'T KNOW IF

7 IT'S ONE DOCUMENT OR ONE PAGE WHICH IS BATES STAMPED KAIJET

8 642.  I DON'T KNOW WHAT THAT IS, BUT REGARDLESS, MR. CARLSON,

9 ARE THERE ANY OTHER DOCUMENTS RESPONSIVE TO REQUEST NUMBER 2?

10          MR. CARLSON:  THE ISSUE HERE, YOUR HONOR, IS THAT WE

11 DID HAVE A MEET AND CONFER BACK IN THE FALL, ACTUALLY IT WAS

12 BEFORE THE CASE WAS TRANSFERRED TO YOUR DEPARTMENT IN WHICH WE

13 DISCUSSED, YOU KNOW, WHAT SCOPE OF DOCUMENTS DO WE NEED TO TRY

14 TO UNCOVER, AND WE CAME TO AN AGREEMENT WITH SANHO'S COUNSEL

15 THAT WE WOULD LOOK TO SEE IF THERE WERE SPECIFIC DOCUMENTS

16 RELATED TO THE ACCUSED PRODUCT HERE IN TERMS OF THINGS LIKE

17 BYLAWS OR MEETING MINUTES OR ANYTHING ELSE.

18          THE ORGANIZATIONAL STRUCTURE IS THIS IS A GEORGIA

19 CORPORATION, AND SO WE'VE PRODUCED THE ARTICLES OF

20 INCORPORATION, AND HAVEN'T UNDERSTOOD WHAT -- YOU KNOW, WE DID

21 LOOK TO SEE IF THERE WAS ANYTHING SPECIFIC IN TERMS OF MEETING

22 MINUTES OR BYLAWS OR ANYTHING ELSE THAT REFERRED TO THIS

23 ACCUSED PRODUCT, AND THERE WERE NONE THAT WERE RESPONSIVE.

24          SO I THINK THAT WHAT HAS HAPPENED IS SANHO HAS SORT

25 OF REOPENED ITS INQUIRY AFTER THE FILING OF ITS THIRD AMENDED

1   COMPLAINT, AND THAT SEEMS TO BE IN OUR MOST RECENT MEET AND

2   CONFER THE POSITION THAT SANHO HAS TAKEN.

3           THE COURT:  SO ARE YOU SAYING THAT YOU PRODUCED

4   EVERYTHING THAT WAS RESPONSIVE UNDER THE LIMITING AGREEMENT

5   THAT YOU HAD REACHED; IS THAT ACCURATE?

6           MR. CARLSON:  I BELIEVE THAT'S RIGHT, YES.

7           THE COURT:  MR. AALAEI, WHAT DO YOU HAVE TO SAY TO

8   THAT.

9           MR. AALAEI:  THANK YOU, YOUR HONOR.  THERE IS NO SUCH

10  AGREEMENT.  THE TYPE OF DOCUMENTS THAT ARE SOUGHT BY REQUEST

11  NUMBER 2 WHICH ARE SPECIFICALLY LISTED IN THE REQUESTS, THEY

12  HAVE NOTHING TO DO WITH ACCUSED PRODUCTS.  ONE WOULDN'T EXPECT

13  TO FIND REFERENCES OF ACCUSED PRODUCTS IN CORPORATE

14  ORGANIZATIONAL DOCUMENTS.

15          SO WE'RE A LITTLE BIT CONFUSED ABOUT WHAT MR. CARLSON

16  IS REFERRING TO AS A LIMITED AGREEMENT, BUT THE ISSUE HERE,

17  YOUR HONOR, I BELIEVE IT'S ONE OF THE THRESHOLD ISSUES THAT

18  PERMEATES SOME OF THE OTHER REQUESTS THAT ARE AT ISSUE IN THIS

19  DISCOVERY CONFERENCE, AND OUR REQUEST NUMBER 2 SEEKS DOCUMENTS

20  RELATING TO KAIJET'S FORMATION ORGANIZATIONAL STRUCTURE FOR

21  KAIJET WHICH INCLUDES THE KAIJET U.S. AND KAIJET TAIWAN, AND

22  KAIJET IS DEFINED THAT WAY IN THE WRITTEN REQUEST, AND THE

23  ISSUE THAT WE'RE HAVING HERE IT IS REALLY ONE OF CONTROL, AND

24  WHAT DOCUMENTS ARE IN THE POSSESSION, CUSTODY AND CONTROL OF

25  THE PARTIES, AND WE KNOW THAT KAIJET U.S. ITS OFFICERS ARE

1  STEVEN LIAO AND JESSICA LIAO, AND WE HAVE INFORMATION THAT MS.

2  JESSICA LIAO IS ALSO AN OFFICER OF KAIJET TAIWAN SO WE'RE

3  SEEKING THE FORMATION ORGANIZATIONAL DOCUMENTS FOR BOTH KAIJET

4  U.S. AND KAIJET TAIWAN.

5          NOW WITH KAIJET U.S. WE HAVE SOME INFORMATION THAT WE

6  WERE ABLE TO OBTAIN OURSELVES FROM THE GEORGIA SECRETARY OF

7  STATE WEBSITE, BUT REALLY WHAT WE WANT TO KNOW FROM KAIJET U.S.

8  UNDER THIS NUMBER 2 IS WHO THE SHAREHOLDERS OR SHAREHOLDER OF

9  THE COMPANY IS.

10          WITH RESPECT TO KAIJET TAIWAN, WE HAVEN'T RECEIVED A

11  SINGLE DOCUMENT --

12          THE COURT:  LET ME INTERRUPT YOU THERE, SIR.  FROM

13  WHAT I UNDERSTAND KAIJET TAIWAN HAS NOT BEEN SERVED WITH THE

14  COMPLAINT IN THIS CASE TO DATE; IS THAT RIGHT?

15          MR. AALAEI:  YOUR HONOR, THE THIRD AMENDED COMPLAINT

16  AND SUMMONS WAS DELIVERED -- THE SUMMONS WHICH IS DIRECTED TO

17  KAIJET TAIWAN WAS DELIVERED ON DECEMBER 18TH TO KAIJET'S

18  GEORGIA OFFICE.

19          THE COURT:  OKAY.  LET ME REPHRASE THEY HAVE NOT

20  APPEARED IN THIS CASE YET?

21          MR. AALAEI:  THAT IS CORRECT, YOUR HONOR.

22          THE COURT:  OKAY.  AND I UNDERSTAND YOUR POSITION AND

23  YOUR THEORY THAT KAIJET U.S. AND KAIJET TAIWAN ARE ONE IN THE

24  SAME OR ALTER EGOS OR HOWEVER YOU WISH TO CHARACTERIZE IT, BUT

25  THE COURT HASN'T MADE THAT FINDING YET, AND THERE'S NO MOTION

1  THAT WOULD INVITE ME TO MAKE THAT FINDING, AND SO AT THIS

2  JUNCTURE I CANNOT REQUIRE -- I DON'T BELIEVE I HAVE THE

3  AUTHORITY TO REQUIRE KAIJET U.S. TO PRODUCE DOCUMENTS THAT ARE

4  IN THEIR CUSTODY, POSSESSION OR CONTROL OF WHAT IS A LEGALLY

5  DIFFERENT ENTITY UNLESS AND UNTIL THERE'S A FINDING THAT THE

6  COMPANIES ARE OVERLAPPING.

7           SO IF THAT'S WHAT YOU'RE GETTING AT, I DON'T KNOW

8  THAT I CAN GRANT THIS RELIEF.  IT SEEMS TO ME THAT IF KAIJET

9  U.S. IS REPRESENTING TO THE COURT WHICH IT SOUNDS LIKE MR.

10  CARLSON HAS AND I'LL LET HIM ELABORATE IF HE WISHES THAT ALL

11  DOCUMENTS IN THE POSSESSION, CUSTODY OR CONTROL OF KAIJET U.S.

12  THAT ARE RESPONSIVE TO THIS REQUEST HAVE BEEN PRODUCED, THEN TO

13  THE EXTENT YOU'RE REQUESTING MORE THAT WOULD BE DENIED.

14           NOW, IT SOUNDS LIKE THERE MAY BE A DISCONNECT ON

15  WHETHER THEY WERE RESPONDING PURSUANT TO WHAT THEY BELIEVED TO

16  BE A LIMITING AGREEMENT ON ITEM NUMBER 2, I DON'T HAVE ANY

17  EVIDENCE OF ANY SUCH LIMITING AGREEMENT, AND SO IF THERE'S A

18  DISAGREEMENT ON THAT, MY ONLY CHOICE IS TO HOLD KAIJET U.S. TO

19  PRODUCE ALL DOCUMENTS RESPONSIVE TO NUMBER 2 AS ARTICULATED IN

20  ITS DISCOVERY REQUESTS.

21           MR. AALAEI:  YOUR HONOR, THE ISSUE WE HAVE IS THAT

22  KAIJET U.S.'S DISCOVERY RESPONSES THEY ESSENTIALLY POINT THE

23  FINGER AT KAIJET TAIWAN AND ATTEMPT TO OUTSOURCE THE LIABILITY

24  FOR SOME OF THE CONDUCT THAT IS AT ISSUE.

25           NOW, IF THE OWNERS OF THE CORPORATION OR EVEN THE

1   OFFICERS OF THE CORPORATION HAVE A RIGHT TO OBTAIN THE

2   DOCUMENTS, THEN, YOU KNOW, OUR RESEARCH WITHIN THE ELEVENTH

3   CIRCUIT PROVIDES THAT THOSE ARE WITHIN THE POSSESSION, CUSTODY

4   AND CONTROL OF THE PARTIES THAT ARE BEFORE THE COURT, BUT THAT

5   SAID WE UNDERSTAND WHAT -- HOW THE COURT HAS LOOKED AT IT THUS

6   FAR WITH SOME OF THE SUBSTANTIVE ISSUES NOT YET BEFORE THIS

7   COURT, BUT THE BACKGROUND IS AS I HAVE STATED IT'S THAT KAIJET

8   U.S. IS THE ONE THAT HAS ESSENTIALLY BROUGHT KAIJET TAIWAN INTO

9   THIS MATTER THROUGH THEIR DISCOVERY RESPONSES.

10          THE COURT:  WELL, IT SOUNDS LIKE YOU ARE PROGRESSING

11   ON BRINGING KAIJET TAIWAN INTO THIS CASE; IS THAT RIGHT?

12          MR. AALAEI:  YES, YOUR HONOR.

13          THE COURT:  SO SOME OF THESE ISSUES MAY ULTIMATELY

14   RESOLVE THEMSELVES ONCE THEY ARE PROPERLY JOINED AND YOU HAVE

15   THE ABILITY TO PROPOUND SEPARATE DISCOVERY ON KAIJET TAIWAN.

16          MY QUESTION I GUESS IS THIS.  MR. CARLSON, HAVE YOU

17   PRODUCED ALL DOCUMENTS RESPONSIVE TO ITEM NUMBER 2 THAT ARE IN

18   THE POSSESSION, CUSTODY OR CONTROL OF YOUR CLIENT KAIJET U.S.

19   WITHOUT RESPECT TO ANY LIMITING AGREEMENT?

20          MR. CARLSON:  WELL, I WOULD SAY THE ANSWER TO THAT IS

21   NO, YOUR HONOR.  THE REQUEST IS REALLY QUITE BROAD, AND, YOU

22   KNOW, I'M WILLING TO GO BACK TO THE CLIENT AND SAY WE NEED TO

23   SEARCH FOR AND PRODUCE ADDITIONAL DOCUMENTS, BUT I RECOGNIZE

24   THAT WE DON'T HAVE DOCUMENTATION AS THE LIMITING AGREEMENT, BUT

25   WE DID HAVE AN AGREEMENT THAT WE WERE GOING TO FOCUS ON THE

1  ACCUSED PRODUCT AS A PROPORTIONAL LIMITATION IN THE DISCOVERY

2  THAT WAS SOUGHT.  SO I'M WILLING TO COOPERATE AND WE WOULD LIKE

3  TO BE COOPERATIVE IF WE CAN BE DIRECTED AS TO WHAT SHOULD WE BE

4  LOOKING FOR RATHER THAN JUST AN EXTREMELY BROAD SCOPE OF

5  DOCUMENTS THAT HAVE A VERY LIMITED OR ATTENUATED RELEVANCE TO

6  ANY OF THE ISSUES HERE.

7          THE COURT:  MR. AALAEI, I'M LOOKING THROUGH THE

8  PAPERS YOU SUBMITTED.  I DON'T SEE UNLESS I'M MISSING IT, DO I

9  HAVE THE REQUESTS FOR PRODUCTION?

10          MR. AALAEI:  YOUR HONOR, I BELIEVE EXHIBIT A WHICH

11  FOLLOWS OUR STATEMENT DOES HAVE THE DOCUMENT THAT HAS THE

12  DEMANDS REPEATED VERBATIM, ALTHOUGH I NOTE WE DID INADVERTENTLY

13  OMIT SOME OF THE DEFINITIONS.

14          THE COURT:  OKAY.  I SEE.  SO ITEM NUMBER 2 I'M GOING

15  TO OVERRULE ANY OBJECTION TO THE SCOPE OF ITEM NUMBER 2 AND

16  ORDER THE DEFENDANT TO PRODUCE ALL DOCUMENTS RESPONSIVE TO ITEM

17  NUMBER 2, AND WE CAN ADDRESS AT THE CONCLUSION WHAT THE TIMING

18  OF THESE RESPONSES WILL BE.

19          THE NEXT ITEM IS ITEM NUMBER 3.  IT SEEKS DOCUMENTS

20  ON GROSS PROFIT AND COST INFORMATION, AND NUMBER 4 SEEKS ALL

21  SALES AND FINANCIAL REPORTS.  MR. CARLSON, HAVE ALL DOCUMENTS

22  BEEN PRODUCED RESPONSIVE TO THOSE REQUESTS?

23          MR. CARLSON:  YES, THEY HAVE, YOUR HONOR, AND I THINK

24  THERE WAS A FAIRLY INDIGNANT TONE IN OUR RESPONSE INTENTIONALLY

25  BECAUSE WE BELIEVE WE'VE PRODUCED COMPLETE INFORMATION ON SALES

1  BY KAIJET U.S., AND WE HAVE TOLD SANHO'S COUNSEL THAT OUR

2  CLIENT DOES NOT SELL OUTSIDE THE U.S.  WE DON'T HAVE ANY

3  INFORMATION ON NON U.S. SALES BECAUSE WE DON'T MAKE NON U.S.

4  SALES, AND SO WE HAVE GIVEN THEM COST OF GOODS SOLD AND SALES

5  INFORMATION, YOU KNOW, WE'VE BEEN UPDATING PERIODICALLY AND SO

6  WE'VE BEEN UPDATING BY QUARTERS.  WHEN DECEMBER IS FINISHED,

7  WE'LL BE ABLE TO FINISH THE FOURTH QUARTER OF THIS YEAR.

8           THE COURT:  OKAY.

9           MR. CARLSON:  THE ISSUE HERE I THINK IS THAT SANHO IS

10 SAYING WELL, WE WANT YOUR SALES OUTSIDE THE UNITED STATES, AND

11 AGAIN BASED ON THEIR THEORY THAT THIS IS A SINGLE ENTITY WITH

12 KAIJET TAIWAN, AND THAT SIMPLY IS NOT BORNE OUT BY THE FACTS.

13          THE COURT:  RIGHT, YEAH, I THINK THAT'S THE ISSUE

14 THAT SORT OF AS YOU SAID PERMEATES A LOT OF THESE ISSUES WHICH

15 AS I SAID EARLIER THE COURT IS NOT GOING TO GO THERE YET

16 BECAUSE I HAVE NOTHING BEFORE ME TO MAKE ANY DETERMINATION IN

17 THAT REGARD.  SO AS OF NOW KAIJET U.S. IS ONLY RESPONSIBLE FOR

18 PRODUCING WHAT KAIJET U.S. HAS, NOT WHAT KAIJET TAIWAN OR ANY

19 OTHER ENTITY HAS.

20          SO, MR. AALAEI, IF THAT'S WHAT YOU WERE GETTING AT, I

21 DON'T THINK THAT THESE REQUESTS -- IT SOUNDS LIKE I'M GOING TO

22 DENY YOUR MOTION TO COMPEL ITEMS NUMBER 3 AND 4 AS MOOT

23 BECAUSE -- I GUESS IT'S NOT MOOT, BUT I'LL JUST DENY THOSE

24 REQUESTS IN LIGHT OF MR. CARLSON'S REPRESENTATION THAT ALL

25 DOCUMENTS IN THE POSSESSION, CUSTODY OR CONTROL OF HIS CLIENT

1  HAVE BEEN PRODUCED.

2          MR. AALAEI:  THANK YOU, YOUR HONOR.  UNDERSTOOD WITH

3  RESPECT TO THE ISSUE OF INTERNATIONAL SALES; HOWEVER, THESE

4  REQUESTS ARE ALSO SEEKING COST INFORMATION.  SO WHILE KAIJET

5  HAS PRODUCED OR IDENTIFIED WHAT THE COST IS, WE MAINTAIN THAT

6  WE'RE ENTITLED TO THE DOCUMENTS UNDERLYING THE COSTS WHICH IS

7  CLEARLY WITHIN THE SCOPE OF RULE 26 AND DISCOVERY.

8          FOR EXAMPLE, IF KAIJET, JUST FOR EXAMPLE IF KAIJET IS

9  REPRESENTING THAT ITS COST OF GOODS SOLD IS 52 DOLLARS, THEN WE

10  WOULD BE ENTITLED TO RECEIPTS, EVIDENCE OF PAYMENTS FOR THOSE

11  COSTS TO -- YOU KNOW, WHICH IS DIRECTLY DISCOVERABLE AND COULD

12  LEAD TO OTHER DISCOVERABLE INFORMATION RELATING TO PERSONS

13  INVOLVED AND, YOU KNOW, WHAT GOES INTO THOSE COSTS.

14          THE COURT:  WELL, YOUR REQUEST WAS TO PROVIDE ALL

15  DOCUMENTS RELATING TO GROSS PROFIT AND COST INFORMATION FOR THE

16  ULTRADRIVE.  MR. CARLSON, HAVE YOU PRODUCED ALL DOCUMENTS

17  RESPONSIVE TO THAT REQUEST FOR YOUR CLIENT?

18          MR. CARLSON:  I BELIEVE WE HAVE, YOUR HONOR, AND I

19  WOULD DIRECT MR. AALAEI TO BATES NUMBERS 2806 THROUGH 3392

20  WHICH I BELIEVE IS A COMPREHENSIVE LIST, NOT MERELY A SUMMARY

21  WHICH WE'VE ALSO PROVIDED, BUT WE'VE PROVIDED ALL OF THE

22  INVOICES THAT KAIJET U.S., TO USE THE SHORTHAND TERM, HAS PAID

23  TO ITS SUPPLIERS ON THIS SKEW, THIS PARTICULAR ACCUSED

24  PRODUCT.

25          SO WE'VE GOT THE COST FOR WHICH THE PRODUCT IS

1  BOUGHT, AND HE'S AWARE OF THE SALES.  THERE'S ONLY ONE

2  CUSTOMER, IT'S BEST BUY, AND WE'VE PRODUCED ALL THAT

3  INFORMATION.  SO WE'VE RESPONDED QUITE COMPREHENSIVELY HERE.

4        THE COURT:  SO IN LIGHT OF THAT REPRESENTATION, I'M

5  GOING TO DENY THE REQUESTS 3 AND 4.  OBVIOUSLY WITH LEAVE, MR.

6  AALAEI, IF IT COMES TO YOUR ATTENTION THAT THERE ARE ADDITIONAL

7  DOCUMENTS THAT ARE RESPONSIVE THAT HAVE NOT BEEN PRODUCED, THEN

8  WE CAN TAKE UP THE REMEDY AT THAT POINT, BUT I TAKE MR. CARLSON

9  AT HIS WORD AT THIS POINT.

10        MR. AALAEI:  UNDERSTOOD, YOUR HONOR.  THANK YOU.

11        THE COURT:  THE NEXT ITEM IS NUMBER 8 WHICH SEEKS

12  DOCUMENTS ON THE ULTRADRIVE'S MANUFACTURER, INTER ALIA, AND

13  NUMBER 12 WHICH SEEKS DOCUMENTS ON THE ULTRADRIVE'S DESIGN AND

14  DEVELOPMENT.

15        MR. CARLSON, WHAT DO YOU HAVE TO SAY TO THOSE ITEMS?

16        MR. CARLSON:  AGAIN THE STATEMENT THAT KAIJET FAILED

17  TO PRODUCE RESPONSIVE DOCUMENTS OR COMMUNICATIONS IS FALSE,

18  YOUR HONOR, AND AGAIN AN INDIGNANT TONE IN THIS RESPONSE.

19        THE COURT WILL RECALL FROM THE PRELIMINARY INJUNCTION

20  HEARING TWO WEEKS AGO I'M SURE THAT SANHO HAD A NUMBER OF EMAIL

21  COMMUNICATIONS BETWEEN PEOPLE AT KAIJET U.S. AND OTHERS AT

22  KAIJET TAIWAN REGARDING DEVELOPMENT AND DESIGN OF THIS PRODUCT

23  BACK AND FORTH, AND THERE WAS EVEN AN ALLEGATION OF COPYING

24  WHICH WE POINTED OUT THE PRODUCT WAS COMPLETED SEVERAL MONTHS

25  BEFORE A SAMPLE WAS SENT TO TAIWAN.  SO WE'VE PRODUCED THIS

1   EMAIL COMMUNICATION BACK AND FORTH.

2          AGAIN THIS COMES TO MR. AALAEI'S THEORY THAT KAIJET

3   TAIWAN IS THE SAME ENTITY WHICH IS NOT BORNE OUT BY THE FACTS,

4   AND WE DON'T HAVE THOSE EMAILS.  WE DON'T HAVE ACCESS TO THOSE

5   EMAILS, MEANING INTERNAL EMAILS AT KAIJET TAIWAN, IF ANY, AND

6   OTHER SIMILAR DOCUMENTS REGARDING THAT.

7          THE COURT:  MR. AALAEI, IS IT RIGHT THAT YOUR

8   OBJECTION HERE AGAIN GOES BACK TO THE ISSUE OF THE OVERLAPPING

9   ENTITIES?

10         MR. AALAEI:  IN PART, YOUR HONOR.  IT'S NOT JUST THE

11  OVERLAPPING ENTITIES.  IT'S, YOU KNOW, THE INDIVIDUALS THAT ARE

12  ACTUALLY INVOLVED.  FOR EXAMPLE, IF THE CEO OF KAIJET U.S. HAS

13  EMAILS THAT RELATE TO THE ACCUSED PRODUCT, THEN ALL OF THAT

14  SHOULD BE PRODUCED WHETHER, YOU KNOW, IT'S BEING LABELED AS

15  WORK DONE FOR A DIFFERENT ENTITY.

16         THE FACT IS THAT, YOU KNOW, THESE DOCUMENTS ARE

17  ACTUALLY WITHIN THE POSSESSION OF IN (INAUDIBLE) THE ISSUE, YOU

18  KNOW, AS I MENTIONED IN THE BEGINNING DOES APPEAR TO BE THAT

19  DEFENDANT IS TAKING THE POSITION THAT IF, YOU KNOW, IF IT'S A

20  KAIJET TAIWAN EMAIL THEN IT NEED NOT BE TURNED OVER, BUT FROM

21  OUR VIEW THE PERSONS THAT WE'RE TALKING ABOUT HERE ARE THE

22  SAME.

23         THE COURT:  WELL, THERE'S MECHANISMS TO OBTAIN THAT

24  DISCOVERY.  IF KAIJET TAIWAN IS BROUGHT INTO THE CASE, THEN

25  THAT WOULD RESOLVE IT BECAUSE YOU COULD MAKE THESE SAME

1  REQUESTS TO KAIJET TAIWAN.  IF THEY'RE NOT BROUGHT INTO THE

2  CASE, YOU COULD SERVE A NONPARTY SUBPOENA ON THE CEO OF KAIJET

3  TAIWAN AND DEMAND THE PRODUCTION OF THOSE EMAILS OR OTHER

4  DOCUMENTS, BUT WHAT YOU CANNOT DO IN MY VIEW IS ASK THE CEO OF

5  KAIJET U.S. -- YOU CANNOT SERVE DISCOVERY ON KAIJET U.S. ASKING

6  THAT IT PRODUCE EMAILS AND OTHER DOCUMENTS THAT ARE IN THE

7  POSSESSION, CUSTODY OR CONTROL OF ANOTHER ENTITY.

8          MR. AALAEI:  YOUR HONOR, WE LOOKED AT THIS VERY

9  CLOSELY.  I UNDERSTAND THE COURT'S CONCERN.  WE FOUND A CASE

10  WHICH IT'S FAIRLY RECENT.  IT'S AN ELEVENTH CIRCUIT CASE, AND

11  THE CASE NAME IS SERGEEVA, S E R G E E V A.  THE CITATION IS

12  834 F DOT 3D1194, AND IT'S A 2016 DECISION, AND AT PAGE 1201 IT

13  APPEARS TO ADDRESS AN ANALOGOUS SITUATION THAT WE HAVE HERE

14  WHERE, YOU KNOW, THE INDIVIDUALS ARE THE SAME, YOU KNOW,

15  THEY'RE WORKING TOGETHER, AND THE COURT IN THIS SERGEEVA

16  DECISION HELD THAT THE PARTIES WERE REQUIRED TO PRODUCE BECAUSE

17  THE DOCUMENTS BASED ON ANALOGOUS FACTS FELL WITHIN THE

18  DEFINITION OF CONTROL.

19          THE COURT:  AND I HAVEN'T READ THAT CASE, BUT IN THAT

20  CASE WAS THE COURT BASING ITS RULING ON A FINDING THAT THE

21  COMPANIES WERE OVERLAPPING?

22          MR. AALAEI:  I BELIEVE THAT THE FINDING WAS BASED ON

23  THE FACT THAT THE COMPANIES HAD PARTIES THAT WERE WORKING

24  TOGETHER WHICH --

25          THE COURT:  YEAH, AND THAT'S MY POINT IS I HAVEN'T

 1  MADE THAT FINDING, AND I HAVEN'T BEEN PRESENTED WITH ANY

 2  REQUESTS TO DO SO.

 3          MR. AALAEI:  YOUR HONOR, WE HAVE KAIJET U.S.'S

 4  DISCOVERY RESPONSES WHICH STATE THAT THEY'RE WORKING TOGETHER

 5  IN THAT, YOU KNOW, CERTAIN ACTIVITIES ARE PERFORMED BY KAIJET

 6  TAIWAN.  SO THE STATE OF EVIDENCE OR THE FACTS THAT HAVE

 7  ALREADY BEEN OBTAINED THROUGH DISCOVERY AT A MINIMUM SHOW THAT

 8  THEY'RE WORKING TOGETHER AND, YOU KNOW, MOST LIKELY THERE'S A

 9  LOT MORE OVERLAP.

10          THE COURT:  HERE'S WHAT WE'LL DO, MR. AALAEI, AND

11  THIS MAY HELP RESOLVE SOME OF THESE DISCOVERY DISPUTES IN FRONT

12  OF US FOR PURPOSES AT LEAST FOR TODAY.  I INVITE YOU TO FILE A

13  MOTION FOR A COURT DETERMINATION OF ALTER EGO STATUS FOR

14  PURPOSES OF DISCOVERY.  IN OTHER WORDS, THE RELIEF THAT YOU'RE

15  REQUESTING THAT I ORDER ONE PARTY TO PRODUCE DOCUMENTS IN THE

16  POSSESSION OF ANOTHER BECAUSE THEY HAVE OVERLAPPING OFFICERS OR

17  OTHER OVERLAPPING STRUCTURE.  I INVITE YOU TO FILE THAT MOTION

18  WITH AUTHORITY FOR ME TO MAKE THAT FINDING, AND THE EVIDENCE

19  THAT YOU HAVE PUT TOGETHER WITH THE DISCOVERY AND

20  REPRESENTATIONS BY THE DEFENDANTS THUS FAR, AND I AM HAPPY TO

21  CONSIDER THAT, AND IF I MAKE THAT FINDING, THEN I THINK WE

22  WOULD BE IN A DIFFERENT POSTURE WITH RESPECT TO MANY OF THESE

23  DISCOVERY REQUESTS, BUT UNTIL I MAKE THAT FINDING, I'M NOT

24  GOING TO GO AS FAR AS YOU'RE ASKING ME TO GO.

25          DOES THAT MAKE SENSE?

1          MR. AALAEI:  UNDERSTOOD, YES, YOUR HONOR, THAT MAKES

2    SENSE.  THANK YOU.

3          THE COURT:  SO IN LIGHT -- AND I'M NOT ORDERING YOU

4    TO FILE THAT, BUT IF YOU THINK YOU'RE AT THE POINT WHERE YOU

5    HAVE SUFFICIENT EVIDENCE TO MAKE THAT CASE, YOU MAY DO SO AT

6    ANY TIME PRIOR TO THE DISCOVERY PERIOD CLOSING OBVIOUSLY, BUT

7    IN LIGHT OF THAT, ARE THERE OTHER DISCOVERY ITEMS THAT YOU WISH

8    TO TAKE UP?

9          MR. AALAEI:  YES, YOUR HONOR.  THANK YOU.  THAT

10   SHOULD HELP RESOLVE SOME OF THESE OTHER ONES FOR TODAY, AND

11   WHAT WE'LL DO BEFORE WE FILE A MOTION LIKE THAT IS WE'LL CALL

12   MR. CARLSON AND ATTEMPT TO TALK ABOUT IT A LITTLE BIT MORE.

13         THE COURT:  I ALWAYS APPRECIATE THAT.

14         MR. AALAEI:  OF COURSE.  OF COURSE.  THERE ARE STILL,

15   YOUR HONOR, A FEW ISSUES HERE THAT I'D LIKE TO JUST TOUCH ON

16   BRIEFLY.  ONE IS THAT THERE HAS BEEN AN OVER DESIGNATION OF

17   DOCUMENTS IN THE PRODUCTION, AND THERE'S REALLY TWO ISSUES.

18   ONE ISSUE IS THAT KAIJET HAS REDACTED IMPORTANT COMMUNICATIONS,

19   EVEN REDACTIONS ON ATTORNEYS' EYES ONLY COMMUNICATIONS TO WHERE

20   OUR SIDE IS THEREFORE NOT ABLE TO READ THE EMAILS AND

21   UNDERSTAND WHAT'S GOING ON.  THAT'S THE FIRST ISSUE.

22         THE SECOND ISSUE IS THAT KAIJET HAS ALSO MARKED ITS

23   PROFIT INFORMATION ATTORNEYS' EYES ONLY SUCH THAT WHILE THE

24   ATTORNEYS CAN LOOK AT THE PROFIT INFORMATION, THE CLIENT

25   CANNOT, AND THAT REALLY FRUSTRATES OUR ABILITY TO DO OUR JOB IN

1  THIS CASE WHICH INCLUDES ADR, AND, YOU KNOW, PROFIT INFORMATION

2  THAT CLEARLY GOES TO DAMAGES.

3        SO THERE'S THIS REDACTION ISSUE.  THERE ARE -- AND

4  THERE'S ONE ISSUE WITH THE INTERROGATORIES WHICH IS THAT

5  KAIJET'S INTERROGATORIES DON'T IDENTIFY THE WITNESSES AND

6  PROVIDE THEIR ADDRESSES.  OTHER THAN THESE TWO ISSUES, YOUR

7  HONOR, I THINK THAT'S ALL WE HAVE IN LIGHT OF THE COURT'S PRIOR

8  RULINGS.

9        THE COURT:  OKAY.  LET'S TAKE THE LAST ONE FIRST

10  WHICH IS I BELIEVE YOU'RE REFERRING TO INTERROGATORY NUMBERS 1

11  THROUGH 5 WHERE IT ASKS KAIJET TO IDENTIFY WITNESSES?

12        MR. AALAEI:  YES, YOUR HONOR.

13        THE COURT:  AND, MR. CARLSON, WHAT IS THE OBJECTION

14  TO DOING SO?

15        MR. CARLSON:  WE HAVE IDENTIFIED WITNESSES, AND I

16  THINK WE DESIGNATED THOSE WITNESSES THAT WE MAY CALL.  OUR

17  POSITION IN THE MEET AND CONFER WAS THIS.  WE HAVE A NEW THIRD

18  AMENDED COMPLAINT NOW, AND WE'RE GOING TO ANSWER AND HAVE

19  COUNTERCLAIMS AS TO THAT THAT WE THOUGHT IT APPROPRIATE THAT

20  ONCE THOSE COUNTERCLAIMS WERE FORMALIZED, WE WOULD REVISIT THIS

21  AND RESPOND RECOGNIZING THE NEED FOR CLEARER IDENTIFICATIONS.

22        WITH REGARD TO ADDRESSES, YOU KNOW, THEY ARE INTERNAL

23  AND IF THEY ARE FOLKS WHO ARE AT KAIJET U.S. OR WITHIN THE

24  CONTROL OF OUR COMPANY, I THINK IT'S CUSTOMARY AT LEAST TO SAY

25  WELL DON'T CONTACT THEM EXCEPT THROUGH OUR OFFICE.  SO I'M NOT

1   CERTAIN WHAT THE OBJECTION IS WITH REGARD TO ADDRESSES, FOR

2   EXAMPLE, HOME ADDRESS IF THAT'S WHAT MR. AALAEI IS LOOKING FOR.

3           SO TWO ANSWERS, A LONG ANSWER TO A SHORT QUESTION FOR

4   WHICH I APOLOGIZE, BUT THE SHORT ANSWER IS WE INTEND TO FILE

5   OUR INTERROGATORY RESPONSE AS NECESSARY ONCE WE'VE COMPLETED A

6   NEW COUNTERCLAIM IN RESPONSE TO THE THIRD AMENDED COMPLAINT,

7   AND I GUESS I HAVE A QUESTION AS TO WHAT IS THE NEED TO PROVIDE

8   FOR EXAMPLE HOME ADDRESSES.  CERTAINLY WE'LL DO SO IF THE COURT

9   WISHES US TO.

10          THE COURT:  WELL CERTAINLY YOU HAVE A DUTY TO

11  SUPPLEMENT YOUR INTERROGATORY RESPONSES AS THEY CHANGE AND

12  DEVELOP, AND SO I UNDERSTAND THAT YOU MAY HAVE ADDITIONAL

13  WITNESSES AFTER YOU ASSERT COUNTERCLAIMS, BUT IT SEEMS TO ME

14  THAT THAT DOES NOT OBVIATE YOUR OBLIGATION TO RESPOND TO THE

15  DISCOVERY AT HAND BASED ON THE OPERATIVE COMPLAINT.

16          MR. CARLSON:  I SHOULD HAVE BEEN MORE CLEAR, YOUR

17  HONOR, BECAUSE I BELIEVE WE HAVE.  I THINK WE'VE IDENTIFIED

18  WITNESSES THAT --

19          THE COURT:  OKAY.  ALL YOU'RE SAYING IS THAT THERE

20  WILL BE A SUPPLEMENT BASED ON YOUR TO BE ASSERTED

21  COUNTERCLAIMS, BUT TO THIS POINT YOU HAVE RESPONDED FULLY?

22          MR. CARLSON:  RIGHT, I BELIEVE WE HAVE.

23          THE COURT:  OKAY.  WITH REGARD TO THE ADDRESSES, MR.

24  AALAEI, I AGREE THAT IF THEY ARE WITNESSES THAT ARE WITHIN THE

25  CONTROL OF THE DEFENDANT AND ARE OF THE TYPE THAT THE DEFENDANT

1   WOULD PRODUCE FOR EXAMPLE WITHOUT THE NEED FOR A SUBPOENA FOR

2   DEPOSITION, THEN THERE'S REALLY NO NEED FOR THEIR ADDRESSES.

3   ON THE OTHER HAND, IF THEY ARE THIRD-PARTY WITNESSES THAT WOULD

4   REQUIRE YOU TO LOCATE AND SERVE WITH LEGAL PROCESS, THEN YOU

5   WOULD BE ENTITLED THOSE ADDRESSES.

6           SO WITH THAT SAID, DO YOU STILL BELIEVE THAT THE

7   RESPONSES ARE DEFICIENT?

8           MR. AALAEI:  WE DO, YOUR HONOR, YOU KNOW, TO START

9   HOME ADDRESSES WOULD BE DISCOVERABLE, AND WE'RE ANTICIPATING

10  THAT SERVICE ON -- WE'RE ANTICIPATING SOME OBJECTIONS RELATING

11  TO SERVICE ON KAIJET TAIWAN, AND GETTING KAIJET TAIWAN SERVED

12  WHICH, YOU KNOW, WE STARTED THE PROCESS AND WE'RE GOING TO

13  CONTINUE TO WORK ON IT, YOU KNOW, WE WOULD LIKE THOSE HOME

14  ADDRESSES SO THAT WE COULD FACILITATE THIS CASE AND BRING THE

15  PARTIES IN BEFORE THE COURT, SO WE WOULD LIKE THE HOME

16  ADDRESSES.  WE NEED THEM FOR THE STEVEN LIAO AND JESSICA

17  LIAO --

18          THE COURT:  AND YOU'RE SAYING YOU NEED THEM IN THEIR

19  CAPACITY AS OFFICERS OF KAIJET TAIWAN; IS THAT RIGHT?

20          MS. GENTES:  WE NEED THEIR LOCATION IN PARTICULAR

21  THEIR USUAL PLACE OF ABODE FOR PURPOSES OF SERVING THE

22  COMPLAINT AND SUMMONS.

23          THE COURT:  I MEAN IN LIGHT OF -- IF THAT IS

24  INFORMATION THAT KAIJET U.S. HAS WHICH IT SOUNDS LIKE THEY DO

25  THAT SEEMS LIKE A REASONABLE REQUEST IN LIGHT OF THE NEED TO

1  FIND A MEANS FOR SERVING KAIJET TAIWAN.

2          MR. CARLSON, DO YOU DISAGREE WITH THAT?

3          MR. CARLSON:  I DON'T, YOUR HONOR.  I MEAN I THINK

4  OBVIOUSLY ALL OF THESE WITNESSES HAVE SOME PRIVACY CONCERNS

5  WITH RESPECT TO THEIR HOME ADDRESSES, BUT I BELIEVE IT PROBABLY

6  IS WITHIN THE SCOPE OF KNOWLEDGE OF THE CORPORATE ENTITY, AND

7  SO WE WILL SUPPLEMENT, AND I HAVE TO BE HONEST THAT I'M NOT

8  SURE THAT WE HAVE ASKED THE CORPORATION WHETHER THEY HAVE THIS

9  ADDRESS INFORMATION, AND TO THE EXTENT THEY DO, WE'LL PROVIDE

10 IT.

11         THE COURT:  YES.  I'M SURE IF YOU ARE WILLING TO

12 ACCEPT SERVICE ON BEHALF OF KAIJET TAIWAN MR. AALAEI WOULDN'T

13 NEED THOSE ADDRESSES, BUT I SUSPECT THAT'S NOT COMING.

14         MR. CARLSON:  WELL, THAT'S CORRECT, YOUR HONOR, WE

15 HAVE NO AUTHORITY TO DO THAT.

16         THE COURT:  OKAY.  SO I WILL ORDER THE DEFENDANT TO

17 SUPPLEMENT ITS RESPONSES TO INTERROGATORY NUMBERS 1 THROUGH 5

18 TO THE EXTENT ADDRESS INFORMATION RELATES TO OFFICERS OR OTHER

19 KEY EMPLOYEES OF KAIJET TAIWAN.

20         DOES THAT COVER IT, MR. AALAEI?

21         MR. AALAEI:  YES, YOUR HONOR, I THINK THAT SHOULD

22 COVER IT, YOU KNOW, WITH THE UNDERSTANDING THAT KAIJET U.S. IS

23 COMPLYING WITH THE INTERROGATORIES AND IDENTIFYING ANYONE THAT

24 THEY CONTEND HAS KNOWLEDGE ABOUT THE MATTERS THAT ARE BEING

25 ASKED ABOUT WHICH I UNDERSTAND MR. CARLSON TO BE SAYING THAT HE

1  ALREADY HAS DONE AND THAT HE IS PLANNING TO DO.

2        THE COURT:  OKAY.  NOW WITH REGARD TO THE REDACTIONS,

3  I WAS HAVING TROUBLE FOLLOWING YOU EARLIER, MR. AALAEI.  IS IT

4  ONE ISSUE WITH REGARD TO FINANCIAL INFORMATION, OR ARE THERE

5  TWO DIFFERENT REDACTION ISSUES?

6        MR. AALAEI:  SURE, YOUR HONOR, THERE'S TWO DIFFERENT

7  REDACTION ISSUES.  I DON'T THINK EITHER RELATES TO -- SORRY,

8  ONE ISSUE DOES RELATE TO FINANCIAL INFORMATION WHICH IS THE

9  PROFIT INFORMATION.  IT'S BEEN MARKED ATTORNEYS' EYES ONLY SUCH

10  THAT IT CAN'T BE SHARED WITH THE CLIENT, AND FROM OUR VIEW

11  THAT'S PRETTY IMPORTANT INFORMATION.  IT'S RELEVANT TO

12  DAMAGES.  IT'S SOMETHING THAT IN THE ORDINARY COURSE AN

13  ATTORNEY WOULD WANT TO DISCUSS WITH THEIR CLIENT IN ORDER TO

14  MOVE THE CASE ALONG AND WORK TOWARDS POTENTIAL RESOLUTION.  SO

15  THE FACT THAT WE HAVEN'T BEEN ABLE TO SHARE THAT INFORMATION

16  WITH THE CLIENT, IT HAS IMPEDED OUR JOB, SO THAT'S ONE ISSUE.

17        AND THEN THE SECOND ISSUE IS THAT THERE ARE OTHER

18  COMMUNICATIONS WHICH NOT ONLY HAVE THEY BEEN MARKED ATTORNEYS'

19  EYES ONLY, BUT THEY'VE ALSO BEEN REDACTED, AND THE REDACTIONS

20  ARE APPEARING IN IMPORTANT EMAILS.  SO, YOU KNOW, WITHOUT

21  REMOVAL OF THOSE REDACTIONS, THERE'S NO WAY FOR US TO REALLY

22  UNDERSTAND WHAT'S GOING ON IN THE EMAILS.

23        THE COURT:  OKAY.  LET'S TAKE UP THAT LAST ONE

24  FIRST.  MR. CARLSON, IF THEY'VE BEEN MARKED AS ATTORNEYS' EYES

25  ONLY, WHY DO THEY ALSO NEED TO BE REDACTED?

1           MR. CARLSON:  YOUR HONOR, WE ASKED DURING THE MEET

2    AND CONFER FOR SANHO'S COUNSEL TO IDENTIFY SPECIFIC DOCUMENTS

3    THAT THEY'RE TALKING ABOUT, AND I'M NOT AWARE THAT WE REDACTED

4    ANY EMAILS.  WE DID IN THE PRODUCTION OF INVOICES, WE DID

5    REDACT INFORMATION RELATED TO OTHER PRODUCTS OTHER THAN THE

6    SPECIFIC -- YOU KNOW, ON AN INVOICE, FOR EXAMPLE, OR ON A

7    PAYMENT STUB, WE'LL HAVE ORDERED, YOU KNOW, OUR CLIENT WILL

8    HAVE ORDERED A NUMBER OF DIFFERENT PRODUCTS, AND SO WE REDACTED

9    INFORMATION AS TO PRODUCTS THAT ARE NOT THE ACCUSED PRODUCT

10   HERE, AND THEN PRODUCED THOSE AS ATTORNEYS' EYES ONLY.

11          THE ISSUE THAT WE HAVE IS THE OTHER PRODUCT

12   INFORMATION IS ABSOLUTELY NOT RELEVANT.  NONE OF THESE PRODUCTS

13   ARE ACCUSED, AND THE PROBLEM WITH EVEN ATTORNEYS' EYES ONLY

14   DOCUMENTS IS THEY HAVE A WAY OF COMING TO LIGHT AT SOME POINT.

15   A GOOD ILLUSTRATION IS THE PRELIMINARY INJUNCTION HEARING TWO

16   WEEKS AGO AT WHICH MR. CHEN, SANHO'S CEO WAS PRESENT, MR.

17   AALAEI INADVERTENTLY I'M SURE, BUT HE DISCLOSED THE MONTHLY

18   SALES BY KAIJET OF THE ACCUSED PRODUCT WHICH IS INFORMATION

19   THAT WAS PROVIDED UNDER ATTORNEYS' EYES ONLY.  WE DIDN'T OBJECT

20   AT THE TIME BECAUSE I DIDN'T WANT TO FLAG THAT FOR MR. CHEN,

21   BUT THERE HE WAS IN THE COURTROOM HEARING INFORMATION THAT HE

22   WAS NOT SUPPOSED TO HEAR.

23          SO CERTAINLY WITH RESPECT TO INVOICES AND THE

24   SPECIFIC DOCUMENTS ON DIFFERENT PRODUCTS, WE HAVE -- WE DID

25   REDACT THAT PRODUCT INFORMATION, AND DON'T SEE ANY -- JUST

1  BECAUSE IT WAS IMPOSSIBLE TO OTHERWISE EXTRACT THE INFORMATION

2  SPECIFIC TO THE ACCUSED PRODUCT IN THIS CASE.

3          THE COURT:  LET'S FIRST MAKE SURE WE'RE ALL TALKING

4  ABOUT THE SAME THING BECAUSE IT SOUNDS LIKE, MR. AALAEI, YOU

5  WERE REFERRING TO EMAILS?

6          MR. AALAEI:  YES, YOUR HONOR.

7          THE COURT:  SO WHICH EMAILS EXACTLY ARE YOU SAYING

8  WAS INAPPROPRIATELY REDACTED?

9          MR. AALAEI:  SO WE'VE PROVIDED AN EXAMPLE AS AN

10  ATTACHMENT TO OUR STATEMENT.  IT'S EXHIBIT B.  THESE ARE

11  EXAMPLES ONLY, BUT ASSUMING EXHIBIT B --

12          THE COURT:  I HAVE IT, YES.

13          MR. AALAEI:  SO THE FIRST ONE RELATES TO THAT ISSUE

14  ABOUT REDACTION OF THE PROFIT.  AFTER -- AND YOU CAN SEE THE

15  FIRST TWO PAGES, BUT AFTER THE FIRST TWO PAGES, YOU SEE THERE

16  ARE EMAILS THAT HAVE ALSO BEEN REDACTED.

17          THE COURT:  I'M LOOKING AT IF I'M FOLLOWING YOUR

18  CHRONOLOGY WOULD IT BE WHAT IS BATES STAMPED AS KAIJET 2517?

19          MR. AALAEI:  YES, YOUR HONOR.

20          THE COURT:  DO YOU HAVE THAT, MR. CARLSON?

21          MR. CARLSON:  I DO, YOUR HONOR.

22          THE COURT:  IT GOES THROUGH UNTIL 2526, AND IT DOES

23  APPEAR THAT THERE ARE REDACTIONS THROUGHOUT.  SO, MR. CARLSON,

24  WHY WERE THESE REDACTED?

25          MR. CARLSON:  I BELIEVE, YOUR HONOR, THAT YOU'LL NOTE

1  THAT WE PRODUCED THESE AS CONFIDENTIAL RATHER THAN AS

2  ATTORNEYS' EYES ONLY, BUT THE REDACTED PORTIONS ARE NON --

3  AGAIN RELATED TO OTHER PRODUCTS THAT ARE NOT U.S. PRODUCTS AND

4  NOT RELATED TO THIS ACTION.

5         THE COURT:  THAT'S A GOOD POINT --

6         MR. CARLSON:  MS. GENTES MAY HAVE MORE INFORMATION.

7         THE COURT:  REGARDLESS THAT'S A GOOD POINT, THESE ARE

8  NOT ATTORNEYS' EYES ONLY SO THESE PRESUMABLY COULD BE SHARED

9  WITH THE CLIENT WHICH WOULD THEN EXPLAIN WHY INFORMATION HAS

10 BEEN REDACTED.

11        MR. AALAEI, WOULD YOU LIKE A VERSION OF THESE

12 UNREDACTED BUT ATTORNEYS' EYES ONLY?

13        MR. AALAEI:  I APOLOGIZE, YOUR HONOR, I MISSED THE

14 FIRST PART OF YOUR QUESTION.  I'M SORRY I JUST COULDN'T HEAR IT

15 OVER THE PHONE.

16        THE COURT:  WHAT I WAS SAYING IS THAT THESE DOCUMENTS

17 ARE NOT MARKED ATTORNEYS' EYES ONLY.  THEY ARE MARKED

18 CONFIDENTIAL WHICH WOULD RENDER THEM ACCESSIBLE TO YOUR CLIENT.

19        MR. AALAEI:  YES, YOUR HONOR, BUT THE ISSUE IS THAT

20 IT IS MY UNDERSTANDING THAT THESE DOCUMENTS HAVE NOT BEEN

21 PRODUCED WITHOUT REDACTIONS EVEN AS ATTORNEYS' EYES ONLY SUCH

22 THAT NEITHER THE ATTORNEYS OR THE CLIENT IS ABLE TO SEE WHAT'S

23 IN THERE, AND WHAT WE CAN SEE IS THAT IN MANY OF THESE EMAILS

24 CLEARLY THEY'RE RELEVANT.  THEY'RE TALKING ABOUT THE

25 HYPERDRIVE, BUT THE BOTTOM PART IS REDACTED SO -- AND WE HAVE

1  NO WAY OF KNOWING WHAT'S IN THERE IS THE ISSUE.

2          THE COURT:  MS. GENTES, DO YOU KNOW WHAT THESE

3  REDACTIONS RELATE TO?

4          MS. GENTES:  YES, YOUR HONOR, THEY RELATE TO OTHER

5  PRODUCTS THAT WERE PART OF THIS PACKAGE THAT WERE SENT.  THEY

6  ARE NOT IN THE SAME REALM OF THE ACCUSED PRODUCT OR THE

7  HYPERDRIVE PRODUCT.

8          IN AN EFFORT TO PRODUCE THESE AS CONFIDENTIAL, WE

9  REDACTED THAT INFORMATION, BUT I DON'T THINK THERE WOULD BE A

10 PROBLEM WITH PRODUCING IT AEO.  THE ISSUE IS IS THAT GIVING

11 THIS INFORMATION TO THE CLIENT MIGHT TELESCOPE OTHER TYPES OF

12 PRODUCTS THAT OUR CLIENT WAS INTERESTED IN EXPLORING.

13         THE COURT:  OKAY.  SO DID I HEAR YOU THAT YOU HAVE NO

14 OBJECTION TO PRODUCING THESE UNREDACTED AS ATTORNEYS' EYES

15 ONLY.

16         MS. GENTES:  NO, NO OBJECTION, YOUR HONOR.

17         THE COURT:  I MEAN THIS IS AN EXAMPLE IT SEEMS LIKE

18 THIS IS SOMETHING THAT YOU ALL COULD HAVE WORKED OUT WITHOUT

19 ME.  SO I'M NOT SURE WHY THERE'S THIS BREAKDOWN OF

20 COMMUNICATION BETWEEN YOU ALL, BUT I WILL ORDER THE DEFENDANTS

21 TO PRODUCE ALL DOCUMENTS THAT HAVE BEEN REDACTED THAT ARE

22 MARKED CONFIDENTIAL SHOULD BE SUPPLEMENTED AND PRODUCED

23 UNREDACTED MARKED ATTORNEYS' EYES ONLY.

24         WITH REGARD TO THE FINANCIAL INFORMATION OR I GUESS

25 THE PROFIT INFORMATION I SHOULD SAY, MR. CARLSON OR MS. GENTES,

1  DO YOU WANT TO ADDRESS THAT ISSUE?

2        MR. CARLSON:  YES, I'LL JUMP BACK IN, YOUR HONOR.  A

3  GOOD EXAMPLE I THINK IF YOU LOOK AGAIN AT EXHIBIT B, THE FIRST

4  TWO PAGES OF EXHIBIT B ARE TWO EXAMPLES OF WHERE WE PRODUCED

5  KAIJET BATES NUMBER 0072 ATTORNEYS' EYES ONLY COMPLETELY

6  UNREDACTED, AND IN A REDACTED BUT CONFIDENTIAL DESIGNATION ON

7  THE NEXT PAGE SHOWING THAT WE HAVE TAKEN OUT MARGIN, PRICE AND

8  FOB COSTS SO THAT THAT COULD BE SHARED WITH SANHO'S PRINCIPAL.

9        THE COURT:  I GUESS WHAT MR. AALAEI IS SAYING IS THAT

10  HE NEEDS THAT INFORMATION TO HELP FOSTER SOME DISCUSSION ABOUT

11  SETTLEMENT.

12        MR. CARLSON:  I DO UNDERSTAND THAT, AND I THINK WHAT

13  I WOULD LIKE TO SUGGEST IS THAT WE TALK ABOUT AND I THINK WE

14  HAVE TALKED ABOUT IT IN MORE GENERAL TERMS TO GIVE AN ESTIMATE

15  OF WHAT DAMAGES MIGHT BE, YOU KNOW, TO BE ABLE TO TALK ABOUT

16  SETTLEMENT WITHOUT TURNING OVER SPECIFIC INFORMATION THAT

17  SHOULD CLEARLY BE WITHIN THE SCOPE OF ATTORNEYS' EYES ONLY, AND

18  I WILL SAY THAT SANHO DID THE SAME THING.  THEY WERE VERY BROAD

19  IN THEIR USE OF ATTORNEYS' EYES ONLY DESIGNATION IN REGARD TO

20  THEIR FINANCIAL INFORMATION, AND I THINK THAT'S APPROPRIATE

21  FRANKLY.  THIS IS NOT SOMETHING THAT SHOULD BE SHARED WITH

22  MANAGEMENT OF EITHER COMPANY.

23        THE COURT:  WELL, I DO AGREE WITH THAT, BUT SINCE

24  I'M -- I WOULD HATE FOR THE CASE NOT TO GET RESOLVED SIMPLY

25  BECAUSE OF A LACK OF TRANSPARENCY ON SORT OF RELEVANT DAMAGES

1  OR PROFITS.  IS THIS SOMETHING THAT THE PARTIES THINK THEY CAN

2  TALK ABOUT FURTHER OFFLINE AND PERHAPS FASHION SOME SORT OF

3  PROTECTIVE ORDER FOR THE CLIENTS TO SIGN THAT WOULD BE LIMITED

4  TO UTILIZING THE INFORMATION THAT IS SHARED ONLY FOR PURPOSES

5  OF SEEKING A RESOLUTION TO THE CASE.

6          MR. AALAEI:  YES, YOUR HONOR, ALI AALAEI FOR

7  PLAINTIFF, THAT'S COMPLETELY FINE.  YOU KNOW, I APOLOGIZE IF AT

8  THE HEARING THERE WAS ANY INADVERTENT MENTION OF A PROFIT

9  FIGURE, BUT, YOU KNOW, WE -- OUR CLIENT HAS READ THE PROTECTIVE

10 ORDER.  WE FULLY INTEND ON COMPLYING WITH IT, AND WE'RE HAPPY

11 TO MAKE FURTHER REPRESENTATIONS, YOU KNOW, DO WHATEVER IS

12 NECESSARY TO MEET ANY CONFIDENTIALITY CONCERNS, WHAT HAVE YOU.

13         IT'S JUST THAT THIS IS REALLY A FUNDAMENTAL PIECE OF

14 THE CASE, AND IT MAKES IT DIFFICULT FOR THE ATTORNEYS TO DO

15 THEIR JOB WITHOUT BEING ABLE TO COMMUNICATE WITH THE CLIENT

16 ABOUT THIS.

17         THE COURT:  ALL RIGHT.  WELL, FOR PURPOSES OF

18 DISCOVERY, I THINK WHAT KAIJET U.S. HAS DONE HERE IS

19 APPROPRIATE IN TERMS OF REDACTING THE INFORMATION, THE

20 FINANCIAL INFORMATION ON THE CONFIDENTIAL VERSION OF, FOR

21 EXAMPLE, THE DOCUMENT BATES STAMPED KAIJET 72 WHILE PROVIDING

22 AN UNREDACTED COPY AS ATTORNEYS' EYES ONLY, AND SO WITH REGARD

23 TO DISCOVERY, THE DISCOVERY REQUESTS I'M GOING TO DENY THE

24 PLAINTIFF'S REQUEST IN THAT REGARD.

25         HAVING SAID THAT, I DO SEE THE VALUE OF SHARING

1   FINANCIAL NUMBERS EVEN IN BROAD TERMS WITH EACH OTHER FOR

2   PURPOSES OF RESOLVING THE CASE, AND SO TO THE EXTENT THAT THE

3   CURRENT PROTECTIVE ORDER DOES NOT ADEQUATELY PROTECT YOUR

4   INTERESTS IN THAT REGARD, I'M HAPPY TO CONSIDER AN ADDITIONAL

5   PROTECTIVE ORDER THAT YOU WISH TO SUBMIT FOR PURPOSES OF

6   SHARING FINANCIAL INFORMATION FOR SETTLEMENT NEGOTIATION

7   PURPOSES.

8            DOES THAT RESOLVE ALL OF THE REMAINING ITEMS, MR.

9   AALAEI?

10           MR. AALAEI:  IT DOES, YOUR HONOR, FOR NOW.  THANK YOU

11  VERY MUCH.

12           THE COURT:  SO JUST TO RECAP WITH WHAT SORT OF THE

13  HOMEWORK ASSIGNMENTS ARE, IF YOU WILL, THAT COME OUT OF THIS,

14  KAIJET U.S. IS GOING TO PRODUCE A PRIVILEGE LOG BY MONDAY,

15  DECEMBER 23RD.  IT'S GOING TO SUPPLEMENT ITS PRODUCTION TO ITEM

16  NUMBER 2 OF THE REQUEST FOR PRODUCTION, AND IT IS GOING TO

17  PRODUCE ANY DOCUMENTS THAT WERE REDACTED AND MARKED

18  CONFIDENTIAL ARE GOING TO BE REPRODUCED UNREDACTED WITH THE

19  ATTORNEYS' EYES ONLY DESIGNATION.

20           ANYTHING THAT I'M MISSING, MR. AALAEI OR MR.

21  CARLSON?

22           MR. AALAEI:  YOUR HONOR, WITH RESPECT TO THE REQUESTS

23  FOR PRODUCTION NUMBER 3 SEEKING DOCUMENTS ON GROSS PROFIT AND

24  COST INFORMATION, WE UNDERSTAND THE COURT'S RULING AND

25  DIRECTION WITH RESPECT TO THE ISSUE OF INTERNATIONAL SALES, AND

1  THERE WAS A STATEMENT THAT ALL THE COST INFORMATION THAT KAIJET

2  U.S. HAS HAS BEEN PRODUCED.  WITH THAT -- AND IF THAT'S WHAT

3  THE REPRESENTATION IS, YOU KNOW, WE'LL GO BACK AND LOOK AT THE

4  BATES NUMBERS THAT WERE REFERENCED, BUT OTHER THAN THAT,

5  THERE'S THE WITNESSES ISSUE AND THE ADDRESSES AND THAT'S ALL.

6           THE COURT:  YEAH, THANK YOU FOR REMINDING ME.  WITH

7  REGARD TO ITEM NUMBER 3, I DENIED THAT REQUEST GIVEN MR.

8  CARLSON'S REPRESENTATION THAT ALL RESPONSIVE ITEMS HAVE BEEN

9  PRODUCED ON BEHALF OF HIS CLIENT, AND OBVIOUSLY THIS IS ALL

10 SUBJECT TO REVISITING THAT IF THE COURT EVER MAKES A FINDING OF

11 OVERLAPPING ENTITIES, BUT AT THIS POINT THAT REQUEST IS

12 DENIED.

13          BUT YOU'RE CORRECT WITH REGARD TO THE ADDRESSES, I

14 ALSO ORDERED KAIJET U.S. TO PRODUCE ADDRESS AND OTHER CONTACT

15 INFORMATION THAT'S BEEN REQUESTED OF ANY OFFICERS OR OTHER KEY

16 EMPLOYEES OF KAIJET TAIWAN ASSUMING OBVIOUSLY SUBJECT TO THAT

17 INFORMATION BEING IN THE POSSESSION OF KAIJET U.S., AND IT'S

18 HARD FOR ME TO ENVISION A SCENARIO IN WHICH IT'S NOT; IS THAT

19 CORRECT, MR. CARLSON?

20          MR. AALAEI:  THANK YOU, YOUR HONOR.

21          THE COURT:  MR. CARLSON, IS THAT ACCURATE?

22          MR. CARLSON:  I BELIEVE IT IS, YOUR HONOR.  I CAN'T

23 MAKE A REPRESENTATION SPECIFICALLY BECAUSE I FRANKLY DON'T

24 KNOW, AND THIS IS SOMETHING WE NEED TO ASK THE CLIENT, BUT I

25 SUSPECT THAT YOU'RE RIGHT THAT ADDRESS INFORMATION IS WITHIN

1  THE KNOWLEDGE OF THE CORPORATE ENTITY CERTAINLY AS TO MOST

2  WITNESSES, IF NOT ALL.

3        THE COURT:  OKAY.  IF THAT BECOMES AN ISSUE, JUST

4  RESUBMIT THAT OR -- WELL, LET MR. AALAEI KNOW, AND IF THERE'S A

5  DISAGREEMENT ABOUT THAT, YOU CAN RESUBMIT THAT ISSUE, BUT I'M

6  OPERATING UNDER THE ASSUMPTION THAT THAT INFORMATION IS IN THE

7  POSSESSION OF KAIJET U.S.

8        OKAY.  SO I THINK THAT RESOLVES THE PLAINTIFF'S

9  DISCOVERY DISPUTE.  THE DEFENDANT ALSO SUBMITTED ITS OWN.  ARE

10  THOSE ISSUES STILL OUTSTANDING, MR. CARLSON?

11        MR. CARLSON:  I BELIEVE THEY ARE, YOUR HONOR.  WE

12  HAVE NOT HAD A RESPONSE FROM SANHO AS TO THIS, AND FRANKLY HAVE

13  NOT -- I THINK WE -- I WOULD SAY WE HAVE MET AND CONFERRED ON

14  THESE ISSUES AS OF LAST FALL BUT NOT MOST RECENTLY.

15        THE COURT:  WELL, THIS WAS SUBMITTED FAIRLY RECENTLY,

16  CORRECT, WAS IT THIS WEEK?

17        MR. CARLSON:  IT WAS, THAT'S CORRECT.  MR. AALAEI, DO

18  YOU WANT TO TAKE THESE UP NOW, OR DO YOU WANT SOME TIME TO

19  EXAMINE THESE AND SPEAK WITH MR. CARLSON OFFLINE?

20        MR. AALAEI:  THANK YOU, YOUR HONOR.  SOME ADDITIONAL

21  TIME WOULD BE APPRECIATED.  WE RECEIVED THE STATEMENT.  WE'RE

22  ACTUALLY WORKING ON IT.  WE'VE BEEN WORKING ON IT UP TO TODAY.

23  WE'RE HOPING TO TRY TO PROVIDE A SUPPLEMENTAL PRODUCTION BY

24  TODAY.  WE JUST DIDN'T HAVE ENOUGH TIME TO DO SO, BUT WE'RE IN

25  RECEIPT OF THE STATEMENT.

1           WE'RE WORKING ON SUPPLEMENTING INFORMATION THEY ASKED

2   FOR WHICH PRIMARILY ARISES OUT OF THE HEARING WE HAD A FEW

3   WEEKS AGO, AND THE STATEMENTS THAT WERE MADE THERE.  SO I

4   ANTICIPATE THAT OUR SIDE, KAIJET'S SIDE WILL BE ABLE TO WORK

5   THESE THINGS OUT.

6           THE COURT:  OKAY.  WELL, THEN WHY DON'T WE TABLE THIS

7   AND ALLOW TIME FOR YOU ALL TO MEET AND CONFER ABOUT IT, AND TO

8   THE EXTENT THAT ISSUES REMAIN, MR. CARLSON OR MS. GENTES, JUST

9   EMAIL CHAMBERS IF YOU WOULD JUST RESUBMIT THE DISCOVERY

10  STATEMENT OR A NARROWED ONE IF THAT'S APPROPRIATE, AND WE'LL

11  SET THAT UP FOR A CALL AT THAT TIME.

12          MR. CARLSON:  VERY GOOD.  THANK YOU, YOUR HONOR.

13          THE COURT:  CAN WE ADDRESS AS WELL THE MOTION FOR

14  MORE DEFINITE STATEMENT BECAUSE I HAD ASKED THE PARTIES AT THE

15  CONCLUSION OF THE HEARING TO CONFER ABOUT THAT, AND I PRESUME

16  THAT THERE'S BEEN NO RESOLUTION IN THAT REGARD.  I'VE REVIEWED

17  THE MOTION AND THE RESPONSE, AND AGAIN THIS GOES BACK REALLY TO

18  THE SAME ISSUE THAT WE'VE BEEN TALKING ABOUT WHICH IS THAT

19  PLAINTIFF'S LEGAL THEORY AND I THINK IT IS BORNE OUT

20  SUBSTANTIALLY IN THIS AMENDED COMPLAINT IS THAT KAIJET U.S. AND

21  KAIJET TAIWAN ARE OVERLAPPING ENTITIES WHICH OBVIOUSLY KAIJET

22  U.S. DENIES, AND THE COURT HAS NOT WEIGHED IN ON.

23          AND SO I UNDERSTAND, MR. CARLSON, THE ISSUES THAT YOU

24  HAVE WITH RESPONDING TO SOME OF THESE ALLEGATIONS WHEN KAIJET

25  HAS BEEN DEFINED TO INCLUDE BOTH ENTITIES, BUT IT SEEMS TO ME

1  THAT THAT IS DIFFERENT THAN SIMPLY SORT OF NOT EVEN

2  UNDERSTANDING WHAT THE ALLEGATION IS, AND IT SEEMS TO ME THAT

3  YOU COULD RESPOND TO THE ALLEGATIONS BY ADMITTING OR DENYING

4  THEM WITH RESPECT TO YOUR CLIENT EVEN IF THAT REQUIRES YOU TO

5  REDEFINE WHAT KAIJET, WHAT THE WORD KAIJET MEANS WHICH IS IN

6  YOUR VIEW OBVIOUSLY IT MEANS ONLY KAIJET U.S.

7          MR. CARLSON:  I THINK IT MAY GO A LITTLE DEEPER THAN

8  THAT, YOUR HONOR, IN THAT IN A LOT OF THE ALLEGATIONS FOR

9  EXAMPLE THERE ARE -- ONE THAT I CAN THINK OF HAS THREE AND/OR

10  STATEMENTS.  SO THERE'S A LIST OF ACTIVITIES ALLEGED TO HAVE

11  BEEN PERFORMED JOINTLY BY KAIJET U.S. AND KAIJET TAIWAN AND/OR

12  SOMETHING ELSE AND/OR SOMETHING ELSE, AND IT'S I BELIEVE DEEPLY

13  CONFUSING AND VERY DIFFICULT TO RESPOND, AND PARTICULARLY TO

14  RESPOND AS THE COURT HAS ORDERED US TO DO IN THE STANDING ORDER

15  WHICH IS TO MAKE A SPECIFIC RESPONSE TO EACH SPECIFIC

16  ALLEGATION BECAUSE I THINK THAT WILL SIMPLIFY AND FOCUS THE

17  ISSUES THAT ARE REALLY IN DISPUTE.

18          AND WE LOOK OVER THIS THIRD AMENDED COMPLAINT THAT'S

19  A VERY DIFFICULT THING TO DO, AND, YOU KNOW, CERTAINLY WE'LL DO

20  AS THE COURT ORDERS, BUT OUR BELIEF IS AND THE INVITATION

21  REALLY IS TO SANHO TO, YOU KNOW, REVISE THIS COMPLAINT, MAKE IT

22  CLEAR WHAT YOU'RE ALLEGING AS TO EACH OF THE ENTITIES, AND WHAT

23  SPECIFIC ALLEGATIONS YOU WANT TO MAKE AS TO COMMON ACTIVITIES

24  BETWEEN THE ENTITIES AND THAT WILL GIVE US A BETTER IDEA OF

25  WHETHER WE CAN ADMIT OR DENY.

```
 1              THE COURT:  WELL, ISN'T THIS OTHER THAN FORMATTING
 2  CHANGES AND OTHER SORT OF MINISTERIAL CHANGES, ISN'T THIS THE
 3  SAME ALLEGATIONS THAT WERE MADE IN THE PROPOSED AMENDED
 4  COMPLAINT THAT YOU CONSENTED TO?
 5              MR. CARLSON:  WELL, I THINK THE FORMATTING IS QUITE
 6  DIFFERENT.  THERE WAS ONE BIG PARAGRAPH IN THE PROPOSED AMENDED
 7  COMPLAINT THAT WAS BROKEN DOWN INTO A NUMBER OF PARAGRAPHS, AND
 8  I THINK SOME OF THE AND/OR ISSUES HAVE BEEN INJECTED INTO
 9  THAT.
10              WE DIDN'T -- YOU KNOW, WE DIDN'T INTEND TO CONSENT TO
11  RESPOND TO THAT SPECIFIC COMPLAINT AS MUCH AS CONSENT TO SAY
12  WELL, WE SHOULD HAVE ALL OF THIS IN ONE SINGLE ACTION.  IF
13  YOU'RE GOING TO JOIN THIS NEW PATENT AND YOU WANT TO JOIN THIS
14  NEW PARTY, THERE'S NO POINT IN HAVING A SEPARATE ACTION AND
15  THEN TRY TO CONSOLIDATE DOWN THE ROAD.  IT WASN'T OUR INTENT TO
16  SAY AND BY THE WAY WE THINK YOUR COMPLAINT IS FINE.
17              THE COURT:  MR. AALAEI, IT SOUNDS LIKE YOU MIGHT GET
18  MORE HELPFUL ADMISSIONS OR DENIALS IF SOME OF THESE ALLEGATIONS
19  IN THE COMPLAINT WERE REVISED.  IS IT YOUR POSITION THAT YOU'RE
20  NOT OBLIGATED TO OR THAT YOU JUST -- EVEN LET'S ASSUME FOR A
21  MOMENT THAT YOU'RE NOT OBLIGATED TO, IS THERE SOMETHING THAT
22  YOU WOULD CONSIDER DOING SIMPLY FOR THE BENEFIT OF PERHAPS
23  RECEIVING MORE HELPFUL RESPONSES.
24              MR. AALAEI:  THANK YOU, YOUR HONOR.  OUR POSITION IS
25  THAT IT'S REALLY NOT GOING TO HELP ANYTHING BECAUSE -- SIMPLY
```

1  BECAUSE WE HAVE AN AND/OR IN AN ALLEGATION OF THE COMPLAINT IT

2  DOESN'T MAKE IT ANY MORE OR LESS DIFFICULT FOR KAIJET TO COMPLY

3  WITH THEIR OBLIGATION UNDER RULE 8(B) WHERE THEY'RE ACTUALLY

4  REQUIRED TO, YOU KNOW, PROVIDE GENERAL OR SPECIFIC DENIALS.

5          SO IF THERE'S SOMETHING IN THE ALLEGATION THAT THEY

6  WANT TO DENY, THEY CAN SAY SO.  IF THEY WANT TO ADMIT IT, THEY

7  CAN SAY SO.  WE DON'T BELIEVE THERE'S ANYTHING CONFUSING ABOUT

8  THIS, YOU KNOW, BUT WITH THAT SAID, YOU KNOW, AND THE REASON WE

9  WOULD RATHER NOT FILE AN AMENDED COMPLAINT IS WE JUST WANT TO

10  MOVE THIS CASE ALONG.  OUR GOAL IS TO ADVANCE THE CASE, AND,

11  YOU KNOW, THE MOST EFFICIENT WAY TO DO THAT WE BELIEVE IS JUST

12  HAVING KAIJET RESPOND TO THIS COMPLAINT JUST LIKE, YOU KNOW,

13  VERY SIMILAR TO LIKE THEY DID WITH THE SECOND AMENDED

14  COMPLAINT.

15          SO, YOU KNOW, WE, YOU KNOW, WE'RE HAPPY TO DO

16  WHATEVER IT TAKES TO MOVE OUR CASE FORWARD.  WE BELIEVE THAT

17  THERE'S ABSOLUTELY NO MERIT TO THE 12(E) MOTION.  IT WAS FILED

18  ONLY TO THE LATEST CASE, BUT WE WILL DO WHATEVER WE CAN DO TO

19  MOVE THE BALL ALONG HERE.  THAT'S THE OBJECTIVE.

20          THE COURT:  AND THAT'S MY OBJECTIVE, TOO, AND WHAT

21  I'M SAYING IS I AGREE WITH YOU THAT I'M INCLINED TO DENY THE

22  MOTION BECAUSE I DON'T BELIEVE IT MEETS THE STANDARD UNDER RULE

23  12 AND RULE 8, BUT HAVING SAID THAT, IT SOUNDS LIKE MR. CARLSON

24  IS AND I DON'T DOUBT THAT HE WOULD RESPOND TO THE BEST OF HIS

25  ABILITY, BUT IT SOUNDS LIKE GIVEN THE WAY SOME OF THESE

1   ALLEGATIONS HAVE BEEN LODGED THAT THE RESPONSES ARE GOING TO BE

2   GENERALLY UNHELPFUL TO YOU NOT BECAUSE OF ANY BAD FAITH I'M

3   SUGGESTING ON MR. CARLSON'S PART BUT SIMPLY BECAUSE HE'S GOING

4   TO RIGHTLY BE PROTECTIVE OF HIS CLIENT'S INTEREST GIVEN THE

5   BROAD AND WHAT HE DEEMS AMBIGUOUS LANGUAGE.

6          SO I CAN DENY THIS MOTION AND ORDER HIM TO ANSWER

7   THIS, AND YOU WILL GET WHAT YOU GET IN RESPONSE, OR YOU CAN

8   HAVE AN OPPORTUNITY TO AMEND IT TO MAKE MORE CONCRETE SPECIFIC

9   ALLEGATIONS THAT MR. CARLSON WILL THEN HAVE TO SPECIFICALLY

10  ADMIT OR DENY, SO I GUESS I'M GIVING YOU THE CHOICE.

11         MR. AALAEI:  THANK YOU, YOUR HONOR.  WE'D ASK THAT

12  THE COURT DENY THE MOTION.  WE JUST THINK IT'S THE MOST

13  EXPEDIENT THING TO DO.  AT THIS POINT IT'S HARD TO SAY, YOU

14  KNOW, WE CAN BE CONFIDENT THAT WE'RE GOING TO GET ANYTHING

15  HELPFUL IN THE FORM OF DENIALS OR ADMISSIONS, BUT WE'D ASK THAT

16  THE MOTION BE DENIED.

17         OUR POSITION IS IT WOULD JUST BE A LOT OF UNNECESSARY

18  WORK ON OUR END WHICH WE COULD DO IT, BUT ULTIMATELY AT THE END

19  OF THE DAY WE'RE JUST BREAKING ALLEGATIONS DOWN INCREASING THE

20  LENGTH OF THE COMPLAINT WHICH, YOU KNOW, WE JUST THINK THAT'S

21  REALLY A WASTE OF TIME, BUT WITH THAT SAID, WE WILL FOLLOW WHAT

22  THE COURT THINKS IS BEST TO MOVE THE CASE ALONG, YOU KNOW, WE

23  ABSOLUTELY ARE OPPOSED TO IT.  IT'S JUST IN OUR GENUINE VIEW IT

24  DOESN'T MAKE TOO MUCH SENSE TO GO AND BREAK DOWN THESE

25  ALLEGATIONS EVEN FURTHER WHEN THEY'RE ALREADY PLAINLY STATED.

```
 1              THE COURT:  OKAY.  WELL, I AM GOING TO DENY

 2   DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT.  I FIND THAT

 3   THE AMENDED COMPLAINT MEETS AND SATISFIES THE PLEADING

 4   STANDARDS UNDER THE FEDERAL RULES.

 5              MR. CARLSON, ALL I WOULD SUGGEST TO YOU AND YOU

 6   PROBABLY DON'T NEED TO HEAR THIS FROM ME BECAUSE YOU'RE AN

 7   EXPERIENCED LAWYER, BUT IF THE ALLEGATION HAS AND SLASH OR

 8   QUALIFIERS, THEN THE RESPONSE -- YOU CAN ASSUME THAT THE

 9   REQUEST IS AS EXPANSIVE AS IT CAN BE, AND I WOULD SUGGEST THAT

10   YOU ARTICULATE WITH SPECIFICITY WHAT YOU ARE ABLE TO ADMIT TO

11   WITHIN THE ALLEGATION AND DENY THE REMAINDER IF THAT'S

12   APPROPRIATE.

13              BUT I UNDERSTAND YOUR CONCERN, AND I DON'T BELIEVE

14   THE FILING OF THIS MOTION WAS INTENDED TO DELAY THE CASE.  I

15   THINK IT WAS FILED IN GOOD FAITH, AND I UNDERSTAND THE

16   CONCERN IN LIGHT OF THE COURT'S STANDING ORDER, BUT I DON'T

17   BELIEVE I CAN UNDER THE PLEADING STANDARDS OF THE FEDERAL RULES

18   REQUIRE PLAINTIFF TO AMEND HIS COMPLAINT AGAIN.  SO I'M GOING

19   TO DENY THAT MOTION AND ORDER THE DEFENDANT TO ANSWER THIS

20   COMPLAINT.

21              I DON'T RECALL OFFHAND IF THE RULES CALL FOR A

22   RESPONSE WITHIN A CERTAIN TIME AFTER THE RULING ON A MOTION,

23   BUT IN LIGHT OF THE HOLIDAYS, I'M HAPPY TO HEAR HOW MUCH TIME

24   YOU NEED FOR THAT, MR. CARLSON.

25              MR. CARLSON:  I APPRECIATE THAT, YOUR HONOR.  I
```

1 BELIEVE RULE 12 SPECIFIES A TIME AFTER DENIAL OF EITHER A 12(E)

2 OR 12(B) MOTION, BUT I'M NOT ABLE TO BRING THAT TO MY

3 FINGERTIPS RIGHT NOW EITHER.

4          THE COURT:  WELL REGARDLESS I'M SURE I CAN ORDER

5 OTHERWISE, SO HOW MUCH TIME DO YOU NEED?

6          MR. CARLSON:  COULD WE HAVE 14 DAYS, YOUR HONOR?

7          THE COURT:  ANY OBJECTION, MR. AALAEI?

8          MR. AALAEI:  NO.

9          THE COURT:  SO I'LL ORDER THE DEFENDANT TO FILE ITS

10 ANSWER IN 14 DAYS WHICH I BELIEVE IS JANUARY 3RD, 2020.

11          OKAY.  ANYTHING ELSE FOR US TO TAKE UP TODAY, MR.

12 AALAEI?

13          MR. AALAEI:  NO, YOUR HONOR.  THANK YOU.

14          THE COURT:  MR. CARLSON OR MS. GENTES?

15          MR. CARLSON:  NOTHING ON BEHALF OF THE DEFENDANT,

16 YOUR HONOR.  THANK YOU FOR THE TIME THAT YOU'VE DEVOTED TO

17 THIS.

18          THE COURT:  OKAY.  THANK YOU, ALL.

19          (PROCEEDINGS CONCLUDED.)

20

21

22

23

24

25

39

1
2                     C-E-R-T-I-F-I-C-A-T-E
3
4   UNITED STATES OF AMERICA
5   NORTHERN DISTRICT OF GEORGIA
6
7            I, ANDRE G. ASHLEY, DO HEREBY CERTIFY THAT I AM A
8   U.S. DISTRICT REPORTER FOR THE NORTHERN DISTRICT OF GEORGIA,
9   THAT I REPORTED THE FOREGOING AND THE SAME IS A TRUE AND
10  ACCURATE TRANSCRIPTION OF MY MACHINE SHORTHAND NOTES AS TAKEN
11  AFORESAID.
12           IN TESTIMONY WHEREOF I HAVE HEREUNTO SET MY HAND ON
13  THIS 13TH DAY OF FEBRUARY, 2020.
14
15
16
17
18                              S/ ANDRE G. ASHLEY
19                              ANDRE G. ASHLEY
                                OFFICIAL COURT REPORTER
20                              NORTHERN DISTRICT OF GEORGIA
21
22
23
24
25