## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>               Plaintiff,<br><br>   v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., and KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC., doing business as "j5create"; and DOES 1-10,<br><br>               Defendants. | C.A. No. 1:18-cv-05385-SDG<br><br>**Jury Trial Demanded** |

## PLAINTIFF SANHO CORPORATION'S RESPONSE IN OPPOSITION TO DEFENDANT KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC.'S MOTION TO DISMISS

"[P]ersonal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted."[1]  In the instant motion, the Kaijet Defendants challenge the Court's jurisdiction on both grounds.  Separately addressed, the Kaijet Defendants' contentions fail to show improper service or a want of personal jurisdiction.

## I.    **Service of Process: Sanho's Evidence Trumps the Kaijet Defendants' Evidence on This Motion to Dismiss.**

A.    Fed. R. Civ. P. 4.

In pertinent part, Rule 4(h)(1)(A) and (B) provide:

(h) Serving a Corporation…a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served: (1) in a judicial district of the United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent[.][2]

Rule 4(e)(1) also provides, in pertinent part:

(e) Serving an Individual Within a Judicial District of the United States…an individual may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district

---

[1] *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries,* 353 F.3d 916, 925 n.15 (11th Cir. 2003).
[2] Fed. R. Civ. P. 4(h)(1)(A) and (B).

court is located or where service is made[.][3]

"[Rule 4] is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint…the Federal Rules do not contemplate that a party may simply ignore pleadings it receives."[4]  Under Rule 4(h)(1) and Georgia state law, Jessica Liu and Steven Lyu are Kaijet Taiwan's agents for service of process.  Defendants' focus on Rule 4(h)(2) and (f) is a red herring.

     i.     <u>Fed. R. Civ. P. 4(h)(1)(B): Service on Kaijet Taiwan's Managing Agents.</u>

When a defendant challenges service of process, the plaintiff bears the burden of establishing validity.[5]  Courts apply the standards of proof applicable to motions to dismiss for lack of personal jurisdiction in determining validity of service of process.[6]  Proof of service must be made by affidavit[7]; and upon that showing, the defendant can only invalidate service by clear and convincing proof.[8]

---

[3] Fed. R. Civ. P. 4(e)(1).

[4] *Sanderford v. Prudential Ins. Co.*, 902 F.2d 897, 899 (11th Cir. 1990) (internal quote omitted).

[5] *Lowdon PTY Ltd. v. Westminster Ceramics, LLC,* 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008).

[6] *Kammona v. Onteco Corp.*, 587 Fed. Appx. 575, 578 (11th Cir. 2014) (citing *Lowdon*, 534 F. Supp. 2d at 1360).

[7] Fed. R. Civ. P. 4(l)(1).

[8] *Kammona*, 587 Fed. Appx. at 578 (quoting *McLean v. Church of Scientology of Cal.*, 538 F. Supp. 545, 547 (M.D. Fla. 1982)).

Conflicts in the parties' affidavits are resolved in the plaintiff's favor.[9]

a.    Jessica Liu Holds Herself Out as Kaijet Taiwan's "Manager" to the Federal Government.

Liu is currently listed as the "Manager" for Kaijet Taiwan when conducting business with the Federal Communications Commission (FCC) on Kaijet Taiwan's behalf.[10] Since March 13, 2018, through the present,[11] Ms. Liu has served as Kaijet Taiwan's "Manager." The e-mail address Ms. Liu used to interact with the FCC (jessica@j5create.com) is the same she used to email ████████████ ██████████, before manufacturing it.[12] Pursuant to Fed.R.Evid. 201(b)(2), Sanho asks Court to take judicial notice of the fact that Jessica Liu is listed as "Manager" of Kaijet Taiwan on the FCC website, on the grounds that the accuracy of the content set forth on the agency's website cannot reasonably be questioned.[13] Acting as a corporate agent to a federal agency is an admission of that fact.[14]

---

[9] *Id.* (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

[10] *See* Declaration of Plaintiff's Counsel Benjamin Martin in Support of Plaintiff Sanho Corporation's Response in Opposition to Defendant Kaijet Technology International Corporation, Inc.'s Motion to Dismiss ("Martin Decl."), ¶2, Ex. 1.

[11] https://apps.fcc.gov/coresWeb/searchDetail.do?frn=0027333897

[12] Martin Decl., ¶3, Ex. 2 (Jessica Liu's July 31, 2017 email).

[13] *See In re LTL Shipping Servs. Antitrust Litig.*, No. 1:08-MD-01895-WSD, 2009 WL 323219, at *6,7 (N.D. Ga. Jan. 28, 2009); *RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, n. 8 (N.D. Ga. 2013).

[14] *See* Fed. Rule Evid. 801(d)(2)(A),(C) and (D), and Notes of Advisory Committee on Rules ("The tradition has been to test the admissibility of statements by agents, as admissions, by applying the usual test of agency. Was the admission

> b.    Jessica Liu and Steven Lyu Admitted to being Kaijet Taiwan's "Managing Member" to the Process Server.

In January 2020, Ms. Liu traveled from Taiwan to Las Vegas to attend the CES conference in Las Vegas.  On January 7, 2020 at 3:34 p.m. in j5Create's CES booth, which was shared by Kaijet US, Kaijet Taiwan, and Magic Technology Corporate (MTC),[15] Mr. Adam Schwartz, a registered process server (R-088182) personally served process on Jessica Liu.  Mr. Schwartz's notarized affidavit states that Ms. Liu confirmed "that she is a managing member of Kaijet Technology, based out of Taiwan[.]"[16]  Mr. Lyu confirmed the same.[17]  The declarations of Ms. Liu[18] and Mr. Lyu[19] contradict Mr. Schwartz's affidavits.  The legal standard

---

made by the agent acting in the scope of his employment?... A substantial trend favors admitting statements related to a matter within the scope of the agency or employment."); *FTC v. WebSource Media*, LLC, 2007 U.S. Dist. LEXIS 101853, *11 (S.D. Tex. July 2, 2017) ("The evidence presented by the FTC shows that Kennedy…by his own admission, served as vice president[.]").

[15] Martin Decl., ¶5, Ex. 4 (CES SUBP_0168- 0172 (Kaijet Taiwan was registered for CES 2020 by at the address 10F, No.123, Zhongcheng Rd., Tucheng Dist., New Taipei City 236, Taiwan); CES SUBP_0204-0207 and CES SUBP_0168-0170 (MTC was registered for CES 2019 and CES 2020 by its CEO, Jessica Liu at the address 10F, No.123, Zhongcheng Rd., Tucheng Dist., New Taipei City 236, Taiwan); CES SUBP_0002 (MTC is listed as Kaijet US' "alias"); CES SUBP_0028 (MTC is listed as a "Subsidiary of J5create)); *but see* Martin Decl., ¶22, Ex. 23 (Kaijet US and Kaijet Taiwan are both Taiwanese entities located at 8F, No. 109 Zhongcheng Rd., Tucheng Dist., New Taipei City 236, Taiwan).

[16] ECF 118 (Schwartz affidavit, below signature line).

[17] ECF 119 (Schwartz affidavit, below signature line).

[18] ECF 146-2, ¶3.

[19] ECF 146-1, ¶3.

applicable on this motion calls for the Court to resolve the conflict in Sanho's favor and find that Ms. Liu and Mr. Lyu confirmed that they were managing members of Kaijet Taiwan.[20]  Under Fed. R. Civ. P. 4(h)(1)(B), Sanho perfected service on Kaijet Taiwan through its managing agents Ms. Liu and Mr. Lyu on January 7, 2020.

c.   The Kaijet Defendants' Deceit Waives Their Personal Jurisdiction Defense.

A defendant waives a personal jurisdiction defense if it commits an overt wrongdoing to deceive the court and avoid service of process.[21]  Ms. Liu declares under the penalty of perjury, "I am not an officer, director, or manager of [Kaijet Taiwan]."[22]  Since Ms. Jessica Liu has served as Kaijet Taiwan's "Manager" in interacting with the federal government since March 2018,[23] her declaration that "I am not a[…] manager of [Kaijet Taiwan]" is deceptive.  Kaijet Taiwan has waived its personal jurisdiction defense.

d.   Service on Jessica Liu and Steven Lyu was Proper to Effectuate Service on Kaijet Taiwan.

---

[20] *Lowdon*, 534 F. Supp. 2d 1354, 1361 (motion to dismiss denied after conflicting affidavits on a motion attacking service of process resolved in plaintiff's favor).
[21] *Baragona v. Kuwait Gulf Link Transp. Co.,* 594 F. 3d 852, 854 (11th Cir. 2010).
[22] ECF 146-2, ¶4; *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) (conclusory assertions of ultimate fact insufficient to shift to plaintiffs burden of producing evidence supporting jurisdiction).
[23] Martin Decl., ¶2, Ex. 1, (Kaijet Taiwan's March 13, 2018 FCC Registration).

The district court in *Heise v. Olympus Optical Co.* held that "[s]ervice on managing agent of subsidiary sufficient for service on parent *where managing agent is a person whose position is one of sufficient responsibility so that it is reasonable to assume that he would transmit notices* to [parent]."[24]  Three district courts sitting in the Northern District of Georgia have cited *Heise* for this proposition.[25]  In *Heise*, the Court held that the President of Olympus Optical in America was a "managing or general agent" over the objection that he "is not an officer, a managing agent, a general agent, or an agent authorized by law to receive service of process[]"[26] – the same legal conclusions set forth in the Kaijet Defendants' declarations.  A Massachusetts district court also relied on *Heise* in finding that service on the managing agent of a subsidiary was sufficient "where

---

[24] 111 F.R.D. 1 (N.D. Ind. 1986) (emphasis added); *see Johnson v. Bank of N.Y. Mellon*, 2018 U.S. Dist. LEXIS 219729, *9-10 (N.D. Ga., July 11, 2018) (citing *Heise v. Olympus Optical Co.,* 111 F.R.D. 1, 6 (N.D. Ind. 1986) ("in that case, the evidence demonstrated that proper service of the *managing agent* was accomplished.") (emphasis added)).

[25] *See Johnson*, at *9-10; *United States v. Pub. Warehousing Co. K.S.C.*, 2011 U.S. Dist. LEXIS 32658*13 (N.D. Ga. Mar. 28, 2011); *United States v. Pub. Warehousing Co., K.S.C.,* 2010 U.S. Dist. LEXIS 142327, *85-86 (N.D. Ga. Sept. 2, 2010) ["The basis for this conclusion rests on "[p]rinciples of agency." Wright & Miller, Fed. Pract. & Proc. § 1104 & n.4 (3d ed.)."].

[26] *Heise*, 111 F.R.D. at 6; *United States v. Chitron Elecs. Co*., 668 F. Supp. 2d 298, 305 (D. Mass. 2009) ("in the case of a foreign corporation that has a subsidiary in the United States, service on a foreign parent through proper service on a local subsidiary is permitted where the local subsidiary has minimum contacts with the forum, and where the relationship between parent and subsidiary is such that the subsidiary is a mere conduit for the activities of its parent.") (quotation omitted).

the plaintiff submitted evidence that the subsidiary was formed for the purpose of marketing and distributing products manufactured by the parent[.]"[27]  This mirrors the Kaijet Defendants' contention that Kaijet Taiwan designs and manufactures the Accused Device and Kaijet US markets and sells it in the US via Best Buy.[28]  As such, there is a "sufficient interrelationship between [the Kaijet Defendants] to hold that service of the summons on the subsidiary's agent [is] sufficient to effect service on the foreign parent corporation."[29] And in light of Ms. Liu's role as Kaijet US' CEO, Kaijet Taiwan's "manager," and a CEO and President of j5Create (a trademarked trade name, owned by Kaijet Technology International Limited) she "is a person whose position is one of sufficient responsibility so that it is reasonable to assume that [she] would transmit notices to [Kaijet Taiwan]."  Kaijet

---

[27] *Chitron Elecs.,* 668 F. Supp. 2d at 304-305; Martin Decl., ¶6, Ex. 5 (Ms. Liu admits Kaijet US was formed because "the US market is very important … the US is our first step and maybe next we will go to Europe and China.").

[28] ECF 146-1, ¶7, and ECF 98-1, ¶¶6-7 ("I was contacted by Andrew Miller of Select Sales, Inc., a Sales Representative who represents KaiJet with certain retailers. Mr. Miller told me that Best Buy asked whether KaiJet could supply Best Buy a product to compete with the HyperDrive product. I contacted [KaiJet Taiwan] about possibly manufacturing a product to compete with the HyperDrive…KaiJet Taiwan designed and manufactured [the Accused Device]…KaiJet purchases the Ultra Drive units from KaiJet Taiwan in Taiwan and imports them into the United States. KaiJet does not sell this product outside the United States (although other entities sell it outside the US."); *but see infra*, Kaijet Taiwan directly ships to and sells the Accused Device in Georgia.

[29] *United States v. Pub. Warehousing Co. K.S.C.*, 2011 U.S. Dist. LEXIS 32658, *13 (quoting *Chitron Elecs*., 668 F. Supp. 2d at 306).

Taiwan's address in New Taipei City is the same address where Ms. Liu has worked for Kaijet and j5Create, in Taiwan.  Kaijet Taiwan has filed a Statement of Use in interstate commerce with the USPTO in January 2019 covering the Accused Device,[30] and therefore, it appears that it is reasonable to assume that Ms. Liu has transmitted all notices to Kaijet Taiwan.

ii.      Fed. R. Civ. P. 4(h)(1)(A) via Fed. R. Civ. P. 4(e)(1).

Similarly, Rule 4(h)(1) permits service upon foreign corporations "in the manner prescribed for individuals by subdivision (e)(1)" and Rule (e)(1) permits service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]"  Service of a foreign parent corporation through its subsidiary's corporate officer is permissible in Georgia through agency principles,

> In Georgia, an agent for service of process is not limited to one of the statutory classifications (an officer, a general or managing agent, or an appointed agent). Rather, the proper inquiry in determining whether a person is an agent who can properly receive service is whether service was made upon a person whose "duties and responsibilities were such as to afford reasonable assurance that he would inform his corporate principle of the service of process upon him…. Accordingly, there is not a high standard for the degree of authority required to make a person a valid agent for service of process in Georgia.[31]

---

[30] Martin Decl., ¶22, Ex. 21, Statement of Use.
[31] *Tillotson Corp. v. Top Glove SDN. BHD*, 2006 U.S. Dist. LEXIS 85875, *5-6, (N.D Ga. Jan. 28, 2010) (quoting *Ogles v. Globe Oil Co.,* 171 Ga. App. 785, 786 (1984)).

Ms. Liu's role as Kaijet US' CEO and Kaijet Taiwan's "manager," and Mr. Lyu's

role as Kaijet US' COO[32] satisfy this standard under Georgia law.  Thus the

January 7, 2020 CES service satisfies Fed. R. Civ. P. 4(h)(1)(A) via Fed. R. Civ. P.

4(e)(1).  Further, "[t]he fact that [a foreign corporation challenging service on a

local subsidiary] received actual notice of the suit is properly considered as a factor

in determining whether a person is a valid agent for receipt of service."[33]  The

January 7, 2020 CES service on Ms. Liu and Mr. Lyu effectuated such notice, and

was proper under Fed. R. Civ. P. 4(h)(1)(A) and (B).

## II.    Minimum Contacts: The Motion to Dismiss Must be Denied Because Kaijet Taiwan's Contacts with Georgia Satisfy Georgia's Long-Arm Statute and Federal Due Process.

### A.    The Legal Standard Applicable on a Motion to Dismiss for Lack of Personal Jurisdiction.

Federal Circuit law applies where the personal jurisdictional inquiry is

intimately involved with the substance of the patent laws law.[34]  Without an

evidentiary hearing, the Court must deny a motion to dismiss if the complaint's

allegations and reasonable inferences therefrom constitue a *prima facie* case for the

---

[32] ECF 146-1, ¶¶2,7.

[33] *Tillotson Corp.,* 2006 U.S. Dist. LEXIS 85875, *7.

[34] *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (quotation omitted).

Court's exercise of personal jurisdiction.[35]  "[I]f the defendant challenges personal jurisdiction with affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'"[36]  At that point, the plaintiff defeats a motion to dismiss by evidencing a *prima facie* case for jurisdiction.[37]  Allegations uncontroverted by the defendant's evidence must be accepted as true[38] and "where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."[39]

   B.    Specific Jurisdiction.

   Where specific jurisdiction is the basis for personal jurisdiction, the Court must determine whether a forum state's long-arm statute permits service of process, and whether due process comports with the assertion of jurisdiction.[40]

      i.    Georgia's Long-Arm Statute.

---

[35] *Cable/Home Commc'n Corp. v. Network Prods., Inc*., 902 F.2d 829, 855 (11th Cir. 1990) (citing *Morris v. SSE, Inc*., 843 F.2d 489, 492 (11th Cir. 1988)).

[36] *Johnson*, *7-8 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1257 (11th Cir. 2010)).

[37] *Johnson,* at *8 (quoting *Polski Linie Oceaniczne v. Seasafe Transp. A/S,* 795 F.2d 968, 972 (11th Cir. 1986)); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1268 (11th Cir. 2002).

[38] *Delong Equipment Co.,* 840 F.2d at 843, 845 (11th Cir. 1988).

[39] *Diamond Crystal*, 593 F.3d at 1257 (quoting *Meier*, 288 F.3d 1264, 1269).

[40] *Powerbahn, LLC v. Found. Fitness LLC,* 1:17-cv-02965-AT (N.D Ga Jan. 29, 2020) (quoting *Elecs. For Imaging*, 340 F.3d at 1349); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001).

The Georgia Long-Arm Statute provides, in relevant part, that:

A court of this state may exercise personal jurisdiction over any nonresident…as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.[41]

Kaijet Taiwan's contacts with Georgia satisfies all three bases.

        a.        O.C.G.A. § 9-10-91(1): Kaijet Taiwan Transacts Business in Georgia.

A party transacts business in Georgia for jurisdictional purposes if "the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia]."[42] Kaijet Taiwan's purposeful acts in Georgia qualify.

        1.        *Kaijet Taiwan Directly Shipped the Accused Device to Georgia.*

---

[41] O.C.G.A. § 9-10-91(1)-(3).

[42] *Powerbahn, LLC*, *11 (quoting *Hi-Tech Pharm. Inc. v. Dynamic Sports Nutrition*, LLC, No. 1:16-CV-949-MHC, 2016 WL 9454418, at *4 (N.D. Ga. Dec. 28, 2016)).

A defendant "transacts" business under O.C.G.A. § 9-10-91(1) when it ships

its product directly to a Georgia customer.[43]  Kaijet Taiwan directly shipped the

Accused Product by air form China to Atlanta.[44]  The air waybills reflect that

Kaijet Taiwan is the "shipper" and Kaijet US is the "consignee," which contradicts

Mr. Lyu's declaration that Kaijet US, and not Kaijet Taiwan, ships the Accused

Device into the US.[45] As this conflict is also resolved in Sanho's favor, O.C.G.A. §

9-10-91(1) is satisfied because Kaijet Taiwan directly ships the Accused Device

(and all other j5create products) directly into Georgia, which gives rise to Sanho's

35 U.S.C.S. § 271 infringement claims.

   2. *Kaijet Taiwan Sells the Accused Product in Georgia.*

 "The law is clear that, where a defendant infringer is shown to have sold the

allegedly infringing product in the forum state, the forum may exercise personal

---

[43] *Kason Indus., Inc. v. Dent Design Hardware, Ltd*., 952 F. Supp. 2d 1334, 1345 (N.D. Ga. 2013) (quoting *Thomas v. Strange Eng'g, Inc.,* No. 1:11-cv-74, 2012 U.S. Dist. LEXIS 39474, 2012 WL 993244, at *4 (S.D. Ga. Mar. 22, 2012) (defendant transacted business pursuant to subsection (1) by shipping its product directly to a Georgia customer)).

[44] Martin Decl., ¶19, Ex. 18, (Accused Device shipped by Kaijet Taiwan: "Packaging/Weight List" and "Commercial Invoices" for November 8, 2017, December 17, 2017, on January 7, 2018).

[45] ECF No. 146-1, ¶7 ("KaiJet is responsible for shipping and importing purchased product from Taiwan to the United States of America… KTIC does not import any products into the United States.").

jurisdiction over the defendant."[46] "[A]n actual sale" for purposes of 35 USCS §

271 occurs where "contracting and performance" or other "essential activities"

occur.[47] Kaijet US' records show that it initiated electronic wire payments for the

Accused Devices from its Kennesaw, GA offices. [48] Kaijet Taiwan sold the

Accused Product to Kaijet US in Georgia because Kaijet Taiwan shipped the

Accused Device to Atlanta, and because payment was tendered from Kaijet US'

Kennesaw offices. The inference is that Kaijet Taiwan required payment from a

Georgia resident, Kaijet US, which shows Kaijet Taiwan transacted in Georgia.[49]

        3.    *Kaijet Taiwan Carried on Business in Georgia*
             *with Kaijet US.*

Under O.C.G.A. § 9-10-91(1), "the narrow question is 'whether [Kaijet

Taiwan] transacted any business in Georgia in a matter that gave rise to [Sanho's]

---

[46] *Sarvint Techs., Inc. v. OMsignal, Inc.,* 161 F. Supp. 3d 1250, 1264, (N.D. Ga. June 2, 2015) (quotation omitted).

[47] *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994) ("The "situs" of a patent infringement injury is the actual "place of the infringing sales.").

[48] Martin Decl., ¶12, Ex. 11, Kaijet US' electronic wire records ("From Client KaiJet Technology International Limited, Inc. DBA j5create[,] Client Address (Line 1) 1025 Cobb International Dr.[,] State/Province Georgia[,] Client Address (Line 2) Suite 210 ZIP/Postal Code 30152[,] City Kennesaw[,] Country United States Of America.").

[49] *UPS Supply Chain Solutions, Inc. v. Dynasystems Ltd.*, 2016 U.S. Dist. LEXIS 13260, *14 (N.D. Ga 2016) (foreign corporation did not purposefully [do] some act or consummated some transaction because, inter alia, foreign defendant "was not demanding payment from" Georgia entity).

cause of action."[50]  "Transact means to prosecute negotiations, to carry on

business, to carry out, or to carry on."[51] "To transact business, a defendant need not

physically enter the state" and Court's consider intangible acts such emails and

telephone calls in determining whether a nonresident subject himself to a long-arm

statute."[52] Here, Kaijet Taiwan engaged in extensive negotiations.  Via email,

Cindy Lin, on behalf of Kaijet Taiwan and Jessica Liu and Amanda Evans, on

behalf of Kaijet US, negotiated ████████████████████████████

████████.[53] Kaijet Taiwan also carried on business.  Mr. Lyu admits "KTIC

issues KaiJet invoices for purchased product and KaiJet pays said invoices."[54]

Additionally, Kaijet Taiwan transmits its issued invoices via email to Kaijet US'

Kennesaw offices.[55]  Via email, Cindy Lin of Kaijet Taiwan asked Kaijet US'

Kennesaw offices for ███████████████████████████████████

███████████████████████████████████████████████

---

[50] *Kason Indus.*, 952 F. Supp. 2d at 1344 (quoting *Diamond Crystal*, at 1264).
[51] *Id.* (quoting *Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 736-37 (Ga. Ct. App. 2006).
[52] *Powerbahn, LLC*, at *11 (quoting *Hi-Tech Pharm.*, at *4).
[53] Martin Decl., ¶13, Ex. 12, (KAIJET_000183, September 19, 2017 emails).
[54] ECF 146-1¶ 7.
[55] Martin Decl., ¶14, Ex. 13, (KAIJET_002892-002900, October 31, 2018 and November 20, 2018 emails from j5create affiliate Starview transmitting ████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████ ).

████ to those emails.[56]  Cindy Lin transmitted additional emails to Kaijet US'

Kennesaw offices soliciting ████████████████████████████.[57]  By

transmitting its issued invoices via email to Kaijet US' Kennesaw offices, and by

conferring on ██████████████████ via email to Kaijet US'

Kennesaw offices, Kaijet Taiwan clearly "carried on" business in Georgia.

Additionally, Cindy Lin requested by email to Kaijet US' Kennesaw offices

that Mr. Akins █████████████████████████.  Mr.

Akins complied.[58]  This is not surprising in light of how the "Kaijet Group

Organization" describes itself.[59]  Also via email directed at Kaijet US' Kennesaw

office, Kaijet Taiwan purposefully directed a Georgia resident to participate in

activities giving rise to Sanho's infringement claims by instructing Kaijet US █

████████████████████████████.

The jurisdictional facts at bar are stronger than the facts two courts sitting in

this district court concluded supported jurisdiction in *Powerbahn, LLC*, and in *Hi-

Tech Pharmaceuticals*—both patent infringement cases involving Georgia resident

---

[56] Martin Decl., ¶14, Ex. 15, (KAIJET_002363-002368; KAIJET_002313-002317
(September 14, 2017 and September 20, 2017 emails).
[57] Martin Decl., ¶15, Ex. 16, (KAIJET_002475 (September 14, 2017 email);
KAIJET_002474; KAIJET_002578- (September 15, 2017 email).
[58] Martin Decl., ¶17, Ex. 16, KAIJET_002524-002529 (September 14, 2017
emails).
[59] Martin Decl., ¶4, Ex. 3, Prezi Presentation.

defendants and amended complaints adding out-of-state defendants that moved to dismiss for want of jurisdiction.[60]  The plaintiff in those cases alleged the out-of-state defendant "participated in, directed, controlled, caused, ratified, and/or was the moving force behind the [infringing misconduct]"[61]—just as in this case.[62] Like Kaijet Taiwan, the out-of-state defendants in those two cases emailed with a resident of Georgia.[63]  And as at bar, the out-of-state defendants in those two cases sought to avoid jurisdiction with declarations having a nearly identical list of "does nots" and "nevers" with respect to Georgia contacts.[64]  Nonetheless, the Court in *Powerbahn, LLC*, and in *Hi-Tech Pharmaceuticals* concluded the out-of-state defendants "transacted business" in Georgia, and that "'Plaintiff's allegations that he had a substantial role in the circumstances that led to this lawsuit' were unrebutted."[65] Kaijet Taiwan's emails to Kaijet US in Kennesaw that prosecuted negotiations for the Accused Device, transmitted invoices and purchase orders, carried on business relating to the Accused Device' ███████████████

███████████████████████████████████████

███████████████████████████ meets O.C.G.A. § 9-10-

---

[60] *Powerbahn, LLC,* at *11-12; *Hi-Tech Pharmaceuticals*, at *2.
[61] *Powerbahn, LLC* at *12.
[62] ECF 89, ¶18.
[63] *Powerbahn, LLC,* at *11-12
[64] *Id.* at *12.
[65] *Powerbahn, LLC,* at *11-12 (quoting *Hi-Tech Pharmaceuticals*, at *2).

91(1)'s "transacts any business" prong.

> b.    O.C.G.A. § 9-10-91(2): Kaijet Taiwan Committed a
> Tortious Act When it Shipped the Accused Device into,
> and Sold it in Georgia.

Jurisdiction exists under O.C.G.A. § 9-10-91(2), when a nonresident

commits a tortious act within Georgia if the exercise of that jurisdiction comports

with constitutional due process.[66] Kaijet Taiwan committed a tort in Georgia

because it shipped the Accused Device directly into Atlanta,[67] allegedly selling it

to Kaijet US in Kennesaw[68] which is direct and indirect infringement under 35

USCS §§ 271(a), 271(b).[69] "[T]o sell an infringing article to a buyer in [forum

state] is to commit a tort there[.]"[70] Furthermore, Kaijet Taiwan's involvement in

Georgia is evident from the Statement of Use it filed with the USPTO, which

declares under penalty of perjury that the accused product is being used by Kaijet

Taiwan in interstate commerce. Kaijet Taiwan solicited the business through its

---

[66] *Kason Indus.*, at 1346.

[67] Martin Decl., ¶19, Ex. 18.

[68] Martin Decl., ¶12, Ex. 11.

[69] *MEMC Elec. Mat.*, 420 F.3d at 1377 ("an actual sale" under § 271(a) occurs where "contracting and performance" or other "essential activities" in sale occur); *Beverly Hills Fan Co*, 21 F.3d 1558, 1571 (situs of tortious injury is "place of the infringing sales").

[70] *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) ("To hold otherwise would exalt form over substance in an area where the Supreme Court generally has cautioned against such an approach[.]") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985)).

sales agents and claims it allegedly sold the product to Kaijet US in Kennesaw,
pursuant to an electronic wire initiated from Kennesaw—all of which give rise to
Sanho's infringement claims.[71]

Furthermore, entirely missing from the motion to dismiss, is any attack on
this Court's jurisdiction based on contacts arising from Sanho's indirect
infringement claims.[72]  Indirect infringement is when "a person infringes by
actively and knowingly aiding and abetting another's direct infringement."[73]
Sanho's indirect infringement allegations are entirely uncontroverted,[74] and thus so
too are the jurisdictional contacts arising therefrom.[75]  Had the declarations
supporting this motion refuted Sanho's indirect infringement allegations, the result
would be the same because the Kaijet Defendants admit that Kaijet Taiwan
designed and manufactured the Accused Device.[76]  Thus, Kaijet Taiwan's even

---

[71] 35 U.S.C. § 271(a).

[72] ECF 146, 146-1, 146-2, 146-3 (all silent as to whether the Accused Device's sale constitutes direct infringement or whether defendants knowingly aided or abetted).

[73] *Wing Shing Prods. (BVI) v. Simatelex Manufactory Co.,* 479 F. Supp. 2d 388, 407 (citing *MEMC Elec. Mat.*, 420 F.3d at 1375-76).

[74] ECF No. 89, ¶¶15, 18-19, 22, 26, 56, 57, Prayer for Relief No. 2.

[75] *AFTG-TG, LLC v. Nuvoton Tech. Corp.,* 689 F.3d 1358, 1360 (Fed. Cir. 2012) (the "court accepts uncontroverted allegations in the complaint as true").

[76] Martin Decl., ¶18, Ex. 17, at 3 ("Persons at KaiJet Technology International Corporation (KTIC) are responsible for the design and manufacture of the product identified in response to Interrogatory 19. KaiJet is unaware of what Persons at KTIC would be considered "responsible" for the design and manufacturing of the product.")

partial involvement with the development of the accused product is evidence of

induced infringement which is a tort occurring in Georgia.[77]

       c.     <u>O.C.G.A. § 9-10-91(3): Kaijet Taiwan Committed a</u>
<u>Tortious Act, Regularly Does Business in Georgia,</u>
<u>Engages in Persistent Conduct, and Derives Substantial</u>
<u>Revenue From Goods Sold in Georgia.</u>

Defendants' explanation for the role of Kaijet Taiwan in the Accused

Product's import and sale in Georgia satisfies the stream of commerce basis for the

exercise of jurisdiction—and O.C.G.A. § 9-10-91(3).  In *Beverly Hills Fan*, the

Court found jurisdiction over a nonresident defendant that "purposefully shipped

the accused fan into Virginia through an established distribution channel[.]"[78]

Kaijet Taiwan purports to have a similar role as to the Accused Device as Ultec did

in *Beverly Hills Fan*, which is that of a foreign manufacture that did not directly

ship into the U.S., but rather sold to Royal, which Ultec knew based on their

ongoing relationship, that Royal intended to sell the goods in the U.S through an

intermediary.[79]  Thus, on the Kaijet Defendants' own version of events, the result

is that this Court has jurisdiction due to Kaijet Taiwan's ongoing relationship with

Kaijet US such that Kaijet Taiwan "knew or reasonably could have foreseen that

---

[77] *See Powerbahn, LLC*, *13.

[78] *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994); *see also Wing Shing Prods.*, 479 F. Supp. 2d at 407 (citing *Beverly Hills Fan*, at 1564).

[79] ECF 146-1, ¶7; and ECF 98-1, ¶¶6-7.

the [Accused Device] would eventually be sold by a retailer in [Georgia]."[80]  The

Defendants claim that Kaijet Taiwan designed and manufactured the Accused

Device at the request of Kaijet US' to be sold in the U.S. in order to compete

against Sanho's Hyperdrive.[81] Thus, the link between the foreign manufacturer and

the eventual retail sale of the infringing product in the forum state cannot be said to

be attenuated in this case, supporting the exercise of jurisdiction.[82]

Beverly Hills Fan also concluded that as a matter of law, personal

jurisdiction could be exercised under the Due Process Clause or Virginia's long-

arm statute, which is similar to O.C.G.A. § 9-10-91(3).[83]  Accordingly, under the

principles set forth in Beverly Hills Fan, this Court has jurisdiction over Kaijet

Taiwan because the Kaijet Defendants admit that Kaijet Taiwan (1) "placed the

accused [product] in the stream of commerce, [(2)] they knew the likely destination

---

[80] Beverly Hills Fan, at 1564.

[81] ECF 89, ¶6 ("Later in the summer of 2017, I was contacted by Andrew Miller of Select Sales, Inc., a Sales Representative who represents KaiJet with certain retailers. Mr. Miller told me that Best Buy asked whether KaiJet could supply Best Buy a product to compete with the HyperDrive product. I contacted KaiJet Technology International Corporation ("KaiJet Taiwan") about possibly manufacturing a product to compete with the HyperDrive product.").

[82] Wing Shing Prods., 479 F. Supp. 2d at 407 (citing Beverly Hills Fan, at 1571).

[83] Compare, Va. Code Ann. § 8.01-328.1 A.4 ("Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth") with O.C.G.A. § 9-10-91(3).

of the products, and [(3)] their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there."[84] And since there is evidence that Kaijet Taiwan ships its j5Create products directly into Atlanta and since Kaijet US initiates its electronic wire payment therefore from its Kennesaw offices, Kaijet Taiwan "regularly does business in Georgia, engages in persistent conduct, and derives substantial revenue from goods sold in Georgia" for purposed of O.C.G.A. § 9-10-91(3).[85]

C.    Due Process.

The remaining question is whether the exercise of personal jurisdiction comports with due process.  The Federal Circuit's three-prong test considers whether, (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair.[86]  The first two factors correspond with the minimum contacts analysis and third factor corresponds with the "fair play and

---

[84] *Kason Indus.,* at 1341.

[85] "Derives substantial revenue from goods sold in Georgia": Martin Dec. ¶12, Ex. 11 (3 electronic wire records for the Accused Device dated March 15, 2019, and February 15, 2019,  totaling more than $█████████); Martin Decl., ¶¶10, 19, Ex. 9, 18, (valuation of some Accused Devices); Martin Decl., ¶20, Ex. 19, (valuation of some non-accused devices); ECF 98-1, ¶11 ("Since October 2017, KaiJet's sales of the Ultra Drive have totaled about $███████.").

[86] *Breckenridge Pharm., Inc. v. Metabolite Labs.,* Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006).

substantial justice" analysis under *International Shoe*.[87] Citing to *Hi-Tech Pharm.*, *Powerbahn* found the "purposeful availment" and "arising out of" elements were met based solely the out-of-state defendant's emails, which "raise[d] an inference (for the purpose of assessing jurisdiction) that the nonresident defendant induced infringement."[88]  In addition to emails (and transmitted invoices and purchase orders) showing Kaijet Taiwan transacted business in Georgia, and in addition to Kaijet Taiwan instructing Kaijet US ███████████████████████████ while designing the Accused Device, Sanho satisfies the "purposeful availment" and "arising out of" prongs with evidence that Kaijet Taiwan directly shipped the Accused Device directly into Atlanta and sold it in Kennesaw, which is evidence supporting infringement.

"As to the third prong of this test, the burden of proof is on the defendant, which must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in *Burger King*."[89]  Here, Defendants misuse general jurisdiction's "at home" standard in its special jurisdiction analysis.[90]  The

---

[87] *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).
[88] *Powerbahn,* *13-14.
[89] *Breckenridge Pharm.,* 444 F.3d at 1363 (quoting *Burger King*, 471 U.S. at 476-77).
[90] ECF 146, at 13-14.

Kaijet Defendants do not attempt to show that the legal conclusions in their supporting declarations show a "compelling case' under the *Burger King* test.

D.    Agency-Based Jurisdiction: The Motion to Dismiss Does Not Negate Sanho's Agency-Based Jurisdictional Allegations.

In the alternative, Sanho alleges agency-based jurisdiction.  For specific personal jurisdiction "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."[91]  The Kaijet Defendants' declarations aim to challenge Sanho's agency allegations; however, moving to dismiss, while in default, defangs any effort to contest Sanho's agency allegations.

i.    *The Motion to Dismiss Must be Denied Because Kaijet Taiwan's Default Admits Sanho's Agency and Alter Ego Allegations.*

A default under Rule 55(a) admits all well-pleaded allegations contained in the complaint and "severely limits the defendant's ability to defend the action."[92] "The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages.  Thus, if

---

[91] *Celgard v. SK Innovation Co.,* 792 F.3d 1373, 1379 (Fed. Cir. 2015) (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 135, n.13 (2014)); *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1521-23 (11th Cir. 1985); *John Scott, Inc. v. Munford, Inc.,* 670 F. Supp. 344, 347 (S.D. Fla. 1987); *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002).*
[92] *Cross v. Equityexperts.org, LLC,* 1:17-cv-03804-AT, 2019 U.S. Dist. LEXIS 157409 *4-5, (N.D. Ga., Sept. 12, 2019) (quoting *Tyco Fire & Sec., LLC v. Alcocer,* 218 Fed. Appx. 860, 863 (11th Cir. 2007)).

liability is well-pled in the complaint, it is established by the entry of a default."[93]

Sanho's complaint contains well-pleaded allegations supporting agency

jurisdiction.[94]  These allegations support Court's exercise of personal jurisdiction

over the Kaijet Defendants under agency and alter ego principles.[95]

> ii.    *Sanho's Evidence of the Agency Relationship Between Kaijet US and Kaijet Taiwan Require the Court to Deny This Motion Based on the Applicable Legal Standard.*

"In order to establish jurisdiction under the agency theory, the plaintiff must

show that the defendant exercises control over the activities of the third-party."[96]

"Authority to control the company can be evidenced by active involvement in

business affairs and the making of corporate policy, including assuming the duties

of a corporate officer."[97]  Sanho submits evidence showing Kaijet Taiwan's control

over Kaijet US.[98]  The Court has jurisdiction based on agency principles as well.

## III.    <u>Sanho Has a Qualified Right to Conduct Jurisdictional Discovery.</u>

In the Eleventh Circuit, "[a] plaintiff has a qualified right to conduct

---

[93] *Cohan v. Sparkle Two, LLC*, 309 F.R.D. 665, 666 (M.D. Fla. 2015) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)).

[94] ECF No. 89, ¶¶8, 10-27.

[95] *Celgard*, 792 F.3d at 1379 (quoting *Daimler AG,* 571 U.S. at 135, n.13).

[96] *Id.*

[97] *FTC v. Amy Travel Service, Inc.,* 875 F.2d 564, 573 (7th Cir. 1989).

[98] Martin Decl., ¶¶2,4,5,6,7,8,9,10,11,19,22,23, Exs. 1,3,4,5,6,7,8,9,10,18,21,22, [CES and Prezi, and China Post; KAIJET_002645 (Kaijet Taiwan setting and distributing █████████████████" to Kaijet affiliates)].

jurisdictional discovery when jurisdictional facts are in dispute."[99]  Sanho

respectfully requests leave to conduct jurisdictional discovery.

Dated: March 4, 2020                    **ARI LAW, P.C.,**


By: /s/ Benjamin Martin
Benjamin Martin *admitted pro hac vice*
California State Bar No. 257452
ALI A. AALAEI, admitted pro hac vice
California State Bar No. 254713

90 New Montgomery St., Suite 900
San Francisco, CA 94105
Tel:  415-830-9968
Fax:  415-520-9456
Email:      ali@arilaw.com

**HILL, KERTSCHER & WHARTON, LLP**

STEVEN G. HILL, GA Bar No. 354658
MARTHA L. DECKER, GA Bar No. 420867
3350 Riverwood Parkway, Suite 800
Atlanta, Georgia 30339
Telephone: (770) 953-0995
Facsimile: (770) 953-1358
Email:      sgh@hkw-law.com
                md@hkw-law.com

Attorneys for Plaintiff
SANHO CORPORATION

---

[99] *Cold Smoke Capital, LLC v. Gross*, No. 1:11-CV-3558-WSD, 2012 WL 3612626, at *8 (N.D. Ga. Aug. 21, 2012) (quoting *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729–30 & n.7 (11th Cir. 1982) ("jurisdictional discovery is not entirely discretionary[.]")).

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), undersigned counsel certifies that the

foregoing was prepared in Times New Roman, 14-point font, in compliance with

Local Rule 5.1(C).

/s/ Benjamin Martin
Benjamin Martin *admitted pro hac vice*
California State Bar No. 257452

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| SANHO CORPORATION, | |
| Plaintiff, | |
| v. | C.A. No. 1:18-cv-05385-SDG |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., and KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC., doing business as "J5Create"; and DOES 1-10, | **Jury Trial Demanded** |
| Defendants. | |

## CERTIFICATE OF SERVICE

I certify that on the 4th day of March, 2020, I caused to be electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following participants and law firm who are registered CM/ECF users, and will be served by the CM/ECF system.

Bob Carlson
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
bob@leehayes.com

Rhett Vance Barney
Lee & Hayes, P.C.
601 W. Riverside Avenue
Spokane, WA 99201
rhettb@leehayes.com

Robert A. Madayag, III
Ryan P. Gentes
LEE & HAYES, P.C.
1175 Peachtree Street, NE
100 Colony Square, Suite 2000
Atlanta, Georgia 30361
RobM@leehayes.com
Ryan.Gentres@leehayes.com

/s/ Benjamin Martin
Benjamin Martin *admitted pro hac vice*
California State Bar No. 257452