UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>                    Plaintiff,<br><br>        vs.<br><br>KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.,<br>and KAIJET TECHNOLOGY<br>INTERNATIONAL CORPORATION,<br>INC., doing business as "j5create;" and<br>DOES 1-10,<br><br>                    Defendants. | Case No. 1:18-cv-05385-SDG |

## KAIJET TECHNOLOGY INTERNATIONAL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

KaiJet Technology International Corporation ("KTIC") [1], separate and apart from all other Defendants, submits this Reply in support of its Motion to Dismiss[2] ("Motion"). The Response[3] filed by Plaintiff Sanho Corporation ("Sanho") relies on misguided conjecture, unsupported speculation and obviously untrue assertions of fact; further, Sanho misstates applicable law.

---

[1] The correct English-language business name for KTIC does not include ", Inc." The pleading caption adds that term incorrectly.

[2] ECF 146.

[3] ECF 153. Please note that while Sanho's Response states "the Kaijet Defendants challenge the Court's jurisdiction," *id.*at 1, the Motion and this Reply are filed by KTIC separate from co-Defendant KaiJet Technology International Limited, Inc. ("KaiJet").

I.    **SANHO HAS NOT MADE SERVICE OF PROCESS UPON KTIC**

Sanho does not dispute that this Court cannot exercise personal jurisdiction over KTIC without proper service of process[4], and Sanho acknowledges that it has not accomplished service under Rule 4(h)(2), describing Rule 4(h)(2) as a "red herring."[5] Instead, Sanho asserts it made proper service under Rule 4(h)(1)(B); this is plainly untrue.

Sanho's argument that service was proper rests entirely on its contention that Jessica Liu and Steven Lyu are "managing agents" of KTIC. As neither individual can meet the definition of a managing agent under applicable law, Sanho's argument fails.

**A.    Sanho did not serve KTIC a managing agent of KTIC**

Rule 4(h)(1) requires that service in the United States be made on "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."[6] Georgia law similarly allows summons to be served on a managing agent and defines managing agent as a person "who has managing authority for such corporation or foreign corporation."[7]

1.    *Sanho misrepresents the process server's affidavit.*

Sanho's Response asserts that both Jessica Liu and Stephen Lyu "confirmed" that each was "a managing member of Kaijet Technology, based out of Taiwan." Sanho further asserts its process server, one Adam Schwartz, provided a notarized affidavit stating those

---

[4] Motion (ECF 146) at 4-5.
[5] Response (ECF 153) at 2.
[6] Fed. R. Civ. P. 4(h)(1).
[7] O.C.G.A. § 9-11-4(e)(2)

facts. [8] But the "Proof of Service" shows otherwise: the only fact Mr. Schwartz swore to under penalty of perjury was that he served the summons. Below his signature, <u>unsworn</u>, he provided "[a]dditional information regarding attempted service, etc." in which he stated "Defendant confirmed that he is a managing member of Kaijet Technology, based out of Taiwan."[9] Mr. Schwartz does not identify "Defendant," and if by that he meant Steven Lyu, Mr. Lyu is not a Defendant (nor is Ms. Liu). Both the failure to swear to asserted facts and the inaccurate use of "Defendant" damage this process server's credibility. Thus, Sanho's contention that the process server's statements "trump" the evidence submitted by KTIC is unfounded. Contrary to Sanho's implication, the Court is not required to accept Sanho's assertions simply because they conflict with the facts established by KTIC; instead, the Court is obligated to construe only <u>reasonable</u> inferences in Sanho's favor.[10]

It is unreasonable to accept the careless and unsworn "additional information" as true where it blatantly conflicts with sworn declaration testimony of both Ms. Liu and Mr. Lyu. Ms. Liu testifies that the person who handed her papers at the CES Show asked nothing other than if she was "Jessica;" he did not ask if she was a "manager" of "KaiJet Technology" and did not request any other information.[11] Mr. Lyu testifies that the server asked nothing other than his name, and specifically did not ask if Mr. Lyu was a manager

---

[8] Response at 4.
[9] ECF 119 (comparable statement as to Jessica Liu on ECF 118).
[10] *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).
[11] Supp. Declaration of Yu Chia (Jessica) Liu, ¶3.

of "KaiJet Technology."[12]  Indeed, Mr. Lyu is emphatic that he never "confirmed" these wrong facts, and he neither works nor resides in Taiwan, so did not and would not represent that he is "based out of Taiwan."[13] Sanho's inference to the contrary is simply not credible, and not reasonable under the circumstances.

      2.    *Sanho cannot show service on a "managing member" of KTIC*

Sanho places great and undue reliance on a single-page filing with the FCC, asking that the Court take judicial notice that because the word "Manager" appears on that form in connection with Ms. Liu's contact information, service on Ms. Liu must equate to service on KTIC.[14]  But Ms. Liu's testimony is clear that she is not an officer, director or manager of KTIC, and she did not have the title of "Manager" when that FCC filing was made in 2018.[15]

What is more, while FRCP 4(h)(1)(B) permits service on a "managing agent," Ms. Liu clearly does not meet that definition under Georgia law.  The relevant statute[16] defines managing agent as follows:

> As used in this paragraph, the term "managing agent" means a person employed by a foreign corporation doing business in this state without authorization to transact business in this state or a nonresident individual, partnership, joint-stock company, or association doing business in this

---

[12] Supp. Declaration of Shou Yuan Steven Lyu, ¶3.
[13] *Id.*, ¶¶4-5.
[14] Response at 3.
[15] Supp. Decl. Liu, ¶7.
[16] O.C.G.A. Section 9-11-4(e)(2)(b).

> state who is at an office or facility in this state and **who has managerial or supervisory authority for such foreign corporation** . . . .

Under Georgia law, a managing agent of a foreign corporation must have an office or facility in the state of Georgia and must have managerial or supervisory authority for such foreign corporation. Ms. Liu plainly does not meet either criterion[17], and Sanho cannot prove otherwise. Georgia law provides that Ms. Liu is not a proper agent for service of process even if she had been designated with the title of "Manager."[18]

### B. Sanho cannot serve KTIC through KaiJet

Sanho (Response at 6-8) places extensive reliance upon the *Heise* decision[19], but the facts in that case have no analog in the case at bar. In *Heise,* service on a Japanese corporation was deemed effective because the Plaintiff had served the president of the corporation's wholly-owned U.S. subsidiary. This individual, the court reasoned, met the definition of managing or general agent, relying upon other cases that examine the degree of control the foreign corporation exercises over a wholly-owned domestic subsidiary.[20] Sanho cites additional cases too, all of which feature a foreign parent and a U.S.

---

[17] Supp. Decl. Liu, ¶8.

[18] *Thoni Oil Co. v. Tinsley*, 140 Ga. App. 887, 888, 232 S.E.2d 162, 163 (1977) (service station attendant's designation as "Mgr." insufficient for service on corporation).

[19] *Heise v. Olympic Optical Co.,* 111 F.R.D. 1 (N.D. Ind. 1986)

[20] *Id.* At 6, citing *Lamb v. Volkswagenwerk Aktiengesellschaft,* 104 F.R.D. 95 (S.D. Fla. 1985).

subsidiary.[21] A case from this District cites *Heise* as a limited exception to the general rule that "in a civil context, service of process on a wholly owned subsidiary does not constitute service of process on the parent corporation where separate corporate identities are maintained."[22]

But in the case at bar, there is no parent-subsidiary relationship: it is beyond dispute that KaiJet is not a subsidiary of KTIC.[23] KTIC operates separately from KaiJet, and does not have the ability to control KaiJet's operations.[24]

Sanho's confusion over the applicability of *Heise* may arise from Sanho's apparent, but wrong, belief that KaiJet and KTIC are both members of a larger organization it dubs "KaiJet Group Organization."[25] The Declaration of Sanho's counsel Mr. Martin explains at some length an online "Prezi presentation." That document was created by a very new and short-term employee of KaiJet, "DeAnna Harris," for the purpose of trying out the Prezi platform, and is rife with inaccuracies. The "prezi" referred to was populated with stock photographs, and Ms. Harris ended employment with KaiJet before errors in the

---

[21] *Tillotson Corp. v. Top Glove SDN. BHD*, No. 4:05-CV-0232-RLV, 2006 U.S. Dist. LEXIS 85875, at *6 (N.D. Ga. Nov. 27, 2006) (service on president of wholly-owned subsidiary who was "executive director of Top Glove Corp.")
[22] *Johnson v. Bank of N.Y. Mellon*, No. 1:17-CV-04499-ELR-AJB, 2018 U.S. Dist. LEXIS 219729, at *9 (N.D. Ga. July 11, 2018).
[23] Supplemental Declaration of Yu-Chi Tai ("Supp. Decl. Tai")¶5.
[24] *Id.*, ¶¶4-5.
[25] Response at 15, fn 59; Martin Declaration (ECF 143-1) at ¶4.

content were edited.[26] Ms. Harris was never employed by KTIC, never spoke with anyone at KTIC, and never received authorization from KTIC to post the "prezi."[27]

Sanho has not shown and cannot show sufficiency of service of process. All that Sanho is accomplished is to deliver papers to individuals employed only by KTIC's co-Defendant KaiJet.  Despite the passage of months since the filing of its Third Amended Complaint ("TAC"), Sanho has not taken any of the steps required by law to achieve proper service of process on KTIC, through the intervention of courts in Taiwan, as required under that country's laws. The TAC should be dismissed with respect to KTIC.

## II.    SANHO DID NOT DISPUTE INSUFFICIENCY OF PROCESS

KTIC's Motion sets forth a cause for dismissal of the TAC separate from insufficient service: the process itself is insufficient because it does not comport with requirements imposed by the laws of Taiwan. It is undisputed that proper service on a corporation of Taiwan requires service of documents in English, but with certified translations in Mandarin Chinese.[28]  It is further undisputed that Sanho did not comply.

Sanho's Response completely ignores this independent basis for KTIC's Motion to Dismissal the TAC as to KTIC.  Pursuant to FRCP 12(b)(4), dismissal is an appropriate remedy, given that Sanho had ample opportunity to comply with required process, but chose not to.

---

[26] Declaration of Charles Akins ("Akins Decl.") ¶¶3-10.
[27] Tai Decl. ¶6.
[28] Motion at 8.

### III. SANHO HAS NOT OVERCOME KTIC'S PROOF THAT THE COURT LACKS PERSONAL JURISDICTION

"[I]f the defendant challenges personal jurisdiction with affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'"[29] The plaintiff must "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."[30] In its TAC, Sanho only made allegations that KTIC was subject to **general** jurisdiction in this District, based on alleged activities in the State of Georgia. In its Motion to Dismiss, KTIC overcame the allegations of general jurisdiction. Therefore, Sanho was required to substantiate the jurisdictional allegations **in the complaint** by affidavits or other competent proof. Sanho has failed to do so, making no effort to support its allegations of general jurisdiction.

Instead, in its Response, Sanho shifted from an allegation of general jurisdiction to a purported allegation of specific jurisdiction. As a practical matter, these arguments should be ignored; they are improper because they represent new allegations not set forth in Sanho's TAC. However, even if the Court considers Sanho's new specific jurisdiction arguments, they are rooted in misinterpretations of both fact and law and are therefore unpersuasive.

---

[29] *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).

[30] *Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986).

**A.    Sanho made no attempts to substantiate the allegations of general jurisdiction in its TAC**

In the section of its TAC titled "Jurisdiction and Venue," Sanho alleges that "[t]his Court has personal jurisdiction over the Defendant [referring to both KaiJet and KTIC with the singular "Defendant"] because, among other things, defendants reside within this judicial district and the acts of infringement complained of herein occurred in the State of Georgia and in this judicial jurisdiction."[31] Sanho makes several allegations regarding the corporate connection between KTIC and KaiJet to illustrate that both were subject to general jurisdiction in Georgia.[32] KTIC showed those allegations to be false it its Motion, and Sanho has not made any specific efforts to rebut KTIC's showing. In fact, Sanho made no argument regarding general jurisdiction in its Response. Therefore, Sanho has not met its burden with regards to general jurisdiction.

**B.    Even if consideration of new jurisdictional allegations was proper, Sanho cannot show Specific Jurisdiction**

1.    *Consideration of Sanho's specific jurisdiction arguments is improper because they are not supported by the TAC*

In its TAC, Sanho alleged that "[t]here is such unity of interest and ownership that separate personalities of KaiJet US and KaiJet Taiwan no longer exist"[33] and that "KaiJet US makes no distinction between KaiJet US and KaiJet Taiwan conducting operations."[34]

---

[31] TAC (ECF 89), ¶7.

[32] *Id.*, ¶¶7-28.

[33] *Id.*, ¶11

[34] *Id.*, ¶12.

Sanho goes on to allege that "[t]here are no bonafide written contracts between the defendants as they are essentially one and the same."[35] After KTIC showed, in its Motion to Dismiss, that these statements were false, Sanho now attempts a bait-and-switch. Far from substantiating the jurisdictional allegations in its TAC, Sanho now attempts to use the arms-length transactions between KaiJet and KTIC that it alleged did not exist to establish specific jurisdiction for KTIC. For example, Sanho cites "extensive negotiations" between KaiJet and KTIC as evidence of specific jurisdiction. Because Sanho did not make any allegations regarding transactions between KTIC and KaiJet in its TAC, and in fact pled against their existence, the allegations should not be considered at this stage. However, even it were proper to consider Sanho's arguments, those arguments do not show that Georgia has specific jurisdiction over KTIC for the claims alleged in Sanho's TAC.

> 2.    *Sanho does not allege a cause of action arising out of KTIC's actions in the State of Georgia*

Sanho bases its specific jurisdiction argument on the allegations that KTIC (a) ships products to Georgia, (b) sells the accused product in Georgia, (c) communicates and negotiates with Georgia-based KaiJet. However, Sanho's allegations are either inaccurate or relate to actions that do not give rise to its claims.

KTIC does not ship the accused product to Georgia. Sanho overstates the significance of the third-party shipping company's labeling of KTIC as the "shipper" on

---

[35] *Id.*

its official Arrival Notice.[36] Other courts have dealt with plaintiffs placing undue emphasis on labeling on standard forms.[37] For example, the court in *Cybiotronics* faulted that plaintiff for incorrectly assuming that because the defendant "is listed as the 'Shipper/Exporter' on the Bills of Lading that the accompanying shipments of the accused product … it must also be the 'importer into' the United States."[38] That court found that while the foreign defendant may have played a role in "coordinating" the shipments with the domestic defendant, the facts showed it was the domestic defendant who was the importer of the goods into the United States.[39] Because, in that case, the foreign defendant had "not *itself* engaged in the conduct prohibited by the statute, i.e., 'importing into the United States,' the Court may not extend the patent infringement statute to reach conduct which . . . is not within its terms.[40]

Documents cited by Sanho in its Response show that KaiJet, not KTIC, was the importer of the accused product and was responsible for the shipping of the products into the United States. Exhibit 19 to the declaration of Benjamin Martin includes Entry Summaries from the Department of Homeland Security identifying KaiJet as the importer

---

[36] Response at 13.

[37] *Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*, 130 F. Supp. 2d 1152, 1173 (C.D. Cal. 2001)

[38] *Id.*

[39] *Id.* at 1174.

[40] *Id.*

of record,[41] consistent with the declaration of KTIC's CEO Yu-Chi Tai.[42] The same Exhibit 19 includes multiple shipping documents that identify KaiJet, not KTIC, as the party responsible for payment for the shipping.[43] KTIC has refuted, by declaration, that it is the shipper or importer of the accused product into the United States.[44] The documents provided by Sanho support, rather than refute, this assertion. Therefore, these actions cannot form the basis of Sanho's allegations of personal jurisdiction.

KTIC does not sell the accused product in Georgia.[45] Sanho cites *MEMC Electronic Materials* for the proposition that "an actual sale" for the purposes of 35 USC § 271 occurs where "contracting and performance" or other "essential activities" occur.[46] However, the court in *MEMC Electronic Materials* found that the defendant had not infringed a U.S. patent because the situs of the sale was in Japan.[47] Courts have held that a seller is not liable for direct patent infringement just because the final destination of the accused product is the United States.[48] "The negotiation and execution of a contract to sell is not, standing alone, a sale that is an act of infringement under section 271(a)."[49] In *Quality*

---

[41] ECF 152-20, Ex. 19 at 6 and 15.

[42] ECF 146-3, ¶9.

[43] ECF 152-20, Ex. 19 at 12, 21, 25, 39, and 43-45.

[44] ECF 146-3, ¶9.

[45] ECF 146-1, ¶7.

[46] Response at 14.

[47] *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1382 (Fed. Cir. 2005).

[48] *Quality Tubing, Inc. v. Precision Tube Holdings Corp.*, 75 F. Supp. 2d 613, 621 (S.D. Tex. 1999); *Cybiotronics*, 130 F. Supp. 2d at 1173.

[49] *Quality Tubing*, 75 F. Supp. 2d at 621.

*Tubing*, even though the contract for sale was negotiated in the United States, any "sale" of goods was to take place outside of the United States.[50] Sanho also, confusingly, cites to *UPS Supply Chain* for the holding that a "foreign corporation did not purposefully [do] some act or consummated some transaction because, inter alia, foreign defendant 'was not demanding payment from' Georgia entity"[51] in order to argue that demanding a payment from Georgia automatically confers jurisdiction. The court in *UPS Supply Chain* did not convey such a holding and makes clear that the analysis requires the court to look at the "totality of the circumstances."[52]

Here, Sanho does not dispute the fact that KaiJet purchases products from KTIC in Taiwan.[53] The documents cited by Sanho show that KaiJet, not KTIC, pays to have the products shipped from Taiwan to the United States and imports them into the United States.[54] The only activity Sanho can show took place in the United States related to the sale of the accused product was initiation of payment by KaiJet and negotiation for the product price.[55] Therefore, looking at the totality of the circumstances, KTIC's essential activity related to the sale of the accused product took place in Taiwan, not the United States.

---

[50] *Id.*, at 619-621.
[51] Response, fn 49.
[52] *UPS Supply Chain Sols., Inc. v. Dynasystems Ltd.*, No. 1:15-cv1467-TCB, 2016 U.S. Dist. LEXIS 13260, at *14 (N.D. Ga. Jan. 29, 2016).
[53] ECF 146-1, ¶7.
[54] ECF 152-20, Ex. 19 at 6, 12, 15, 21, 25, 39, and 43-45.
[55] Response at 13-14.

Sanho also argues that other activities unrelated to its causes of action give rise to specific jurisdiction for these claims. Georgia long-arm statute requires that the cause of action arise from a "tortious act or omission **within this state**."[56] Sanho's allegations regarding the "quick installation guide" or Ms. Lin's request to be sent a Hyperdrive product are not tortious acts and they do not give rise to Sanho's causes of action.[57] Therefore, whether these actions were committed "in Georgia" is irrelevant to determining if Georgia has specific jurisdiction over KTIC for the claims in Sanho's TAC.

### 3.    *Sanho did not allege a claim for indirect infringement*

Sanho's Response further asserts personal jurisdiction "based on contacts arising from Sanho's indirect infringement claims."[58] However, it is beyond dispute that Sanho's TAC has no allegations of indirect infringement. The two forms of indirect infringement recognized by the patent statute are active inducement to infringe and contributory infringement.[59] Sanho alleges only direct infringement, by both KTIC and KaiJet; nowhere in its TAC is an allegation that KTIC induces infringement by another or contributes to infringement by another.[60]  For that reason, Sanho has no basis on which it can assert KTIC has any contact with Georgia through indirect infringement.

---

[56] O.C.G.A. § 9-10-91(1).
[57] Response at 15.
[58] *Id*. at 18.
[59] 35 U.S.C. §§ 271 (b) and (c) respectively.
[60] Third Amended Complaint, ECF 89, ¶¶55-64.

## IV.   __CONCLUSION__

Sanho did not serve KTIC under Rule 4 of the Federal Rules of Civil Procedure. Even if Sanho were to properly affect service, KTIC is not subject to jurisdiction in Georgia for the causes in Sanho's TAC. Jurisdictional discovery is not required as Sanho, in effect, does not defend allegations in its complaint that were refuted by KTIC.[61] Allowing Sanho to conduct jurisdictional discovery to support its new jurisdiction allegations, which are unsupported by the TAC would be the definition of a "fishing expedition," which is generally discouraged.[62]

DATED this 25th day of March, 2020.

s/Ryan P. Gentes
Ryan P. Gentes
GA Bar No. 421695
LEE & HAYES, P.C.
75 14th Street NE, Ste. 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com

s/ Robert J. Carlson
Robert J. Carlson
WSBA Number 18455
*Admitted Pro Hac Vice*
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: bob@leehayes.com
*Attorneys for Defendant KaiJet Technology
    International Corporation*

---

[61] Sanho makes a single conclusory statement that "Sanho submits evidence showing Kaijet Taiwan's control of Kaijet US" without any further specifics. Response at 25.

[62] *Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.*, 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013); *Cold Smoke Capital, LLC v. Gross*, No. 1:11-cv-3558-WSD, 2012 U.S. Dist. LEXIS 117955, at *22-25 (N.D. Ga. Aug. 21, 2012).

15

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of March, 2020, I caused to be filed the

**KAIJET TECHNOLOGY INTERNATIONAL CORPORATION'S REPLY IN**

**SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED**

**COMPLAINT** with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to the following attorneys of record:

Ali A. Aalaei

Alexander Chen

Benjamin Martin

Steven G. Hill

Martha L. Decker

s/ Robert J. Carlson
WSBA Number 18455
*Admitted Pro Hac Vice*
Attorneys for Defendant Kaijet Technology
   International Corporation

LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Fax: (509) 323-8979
Email: bob@leehayes.com