**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

SANHO CORPORATION,

     Plaintiff,

          v.

KAIJET TECHNOLOGY INTERNATIONAL
LIMITED, INC.; KAIJET TECHNOLOGY
INTERNATIONAL CORPORATION, INC.,
doing business as "j5create"; and DOES 1-10,

     Defendants.

KAIJET TECHNOLOGY INTERNATIONAL
LIMITED, INC.,

     Counterclaim Plaintiff,

          v.

SANHO CORPORATION,

     Counterclaim Defendant.

Civil Action No.
1:18-cv-05385-SDG

## <u>OPINION AND ORDER</u>

This matter is before the Court on the following motions: Plaintiff/Counterclaim Defendant Sanho Corporation's motion to dismiss Counterclaim Count VIII [ECF 132]; Defendant KaiJet Technology International Corporation's ("KaiJet Taiwan") motion to dismiss all claims asserted against it in Sanho's Third Amended Complaint [ECF 146]; and Sanho's motion for a finding of overlapping entity status between KaiJet Taiwan and Defendant/Counterclaim

Plaintiff KaiJet Technology International Limited, Inc. ("KaiJet US"), as well as with two non-party entities for the purposes of discovery [ECF 165]. For the following reasons, Sanho's motion to dismiss is **DENIED**; KaiJet Taiwan's motion to dismiss is **DENIED**; and Sanho's motion for a finding of overlapping entity status for discovery is **GRANTED IN PART and DENIED IN PART**.[1]

## I.    BACKGROUND[2]

The Court treats the following facts as true for the purpose of resolving these motions.[3] Sanho is a computer electronics company incorporated in Delaware with its principal place of business in Fremont, California.[4] KaiJet US is a corporation headquartered in Delaware with its principal place of business in Kennesaw, Georgia.[5] KaiJet Taiwan is a Taiwanese corporation that Sanho alleges

---

[1]    The parties have also filed four motions for leave to file certain matters under seal [ECF 154; ECF 167; ECF 171; ECF 175]. For good cause shown, these motions are **GRANTED**.

[2]    In this Order, the Court refers to some information that the parties have filed under seal. The Court does not find that the information cited in this Order needs to be sealed, notwithstanding the parties' confidentiality designations.

[3]    *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[4]    ECF 89, ¶¶ 2, 7.

[5]    *Id*. ¶ 8.

operates KaiJet US as a subsidiary in KaiJet Taiwan's "j5Create" brand.[6] Sanho alleges KaiJet Taiwan and KaiJet US essentially operate as one entity, as exemplified by their overlapping ownership, officers, directors, interests, control, and business operations.[7]

On May 25, 2018, Sanho filed its initial Complaint against KaiJet US, asserting that Sanho is the owner, by assignment of all rights, in U.S. design patent D813,875 (the "'875 Patent").[8] The '875 Patent claims the ornamental design for a multi-function docking station colloquially known as the "HYPERDRIVE."[9] Subsequently, on August 6, 2019, Sanho obtained U.S. design patent D855,616 (the "'616 Patent").[10] The '616 Patent is directed at the technology underlying Sanho's HYPERDRIVE product.[11] Sanho alleges it released the HYPERDRIVE to the public on December 5, 2016 and began shipping the product in January 2017.[12] In October 2017, the KaiJet entities (*i.e.*, KaiJet US and KaiJet Taiwan) allegedly

---

[6]   *Id*. ¶¶ 8–9.

[7]   *Id*. ¶¶ 10–19.

[8]   ECF 1.

[9]   ECF 87, ¶ 31.

[10]   *Id*.

[11]   *Id*. ¶¶ 31, 33.

[12]   ECF 87, ¶ 30.

began misappropriating Sanho's technology and have infringed on both the '875 Patent and '616 Patent by manufacturing and selling their "ULTRADRIVE" product.[13] The Court analyzes each pending motion separately below.

## II.   KAIJET TAIWAN'S MOTION TO DISMISS

### a.   Background

On November 14, 2019, pursuant to this Court's Order,[14] Sanho filed the operative Third Amended Complaint.[15] That pleading added KaiJet Taiwan as a named Defendant and included allegations involving the '616 Patent.[16] On January 14, 2020, Sanho filed proofs of service showing it had served KaiJet Taiwan through personal service of the Third Amended Complaint and Summons on Jessica Liu and Shou Yuan Steven Lyu.[17] Sanho contends Liu and Lyu are managing agents of KaiJet Taiwan.[18]

Despite the personal service on Liu and Lyu, KaiJet Taiwan did not file an answer or otherwise respond to the Third Amended Complaint. On January 29,

---

[13]   *Id*. ¶ 37.

[14]   ECF 87.

[15]   ECF 88.

[16]   ECF 89, ¶¶ 55–64.

[17]   ECF 118; ECF 119.

[18]   *Id*.

2020, Sanho filed a motion for a Clerk's entry of default against KaiJet Taiwan.[19]

The Clerk subsequently entered the default on January 30. On February 12, the

same counsel representing KaiJet US in this action noticed their appearances on

behalf of KaiJet Taiwan.[20] KaiJet Taiwan then filed a motion to dismiss all claims

asserted against it in the Third Amended Complaint.[21] Sanho filed a response in

opposition on March 4.[22] KaiJet Taiwan filed a reply on March 25.[23] To date, KaiJet

Taiwan has not filed a motion to set aside the Clerk's entry of default.

> **b.    The Court Has Jurisdiction to Resolve KaiJet Taiwan's Motion to Dismiss.**

As a thresholder matter, the Court may exercise jurisdiction to resolve KaiJet

Taiwan's pending motion to dismiss even though it has not filed a motion to set

aside the Clerk's entry of default. "The entry of a default against a defendant,

unless set aside pursuant to Rule 55(c), severely limits the defendant's ability to

defend the action." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir.

2007). For example, a defaulted defendant "is deemed to admit the plaintiff's well-

---

[19]   ECF 133.

[20]   ECF 144 (notice of appearance by Ryan Gentes); ECF 145 (notice of appearance by Robert Carlson).

[21]   ECF 146.

[22]   ECF 152.

[23]   ECF 160.

pleaded allegations of fact," but not "facts that are not well-pleaded or to admit conclusions of law." *Id*. A defaulting defendant is also entitled to challenge the Court's jurisdiction. *Id*. Crucially, such a defendant can "challenge the validity of service of process or contest the court's exercise of personal jurisdiction over him." *Id*. However, the defaulting defendant is limited to those narrow exceptions and cannot raise other defenses without successfully vacating the entry of default. *Id*.

Here, KaiJet Taiwan's motion to dismiss only attacks the Court's jurisdiction. Specifically, it raises the defenses of insufficient service of process, insufficient process, and a lack of personal jurisdiction. Since KaiJet Taiwan is entitled to raise these defenses while in default—and does not challenge the Third Amended Complaint on any other grounds—this Court may adjudicate the motion.

### c.   Discussion

KaiJet Taiwan contends all of Sanho's claims against it must be dismissed because: (1) Sanho did not properly serve KaiJet Taiwan with process pursuant to Federal Rule of Civil Procedure 12(b)(5); (2) Sanho did not provide KaiJet Taiwan with sufficient process pursuant to Federal Rule of Civil Procedure 12(b)(4); and (3) the Court lacks personal jurisdiction over KaiJet Taiwan. The Court addresses each below.

### i.     Sanho Properly Served KaiJet Taiwan with Sufficient Process.

KaiJet Taiwan argues that Sanho failed to properly effect service. Pursuant to Rule 12(b)(5), a defendant may seek the dismissal of a complaint for insufficient service of process. *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 (11th Cir. 2003) ("[A]n individual or entity is not obliged to engage in litigation unless officially notified of the action . . . under a court's authority, by formal process."); *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served."). Rule 4(h) governs the service of process on a corporation.[24] Rule 4(h)(1)(B), relevant here (for reasons explained further below), states:

> [A] domestic or foreign corporation . . . must be served: (1) in a judicial district of the United States . . . (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

---

[24]   KaiJet Taiwan is a corporation organized under the laws of Taiwan. ECF 89, ¶ 9; ECF 146, at 3.

The term "delivering" entails personal service. *Dyer v. Wal-Mart Stores, Inc.*, 318 F. App'x 843, 844 (11th Cir. 2009).

Rule 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990). In resolving a motion to dismiss based on insufficient service of process, the Court must apply "the standards of proof governing motions to dismiss for lack of personal jurisdiction." *Lowdon PTY Ltd. v. Westminster Ceramics, LLC*, 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008). The party contesting service bears the burden of showing its deficiency. *Ritts v. Dealers All. Credit Corp.*, 989 F. Supp. 1475, 1478 (N.D. Ga. 1997). The Court may "make factual findings necessary to resolve [a] motion[ ] to dismiss for . . . ineffective service of process . . . so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). If the parties present "countering evidence, the court must construe all reasonable inferences in favor of the plaintiff." *Lowdon*, 534 F. Supp. 2d at 1360.

Relevant here, Sanho filed a proof of service as to Jessica Liu on January 14, 2020.[25] It indicates that Sanho personally served Liu with a copy of the Third Amended Complaint and Summons in Las Vegas, Nevada on January 7, 2020.[26] In the notarized affidavit, the registered process server—Adam Schwartz—stated that Liu "confirmed that she is a managing member of KaiJet Technology, based out of Taiwan."[27] To support its conclusion that Liu is a managing member of KaiJet Taiwan, Sanho points to registration documents KaiJet Taiwan filed with the Federal Communications Commission ("FCC") on March 13, 2018.[28] In those documents, Liu is plainly listed as the "Manager" of "KaiJet Technology International Corporation."[29]

KaiJet Taiwan agrees Sanho personally served Liu in Las Vegas. Assuming Liu is a managing member of KaiJet Taiwan, this evidence is sufficient for Sanho to demonstrate that it properly served KaiJet Taiwan. *Vax-D Med. Techs., LLC v. Texas Spine Med. Ctr.*, 485 F.3d 593, 596 (11th Cir. 2007) (holding plaintiff properly served defendant with process by serving the defendant's manager with a copy of

---

[25]   ECF 118; ECF 119.

[26]   ECF 118.

[27]   *Id*. As noted below, KaiJet Taiwan disputes this sworn testimony.

[28]   ECF 152-2, at 2.

[29]   *Id*.

the summons and amended complaint). KaiJet Taiwan, however, urges the Court to find that, despite Schwartz's representations in the proof of service and KaiJet Taiwan's own FCC filing, Liu is not an officer, director, or manager of KaiJet Taiwan and is not authorized to accepted service on its behalf.[30] KaiJet Taiwan provides the Court with affidavits from Liu and Yu-Chi Tai—the latter of whom purports to be KaiJet Taiwan's Chief Executive Officer—in support of its contention.[31] Liu's and Tai's affidavits directly contradict the proof of service document and KaiJet Taiwan's own representations in its FCC filing.[32] Specifically, Liu contends Schwartz "did not ask me if I was a manager of 'KaiJet Technology' or for any other information."[33] And both Liu and Tai contend that Liu has not been an officer, director, manger, or owner of KaiJet Taiwan since 2014.[34]

---

[30]   ECF 146, at 3.

[31]   ECF 146-2; ECF 146-3.

[32]   *Id*.

[33]   ECF 146-2, ¶ 3.

[34]   *Id*.; ECF 146-3.

However, neither KaiJet Taiwan, Liu, nor Tai explain the FCC filing that identifies Liu as KaiJet Taiwan's manager in 2018.[35]

Sanho and KaiJet Taiwan have presented the Court with conflicting evidence regarding Liu's role at KaiJet Taiwan. To resolve this conflict, the Court must construe all reasonable inferences in Sanho's favor. *Lowdon*, 534 F. Supp. 2d at 1360. In doing so, the Court finds Sanho has presented sufficient evidence that it properly served KaiJet Taiwan with process. As such, the Court need not address KaiJet Taiwan's arguments regarding Rule 4(h)(2), Rule 4(f), or the Taiwan Code of Civil Procedure.

---

[35] KaiJet Taiwan attaches "supplemental" declarations from both Liu and Lyu to its reply in support of its motion to dismiss [ECF 160-2; ECF 160-4.] In Liu's supplemental affidavit, she claims KaiJet Taiwan "inadvertently" listed her as its manager in the FCC registration after KaiJet Taiwan changed its name in 2017 [ECF 160-2.] The law is clear that "a court should not consider arguments raised for the first time in a reply brief." *Reliance Ins. Co. of Ill. v. Richfield Hosp. Servs., Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000). Additionally, the Court is not required to credit a non-moving party's conclusory, self-serving affidavit when ruling on a motion to dismiss. *Cf. Bell v. Advanced Corr. Healthcare, Inc.*, No. 2:16-cv-278-TMP, 2016 WL 7242170, at *1 n.1 (N.D. Ala. Dec. 15, 2016); *Quach v. Paragon Sys. Inc.*, No. 1:15-cv-00750-RWS-RGV, 2015 WL 13719674, at *3 (N.D. Ga. Oct. 28, 2015). Therefore, the Court declines to consider the new argument raised in Liu's and Lyu's supplemental affidavits. As is clear from the discussion below, however, even if the Court considered KaiJet Taiwan's new argument, the Court's ruling would not change.

With respect to its argument under Rule 12(b)(4), KaiJet Taiwan argues the documents Sanho served on Liu and Lyu were deficient and do not qualify as sufficient process under the Federal Rules of Civil Procedure. Specifically, KaiJet Taiwan contends Sanho did not comply with the process required for letters rogatory to be served in Taiwan and did not serve Liu and Lyu with a certified language translation of the Third Amended Complaint and Summons from English to Mandarin Chinese.

KaiJet Taiwan's contentions regarding insufficient process are unpersuasive. First, KaiJet Taiwan's reliance on the processes required under the Hague Convention or to serve letters rogatory in Taiwan is misplaced. Since Sanho properly served KaiJet Taiwan in compliance with Rule 4(h)(1)(B) by personally serving Liu in the United States, it did not need to resort to the Hague Convention or a letter rogatory. *Lamb by & Through Donaldson v. Volkswagenwerk Aktiengesellschaft*, 104 F.R.D. 95, 97 (S.D. Fla. 1985) ("By its terms, The Hague Convention is applicable only to attempts to serve process in foreign countries.").

Second, it is undisputed that Sanho served Liu with a copy of the Third Amended Complaint and Summons in a timely manner in compliance with Rule 4(c). There is no indication that the documents served on Liu did not contain the information required by Rule 4(a). While KaiJet Taiwan asserts Sanho erred by not

including a translated version of these documents, there is no such requirement in Rule 4. *Albo v. Suzuki Motor Corp.*, No. C.A. 308-0139-KC, 2008 WL 2783508, at *3 (W.D. Tex. July 2, 2008) ("Defendant does not cite any authority stating that failure to translate a summons into a country's official language constitutes a defect in form of the process."). KaiJet Taiwan's argument is instead premised on the notion that Sanho had to serve KaiJet Taiwan *in Taiwan*, which Sanho was not required to do because it properly served Liu in the United States. Therefore, Sanho provided KaiJet Taiwan sufficient process and KaiJet Taiwan's arguments are without merit.

### ii.   KaiJet Taiwan Is Subject to Personal Jurisdiction in this Court.

KaiJet Taiwan alternatively seeks dismissal on the theory that the Court lacks personal jurisdiction over it as a Taiwanese corporation. "Federal Circuit law governs personal jurisdiction in patent cases." *Kason Indus., Inc. v. Dent Design Hardware, Ltd.*, 952 F. Supp. 2d 1334, 1339 (N.D. Ga. 2013) (citing *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65 (Fed. Cir. 1994)). *See also Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) ("[W]here the personal jurisdictional inquiry is intimately involved with the substance of the patent laws, we apply Federal Circuit law."). To defeat the motion to dismiss, Sanho is

"required only to make a *prima facie* showing of jurisdiction." *Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005). The Court must accept Sanho's uncontroverted allegations as true and resolve any factual conflicts in Sanho's favor. *Elecs. for Imaging,* 340 F.3d at 1349 (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002)).

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017). Two recognized categories of personal jurisdiction comport with due process: general and specific jurisdiction. As succinctly articulated by the Supreme Court:

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal

citations and punctuation omitted).

### 1.   The Court's Exercise of Jurisdiction Comports with Georgia's Long Arm Statute.

In relevant part, Georgia's long arm statute provides:

> A court of this state may exercise personal jurisdiction over any nonresident . . . in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state . . . .

O.C.G.A. § 9-10-91(1). Georgia's long arm statute is not "coextensive with

procedural due process." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593

F.3d 1249, 1259 (11th Cir. 2010) (interpreting *Innovative Clinical & Consulting Servs.,*

*LLC v. First Nat'l Bank of Ames, Iowa*, 279 Ga. 672 (2005)). The statute "must be read

literally," as it "imposes independent obligations that a plaintiff must establish for

the exercise of personal jurisdiction that are distinct from the demands of

procedural due process." *Diamond Crystal*, 593 F.3d at 1259. Since the Court's

application of the Georgia long arm statute is "governed by state law," the Court

"must interpret and apply Georgia's long arm statute in the same way as would

the Georgia Supreme Court." *Id*.

According to the Georgia Supreme Court, "O.C.G.A. § 9-10-91(1) grants

Georgia courts the unlimited authority to exercise personal jurisdiction over any

nonresident who transacts any business in this State." *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 266 (2011). And a nonresident corporation need not be physically present in the state to satisfy this requirement. *Diamond Crystal*, 593 F.3d at 1264. The Court must "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia." *Id. See also POWERbahn, LLC v. Found. Fitness LLC*, No. 1:17-cv-2965-AT, 2020 WL 1467248, at *5 (N.D. Ga. Jan. 29, 2020) ("To transact business, a defendant need not physically enter the state to subject himself to the long-arm statute and courts may consider intangible acts that occur while the defendant is outside of Georgia, such as the nonresident's mail and telephone calls.").

In the Third Amended Complaint, Sanho alleges KaiJet Taiwan operates in a physical location in Georgia and ships and sells its products directly in the State.[36] Sanho presents evidence: (1) listing KaiJet Taiwan as the "shipper" of the

---

[36]   *E.g.*, ECF 89, ¶ 10 ("KaiJet Taiwan operates through a physical office located in Georgia, in which State its officers and directors also operate on the ground in Georgia."); *id.* ¶ 14 ("KaiJet Taiwan conduct[s] activities in the United States and Georgia through its subsidiaries and affiliates."); *id.* ¶ 19 ("KaiJet Taiwan performed several overt acts in furtherance of [its] plan within the State of Georgia, including delivery of the accused products, and aiding and abetting the same, within the United States and in Georgia."); *id.* ¶ 21 ("KaiJet Taiwan . . . is responsible for . . . the development, design, manufacture, sale,

ULTRADRIVE product from Taiwan to KaiJet US in Atlanta, Georgia;[37] (2) showing KaiJet US initiated electronic wire payments from Georgia to KaiJet Taiwan in Taiwan for the sale of the ULTRADRIVE;[38] and (3) that KaiJet Taiwan sent emails and other intangible communications to KaiJet US in Georgia in furtherance of certain negotiations involving the ULTRADRIVE.[39]

KaiJet Taiwan disputes Sanho's characterizations and evidence. According to KaiJet Taiwan, KaiJet US purchases the products directly from KaiJet Taiwan in Taiwan, then imports the product itself into Georgia to sell. For this, KaiJet Taiwan relies on Liu's and Tai's affidavits, which directly contradict Sanho's allegations and evidence. Liu and Tai both aver that KaiJet Taiwan "does not make, use, offer to sell, or sell any products" in the United States or Georgia and does not "import any products into the United States."[40] Notably, KaiJet Taiwan does not dispute

---

and import of the infringing products into and delivery throughout the United States and the State of Georgia."); *id.* ¶ 22 ("KaiJet Taiwan . . . directed and participated in the marketing, sale, and offer for sale of [its] infringing products at Best Buy Stores and other retail outlets . . . in the State of Georgia.").

[37]   ECF 152-19.

[38]   ECF 153-6 (SEALED).

[39]   ECF 153-7 (SEALED); ECF 153-8 (SEALED).

[40]   ECF 146-1, ¶ 7 (Liu Affidavit); ECF 146-3, ¶ 9 (Tai Affidavit).

that it sent emails and other intangible communications into Georgia regarding price negotiations and the ULTRADRIVE product.[41]

The Court finds Sanho has satisfied the first prong of the Georgia long-arm statute. First, the uncontroverted evidence shows that KaiJet Taiwan sent communications, including emails, into Georgia in relation to transactions and pricing of the ULTRADRIVE. This alone is persuasive. *Diamond Crystal*, 593 F.3d at 1264 ("[A] nonresident's mail, telephone calls, and other intangible acts, though occurring while the defendant is physically outside of Georgia, must be considered."); *POWERbahn*, 2020 WL 1467248, at *6 ("Here, there is no doubt from the emails provided that Mr. Warner was engaged in business with Wahoo, a Georgia citizen, meeting the 'transacts any business prong' of the long arm statute."); *Avent v. Pirrello*, No. 1:16-cv-1127-TWT, 2017 WL 1062372, at *3 (N.D. Ga. Mar. 20, 2017) (citing *TRS & Assocs., Inc. v. Document Imaging Techs., Inc.*, No. 1:08-cv-03264-JOF, 2009 WL 2778256, at *7 (N.D. Ga. Aug. 25, 2009) ("Because Defendant sought to derive economic benefit from its relationship with Plaintiff, the Court finds that the Defendant did transact business in Georgia through his telephone and email contacts."); *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12-

---

[41]   ECF 160, at 13.

cv-02902-JEC, 2014 WL 688134, at *5 (N.D. Ga. Feb. 21, 2014) ("[I]ntangible acts may, if they consummate some transaction, support personal jurisdiction under the long-arm statute."). And while KaiJet Taiwan disputes Sanho's evidence that it ships and sells the ULTRADRIVE in Georgia, the Court is required to resolve the conflicting evidence in Sanho's favor at this stage. *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 524 (2006) ("[A]ny disputes of fact in the written submissions supporting and opposing the motion to dismiss are resolved in favor of the party asserting the existence of personal jurisdiction."). Therefore, the Court finds that Sanho has satisfied Georgia's long arm statute.

### 2. Personal Jurisdiction Over KaiJet Taiwan Comports with Constitutional Due Process.

"Once a statutory basis for long-arm jurisdiction is established, the remaining question is whether the exercise of personal jurisdiction comports with due process." *Kason*, 952 F. Supp. 2d at 1340. As stated above, due process recognizes two categories of personal jurisdiction: general and specific.

### a. General Jurisdiction

General jurisdiction requires a corporate defendant's contacts to be "so continuous and systematic as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. "The paradigm forums in which a corporate defendant is at home . . . are the corporation's place of incorporation and its

19

principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). In an "exceptional case," a corporate defendant may be said to be "at home" in another forum if its operations are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. At bottom, simply conducting business in a forum is insufficient for general personal jurisdiction. *Tyrrell*, 137 S. Ct. at 1558.

Sanho does not argue that KaiJet Taiwan is subject to general jurisdiction in this Court. As its name suggests, KaiJet Taiwan is a foreign corporation incorporated and maintaining its principal place of business in Taiwan. There is otherwise no indication that this is an "exceptional case" in which KaiJet Taiwan should be subject to general jurisdiction in a forum that does not meet one of those two criteria. Since KaiJet Taiwan cannot be considered "at home" in Georgia, it is not subject to general personal jurisdiction in the state.

### b.  Specific Jurisdiction

If a nonresident defendant is not subject to general personal jurisdiction, the Court "may nonetheless exercise specific jurisdiction over the defendant if the cause of action 'arises out of' or 'relates to' the defendant's in-state activity." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360–61 (Fed. Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

Constitutional due process "requires that there exist sufficient 'minimum contacts' such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Breckenridge*, 444 F.3d at 1361 (citing *Burger King*, 471 U.S. at 476–78).

The Federal Circuit applies a three-prong test to determine if a defendant is subject to specific personal jurisdiction in a forum: whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge*, 444 F.3d at 1363. "The first two factors correspond to the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor with the 'fair play and substantial justice' prong." *Elecs. for Imaging*, 340 F.3d at 1350 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)). *See also Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945). The defendant bears the burden of proof on the third factor and "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in *Burger King*." *Breckenridge*, 444 F.3d at 1363 (citing *Burger King*, 471 U.S. at 476–77 (1985)).

Sanho argues the first two prongs of the Federal Circuit's test are met through KaiJet Taiwan's admission of sending emails and intangible communications to KaiJet US in Georgia.[42] The Court agrees; this alone is sufficient to meet the constitutional due process requirement. *POWERbahn*, 2020 WL 1467248, at *6 ("The Court finds that the first two prongs . . . are met for the same reasons that the Court held that [defendant] was subject to Georgia's long arm statute—that under the applicable legal standards, the emails provided by POWERbahn, combined with [defendant's] admission about some level of assistance with development, raise an inference (for the purpose of assessing jurisdiction) that [defendant] induced infringement."). *See also Hi-Tech Pharm. Inc. v. Dynamic Sports Nutrition, LLC*, No. 1:16-CV-949-MHC, 2016 WL 9454418, at *7–8 (N.D. Ga. Dec. 28, 2016) (holding first two prongs satisfied because defendant "admits to email communications with [Georgia resident], which Plaintiff alleges were in furtherance of [the claims]," and "repeatedly communicated with a Georgia resident via email in furtherance of the [claims]").

Additionally, Sanho demonstrates that KaiJet Taiwan purposefully directs its activities at Georgia by pointing to evidence that KaiJet Taiwan ships and sells

---

[42]   ECF 153-7 (SEALED); ECF 153-8 (SEALED).

the ULTRADRIVE in the State.[43] KaiJet Taiwan disputes this evidence and points to its own declarations directly contradicting this characterization. However, Sanho satisfies the due process analysis for the same reasons it satisfied the Georgia long arm statute—the Court must construe all reasonable inferences and resolve any conflict in Sanho's favor. *Elecs. for Imaging*, 340 F.3d at 1349; *POWERbahn*, 2020 WL 1467248, at *4.

For the third factor, KaiJet Taiwan does not argue that the Court's exercise of personal jurisdiction over it would be unreasonable or unfair. Instead, KaiJet Taiwan conflates the pertinent standards for general and specific jurisdiction, arguing that it would not be "at home" in Georgia.[44] This is not the correct test; the third prong in assessing specific jurisdiction questions whether "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King*, 471 U.S. at 477–78 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). The Court must focus on the "relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204

---

43    ECF 152-19; ECF 153-6 (SEALED).

44    ECF 146, at 13–14.

(1977)). In *Hi-Tech Pharmaceuticals*, this Court summarized the five factors relevant

to this analysis as articulated by the Supreme Court in *Burger King*:

> (1) the burden on the defendant; (2) the forum state's
> interest in adjudicating the dispute; (3) the plaintiff's
> interest in obtaining convenient and effective relief;
> (4) the interstate judicial system's interest in obtaining
> the most efficient resolution of controversies; and (5) the
> shared interest of the several states in furthering
> fundamental substantive social policies.

*Hi-Tech Pharm.*, 2016 WL 9454418, at *9 (citing *Burger King*, 471 U.S. at 462, 467).

KaiJet Taiwan does not raise any of these factors as a reason why exercising

jurisdiction over it would be unfair. It simply reiterates its argument that it is a

separate entity apart from KaiJet US that does not ship or sell the ULTRADRIVE

in Georgia. Nonetheless, applying the *Burger King* factors, the Court concludes that

it may properly exercise jurisdiction over KaiJet Taiwan. Given Sanho's allegations

of common ownership, the burden of appearing in this Court by KaiJet Taiwan

appears to be light. Moreover, Sanho has a particularly strong interest in obtaining

convenient and effective relief. Based on KaiJet US's discovery responses and

objections—some of which implicate KaiJet Taiwan's involvement in the conduct

underlying Sanho's allegations regarding the HYPERDRIVE[45]—Sanho's interest,

---

[45]   *E.g.*, ECF 165-3.

as well as the Court's interests, will be furthered by KaiJet Taiwan's inclusion in this action.

Therefore, the Court finds that the exercise of personal jurisdiction over KaiJet Taiwan in this case is consistent with constitutional due process. As such, the Court has personal jurisdiction over KaiJet Taiwan. KaiJet Taiwan's motion to dismiss is **DENIED**.

## III.   SANHO'S MOTION TO DISMISS COUNTERCLAIM VIII

On January 3, 2020, KaiJet US filed its Answer to the Third Amended Complaint and asserted eight counterclaims against Sanho for declaratory judgment (counterclaim Counts I–VII) and false advertising under the Lanham Act (counterclaim Count VIII).[46] On January 24, Sanho filed its motion to dismiss only counterclaim Count VIII for failure to state a claim pursuant to Rule 12(b)(6).[47] KaiJet US filed its opposition on February 4.[48] Sanho filed a reply on February 18.[49]

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true,

---

[46]   ECF 115.

[47]   ECF 132.

[48]   ECF 140.

[49]   ECF 148.

to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n,* 605 F.3d at 1289 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

False advertising claims under the Lanham Act are governed by 15 U.S.C. § 1125(a)(1)(B), which provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which — in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, . . . shall be liable in a civil action by any person

> who believes that he or she is or is likely to be damaged
> by such act.

To state a claim for false advertising, KaiJet US must establish:

> (1) the ads of [Sanho] were false or misleading, (2) the ads
> deceived, or had the capacity to deceive, consumers,
> (3) the deception had a material effect on purchasing
> decisions, (4) the misrepresented product or service
> affects interstate commerce, and (5) [KaiJet US] has
> been—or is likely to be—injured as a result of the false
> advertising.

*Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (citing *N. Am. Med.*

*Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 (11th Cir. 2008)).

In Counterclaim Count VIII, KaiJet US alleges Sanho has paid third parties—

falsely disguised as independent reviewers, not paid-for advertisement—to

submit positive reviews of Sanho's HYPERDRIVE product on various online

platforms.[50] KaiJet US also alleges Sanho is paying these falsely designated third-

party reviewers to remove negative reviews of Sanho's product.[51] KaiJet US

contends Sanho has engaged in this form of advertising to influence customers'

purchasing decisions away from KaiJet US's products and towards its own.[52]

---

[50]   ECF 115, ¶¶ 38–40.

[51]   *Id*. ¶ 40.

[52]   *Id*. ¶¶ 41–43.

Sanho argues that KaiJet US's Lanham Act counterclaim must be dismissed because online product reviews by a third party do not qualify as "commercial advertising or promotion" for the purposes of a false advertising claim.[53] However, Sanho does not direct the Court to any authority that bars KaiJet US from asserting its false advertising claim under these alleged facts. While making no finding as to the ultimate viability of KaiJet US's Counterclaim—on which it will bear the burden of proof—and treating the well-pleaded allegations as true, KaiJet US has alleged sufficient facts to state a plausible claim at this stage. *Iqbal*, 556 U.S. at 678. Sanho's motion to dismiss is **DENIED**.

## IV.   SANHO'S MOTION FOR A FINDING OF OVERLAPPING ENTITY STATUS FOR PURPOSES OF DISCOVERY

On December 20, 2019, the Court held a discovery call with the parties regarding KaiJet US's answers to Sanho's discovery requests.[54] Specifically, Sanho is seeking documents KaiJet US contends it does not possess or control, but KaiJet Taiwan does possess and control, but that it purportedly will not permit KaiJet US to access.[55] These documents concern various topics including the circumstances

---

[53]   ECF 132-1, at 2–3.

[54]   ECF 111; ECF 147.

[55]   *Id*.

surrounding the ULTRADRIVE's design, development, and manufacturing process, as well as the KaiJet entities' non-US sales of the product.

Based on the record before the Court during the discovery conference, the Court withheld judgment on Sanho's discovery requests and invited it to file a motion for a determination of alter ego status between KaiJet US and KaiJet Taiwan.[56] On April 2, 2020, Sanho filed its motion requesting that the Court declare, for the purposes of discovery, KaiJet US overlaps with KaiJet Taiwan, as well as with two other non-party corporate entities—Magic Control Technology Corporation ("MCT") and Star View Global Ltd. ("Star View")—on the theory that all four entities operate as one under the j5Create brand.[57] On April 6, after filing its motion but before KaiJet US filed a response, Sanho filed a notice of newly discovered evidence in support of its motion.[58] On April 16, KaiJet US filed its response in opposition to Sanho's motion.[59] Sanho filed its reply on April 30.[60]

---

[56]  *Id.*

[57]  ECF 165.

[58]  ECF 168.

[59]  ECF 170.

[60]  ECF 173.

a. **Legal Standard**

The Court possesses broad discretion to control and manage the discovery process in cases pending before it. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001); *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). Federal Rule of Civil Procedure 34(a) governs the production of documents in civil matters. Pursuant to Rule 34(a), a party must produce documents responsive to a discovery request when those documents are "in the responding party's possession, custody, or control." *Id*. "Whether documents are in a [party's] control under Rule 34 is broadly construed." *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 470 (S.D. Fla. 2011).

For the purposes of discovery, control is not defined as, or synonymous with, possession. *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand."). *See also In re Wright*, No. ADV. 04-9156, 2005 WL 6488101, at *3 (Bankr. N.D. Ga. Aug. 9, 2005) ("[C]ontrol does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a

non-party to the action.").[61] A party seeking documents held by a corporate affiliate may establish the "legal right to obtain documents requested upon demand" if the "affiliated corporate entities . . . have actually shared responsive information and documents in the normal course of their business dealings." *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016) (citing *Costa*, 277 F.R.D. at 470–71). Put another way, "discovery can be sought from one corporation regarding materials that are in the physical possession of another, affiliated corporation." *Batista v. Nissan N. Am., Inc.*, No. CV 14-24728-CIV, 2015 WL 10550409, at *2 (S.D. Fla. Dec. 8, 2015) (citing *Costa*, 277 F.D.R. at 474 n.1). *See also Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006) (citing *Société Internationale pour Participations Industrielles & Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204 (1958) ("It is well established that a district court may order the production of documents in the possession of a related nonparty entity under Rule 34(a) if those documents are under the custody or control of a party to the litigation."); 14D Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2210 (3d ed. 2020) ("Particular concerns can arise when a corporate

---

[61] The test is the same for interrogatories under Fed. R. Civ. P. 33: "[A] party must provide information in response to a Rule 33 interrogatory if such information is under its control." *Costa*, 277 F.R.D. at 471 (collecting cases).

party is related to another corporation, and this nonparty corporation actually possesses the materials in question. Rather than adopting an overarching rule for such situations, the courts have tended to focus on the facts shown in a particular case.").

When the moving party requests that a corporate party produce documents in the possession of an affiliate corporation, courts routinely consider five factors to determine whether there is control:

> Among the factors used by the courts to determine whether one corporation may be deemed under control of another corporation are: (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement by the non-party corporation in the transaction, and [e] involvement of the non-party corporation in the litigation.

*Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 655 (D. Kan. 2004). *See also Meridian Labs., Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019) (same); *Lodestar Anstalt v. Bacardi & Co. Ltd.*, No. CV 166411CASFFMX, 2018 WL 8786642, at *2 (C.D. Cal. Nov. 21, 2018) (same); *Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-CV-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011) (same); *Steele Software*, 237 F.R.D. at 564 (same); *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 228 F.R.D. 426, 457 (W.D.N.Y. 2004) (same); *Uniden Am. Corp. v. Ericsson Inc.*,

181 F.R.D. 302, 306 (M.D.N.C. 1998) (same). While no factor is dispositive, courts generally consider them all "to determine the closeness of the relationship and to help ensure that a subsidiary does not hide responsive documents with an overseas parent company." *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2020 WL 2219060, at *2 (N.D. Ill. May 7, 2020) (citing *Flavel v. Svedala Indus., Inc.*, No. 92-C-1095, 1993 WL 580831, at *4 (E.D. Wis. Dec. 13, 1993)).

While none of these cases are binding authority, the Court finds this test persuasive and applies it here. The Court concludes Sanho has shown that KaiJet US has "control" of documents and information in the possession of KaiJet Taiwan, but that it has not met this burden with regard to MCT or Star View.

### i. Sanho Has Demonstrated Control Between KaiJet US and KaiJet Taiwan.

Using the above-referenced five factor test, the Court finds Sanho has met its burden of showing that KaiJet Taiwan is an affiliate of KaiJet US and that KaiJet US has control over the sought-after documents and information in the possession of KaiJet Taiwan.

The first factor—common ownership—is widely considered the most important in the control determination. *E.g.*, *Costa*, 277 F.R.D. 468 at 472 ("Courts have consistently held that control exists where the party and its related [ ] affiliate are owned by the same individual."); *Steele Software*, 237 F.R.D. at 564

33

(same). In some cases, the first factor "can be dispositive of control when a parent corporation is the party to the lawsuit, and the moving party seeks discovery of the parent's wholly-owned subsidiary." *Cormack v. United States*, 117 Fed. Cl. 392, 403 (2014).

The Court finds the letter from the FCC to Sanho's legal counsel particularly persuasive.[62] According to the letter, on February 3, 2020, Sanho requested various records referencing Liu, KaiJet US, and KaiJet Taiwan pursuant to the Freedom of Information Act—5 U.S.C. § 552.[63] The FCC's Office of Engineering & Technology conducted a search and found several records responsive to Sanho's request.[64] In a footnote, the FCC clarified the relationship between KaiJet US and KaiJet Taiwan: "[KaiJet Taiwan] and [KaiJet US] are the ***same company***, with the former based in New Taipei City, Taiwan and the latter based in Kennesaw, GA."[65] KaiJet US does not challenge the FCC's finding or otherwise present sufficient evidence to refute the agency's conclusion.

---

[62]   ECF 168-1, at 2.

[63]   *Id*.

[64]   *Id*.

[65]   *Id*. (emphasis added).

Beyond the FCC letter, Sanho presents other evidence of common ownership—including statements from Liu, the majority owner of KaiJet US.[66] Based on this evidence, the Court finds that Sanho has shown that KaiJet US is a subsidiary of KaiJet Taiwan as part of a unified corporate structure. This factor is particularly weighty given that KaiJet US and KaiJet Taiwan are both parties to this litigation.

For the second factor, the Court does not have the benefit of analyzing KaiJet Taiwan's corporate structure. However, the Court has already discussed Liu's apparent dual role in KaiJet US and KaiJet Taiwan.[67] To summarize: all parties agree that Liu is the CEO and majority owner of KaiJet US, but there is a factual dispute as to Liu's prior and current role in KaiJet Taiwan. Sanho claims—and presents evidence—that Liu previously owned a portion of KaiJet Taiwan and currently serves as a managing member. Liu, conversely, contends that she is not currently a manager or employee, but previously owned a portion of KaiJet Taiwan and is currently its creditor. Although there is a factual dispute, the Court

---

[66]   ECF 152-6 (Liu interview); ECF 166-6 (SEALED) (listing percentage owners of KaiJet US).

[67]   *See supra* Section II.c.ii.

credits Sanho's evidence and, thus, considers the second factor as weighing in favor of a finding of overlapping entity status.

For the third and fourth factors, Sanho has presented evidence that the KaiJet entities regularly exchange emails in the normal course of business that demonstrate KaiJet Taiwan's involvement in this patent dispute. Additionally, Sanho presents evidence showing both entities use the common "j5Create" domain.[68] And Sanho points to several emails involving the ULTRADRIVE product at issue in the litigation.[69] KaiJet Taiwan attempts to diminish these emails, contending that they are not "integral or necessary for KaiJet [US] to perform its functions."[70] The Court finds these communications between the entities to be probative of overlapping status, particularly because the communications relate to the very same products at issue in this litigation. Accordingly, the third and fourth factors support Sanho's request.

For the final factor, KaiJet Taiwan is a named Defendant that is currently in default in this litigation. If the Court were to bar Sanho from obtaining documents

---

[68]   *E.g.*, ECF 166-2 (SEALED); ECF 166-14 (SEALED).

[69]   *E.g.*, ECF 166-7 (SEALED); ECF 166-9 (SEALED); ECF 166-10 (SEALED); ECF 166-12 (SEALED); ECF 166-13 (SEALED); ECF 166-14 (SEALED).

[70]   ECF 170, at 14.

from KaiJet Taiwan through KaiJet US, KaiJet Taiwan could simply remain in default and effectively immunize itself, as well as severely hamstring Sanho, by producing no relevant documentation or information at all. What is more, KaiJet Taiwan will certainly benefit from an outcome in KaiJet US's favor in this litigation, as it will then be permitted to sell its product throughout the United States with impunity. This is yet another factor weighing in favor of a finding of control. *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 131 (D. Del. 1986) ("If the nonparty is to receive a benefit from the litigation, that fact along with others must be weighed in determining control for purposes of Rule 34.").

Therefore, the Court finds that Sanho has met its burden of showing that KaiJet Taiwan and KaiJet US sufficiently overlap for the purposes of discovery and that KaiJet US has control over the sought-after discovery in KaiJet Taiwan's possession.

### ii.   Sanho Has Not Proven KaiJet US's Control as to MCT or Star View.

Sanho has not, however, met its burden as to MCT or Star View. Unlike KaiJet Taiwan, MCT and Star View are two non-party entities that seemingly have no connection to this patent dispute. Indeed, the Third Amended Complaint does not reference either entity, let alone allege any wrongdoing by them. And

crucially, Sanho does not assert that KaiJet US has control over any specific information in the possession of MCT or Star View.

Sanho's request as to MCT and Star View is instead wholly connected to the entities' involvement with the "j5Create" brand and Liu. Sanho demonstrates that KaiJet US does share at least one officer with MCT, as Liu is listed as the CEO of both entities.[71] And Liu is likewise listed as the President and CEO of "j5Create."[72] Sanho also points to email communications among individuals using the domain "j5Create" and those (1) using the domain "MCT" or (2) discussing Star View.[73] While KaiJet US may have some loose affiliation with MCT and Star View, this evidence simply does not go far enough to show that KaiJet US controls any documents or information in MCT's or Star View's possession. For example, unlike with KaiJet Taiwan, there is no indication of any corporate relationship (parent, subsidiary, or otherwise) between KaiJet US and MCT or Star View. In sum, Sanho's evidence, and the reasonable inferences drawn therefrom, do not support a finding of overlapping entity status between KaiJet US and MCT or KaiJet US and Star View for purposes of discovery.

---

[71]   ECF 152-5.

[72]   *Id.*

[73]   *E.g.*, ECF 166-13 (SEALED); ECF 166-14 (SEALED).

V.      **CONCLUSION**

Sanho's motion to dismiss Counterclaim Count VIII [ECF 132] is **DENIED**;

KaiJet Taiwan's motion to dismiss [ECF 146] is **DENIED**; and Sanho's motion for

a finding of overlapping parties for the purposes of discovery [ECF 165] is

**GRANTED** as to KaiJet Taiwan, but **DENIED** as to MCT and Star View. KaiJet US

must respond to all discovery requests made by Sanho—including all currently-

pending and future requests—on behalf of itself and KaiJet Taiwan. Further, the

parties' motions for leave to file certain matters under seal [ECF 154; ECF 167;

ECF 171; ECF 175] are **GRANTED**.

SO ORDERED this the 29th day of July 2020.

                                                    _____
                                                         Steven D. Grimberg
                                                    United States District Court Judge