Robert A. Madayag, III
GA Bar No. 123699
Ryan P. Gentes
GA Bar No. 421695
LEE & HAYES, P.C.
1175 Peachtree Street, NE
100 Colony Square, Suite 2000
Atlanta, Georgia 30361
Telephone: (404) 815-1900
RobM@leehayes.com
Ryan.Gentres@leehayes.com

*Attorneys for Defendant*
    *KaiJet Technology International Limited, Inc*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION, | Case No. 1:18-cv-05385-SDG |
| Plaintiff / Counterclaim Defendant, | **<u>Jury Trial Demanded</u>** |
| vs. | |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., and KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC., dba "j5create;" and DOES 1-100, | |
| Defendants / Counterclaim Plaintiff. | |

**KAIJET TECHNOLOGY INTERNATIONAL
<u>CORPORATION'S ANSWER TO THIRD AMENDED COMPLAINT</u>**

Defendant KaiJet Technology International Corporation ("KTIC"), without

1

admission and specifically denying that it is subject to personal jurisdiction in this Court, and maintaining all objections to Plaintiff's claimed process and claimed service of process, and separate and apart from all other Defendants herein, responds as follows to the allegations in Plaintiff's Third Amended Complaint. As a preliminary matter, KTIC objects to Plaintiff's characterization of KTIC collectively with other Defendants named or unnamed.  Unless otherwise specified, all responses in this document apply to KTIC only and are not applicable to any other Defendant. Pursuant to the Court's Standing Order KTIC has reproduced Plaintiff's Third Amended Complaint including the headings and descriptions of causes of action:

## INTRODUCTION

1.     This action arises from defendant Kaijet's unlawful infringement and counterfeiting of plaintiff Sanho Corporation's intellectual property in contravention of federal law and Georgia law.

    Answer: Denied.

2.     Plaintiff is a small business –  a computer electronics business – headquartered in Fremont, CA.  Plaintiff has invested substantial resources in the creation and invention of its products for its business, including, but not limited to, the multi-function docking station at-issue in this case, known as the HYPERDRIVE product.

Answer: KTIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and on that basis, denies them.

3.      As forth below, defendant Kaijet has unfairly and unlawfully copied and infringed upon Sanho's intellectual property rights, attempted to palm-off counterfeit goods in an attempt to trick and deceive consumers, intended to interfere with Plaintiff's economic advantage and contracts, and misappropriate Plaintiff's intellectual property.  This conduct by Defendant constitutes unfair competition and must be restrained. Plaintiff has suffered and continues to suffer harm as a result of Defendant's unfair business practices.  Accordingly, Plaintiff prays for monetary and injunctive relief, as set forth herein.

Answer: Denied.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

Answer: Admitted as to 1331, 1332, and 1338, denied as to 1367 to the extent claims under state law are preempted, and to the extent the court should decline to exercise supplemental jurisdiction pursuant to 1367(c).

5.     This Court has personal jurisdiction over the Defendant because, among other things, defendants reside within this judicial district and the acts of infringement complained of herein occurred in the State of Georgia and in this judicial district.

Answer: KTIC admits that KaiJet US resides within this judicial district, and denies all remaining allegations.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c), 1400(a), (b).

Answer: Denied.

## THE PARTIES

7.     Plaintiff is a Delaware corporation with its principal place of business in Fremont, CA.

Answer: Admitted.

8.     Defendant Kaijet Technology International Limited, Inc. ("Kaijet US"), doing business as j5Create, is a Delaware corporation with its headquarters in Kennesaw, Georgia. Kaijet US was formed by Kaijet Taiwan, Steven Liao, and Jessica Liao for the purpose of selling products, such as the accused devices in this case, within the United States including in Georgia.

Answer: KTIC admits that the incorporator of the predecessor of

"Kaijet US" was Steven Lyu and admits Kaijet US is headquartered in Kennesaw, Georgia. All remaining allegations of paragraph 8 are denied.

9.      Defendant Kaijet Technology International Corporation, Inc. ("Kaijet Taiwan"), doing business as j5Create, is a Taiwanese business entity.

Answer: KTIC admits that KaiJet Technology International Corporation is a company formed and doing business under the laws of Taiwan. KTIC denies knowledge of any entity named "Kaijet Technology International Corporation, Inc." KTIC denies all other allegations in paragraph 9.

10.     Kaijet Taiwan operates through a physical office located in Georgia, in which State its officers and directors also operate on the ground in Georgia.

Answer: Denied.

11.     There is such unity of interest and ownership that separate personalities of Kaijet US and Kaijet Taiwan no longer exist and failure to disregard their separate identities would result in fraud and/or injustice.  For example, officers, directors, and the shareholders or owners of the defendant entities are the same, and these overlapping individuals exercise control over the internal affairs and/or daily operations of both entity defendants and profit from the infringement.  Alter ego liability is appropriate.

Answer: Denied.

12.    Kaijet US makes no distinction between Kaijet US and Kaijet Taiwan conducting operations, for example, when using the j5 logo in connection with the manufacturing, marketing, sale, and offering for sale of j5create products. Both Kaijet entities operate under the trade name "j5". There are no bonafide written contracts between the defendants as they are essentially one and the same.

    Answer: KTIC admits that it sells products branded under the "j5create" brand. All remaining allegations of paragraph 12 are denied.

13.    Kaijet US describes Kaijet US and Kaijet Taiwan operations to its potential and actual customers as if such operations were conducted by a single entity. Kaijet US holds itself out, as a single, unified entity with Kaijet Taiwan.

    Answer: Denied.

14.    Kaijet US and Kaijet Taiwan conduct activities in the United States and Georgia through its subsidiaries and affiliates. On information and belief, Kaijet US is not adequately capitalized.

    Answer: KTIC admits that KaiJet US conducts activities in the United States and Georgia. All remaining allegations of paragraph 14 are denied.

15.    Kaijet US and Kaijet Taiwan, and at all relevant times, were acting in concert in their conduct and activities in the United States, abroad, and in the State of Georgia, aiding and abetting one another in the scheme.

6

Answer: Denied.

16.     The overlapping officers, directors, and owners of Kaijet US and Kaijet Taiwan directly exercise control over the conduct of Kaijet US, and vice versa, and directly control affiliated business entities in Europe, Canada, and elsewhere abroad.

Answer: Denied.

17.     Upon information and belief, Steven Liao and Jessica Liao, are family members, and are the owners, officers, directors, and/or managers of Kaijet US and Kaijet Taiwan.

Answer: KTIC admits that, to its knowledge, Steven Lyu and Jessica Liu are owners of KaiJet US. The remaining allegations of paragraph 17 are denied.

18.     Upon information and belief, at all times relevant hereto, Kaijet US and Kaijet Taiwan were acting in unison, and/or as the agents, ostensible agents, employees, servants, partners, aiders and abettors, co-conspirators, and/or joint venturers of one another, and in performing the acts and course of conduct set forth herein, defendants were acting within the course and scope of such agency or employment, and defendants controlled, approved, ratified, permitted, condoned and/or affirmed the acts and course of conduct set forth herein. Both defendants operated within the United States, and in Georgia, to infringe Plaintiff's intellectual property.

Answer: Denied.

19.     Further, Kaijet US and Kaijet Taiwan, through their owners, officers, directors, and affiliates, jointly crafted and executed a plan to unlawfully exploit the consumer markets in the United States and in the State of Georgia, including specifically targeting Plaintiff and intending to disrupt Plaintiff's economic advantage in an unfair manner, and Kaijet Taiwan performed several overt acts in furtherance of their plan within the State of Georgia, including delivery of the accused products, and aiding and abetting the same, within the United States and in Georgia.

Answer: Denied.

20.     Defendant, including Kaijet Taiwan, was aware at all times aware that its activities would cause infringing product to be delivered and sold within the United States and in Georgia.

Answer: Denied.

21.     Kaijet US claims that Kaijet Taiwan, inter alia, is responsible for conduct that was alleged in Plaintiff's Second Amended Complaint, including but not limited to the development, design, manufacture, sale, and import of the infringing products into and delivery throughout the United States and the State of Georgia.

Answer: KTIC admits it is responsible for development, design, and manufacture of the product that Plaintiff has accused of infringement. All remaining allegations of paragraph 21 are denied.

22.    Kaijet US and Kaijet Taiwan both directed and participated in the marketing, sale, and offer for sale of their infringing products at Best Buy Stores and other retail outlets in the United States, abroad, and in the State of Georgia, aiding and abetting the same in addition to direct infringement by each defendant.

Answer: KTIC admits that, to its knowledge, KaiJet US directed and participated in the marketing, sale, and offer for sale of the product that Plaintiff has accused of infringement at Best Buy stores in the United States and in the State of Georgia. All remaining allegations of paragraph 22 are denied.

23.    Kaijet US and Kaijet Taiwan specifically targeted Plaintiff's patented, copyrighted, and trademarked intellectual property in the United States and in the State of Georgia in order to engage in unfair competition.

Answer: Denied.

24.    The objective of Defendant's plan was to willfully infringe on Plaintiff's intellectual property, harm Plaintiff's market share, and economic advantage, and unlawfully palm Plaintiff's property off to consumers in the

marketplace, specifically in Georgia and both defendant entities took action in furtherance of this illegal conduct and scheme.

> Answer: Denied.

25.    Kaijet and Kaijet Taiwan had a mutual understanding that they will accomplish the plan's unlawful objective.

> Answer: Denied.

26.    Kaijet US and Kaijet Taiwan are co-conspirators, and aiding and abetting one another and the scheme, in carrying out the acts to violate the Patent Act and other intellectual property laws at issue in this complaint as set forth below.

> Answer: Denied.

27.    Kaijet Taiwan knew or should have known that its activities in furtherance of the plan would have an effect in the United States and in the State of Georgia.

> Answer: Denied.

28.    Plaintiff does not know the true names and capacity of defendants sued herein as DOES 1-10, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that each of the defendants was in some manner legally responsible for the

events and happenings alleged in this complaint and for Plaintiff's damages. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

Answer: KTIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and on that basis, denies them.

## THE CONTROVERSY

29.    Plaintiff has invested substantial money, resources, and time in the creation and invention of its products.

Answer: KTIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and on that basis, denies them.

30.    Plaintiff, on or around December 5, 2016, released the "HYPERDRIVE" product, which is a multi-function docking station.

Answer: KTIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and on that basis, denies them.

31.    Plaintiff is the assignee of United States Patent No. US D813,875 S (the "875 Patent"), which is a design patent embodying the HYPERDRIVE invention. Plaintiff owns all right, title and interest in the '875 Patent.  A true and correct copy

of the '875 Patent is attached hereto as Exhibit A.  Plaintiff is also the assignee of

United States Patent No. US D855,616 S (the "616 Patent"), which is a design patent

embodying the HYPERDRIVE invention.  Plaintiff owns all right, title and interest

in the '616 Patent.  A true and correct copy of the '616 Patent is attached hereto as

Exhibit E.

      Answer: KTIC is without knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 31 and on that basis, denies

them.

32.    The packaging containing the HYPERDRIVE is the subject of a United

States copyright registration.  The effective date on the registration is May 4, 2018.

Plaintiff owns all right, title, and interest to the copyright registration.  A true and

correct copy of the registration and packaging of the HYPERDRIVE is attached

hereto as Exhibit B.

      Answer: KTIC is without knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 32 and on that basis, denies

them.

33.    The U.S. Patent and Trademark Office determined that trademark

registration number 5,442,707 for "HYPERDRIVE" met all requirements for federal

registration and issued a Certificate of Registration, with a registration date of

April 10, 2018, to Plaintiff Sanho Corporation for the HYPERDRIVE trademark. A true and correct copy of the Trademark Electronic Search System (TESS) record for the registration of the HYPERDRIVE trademark is attached hereto as Exhibit C.

Answer: KTIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 and on that basis, denies them.

34.    Plaintiff has invested substantial resources in its intellectual property business, and goodwill relating to the HYPERDRIVE, its brand reputation, trademarks, trade dress, patents, and copyrights relating to the invention and product.

Answer: KTIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 and on that basis, denies them.

35.    Plaintiff's public release of the HYPERDRIVE product received significant acclaim, and was widely disseminated and reported to the public, for instance, throughout the media.  Plaintiff successfully raised and was the recipient of more than $3.1M through Indiegogo, Inc., an international crowdfunding website, and also through Kickstarter.com, "the world's largest funding platform for creative projects."  Plaintiff presented the HYPERDRIVE at numerous trade shows, including, but not limited to the Consumer Electronics Show in Las Vegas, NV, and

the product was featured and widely acclaimed throughout the media and press, having garnered and earned a level of fame, secondary meaning, and distinction. As a result, Plaintiff has built and amassed a loyal following of a significant group of consumers who seek out and purchase Plaintiff's products including specifically the HYPERDRIVE and related products.

Answer: KTIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 and on that basis, denies them.

36.    HYPERDRIVE started shipping in or around January 2017. Notably, Plaintiff had been using the Hyper and HYPERDRIVE mark on its products in commerce, which had gained secondary meaning, with regard to the quality, warranties, and affiliation with the Sanho and HYPERDRIVE brand names in the marketplace.

Answer: KTIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 and on that basis, denies them.

37.    On or around October 2017, and earlier, Defendant Kaijet copied, misappropriated, and began selling counterfeit versions of the HYPERDRIVE, which it labeled deceptively the "ULTRADRIVE." Defendant targeted Plaintiff and

obtained access to the product through the wide dissemination, and media that stemmed from the demand for Plaintiff's invention, hard-work, creativity, investments, marketing efforts, including the anticipation of a significant group of consumers, who were intending to purchase HYPERDRIVE from Plaintiff.

Answer: Denied.

38.    Defendant intended to interfere with Plaintiff's rights and economic advantage, by attempting to trick consumers into purchasing a counterfeit product which purported to be the same, labeled as "ULTRADRIVE," which Defendant had intentionally counterfeited, labeled, and packaged in a confusing manner to resemble the HYPERDRIVE, intentionally in order to deceive consumers who believed that they were purchasing a genuine version of the "HYPERDRIVE." Defendant's product misappropriated, *inter alia*, the overall design, including the 2 USB-C input connectors and shape, among other features as set forth below. To make matters worse, Defendants also copied the packaging of Plaintiff's product – for example, Defendants copied the product and packaging, including, but not limited to, the following:

    a.  On the front of Packaging:

- Similar expression of idea

- Similar total concept and feel

- Similar sounding product name, "UltraDrive" vs "HYPERDRIVE"

- Same product brand name placement on top left corner

- Similar product window cutout on the front left of the box

- Similar product description below the product window cutout

- Same image of MacBook Pro on the front right of the box

- Same call outs to "4K HDMI" and "50Gbps" speed

- Similar orange color highlights

- Similar placement of components

- Text and placement of the text on packaging

b. On the back of Packaging:

- Similar expression of idea

- Similar total concept and feel

- Similar product image with 13" MacBook Pro on the back top of the box

- Similar product description below the product image

- Similar placement of components

- Text and placement of the text on packaging

*See* attached Exhibit D.

Answer: Denied.

39.    The HYPERDRIVE and ULTRADRIVE involve the same type of artwork and design on multi-function docking station boxes or packaging, both utilize the same materials, and both occur in the same commercial setting.

Answer: KTIC admits that its accused product and Plaintiff's product are competing multi-function docking stations that are sold in a common channel of trade. The remaining allegations of paragraph 39 are denied.

40.    There is a substantial likelihood that the counterfeit products have caused, or will cause confusion among Plaintiff's current and future customers.

Answer: Denied.

41.    Defendant has no authorization, excuse or justification for counterfeiting the product.

Answer: KTIC objects to the form of this allegation, and denies that it has counterfeited the HYPERDRIVE product.

42.    Defendants intentionally copied the image, form, and design of Plaintiff's product in order to misappropriate Plaintiff's ideas, inventions, efforts, investments, and assets to seek unjust enrichment, and to trick consumers into believing that the source of the product was plaintiff Sanho Corporation.

Answer: Denied.

43.     As a result of Defendant's conduct, Plaintiff is suffering irreparable harm.  Plaintiff's third party relationships are being interfered with along with loss of market share and sale of related products.  Additionally, Plaintiff has suffered financial losses and injury to its intellectual property and goodwill.  Plaintiff's injuries include, but are not limited to, increased marketing and advertising costs, research and development costs, time, and lost market share, revenue and profits that would have been realized but for Defendant's conduct.  Defendants have also sold inferior products, causing further harm to Plaintiff, its goodwill, its brand reputation, and continue to threaten to cause irreparable harm on an ongoing basis including during the pendency of this lawsuit.

            Answer: Denied.

44.     Defendant specifically targeted Plaintiff and its economic relationship intending to interfere with Plaintiff's economic advantage, and the contract between Plaintiff and Best Buy, as well as interfere with the relationship between Plaintiff and its customers, as well as Plaintiff's economic rights and its fair market share. Defendant actually interfered with said contracts and relationships, through unlawful methods, including infringement and unfair business practices, that caused actual disruption to Plaintiff's economic advantage and contractual and economic relationships.

Answer: Denied.

45.    On information and belief, on or around 2017, Defendant falsely represented to Best Buy that its products did not infringe any third party intellectual property, even though Defendant had knowledge that it had copied the HYPERDRIVE product and its packaging, from Plaintiff.

Answer: Denied.

46.    Defendant advertises, sells, and offers for sale the infringing product within this judicial district.

Answer: Denied.

47.    Defendant unlawfully copied Plaintiff's product and packing, knowing that the injury to Plaintiff would occur within this judicial district.

Answer: Denied.

48.    As set forth herein, in and around 2017, it came to Plaintiff's attention that Defendant and/or its agents had advertised, sold, and offered for sale products embodying the '875 Patent and '616 Patent and furthermore that Defendant and/or its agents had copied Plaintiff's copyrighted packaging with respect to Plaintiff's multi-function docking station product known as the HYPERDRIVE. Plaintiff has notified Defendant of the particular aspects of its infringement, but Defendant has maliciously, oppressively, and fraudulently continued its counterfeiting including

19

after the filing of the original complaint, ignoring Plaintiff's demands and has further infringed and continues to infringe the HYPERDRIVE trademark used on the HYPERDRIVE through its deceptive labeling of and on the ULTRADRIVE.

Answer: Denied.

49.    Defendant does not have any license, authorization, permission or consent to use Plaintiff's packaging, trademark, copyrights, patents, or intellectual property.

Answer: Admitted.

50.    On or around November 20, 2017, Plaintiff sent written notice to Defendant regarding Defendant's infringement and demanded that Defendant immediately cease and desist.  In or around 2018, Defendant refused to cease and desist from its infringing activities and refused to respond to a complaint filed in the Northern District of California based on jurisdictional grounds and without any legitimate justification for its infringement.

Answer: Denied.

51.    Defendant has and continues to refuse to cease and desist.  Defendant asserted meritless and frivolous technical excuses – such as challenges to jurisdiction – instead of substantive reasons why it was not required to stop its unlawful infringement of Plaintiff's intellectual property, and Defendant has continued to

infringe and trample upon Plaintiff's intellectual property rights in a   manner that constitutes unfair competition.   Defendant continued to offer its   infringing counterfeit product online, and Defendant continues to sell the  infringing product at Best Buy locations.

Answer: Denied.

52.    Indeed, Plaintiff is entitled to injunctive relief and redress for Defendant's willful, intentional and purposeful use and exploitation of Plaintiff's intellectual property with full knowledge that such use constitutes infringement of, and is in disregard of, Plaintiff's rights, also constituting unfair business practices. Without preliminary injunctive relief, Defendant will be allowed to violate the intellectual property rights of Plaintiff during the pendency of this lawsuit.

Answer: Denied.

53.    Defendant's conduct caused Plaintiff irreparable harm.  Defendant's conduct also caused lost profits, price erosion, lost sales of other products, and has  deprived Plaintiff of the capacity to control its own reputation since the infringing product is less well made than Plaintiff's product.  Furthermore, by selling the infringing product, Defendant has interfered with Plaintiff's business relationships  and has unlawfully misappropriated and converted Plaintiff's intellectual property  to its own being unjustly enriched through its unfair and

unlawful – indeed intentional – conduct.  The harm includes, in addition, some categories of irreparable harm which may be difficult to calculate.

> Answer: Denied.

54.    Plaintiff's general losses and damages exceed $75,000.

> Answer: Denied.

## CLAIMS FOR RELIEF
## COUNT I
(Infringement of United States Design Patent No. D813,875 S and United States Design Patent No. US D855,616 S)
(35 U.S.C. § 271)

55.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-54 above.

> Answer: Responding to paragraph 55 of Plaintiff's Third Amended Complaint, KTIC incorporates its above responses to paragraphs 1-54.

56.    Plaintiff provided actual notice to Defendant of its infringement, including without limitation the filing of the original complaint in the Northern District of California in 2018.  An additional cease and desist letter was sent to the defendants on November 12, 2019.  Notice was provided to Defendants through numerous other means.

> Answer: Denied.

57.    In spite of such repeated notices, Defendant has engaged in a pattern of conduct demonstrating: Defendant's awareness of the '875 Patent and the '616 Patent; the objectively high likelihood that Defendant's actions constitute direct and indirect infringement of the valid and enforceable '875 Patent and '616 Patent; and that this objectively-defined risk was so obvious that Defendant knew or should have known it.

Answer: Denied.

58.    Defendant has infringed and continues to infringe the 875 Patent and 616 Patent by, *inter alia*, making, using, offering to sell, or selling in the United States, including in the State of Georgia, within this District, and in California, among other places, products infringing the '875 Patent and the '616 Patent in violation of 35 U.S.C. § 271, *et. seq.*, including but not limited to Defendant's making, using, offering for sale and sale of the infringing "ULTRADRIVE" products and inducing infringement of the patents in suit.

Answer: Denied.

59.    Defendant infringes the '875 Patent and '616 Patent because, *inter alia*, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design of the '875 Patent and '616 Patent and the design of the ULTRADRIVE are substantially the same, the resemblance being such as to deceive or confuse such

an ordinary observer, inducing him to purchase on supposing it to be the other. For example, the ULTRADRIVE shown below (the bottom picture) appears to be the same or substantially the same as the embodiment of the '875 Patent (top picture), and the same or substantially the same as the embodiment of the '616 Patent (middle picture), in the eye of an ordinary observer, and therefore constitutes infringement of the design patents. [Pictures Omitted]

> Answer: Denied.

60.    Defendant's blatant acts of infringement of the '875 Patent and '616 Patent is willful, and as shown, was undertaken without any authority, permission or license from Plaintiff. Defendant's infringing activities violate 35 U.S.C. § 271.

> Answer: Denied.

61.    Defendant's infringement has damaged and continues to damage and injure Plaintiff. The injury to Plaintiff is irreparable and will continue unless and until Defendant is enjoined from further infringement.

> Answer: Denied.

62.    Plaintiff is entitled to a complete accounting of all revenue and profits derived by Defendant from the unlawful conduct alleged herein, as well as, a preliminary and permanent injunction, and Defendant's total profit and/or statutory damages pursuant to 35 U.S.C. § 289.

Answer: Denied.

63.    Defendant has engaged and is engaged in willful and deliberate infringement of the '875 Patent and '616 Patent.  Such willful and deliberate infringement justifies an increase of three times the damages to be assessed  pursuant to 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285.

Answer: Denied.

64.    Plaintiff is entitled to a permanent injunction preventing Defendant from further infringing the '875 Patent and '616 Patent.

Answer: Denied.

## **COUNT II**
**(Trademark Infringement Under Lanham Act § 32)**
**(15 U.S.C. 1114)**

65.    Plaintiff incorporates by reference the allegations contained in paragraph 1-64 above.

Answer: Responding to paragraph 65 of Plaintiff's Third Amended Complaint, KTIC incorporates its above responses to paragraphs 1-64.

66.    The U.S. Patent and Trademark Office determined that Plaintiff's trademark for the "HYPERDRIVE" mark, registration number 5,442,707 (the "707

Mark"), met all requirements for federal registration and issued a Certificate of Registration to Plaintiff Sanho Corporation for the trademark. *See* Exhibit B.

Answer: KTIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 and on that basis, denies them.

67.    Plaintiff use of the 707 Mark occurred prior to the use by Defendant.

Answer: KTIC objects to the form of this allegation, denies that it has ever made use of the 707 Mark and denies that Plaintiff has sold goods within the description of goods and services in the 707 Mark.

68.    Defendants have been manufacturing, importing, selling, distributing,  and otherwise marketing in interstate commerce, similar products infringing the  707 Mark.

Answer: Denied.

69.    Defendant's purpose and intent in infringing the mark was and is to deceive customers.

Answer: KTIC denies that it has ever infringed the 707 Mark and denies any intent to deceive.

70.    Defendants have committed and, unless enjoined by this Court, will continue to commit the infringing acts alleged above, with full knowledge of

Plaintiff's prior rights in the trademark, with willful and intentional disregard of Plaintiff's rights.

Answer: Denied.

71.    Defendant's use of the infringing marks as described above has caused and, unless enjoined by this Court, will continue to cause confusion in the mind of customers as to the relationship or affiliation between the parties.

Answer: Denied.

72.    Defendant's use of the ULTRADRIVE name comprises an infringement of Plaintiff's registered trademark of the 707 Mark, and is likely to cause confusion, mistake and deception of the pubic as to the identity an origin of Plaintiff's goods.

Answer: Denied.

73.    By reason of Defendants' acts and practices in violation of Section 32 of the Lanham Act as set forth above, Plaintiff has suffered and will continue to suffer injury and damages.

Answer: Denied.

74.    By reason of Defendant's conduct, Defendant has caused and, unless such acts and practices are enjoined by the Court, will continue to cause immediate irreparable harm to Plaintiffs for which there is no adequate remedy at law.

Answer: Denied.

## COUNT III
### (Unfair Competition Under Lanham Act § 43(a))
### (15 U.S.C. 1125(a))

75.     Plaintiff repeats and hereby incorporates herein by reference, as though specifically pleaded herein, the allegations of the preceding paragraphs.

Answer: Responding to paragraph 75 of Plaintiff's Third Amended Complaint, KTIC incorporates its above responses to paragraphs 1-74.

76.     The 707 Mark has become uniquely associated with and identifies Plaintiff as the source for the HYPERDRIVE as well as the packaging for the product.

Answer: Denied.

77.     Defendant's use of the ULTRADRIVE name is a deliberate and willful effort to deceive, mislead, and confuse consumers to enable Defendant to trade-off of Plaintiff's reputation and goodwill in the HYPERDRIVE by infringing on the 707 Mark and trade dress.  Defendant, as set forth herein, is also infringing the HYPERDRIVE packaging in a manner that constitutes copyright infringement, in addition to the patent infringement, described above.

Answer: Denied.

78.     Defendant's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act.

        Answer: Denied.

79.     By reason of Defendant's conduct, Plaintiff has suffered and will continue to suffer damage to their business, reputation and goodwill.

        Answer: Denied.

80.     By reason of Defendant's conduct, Defendant has caused and, unless enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law.

        Answer: Denied.

81.     Plaintiff is entitled to a preliminary injunction to be made permanent upon entry of final judgment, preventing Defendant's conduct.

        Answer: Denied.

### COUNT IV
### (Copyright Infringement)
### (17 U.S.C §§ 106 and 501)

82.     Plaintiff re-alleges and incorporates by reference all paragraphs of this Complaint.

        Answer: Responding to paragraph 82 of Plaintiff's Third Amended Complaint, KTIC incorporates its above responses to paragraphs 1-82.

83.    Through their conduct averred herein, Defendant has infringed Plaintiff's copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

Answer: Denied.

84.    Defendant had access to Plaintiff's work, including, but not limited to, through the widely disseminated news and attention regarding the HYPERDRIVE.

Answer: Denied.

85.    The two works (the packaging of the HYPERDRIVE and the packaging of the ULTADRIVE) are "substantially similar."  *See* ¶ 19; Exhibit D.

Answer: Denied.

86.    Defendant copied, *inter alia*, the expression, subject matter, shapes, colors, materials, and arrangement of the representation protected by Plaintiff's copyright.

Answer: Denied.

87.    Defendant has actually copied Plaintiff's work; and the copying is illegal because a substantial similarity exists between the Defendant's work and Plaintiff's.

Answer: Denied.

88.    The effect of Defendant's conduct is one of substantial duplication  and appropriation of Plaintiff's expression.

Answer: Denied.

89.    Defendant's acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

Answer: Denied.

90.    As a direct and proximate result of said infringement by Defendant, Plaintiff is entitled to damages, including, but not limited to, statutory damages, as well as other damages permitted under the Copyright Act, in an amount to be proven at trial.

Answer: Denied.

91.    Plaintiff is also entitled to Defendant's profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

Answer: Denied.

92.    Plaintiff further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

Answer: Denied.

93.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediately, and irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed and believed and on that basis avers that unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiff's rights.  Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendant's continuing infringing conduct.

Answer: Denied.

## COUNT V
### (Violation of Georgia's Uniform Deceptive Trade Practices Act)
### (O.C.G.A. § 10-1-370, *et.seq.*)

94.     Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 74 of this Complaint as if fully set forth herein.

Answer: Responding to paragraph 94 of Plaintiff's Third Amended Complaint, KTIC incorporates its above responses to paragraphs 1-74 and paragraphs 1-93.

95.     This count is for intellectual property infringement and unfair competition and deceptive trade practices under Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et. seq.*

Answer: This paragraph appears to be a descriptive statement rather than an allegation of fact and therefore requires no response.  To the extent paragraph 95 is intended to allege wrongful conduct by KTIC such allegations are denied.

96.    The knowingly and willful misappropriation and use by Defendant of Sanho's multi-function docking station packaging, trade dress, and the copyright, trademark, and patent relating thereto, in the State of Georgia, for the accused product, constitutes a deceptive trade practice in violation of O.C.G.A. § 10-1- 372(a)(1)-(3), (5).  As a result Plaintiff has suffered harm including lost profits.

Answer: KTIC denies the misappropriation alleged and denies every other allegation in paragraph 96, and KTIC affirmatively avers that it does not sell the accused product in the State of Georgia or elsewhere in the United States.

97.    By Defendant's conduct, including but not limited to its unauthorized misappropriation of Plaintiff's HYPERDRIVE invention and product, Defendant will unfairly receive the benefit of Plaintiff's rights under the law, and goodwill achieved over time and at great labor and expense by Plaintiff. Defendant's use of Plaintiff's HYPERDRIVE will unjustly enrich Defendant and will place Plaintiff's valuable reputation and goodwill in the hands of Defendant, over whom Plaintiff has no control.

Answer: Denied.

98.    Defendant's use of Plaintiff's HYPERDRIVE causes a likelihood of confusion or of misunderstanding as to the source of Defendant's goods, or a likelihood of confusion or of misunderstanding as to the sponsorship, approval, or certification of Defendant's goods by Plaintiff.

Answer: KTIC denies that it has ever made use of "HYPERDRIVE" and denies every other allegation in paragraph 98.

99.    Defendant's activities cause a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with Plaintiff, and a likelihood of confusion or of misunderstanding as to the certification by Plaintiff of Defendant's goods.

Answer: Denied.

100.    Defendant's conduct is comprised of violations of O.C.G.A. § 10-1-372, including violation of subsec. (a)(1) for passing off goods or services as those of another; violation of subsec. (a)(2) for causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; violation of subsec. (a)(3) for causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; and violation of subsec. (a)(5) for representing that goods or services

34

have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have.

> Answer: Denied.

101.    Defendant's infringement was, and continues to be, willful, and intended to cause harm to Plaintiff including irreparable harm and disruption of Plaintiff's economic rights and third party relationships.

> Answer: Denied.

102.    Defendant will, if not enjoined by this Court, continue its acts of infringement and deceit set forth above, which acts have caused, and will continue to cause, Plaintiff immediate and irreparable harm. Pursuant to O.C.G.A. § 10-1-373, Plaintiff is entitled to an Order of this Court enjoining Defendant's unlawful activities. Plaintiff has no adequate remedy at law.

> Answer: Denied.

103.    As a result of Defendant's conduct set forth above, Plaintiff has been, and continues to be, irreparably damaged. Pursuant to O.C.G.A. § 10-1-373, Plaintiff is entitled to a judgment for, among other things: (1) injunctive relief; (2) for such sum as the Court deems just; and (3) Plaintiff's attorney's fees and costs of this action.

Answer: Denied.

## COUNT VI
## (Unfair Competition)
## (O.C.G.A. § 23-2-55)

104.    Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

Answer: Responding to paragraph 104 of Plaintiff's Third Amended Complaint, KTIC incorporates its above responses to paragraphs 1-103.

105.    Defendant's unauthorized use of Plaintiff's patent and the HYPERDRIVE, its packaging, design, and marking, is likely to cause confusion, to cause mistake, or to deceive purchasers and customers as to the source, origin, affiliation, or sponsorship of Defendant. The consuming public is likely to believe Defendant's product originates from, or is sponsored or affiliated with, the source of products bearing Plaintiff's marks and designs, and that Defendant's use of Plaintiff's intellectual property is authorized when, in fact, Defendant has no such authorization.

Answer: KTIC denies that it has ever made use of "Plaintiff's patent" or "the HYPERDRIVE" and denies every other allegation in paragraph 105.

106.    Defendant's unauthorized use of imitations of Plaintiff's inventions and marks and copyright registrations has been intentionally, deliberately, willfully, and

36

wantonly undertaken with a view and purpose of trading on and benefiting from the substantial reputation and goodwill associated with Plaintiff's products.

Answer: KTIC denies that it has ever made use of "Plaintiff's inventions and marks and copyright registrations" and denies every other allegation in paragraph 106.

107.  Defendant's conduct constitutes unfair competition in violation of O.C.G.A. § 23-2-55 and the common law of the State of Georgia.

Answer: Denied.

108.  As a direct and proximate result of Defendant's unlawful conduct, as herein alleged, Plaintiff has suffered irreparable damage and inherently unquantifiable injury and harm to its businesses, reputation, and customer goodwill. Such conduct has caused Defendant to achieve sales and profits to which it is not entitled.

Answer: Denied.

109.  Defendant's conduct has caused substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief, Defendant's profits, and Plaintiff's actual damages, costs, and reasonable attorneys' fees.

Answer: Denied.

110.   The acts of Defendant complained of herein showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to the consequences of those actions, and thus form a basis for punitive damages under O.C.G.A. § 51-12-5.1(b).

Answer: Denied.

## COUNT VII
## (COMMON LAW MISAPPROPRIATION AND UNFAIR COMPETITION)

111.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 91 of this Complaint as if fully set forth herein.

Answer: Responding to paragraph 111 of Plaintiff's Third Amended Complaint, KTIC incorporates its above responses to paragraphs 1-91 and 1-110.

112.   The Defendant's aforesaid acts constitute misappropriation of Plaintiff's trademarks, trade dress, copyrights, patent, and goodwill and are in violation of Georgia's Common Law of Unfair Competition since the Defendant's infringement of the HYPERDRIVE is likely to cause confusion, mistake, and/or deception.

Answer: Denied.

113.   Defendant's conduct described herein is intentional and willful.

Answer: Denied.

38

114.    Plaintiff reserves its right to proffer evidence and seek an award of punitive damages.

Answer: This paragraph appears to be a descriptive statement rather than an allegation of fact and therefore requires no response.  To the extent paragraph 114 is intended to allege wrongful conduct by KTIC such allegations are denied.

115.    Plaintiff has already suffered substantial damages as a result of the Defendant's acts of misappropriation and unfair competition.  Absent entry of an injunction by this Court, Plaintiff will continue to suffer irreparable injury including the loss of related product sales, disruption of its business relationships,  and further injury to its brand, goodwill, and reputation.

Answer: Denied.

## COUNT VIII
## (PUNITIVE DAMAGES)

116.    Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 96 of this Complaint as if fully set forth herein.

Answer: Responding to paragraph 116 of Plaintiff's Third Amended Complaint, KTIC incorporates its above responses to paragraphs 1-96 and 1-115.

117.    The tortious conduct described herein was committed by Defendants, and each of them, intentionally, willfully, maliciously, wantonly, and with utter

disregard to the consequences to Plaintiff. Because Defendants have acted with specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

Answer: Denied.

118. In addition to full compensatory damages and all other relief sought herein, Plaintiff is entitled to an award of punitive damages against Defendants, and each of them, in an amount to be determined by the enlightened conscience of the jury sufficient to deter Defendants from engaging in such conduct in the future.

Answer: Denied.

119. Defendant's infringement has at all times been willful and continued despite notice from Plaintiff, continuing through the date of filing of this this amended complaint, after notice to Defendant. Defendant intended to cause the harm.

Answer: Denied.

## **JURY DEMAND**

KTIC requests a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

Without conceding that any of the following necessarily must be pled as a defense, or that any of the following are not already at issue by virtue of the foregoing statements in Defendant's Answer, and without prejudice to Defendant's right to plead additional defenses as discovery in the facts of the matter warrant, KTIC asserts the following affirmative defenses:

1.    KTIC is not subject to personal jurisdiction in this Court. Plaintiff has never obtained sufficient service of process over KTIC, and the process Plaintiff claims to have served is not sufficient.  KTIC maintains all defenses previously asserted by motion under Rule 12(b), FRCP.

2.    As to some or all Counts in Plaintiff's Third Amended Complaint, Plaintiff has failed to state a claim upon which relief can be granted.

3.    KTIC does not make, use, offer to sell, sell or import into the United States, and has not made, used, offered to sell, sold or imported into the United States, any products that infringe, either directly or indirectly, the claim of either the '875 Patent or the '616 Patent, either literally or under the doctrine of equivalents.

4.     Plaintiff's causes of action for patent infringement are barred because the claim of the '875 Patent and the '616 Patent, or either of them, is invalid for failure of the Applicant to comply with one or more of the requirements of the Patent Laws of the United States, 35 U.S.C. §§ 100, *et seq.*, including without limitation 35 U.S.C. §§ 101, 102, 103, or 112.

5.     Certain features of the design claimed in the '875 Patent and the '616 Patent, or either of them, including without limitation the shape and spacing of the male port extensions on the right side, the shape of ports on the left side as disclosed in either Figure 6 or Figure 7 of the '875 Patent and Figure 1 of the '616 Patent, the shape of the HDMI port on the top edge, the shape of the SD card and microSD card slots, the number of ports, and similar features, are all dictated by product function, are entirely utilitarian and necessary to device operation, and therefore do not comprise ornamental features for which design patent protection can be claimed.

6.     The claim of the '616 Patent is unenforceable because of the inequitable conduct of the Applicant or other individuals associated with the filing or prosecution of the '616 Application.  Specifically, Applicant or other individuals failed to disclose during prosecution the correct inventor of the

ornamental design claimed, and failed to disclose that said design was in public use or on sale before the filing date of the Application.

7.    KTIC is informed and believes that Plaintiff's U.S. Trademark Registration 5,442,707 is invalid for Plaintiff's failure to comply with all necessary requirements of 15 U.S.C §§1051-1072, thus Plaintiff's Lanham Act claims are barred.

8.    Plaintiff's contentions that KTIC is selling a "counterfeit" product, including without limitation allegations in paragraphs 1, 3, 37, 38, 40, 41, 48 and 51 of its Third Amended Complaint, and all prayers for relief arising from said allegations, are barred pursuant to 15 U.S.C. §1116(d)(1)(B).

9.    Plaintiff's contentions of fraud, including without limitation those in paragraphs 11, 48 and 101 of its Third Amended Complaint, and all prayers for relief arising from said allegations, are barred because Plaintiff has failed to comply with Rule 9 of the Federal Rules of Civil Procedure.

10.    Some or all of Plaintiff's claims based on state law are barred because said claims are preempted by federal law.

11.     Plaintiff's claims for damages for patent infringement are barred because of Plaintiff's failure to comply with the provisions of 35 U.S.C. §287

concerning marking of the patent number of the '875 Patent and the '616 Patent.

12.    Plaintiff has not marked its product in compliance with 15 U.S.C. §1111; therefore, Plaintiff is not entitled to recover damages for alleged trademark infringement as KTIC did not have actual notice of the '707 Registration.

13.    Plaintiff's claims for damages from copyright infringement are barred or limited by operation of 17 U.S.C. §412.

14.    Plaintiff has suffered no damages, or any damages claimed by Plaintiff are speculative, or Plaintiff's claim for damages is barred by virtue of Plaintiff's failure to mitigate its damages.

15.    KTIC is informed and believes Plaintiff's claims are barred by its failure to enforce its alleged trademarks against others engaged in selling components for personal computers in association with trademarks or trade dress confusingly similar to those claimed by Plaintiff.

16.    Any similarities forming the basis for Plaintiff's claims of copyright infringement result from similarities in unprotectable elements including facts, public domain materials or scenes a faire.

17.    Plaintiff failed to timely register its copyrights such that it is precluded from seeking statutory damages or attorney's fees against KTIC.

RESERVATION OF RIGHTS

KTIC reserves all other affirmative defenses pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, that now exist or in the future may be available based on discovery and further factual investigation in the case.

## RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF

KTIC denies the allegations in Plaintiff's prayer; KTIC denies that Plaintiff is entitled to any of the relief sought in Plaintiff's Prayer for Relief. Wherefore, having answered, KTIC asks that Plaintiff's Third Amended Complaint should thus be denied in its entirety with prejudice, and Plaintiff should take none of the relief sought against KTIC.

/ / /

DATED this 12th day of August, 2020.

s/Ryan P. Gentes
Ryan P. Gentes
GA Bar No. 421695
LEE & HAYES, P.C.
75 14th Street NE, Ste. 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com

s/ Robert J. Carlson
Robert J. Carlson
WSBA Number 18455
*Admitted Pro Hac Vice*
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: bob@leehayes.com

*Attorneys for Defendant KaiJet Technology*
*International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August, 2020, I caused to be filed Kaijet Technology International Corporation's Answer to Third Amended Complaint with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Ali A. Aalaei

Alexander Chen

Benjamin Martin

Steven G. Hill

Martha L. Decker

s/Robert J. Carlson
Robert J. Carlson
WSBA Number 18455
*Admitted Pro Hac Vice*
Attorneys for Defendant KaiJet
    Technology International Limited, Inc.

Lee & Hayes, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Phone: (206) 315-4001
Email: Bob@leehayes.com