# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SANHO CORPORATION,

       Plaintiff,

v.

KAIJET TECHNOLOGY
INTERNATIONAL LIMITED, INC., ET
AL.,

       Defendants.

Case No.  1:18-CV-05385-SDG

JURY TRIAL DEMANDED

# DEFENDANT MAGIC CONTROL TECHNOLOGY CORP.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................1

II.  STATEMENT OF FACTS .......................................................................2

    A.   Procedural History.........................................................................2

    B.   MCT Has Not Had Any Contact With Georgia. ...............................3

    C.   MCT Is Not Related To Any Co-Defendant. ....................................4

III. ARGUMENT...........................................................................................6

    A.   Sanho Fails To Establish A Prima Facie Case Of Personal Jurisdiction Over MCT In Georgia. .....................................................7

    B.   The Court Lacks Personal Jurisdiction Over MCT............................8

        1.   Legal Standard. ....................................................................8

        2.   Georgia Long-Arm Statue Does Not Confer Jurisdiction. ......10

            a.   MCT Does Not Transact Business Within Georgia Under O.C.G.A. § 9-10-91(1)...................................................10

            b.   MCT Did Not Commit Any Tortious Act Or Omission Within Georgia Under O.C.G.A. § 9-10-91(2). ............12

            c.   O.C.G.A. § 9-10-91(3) Likewise Does Not Confer Jurisdiction Over MCT..................................................12

        3.   Exercising Personal Jurisdiction Over MCT Would Violate The Due Process Clause................................................................13

            a.   There Is No General Jurisdiction Over MCT................14

            b.   There Is No Specific Jurisdiction Over MCT. ..............15

    C.   Plaintiff's Conclusory Allegations On Alto Ego Cannot Establish Personal Jurisdiction. ........................................................................19

        1.   Sanho's "Alter Ego" Theory Does Not Confer Jurisdiction....19

IV.  CONCLUSION......................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Asahi Metal Industry Co., Ltd. v. Superior Court*,
   480 U.S. 102 (1987) (O'Connor, J., plurality opinion) ...............................16, 17

*Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.*,
   915 F. Supp. 2d 1365 (N.D. Ga. January 3, 2013) ............................................17

*Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*,
   566 F.3d 1012 (Fed. Cir. 2009) .........................................................................15

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
   552 F.3d 1324 (Fed. Cir. 2008) ...........................................................................9

*B & F Sys., Inc. v. LeBlanc*,
   No. 7:07–CV–192 (HL), 2011 WL 4103576 (M.D. Ga. Sept. 14,
   2011) .................................................................................................................21

*Brazil v. Janssen Research & Dev. LLC*,
   249 F. Supp. 3d (N.D. Ga. March 24, 2016) ............................................7, 8, 15

*Breckenridge Pharm., Inc. v. Metabolite Labs, Inc.*,
   444 F.3d 1356 (Fed. Cir. 2006) ...................................................................9, 17

*Brewton v. Liberty Mut. Holding Company, Inc.*,
   No. 5:14-CV-436-MTT, 2016 WL 410009 (M.D. Ga. Feb. 2, 2016) ...............21

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)...........................................................................................13

*Calder v. Jones*,
   465 U.S. 783 (1984)...........................................................................................16

*CHIS, LLC v. Liberty Mut. Holding Co., Inc.*,
   No. 5:14-CV-277 (MTT), 2015 WL 4249358 (M.D. Ga., Jul. 13,
   2015) ...........................................................................................................20, 21

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ................................................................. 14, 15

*Diamond Crystal Brands, Inc. v. Food Movers Int'l., Inc.*,
    593 F.3d 1249 (11th Cir. 2010) ................................................ 10, 16

*George Raymond Hester, Jr. v. UMR Ins. Co.*,
    No. CV 516-82, 2017 WL 150507 (S.D. Georgia, January 13,
    2017) ................................................................................................ 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ......................................................................... 8

*Helicopteros Nacionales v. Hall*,
    466 U.S. 408 (1984) ....................................................................... 13

*Hi-Tech Pharm. Inc. v. Dynamic Sports Nutrition, LLC*,
    No. 1:16-CV-949-MHC, 2016 WL 9454418 (N.D. Ga. Dec. 28,
    2016) ................................................................................................ 18

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ................................................................... 13, 16

*Kason Indus. v. Dent Design Hardware, Ltd.*,
    952 F. Supp. 2d 1334 (N.D. Ga. 2013) ........................................... 15

*Knieper v. Forest Group USA, Inc.*,
    No. 4:15-CV-00222-HLM, 2016 WL 9450454 (N.D. Ga. March 3,
    2016) .............................................................................................. 7, 8

*Madara v. Hall*,
    916 F.2d 1510 (11 Cir. 1990) ......................................................... 14

*Najran Co. for Gen. Contracting and Trading v. Fleetwood Enter.,
    Inc.*,
    659 F. Supp. 1081 (S.D. Ga., 1986) ............................................... 20

*Robinson v. Sacramento Hotel Partners*,
    No. 1:18-CV-03628-ELR, 2019 WL 2084538 (N.D. Ga. Jan. 10,
    2019) ................................................................................................ 11

*Sprint Nextel Corp. v. Ace Wholesale, Inc.*,
No. 1:12–cv–02902–JEC, 2014 U.S. Dist. LEXIS 21598 (N.D. Ga.
Feb. 20, 2014) ...................................................................................12, 13

*Walden v. Fiore*,
571 U.S. 277 (2014)...................................................................................7

*Ward v. Dickinson Fin. Corp. II, Inc.*,
No. 7:14–CV–8 (HL), 2015 WL 1020151 (M.D. Ga. March 9,
2015) ........................................................................................................22

## State Cases

*Amason v. Whitehead*,
186 Ga.App. 320 (1988) .......................................................................20, 25

*Johnson v. Lipton*,
254 Ga. 326 (1985) ...................................................................................21

*Yukon Partners v. Lodge Keeper Group, Inc.*,
572 S.E.2d 647 (Ga. App. 2002) ..............................................................20

## State Statutes

O.C.G.A. § 9-10-91...................................................................................9, 10

O.C.G.A. § 9-10-91(1)..............................................................................10, 11

O.C.G.A. § 9-10-91(1)-(3).........................................................................9

O.C.G.A. § 9-10-91(2)...............................................................................12

O.C.G.A. § 9-10-91(3)...............................................................................12

## Other Authorities

(www.mct.com.tw) .................................................................................4, 5, 6

Rule 12(b)(2).............................................................................................7

*Sanho Corporation v. Kaijet Technology International Limited, Inc. &
Kaijet Technology Corporation*,
Case No. 1:18-cv-5385-SDG .................................................................2, 3, 4

Defendant Magic Control Technology Corp. ("MCT"), pursuant to Federal Rules of Civil Procedure 12(b)(2), moves to dismiss all claims of Plaintiff Sanho Corporation's Complaint directed to MCT.  As shown herein, MCT is not subject to personal jurisdiction in this Court.  This Motion is supported by the Court filings referenced herein and concurrently-filed Declaration of Pei-Chung (James) Liu.

## I.    <u>INTRODUCTION</u>

Magic Control Technology Corp. ("MCT") is a Taiwanese corporation with its principal place of business in Taiwan, and none of its over 150 employees and officers resides in the State of Georgia.  It does not make, use, offer to sell, sell, or import any product in Georgia.  MCT manufactures the allegedly infringing products at issue ("Accused Products") in Taiwan and sells them to co-defendants KaiJet Technology International Corporation ("KaiJet Taiwan") and Star View Global Limited ("Star View") – with each taking legal title and physical possession of the Accused Products in Taiwan.  As such, MCT did not "purposely avail" itself to, nor has there been any "continuous and systematic" contacts with, Georgia that would justify the exercise of personal jurisdiction.

From the dearth of factual allegations to support the basis for personal jurisdiction, Plaintiff Sanho Corporation ("Sanho"), likely realizing it cannot establish personal jurisdiction under the traditional analysis, advances a strained

theory of alter ego in an attempt to impute to MCT contacts with Georgia by the other unrelated defendants, including a defendant headquartered in Georgia. Indeed, in an earlier-filed proceeding, Sanho moved this Court for a finding of "overlapping entities" for discovery purposes among the four defendants named here. The Court found Sanho's evidence lacking and denied its motion with regard to MCT and Star View. Dkt. No. 185, p. 38. Sanho now asks this Court to pierce the corporate veil of MCT under a legal theory where Sanho must carry a higher burden of proof than the earlier discovery dispute and one where courts are reminded to exercise "great caution" to disregard the separate existence of corporations. Yet, other than lumping all four defendants and "DOES 1-10" into a single imaginary entity, Sanho's Complaint adds precious little to what this Court has already rejected for a finding of "overlapping entities" status. Sanho's alter ego theory falls far short than even the prima facie showing it must meet at this stage of the proceeding.

## II.  <u>STATEMENT OF FACTS</u>

### A.  <u>Procedural History.</u>

On May 25, 2018, Sanho filed suit against KaiJet Technology International Ltd., Inc. ("KaiJet US") and KaiJet Taiwan in the Northern District of California. *Sanho Corporation v. Kaijet Technology International Limited, Inc. & Kaijet*

*Technology Corporation*, Case No. 1:18-cv-5385-SDG ("Case 1"). On November 27, 2018, Case 1 was transferred to the Northern District of Georgia.

On May 19, 2020, Sanho filed suit against the two KaiJet entities, Star View and MCT in this Court, Case No. 1:20-cv-02150-TCB ("Case 2"). Dkt. No. 1. On October 19, 2020, this Court consolidated the two cases into Case 1. Dkt. No. 204. On October 28, 2020, Sanho re-filed an identical complaint to its May 19, 2020 complaint in Case 1 ("Complaint"). *See* Dkt. No. 204.

Sanho and MCT agreed that MCT has until February 28, 2021 to answer or otherwise respond to the Complaint.

### B. MCT Has Not Had Any Contact With Georgia.

Founded in 1998, MCT is a leading computer peripherals manufacturer based in Taiwan. Declaration of Pei-Chung (James) Liu ("Liu Decl.") at ¶ 4. MCT is a corporation organized under the laws of Taiwan and has its principal place of business in Taiwan. *Id*. at ¶ 3. MCT currently has approximately 150 employees, all based in its Taiwan office or who spend some portion of their time working out of that office. *Id*. at ¶ 4. MCT provides customers with custom solutions in both product and technical development, including OEM/ODM services to customers for products ranging from USB peripherals to networking services solutions as well as revolutionary multi-user platforms. *Id*. MCT

manufactures and sells its products on "FOB Taiwan" trade terms (Free On Board), which means MCT customers take legal title and physical possession of MCT products in Taiwan. *Id.* at ¶ 5. MCT manufactures certain products in this litigation in Taiwan and sells them to KaiJet Taiwan and Star View under its customary "FOB Taiwan" term. *Id.*

MCT does not make, use, offer to sell, sell, or import any products in Georgia and does not engage in any other activities in Georgia. *Id.* at ¶ 6. MCT has never owned, leased or maintained any real property in Georgia. *Id.* MCT does not have employees, representatives or agents in Georgia. *Id.* MCT is not (nor has ever) registered with the Georgia Secretary of State to transact business in Georgia. *Id.* MCT has never paid or owed corporate income taxes to the State of Georgia and has never maintained (or needed to maintain) a taxpayer identification number. *Id.* MCT does not have (and has never maintained) a business, mailing address, bank account, or telephone listing in Georgia. *Id.* Although MCT maintains a website accessible worldwide (www.mct.com.tw), that website is not interactive and cannot be used by Georgia customers to purchase any accused products. *Id.* at ¶ 7.

### C.    <u>MCT Is Not Related To Any Co-Defendant.</u>

MCT does not own any shares of KaiJet US, KaiJet Taiwan, or Star View

(collectively "Co-Defendants").  *Id*. at ¶ 8.  Likewise, none of the Co-Defendants owns any shares in MCT.  *Id*.  MCT does not exercise control over any of the Co-Defendants nor does any of the Co-Defendants exercise any control over MCT.  *Id*. MCT has maintained its own corporate practices, including maintaining bank accounts in its own name, preparing financial statements independent of those of its shareholders, and filing its own tax returns.  *Id*.

Although MCT is aware that KaiJet US sells certain products that it manufactures in the U.S., KaiJet US is not a direct customer of MCT.  *Id*. at ¶ 11. In addition, while it is not a "family business" among the defendants, there is a non-corporate connection between MCT and KaiJet US given that the CEO of KaiJet US, Jessica Liu, is the daughter of MCT's CEO, Pei-Chung James Liu.  *Id*. at ¶ 12.  Ms. Liu owns a non-controlling less than 5% stake in MCT.  *Id*. at ¶ 13. From time to time, father and daughter will informally talk about their respective businesses.  *Id*.  Ms. Liu is not an MCT officer, but MCT's CEO (father) does occasionally seek her input on MCT's business and vice versa.  *Id*.

Ms. Liu also helps her father in other ways.  For example, when dealing with customers who communicate in English, Ms. Liu's father sometimes relies on his daughter to be an ad hoc interpreter and to read and respond to emails that require prompt attention.  *Id*. at ¶ 14.  Although MCT's CEO gave his daughter an MCT

email account for that purpose, he never granted his daughter the authority to act on MCT's behalf without specific authorization from him and he is not aware of any instance in which Ms. Liu acted on MCT's behalf without authorization. *Id*. Despite this non-corporation relationship, all corporate formalities are strictly maintained in that regard. *Id*. at ¶ 15.

## III.   <u>ARGUMENT</u>

Sanho's allegations against MCT related to personal jurisdiction are facially deficient under traditional long-arm and due process principles. Sanho also advances a dubious alter ego theory in an attempt to establish personal jurisdiction over MCT. It does so by first lumping all four defendants, together with those "DOES" defendants, into a unitary imaginary entity called "Kaijet" and then focuses on the contacts of the Georgia-based defendant with its home state to suggest that MCT, too, has had the same contacts with Georgia. These allegations are, at best, misleading. It is clear from various court filings that Sanho possesses certain knowledge about MCT and yet it intentionally obscures even the most basic of facts about MCT, such as "Kaijet [which includes MCT] … is a Delaware Corporation" (Compl. at ¶ 7) and "Kaijet [which includes MCT] . . . resides within this judicial district" (*id*. at ¶ 4). On the Summons served on MCT, Sanho correctly identifies MCT's corporate address in Taiwan. Dkt. No. 215.

### A.    Sanho Fails To Establish A Prima Facie Case Of Personal Jurisdiction Over MCT In Georgia.

Sanho's Complaint is devoid of any specific factual allegations regarding MCT's contacts with Georgia. Jurisdictional contacts must be evaluated as to each defendant separately. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014). Indeed, Sanho's use of blanket pleading for a group of defendants as "Kaijet" is improper and may not be used "merely to express that [Sanho] believes all defendants are liable." *Knieper v. Forest Group USA, Inc.*, No. 4:15-CV-00222-HLM, 2016 WL 9450454, at *5 (N.D. Ga. March 3, 2016) (*citing Phillips v. Scientific Atlanta, Inc*., 374 F.3d 1015, 1019 (11th Cir. 2004)). In addition, where the factual allegations in a complaint refer only to "'Defendants' as taking some action without specifying the role or acts of any individual Defendant" and where each count refers only to "Defendants," these allegations are insufficient to "sustain Plaintiff's initial burden of showing [Defendant's] minimum contacts with the State of Georgia." *Brazil v. Janssen Research & Dev. LLC*, 249 F. Supp. 3d at 1331-32 (N.D. Ga. March 24, 2016) (granting Rule 12(b)(2) motion and collecting cases); *Knieper*, 2016 WL 9450454, at *5 (same).

Sanho's Complaint refers to all defendants collectively as "Kaijet" without making any attempt to attribute any particular alleged contact, act, or role to MCT. As such, Sanho has failed to meet its burden to allege at least a prima facie case of

personal jurisdiction in the State of Georgia, and the Court should dismiss the claims against MCT on this ground alone.  *See Brazil*, 249 F. Supp. 3d at 1331-32; *Knieper*, 2016 WL 9450454, at *5.

Nevertheless, MCT will now discuss why it has not had the kind of continuous and systematic contacts with Georgia to allow a court to exercise personal jurisdiction over it.

### B.   The Court Lacks Personal Jurisdiction Over MCT.

#### 1.   Legal Standard.

A court's exercise of personal jurisdiction, at a minimum, must comport with Due Process.  "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  "Specific jurisdiction, on the other hand, depends on an "affiliation[n] between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum state."  *Id.*

When evaluating specific jurisdiction over a non-resident defendant, courts consider a two-part test: (1) whether the applicable state long-arm statute is

satisfied, and (2) whether the exercise of personal jurisdiction is consistent with the

Constitution's Due Process clause.  *See Breckenridge Pharm., Inc. v. Metabolite*

*Labs, Inc*., 444 F.3d 1356, 1361 (Fed. Cir. 2006).  The Georgia long-arm statute,

O.C.G.A. § 9-10-91, allows jurisdiction over any nonresident who "(1) transacts

any business within this state; (2) commits a tortious act or omission within this

state, except as to a cause of action for defamation of character arising from the

act; (3) commits a tortious injury in this state caused by an act or omission outside

this state if the tortfeasor regularly does or solicits business, or engages in any

other persistent course of conduct, or derives substantial revenue from goods used

or consumed or services rendered in this state;…"  O.C.G.A. § 9-10-91(1)-(3).

As to the second part of the test, the issue of personal jurisdiction (for cases,

such as this one, intimately involved with the substance of U.S. patent laws) is

governed by Federal Circuit law on Due Process.  *Avocent Huntsville Corp. v. Aten*

*Int'l Co*., 552 F.3d 1324, 1329 (Fed. Cir. 2008).  The Federal Circuit applies a

three-prong test to determine whether the exercise of personal jurisdiction over a

defendant satisfies the requirements of Due Process, considering whether: "(1) the

defendant purposefully directed its activities at residents of the forum, (2) the claim

arises out of or relates to those activities, and (3) assertion of personal jurisdiction

is reasonable and fair."  *Breckenridge*, 444 F.3d at 1363.

In every case, however, the plaintiff has the burden of at least alleging a prima facie case of jurisdiction over a defendant. *Diamond Crystal Brands, Inc. v. Food Movers Int'l., Inc*., 593 F.3d 1249, 1257 (11th Cir. 2010). If such a showing is made, each defendant has the opportunity to submit evidence refuting jurisdiction. *Id*. If a defendant is able to adduce evidence refuting jurisdiction, the burden shifts back to the plaintiff to establish the court's personal jurisdiction. *Id*.

MCT contends that Sanho has failed to meet its initial burden of proof and its Motion should be granted on this ground alone. However, in the abundance of caution, MCT will also provide additional arguments to refute Sanho's allegations on the issue of personal jurisdiction.

2.    **Georgia Long-Arm Statue Does Not Confer Jurisdiction.**

a.    **MCT Does Not Transact Business Within Georgia Under O.C.G.A. § 9-10-91(1).**

Long-arm jurisdiction under the Georgia long-arm statute, O.C.G.A. § 9-10-91, is separate and distinct from the Due Process analysis. *Diamond Crystal*, 593 F.3d at 1259. Under O.C.G.A. § 9-10-91(1), a court may exercise personal jurisdiction over any nonresident who "[t]ransacts any business in [Georgia]."

However, Sanho has not alleged specific facts showing that MCT transacts or regularly conducts business in Georgia. This is because there is none. MCT has not purposefully acted or transacted any business in Georgia. Liu Decl. at ¶ 6.

MCT has neither applied for nor obtained a license to do business in Georgia. *Id*. None of MCT's employees work in or from Georgia. *Id*. MCT has never sent any representatives to Georgia for business purposes. *Id*. MCT does not ship or sell products in Georgia or even solicit business in Georgia. *Id*. at ¶¶ 5-6. MCT has never maintained an office or owned or leased personal or real property in Georgia. *Id*. MCT has never maintained a Georgia address, bank account, or telephone number. *Id*. And, MCT has never paid or owed taxes to the State of Georgia and has never maintained (or needed to maintain) a taxpayer identification number. *Id*.

Most, if not all, of the alleged contacts with Georgia appear to be based on the same allegations Sanho presented in Case 1, to which MCT was not a party. MCT can only assume that the alleged contacts with Georgia were attributed to either KaiJet US with it home state, or KaiJet Taiwan, the two defendants in Case 1. *See Robinson v. Sacramento Hotel Partners*, No. 1:18-CV-03628-ELR, 2019 WL 2084538 *4 (N.D. Ga. Jan. 10, 2019) (transactions of resident defendant cannot be imputed on separate nonresident defendant where the nonresident defendant was not authorized to do or transact business in Georgia, did not employ any employees or staff, provide any services, or own, lease or possess any real property in Georgia). Therefore, O.C.G.A. § 9-10-91(1) is not applicable.

### b.    MCT Did Not Commit Any Tortious Act Or Omission Within Georgia Under O.C.G.A. § 9-10-91(2).

O.C.G.A. § 9-10-91(2) states that an individual or entity that "[c]ommits a tortious act or omission within [Georgia]," is subject to personal jurisdiction in Georgia.  O.C.G.A. § 9-10-91(2).  Sanho simply alleges that MCT "committed the tortious acts of infringement complained of in this judicial district."  Dkt. No. 204 ¶ 4.  As already set forth above, all of MCT's corporate activities relating to the manufacture and sale of the Accused Products at issue occurs in Taiwan.  *See* Liu Decl. at ¶ 5.  Therefore, O.C.G.A. § 9-10-91(2) is likewise not applicable.

### c.    O.C.G.A. § 9-10-91(3) Likewise Does Not Confer Jurisdiction Over MCT.

O.C.G.A. § 9-10-91(3) allows a court to exercise jurisdiction for a defendant "who commit tortious acts outside of the state, which cause injury in the state, to a tortfeasor who 'regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.'"  *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12–cv–02902–JEC, 2014 U.S. Dist. LEXIS 21598, at *20 (N.D. Ga. Feb. 20, 2014) (quoting O.C.G.A. § 9-10-91(3)).  Just like its other allegations, Sanho simply paraphrases the law and presents it as a factual allegation.  *See* Dkt. No. 204 ¶ 4.

- 12 -

As already explained in detail above, MCT's corporate activities lack any "regularly … and persistent course of contact" with Georgia and therefore "not the systematic contacts with the state that subsection (3) requires." *Sprint Nextel*., 2014 U.S. Dist. LEXIS 21598, at *22. Accordingly, Sanho's Complaint fails to provide any factual allegations from which this Court could conclude that jurisdiction over MCT is proper under Georgia's long-arm statute.

### 3. Exercising Personal Jurisdiction Over MCT Would Violate The Due Process Clause.

Separately, MCT lacks sufficient minimum contacts with Georgia to satisfy Due Process. Due Process requires that a defendant have sufficient minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See, e.g., Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp*., 471 U.S. at 472.

General jurisdiction exists when a defendant's forum activities are "substantial" or "continuous or systematic," even though they are unrelated to the cause of action. *See Helicopteros Nacionales v. Hall*, 466 U.S. 408, 414 n. 9 (1984). By contrast, specific jurisdiction exists when a defendant has sufficient minimum contacts that arise from or are related to the cause of action. *See Helicopteros*, 466. U.S. at 414 n. 8. If there are sufficient minimum contacts, a

court must also consider whether the exercise of personal jurisdiction over the defendant would offend notions of fair play and substantial justice. *See, e.g., Madara v. Hall*, 916 F.2d 1510, 1517 (11 Cir. 1990).

Here, exercising personal jurisdiction over MCT would violate Due Process. First, based on the facts already presented, there should be no dispute that there are no substantial, continuous, or systematic contacts with Georgia for this Court to find general personal jurisdiction over MCT.  Second, MCT does not have sufficient minimum contacts arising from or relating to the causes of action to sustain the exercise of specific personal jurisdiction.  As such, the exercise of personal jurisdiction over MCT would offend notions of fair play and substantial justice, as there is no expectation by MCT that, based on the products that it manufactured and sold in Taiwan, MCT would be haled into court in Georgia.

### a.    <u>There Is No General Jurisdiction Over MCT.</u>

There is a complete lack of continuous and systematic contacts with the state such that MCT would be "essentially at home" in Georgia.  Due Process dictates that courts can only exercise general jurisdiction over a nonresident if the nonresident's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks omitted).  A corporation is

paradigmatically "at home" only where it is incorporated or has its principal place of business. *Daimler*, 571 U.S. at 137; *Brazil*, 249 F. Supp. 3d at 1334 (concluding that nonresident defendant parent entity was not at home in Georgia because it was incorporated and headquartered in New Jersey). Accordingly, despite Sanho's misleading allegation, there should be no dispute that MCT is neither incorporated nor located in Georgia.

Furthermore, MCT does not otherwise have "continuous and systematic" contacts with Georgia as already explained above. While MCT maintains a website accessible worldwide, that website cannot confer personal jurisdiction over MCT in Georgia because the website is not interactive and cannot be used by Georgia residents to purchase any products. Liu Decl. at ¶ 7; *see Kason Indus. v. Dent Design Hardware, Ltd*., 952 F. Supp. 2d 1334, 1343 (N.D. Ga. 2013) (lack of personal jurisdiction over a defendant with a similarly non-interactive website).

Since MCT cannot be considered "at home" in Georgia, it is not subject to general personal jurisdiction in the state.

**b.    There Is No Specific Jurisdiction Over MCT.**

To be subject to specific personal jurisdiction, a foreign defendant's contacts with the forum must give rise to the stated cause of action. *Autogenomics, Inc. v. Oxford Gene Tech., Ltd*., 566 F.3d 1012 (Fed. Cir. 2009). To determine whether a

court has specific jurisdiction, the Federal Circuit applies the three-part "minimum contacts" analysis of *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The first prong of this "minimum contacts" analysis requires a showing that a defendant has "purposefully availed" himself of the privilege of conducting activities in the forum, or "purposefully directed" his activities toward the forum. *Diamond*, 593 F.3d at 1267 (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–476 (1985)).  Based on the facts already discussed in detail, MCT cannot be considered to have availed itself of any privileges, or for that matter even conducted any activities, in this forum.  *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) (O'Connor, J., plurality opinion) ("minimum contacts" includes not just the placement of the product in the stream of commerce, but "[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State.")

For "purposeful direction," a defendant must have committed an act outside of the forum state that was intended to and does in fact cause injury within the forum.  *See Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (purposeful direction requires: (1) an intentional act, (2) expressly aimed at forum state, (3) which causes harm known to be likely to be suffered in forum state).  MCT's only connection to Sanho's claims is that MCT allegedly manufactured and sold Accused Products to

KaiJet Taiwan and Star View in Taiwan under FOB Taiwan terms. *See* Liu Decl. at ¶ 5. Sanho does not allege any particular intentional act by MCT, aside from the general conclusory allegations directed to the various defendants as a group, that caused an identifiable harm in Georgia. *See* Dkt. No. 204 ¶ 4.

The second prong in determining specific jurisdiction requires that Sanho's claims arise out of MCT's "forum-related activities." *See Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc*., 915 F. Supp. 2d 1365, 1372 (N.D. Ga. January 3, 2013). Indeed, the only arguably forum-related activity engaged by MCT is its manufacturing and sales of the Accused Products in Taiwan. This connection is entirely too attenuated and remote for the asserted causes of action to be considered to have arisen out of any conduct by MCT.

Ultimately, the exercise of jurisdiction must be reasonable to satisfy due process. *See Breckenridge*, 444 F.3d at 1363. Thus, even if Sanho was able to demonstrate that the first two prongs weighed in favor of sufficient minimum contacts, subjecting MCT to jurisdiction in Georgia would be fundamentally unfair and unreasonable since Sanho's claim that MCT and the other defendants are alter egos (or "co-conspirators") is baseless, and the expense to and burden on MCT to defend a litigation over 6,000 miles away in another country despite the fact that it has no connections to the forum is significant. *Asahi Metal Indus. Co. v. Superior*

*Ct.*, 480 U.S. 102, 114 (1987) ("significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders").

The five factors relevant to this analysis as articulated by the Supreme Court in *Burger King include*: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Hi-Tech Pharm. Inc. v. Dynamic Sports Nutrition, LLC*, No. 1:16-CV-949-MHC, 2016 WL 9454418, at *9 (N.D. Ga. Dec. 28, 2016) (*citing Burger King*, 471 U.S. at 462, 467). There is immense burden on MCT to appear in this Court since it has no connection to Georgia. Although the State doubtlessly has an interest in adjudicating the dispute, its interest in having MCT also present as a defendant is, at best, neutral given that the other named defendants named in all of the causes of actions are already actively defending against Sanho's claims. The same rationale applies to the three remaining factors.

In summary, Sanho has failed to meet its burden to establish a prima facie case of personal jurisdiction over MCT. In addition, given MCT's corporate activities and how it conducts business, it would be contrary to due process for this

Court to exercise personal jurisdiction over MCT.

**C.**    **Plaintiff's Conclusory Allegations On Alto Ego Cannot Establish Personal Jurisdiction.**

Sanho also attempts to impute personal jurisdiction under its unsupported alter ego theory. This Court in Case 1 rejected Sanho's request to find "overlapping entities" with regard to MCT and Star View. Dkt. No. 185, p. 38. Now, Sanho asks this Court to pierce the corporate veil of MCT under a legal theory where Sanho must carry a higher burden of proof and one where courts must exercise "great caution" to disregard the separate existence of corporations. Yet, Sanho adds little in its Complaint against MCT to what this Court has already considered and rejected for a finding of "overlapping entities" status. Dkt. No. 185, p. 38.

**1.**    **Sanho's "Alter Ego" Theory Does Not Confer Jurisdiction.**

Under its alter ego theory, Sanho attempts to establish jurisdiction not based on MCT's contacts with the State of Georgia, but those of the all-inclusive "KaiJet" grouping. Dkt. No. 204 ¶ 4. Sanho's allegations, as far as jurisdiction is concerned, mirror those Sanho advanced in Case 1 against the two KaiJet entities. No allegation was directed at MCT alone.

In order to make a prima facie case of personal jurisdiction under the alter ego theory, Sanho must allege: (i) that the Co-Defendants are "mere

- 19 -

instrumentalities" of MCT or vice versa; and (ii) that observation of all four defendant's corporate forms would "work an injustice" upon Sanho. *CHIS, LLC v. Liberty Mut. Holding Co., Inc*., No. 5:14-CV-277 (MTT), 2015 WL 4249358 * 3 (M.D. Ga., Jul. 13, 2015). Significantly, in deference to the long-standing principle of Georgia law that recognizes the corporation as a separate legal entity, courts are reminded to exercise "great caution . . . in disregarding the corporate entity." *Yukon Partners v. Lodge Keeper Group, Inc*., 572 S.E.2d 647, 651 (Ga. App. 2002); *Amason v. Whitehead*, 186 Ga.App. 320, 322 (1988) ("There must be evidence of abuse of the corporate form.").

When determining whether one defendant is a "mere instrumentality" of another defendant, courts often consider the following factors: the management structure of the entity; control exercised over the entity by the alleged alter ego; observation of corporate practices, such as whether the entity conducts meetings and prepares minutes of those meetings; location of the entity's books and records; whether the entity prepares its own financial statements; whether the entity maintains insurance in its own name; whether the entity owns or uses its own intellectual property; whether the entity prepares its own tax returns; and whether the entity has its own employees. *See Najran Co. for Gen. Contracting and Trading v. Fleetwood Enter., Inc*., 659 F. Supp. 1081, 1088-1092 (S.D. Ga., 1986).

Sanho merely rephrases these factors to present them as allegations in its Complaint.  Compl. at ¶ 9.

In addition, Georgia courts require an equitable basis for disregarding the corporate form.  *Brewton v. Liberty Mut. Holding Company, Inc*., No. 5:14-CV-436-MTT, 2016 WL 410009 *4 (M.D. Ga. Feb. 2, 2016) (insufficient alleged facts "suggesting an equitable reason to pierce the corporate veil").  Thus, the second prong of the alter ego analysis requires a showing that injustice would occur if the corporate form is recognized.  *See id*.  Importantly, that basis can be met only if the corporate defendant is insolvent or incapable of satisfying a judgment in the plaintiff's favor.  *CHIS, LLC v. Liberty Mut. Holding Co. Inc*., 2015 WL 4249358 at * 3 (M.D. Ga.); *Johnson v. Lipton*, 254 Ga. 326, 327 (1985) ("*as a precondition to a plaintiff's piercing the corporate veil* and holding individual shareholders liable on a corporate claim, that there be insolvency on the part of the corporation in the sense that there are insufficient corporate assets to satisfy the plaintiff's claim.") (emphasis added); *see B & F Sys., Inc. v. LeBlanc*, No. 7:07–CV–192 (HL), 2011 WL 4103576, at *34 (M.D. Ga. Sept. 14, 2011) (corporate defendant must be insolvent or have insufficient assets to satisfy the plaintiff's claim before the plaintiff can pierce the corporate veil to hold a parent company or shareholder liable).  Sanho has made no allegation that MCT is either insolvent or lacks

sufficient assets to satisfy a judgment in Sanho's favor.

Indeed, regardless of the theory, Sanho still must establish a prima facie showing that personal jurisdiction may be exercised by a court. *Ward v. Dickinson Fin. Corp. II, Inc.*, No. 7:14–CV–8 (HL), 2015 WL 1020151 at *7 (M.D. Ga. March 9, 2015). However, most of the allegations in Sanho's Complaint are either conclusory or mere paraphrasing of legal standards without any factual support. For example, Sanho alleges "[t]he Kaijet alter ego entities do not observe basic corporate formalities" without specifying which defendant did not observe basic corporate formalities or how those formalities were ignored. Compl. at ¶ 9. As another example, Sanho alleges "all of Kaijet's alter egos are owned, controlled and financed by the same persons" without elucidating which defendant is owned or controlled by what entity, or who the "same persons" are. *Id*. at ¶ 8. Indeed, courts have routinely rejected this type of unsupported allegation. *See George Raymond Hester, Jr. v. UMR Ins. Co*., No. CV 516-82, 2017 WL 150507, at *2 (S.D. Georgia, January 13, 2017) (no proof of parent's control over subsidiary's operations). More to the point, these types of unsupported allegations are insufficient to establish a prima facie case of personal jurisdiction under the alter ego theory. *See Ward v. Dickinson Fin. Corp. II, Inc*., 2015 WL 1020151 at *7 (M.D. Ga. March 9, 2015) (control over subsidiary banks' operations through the

- 22 -

implementation of standard policies and procedures and technology insufficient).

Sanho pays much attention to the role of Jessica Liu, CEO of KaiJet US in Case 1 to support its "overlapping status" request and ostensibly as the basis of its alter ego theory here. *See* Dkt. No. 165 at p. 15-16. As far as MCT is concerned, Ms. Liu is a minority shareholder with a non-controlling less than 5% stake in the company who otherwise does not have control over MCT nor has any ability to bind MCT to any agreement. Liu Decl. at ¶ 13. Moreover, Ms. Liu has never been the CEO or an officer of MCT.[1] Her informal role with MCT is limited to her personal relationship with her father, the CEO of MCT. *Id*. at ¶¶ 12-13. She assists her father with various minor tasks such as helping her father with customers who communicate in English. *Id*. at ¶ 14. Importantly, MCT's CEO never granted his daughter the authority to act on MCT's behalf without specific authorization from him and he is not aware of any instance in which Ms. Liu acted on MCT's behalf without authorization. *Id*.

Despite this informal relationship, all corporate formalities are strictly

---

[1] Sanho's contention that Ms. Jessica Liu is MCT's CEO is apparently based on a spreadsheet it subpoenaed from CES before MCT was added as a defendant. Dkt. No. 152-5 (CES SUBP_0268-0270). However, the reliability of the information in this spreadsheet is highly questionable. It erroneously identifies Ms. Liu as the CEO of MCT, incorrectly referring to MCT's CEO, Pei-Chung James Liu, as the "President" of "j5Create," as well as incorrectly identifying "j5Create" as an actual company. Liu Decl. at ¶¶ 7, 16-17. MCT understands that no foundation was ever laid for this spreadsheet nor its authenticity established. No information was even provided regarding who actually compiled this information or the origin of the underlying information. It is also hearsay. As such, the Court should give no weight to this spreadsheet as it is inherently unreliable to the extent it is a "factual" basis for Sanho's allegation.

maintained in that regard. *Id*. at ¶ 15. For example, MCT and KaiJet US do not "share employees, equipment, office and warehouse space without paying for their individual use" or "share business departments" as alleged by Sanho. *Id*. at ¶ 9; Compl. at ¶ 9. No authority to enter into binding agreements is given to non-employees since corporate formalities are strictly maintained and any relevant assistance provided from one company to another is accounted for, charged to, and paid by each company. Liu Decl. at ¶¶ 14-15. MCT does not supervise KaiJet US's finance or budget decisions, or articulate its general policies and procedures. *Id*. at ¶ 9. MCT does not conduct board meetings or prepare minutes of those meetings with KaiJet US and KaiJet US's books and records are not located at MCT. *Id*. In addition to completely separate corporate ownership, the two companies have never shared a bank account, never prepared financial statements together and never jointly filed annual corporate tax returns. *Id*. ¶ 8. Each company has employees and the companies have never jointly owned intellectual property. *Id*. ¶ 9. This is far from being a "family business" as Sanho would have the Court believe.

Moreover, Sanho does not even allege that any of the defendants, especially MCT, is insolvent or that any of the defendants will be unable to satisfy any judgment that Sanho may receive in its favor. Sanho is equally silent on any other

equitable basis for disregarding the corporate forms of KaiJet US, KaiJet Taiwan, Star View and MCT.  Sanho merely alleges, in conclusory fashion, that "[n]one of the individual defendants are adequately capitalized."  Compl. at ¶ 9.  However, this allegation, without supporting facts, is simply insufficient.  As far as MCT is concerned, it is sufficiently capitalized and no one, not even the Taiwanese government, has ever questioned the sufficiency of its capitalization since it was incorporated in 1998.  Liu Decl. at ¶ 10.

Because there has not been any *factual* allegation that MCT abused the corporate form, impermissibly commingled assets, intentionally undercapitalized, or otherwise acted with the intent to commit a fraud or evade justice, Sanho's request that the Court pierce at least MCT's corporate veil must fail as a matter of law.  *Amason*, 186 Ga. App. at 322 (evidence insufficient to warrant piercing the corporate veil).

Accordingly, this Court's jurisdiction over KaiJet US should not be imputed to MCT, and MCT's Motion should be granted.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, MCT respectfully requests that its Motion be granted and that all claims against MCT be dismissed for lack of personal jurisdiction.

Respectfully submitted, this 26th day of February, 2021.

/s/Charlena Thorpe
Charlena L. Thorpe
Georgia Bar No. 760954
charlena@incorporatinginnovation.com
**Incorporating Innovation LLC with**
**Charlena Thorpe, Patent Attorney**
6340 Sugarloaf Parkway Suite 200
Duluth, Georgia 30097
Tel: 770-325-2741
Fax: 770-325-2741


OF COUNSEL:

Lenny Huang
CA Bar No. 264386
**Burke, Williams & Sorensen LLP**
1 California Street, Suite 3050
San Francisco, CA 94111-5432
Tel.: (408) 606-6300
Fax: (408) 606-6333
Email: lhuang@bwslaw.com

*Attorney for Defendant Magic Control*
*Technology*


## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 7.1(D) of the Local Rules of the Northern District of Georgia, counsel for Defendant Magic Control Technology Corp. hereby certifies that this Memorandum was prepared in a font and point selection approved by this Court and authorized in Local Rule 5.1B.

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that I have served **DEFENDANT MAGIC CONTROL TECHNOLOGY CORP.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION** via the Court's CM/ECF system on the date below, to opposing counsel of record.


Dated: February 26, 2021      By: /s/ Charlena Thorpe
                                   Charlena Thorpe