## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>    Plaintiff,<br><br>           v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., and KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC., dba "j5create;" and DOES 1-10,<br><br>    Defendants. | Civil Action No.<br>1:18-cv-05385-SDG |
| SANHO CORPORATION,<br><br>    Plaintiff,<br><br>           v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY INTERNATIONAL CORPORATION; MAGIC CONTROL TECHNOLOGY; STARVIEW GLOBAL LIMITED, each doing business as "J5Create;" and DOES 1-10,<br><br>    Defendants. | Civil Action No.<br>1:20-cv-02150-SDG<br>[consolidated case] |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Plaintiff Sanho Corporation's (Sanho) motion to dismiss two counterclaims filed by Defendant KaiJet Technology International Limited, Inc. (KaiJet US) [ECF 197] and Defendant Magic Control Technology's (MCT) motion to dismiss [ECF 236]. For the following reasons,

Sanho's motion is **GRANTED IN PART** and **DENIED IN PART** and MCT's motion is **GRANTED**.[1]

## I.    Background

This case concerns allegations of patent infringement. On May 25, 2018, Sanho filed its initial Complaint solely against KaiJet US.[2] On November 14, 2019, Sanho filed its Third Amended Complaint, adding KaiJet Technology International Corporation, Inc. (KaiJet Taiwan) as a named Defendant.[3] On May 19, 2020, Sanho filed a separate patent infringement action against KaiJet US, KaiJet Taiwan, MCT, and Starview Global Limited (hereafter, the Consolidated Complaint).[4] That action was initially assigned to U.S. District Court Judge Timothy C. Batten, Sr.

On August 25, 2020, KaiJet US filed its Answer to the Consolidated Complaint and asserted five counterclaims.[5] On September 29, Sanho filed the

---

[1]    MCT has also submitted a motion for leave to file matters under seal [ECF 255]. For good cause shown, that motion is **GRANTED**.

[2]    ECF 1.

[3]    ECF 88.

[4]    Case No. 20-cv-02150-TCB (Case 2150), ECF 1 (Compl.).

[5]    Case 2150, ECF 24. After consolidation, KaiJet US's Answer and Counterclaims to the Consolidated Complaint were docketed in this action at ECF 205.

instant motion to dismiss counterclaim Counts IV and V.[6] On October 19, Judge Batten granted Sanho's motion to consolidate the two actions before the Undersigned.[7] KaiJet US filed a response in opposition to Sanho's motion to dismiss counterclaims on November 9 and Sanho filed its reply on November 23.[8] On February 26, 2021, MCT filed its motion to dismiss the Consolidated Complaint on personal jurisdiction grounds.[9] Sanho filed a response in opposition to MCT's motion on March 12.[10] MCT filed its reply on March 26.[11]

## II.    Sanho's Motion to Dismiss

Sanho requests the dismissal under Federal Rule of Civil Procedure 12(b)(6) of counterclaim Count IV (false marketing under 35 U.S.C. § 292) and Count V (declaratory judgment of unenforceability of U.S. Patent No. 10,572,429 (the '429 Patent)) asserted in KaiJet US's Answer to the Consolidated Complaint.[12]

---

[6]    Case 2150, ECF 38. After consolidation, Sanho's motion to dismiss was docketed in this action at ECF 197.

[7]    ECF 43.

[8]    ECF 210; ECF 214.

[9]    ECF 236.

[10]    ECF 243.

[11]    ECF 253.

[12]    ECF 197.

a.     **Legal Standard**

The Court evaluates a motion to dismiss a counterclaim pursuant to Rule 12(b)(6) in the same manner as a motion to dismiss a complaint. *United States v. Zak*, 481 F. Supp. 3d 1305, 1307 (N.D. Ga. 2020). Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides for the dismissal of a pleading that fails to state a claim upon which relief can be granted. Fed. R. Civ. P 12(b)(6). "To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

This pleading standard "does not require detailed factual allegations," but "requires more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted). A complaint providing mere "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not

suffice. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 556).

### b.   Discussion

#### i.   False Marketing (Counterclaim Count IV)

The federal Patent Act permits a party to file a civil action against an individual or entity that "marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public." 35 U.S.C. § 292(a). *See also Clontech Lab'ys, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) ("When the statute refers to an 'unpatented article' the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked."). "[T]he two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public." *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting *Forest Grp. Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009)).

Because a claim for false marketing "requires an intent to deceive the public . . . [such] claims must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b)." *Juniper*, 643 F.3d at 1350. To satisfy this standard, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires a plaintiff to "plead in detail the specific who, what, when, where, and how of the alleged fraud . . . [and] set forth more than the neutral facts necessary to identify the transaction." *Juniper*, 643 F.3d at 1350. "[A]lthough knowledge and intent may be averred generally . . . the pleadings [must] allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011).

In counterclaim Count IV, KaiJet US alleges Sanho falsely marked the New HyperDrive DUO product with U.S. Patent Nos. D855,616 (the '616 Patent), D813,875 (the '875 Patent), and D844,618 (the '618 Patent). Sanho argues KaiJet US has not sufficiently plead scienter; *i.e.*, Sanho's intent to deceive the public. "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Forest Grp.*, 590 F.3d at 1300. Here, the Court finds KaiJet US has plead sufficient facts that,

treated as true, demonstrate Sanho acted with the requisite state of mind. Specifically—and unlike the facts of *In re BP Lubricants*, 637 F.3d at 1312— KaiJet US makes specific factual allegations that Sanho knew its marketing was false, beyond a "bare assertion" of Sanho's business sophistication and experience in litigating patents. Treating KaiJet US's allegations as true, the Court may infer that Sanho knew the New HyperDrive DUO was not covered by the '616 Patent, '875 Patent, or '618 Patent, yet continued to manufacture and market it as so. That is enough to survive this motion to dismiss. *See Homtex, Inc. v. Leggett & Platt, Inc.*, No. CV-11-S-1349-NE, 2012 WL 10785665, at *7 (N.D. Ala. June 6, 2012); *ERBE USA, Inc. v. Byrne Med., Inc.*, No. 1:11-cv-1480-AT, 2011 WL 13220386, at *4 (N.D. Ga. July 22, 2011).

### ii.    Declaratory Judgment (Counterclaim Count V)

In counterclaim Count V, KaiJet US asserts the '429 Patent should be invalidated and declared unenforceable due to inequitable conduct committed by the "Applicant." According to KaiJet US, the "Applicant" breached its duty of good faith and candor by intentionally failing to disclose material information to the United States Patent and Trademark Office (USPTO). This material information included prior art in the form of previous sales of the Hyperdrive product and references cited in a related European patent application.

Inequitable conduct is an equitable defense to patent infringement by which an accused infringer asserts that the at-issue patent is unenforceable because of the patentee's representations to the USPTO during prosecution. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). To succeed, the accused infringer must first "prove that the applicant misrepresented or omitted material information with the specific intent to deceive the [USPTO]," then the "district court must weigh the equities to determine whether the applicant's conduct before the [USPTO] warrants rendering the entire patent unenforceable." *Id.* at 1287. Given the potential scope of its remedy, the inequitable conduct defense has been characterized as "the atomic bomb of patent law." *Id.* At the pleading stage, the alleged infringer must plead the defense with particularity under Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). According to the Federal Circuit:

> [T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and

> (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id*. at 1328–29.

KaiJet US has failed to sufficiently allege the "who" of its inequitable conduct counterclaim. KaiJet US repeatedly refers to the unnamed "Applicant" as the individual or entity "who filed the application that resulted in the '429 Patent."[13] According to KaiJet US, this "Applicant" had a "duty to disclose to the USPTO all information known to be material to patentability with respect to the '429 Patent."[14] But KaiJet US does not attempt to identify this "Applicant." Reading the pleading as a whole, "Applicant" could possibly refer to non-parties Zhuowen Liao or GoPod Group Ltd.[15] But as indicated by KaiJet US's opposition brief, the term "Applicant" could also implicate "patent counsel and any persons at GoPod Group Ltd. who were involved in the preparation or prosecution of the application that led to the '429 Patent."[16]

In *Exergen*, the Federal Circuit agreed with the district court that the defendant failed to sufficiently allege the "who" of an inequitable conduct

---

[13]   ECF 205, ¶ 45.

[14]   *Id*. ¶ 46.

[15]   *Id*. ¶ 15. *See also* ECF 204-1 ('429 Patent).

[16]   ECF 210, at 16.

counterclaim because "the pleading refers generally to 'Exergen, its agents and/or attorneys,' but fails to name the specific individual associated with the filing or prosecution of the application issuing as the '685 patent, who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329 (citation omitted).

Similarly, in *Mitsubishi Heavy Industries, Ltd. v. General Electric Co.*, the district court relied on *Exergen* and dismissed a similar counterclaim for failure to sufficiently allege the "who." No. 6:10-cv-812-ORL-28, 2012 WL 831525, at *2 (M.D. Fla. Mar. 12, 2012). The *Mitsubishi* court found that, although defendant's defense "goes into significant detail and actually mentions individuals associated with Mitsubishi by name, it fails to specify an individual or individuals responsible for making omissions and misrepresentations in the patent process." *Id*. Relevant here, the court found important that:

> GE has managed to lump the named inventors, attorneys, and agents together under the title "Applicants," and through the "or" portion GE has disjoined them; the result is that GE has failed to specifically identify who is guilty of misconduct. Looking at the Eighth Defense, it is impossible to determine who is alleged to have been engaged in deceptive conduct—one or more of the named or unnamed Applicants.

*Id*.

KaiJet US's counterclaim suffers from the same deficiency as articulated in *Exergen* and *Mitsubishi*. It fails to specifically identify the individual or entity responsible for the alleged inequitable conduct before the USPTO. This is insufficient to satisfy Rule 9(b). Therefore, counterclaim Count V is dismissed without prejudice.

## III.   MCT's Motion to Dismiss

MCT argues the claims alleged against it in the Consolidated Complaint must be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. Federal Circuit law governs when "the jurisdictional issue is intimately involved with the substance of the patent laws." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). Absent jurisdictional discovery or an evidentiary hearing, "a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). The district court is required to "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. For Imaging,* 340 F.3d at 1349.

The Supreme Court recognizes two types of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction "extends to 'any and all claims' brought against a defendant . . . [and] [t]hose claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world." *Id*. (quoting *Goodyear*, 564 U.S. at 919). But this theory is limited; a court "may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Id*. (quoting *Goodyear*, 564 U.S. at 919). The "paradigm for[a]" for general jurisdiction are: (1) for an individual, the state of his or her domicile, and (2) for a corporation, "the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, the Court need not consider general jurisdiction. It is undisputed that MCT is incorporated and maintains its principal place of business in Taiwan. Thus, it cannot properly be considered "at home" in Georgia.

That leaves specific personal jurisdiction. This theory hinges "on an affiliation between the forum and the underlying controversy." *Goodyear*, 64 U.S. at 919 (citation omitted). *See also Ford*, 141 S. Ct. at 1024 ("Specific jurisdiction is

different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims."). The inquiry is two-fold: "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). Georgia's long-arm statute must be considered independently, as it "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010) (interpreting *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa*, 279 Ga. 672 (2005)).

a.    **Sanho's *Prima Facie* Burden**

Sanho has failed to establish a *prima facie* case of personal jurisdiction over MCT under either the long-arm statute or constitutional due process. Sanho's jurisdictional allegations are plagued by their cumulative nature. Sanho makes only sparse, fleeting references to MCT in the Consolidated Complaint. Instead, the pleading repeatedly lumps all four Defendants together under the collective umbrella "Kaijet" without alleging specific acts taken by each. Even more problematic, Sanho fails to articulate a single contact—tangible or intangible—between MCT and Georgia. The largely conclusory allegations are

only directed at the amalgamated, fictitious "Kaijet" and lack the requisite specificity to sustain Sanho's burden. *See Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321, 1331 (N.D. Ga. 2016) (collecting cases). *See also Knieper v. Forest Grp. USA, Inc.*, No. 4:15-cv-0222-HLM, 2016 WL 9450454, at *5 (N.D. Ga. Mar. 3, 2016).

Sanho attempts to justify its group-pleading style by pointing the Court to *Quashie v. Olympus Am., Inc.*, 315 F. Supp. 3d 1329 (N.D. Ga. 2018). In that case, the district court distinguished *Brazil* and found that the plaintiff alleged a *prima facie* case of personal jurisdiction, even though her pleading "[did] not contain allegations tailored to each defendant," but "[made] the very same allegations against" each defendant "without any effort to distinguish between the [ ] entities." *Id*. at 1335. *Quashie* is not persuasive here for two reasons. Most crucially, the *Quashie* court found that the plaintiff "ha[d] included jurisdictional allegations against each defendant." *Id*. Sanho has not done so here. Liberally construed, the only jurisdictional allegation in the Consolidated Complaint specifically relating to MCT reads:

> If and to the extent that Kaijet US, Kaijet Taiwan, MCT, Star View and its owners, officers, [and] directors are separate, then they are co-conspirators in carrying out the plan and each performed several overt acts in furtherance of that plan. For example, Kaijet Taiwan contends that it manufactures the infringing devices; Star View, MCT, Kaijet US and Kaijet Taiwan import the

> infringing devices into Georgia; and MCT, Kaijet Taiwan and Kaijet US sell and offer to sell the infringing devices in the United States and in Georgia. All of them participated in the various concept and development phases and all aided and abetted the other in fulfilling their responsive roles in executing the joint plan. Kaijet and its alter ego entities directly and indirectly infringed on Plaintiff's intellectual property.[17]

Absent is a single non-conclusory factual allegation plausibly stating that MCT has even the most basic connection to, or contact with, Georgia. *See Iqbal*, 556 U.S. at 681 (conclusory allegations are "not entitled to be assumed true"). This violates the fundamental tenet that the jurisdictional contacts of each defendant be evaluated separately. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Sanho's group-pleading style obfuscates the Court's ability to do so here.

The *Quashie* court additionally found important that none of the defendants had "submitted an affidavit challenging [p]laintiff's jurisdictional allegations." *Quashie*, 315 F. Supp. 3d at 1335. In this Court's view, that inquiry is not appropriate at the threshold stage; *i.e.*, whether Sanho's factual allegations—treated as true—are enough to establish a *prima facie* case of jurisdiction. *See Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 849 (11th Cir. 2020) ("[T]he plaintiff bears the initial burden of alleging in the complaint sufficient facts

---

[17]   ECF 204, ¶ 11.

to make out a *prima facie* case of jurisdiction. If the plaintiff doesn't meet his burden, the district court doesn't go to the second and third steps of the burden-shifting process, and the motion should be granted."). In any event, *Quashie* is also not on point because, as discussed below, MCT has proffered evidence contradicting Sanho's allegations. Accordingly, Sanho has not met its *prima facie* burden. This alone is enough to grant MCT's motion to dismiss.

### b.    Sanho's Jurisdictional Evidence

Even if, *arguendo*, the Court found Sanho's allegations sufficient to establish a *prima facie* case of personal jurisdiction, such allegations are not supported by the evidence as to survive this motion to dismiss.

### i.    The Georgia Long-Arm Statute

The long-arm statute only reaches a non-defendant whose conduct brings it within the coverage of one of the six subsections of O.C.G.A. § 9-10-91. In the Consolidated Complaint, Sanho contends MCT is subject to jurisdiction under any of the first three subsections:

> A court of this state may exercise personal jurisdiction over any non[-]resident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;

> (2) Commits a tortious act or omission within this state,
> except as to a cause of action for defamation of character
> arising from the act;
>
> (3) Commits a tortious injury in this state caused by an
> act or omission outside this state if the tort-feasor
> regularly does or solicits business, or engages in any
> other persistent course of conduct, or derives substantial
> revenue from goods used or consumed or services
> rendered in this state.

O.C.G.A. § 9-10-91(1) to (3). The Court must construe and interpret the long-arm

statute literally. *Diamond Crystal*, 593 F.3d at 1259.

### 1.    O.C.G.A. § 9-10-91(1)

The "transacts any business" provision in subsection (1) permits the exercise

of personal jurisdiction over a non-resident defendant if:

> (1) the non[-]resident defendant has purposefully done
> some act or consummated some transaction in this state,
> (2) if the cause of action arises from or is connected with
> such act or transaction, and (3) if the exercise of
> jurisdiction by the courts of this state does not offend
> traditional fairness and substantial justice.

*Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517–18 (2006). The scope of

subsection (1) reaches "to the maximum extent permitted by procedural due

process." *Innovative Clinical*, 279 Ga. at 675.

As noted, Sanho does not plausibly allege MCT has transacted any business

in Georgia. At best, Sanho alleges "Kaijet . . . transacts business that constitutes the

acts of infringement complained of in this judicial district" and has "engaged in a

scheme whereby it designs, develop[s], manufacturers, markets, distributes, and

sells the infringing devices in Georgia."[18] MCT presents evidence directly refuting

these allegations. According to MCT's CEO Pei-Chung (James) Liu:

> MCT does not make, use, offer to sell, sell, or import any
> products in Georgia and does not engage in any activities
> in Georgia. MCT does not currently and has never
> owned, leased or maintained any real property in
> Georgia. MCT does not have employees, representatives
> or agents in Georgia. MCT is not (nor has ever) registered
> with the Georgia Secretary of State to act or transact
> business in Georgia. MCT has never paid or owed
> corporate income taxes to the State of Georgia and has
> never maintained (or needed to maintain) a taxpayer
> identification address, bank account, or telephone listing
> in Georgia.[19]

Sanho does not submit evidence directly refuting James Liu's declaration.

Rather, Sanho argues James Liu's declaration is not credible. But credibility

determinations are not within the Court's purview at this stage.

Sanho also points to a series of emails it contends was exchanged by various

employees of MCT. It is true that, for subsection (1), "a defendant need not

physically enter the state," as "a non[-]resident's mail, telephone calls, and other

---

18   ECF 204, ¶¶ 4, 8.

19   ECF 236-1, ¶ 6.

intangible acts, though occurring while the defendant is physically outside of Georgia, must be considered." *Diamond Crystal*, 593 F.3d at 1264. This includes emails. *See POWERbahn, LLC v. Found. Fitness LLC*, No. 1:17-cv-2965-AT, 2020 WL 1467248, at *5–*6 (N.D. Ga. Jan. 29, 2020); *Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC*, No. 1:16-cv-949-MHC, 2016 WL 9454418, at *3 (N.D. Ga. Dec. 28, 2016). Unlike the issue addressed in the Court's prior Order concerning KaiJet Taiwan,[20] however, Sanho's proffered emails as to MCT are inconclusive and unpersuasive. It is ostensibly impossible to discern where these emails—largely exchanged between a host of users with @j5create.com addresses—originated or were directed. Moreover, although some emails tangentially discuss the disputed products, none of them relate to MCT conducting any business in Georgia. In fact, it appears that only one email chain concerns a message initiated by an employee of MCT. This is not enough to establish personal jurisdiction under subsection (1).

### ii.    O.C.G.A. § 9-10-91(2)

To assert jurisdiction under subsection (2), a plaintiff must show the defendant "commit[ted] a tortious act or omission within" Georgia. O.C.G.A. § 9–10–91(2). A tortious act or omission occurs "either where the allegedly negligent

---

[20]  *See* ECF 185.

act or omission was made . . . or where the damage was sustained . . . [but] not at the place of the economic consequences of that inquiry." *Gee v. Reingold*, 259 Ga. App. 894, 897 (2003) (quoting *Atlanta Propeller Svc. v. Hoffman GmbH & Co. KG*, 191 Ga. App. 529, 530 (1989)). In the Consolidated Complaint, Sanho alleges "Kaijet . . . committed the tortious acts of infringement complained of in this judicial district [and] committed a tortious injury in Georgia caused by an act occurring outside [ ] Georgia."[21] In response, MCT presents evidence that all of its relevant activities concerning the disputed products—including manufacturing and sales—occurred in Taiwan.[22] Sanho offers no direct evidence to the contrary. Sanho points to James Liu's admission that "MCT is aware that KaiJet US sells certain products that [MCT] manufactures in the U.S."[23] But this is not evidence that MCT itself committed a tort within Georgia. Sanho has not satisfied subsection (2).

### iii.    O.C.G.A. § 9-10-91(3)

To determine if personal jurisdiction is proper under subsection (3) of the long-arm statute:

---

[21]    ECF 204, ¶ 4.

[22]    ECF 236-1, ¶ 5.

[23]    *Id*. ¶ 11.

> Georgia courts consider many factors including—but not limited to—whether a defendant (1) regularly does business or solicits business within Georgia; (2) engages in a persistent course of conduct within Georgia; (3) derives substantial revenue from services rendered within Georgia; (4) has employees located within Georgia; or (5) is authorized to do business in Georgia.

*LABMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 845 (11th Cir. 2013) (citing *Gust v. Flint*, 257 Ga. 129, 129 (1987); *ETS Payphone, Inc. v. TK Indus.*, 236 Ga. App. 713, 715–16 (1999)).

In the Consolidated Complaint, Sanho alleges that "KaiJet regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered [in] Georgia."[24] As stated above, MCT submits evidence that: (1) it does not make, use, sell, or import products in Georgia; (2) it is not registered to transact business in Georgia; and (3) it has never paid taxes or maintained property in the State.[25] Sanho does not respond with direct evidence to the contrary. Thus, Sanho has not met subsection (3). *See LABMD*, 509 F. App'x at 845 ("[Defendant] is not registered to do business in Georgia, has no employees or customers in Georgia, derives no revenue from business activities in Georgia, owns no Georgia property, and pays

---

[24]   ECF 204, ¶ 4.

[25]   ECF 236-1, ¶ 6.

no Georgia taxes. [Defendant's] contact with Georgia consisted of one phone call and nine emails to [plaintiff]. Such contact is not enough under Georgia law to subject [defendant] to personal jurisdiction in Georgia courts.").

### c.   Constitutional Due Process

Because Sanho failed to establish personal jurisdiction over MCT under Georgia's long-arm statute, the Court need not analyze whether the exercise of personal jurisdiction would be consistent with constitutional due process. *See FisherBroyles, LLP v. Juris L. Grp.*, No. 1:14-cv-1101-WSD, 2015 WL 630436, at \*6 (N.D. Ga. Feb. 12, 2015). Nonetheless, the Court briefly notes that Sanho has likewise not met its burden here either.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a non[-]resident defendant to a judgment of its courts." *Walden*, 571 U.S. at 283 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Under due process principles, the Court may "exercise specific jurisdiction over the defendant if the cause of action 'arises out of' or 'relates to' the defendant's in-state activity." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360–61 (Fed. Cir. 2006) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)). This requires the existence of "sufficient 'minimum contacts' such that maintenance of the suit does not offend 'traditional notions of

fair play and substantial justice.'" *Id.* at 1361 (quoting *Burger King*, 471 U.S. at 476–78). To guide this inquiry, the Federal Circuit had formulated a three-part test: whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Id.* at 1363.[26]

To reiterate, Sanho has not made out a *prima facie* case of personal jurisdiction that would satisfy the parameters of constitutional due process. And even if the Court found its allegations sufficient, *arguendo*, MCT has submitted direct evidence contradicting this theory. Sanho does not point to contrary evidence. At best, Sanho offers a limited number of inconclusive emails that do not establish that MCT had any purposeful contacts with Georgia. In sum, personal jurisdiction is additionally lacking under the principles of constitutional due process.

### d.    Sanho's Alter Ego Allegations Are Insufficient to Establish Personal Jurisdiction Over MCT.

Sanho devotes several paragraphs in the Consolidated Complaint to an alter ego theory of personal jurisdiction over the separate KaiJet US, KaiJet Taiwan,

---

[26]   This test comports with the Eleventh Circuit's approach. *See, e.g., Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

MCT, and Star View entities.[27] "For purposes of specific personal jurisdiction, the contacts of [one entity] may be imputed to the defendant under [ ] an . . . alter ego theory." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015).[28] But the Federal Circuit has cautioned that "the corporate form is not to be lightly cast aside" and "should be recognized and upheld, unless specific, unusual circumstances call for an exception." *3D Sys., Inc. v. Aarotech Lab'ys, Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998). *See also RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1301–02 (N.D. Ga. 2013) ("An alter ego theory of personal jurisdiction generally provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.").

It is well-established that "as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be

---

[27]  ECF 204, ¶¶ 4, 7–10.

[28]  This principle is likewise acknowledged by the Eleventh Circuit. *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021) ("Federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.").

attributed to the other." *Brazil*, 249 F. Supp. 3d at 1332. *See also Amason v. Whitehead*, 186 Ga. App. 320, 322 (1988) ("Because the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders the mere operation of corporate business does not render one personally liable for corporate acts.") (citation omitted). As summarized by the court in *Brazil*:

> Under Georgia law, ownership of a subsidiary by an out-of-state parent corporation without more is insufficient to obtain personal jurisdiction of the parent corporation. For a court to exercise personal jurisdiction over a parent because of its subsidiaries' activities, a plaintiff must show that the corporate form was simply a formality, and that the incorporation of the subsidiaries was a sham or that it was used to defeat a public convenience, to justify wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard of the corporate entities.

249 F. Supp. 3d at 1332. *See also Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1329 (N.D. Ga. 2014).

Here, Sanho has failed to establish a *prima facie* case of personal jurisdiction on the basis of an alter ego theory. Sanho again relies on group-pleading to summarily conclude that all four "Kaijet" entities are mere instrumentalities of one another. However, Sanho does not provide the requisite supporting details.

For example, according to Sanho, "all of Kaijet's alter egos are owned, controlled and financed by the same persons":

> [T]here is such unity of interest and ownership that separate personalities of Kaijet no longer exist and failure to disregard their separate identities would result in fraud and/or injustice. For example officers, directors, and owners or Kaijet entities are the same, and these overlapping individuals exercise control over the internal affairs and/or daily operations of the various Kaijet entities. . . . Kaijet conducts activities in the United States and Georgia through and in concert with its alter ego entities. The overlapping officers, directors, and owners directly exercise control of Kaijet and its alter ego entities, and vice versa, and directly control affiliated Kaijet entities in Europe, Canada, and elsewhere abroad.[29]

But absent are allegations or evidence as to the basic components of alter ego liability. Most critically, Sanho does not address the capitalization or solvency of any of the "Kaijet" entities. Further, Sanho articulates no details on MCT's compliance with corporate formalities, corporate records, or actual corporate functioning in relation to its officers and directors.

Sanho fares no better on consideration of the evidence. Sanho relies heavily on the connection between Jessica Liu—the CEO of KaiJet US—and James Liu—the CEO of MCT. Indeed, the evidence shows that: (1) James Liu is Jessica Liu's

---

[29]   ECF 204, ¶¶ 9–10.

father; (2) Jessica Liu owns a non-controlling 5% share of MCT; and (3) Jessica Liu maintains an email address associated with MCT. But that does not support an alter ego finding for purposes of personal jurisdiction. *See, e.g., Pazur v. Belcher*, 290 Ga. App. 703, 708 (2008) ("Sole ownership of a corporation by one person or another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends. There must be evidence of abuse of the corporate form."). In sum, Sanho has not met its burden for the Court to disregard the separate corporate structures and exercise personal jurisdiction over MCT in this forum under an alter ego theory.

> e.     **Jurisdictional Discovery Is Not Appropriate.**

As a final argument, Sanho asserts it should be permitted to take jurisdictional discovery in the event the Court finds it lacks personal jurisdiction over MCT. A plaintiff has a qualified right to conduct jurisdictional discovery if there are genuine issues in dispute. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 n.7 (11th Cir. 1982). Jurisdictional discovery is appropriate to allow the plaintiff "to discover facts that would support [its] allegations of jurisdiction." *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984). "Nonetheless, a district court may properly refuse or limit jurisdictional discovery if the plaintiff has not made

a sufficient showing that there may be a basis for exercise of jurisdiction, or if the proposed discovery seems unlikely to shed light on the jurisdictional question." *Cold Smoke Cap., LLC v. Gross*, No. 1:11-cv-3558-WSD, 2012 WL 3612626, at *8 (N.D. Ga. Aug. 21, 2012). *See also Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.*, 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013) ("The purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction. It is not a vehicle for a fishing expedition in hopes that discovery will sustain the exercise of personal jurisdiction.").

Between the Original and Consolidated Complaints, this action has been pending for over three years. Extensive discovery has changed hands. This has been augmented by Sanho's attempt to support its jurisdictional allegations over MCT with substantial evidence collected from other parties. At this stage, it is highly unlikely that jurisdictional discovery will shed further light on MCT's contacts or ties with Georgia. In sum, Sanho has not offered sufficient justification for jurisdictional discovery. *See Atlantis Hydroponics*, 915 F. Supp. 2d at 1380 (finding plaintiff not entitled to jurisdictional discovery based on its "hunch that there may be facts—or a desire to find out if there are any facts—that justify the exercise of personal jurisdiction").

## IV.    Conclusion

Sanho's motion to dismiss [ECF 197] is **GRANTED IN PART** and **DENIED IN PART**. MCT's motion to dismiss [ECF 236] and motion to seal [ECF 255] are **GRANTED**. The Clerk is **DIRECTED** to terminate MCT as a party to this case.

**SO ORDERED** this the 9th day of June 2021.

Steven D. Grimberg
United States District Court Judge