**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SANHO CORPORATION,<br><br>        Plaintiff,<br><br>                v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., dba "j5create;" and DOES 1-100,<br><br>        Defendants, | Civil Action No. 1:18-cv-05385-SDG |
| SANHO CORPORATION,<br><br>        Plaintiff,<br><br>                v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY ITNERNATIONAL CORPORATION; MAGIC CONTROL TECHNOLOGY; STAR VIEW GLOBAL LIMITED, each dba "J5Create;" and DOES 1-10,<br><br>        Defendants. | Civil Action No. 1:20-cv-02150-SDG [Consolidated Case] |

## OPINION AND ORDER

This matter is before the Court on the Final Report and Recommendation

(R&R) of Special Master William H. Needle [ECF 282, as amended ECF 284]

regarding the claim construction of certain terms in U.S. Patent No. 10,572,429

(the '429 Patent). On September 28, 2021, Plaintiff Sanho Corporation (Sanho) and

Defendant Star View Global Limited (Star View) timely filed objections to the R&R.[1] For the following reasons, Plaintiff's and Defendant's objections are **OVERRULED,** and the R&R is **ADOPTED** in its entirety.

## I.    BACKGROUND

This is a dispute concerning, *inter alia*, the alleged infringement of the '429 Patent.[2] The '429 Patent is directed to "a port extension apparatus for providing better usage and utilization efficiency ports of end-user devices," such as mobile phones, tablet computers, and portable computers.[3] The parties dispute the meaning of certain terms used in the '429 Patent.[4] On January 20, 2021, the Court appointed William H. Needle, Esq. as Special Master to preside over claim construction in this case under *Markman v. Westview Instruments, Inc. (Markman II)*, 517 U.S. 370 (1996).[5] After initial briefing, a hearing, and additional post-hearing briefing, the Special Master issued his R&R on September 5, 2021,[6] amending it

---

[1]    ECF 288; ECF 289.

[2]    Finding no clear error, the Court incorporates by reference the R&R's description of the functionality of the underlying patents and the pertinent facts of this case. Fed. R. Civ. P. 72(b).

[3]    ECF 204-1.

[4]    ECF 284.

[5]    ECF 226.

[6]    ECF 282.

slightly on September 22.[7] On September 28, both Sanho and Star View objected to parts of the Special Master's recommendations.[8] Sanho responded to Star View's objections,[9] and Defendants KaiJet Technology International Corporation, Inc. and KaiJet Technology International Limited, Inc. (collectively KaiJet) filed a response in opposition to Sanho's objections.[10]

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing a Special Master's Final R&R, the Court "must decide *de novo* all objections to findings of fact made or recommended by a master." Fed. R. Civ. P. 53(f)(3). The Court must likewise "decide *de novo* all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4). After review, the Court may "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit" the R&R "to the master with instructions." Fed. R. Civ. P. 53(f)(1). Absent objection, the Court reviews a Special Master's factual findings for clear error. *Martin v. Univ. of S. Ala.*, 911 F.2d 604, 608 (11th Cir. 1990).

---

[7]   ECF 284.

[8]   ECF 288; ECF 289.

[9]   ECF 290.

[10]   ECF 292.

**B.      Claim Construction**

Patent infringement analysis begins with a construction of the asserted patent claims to determine their scope and meaning. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581–82 (Fed. Cir. 1996) ("A literal patent infringement analysis involves two steps: the proper construction of the asserted claim and a determination as to whether the accused method or product infringes the asserted claim as properly construed.").[11] "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). Claim construction is a "question of law, to be determined by the court." *Markman II,* 517 U.S. at 384 (quoting *Winans v. Denmead*, 56 U.S. 330, 338 (1853)). The Court retains "wide latitude" in construing claims and need not "proceed according to any particular protocol" if it "construes the claims to the extent necessary" relative to the case. *Ballard Med. Prod. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001).

---

[11]    The Federal Circuit provides controlling authority for issues of substantive patent law. *Research Corp. Techs. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008) ("The Federal Circuit applies its own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of our sister circuits to non-patent issues.").

To construe patent claims, the Court's "analytical focus must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to 'particularly point out and distinctly claim the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112, ¶ 2 (now codified as § 112(f))) (brackets omitted). "[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics*, 90 F.3d at 1582). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Id.* at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

However, when the meaning of a claimed term is not "immediately apparent," the Court must look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* (quoting *Innova*, 381 F.3d at 1116) (internal quotation marks omitted).

These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence." *Id*.

Intrinsic evidence, such as the patent claims, specification, and prosecution history, "is the most significant source of the legally operative meaning of disputed claim language." *Vitronics*, 90 F.3d at 1582. In particular, the specification "may act as a sort of dictionary, which explains the invention and may define terms used in the claims." *Markman v. Westview Instruments, Inc. (Markman I)*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). Only if a claim term remains ambiguous after reviewing the intrinsic evidence may the Court consider extrinsic evidence, such as expert testimony, dictionaries, and treatises. *Vitronics Corp.*, 90 F.3d at 1584 ("No doubt there will be instances in which intrinsic evidence is insufficient to enable the court to determine the meaning of the asserted claims, and in those instances, extrinsic evidence . . . may also properly be relied on to understand the technology and to construe the claims.").

## III.        DISCUSSION

### A.   Undisputed Recommendations

The Special Master recommends construction of the following terms:

> 1. "USB control unit" to mean its plain and ordinary meaning.

2. "Data transmission port" to mean its plain and ordinary meaning.

3. "Operatively connecting" to mean "joining to facilitate direct data transmission."

4. "Data port" to mean its plain and ordinary meaning.[12]

No party has raised an objection to these recommendations. After review, the Court finds no clear error; the R&R is adopted as to the meaning of these terms.

## B. Disputed Recommendations

### 1. Definition of "Person of Ordinary Skill in the Art"

"A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention." *Innova*, 381 F.3d at 1116. This inquiry "provides an objective baseline from which to begin claim interpretation." *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1372–73 (Fed. Cir. 2005) (quoting *Phillips*, 415 F.3d at 1313). A person of ordinary skill in the art (POSITA) is "deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

As the R&R notes, Sanho and KaiJet agreed that the qualification of a POSITA in this case is "a person having at least an undergraduate degree in

---

12   ECF 284, at 11.

electrical engineering, computer engineering or comparable field of study, with 1–2 years of experience researching, designing, developing, and/or testing computer hardware components and peripherals."[13] Sanho and KaiJet also agreed that their respective experts were at least POSITAs at the time of the '429 Patent.[14] Star View did not proffer any opinion regarding the POSITA standard or any expert's qualification as a POSITA, either in its briefs or during the claim construction hearing. The Court finds the POSITA definition articulated in the R&R is correct and adopts it in full.

### 2. Definition of Claimed Terms

The Special Master recommends the following construction of claim terms:

1. "Main port module for connecting to an end-user device having first and second port units" to mean "a component interacting with a larger system and having a defined boundary distinct from other modules in the system, wherein the component contains a first and second port unit for directly connecting to an end-user device."[15]

2. "Data port module" to mean "a component interacting with a larger system and having a defined boundary distinct from other modules in the system, wherein the component has an interface for transmitting data between the to-be-

---

[13]  *Id.* at 7.

[14]  *Id.*

[15]  *Id.* at 20.

connected device and the end-user device and directly connects to the to-be-connected device."[16]

3.  "Video port module" to mean "a component interacting with a larger system and having a defined boundary distinct from other modules in the system, wherein the component has an interface for transmitting to-be-displayed information from the end-user device to the to-be-connected device and directly connects to the to-be-connected device."[17]

4.  "Data transmission control module" to (1) not be subject to 35 U.S.C. § 112(f) (as a means-plus-function term), (2) recite sufficiently definite structure, and (3) mean "a component interacting with a larger system and having a defined boundary distinct from other modules in the system that electronically transfers information between the end-user device and the to-be-connected device."[18]

5.  "USB conversion unit" to (1) not be subject to 35 U.S.C. § 112(f) (as a means-plus-function term), (2) recite sufficiently definite structure, and (3) mean "a USB unit that converts a data port module between a transmission mode and a power supply mode."[19]

---

[16]  *Id.* at 21.

[17]  *Id.* at 22.

[18]  *Id.* at 34–35, 39.

[19]  *Id.* at 44–45.

Sanho objects to the recommended constructions of the terms "main port module," "data transmission control module," and "USB conversion unit." Star View objects to the recommended constructions of the terms "data transmission control module" and "USB conversion unit." After a *de novo* review, the Court finds the R&R's proposed constructions correct and adopts them in full.

### 3.   Main Port Module

Sanho objects to the R&R's construction of the term "main port module" because the proposed construction that the module "*contains* a first and second port unit" is too open-ended.[20] Sanho argues that the "main point module" should be construed to have *exactly* two port units, and only two port units, because the words of the literal claim state that the module has "first and second port units."[21] While claim language is the primary tool for determining the scope of legal protection, the patent specification and its description of an invention also provide useful guidance for construing a claim. *Markman I*, 52 F.3d at 979 ("Claims must be read in view of the specification, of which they are a part."); *Vitronics*, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a

---

[20]   ECF 288, at 2 (emphasis added).

[21]   *Id.* at 5–10.

disputed term."). As such, the '429 Patent's specification is critical for determining whether the "main port module" is limited to exactly two port units.

The R&R and KaiJet's opposition to Sanho's objections both note that the specification of the '429 Patent describes the "main port module" as "includ[ing]" a first and second port.[22] Inclusive and open-ended transitional terms, such as "comprising," "including," "containing," and "characterized by," do not exclude additional unrecited elements. MANUAL OF PATENT EXAMINING PROCEDURE § 2111.03 (I.). *See also, e.g.*, *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' . . . indicates that the claim is open-ended and allows for additional steps."); *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007) ("[T]he term 'comprising' is well understood to mean 'including but not limited to.'"). Therefore, the claim language here, read in light of the specification's description of the module as *including* a first and second port, does not *exclude* the possibility that the module may have additional port units, and Sanho's argument on this point is declined.

Sanho also contends that the term "main port module" should be limited to having only two port units because Figure 2 of the '429 Patent specification

---

[22]   ECF 284, at 18; ECF 292, at 2.

contains an embodiment of the invention where the main port module has only two ports.[23] The Court is not convinced.

"Although the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. An embodiment of the claimed invention is not necessarily the only possible embodiment. *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1342 (Fed. Cir. 2001). Figure 2 of the '429 Patent shows one, though not the only possible, embodiment of the claimed invention. Such an embodiment is "not meant to represent 'the' invention or to limit the scope of . . . the claims themselves." *Id.* Absent clear disavowal—such as the specific clarification that the portrayed embodiment is the *only* embodiment—the specification and the included drawings do not limit the scope of the patent claims. *Id.*; *see also Retractable Techs., Inc v. Becton, Dickinson, & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("To disavow claim scope, the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'") (quoting *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009)). Sanho has failed to show any indication of a clear disavowal of

---

[23]   ECF 288, at 2–3.

claim scope anywhere within the '429 Patent's specification. So, its argument to this end also fails.

Finally, Sanho argues that the module should be limited to having only two ports because of the '429 Patent's prosecution history.[24] More specifically, Sanho asserts that the Applicant's prosecution arguments distinguishing the invention from two-ported prior art based on the depicted layout of the module in Figure 2 was "a clear and convincing disclaimer of the scope of the system."[25] The doctrine of prosecution disclaimer bars "patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *see also Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966) ("[C]laims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent."). For prosecution disclaimer to limit the scope of the claims, the patentee must have "unequivocally and unambiguously disavow[ed] a certain meaning to obtain a patent." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013); *see, e.g., Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 956

---

[24]   *Id.* at 4.

[25]   *Id.* at 3–10.

(Fed. Cir. 2000) (finding that the patentee disavowed that the invention had "a groove width greater than that disclosed in the prior art" by arguing during prosecution that the invention was distinct from prior art because it had "a much narrower groove"). Here, the prosecution history lacks the unequivocal and unambiguous disavowal of claim scope required for prosecution disclaimer to apply. The '429 Patent was not distinguished from prior art on the grounds that it had exactly two port units—rather, the patentee demonstrated that the "interior configuration of the port extension apparatus" of the claimed invention was different from that of a similarly two-ported prior art.[26] Sanho's arguments regarding prosecution disclaimer fail to show the requisite disavowal and therefore, necessarily fail.[27]

---

[26] ECF 284, at 17.

[27] Sanho raised a similar argument before the Special Master, who concluded that prosecution history estoppel did not apply. "Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution." *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1322 (Fed. Cir. 2013). To limit claim scope under prosecution history estoppel, "the prosecution history must evince a clear and unmistakable surrender of subject matter." *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003). Here, the prosecution history lacks the "clear and unmistakable" disavowal of claim scope required to restrict the claim's scope, just as it did for prosecution disclaimer. *Id.* Therefore, under either theory, Sanho's argument would fail.

### 4. Data Transmission Control Module

Sanho argues that the R&R's proposed definition of "data transmission control module" is incorrect because the R&R does not adopt Sanho's proposed construction: "a data transmission controller performing in accordance with an industry standard data transmission protocol."[28] The R&R expressly considers and rejects Sanho's construction, finding that although it is "technically correct," the proposed construction would likely not be helpful to a jury because it repeats "data transmission" within itself and uses terms, such as "industry standard" and "protocol," which are not defined by any intrinsic evidence related to the '429 Patent.[29] After a *de novo* review, the Court agrees with the Special Master's reasoning and conclusion. *Sliding Door Co. v. KLS Doors, LLC*, 2014 WL 12591675, at *13 n.19 (explaining the court's decision to adopt a "simpler definition" of claim terms after both parties proposed "unwieldy and wordy construction[s] which will not help the jury define the disputed term").

Disputing the construction of the same term, Star View objects on the basis that "data transmission control module" should be construed as a "means-plus-

---

[28]   ECF 288, at 10.

[29]   ECF 284, at 37–39.

function" term and found to be indefinite and therefore, invalid.[30] Star View faults

the R&R for overly relying on Sanho's expert declaration that a POSITA would

understand a "data transmission control module" to be a structure in the art and

contends that the specification is silent on the structure for the "data transmission

control module."[31] The R&R expressly considered and rejected this argument,

finding that it was not a means-plus-function claim and that sufficiently definite

structure was recited.[32]

In contrast to traditional claims, functional claims define an invention based

on *what it does* rather than *what it is*. Means-plus-function claims are a subset of

functional claims, expressly authorized under and subject to 35 U.S.C. § 112(f). *See*

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015). "In enacting

[35 U.S.C. § 112(f)], Congress struck a balance in allowing patentees to express a

claim limitation by reciting a function to be performed rather than by reciting

structure for performing that function, while placing specific constraints on how

such a limitation is to be construed, namely, by restricting the scope of coverage

to only the structure, materials, or acts described in the specification as

---

[30]   ECF 289, at 4–6.

[31]   *Id.*

[32]   ECF 284, at 29–35.

corresponding to the claimed function and equivalents thereof." *Id.* A claim is subject to § 112(f), and therefore is a means-plus-function claim, when it fails to recite sufficient structure for performing a function, thereby claiming only a function to be performed. Means-plus-function analysis "must be made under the traditional claim construction principles, on an element-by-element basis, and in light of evidence intrinsic and extrinsic to the asserted patents." *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007 (Fed. Cir. 2018).

In deciding whether claims recite insufficient structure for performing a function, the Federal Circuit has acknowledged "the importance of the presence or absence of the word 'means.'" *Williamson*, 792 F.3d at 1348. "[T]he use of the word 'means' in a claim element creates a rebuttable presumption" that 35 U.S.C. § 112(f) applies and, therefore, that the claim is a means-plus-function claim. *Id.* Conversely, "the failure to use the word 'means' also creates a rebuttable presumption" that 35 U.S.C. § 112(f) does not apply. *Id.* However, the presence (or absence) of the term "means" is not determinative as to whether a claim limitation fails to recite sufficiently definite structure. *Id.* "[A] claim limitation [that] uses a similar 'nonce word . . . can operate as a substitute for "means" in the context of'" § 112(f). *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1341 (Fed. Cir. 2019). Such words include module, mechanism, element, and device. *Id.* Nonce words

may rebut the presumption against means-plus-function for claims which do not use the term "means." *Id.*

Contrary to Star View's allegation that "data transmission control module" is a means-plus-function term, the specification and the claim language depict adequate structure of the "data transmission control module" in sufficient detail such that it is not a means-plus-function term. The '429 Patent specification not only describes the control module as being composed of a USB control unit, USB conversion unit, memory card conversion unit, mode control unit, and mode conversion unit, but also includes a depiction in the proposed embodiments of the module integrated within the entire invention.[33] Within this depiction and in the claim language itself, the inputs and outputs of the module are laid out.[34] *Corus Realty,* 2019 WL 2766508 at *8 (holding that a claim was not a means-plus-function claim when the patent specification stated the inputs and outputs of the unit, portrayed it in an embodiment, and described how the element interacted with other components of the invention). After a *de novo* review, the Court agrees with the Special Master's reasoning and conclusion. Therefore, this objection is overruled.

---

[33]   ECF 204-1, at 5, 7 col. 4 l.16–19.

[34]   *Id.*

Star View moved to strike from the record slides from Sanho's hearing presentation and accompanying arguments regarding the construction of the term "data transmission control module." The Special Master allowed briefing on Sanho's hearing arguments and recommends denying Star View's motion to strike in view of the reasonable steps that have been made to ameliorate any possible prejudice to Star View.[35] No party has objected to that recommendation, and the Court finds no clear error in it. The R&R is adopted with respect to this issue, and Star View's motion to strike Sanho's presentation slides and accompanying arguments is denied.

### 5. USB Conversion Unit

Sanho objects to the R&R's recommended definition of the term "USB conversion unit," arguing that the proper interpretation would define the unit as a "converter" which implements "USB standards as detailed in the USB Specifications."[36] Similar to its approach to "data transmission control module," the R&R does not dispute the accuracy of this definition but still chooses to adopt a construction which stays true to the claim language and the patent's description

---

[35] *Id.* at 41.

[36] ECF 288, at 14–17.

of the invention while avoiding overly technical terms.[37] The Court adopts the Special Master's recommendation for the same reasons, and overrules Sanho's objection.

Star View objects to the R&R's recommended construction of this term, contending that it is a means-plus-function term and is indefinite.[38] At issue is whether a POSITA would have known the structure of the "USB conversion unit" at the time of the invention. *See Williamson*, 792 F.3d at 1348 (noting whether a POSITA would have understood the words of the claim to have "a sufficiently definite meaning as the name for the structure" is an essential inquiry for means-plus-function analysis); *accord Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1020 (Fed. Cir. 2017).

Sanho's and Star View's experts addressed whether a POSITA would have known the structure of the "USB conversion unit" at the time of the invention, reaching different conclusions.[39] Their differing determinations stemmed from a difference in experience, [40] though Star View's expert did not outrightly disagree

---

[37]   ECF 284, at 45.

[38]   ECF 289, at 6–7.

[39]   ECF 284, at 41–44.

[40]   *Id.* at 43.

with Sanho's expert that a POSITA would have known the structure of the "USB conversion unit."[41] Notably, Star View's expert denied the possibility of a USB parallel port adaptor, a component of the unit, being used to charge a mobile phone, a functionality claimed within the '429 Patent.[42] *See Phillips*, 415 F.3d at 1318 ("[A] court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'") (quoting *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)). As such, Star View's expert's experience was limited to USB adaptors unable to function within the embodiments of the '429 Patent, and Sanho's expert's experience was more reflective of what a POSITA would have understood regarding the "USB conversion unit" referred to in the '429 Patent.[43] Following a *de novo* review, and because Star View's expert did not adequately address the key inquiry, the Court overrules Star View's objection.

---

[41]   *Id.* at 43–44; ECF 204-1, at 8 col. 5 l.17–23.

[42]   ECF 284, at 43–44; ECF 204-1, at 8 col. 5 l.17–23.

[43]   ECF 284, at 44.

IV.    **CONCLUSION**

The Special Master's R&R [ECF 284, 282] is **ADOPTED** in its entirety. Sanho

and Star View's objections [ECF 288, 289] are **OVERRULED**.

**SO ORDERED** this 1st day of February, 2022.

Steven D. Grimberg
United States District Court Judge