# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| SANHO CORPORATION, | **C.A. No. 1:18-cv-05385-SDG** |
| Plaintiff, |  |
| v. | Consolidated with<br>C.A. No. 1:20-cv-02150-TCB |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., and KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC., doing business as "J5Create"; and DOES 1-10, | **Jury Trial Demanded** |
| Defendants. |  |

## SANHO CORPORATION'S BRIEF IN OPPOSITION TO KAIJET TECHNOLOGY INTERNATIONAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT [D.E. 325]

## ***Public Version***

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................iii- vi

I.    INTRODUCTION .......................................................................1

II.   KAIJET TAIWAN AND KAIJET U.S. ARE THE SAME
      COMPANY ..............................................................................2

      A. FCC Records Show that the Kaijet U.S. and Taiwan Entities Are the Same
         Company...............................................................................3

      B. Kaijet Taiwan Owns and Controls the UltraDrive Brand in the U.S ......4

      C. Taiwan Owns and Controls the "j5create" Group, Including its U.S.
         Affiliate's Activities ...............................................................4

      D. Kaijet Taiwan Maintains a Corporate Office in Georgia .......................5

      E. Kaijet Taiwan Authorizes Kaijet U.S.'s Operation................................6

      F. Management of Kaijet Taiwan, Kaijet U.S., and j5create Overlap.........7

      G. Kaijet Taiwan Transacted Business in Georgia by Direction the Creation
         and Sales of the Accused UltraDrive Products ......................................8

      H. Kaijet Taiwan Shipped the Ultradrive Products to Atlanta....................9

III.  THE COURT SHOULD DENY KAIJET TAIWAN'S SUMMARY
      JUDGMENT MOTION..............................................................10

      A. Disputes of Material Fact Preclude Resolution of Kaijet Taiwan's
         Extraterritoriality Defenses ......................................................11

      B. Disputed Material Facts Warrant Trial on Copyright Infringement .......13

         1. Kaijet Taiwan Had Access to the Copyrighted Packaging ..............13

i

2.  UltraDrive Packaging is Substantially Similar to the Copyrighted Packaging ...................................................................................15

3.  Extraterritoriality Is No Defense ......................................................18

C.  Kaijet Taiwan Cannot Avoid the Reach of the Lanham Act .................21

D.  Kaijet Taiwan May Not Avoid the Reach of U.S. Patent Law ..............26

E.  Sanho's Pleadings Asserted Indirect Patent Infringement ....................28

F.  Disputed Material Facts Warrant Trial on Whether Kaijet Taiwan and Kaijet U.S. Are Alter Egos................................................................................30

III.  CONCLUSION............................................................................................34

## <u>TABLE OF AUTHORITIES</u>

<u>*Cases*</u>                                                                                  <u>PAGE</u>

*Alpacific S.A. v. Diageo Latin Am. & Caribbean, Inc.*,
    No. 10-CV-23822-CIV, 2012 WL 12844739
    (S.D. Fla. Mar. 28, 2012) .......................................................................... 23, 24

*Architects Collective v. Pucciano & English, Inc.*,
    247 F. Supp. 3d 1322 (N.D. Ga. 2017) ...................................................... 18

*Atlanta Photography, LLC v. Ian Marshall Realty, Inc.*,
    No. 1:13-CV-2330-AT, 2014 WL 11955391 (N.D. Ga. Mar. 7, 2014) ..... 20

*Baby Buddies, Inc. v. Toys R Us, Inc.*,
    611 F.3d 1308 (11th Cir. 2010) .................................................................. 13

*Beal v. Paramount Pictures Corp.*,
    20 F.3d 454 (11th Cir. 1994) ...................................................................... 18

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994) ............................................................. 26, 27

*Brown v. Advantage Eng'g, Inc.*,
    732 F. Supp. 1163 (N.D. Ga. 1990) ........................................................... 30

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
    489 F.3d 1129 (11th Cir. 2007) .................................................................. 20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .................................................................................... 26

*Casella v. Morris*,
    820 F.2d 362 (11th Cir. 1987) .................................................................... 20

*Cf. Rothschild & Co. Continuation Holdings A.G. v. Sklarov*,
    440 F. Supp. 3d 1385 (N.D. Ga. 2020) ...................................................... 12

_Cases_                                                                    **PAGE**

*Commodores Ent. Corp. v. McClary*,
   879 F.3d 1114 (11th Cir. 2018)  ................................................................. 23

*Corwin v. Walt Disney Co*.,
   475 F.3d 1239 (11th Cir. 2007)  ................................................................. 13

*DynCorp Int'l v. AAR Airlift Grp., Inc.*,
   664 F. App'x 844 (11th Cir. 2016) ............................................................. 30

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*.,
   499 U.S. 340 (1991) ................................................................................... 16

*FTC v. Amy Travel Service, Inc.*,
   875 F.2d 564 (7th Cir. 1989) ..................................................................... 19

*GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*,
   782 F. Supp. 763 (W.D.N.Y. 1991) ........................................................... 19

*Harper & Row v. Nation Enterprises*,
   471 U.S. 539 (1985) ................................................................................... 16

*Herzog v. Castle Rock Entm't*,
   193 F.3d 1241 (11th Cir. 1999)  ................................................................. 16

*Hetronic Int'l, Inc. v. Hetronic Germany GmbH*,
   10 F.4th 1016 (10th Cir. 2021)  ................................................................. 22

*Home Legend, LLC v. Mannington Mills, Inc.*,
   No. 4:12-CV-0237-HLM, 2015 WL 12434467 (N.D. Ga. Oct. 5, 2015) ... 13, 15

*In re Edelson*, Bankr.
   No. 08-77595-BEM, Adversary No. 11-05720-BEM, 2013 WL 5145714
   (Bankr. N.D. Ga. July 3, 2013) ................................................................. 31

*Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l, (U.S.A.), Inc*.,
   252 F.3d 1274 (11th Cir. 2001)  ................................................................. 23

iv

<u>*Cases*</u>                                                                    <u>**PAGE**</u>

*Knieper v. Forest Grp. USA, Inc.*,
  No. 4:15-CV-00222-HLM, 2016 WL 9449794 (N.D. Ga. Sept. 12, 2016),
  *order clarified*, No. 4:15-CV-00222-HLM, 2017 WL 3449601
  (N.D. Ga. Jan. 23, 2017) ........................................................................ 30, 31

*LaJoie v. Pavcon, Inc.*,
  146 F. Supp. 2d 1240 (M.D. Fla. 2000) ...................................................... 14

*Leigh v. Warner Bros., Inc.*,
  212 F.3d 1210 (11th Cir. 2000) .................................................................. 13, 18

*Litecubes, LLC v. N. Light Prod., Inc.*,
  523 F.3d 1353 (Fed. Cir. 2008) .................................................................. 28

*MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005) .................................................................. 26, 27

*Najran Co. v. Fleetwood Enters., Inc.*,
  659 F. Supp. 1081 (S.D. Ga. 1986) ............................................................ 30, 31

*N. Am. Philips Corp. v. Am. Vending Sales, Inc*.,
  35 F.3d 1576 (Fed. Cir. 1994) .................................................................... 26

*Olem Shoe Corp. v. Washington Shoe Corp.*,
  591 F. App'x 873 (11th Cir. 2015) ............................................................. 13, 14

*Oravec v. Sunny Isles Luxury Ventures*, L.C.,
  527 F.3d 1218 (11th Cir. 2008) .................................................................. 15

*Paul v. Destito*,
  250 Ga. App. 631, 550 S.E.2d 739 (2001) .................................................. 30

*Pulse Elecs., Inc. v. U.D. Elec. Corp*.
  530 F. Supp. 3d 988 (S.D. Cal. 2021) ......................................................... 28

## *Cases* <span style="float:right">**PAGE**</span>

*Quinn v. Powell*,
   No. 1:21-CV-03163-SDG, 2022 WL 1664554 (N.D. Ga. May 25, 2022) ..... 16

*Rivell v. Priv. Health Care Sys., Inc.*,
   520 F.3d 1308 (11th Cir. 2008) ........................................................................30

*Salas v. Statebridge Co., LLC*,
   No. 1:21-CV-3959-SDG-JCF, 2022 WL 5442903 (N.D. Ga. July 19, 2022),
   *report and recommendation adopted as modified*, No. 121CV03959SDGJCF,
   2022 WL 4596338 (N.D. Ga. Sept. 30, 2022) ................................................. 32, 33

*Spiral Direct, Inc. v. Basic Sports Apparel, Inc*.,
   293 F. Supp. 3d 1334 (M.D. Fla. 2017) ........................................................... 12

*Steele v. Bulova Watch Co.*,
   344 U.S. 280, 281 (1952) ............................................................... *passism*

*Travelers Prop. Cas. Co. of Am. v. Clucis*,
   No. 1:20-CV-00276-SDG, 2022 WL 4773493 (N.D. Ga. Sept. 30, 2022) ..... 30, 31

*United States v. Rodriguez*,
   753 F.3d 1206 (11th Cir. 2014) ....................................................................... 14

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
   556 F.2d 406 (9th Cir. 1977) ........................................................................... 21

## **Statutes**

7 U.S.C. §504 ...........................................................................................................1
15 U.S.C. §1117(a) ..................................................................................................1
35 U.S.C. §289 .........................................................................................................1

NOW COMES Plaintiff Sanho Corporation, and for its brief in opposition to Kaijet Technology International Corporation ("Kaijet Taiwan")'s Motion for Summary Judgment (D.E. 325), shows the Court as follows:

## I.     INTRODUCTION

Sanho brought this case challenging the Kaijet-controlled "j5create" group for knocking off its popular HyperDrive® USB-C hub and power adapter with a functionally and visually equivalent product called the "UltraDrive." Sanho's claims against the UltraDrive include design patent infringement, copyright infringement, trademark infringement, trade dress infringement and related claims of unfair competition. As a remedy to rectify Kaijet's infringement, these causes of action permit the disgorgement of infringer's profits.[1]

The j5create conglomerate comprises Kaijet Taiwan and co-defendant Kaijet Technology International Limited ("Kaijet U.S."), and each Kaijet entity booked sales and profits of the accused UltraDrive products. So, if the instant motion is successful, Sanho would be unable to assert a claim against the ill-gotten gains of a key constituent of j5create -- Kaijet Taiwan – meaning that j5create would still benefit from its counterfeiting activities.

---

[1] *See, e.g.*, 35 U.S.C. §289; 17 U.S.C. §504; 15 U.S.C. §1117(a).

1

Kaijet Taiwan's motion is largely based on the false premise that it has not engaged in U.S. sales. However, as shown herein, the applicable legal and equitable principles at issue in this case militate in favor of the denial of the instant motion when Sanho is given the benefit of all reasonable inferences arising from its evidence. As this Court has already noted in an earlier ruling,[2] Kaijet Taiwan's actions constitute sales transactions in the U.S. Moreover, the case law under the Copyright Act and the Lanham Act clarify that even a foreign shipper of infringing goods into the U.S. may be held accountable extraterritorially under U.S. law. Therefore, the Court should deny Kaijet Taiwan's motion.

## II.    KAIJET TAIWAN AND KAIJET U.S. ARE THE SAME COMPANY.

For good reason, this Court previously found that Kaijet Taiwan and Kaijet U.S. overlap, at least for purposes of discovery. D.E. 185 at 33-37. The former name of Kaijet Technology International Corporation is Kaijet Technology International Limited—the same name as the other Kaijet defendant in this case. Sanho Counterstatement of Material Facts ("SCMF"), ¶1. <u>After</u> this case was brought, on July 12, 2019, Kaijet Taiwan changed its name to Kaijet Technology International Corporation. (Ex. 1) *Id*., ¶2. The corporate structure of Kaijet Taiwan is organized based on geographical divisions within the company. *Id*., ¶3. Its United States division is composed of Kaijet Technology International Limited, Inc. *Id*., ¶4.

---

[2] D.E. 185, at 16-19.

## A.    FCC Records Show that the Kaijet U.S. and Taiwan Entities Are the Same Company.

In response to a FOIA inquiry, the Federal Communications Commission (FCC) determined that "Kaijet International Technology Corporation . . . and Kaijet International Technology Limited, Inc. . . . are the same company, with the former based in New Taipei City, Taiwan and the latter based in Kennesaw, GA." *Id*., ¶8. This finding by the FCC is significant, as the Commission regulates the importation of electronic goods into the United States, including with respect to the Kaijet entities.[3]

Indeed, the Kaijet entities' interactions with the FCC demonstrates that the FCC's determination was correct. Kaijet Taiwan has designated Jessica Liu, also Kaijet U.S.' CEO, as Kaijet Taiwan's manager in FCC registrations since at least 2015. *Id*., ¶5. Kaijet Taiwan has also filed hundreds if not thousands of documents and applications with the Commission through both its Kaijet Taiwan and Kaijet U.S. registration numbers. *Id*., ¶6. For the accused products in question including the JCD382 UltraDrive, Kaijet Taiwan had the importation documents and certificate of conformity prepared. *Id*., ¶7. And Kaijet Taiwan is listed as the applicant for the authorizations to import the accused products in the United States.

---

[3] Kaijet Taiwan is registered in Taiwan as an exporter/importer of goods. *See* D.E. 160-5, ¶3 (and the registered exporter/importer certificate, Ex. A thereto).

3

*Id*. Taken together, the evidence conclusively supports FCC's finding that Kaijet Taiwan and Kaijet U.S. are effectively the same entity. *Id*., ¶8.

### B. Kaijet Taiwan Owns and Controls the UltraDrive Brand in the U.S.

Kaijet Taiwan also declared to the United States Patent and Trademark Office (USPTO) under penalty of perjury that it is engaged in commerce in the United States, attaching photographs of the accused products with its federal government filings. *Id*., ¶9. For example, on February 19, 2019, Kaijet Taiwan, through the direction of Liu, filed a trademark application for the enterprise's trademark "j5Create" and the mark "UltradriveMinidock." *Id*., ¶10. In connection with its trademark applications, Kaijet Taiwan filed a Statement of Use in commerce with the USPTO declaring under penalty of perjury that its trademark is in active use in United States commerce. *Id*., ¶13. This Statement attached a specimen of its use in commerce showing photographs of the accused products in the present litigation. *Id*. Kaijet Taiwan's trademark filings thus further demonstrate Kaijet Taiwan's control over the marks used on the accused goods being sold in U.S. commerce.

### C. Kaijet Taiwan Owns and Controls the "j5create" Group, Including its U.S. Affiliate's Activities.

There is wide-ranging evidence that ████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████. *Id.*, ¶¶14, 17. ██████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████ *Id.*, ¶18.

A Kaijet Taiwan slide deck also touts the fact that its products are "designed, developed and made in USA and Taiwan." *Id.*, ¶19.

Further, materials produced in response to a subpoena to the Consumer Electronics Show (CES) in Las Vegas, Nevada show that the @j5create.com email domains were used to register Kaijet U.S. and Kaijet Taiwan for the show. *Id.*, ¶¶21, 22. Kaijet Taiwan represented to CES that: Kaijet U.S. is an "Alias, Brand Names, Subsidiary Companies and Parent Companies[.]" *Id.*, ¶24.

**D.** ██████████████████████ **Corporate Office in Georgia.**

████████████████████ at the time of inception of this lawsuit represented to the public that it has an office located in the State of Georgia. *Id.*, ¶15.  Specifically,

████████████ web site stated:



1025 Cobb International Dr. Suite 210
Kennesaw, GA 30152
United States

8145 130th St. Unit 14
Surrey, BC V3W 7X4
Canada

Satijnbloem 63
3068 JP, Rotterdam,
Netherlands

8F, No.109, Zhongcheng Rd.,
Tucheng Dist., New Taipei City 236,
Taiwan (R.O.C.)

*Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ j5create has "4 corporate offices around the world," further solidifying that its listed Georgia address is a "corporate office." *Id.*, ¶16.

**E.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*, ¶48. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮. SCMF, ¶25-26. ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶25. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶26. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

6



*Id.,* ¶27.

*Id.,* ¶28.

███████████. *Id.,* ¶29.  Kaijet Taiwan develops the products using its own components. *Id.,* ¶30.

### F.    Management of Kaijet Taiwan, Kaijet U.S., and j5create Overlap.

Liu is Kaijet U.S.' CEO Kaijet Taiwan's "Manager" per the records of the FCC.  SCMF, ¶¶ 5, 31.  Liu holds herself out as j5create's CEO and all the j5create affiliates do business as j5create.  *Id.,* ¶¶31-32.  ███████████████

*Id.,* ¶33.  ███

███████████████████. *Id.,* ¶34.  Both Jessica Liu and Steven Lyu, ███████████████ identified themselves to the process server in this case as the managers of Kaijet Taiwan.  *Id.,* ¶35.

Date: 01/13/2020

SAMANTHA SNYDER
Notary Public, State of Nevada
Appointment No. 17-1460-1
My Appt. Expires Feb 7, 2021

State of Nevada
County of Clark

Server's signature

Adam Schwartz R-088182

_Printed name and title_

9811 W. Charleston Blvd 2-732, Las Vegas, NV 89117

_Server's address_

Additional information regarding attempted service, etc.:
1) Successful Attempt: Jan 7, 2020, 3:08 pm PST at 3150 Paradise Rd, Las Vegas, NV 89109 received by Steven Lyu. Age: 56; Ethnicity: Asian American; Gender: Male; Weight: 240; Height: 5'10"; Hair: Black; Eyes: Brown; First identified defendant from photo found online. I then confirmed identity by his CES name badge. Defendant confirmed that he is a managing member of Kaijet Technology, based out of Taiwan. Defendant willingly accepted documents.    4

Furthermore, despite ███████████████████████████████████████████

███████████████████████████████████████████. *Id.*, ¶36.

Moreover, ███████████████████████████████████. *Id.*, ¶37.

███████████████████████████████████████████. *Id.*, ¶38.  As

shown in the next section, ███████████████████████████████████████

███████████.

## G.    Kaijet Taiwan Transacted Business in Georgia ████████████
████████████.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████ Kaijet Taiwan (including Liu) was present at the same CES show in January

2017 where the Hyperdrive was on display in its packaging.  *Id.*, ¶41.  It is undisputed

that by no later than June 2017, ███████████████████████████████████████████

---

4 D.E. 119.

██████████████. *Id*., ¶¶39-40.

After having likely seen the HyperDrive® at CES, and after ████████

████████████████████████████████████████████████████████

████████████████████████. *Id*., ¶42. ████████████████████████

██████████████████████████████. *Id*.

Furthermore, ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████. *Id*., ¶43

████████████████████████████████████████████████████████

██████████████████████████████. *Id*., ¶44. ████████████████

████████████████████████████████████████████████████████.

*Id*., ¶45.

████████████████████████████████████████████

████████████████████████████. *Id*., ¶49.  The first UltraDrive was

imported and sold into the U.S. in October 2017.  *Id*., ¶46. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████. *Id*., ¶47.

9

**H.** ██████████████████████████████████████████████████.

██████████████████████████████████████████████████

███████████████. *Id.*, ¶50. ████████████████████████████

█████████████████. *Id.*, ¶51. █████████████████████

██████████████████████████████ *Id.*, ¶50.   Moreover, ███████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████. *Id.*, ¶51.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████



## II.   THE COURT SHOULD DENY KAIJET TAIWAN'S SUMMARY JUDGMENT MOTION.

Kaijet Taiwan seeks dismissal of Plaintiff's claims based substantially on grounds of extraterritoriality.  *See* (Doc. 325-2, Motion, at III.A.2 (Copyright Act Not Applicable), III.B (Lanham Act Not Applicable), III.D (Patent Act Not Applicable).  However, there is substantial evidence that Kaijet Taiwan ████████████

██████████████████████████████████████████████████

10

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████.

## A.    Disputes of Material Fact Preclude Resolution of Kaijet Taiwan's Extraterritoriality Defenses.

The Court observed in its prior order finding specific minimum contacts that "KaiJet Taiwan does not dispute that it sent emails and other intangible communications into Georgia regarding price negotiations and the ULTRADRIVE product."[5]    "Uncontroverted evidence shows that Kaijet Taiwan sent communications, including emails, into Georgia in relation to transactions and pricing of the ULTRADRIVE."[6]    "Additionally, Sanho demonstrates that Kaijet Taiwan purposefully directs its activities at Georgia by pointing to evidence that KaiJet Taiwan <u>ships and sells</u> the ULTRADRIVE in the State."[7]

It is perplexing that Kaijet Taiwan makes no effort now to show why these findings were incorrect or should be revisited.    Instead, Kaijet Taiwan has merely submitted a declaration from Yuki Tai, which offers the same general conclusory statements that were originally proffered in the declaration that Tai submitted in support on Kaijet Taiwan's motion to dismiss.[8]    Far from supporting Kaijet Taiwan's

---

[5] D.E. 185, at 17-18.
[6] *Id*., at 18.
[7] *Id*., at 22-23 (emphasis added).
[8] *See* D.E. 146-3.

arguments, Tai's declaration is belied by ██████████████████████████

███████████████████████████████████████████████████████████████████.

Further, Kaijet Taiwan's FCC import compliance filings confirm its compliance

with the conditions for export to the U.S.  Tai's declaration also fails to address

Kaijet Taiwan's trademark applications and related Statement of Use, declaring

Kaijet Taiwan's marked products, including UltraDrive, to be in commerce in the

United States.[9]   At a minimum, there is evidence that Kaijet Taiwan used the

allegedly infringing mark in interstate commerce in the U.S. in connection with the

sale of the accused UltraDrive products.[10]   Using j5create group and Kaijet U.S., its

████████████████████████████████████████████████████.   In

turn, its actions have created a genuine dispute of material fact preventing entry of

summary judgment based on any "extraterritoriality" defense.

---

[9]  *See Spiral Direct, Inc. v. Basic Sports Apparel, Inc*., 293 F. Supp. 3d 1334, 1359–60 (M.D. Fla. 2017) (in trademark context, "modern view" is that the sale of goods that are imported into the U.S. and sold locally—not across state lines—constitute "use in commerce" if those local sales substantially affect interstate commerce) (internal quotations omitted).

[10]  *Cf. Rothschild & Co. Continuation Holdings A.G. v. Sklarov*,  440 F. Supp. 3d 1385, 1391 (N.D. Ga. 2020) (discussing a foreign party's "use in commerce" trademark application as a factor showing that exercise of personal jurisdiction was fair and reasonable).

**B.    Disputed Material Facts Warrant Trial on Copyright Infringement.**

**1.    Kaijet Taiwan Had Access to the Copyrighted Packaging.**

A plaintiff may prove copying by direct evidence, which is rare, or by indirect evidence.[11] If the plaintiff cannot show that the defendant had access to the copyrighted work, then the plaintiff must show that the defendant's work is "strikingly similar" to the copyrighted work.[12] Where, as here, the defendant had access to the work, the plaintiff must show that the two works are "substantially similar."[13]

"Access requires proof of 'a reasonable opportunity to view' the work in question. In some instances, proof that a copyright holder's work was 'widely disseminated' has been held to constitute circumstantial evidence of access."[14] "A copyright plaintiff may establish access where a product is widely sold and displayed."[15] In this case, it is reasonable to conclude that "there was access to the [copyrighted article] through the availability of the [copyrighted product] at

---

[11] *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010).

[12] *Id.* (citing *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007)).

[13] *Id.* (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000)).

[14] *Olem Shoe Corp. v. Washington Shoe Corp.*, 591 F. App'x 873, 882 (11th Cir. 2015) (internal citations omitted).

[15] *Home Legend, LLC v. Mannington Mills, Inc.*, No. 4:12-CV-0237-HLM, 2015 WL 12434467, at *3 (N.D. Ga. Oct. 5, 2015).

[BestBuy].com."[16] "A demonstration of access does not require proof of actual viewing."[17]

In the instant case, Sanho displayed the HyperDrive® and its standard packaging at the CES trade show in Las Vegas in January 2017. SCMF, ¶53. Kaijet Taiwan representatives attended that trade show. *Id*., ¶¶21, 41. Moreover, Sanho began selling HyperDrive® products at Best Buy in April 2017. *Id*., ¶54. HyperDrive® products offered for sale on Best Buy store shelves at all Best Buys in the U.S. from April-September 2017 used the original copyrighted packaging. *Id*., ¶55. The Court may take judicial notice that at that time, Best Buy had several stores in the metropolitan Atlanta area, including two in Kennesaw (where Kaijet maintains an office).[18]

By June 2017, ███████████████████████████████ (*id*., ¶¶38-39), the HyperDrive in standard packaging was accessible on store shelves at any Best Buy in the U.S., and could also be purchased in its packaging at bestbuy.com. *Id*., ¶55. Thus, Akins plainly had access to the HyperDrive® in its copyrighted packaging <u>before</u> mid-September 2017.

---

[16]  *Olem Shoe Corp.*, 591 F. App'x  at 887.
[17]  *LaJoie v. Pavcon, Inc.*, 146 F. Supp. 2d 1240, 1247 (M.D. Fla. 2000).
[18]  *See United States v. Rodriguez*, 753 F.3d 1206, 1207 (11th Cir. 2014) (taking judicial notice of "well-known and indisputable facts").

Mr. Akins' access is imputed to both Kaijet U.S. and Kaijet Taiwan.  First, Kaijet Taiwan an Kaijet U.S. are the "same company."  *Id.*, ¶8.  Or, at a minimum, Kaijet U.S., Akins employer, ███████████████████████████.  *Id.*, ¶48. Regardless, ███████████████████████████████████████

███████. *Id.*, ¶¶9, 14. ██████████████████████████████████

██████████████████████. *Id.*, ¶¶42-43. ████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████. *Id.*

### 2.    UltraDrive Packaging is Substantially Similar to the Copyrighted Packaging.

It is axiomatic that for copyright infringement to exist, Kaijet must have copied elements from the Sanho copyrighted packaging that are original.[19]  A determination of copyrightability of standard design elements will depend on whether there is any selection, coordination or arrangement of elements into an original compilation.[20]  "For a work to satisfy the originality requirement, "all that must be shown is that the work possess at least some minimal degree of creativity . . . .  To be sure, the requisite level of creativity is extremely low; even a slight amount

---

[19]  "Probative similarity" requires a showing of "substantial similarity" with respect to copyrightable material. *Oravec v. Sunny Isles Luxury Ventures*, L.C., 527 F.3d 1218, 1224 (11th Cir. 2008) (citation omitted).

[20]  *Home Legend, LLC v. Mannington Mills, Inc.,* 784 F.3d 1404, 1406 (11th Cir. 2015).

will suffice."[21]  Here, Kaijet has not sought a determination of copyright invalidity based on lack of originality, which implicitly concedes that there are original elements which inhere in the Sanho copyrighted packaging.

Summary judgment historically has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding the similarity between two works.[22]  Copyright infringement takes at least two forms.  In one, there is a great quantum of copying.  In another, the infringement may reside in the copying of an original part of the work which, while small quantitatively in relation to the work as a whole, is a qualitatively significant part of the work.[23]

In the case at bar, a comparison of the front-side of copyrighted packaging to the front-side of the UltraDrive packaging reveals a triable issue of the requisite "substantial similarity" to support a finding of infringement:

---

[21]  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 345 (1991); *Quinn v. Powell*, No. 1:21-CV-03163-SDG, 2022 WL 1664554, at *2 (N.D. Ga. May 25, 2022).

[22]  *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999).

[23]  *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 564-66 (1985) (publishing small portion of manuscript infringed, and was not protected by fair use).

16



SCMF, ¶58.  Among the substantial similarities in arrangement of the elements of

the packaging design are:  (a) the oddly-shaped window cutout in the middle of the

packaging in each; (b) the way each cutout window is aligned in a substantially

similar way to the left of a photograph of the left edge of a 2016 MacBook Pro; (c)

the placement of said photograph in a substantially similar location, on the far right

side  of the front packaging; and (d) the substantially similar uses and locations of "HyperDrive" and "UltraDrive."  *Id.*

A comparison of the reverse side of the copyrighted original packaging of the HyperDrive® and the original UltraDrive packaging further reveals that each used very similar perspective views of the respective products, each connected similarly to a 13" MacBook Pro, shown from a very similar angle, with similar callouts used to indicate the female ports of each device.  *Id.*, ¶59.

Kaijet puts forward the declaration of Mr. Sarrabia purportedly noting 180 picayune differences between Kaijet's accused packaging and the copyrighted work. However, copyright infringement is not a math problem.  Such lists of similarities and differences between works are inherently subjective and unreliable.[24]  Here, the qualitative similarities override the smaller points of distinction, and a reasonable jury could so hold.

### 3.    Extraterritoriality is no Defense.

"[W]hen a foreign corporation is alleged to have purposefully injected itself into the American market by shipping infringing goods here—regardless of whether it does so directly or through an importer—the defendant should not be allowed to use the principle of non-extraterritoriality to shield itself from the reach of American

---

[24]  *See Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 460 (11th Cir. 1994); *Leigh v. Warner Bros.,* 212 F.3d 1210, 1215 (11th Cir. 2000); *see also Architects Collective v. Pucciano & English, Inc.,* 247 F. Supp. 3d 1322, 1371 (N.D. Ga. 2017).

courts and American copyright law."[25]   Kaijet Taiwan has purposefully shipped infringing UltraDrive products into the U.S. and is liable for damages caused here as a result, whether under a theory of direct infringement or contributory infringement.

Kaijet Taiwan's reliance on *Well-Made Toy*, where the sale took place abroad and the defendant did not ship the product at issue into the U.S., is misplaced.  Here, Sanho disputes with evidence of ███████████████████ whether the accused sales of UltraDrive took place in the U.S. or abroad.  Moreover, ████████ ███████████████████████. Accordingly, Kaijet Taiwan's motion to dismiss the copyright infringement cause of action by characterizing its activity as <u>merely</u> extraterritorial should be denied.  Moreover, as shown above, there is evidence in the record that Kaijet Taiwan and Kaijet U.S. are the same company.  SCMF, ¶8.

Kaijet Taiwan's extraterritoriality arguments also fail based on Kaijet U.S.'s actions as the ███████████████████████████████████ ███████████████████. "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer."[26]  As shown

---

[25] *GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763, 773 (W.D.N.Y. 1991) (finding jurisdiction for copyright claim against foreign entity).
[26]  *FTC v. Amy Travel Service, Inc.,* 875 F.2d 564, 573 (7th Cir. 1989).

above, ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████ The ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████. ████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████.

Furthermore, Kaijet Taiwan's trademark filings reveal that the accused UltraDrive product of Kaijet Taiwan is being used in interstate commerce in the U.S. Other than importation and sales of UltraDrive into the U.S., there is no way for Kaijet Taiwan's sworn statements to the USPTO to be true. This evidence is more than sufficient to raise a triable issue on Kaijet Taiwan's liability for copyright infringement under a direct or indirect theory of infringement.[27] "Indeed, the Eleventh Circuit recognizes that there are no strict distinctions between the various theories of liability."[28]

---

[27] *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 (11th Cir. 2007); *Casella v. Morris*, 820 F.2d 362, 364–65 (11th Cir. 1987).
[28] *Atlanta Photography, LLC v. Ian Marshall Realty, Inc.*, No. 1:13-CV-2330-AT, 2014 WL 11955391, at *3 (N.D. Ga. Mar. 7, 2014).

### C.    Kaijet Taiwan Cannot Avoid the Reach of the Lanham Act.

Here again, Kaijet Taiwan attempts to evade liability based on extraterritoriality, ignoring its own extensive conduct reaching into the U.S. and control of its U.S. affiliates. ███████████████, and FCC authorization documents provide overwhelming evidence that Kaijet Taiwan is engaged in commerce in the United States with respect to the UltraDrive through its U.S. sale and shipments of these products.  Kaijet Taiwan filed a Statement of Use regarding the UltraDrive, for example, confirming that the product line is engaged in commerce in the United States.  Moreover, ███████████████████████
███████████████, Kaijet Taiwan is accountable for those activities.[29] Thus, the extraterritorial reach of the Lanham Act is beside the point.

Moreover, the Lanham Act does extend extraterritorially in this case. In the seminal Supreme Court case addressing extraterritorial application of the Lanham Act is *Steele v. Bulova Watch Co.*, the Court addressed "whether a United States District Court has jurisdiction to award relief to an American corporation against acts of trademark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States."[30]   In that case, a U.S. citizen

---

[29] *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 427-29 (9th Cir. 1977) (finding Lanham Act provided jurisdiction as to a foreign defendant where its agent acted as its instrumentality in the U.S.).
[30]   344 U.S. 280, 281 (1952).

doing business in Mexico City sold watches with the mark of Bulova, an American

company, and the infringing watches filtered through the Mexican border into this

country. The Court explained:

> His operations and their effects were not confined within the territorial
> limits of a foreign nation. He bought component parts of his wares in
> the United States, and spurious Bulovas filtered through the Mexican
> border into this country; his competing goods could well reflect
> adversely on Bulova Watch Company's trade reputation in markets
> cultivated by advertising here as well as abroad.[31]

Furthermore, the Court explained the fact that the watches were "affixed the mark

'Bulova' in Mexico City rather than here" was not "material" because they "were

essential steps in the course of business consummated abroad" part of the "unlawful

scheme."[32]  Finally, the court noted there was no conflict with foreign laws.[33]

    "[N]one of the Supreme Court's recent decisions concerning extraterritoriality

resolve the issues we face here related to the Lanham Act," and "[s]ince *Steele*, the

courts of appeals have devised various tests to answer that question—namely, what

are the limits of the Lanham Act's extraterritorial reach?"[34] "Each of the tests

developed by the courts of appeals to explore the Lanham Act's extraterritorial reach

stems from the Supreme Court's *Steele* decision.[35]

---

[31]  *Id*. at 286.
[32]  *Id*. at 287.
[33]  *Id*. at 289.
[34]  *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1034 (10th Cir. 2021).
[35]  *Id*.

Distilling the *Steele* discussion to its essence, the Eleventh Circuit held that the Lanham Act confers jurisdiction over extraterritorial disputes involving trademark infringement and unfair competition when: 1) Defendant is a United States corporation; 2) the foreign activity had substantial effects in the United States; and 3) exercising jurisdiction would not interfere with the sovereignty of another nation.[36]

In *Alpacific S.A. v. Diageo Latin Am. & Caribbean, Inc.*, the court found that the first factor was satisfied where "two of the defendants are United States corporations, and the remaining two defendants allegedly represented to Alpacific that they operated from Miami, Florida."[37]  Under these circumstances, the Court finds that the first *Bulova* factor supports applying the Lanham Act extraterritorially."[38]  The court found a substantial effect where there were "allegations that Defendants use the United States' free trade zones to prepare and ship their products and that Defendants direct the 'receiving, processing, and managing of orders of [their] products for sale in Ecuador' from their office in

---

[36] *Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l, (U.S.A.), Inc*., 252 F.3d 1274, 1278 (11th Cir. 2001) (stating that the absence of one of the factors "might well be determinative and … the absence of both is certainly fatal") (internal quotation omitted); *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1139 (11th Cir. 2018).

[37] No. 10-CV-23822-CIV, 2012 WL 12844739, at *5 (S.D. Fla. Mar. 28, 2012).

[38] *Id*.

Miami."[39]  Finally, regarding sovereignty, the court held that "it is not clear whether exercising jurisdiction would interfere with Ecuador's sovereignty to such an extent that the Court should not apply the Lanham Act extraterritorially."[40]  However, "Even if exercising jurisdiction would interfere with Ecuador's sovereignty, the absence of one *Bulova* factor is not necessarily determinative."[41]  Therefore, extraterritorial application was proper.

In the instant case, on *Steele* factor one, the closeness between the Kaijet Taiwan and Kaijet U.S. entities favors the extraterritorial application of the Lanham Act.[42]  They operate as "the same company."  *Id.*, ¶8; *see id.*, ¶¶1, 3-4, 14-16.  As shown above, Kaijet Taiwan ████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████.  *Id.*, ¶¶14-16, 42-45.

The second *Steele* factor also favors the extraterritorial application of the Lanham Act.  Kaijet Taiwan's activities had substantial effects in the U.S., starting with the significant number of sales of UltraDrive products which made their way into the United States.[43]  As discussed, Kaijet Taiwan filed for the U.S. trademark

---

[39]  *Id.*
[40]  *Id.*
[41]  *Id.*
[42]  *See Alpacific*, 2012 WL 12844739, at *5.
[43]  *See* D.E. 329-3, ¶66.

24

application for an UltraDrive-related trademark, swearing under oath that products bearing the UltraDrive mark are in use in U.S. interstate commerce.  *Id.*, ¶9.  ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████.  *Id.*, ¶¶42-45.  It shows its products at the CES show in the U.S.  *Id.*, ¶¶21, 41.  ████████████████████

███████████████████████████████████████████████████████████.

*Id.*, ¶43.  UltraDrive has given rise to actual confusion in the U.S.  *Id.*, ¶56.  For instance, Best Buy has returned several of the accused UltraDrive products mistakenly to Sanho, which has cost Sanho financially.  *Id.*, ¶57.

The infringing UltraDrive products ultimately end up in the United States, "filtered through the [Taiwanese] border into this country," as in *Steele*. "We do not deem material that petitioner affixed [UltraDrive] in [Taiwan] rather than here."[44]

As for the third *Steele* factor, Kaijet Taiwan does not come forward with evidence that it owns any trademark rights in Taiwan which could be affected by the Court's extraterritorial application of the Lanham Act in this case.

Considering all factors, the Court should hold that this is not a case of extraterritorial application of the Lanham Act.  Moreover, even if it were, the Court

---

[44]  *Steele*, 344 U.S. at 287.

should further reject Kaijet Taiwan's argument that the Lanham Act does not apply extraterritorially in this case.

As for the Lanham Act false advertising claim, Sanho is presenting its substantive argument and evidence that the product ad in question for the UltraDrive is literally and demonstrably false in its brief in opposition to the co-pending Starview Motion for Summary Judgment. In an effort to avoid redundancy, Sanho refers the Court to that argument and evidence. SCMF, ¶60-62.

### D.   Kaijet Taiwan May Not Avoid the Reach of U.S. Patent Law.

Kaijet Taiwan's sales of the UltraDrive in the U.S., ███████████████████████, creates a disputed issue of material fact on Sanho's direct infringement claims against Kaijet Taiwan as a seller of the UltraDrive into the U.S.

"[T]o sell an infringing article to a buyer in [a forum state] is to commit a tort there[.]"[45]   "[A]n actual sale" for purposes of 35 U.S.C. §271 occurs where "contracting and performance" or other "essential activities" occur.[46]  In addition to documents listing Kaijet Taiwan ███████████████████████████

---

[45] *N. Am. Philips Corp. v. Am. Vending Sales, Inc*., 35 F.3d 1576, 1579 (Fed. Cir. 1994) ("To hold otherwise would exalt form over substance in an area where the Supreme Court generally has cautioned against such an approach[.]") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985)).
[46] *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp*., 420 F.3d 1369, 1377 (Fed. Cir. 2005); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp*., 21 F.3d 1558, 1571 (Fed. Cir. 1994) ("The "situs" of a patent infringement injury is the actual "place of the infringing sales.").

███████████████████████████████████████████████

██████. SCMF, ¶49. The Court acknowledged these facts in its Order denying Kaijet Taiwan's motion to dismiss, finding that Sanho's evidence at least raises an inference that Kaijet Taiwan transacted business in Georgia.[47] On this record, there is at least a factual dispute whether Kaijet Taiwan transacted sales of the UltraDrive to Kaijet U.S. within in the U.S., constituting direct infringement under 35 U.S.C. § 271(a).[48]

Indeed, the evidence shows that Kaijet Taiwan ████████████████ ██████████████████████████. *Id.*, ¶50. ████████████████████ ███████████████████████████ *Id.*, ¶51. ██████████ ████████████████████████████████ *Id.*, ¶52. Taken as a whole, this evidence rebuts Kaijet Taiwan's contention that Kaijet U.S. <u>alone</u> bears responsibility for any U.S. sales.

Kaijet Taiwan also relies on a reference to the term "FOB" on a few shipping documents.[49] The Federal Circuit has held, however, that international sales to the United States can infringe under 35 U.S.C. § 271(a) even if they are FOB in a foreign

---

[47] D.E. 185, at 16-19.
[48] *MEMC Elec. Mat.*, 420 F.3d at 1377 ("an actual sale" under § 271(a) occurs where "contracting and performance" or other "essential activities" in sale occur); *Beverly Hills Fan Co*, 21 F.3d 1558, 1571 (situs of tortious injury is "place of the infringing sales").
[49] D.E. 325, at 4.

country.[50]  Moreover, the location of the FOB ███████████████████████ ████████████.  Under these circumstances, there is a presumption in the industry, custom, and trade, that FOB means FOB point of destination, which here, was Atlanta.[51]  Here, as the Court observed earlier in this case, the negotiation, shipping and payment records support an inference that Kaijet Taiwan transacted business within the State of Georgia, including by selling infringing products to Kaijet U.S in Georgia.[52]

### E.    Sanho's Pleadings Asserted Indirect Patent Infringement.

This is a motion for summary judgment, but Kaijet Taiwan sees fit to use this motion as some sort of *post hoc* motion to dismiss by challenging whether Sanho has pled a cause of action for inducement to infringe each of the patents at issue in this case.   As shown below, Sanho has set forth a cause for indirect patent infringement in this case.[53]

---

[50] *Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353, 1369 (Fed. Cir. 2008) ("GlowProducts bases its argument that these were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada.   Our case law, however, is inconsistent with such a theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271.").

[51] *Pulse Elecs., Inc. v. U.D. Elec. Corp.* 530 F. Supp. 3d 988, 1013 (S.D. Cal. 2021). (Under both the CISG and UCC, "[i]f the parties fail to indicate clearly whether their agreement is a shipment contract or a destination contract, the court will assume that the parties intended a shipment contract).

[52] D.E. 185, at 16-19.

[53] *See* D.E. 89, ¶¶15, 18-19, 22, 26, 56, 57, Prayer for Relief No. 2.

Specifically, Kaijet Taiwan asserts that "[n]either the First Action TAC nor the Second Action Complaint pleads that KTIC, or any other party, had pre-suit knowledge of the Asserted Patents."[54]  This is false.

First, the Third Amended Complaint provides "Plaintiff provided actual notice to Defendant of its infringement, including without limitation the filing of the original complaint in the Northern District of California in 2018.  An additional cease and desist letter was sent to the defendants on November 12, 2019.  Notice was provided to Defendants through numerous other means."[55]

The Complaint in the Second Action, par. 28, relating to the infringement of the '429 Patent, likewise provides, "Plaintiff provided actual notice to Kaijet of its infringement."  In the count relating to infringement of the '618 Patent, paragraph 37 likewise reads, "Plaintiff provided actual notice to Kaijet of its infringement."  In the count relating to infringement of the '290 Patent, paragraph 46 likewise reads, "Plaintiff provided actual notice to Kaijet of its infringement."  Paragraphs 29, 38 and 47 each provides that "[i]n spite of such repeated notices, Kaijet has engaged in a pattern of conduct demonstrating: Kaijet's awareness of the [429, 618 and 290] Patent[s]; the objectively high likelihood that Kaijet's actions constitute

---

[54] D.E. 325-2, at 30.
[55] D.E. 89, TAC, ¶56; *see also* TAC, ¶57.

infringement of the valid and enforceable [429, 618 and 290] Patent[s]; and that this objectively-defined risk was so obvious that Kaijet knew or should have known it."

Thus, the TAC and the Complaint in the Second Action "succeed[ ] in identifying facts that are suggestive enough to render [infringement by inducement] plausible."[56]  Sanho's pleadings are sufficient.

### F.    Disputed Material Facts Warrant Trial on Whether Kaijet Taiwan and Kaijet U.S. Are Alter Egos.

"Georgia courts pierce the corporate veil to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or evade contractual or tort responsibility."[57]  Courts in this district interpreting Georgia law have recognized that the alter ego question should ordinarily be decided by a jury.[58]  Factors to be considered include whether one company uses another company as its "business conduit," including

---

[56] *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 847 (11th Cir. 2016) (quoti*ng Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008)).

[57]  *Knieper v. Forest Grp. USA, Inc.*, No. 4:15-CV-00222-HLM, 2016 WL 9449794, at *7–9 (N.D. Ga. Sept. 12, 2016), *order clarified*, No. 4:15-CV-00222-HLM, 2017 WL 3449601 (N.D. Ga. Jan. 23, 2017) (quoting *Paul v. Destito*, 250 Ga. App. 631, 639, 550 S.E.2d 739, 747 (2001) (internal quotation marks, citation, and footnote omitted)).

[58]  *Travelers Prop. Cas. Co. of Am. v. Clucis*, No. 1:20-CV-00276-SDG, 2022 WL 4773493, at *7 (N.D. Ga. Sept. 30, 2022); *Brown v. Advantage Eng'g, Inc.*, 732 F. Supp. 1163, 1167 (N.D. Ga. 1990) (citing *Najran Co. v. Fleetwood Enters., Inc.*, 659 F. Supp. 1081, 1096 (S.D. Ga. 1986)).

whether employees of one company also work on behalf of the other company.[59] Application of the alter ego theory "depends on the particular circumstances of the case and is a factual inquiry."[60]

"For inequity to result from recognition of corporate separateness, 'conduct rising to the level of actual fraud is not required.'"[61]  Instead, "the alter ego inquiry is conducted on a case by case basis and ... if equity and good conscience dictate in a given situation that the corporate veil should be disregarded, then piercing this veil is proper."[62] Indeed, "[t]he essence of the alter ego doctrine is that ... liability is imposed to reach an equitable result."[63]

In the case at bar, Kaijet Taiwan is attempting to invoke its corporate "separateness" from Kaijet U.S. so that it may escape liability and hold onto the profits it made for the j5create group by engaging in infringement of Sanho's rights in the HyperDrive®.  Yet the facts of this case are egregious, and counsel against permitting such an injustice to occur.  Here, the evidence shows that Kaijet Taiwan and Kaijet U.S. have a unity of interest (the interests of the j5create group),  with

---

[59]   *Travelers Prop. Cas. Co. of Am.*, 2022 WL 4773493, at *7.
[60]   *In re Edelson*, Bankr. No. 08-77595-BEM, Adversary No. 11-05720-BEM, 2013 WL 5145714, at *8 (Bankr. N.D. Ga. July 3, 2013).
[61]    *Knieper v. Forest Grp. USA*, 2016 WL 9449794, at *8 (quoting *Najran Co. for Gen. Contracting & Trading v. Fleetwood Enters., Inc*., 659 F. Supp. 1081, 1097 (S.D. Ga. Oct. 1, 1986)
[62]   *Id*.
[63]   *Id*.

"such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist."[64] First, ████████████████ ███████████████████████████████████████. SCMF, ¶¶3-4. Second, the FCC regards Kaijet Taiwan and Kaijet U.S. as "the same company." *Id.*, 5-8. Third, ███████████████, Kaijet Taiwan represented itself as owner of both the "j5create" and "UltraDrive" brands being used in interstate commerce in the U.S. *Id.*, ¶¶9-13. Fourth, ████████████████████████████ ███████████████████████████████████████████ ██████████████████████████. *Id.*, 14-17, 23. ████████████ ████████████████████████████████████. *Id.*, ¶48.

Kaijet Taiwan also claims  that Kaijet U.S. is an "Alias, Brand Names, Subsidiary Companies and Parent Companies[.]" *Id.*, ¶24.[65]

Moreover, Kaijet Taiwan's managers include ██████████████. *Id.*, ¶¶5, 10, 31-32, 35.  The parties agree that ██████████████████ ███████████████████████████████████████. *Id.*, ¶¶33, 36-37. Liu and Lyu are also the owners of Kaijet U.S.  *Id.*, ¶¶33-34. ████████

---

[64]    *Salas v. Statebridge Co., LLC*, No. 1:21-CV-3959-SDG-JCF, 2022 WL 5442903, at *13 (N.D. Ga. July 19, 2022), *report and recommendation adopted as modified*, No. 121CV03959SDGJCF, 2022 WL 4596338 (N.D. Ga. Sept. 30, 2022) (internal quotation omitted).

[65] Elsewhere, Kaijet Taiwan asserts that it is not in a parent-subsidiary relationship with Kaijet U.S. (D.E. 325-3, ¶17), giving rise to an inference that it views Kaijet U.S. as an "alias" of Kaijet Taiwan.

████████████████████████. *Id.*, ¶32. Likewise, Yuki Tai acts as a manger on behalf of both Kaijet Taiwan and Kaijet U.S. *Id.*, ¶5.

Furthermore, the evidence establishes that ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████  *Id.*, ¶¶40, 42. ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████. *Id.*, ¶43. ████ ████████████████████████████████████████ ████████████████████████████████████. *Id.*, ¶44.  As the UltraDrive was being rolled out in the U.S., ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████. *Id.*, ¶47.

On these facts, the suggestion of a legal separateness between Kaijet Taiwan and Kaijet U.S. merely seeks to perpetuate "a sham, used to defeat justice … or to evade statutory, contractual or tort responsibility."[66]

---

[66]  *Salas*, 2022 WL 5442903, at *13 (internal quotation and citations omitted).

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Kaijet Taiwan's Motion

for Summary Judgment.


This 20th day of January, 2023.

Respectfully submitted,

By:   */s/ Steven G. Hill*
      Steven G. Hill
      GA Bar No. 354658
      David K. Ludwig *(admitted pro hac vice)*
      CT Bar No. 435310
      **HILL, KERTSCHER & WHARTON, LLP**
      3625 Cumberland Blvd., SE, Suite 1050
      Atlanta, Georgia 30339-6406
      Tel:  (770) 953-0995
      Fax:  (770) 953-1358
      Email:   sgh@hkw-law.com
      Email:   dludwig@hkw-law.com

         -and-

      Ali A. Aalaei *(admitted pro hac vice)*
      CA Bar No. 254713
      Benjamin Martin *(admitted pro hac vice)*
      CA Bar No. 257452

      **ARI LAW, P.C.,**
      317 University Ave., Suite 100
      Palo Alto, CA  94301
      Tel:  (415) 830-9968
      Fax: (415) 520-9456
      Email:  ali@arilaw.com
      Email:  bmartin@arilaw.com

*Attorneys for Plaintiff Sanho Corporation*

## **TYPE AND FONT CERTIFICATION**

The undersigned certifies that the foregoing complies with Local Rule 5.1(B)

regarding typeface and font.

**/s/Steven G. Hill**
Ga Bar No. 354658

36

## **CERTIFICATE OF SERVICE**

I certify that on the 20th day of January, 2023, I caused to be electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following participants and law firm who are registered CM/ECF users, and will be served by the CM/ECF system.

_**/s/Steven G. Hill**_
Ga Bar No. 354658
_Counsel for Plaintiff Sanho Corporation_

37