# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SANHO CORPORATION,

      Plaintiff,

         v.

KAIJET TECHNOLOGY
INTERNATIONAL LIMITED, INC., and
KAIJET TECHNOLOGY
INTERNATIONAL CORPORATION,
INC., doing business as "J5Create"; and
DOES 1-10,

      Defendants.

**C.A. No. 1:18-cv-05385-SDG**

Consolidated with
C.A. No. 1:20-cv-02150-TCB

**Jury Trial Demanded**

## PLAINTIFF SANHO'S BRIEF IN SUPPORT OF
## ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................................... ii-iii

I.     BACKGROUND ...................................................................................... 1

II.    ARGUMENT ........................................................................................... 3

    A.     Sanho Did Not Commit False Advertising as a Matter of Law ... 3

        1.  False Advertising Legal Standards ......................................... 3

        2.  Kaijet's Alleged Evidence of False Advertising .................... 5

        3.  Sanho's Tweet Was Not False Advertising ............................ 6

        4.  The Third-Party Consumer Reviews of the HyperDrive® GN28 on Amazon.com Were Not False Advertising ........................ 7

        5.  The Lack of Any Reliable Evidence of Consumer Deception Dooms Kaijet's False Advertising Counterclaim .................. 10

        6.  Kaijet Requested Disgorgement of Sanho's HyperDrive Profits Is Untethered From any Actual Harm Suffered by Kaijet and Thus Would Constitute an Improper Windfall...... 14

    B.     Sanho Is Not Liable for False Patent Marking ............................. 15

        1.  Kaijet Can Present No Evidence that Sanho Intended to Deceive the Public with Its Patent Marking ......................... 17

        2.  Kaijet has Not Suffered a Competitive Injury ....................... 19

III.   CONCLUSION ...................................................................................... 21

i

# TABLE OF AUTHORITIES

## *Cases*

**PAGE**

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..................................................................... 3

*Clark Consulting, Inc. v. Fin. Sols. Partners, LLC*,
   2005 WL 3097892 (S.D.N.Y. Nov. 17, 2005)............................. 4, 9

*Fed. Trade Comm'n v. Nat'l Urological Grp., Inc*.,
   No. 1:04-CV-3294-CAP, 2017 WL 6759868 (N.D. Ga. Oct. 10, 2017),
   *aff'd*, 786 F. App'x 947 (11th Cir. 2019)..................................... 11

*Forest Grp. Inc. v. Bon Tool Co.*,
   590 F.3d 1295 (Fed. Cir. 2009)................................................... 17

*Hill & Mac Gunworks, LLC v. True Position, Inc*.,
   No. 1:20-CV-02447-SDG, 2022 WL 903197 (N.D. Ga. Mar. 28, 2022) ... 3

*J-B Weld Co., LLC v. Gorilla Glue Co.*,
   978 F.3d 778 (11th Cir. 2020) ..................................................... 13

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc*.,
   299 F.3d 1242 (11th Cir. 2002). ................................................... 5

*Juniper Networks, Inc. v. Shipley*,
   643 F.3d 1346, 1350 (Fed. Cir. 2011) ......................................... 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014).................................................................... 10

*Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp.*,
   No. 1:12-CV-1250-JEC-JSA, 2013 WL 12246988 (N.D. Ga. June 4,
   2013) ..................................................................................... 7, 19

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
   522 F.3d 1211 (11th Cir. 2008) .................................................... 4

*Omnibus Trading, Inc. v. Gold Creek Foods, LLC*,
   No. 2:19-CV-166-RWS, 2022 WL 3702124 (N.D. Ga. Mar. 16, 2022)..... 8

**PAGE**

*Optimum Technologies, Inc. v. Home Depot USA, Inc.*,
    2005 WL 3307508, (N.D. Ga. Dec. 5, 2005), *aff'd on other grounds,* 217
    Fed.Appx. 899 (11th Cir.2007)......................................................... *passism*

*Osmose, Inc. v. Viance, LLC*,
    612 F.3d 1308 (11th Cir. 2010) .................................................. *passism*

*Pequignot v. Solo Cup Co.*,
    608 F.3d 1356 (Fed. Cir. 2010)......................................................... 17

*Retractable Technologies, Incorporated v. Becton Dickinson*,
    919 F.3d 869 (5th Cir. 2019)......................................................... 14

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016), as revised (May 24, 2016)....................... 11,19,20

*Sukumar v. Nautilus, Inc.*,
    785 F.3d 1396 (Fed. Cir. 2015)  ................................................ 17

*ThermoLife Int'l, L.L.C. v. NeoGenis Labs, Inc.*,
    411 F. Supp. 3d 486 (D. Ariz. 2019) ........................................... 20

*TocMail, Inc. v. Microsoft Corp.*,
    67 F.4th 1255 (11th Cir. Apr. 25, 2023)..................................... 3, 11

*Trilink Saw Chain, LLC v. Blount, Inc.*,
    583 F. Supp. 2d 1293 (N.D. Ga. 2008)....................................... 12

***Statutes:***

15 U.S.C. § 1125(a) ........................................................................ 3

15 U.S.C. § 1117(a) ........................................................................ 14

35 U.S.C. § 292(a) & (b)............................................................... 17, 19

Plaintiff Sanho Corporation ("Sanho") brought this case against Kaijet Technology International Limited, Inc. and Kaijet Technology International Corporation, Inc. (collectively, "Kaijet") asserting claims for, *inter alia*, trademark infringement, trade dress infringement, copyright infringement and patent infringement.  In response, Kaijet asserted counterclaims against Sanho for, *inter alia*, false advertising and false patent marking.  This Motion seeks partial summary judgment dismissing Kaijet's false advertising and false patent marking counterclaims as a matter of law.

## I.    BACKGROUND

Sanho and Kaijet compete in the market for sales of USB Type-C adapters, or "hubs," for use with computers such as MacBook Pro laptops.  [Statement of Material Facts ("SMF"), filed herewith, ¶ 1.]  These hubs plug into the USB-Type C ports of a laptop computer to expand the functionality of a laptop's built-in USB Type-C ports by adding USB Type-B ports, HDMI video ports, etc.



[SMF, ¶3.]

Sanho markets its hubs under its HyperDrive® trademark.  [SMF, ¶¶ 2-3, 5.] Kaijet sells competing hubs under the name "UltraDrive."  [SMF, ¶6.]  Sanho began selling its HyperDrive® product line to Best Buy as early as April 2017.  [SMF, ¶2.] From 2017-2022, Sanho released twenty-one different models of HyperDrive® products.  [SMF, ¶5.]  Kaijet released at least seven Ultradrive models during this same time period and also sells to Best Buy.  [*Id.*, ¶¶ 6, 40.]

## II.    ARGUMENT

This Court is familiar with the summary judgment standard.[1]  Summary judgment is warranted where, as here, the evidence is insufficient to establish an essential element of a non-movants' case.[2]

### A.    Sanho Did Not Commit False Advertising as a Matter of Law.

Kaijet asserted a false advertising counterclaim.  [SMF, ¶¶14-15.]  It has identified two separate instances of alleged Sanho false advertising, neither of which are advertisements, neither of which are false, and neither of which injured Kaijet. As Kaijet is requesting a massive windfall disgorgement award for conduct that is not actionable and did not even injure Kaijet, the Court should grant summary judgment to Sanho with respect to this counterclaim.

### 1.    False Advertising Legal Standards

False advertising claims under the Lanham Act are governed by 15 U.S.C. § 1125(a), also known as Section 43(a).  Under Eleventh Circuit precedent, in addition to first establishing Article III standing,[3] KaiJet must prove each of the following to prevail on a false advertising claim under the Lanham Act:

(1) the ads of [Sanho] were false or misleading,

---

[1] *Hill & Mac Gunworks, LLC v. True Position, Inc.*, No. 1:20-CV-02447-SDG, 2022 WL 903197, at *4-*5 (N.D. Ga. Mar. 28, 2022).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[3] *TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1267 (11th Cir. Apr. 25, 2023).

(2) the ads deceived, or had the capacity to deceive, consumers,

(3) the deception had a material effect on purchasing decisions,

(4) the misrepresented product or service affects interstate commerce, and

(5) [KaiJet] has been—or is likely to be—injured as a result of the false advertising.[4]

Moreover, Kaijet must prove that the allegedly "false or misleading statements . . . occur[ed] in the context of 'commercial advertising or promotion.'"[5] Commercial advertising or promotion is:

(1) commercial speech;

(2) by a defendant in commercial competition with the plaintiff;

(3) for the purpose of influencing consumers to purchase the defendant's goods or services; and

(4) disseminated sufficiently to the relevant purchasing public . . . .[6]

Mere omissions of relevant information in advertisements do not constitute false advertising under Section 43(a) of the Lanham Act.[7] "The [Lanham] Act

---

[4] *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (citing *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 (11th Cir. 2008)).

[5] *Optimum Technologies, Inc. v. Home Depot USA, Inc.*, 2005 WL 3307508, at *5 (N.D. Ga. Dec. 5, 2005), *aff'd on other grounds*, 217 Fed.Appx. 899 (11th Cir. 2007).

[6] *Id.*

[7] *Clark Consulting, Inc. v. Fin. Sols. Partners, LLC*, 2005 WL 3097892, at *3 (S.D.N.Y. Nov. 17, 2005).

imposes no affirmative duty of disclosure . . . and a claim cannot be based on the failure to disclose a fact."[8]

"Advertisements that are literally true but are misleading can still be actionable . . . . However, to establish that an advertisement is misleading for purposes of a false advertising claim, the plaintiff must present evidence of deception in the form of consumer surveys, market research, expert testimony, or other evidence."[9] "One instance of consumer confusion falls short of constituting a consumer survey, market research, or expert testimony and is insufficient to establish consumer deception . . . ."[10]

### 2. Kaijet's Alleged Evidence of False Advertising.

When Sanho deposed Kaijet's Rule 30(b)(6) representative Chuck Akins regarding Kaijet's support for its false advertising counterclaim, Akins testified that Kaijet had "seen various things such as [] tweets or ads that disparage [Kaijet's] products or [Kaijet's] company." [SMF, ¶¶20-23.] When pressed, the only allegedly false advertisement Akins could identify was that "Sanho through some of their social media accounts had tweeted specifically [and] I think actually tagged us in [] the post <u>talking about how we steal products and things like that</u>."  [SMF, ¶24

---

[8] *Id.*

[9] *Optimum*, 2005 WL 3307508, at *6 (internal quotations omitted) (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1252 (11th Cir. 2002)).

[10] *Id.*

5

(emphasis added).]  Best Buy was the only customer that allegedly saw the tweet. [SMF, ¶25.]  Best Buy did not stop doing business with Kaijet after seeing the tweet in question, however, or otherwise change its purchasing behavior.  [SMF, ¶¶ 26, 40.]

Although the above-discussed tweet is the only example of alleged false advertising Kaijet's 30(b)(6) representative was able to identify, Kaijet's damages expert Mr. Pellegrino later appears to have assumed for purposes of his analysis that various consumer reviews of the HyperDrive model GN28 on Amazon.com also constitute false advertising.  A handful of customers wrote five-star reviews of the HyperDrive without disclosing that they received a full refund of their purchase price in return for the review.  [SMF, ¶¶16-17.]  These allegedly tainted Amazon.com reviews, according to Kaijet, entitle Kaijet to over $25 million in Sanho profits, a number not tied to any deception in the marketplace nor any sales lost by Kaijet. [SMF, ¶27.]  Rather, the absurd $25 million figure encompasses all of Sanho's profits from all sales of all 21 models of Sanho's HyperDrive-branded products from September 2017 to July 15, 2022.  [*Id*.]

### 3.    Sanho's Tweet Was Not False Advertising.

Sanho's tweet identified by Kaijet cannot constitute false advertising as a matter of law because it was not an advertisement at all.  To be actionable as a false advertising claim, the tweet would have had to constitute "commercial advertising

6

or promotion" intended to "influenc[e] consumers to purchase [Sanho's] goods or services."[11]   "[T]alking about how [Kaijet] steal[s] products and things like that," [SMF, ¶24], is facially not an advertisement or promotion contemplated by the false advertising case law, even assuming *arguendo* that Kaijet's characterization of the tweet is accurate.

Moreover, Kaijet was not "injured as a result of the false advertising," further dooming Kaijet's false advertising theory based on the tweet.[12]   The only customer that allegedly saw the tweet, Best Buy, did not stop purchasing Kaijet's products. [SMF, ¶¶26, 40.]

### 4.    The Third-Party Consumer Reviews of the HyperDrive® GN28 on Amazon.com Were Not False Advertising.

There are several reasons why the Amazon.com reviews identified by Kaijet's damages expert are also not false advertising as a matter of law.

First, Kaijet's 30(b)(6) representative did not identify the reviews as constituting false advertising or otherwise supporting Kaijet's false advertising counterclaim.  That testimony—a major purpose of which was to elucidate Kaijet's claims and defenses—is now binding on Kaijet.[13]   Any attempt by Kaijet to

---

[11]  *Optimum*, 2005 WL 3307508, at *5.

[12]  *Osmose*, 612 F.3d at 1308.

[13]  *Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp*., No. 1:12-CV-1250-JEC-JSA, 2013 WL 12246988, at *5 (N.D. Ga. June 4, 2013) ("Courts have found that, while the testimony of a 30(b)(6) witness is not a judicial admission, it is binding in the sense that it constitutes the official testimony of the corporation.").

introduce the Amazon.com reviews as a basis for its false advertising claims is thus improper and ineffective.[14] Having essentially admitted that it was not asserting that the Amazon.com reviews constitute false advertising, Kaijet is now barred from asserting otherwise.

Second, the product reviews on Amazon.com are not communications by "a defendant in commercial competition with the plaintiff."[15] None of the product reviewers in question were Sanho employees or agents. [SMF, ¶19.] Rather, these reviews were undisputedly submitted by third-parties. Sanho is not liable for statements made by its customers.

Third, the content of the HyperDrive reviews at issue are not "false or misleading," nor has Kaijet asserted otherwise.[16] These reviews merely describe the features of the HyperDrive and express personal opinions regarding product satisfaction. To illustrate, here is one of the five product reviews in question:

---

[14] *See Omnibus Trading, Inc. v. Gold Creek Foods, LLC*, No. 2:19-CV-166-RWS, 2022 WL 3702124, at *2 (N.D. Ga. Mar. 16, 2022) (finding that a party "may not offer evidence inconsistent with the deposition testimony of its Rule 30(b)(6) corporate representative").

[15] *See Optimum*, 2005 WL 3307508, at *5.

[16] *Osmose*, 612 F.3d at 1308.



Muhammad N.

★★★★★ Beautiful, sleek design Best **product** for the price. Would highly recommend!!
Reviewed in the United States us on November 28, 2017
Color: Gray | Verified Purchase

Many things I love about this product.
1) great size- conveniently fits in my bookbag without taking up much space. Even small enough to fit right in my pocket. Not too bulky!
2) has all the essentials:
-- 2 traditional USB's slots for my hard drive,
-- 2 USB-c's to charge my laptop
-- an HDMI input to stream all my shows
-- and a memory card reader to import my photos from my camera (also has an input for microSD)
3) Sleek design in the perfect color to match my Macbook-- instead of looking like a bulky adaptor, it almost seems like a **product** that comes with the laptop
4) Carrying case- comes with a leather case for storage so it doesn't get scratched up in my bag

[SMF, ¶17.]  The statements of fact set forth in the review—"fits in my bookbag," "2 traditional USB[] slots," "2 USB[ Type-C ports]," "an HDMI input," "a memory card reader," "comes with a leather case"—are all true and unambiguous.  [SMF, ¶19.]  The mere fact that the reviews do not disclose that the reviewer received a refund does not render them false advertising.[17]

And finally, Kaijet cannot credibly argue that the Amazon.com reviews "had a material effect on purchasing decisions" or injured Kaijet.[18]  The HyperDrive GN28 page on Amazon.com contains 2,459 reviews with a 4.2-star out of 5 overall rating.  [SMF, ¶18.]  Of these, only <u>five</u> received an undisclosed refund after leaving a five-star review.  [SMF, ¶17.]  A limited number of other reviewers received a free HyperVR Virtual Reality Headset gift for leaving a review, but several of these

---

[17]  *Clark Consulting*, 2005 WL 3097892, at *3 ("The [Lanham] Act imposes no affirmative duty of disclosure . . . and a claim cannot be based on the failure to disclose a fact.").
[18]  *Osmose*, 612 F.3d at 1308.

reviews were not 5-stars and one of them was a 2-star review, aligning generally with the overall average review on Amazon.com of between 4 stars and 5 stars. [SMF, ¶42.]  The accused reviews thus had, at most, a *de minimis* impact on the Amazon.com star rating.  Indeed, as confirmation of this self-apparent fact, the HyperDrive has a higher star rating on BestBuy.com than on Amazon.com, despite none of Sanho's alleged false advertising efforts being directed to HyperDrive reviews at BestBuy.com.  [SMF, ¶18.]

### 5.    The Lack of Any Reliable Evidence of Consumer Deception Dooms Kaijet's False Advertising Counterclaim.

Whether the alleged false advertising is the Sanho tweet identified in the Kaijet deposition, or the third-party reviews on Amazon.com, Kaijet's false advertising claim is doomed to fail because Kaijet has presented no reliable evidence of public deception.  [SMF, ¶30.]  The Supreme Court has held that "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising [, which] occurs when deception of consumers causes them to withhold trade from the plaintiff."[19] "[A]lleg[ing] an adequate basis to proceed under § 1125(a) [is insufficient; a

---

[19] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

plaintiff] cannot obtain relief without *evidence* of injury proximately caused by [the] alleged misrepresentations."[20]

The absence of reliable evidence of public deception in this case deprives Kaijet of standing for its false advertising counterclaim because it has not demonstrated an injury in fact.[21]  "Speculation [regarding whether Sanho's actions have injured Kaijet] does not suffice."[22]  In fact, even if a presumption of consumer deception applies to the alleged false advertising (which it does not), such a presumption cannot be used to satisfy the standing requirements.[23]  Accordingly, Kaijet's false advertising counterclaim fails at least because Kaijet lacks standing.

Moreover, to state a viable claim for false advertising based on statements that—as here—are not literally and demonstrably false, the claimant bears the burden of providing "evidence of deception in the form of consumer surveys, market

---

[20] *Id.* at 140 (emphasis in original).

[21] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) ("Our cases have established that the irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.") (internal quotations and citations omitted).

[22] *TocMail, Inc.*, 67 F.4th at 1263.

[23] *Id.* at 1263 ("The cases that use the presumption of injury merely support the proposition that when a plaintiff *with an otherwise sufficient interest to have standing* shows that its interest has been subjected to patently false representations, harm sufficient to sustain a claim and justify equitable relief may be presumed. . . . The presumption cannot be used to show Article III standing.") (emphasis in original) (quotation omitted).

11

research, expert testimony, or other evidence."[24]  Here, Kaijet's only evidence of widespread consumer confusion is the testimony of its damages expert Mr. Pellegrino, who admits that he has no expertise in the field of consumer surveys or consumer research. [SMF, ¶29.]  As he is not an expert in the relevant field, he is unqualified to perform or present customer surveys or market research as required for Kaijet to prevail on its false advertising claim.[25]

In fact, Kaijet's proffered evidence—even if admitted at trial—would not establish that the allegedly false advertising impacted a single purchasing decision. There is no evidence, for example, that Best Buy changed its purchasing decisions following Sanho's allegedly disparaging tweet.  On the contrary, Best Buy continued to purchase Kaijet's products unfazed.  [SMF, ¶¶26, 40.]

There is also no evidence that any allegedly misleading content of the Amazon.com reviews affected purchasing decisions.  [SMF, ¶¶28-30.]  In a token effort to push back on this point, Mr. Pellegrino's reply report (Exhibit Y) presents

---

[24]  *Optimum*, 2005 WL 3307508, at *6 (internal quotation omitted).

[25]  *Fed. Trade Comm'n v. Nat'l Urological Grp., Inc*., No. 1:04-CV-3294-CAP, 2017 WL 6759868, at *43 (N.D. Ga. Oct. 10, 2017), *aff'd*, 786 F. App'x 947 (11th Cir. 2019) (excluding survey testimony from an expert who had previously opined that "she did not consider herself to be 'an expert in survey design or analytics'"); *Trilink Saw Chain, LLC v. Blount, Inc*., 583 F. Supp. 2d 1293, 1305 (N.D. Ga. 2008) (holding that an expert attempting to testify regarding "how the average consumer would interpret [] language in [] advertisements" and "interpret consumer research data" was "clearly unqualified to render such testimony" where he was "neither a customer survey expert nor a market research expert").

two consumer surveys, but these surveys are small-scale, highly general, and overall not supportive of Kaijet's positions.  [SMF, ¶28.]  The first is an online survey of 501 adults showing that 74% of them had consulted an online review of a good or service in the prior six-month time period.  [SMF ¶28.]  The second is an email survey of 1100 respondents showing that 32.7% identified customer reviews and product recommendations as a main reason for shopping at Amazon.com.  [SMF ¶28.]  Even setting aside Mr. Pellegrino's admitted lack of qualifications to present these surveys, they are not probative for at least two additional reasons.  First, the surveys are not tethered to the specifically-accused advertisements or the specific products at issue in this case.[26]  Second, the surveys' unremarkable observation that consumers consult reviews and find them useful does not suggest that allegedly illegitimate reviews will impact purchasing decisions when they are substantially outweighed by legitimate reviews.[27]

Thus, Kaijet's false advertising claim necessarily fails because Kaijet can present no empirical evidence or even qualified expert testimony suggesting consumer deception, much less deception affecting any purchasing decisions.

---

[26] *See J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 798 (11th Cir. 2020) (holding a survey that "did not ask respondents whether their conclusions about the presence of [the allegedly deceptive feature] would have affected their decision to purchase one product or the other" cannot be probative of materiality because it "fails to address the critical issue of effect on purchasing decisions").

[27] *See id.*

13

Indeed, Kaijet has failed to present even the minimum evidence of injury in fact necessary to support standing.

### 6. Kaijet's Requested Disgorgement of Sanho's HyperDrive Profits Is Untethered From any Actual Harm Suffered by Kaijet and Thus Would Constitute an Improper Windfall.

Kaijet's opening damages report relating to its false advertising counterclaim seeks disgorgement of over $25 million in Sanho profits, representing all Sanho profits from all sales of all 21 models of Sanho's HyperDrive-branded products between September 2017 through July 15, 2022. [SMF, ¶27.] This is tantamount to Kaijet asserting that false advertising is responsible for literally every decision to purchase the HyperDrive for five years. As Kaijet can point to no correlation or evidence that the tweet or product reviews at issue created public deception that impacted any purchasing decisions, permitting Kaijet to present its false advertising claim to the jury would allow Kaijet to seek a windfall in excess of $25 million.

Such windfall awards are not permitted in false advertising cases brought under the Lanham Act, as the Act itself states that monetary rewards "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). In *Retractable Technologies, Incorporated v. Becton Dickinson*, for example, the Fifth Circuit found that profit disgorgement is not an available remedy for false advertising where "few or no sales were ever diverted from the plaintiff to the defendant."[28]

---

[28] 919 F.3d 869, 878 (5th Cir. 2019).

Specifically, the court explained that "disgorgement in such contexts would grant the plaintiff an unjustified 'windfall.'"[29]  Kaijet has failed to show that it has suffered any cognizable damages.

Accordingly, for the many reasons discussed above, the Court should grant Sanho's motion for summary judgment with respect to Kaijet's false advertising claims.  And in any event, as Kaijet can present no evidence of any diversion of sales from Kaijet to Sanho, Kaijet should not be permitted to seek disgorgement of Sanho profits at trial.  *See id.*

### B.    Sanho Is Not Liable for False Patent Marking.

Sanho owns all right, title and interest in the following U.S. Design Patents: U.S. D844,618 (the "618 Patent," issued April 2, 2019); U.S. D813,875 (the "875 Patent," issued March 27, 2018); U.S. D855,616 (the "616 Patent," issued August 6, 2019).  [SMF, ¶¶7-8.]  These designs each include a long, thin, flat-topped, generally-rectangular solid body with rounded corners with two side-by-side male connectors protruding from a single side:

---

[29]  *Id.*



FIG. 1,'616 Patent          FIG. 7, '875 Patent          FIG. 6, '618 Patent

[SMF, ¶¶7, 34].

Kaijet has asserted a false patent marking counterclaim in this case claiming that in 2020, Sanho improperly "marked" its Hyperdrive DUO model with these patent numbers. [SMF, ¶¶9-11, 31-32, 34.] The Hyperdrive DUO is a long, thin, flat-topped, generally-rectangular solid body with two rounded corners with two side-by-side male connectors protruding from a single side:



[SMF, ¶31.]

"[T]he two elements of a [35 U.S.C.] § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public."[30]  Kaijet cannot establish that Sanho intended to deceive the public with any of its patent marking, and thus its false marking counterclaim fails as a matter of law.  [SMF, ¶¶31-33, 35-36, 39.]

Moreover, "Section 292(b) [only] provides a private right of action to enforce § 292(a) to any 'person who has suffered a competitive injury as a result of a violation of this section.'"[31]  Kaijet has <u>not</u> suffered competitive injury as a result of Sanho's patent marking [SMF, ¶¶6, 39-41], and thus Kaijet's false marking counterclaim fails as a matter of law for this reason as well.

### 1.    Kaijet Can Present No Evidence that Sanho Intended to Deceive the Public with Its Patent Marking.

As the Federal Circuit has explained, "[t]he bar for proving deceptive intent [in the context of false patent marking] is particularly high, [because] the false marking statute is a criminal one, despite being punishable only with a civil fine."[32]  "Because the statute requires that the false marker act 'for the purpose of deceiving

---

[30]  *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting *Forest Grp. Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009).  *See also* 35 U.S.C. § 292(a) (prohibiting "mark[ing] upon . . . any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public.").

[31]  *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1399 (Fed. Cir. 2015) (quoting 35 U.S.C. § 292(b)).

[32]  *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010).

17

the public,' a purpose of deceit, rather than simply knowledge that a statement is false, is required."[33]  In other words, a party is only liable for false marking where it "consciously desire[d] the result that the public be deceived."[34]

In the present case, even if Kaijet could meet its burden to show that Sanho's Hyperdrive DUO product [SMF, ¶31] is not in fact patent-protected, it would still fail to establish liability because there is no evidence that Sanho's actions intentionally deceived the public.  At most, Kaijet can establish that Sanho's actions were negligent, which is insufficient to prove false patent marking as a matter of law.[35]  Sanho published its new Hyperdrive DUO webpage on or around May 11, 2020, which listed patents that Sanho historically associated with the earlier models of the Hyperdrive product line.  [SMF, ¶¶31-33.]  Someone from Sanho's marketing team likely copied and pasted the old GN28 product information into the new HD28 webpage as both products were called "Hyperdrive" and "DUO."  [SMF, ¶33.] There was thus no explicit intent to "mark" anything or to represent the product in a deceptive manner.  Sanho received no prior notice of a claim of false marking. [SMF, ¶35.] Shortly after learning about Kaijet's false marking counterclaim against Sanho, Sanho removed the allegedly false marking information from its webpage

---

[33] *Id.*

[34] *Id.*

[35] *See id.* (finding that even knowledge of deception does not establish actual intent to deceive).

out of an abundance of caution.[36]  [SMF, ¶ 36.]  Thus, Sanho's conduct in copying and pasting the content from one webpage of an earlier Hyperdrive model to a later one was understandable, at most negligent, and it was clearly not for the purpose of deceiving anyone.

Indeed, when Kaijet was asked about its false marking counterclaim at its 30(b)(6) deposition, Kaijet's witness testified, "I'm not prepared to answer those questions."  [SMF, ¶39.]  Kaijet's 30(b)(6) representative was not able to answer questions about false marking because Sanho did not engage in false marking.[37] Summary judgment with respect to Kaijet's false marking counterclaim is appropriate because Sanho lacked the requisite intent to deceive.

### 2.    Kaijet Has Not Suffered a Competitive Injury.

Not only is there no evidence that Sanho intentionally deceived the public with its Hyperdrive Duo webpage, there is also no evidence that Kaijet suffered a competitive injury as required by 35 U.S.C. § 292(b).  On the contrary, Kaijet's 30(b)(6) representative confirmed that Kaijet did not suffer any competitive injury as the result of the marking and Kaijet was not even aware of the marking at the time

---

[36] As of the January 2, 2024, the date of filing of Kaijet's most recent set of counterclaims (Doc. 422), Sanho was no longer displaying the same webpage. Kaijet thus no longer has Article III standing for any injunctive relief.  *Spokeo*, 578 U.S. at 339.

[37]  *See, e.g.*, *Monopoly Hotel Grp.*, 2013 WL 12246988, at *5 ("[T]he testimony of a 30(b)(6) witness . . . is binding in the sense that it constitutes the official testimony of the corporation.").

it allegedly occurred.  [SMF, ¶39.]  Another Kaijet officer and shareholder testified that he was unaware of any competitive injury that Kaijet has suffered due to any acts by Sanho other than having to defend this suit, and adverse publicity associated with a Sanho press release.  [*Id.*, ¶41.]

"A 'competitive injury' has been defined as 'a wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition.'"[38]  KaiJet alleges that it has "suffered competitive injury because of Sanho false marking the New HyperDrive DUO. Sanho has touted its patent protection via its Kickstarter page … and has used its patent protection as an alleged advantage over its competition, including KaiJet Limited." [SMF, ¶37.]  By definition, every false marker "touts" its patent protection, so if this allegation were considered to rise to the level of competitive injury, it would render Section 292(b)'s competitive injury rule superfluous.  KaiJet also alleges that "Sanho's false marking of its New HyperDrive Duo device is part of an ongoing effort by Sanho to use its design patents to chill the market for all products of this type regardless of the products ornamental design features."  [SMF, ¶38.]  But there is no evidence that the market chilled. Kaijet did not forego releasing its products.  Instead, Kaijet released at least seven different models of competing Ultradrive hubs [SMF, ¶6], both during and after the

---

[38] *ThermoLife Int'l, L.L.C. v. NeoGenis Labs, Inc.*, 411 F. Supp. 3d 486, 495 (D. Ariz. 2019) (quoting *Sukumar*, 785 F.3d at 1400 and Black's Law Dictionary (9th ed. 2009)).

May 11, 2020 to December 1, 2020 period in which Sanho's alleged false marking occurred [SMF, ¶40.].  Kaijet thus cannot prove competitive injury and, as such, summary judgment should be granted in favor of Sanho as to Kaijet's false marking counterclaim for this reason as well.

## III.    CONCLUSION

For the foregoing reasons, Sanho requests that the Court grant Sanho's Motion for Partial Summary Judgment as to Kaijet's false advertising and false patent marking counterclaims.

This 31st day of January, 2024.

Respectfully submitted,

By:    */s/ Steven G. Hill*
Steven G. Hill
GA Bar No. 354658
David K. Ludwig *(admitted pro hac vice)*
CT Bar No. 435310
**HILL, KERTSCHER & WHARTON, LLP**
3625 Cumberland Blvd., SE, Suite 1050
Atlanta, Georgia 30339-6406
Tel:  (770) 953-0995
Fax:  (770) 953-1358
Email:  sgh@hkw-law.com
Email:  dludwig@hkw-law.com

**-and-**

Ali A. Aalaei *(admitted pro hac vice)*
CA Bar No. 254713
Benjamin Martin *(admitted pro hac vice)*
CA Bar No. 257452

**ARI LAW, P.C.,**
3130 Alpine Road, Suite 288, PMB 408
Portola Valley, CA  94028
Tel:  (415) 830-9968
Fax: (415) 520-9456
Email:  ali@arilaw.com
Email:  bmartin@arilaw.com

*Counsel for Plaintiff Sanho Corporation*

## TYPE AND FONT CERTIFICATION

The undersigned certifies that the foregoing complies with Local Rule 5.1(B)

regarding typeface and font.

*/s/Steven G. Hill*
GA Bar No. 354658

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 31st day of January, 2024, I caused to be electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following participants and law firm who are registered CM/ECF users, and will be served by the CM/ECF system.

<u>*/s/Steven G. Hill*</u>
GA Bar No. 354658

*Counsel for Plaintiff Sanho Corporation*

24