# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SANHO CORPORATION,

                    Plaintiff,

v.

KAIJET TECHNOLOGY
INTERNATIONAL LIMITED, INC.,
and KAIJET TECHNOLOGY
INTERNATIONAL CORPORATION,
INC., doing business as "J5Create"; and
DOES 1-10,

                    Defendants.

**C.A. No. 1:18-cv-05385-SDG**

Consolidated with
C.A. No. 1:20-cv-02150-TCB

**Jury Trial Demanded**

## SANHO CORPORATION'S BRIEF IN
## OPPOSITION TO KAIJET TECHNOLOGY INTERNATIONAL
## CORPORATION'S MOTION FOR SUMMARY JUDGMENT (D.E. 446)

### ***Filed Under Seal***

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................iii- vi

I.     INTRODUCTION .........................................................................1

II.    KAIJET TAIWAN AND KAIJET U.S. ARE THE SAME
       COMPANY ..................................................................................2

       A. FCC Records Show that the Kaijet U.S. and Taiwan Entities Are the Same
          Company...............................................................................3

       B. Kaijet Taiwan Owns and Controls the UltraDrive Brand in the U.S ......4

       C. Taiwan Owns and Controls the "j5create" Group, Including its U.S.
          Affiliate's Activities ...............................................................5

       D. Kaijet Taiwan Maintains a Corporate Office in Georgia ......................6

       E. Kaijet Taiwan Authorizes Kaijet U.S.'s Operations ...............................6

       F. Management of Kaijet Taiwan, Kaijet U.S., and j5create Overlap.........7

       G. Kaijet Taiwan Transacted Business in Georgia by Directing the Creation
          and Sales of the Accused UltraDrive Products ......................................8

       H. Kaijet Taiwan Shipped the Ultradrive Products to Atlanta....................10

III.   THE COURT SHOULD DENY KAIJET TAIWAN'S SUMMARY
       JUDGMENT MOTION..............................................................................10

       A. Disputes of Material Fact Preclude Resolution of Kaijet Taiwan's
          Extraterritoriality Defenses ....................................................................11

       B. Disputed Material Facts Warrant Trial on Copyright Infringement .......13

          1. Kaijet Taiwan Had Access to the Copyrighted Packaging ...............13

i

2.  UltraDrive Packaging is Substantially Similar to the Copyrighted Packaging ......................................................................................17

3.  Extraterritoriality Is No Defense ........................................................22

C.  Kaijet Taiwan Cannot Avoid the Reach of the Lanham Act ..................24

D.  Kaijet Taiwan May Not Avoid the Reach of U.S. Patent Law ..............25

E.  Sanho's Pleadings Asserted Indirect Patent Infringement......................27

F.  Disputed Material Facts Warrant Trial on Whether Kaijet Taiwan and Kaijet U.S. Are Alter Egos...............................................................................29

III.  CONCLUSION...........................................................................................33

# TABLE OF AUTHORITIES

*Cases*                                                                                    **PAGE**

*Architects Collective v. Pucciano & English, Inc.,*
   247 F. Supp. 3d 1322 (N.D. Ga. 2017) ....................................................... 20

*Atlanta Photography, LLC v. Ian Marshall Realty, Inc.*,
   No. 1:13-CV-2330-AT, 2014 WL 11955391 (N.D. Ga. Mar. 7, 2014) ..... 24

*Baby Buddies, Inc. v. Toys R Us, Inc.*,
   611 F.3d 1308 (11th Cir. 2010) ................................................................. 13,21

*Beal v. Paramount Pictures Corp.,*
   20 F.3d 454 (11th Cir. 1994) ....................................................................... 20

*Beverly Hills Fan Co. v. Royal Sovereign Corp*.,
   21 F.3d 1558 (Fed. Cir. 1994) ................................................................. 25, 26

*Brown v. Advantage Eng'g, Inc.*,
   732 F. Supp. 1163 (N.D. Ga. 1990) ............................................................. 29

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
   489 F.3d 1129 (11th Cir. 2007) ................................................................... 24

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ..................................................................................... 25

*Casella v. Morris*,
   820 F.2d 362 (11th Cir. 1987) ..................................................................... 24

*Cf. Rothschild & Co. Continuation Holdings A.G. v. Sklarov*,
   440 F. Supp. 3d 1385 (N.D. Ga. 2020) ....................................................... 12

*Corwin v. Walt Disney Co*.,
   475 F.3d 1239 (11th Cir. 2007) ................................................................... 13

*Cases*                                                              **PAGE**

*DynCorp Int'l v. AAR Airlift Grp., Inc.*,
 664 F. App'x 844 (11th Cir. 2016) ............................................. 29

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991) .................................................................. 17

*FTC v. Amy Travel Service, Inc.*,
 875 F.2d 564 (7th Cir. 1989) ................................................... 23

*GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*,
 782 F. Supp. 763 (W.D.N.Y. 1991) .......................................... 22

*Harper & Row v. Nation Enterprises*,
 471 U.S. 539 (1985) .................................................................. 18

*Herzog v. Castle Rock Entm't*,
 193 F.3d 1241 (11th Cir. 1999) ................................................ 18

*Home Legend, LLC v. Mannington Mills, Inc.*,
 No. 4:12-CV-0237-HLM, 2015 WL 12434467 (N.D. Ga. Oct. 5, 2015) ... 13, 17

*In re Edelson*, Bankr.
 No. 08-77595-BEM, Adversary No. 11-05720-BEM, 2013 WL 5145714
 (Bankr. N.D. Ga. July 3, 2013) ................................................. 30

*Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*
 554 F.3d 914 (11th Cir. 2008) ................................................... 21

*Knieper v. Forest Grp. USA, Inc.*,
 No. 4:15-CV-00222-HLM, 2016 WL 9449794 (N.D. Ga. Sept. 12, 2016),
 *order clarified*, No. 4:15-CV-00222-HLM, 2017 WL 3449601
 (N.D. Ga. Jan. 23, 2017) ................................................... 20, 30

*LaJoie v. Pavcon, Inc.*,
 146 F. Supp. 2d 1240 (M.D. Fla. 2000) .................................... 13

| *Cases* | **PAGE** |
|---|---|

*Leigh v. Warner Bros., Inc.*,
212 F.3d 1210 (11th Cir. 2000) .................................................................. 13, 20

*Litecubes, LLC v. N. Light Prod., Inc.*,
523 F.3d 1353 (Fed. Cir. 2008) .................................................................. 26

*MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
420 F.3d 1369 (Fed. Cir. 2005) .................................................................. 25, 26

*Najran Co. v. Fleetwood Enters., Inc.*,
659 F. Supp. 1081 (S.D. Ga. 1986) ............................................................. 29, 30

*N. Am. Philips Corp. v. Am. Vending Sales, Inc.*,
35 F.3d 1576 (Fed. Cir. 1994) ..................................................................... 25

*Olem Shoe Corp. v. Washington Shoe Corp.*,
591 F. App'x 873 (11th Cir. 2015) .............................................................. 13, 14

*Oravec v. Sunny Isles Luxury Ventures*, L.C.,
527 F.3d 1218 (11th Cir. 2008) .................................................................. 17

*Paul v. Destito*,
250 Ga. App. 631, 550 S.E.2d 739 (2001) ................................................. 29

*Pulse Elecs., Inc. v. U.D. Elec. Corp.*
530 F. Supp. 3d 988 (S.D. Cal. 2021) ........................................................ 27

*Quinn v. Powell*,
No. 1:21-CV-03163-SDG, 2022 WL 1664554 (N.D. Ga. May 25, 2022) ..... 17

*Rivell v. Priv. Health Care Sys., Inc.*,
520 F.3d 1308 (11th Cir. 2008) .................................................................. 29

*Cases*                                                                      **PAGE**

*Salas v. Statebridge Co., LLC*,
 No. 1:21-CV-3959-SDG-JCF, 2022 WL 5442903 (N.D. Ga. July 19, 2022),
 *report and recommendation adopted as modified*, No. 121CV03959SDGJCF,
 2022 WL 4596338 (N.D. Ga. Sept. 30, 2022) ................................................ 31, 32

*Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*,
 293 F. Supp. 3d 1334 (M.D. Fla. 2017) ........................................................ 12

*Travelers Prop. Cas. Co. of Am. v. Clucis*,
 No. 1:20-CV-00276-SDG, 2022 WL 4773493 (N.D. Ga. Sept. 30, 2022) ..... 29

*United States v. Rodriguez*,
 753 F.3d 1206 (11th Cir. 2014) ..................................................................... 14

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
 556 F.2d 406 (9th Cir. 1977) ........................................................................ 24,25

### *Statutes*

15 U.S.C. §1117(a) .................................................................................................1

17 U.S.C. §504 .......................................................................................................1

35 U.S.C. §289 .......................................................................................................1

NOW COMES Plaintiff Sanho Corporation, and for its brief in opposition to Kaijet Technology International Corporation ("Kaijet Taiwan")'s Motion for Summary Judgment (D.E. 446), shows the Court as follows:

## I.    <u>INTRODUCTION</u>

Sanho brought this case challenging the Kaijet-controlled "j5create" group for knocking off its popular HyperDrive® USB-C hub and power adapter with a functionally and visually equivalent product called the "UltraDrive."  Sanho's claims against the UltraDrive include design patent infringement, copyright infringement, trademark infringement, trade dress infringement and related claims of unfair competition.  As a remedy to rectify Kaijet's infringement, these causes of action permit the disgorgement of infringer's profits.[1]

The j5create conglomerate comprises Kaijet Taiwan and co-defendant Kaijet Technology International Limited ("Kaijet U.S."), and each Kaijet entity booked sales and profits of the accused UltraDrive products.  So, if the instant motion is successful, Sanho would be unable to assert a claim against the ill-gotten gains of a key constituent of j5create – Kaijet Taiwan – meaning that j5create would still benefit from its counterfeiting activities.

---

[1]  *See, e.g.*, 35 U.S.C. §289; 17 U.S.C. §504; 15 U.S.C. §1117(a).

Kaijet Taiwan's motion is largely based on the false premise that it has not engaged in U.S. sales.  However, as shown herein, the applicable legal and equitable principles at issue in this case militate in favor of the denial of the instant motion when Sanho is given the benefit of all reasonable inferences arising from its evidence.  As this Court has already noted in an earlier ruling,[2] Kaijet Taiwan's actions constitute sales transactions in the U.S.  Moreover, the case law under the Copyright Act and the Lanham Act clarifies that even a foreign shipper of infringing goods into the U.S. may be held accountable under U.S. law.  Therefore, the Court should deny Kaijet Taiwan's motion.

## II.    KAIJET TAIWAN AND KAIJET U.S. ARE THE SAME COMPANY.

For good reason, this Court previously found that Kaijet Taiwan and Kaijet U.S. overlap, at least for purposes of discovery.  D.E. 185 at 33-37.  The former name of Kaijet Technology International Corporation is Kaijet Technology International Limited—the same name as the other Kaijet defendant in this case. Sanho Counterstatement of Material Facts ("SCMF"), ¶1.  Kaijet Taiwan later changed its name to Kaijet Technology International Corporation.  *Id*., ¶2.  The corporate structure of Kaijet Taiwan is organized based on geographical divisions within the company.  *Id*., ¶3.  Its United States division is composed of Kaijet Technology International Limited, Inc.  *Id*., ¶4.

---

[2] D.E. 185, at 16-19.

### A. FCC Records Show that the Kaijet U.S. and Taiwan Entities Are the Same Company.

In response to a FOIA inquiry, the Federal Communications Commission (FCC) determined that "Kaijet International Technology Corporation . . . and Kaijet International Technology Limited, Inc. . . . <u>are the same company</u>, with the former based in New Taipei City, Taiwan and the latter based in Kennesaw, GA." *Id*., ¶8. This finding by the FCC is significant, as the Commission regulates the importation of electronic goods into the United States, including with respect to the Kaijet entities.[3]

Indeed, the Kaijet entities' interactions with the FCC demonstrates that the FCC's determination was correct. Kaijet Taiwan has designated Jessica Liu, also Kaijet U.S.' CEO, as Kaijet Taiwan's manager in FCC registrations since at least 2015. *Id*., ¶5. Kaijet Taiwan has also filed hundreds if not thousands of documents and applications with the Commission through both its Kaijet Taiwan and Kaijet U.S. registration numbers. *Id*., ¶6. For the accused products in question including the JCD382 UltraDrive, Kaijet Taiwan had the importation documents and certificate of conformity prepared. *Id*., ¶7. And Kaijet Taiwan is listed as the applicant for the authorizations to import the accused products in the United States.

---

[3] Kaijet Taiwan is registered in Taiwan as an exporter/importer of goods. *See* D.E. 160-5, ¶3 (and the registered exporter/importer certificate, Ex. A thereto).

*Id*.  Taken together, the evidence conclusively supports FCC's finding that Kaijet Taiwan and Kaijet U.S. are effectively the same entity.  *Id*., ¶8.

Kaijet's only response to the FCC's finding is by arguing that it is "inadmissible hearsay,"[4] but this is inapposite at least two reasons.  First, the FCC's finding is excepted from the rule against hearsay as a public record under Federal Rule of Evidence 803(8).  And second, the facts supporting the FCC's finding would lead an independent factfinder to come to the same conclusion that the FCC did, regardless of whether the statement itself is hearsay.

### B.    Kaijet Taiwan Owns and Controls the UltraDrive Brand in the U.S.

Kaijet Taiwan also declared to the United States Patent and Trademark Office (USPTO) under penalty of perjury that it is engaged in commerce in the United States, attaching photographs of the accused products with its federal government filings.  *Id*., ¶9.   For example, on February 19, 2019, Kaijet Taiwan, through the direction of Liu, filed a trademark application for the enterprise's trademark "j5Create" and the mark "UltradriveMinidock." *Id*., ¶10.   In connection with its trademark applications, Kaijet Taiwan filed a Statement of Use in commerce with the USPTO declaring under penalty of perjury that its trademark is in active use in United States commerce.  *Id*., ¶13.  This Statement attached a specimen of its use in

---

[4] D.E. 446-1, at 32.

commerce showing photographs of the accused products in the present litigation. *Id*.

Kaijet Taiwan's trademark filings thus further demonstrate Kaijet Taiwan's control

over the marks used on the accused goods being sold in U.S. commerce.

**C.**



*Id.*, ¶18.

A Kaijet Taiwan slide deck also touts the fact that its products are "designed,

developed and made in USA and Taiwan." *Id.*, ¶19.

Further, materials produced in response to a subpoena to the Consumer

Electronics Show (CES) in Las Vegas, Nevada show that the @j5create.com email

domains were used to register Kaijet U.S. and Kaijet Taiwan for the show. *Id.*, ¶¶21,

22. Kaijet Taiwan represented to CES that: Kaijet U.S. falls under the category of

"Alias, Brand Names, Subsidiary Companies and Parent Companies[.]" *Id.*, ¶24.

**D.**    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮    **Corporate Office in Georgia.**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at the time of inception of this lawsuit represented to the public that it has an office located in the State of Georgia. *Id*., ¶15.  Specifically, ▮▮▮▮▮▮▮▮ web site stated:

| | |
|---|---|
| 🇺🇸 | 1025 Cobb International Dr. Suite 210<br>Kennesaw, GA 30152<br>United States |
| 🇨🇦 | 8145 130th St. Unit 14<br>Surrey, BC V3W 7X4<br>Canada |
| 🇳🇱 | Satijnbloem 63<br>3068 JP, Rotterdam,<br>Netherlands |
| 🇹🇼 | 8F, No.109, Zhongcheng Rd.,<br>Tucheng Dist., New Taipei City 236,<br>Taiwan (R.O.C.) |

*Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ j5create has "4 corporate offices around the world," further solidifying that its listed Georgia address is a "corporate office." *Id*., ¶16.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

          ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████    Kaijet Taiwan develops the products using its own components. *Id*., ¶30.

## F.    Management of Kaijet Taiwan, Kaijet U.S., and j5create Overlap.

Liu is Kaijet U.S.' CEO and Kaijet Taiwan's "Manager," per the records of the FCC.  SCMF, ¶¶ 5, 31.  Liu holds herself out as j5create's CEO and all the j5create affiliates do business as j5create.  *Id*., ¶¶31-32.  █████████████████

███████████████████████████████████████████████

███████████████████████████████████████  *Id*., ¶34.

Both Jessica Liu and Steven Lyu, ██████████████████████  identified

themselves to the process server in this case as the managers of Kaijet Taiwan. *Id.*, ¶35.

Date: 01/13/2020

SAMANTHA SNYDER
Notary Public, State of Nevada
Appointment No. 17-1460-1
My Appt. Expires Feb 7, 2021

*State of Nevada*
*County of Clark*

Server's signature

Adam Schwartz R-088182

*Printed name and title*

9811 W. Charleston Blvd 2-732, Las Vegas, NV 89117

*Server's address*

Additional information regarding attempted service, etc.:
1) Successful Attempt: Jan 7, 2020, 3:08 pm PST at 3150 Paradise Rd, Las Vegas, NV 89109 received by Steven Lyu. Age: 56; Ethnicity: Asian American; Gender: Male; Weight: 240; Height: 5'10"; Hair: Black; Eyes: Brown; First identified defendant from photo found online. I then confirmed identity by his CES name badge. Defendant confirmed that he is a managing member of Kaijet Technology, based out of Taiwan. Defendant willingly accepted documents.    5

████████████████████████████████████████████

██████████████████████████████████████  ████

███████████████████████████████████████

████████████████████████████████

█████████████████████████████████████

████████████

### G.    Kaijet Taiwan Transacted Business in Georgia  ██████████

███████████████████████████████████████

███████████████████████████████████████

██████  Kaijet Taiwan (including Liu) was present at the same CES show in January

---

5 D.E. 119.

2017 where the Hyperdrive was on display in its packaging. *Id*., ¶41. It is undisputed that by no later than June 2017, ████████████████████████████████████

████████████████████████

  After having likely seen the HyperDrive® at CES, and after ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

   ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████

   ████████████████████████████████████████

████████████████████████████████████████ The first UltraDrive was

imported and sold into the U.S. in October 2017. *Id*., ¶46. ████████████████

████████████████████████████████████████████████████



## II.    THE COURT SHOULD DENY KAIJET TAIWAN'S SUMMARY JUDGMENT MOTION.

Kaijet Taiwan seeks dismissal of Plaintiff's claims based substantially on grounds of extraterritoriality.  *See* (Doc. 446-2, Motion, at III.A.2 (Copyright Act Not Applicable), III.B (Lanham Act Not Applicable), III.D (Patent Act Not

Applicable).  However, there is substantial evidence that Kaijet Taiwan ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████

### A.    Disputes of Material Fact Preclude Resolution of Kaijet Taiwan's Extraterritoriality Defenses.

The Court observed in its prior order finding specific minimum contacts that "Kaijet Taiwan does not dispute that it sent emails and other intangible communications into Georgia regarding price negotiations and the ULTRADRIVE product."[6]  "Uncontroverted evidence shows that Kaijet Taiwan sent communications, including emails, into Georgia in relation to transactions and pricing of the ULTRADRIVE."[7]  "Additionally, Sanho demonstrates that Kaijet Taiwan purposefully directs its activities at Georgia by pointing to evidence that KaiJet Taiwan ships and sells the ULTRADRIVE in the State."[8]

It is perplexing that Kaijet Taiwan makes no effort now to show why these findings were incorrect or should be revisited.  Instead, Kaijet Taiwan has merely submitted a declaration from Yuki Tai, which offers the same general conclusory

---

[6] D.E. 185, at 17-18.
[7] *Id*., at 18.
[8] *Id*., at 22-23 (emphasis added).

statements that were originally proffered in the declaration that Tai submitted in support of Kaijet Taiwan's (unsuccessful) motion to dismiss.[9]  Far from supporting Kaijet Taiwan's arguments, Tai's declaration is belied by ███████████████

████████████████████████████████████████████████████████████

██████████████  Further, Kaijet Taiwan's FCC import compliance filings confirm its compliance with the conditions for export to the U.S.  Tai's declaration also fails to address Kaijet Taiwan's trademark applications and related Statement of Use, declaring Kaijet Taiwan's marked products, including UltraDrive, to be in commerce in the United States.[10]  At a minimum, there is evidence that Kaijet Taiwan used the allegedly infringing mark in interstate commerce in the U.S. in connection with the sale of the accused UltraDrive products.[11]  Using j5create group and Kaijet U.S., its ████████████████████████████████████

████████████████████████  In turn, its actions have created a genuine dispute of material fact preventing entry of summary judgment based on any

---

[9] *See* D.E. 146-3.

[10]  *See Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334, 1359–60 (M.D. Fla. 2017) (in trademark context, "modern view" is that the sale of goods that are imported into the U.S. and sold locally—not across state lines—constitute "use in commerce" if those local sales substantially affect interstate commerce) (internal quotations omitted).

[11] *Cf. Rothschild & Co. Continuation Holdings A.G. v. Sklarov*,  440 F. Supp. 3d 1385, 1391 (N.D. Ga. 2020) (discussing a foreign party's "use in commerce" trademark application as a factor showing that exercise of personal jurisdiction was fair and reasonable).

"extraterritoriality" defense.

**B. Disputed Material Facts Warrant Trial on Copyright Infringement.**

**1. Kaijet Taiwan Had Access to the Copyrighted Packaging.**

A plaintiff may prove copying by direct evidence, which is rare, or by indirect evidence.[12] If the plaintiff cannot show that the defendant had access to the copyrighted work, then the plaintiff must show that the defendant's work is "strikingly similar" to the copyrighted work.[13]  Where, as here, the defendant had access to the work, the plaintiff must show that the two works are "substantially similar."[14]

"Access requires proof of 'a reasonable opportunity to view' the work in question.  In some instances, proof that a copyright holder's work was 'widely disseminated' has been held to constitute circumstantial evidence of access."[15]  "A copyright plaintiff may establish access where a product is widely sold and displayed."[16]  "A demonstration of access does not require proof of actual viewing."[17]

---

[12]  *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010).
[13]  *Id.* (citing *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007)).
[14]  *Id.* (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000)).
[15]  *Olem Shoe Corp. v. Washington Shoe Corp.*, 591 F. App'x 873, 882 (11th Cir. 2015) (internal citations omitted).
[16]   *Home Legend, LLC v. Mannington Mills, Inc.*, No. 4:12-CV-0237-HLM, 2015 WL 12434467, at *3 (N.D. Ga. Oct. 5, 2015).
[17]   *LaJoie v. Pavcon, Inc.*, 146 F. Supp. 2d 1240, 1247 (M.D. Fla. 2000).

In this case, it is reasonable to conclude that "there was access to the [copyrighted article] through the availability of the [copyrighted product] at [BestBuy].com"[18] and at Best Buy stores. Sanho began selling HyperDrive® products at Best Buy in April 2017. *Id.*, ¶54. By June 2017, ████████████ ███████████████████████████ the HyperDrive in standard packaging was accessible on store shelves at any Best Buy in the U.S., and could also be purchased in its packaging at bestbuy.com. *Id.*, ¶55. The Court may take judicial notice that at that time, Best Buy had several stores in the metropolitan Atlanta area, including two in Kennesaw (where Kaijet maintains an office).[19]

████████████████████████████████████

████████████████████████████████████

██████████████████████████████

---

[18]  *Olem Shoe Corp.*, 591 F. App'x  at 887.
[19]  *See United States v. Rodriguez*, 753 F.3d 1206, 1207 (11th Cir. 2014) (taking judicial notice of "well-known and indisputable facts").



In fact, Kaijet Taiwan plainly had access to the HyperDrive® in its copyrighted packaging <u>before</u> mid-September 2017. Sanho displayed the HyperDrive® and its standard packaging at the CES trade show in Las Vegas in January 2017, *id*., ¶53, which Kaijet Taiwan's representatives attended, *id*., ¶21, 41.

| Copyright Access – 2017 Timeline | |
|---|---|
| January 2017 | Sanho displays HyperDrive in its original packaging at the CES trade show; Kaijet Taiwan's representatives attend.  (SCMF, ¶¶21, 41, 53.) |
| April 2017 | Best Buy commences sale of HyperDrive in its original packaging.  (*Id.* at ¶54.) |
| ███████ | ████████████████████████ |
| ███████ | ████████████████████████ |
| ███████ | ████████████████████████ |
| ███████ | ████████████████████████ |

In any event, Akins' access to the HyperDrive packaging in the U.S. is imputed to both Kaijet U.S. and Kaijet Taiwan.  As discussed, Kaijet Taiwan and Kaijet U.S. are the "same company."  *Id.*, ¶8.  Or, at a minimum, Kaijet U.S., Akins employer, ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

### 2. UltraDrive Packaging is Substantially Similar to the Copyrighted Packaging.

It is axiomatic that for copyright infringement to exist, Kaijet must have copied elements from the Sanho copyrighted packaging that are original.[20]  A determination of copyrightability of standard design elements will depend on whether there is any selection, coordination or arrangement of elements into an original compilation.[21]  "For a work to satisfy the originality requirement, "all that must be shown is that the work possess at least some minimal degree of creativity . . . . To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice."[22]  Here, Kaijet has not sought a determination of copyright invalidity based on lack of originality, which implicitly concedes that there are original elements which inhere in the Sanho copyrighted packaging.  As the Court can see, going clockwise, the selection and arrangement of the HyperDrive brand placement at the top, the specially-shaped cutout in relation to the left-hand edge of a pictured keyboard (running along the right hand-side of the packaging), in relation to the superimposed HDMI and Speed callouts located in the lower right-hand corner, with

---

[20]  "Probative similarity" requires a showing of "substantial similarity" with respect to copyrightable material. *Oravec v. Sunny Isles Luxury Ventures*, L.C., 527 F.3d 1218, 1224 (11th Cir. 2008) (citation omitted).

[21]  *Home Legend, LLC v. Mannington Mills, Inc.,* 784 F.3d 1404, 1406 (11th Cir. 2015).

[22]  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991); *Quinn v. Powell*, No. 1:21-CV-03163-SDG, 2022 WL 1664554, at *2 (N.D. Ga. May 25, 2022).

a product description at the bottom of the packaging, is more than sufficient to sustain the requisite showing of originality:



Summary judgment historically has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding the similarity between two works.[23]  Copyright infringement takes at least two forms.  In one, there is a great quantum of copying.  In another, the infringement may reside in the copying of an original part of the work which, while small quantitatively in relation to the work as a whole, is a qualitatively significant part of the work.[24]

---

[23]  *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999).

[24]  *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 564-66 (1985) (publishing small portion of manuscript infringed, and was not protected by fair use).

In the case at bar, a comparison of the front-side of copyrighted packaging to the front-side of the UltraDrive packaging reveals a triable issue of the requisite "substantial similarity" to support a finding of infringement:



SCMF, ¶58.  Among the substantial similarities in arrangement of the elements of the packaging design are:  (a) the oddly-shaped window cutout in the middle of the

packaging in each; (b) the way each cutout window is aligned in a substantially similar way to the left of a photograph of the left edge of a 2016 MacBook Pro; (c) the placement of said photograph in a substantially similar location, on the far right side of the front packaging; and (d) the substantially similar uses and locations of "HyperDrive" and "UltraDrive." *Id.*

A comparison of the reverse side of the copyrighted original packaging of the HyperDrive® and the original UltraDrive packaging further reveals that each used very similar perspective views of the respective products, each connected similarly to a 13" MacBook Pro, shown from a very similar angle, with similar callouts used to indicate the female ports of each device. *Id.*, ¶59.

Kaijet puts forward the declaration of Mr. Sarrabia purportedly noting 180 picayune differences between Kaijet's accused packaging and the copyrighted work. However, copyright infringement is not a math problem. Such lists of similarities and differences between works are inherently subjective and unreliable.[25] Here, the qualitative similarities override the smaller points of distinction, and a reasonable jury could so hold.

---

[25] *See Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 460 (11th Cir. 1994); *Leigh v. Warner Bros.,* 212 F.3d 1210, 1215 (11th Cir. 2000); *see also Architects Collective v. Pucciano & English, Inc.,* 247 F. Supp. 3d 1322, 1371 (N.D. Ga. 2017).

Kaijet's cited cases *Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*,[26] and *Baby Buddies*[27] are also facially inapposite.[28]  In each of those cases, the alleged similarities between the copyrighted product and the accused product were ***purely*** generic.  The alleged similarities between the two sets of house plans in *Intervest Constr.*, for example, were that they both had four bedrooms, a two-car garage, living room, dining room, family room, foyer, kitchen, two bathrooms, a nook, and a porch, i.e., the basic features of a modern home.[29]  Unlike the instant case, there was no original feature or arrangement of the copyrighted plans that was appropriated by the defendant.

Similarly in *Baby Buddies*, the alleged similarities between the bears on two pacifier holders were that each had "a head, two ears, two eyes, a nose, a mouth, a torso, two upper paws (representing the fore paws of a real bear), and two lower paws (representing the hind paws on a real bear). . . [i.e., the features that] define[] a teddy bear."[30]

These cases would have been analogous to the instant case if Sanho were alleging that the HyperDrive and UltraDrive packing were similar merely because each is a box with numbers and letters printed thereon, but of course that is not the

---

[26] 554 F.3d 914 (11th Cir. 2008).

[27] 611 F.3d at 1308.

[28] D.E. 446-1, at 17-20.

[29] *Intervest Constr.*, 554 F.3d at 916.

[30] *Baby Buddies*, 611 F.3d at 1317.

case.  Rather, Sanho has identified a set of packaging features which are arranged in an original manner on the copyrighted packaging so as to support a bona fide claim of original authorship.  Moreover, as shown above, the accused packaging has *appropriated the same set of original, copyrighted features*.

### 3.    Extraterritoriality is no Defense.

"[W]hen a foreign corporation is alleged to have purposefully injected itself into the American market by shipping infringing goods here—regardless of whether it does so directly or through an importer—the defendant should not be allowed to use the principle of non-extraterritoriality to shield itself from the reach of American courts and American copyright law."[31]  Kaijet Taiwan has purposefully shipped infringing UltraDrive products into the U.S. and is liable for damages caused here as a result, whether under a theory of direct infringement or contributory infringement.

Kaijet Taiwan's reliance on *Well-Made Toy*, where the sale took place abroad and the defendant did not ship the product at issue into the U.S., is misplaced.  Here, Sanho disputes with evidence ██████████████████ whether the accused sales of UltraDrive took place in the U.S. or abroad.  Moreover, ██████████ ████████████████████████████████ Accordingly, Kaijet Taiwan's

---

[31] *GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763, 773 (W.D.N.Y. 1991) (finding jurisdiction for copyright claim against foreign entity).

motion to dismiss the copyright infringement cause of action by characterizing its activity as <u>merely</u> extraterritorial should be denied.  Moreover, as shown above, there is evidence in the record that Kaijet Taiwan and Kaijet U.S. are the same company.  SCMF, ¶8.

Kaijet Taiwan's extraterritoriality arguments also fail based on Kaijet U.S.'s actions as the ███████████████████████████████████████████ ██████████████████████████████.  "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer."[32]  As shown above, ██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

Furthermore, Kaijet Taiwan's trademark filings reveal that the accused UltraDrive product of Kaijet Taiwan is being used in interstate commerce in the U.S.

---

[32]   *FTC v. Amy Travel Service, Inc.,* 875 F.2d 564, 573 (7th Cir. 1989).

Other than importation and sales of UltraDrive into the U.S., there is no way for Kaijet Taiwan's sworn statements to the USPTO to be true. This evidence is more than sufficient to raise a triable issue on Kaijet Taiwan's liability for copyright infringement under a direct or indirect theory of infringement.[33] "Indeed, the Eleventh Circuit recognizes that there are no strict distinctions between the various theories of liability."[34]

### C.    Kaijet Taiwan Cannot Avoid the Reach of the Lanham Act.

Here again, Kaijet Taiwan attempts to evade liability based on extraterritoriality, ignoring its own extensive conduct reaching into the U.S. and control of its U.S. affiliates. ██████████████, and FCC authorization documents provide overwhelming evidence that Kaijet Taiwan is engaged in commerce in the United States with respect to the UltraDrive through its U.S. sale and shipments of these products. Kaijet Taiwan filed a Statement of Use regarding the UltraDrive, for example, confirming that the product line is engaged in commerce in the United States. Moreover, ████████████████████████████████████████████████., Kaijet Taiwan is accountable for those activities.[35]

Thus, the extraterritorial reach of the Lanham Act is beside the point.

---

[33]   *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 (11th Cir. 2007); *Casella v. Morris*, 820 F.2d 362, 364–65 (11th Cir. 1987).

[34]   *Atlanta Photography, LLC v. Ian Marshall Realty, Inc.*, No. 1:13-CV-2330-AT, 2014 WL 11955391, at *3 (N.D. Ga. Mar. 7, 2014).

[35]   *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 427-29 (9th Cir.

As for the Lanham Act false advertising claim, Sanho presents its substantive argument and evidence that the product ad in question for the UltraDrive is literally and demonstrably false in its brief in opposition to the co-pending Starview Motion for Summary Judgment.  In an effort to avoid redundancy, Sanho refers the Court to that argument and evidence.  SCMF, ¶60-62.

### D.    Kaijet Taiwan May Not Avoid the Reach of U.S. Patent Law.

Kaijet Taiwan's sales of the UltraDrive in the U.S., , creates a disputed issue of material fact on Sanho's direct infringement claims against Kaijet Taiwan as a seller of the UltraDrive into the U.S.

"[T]o sell an infringing article to a buyer in [a forum state] is to commit a tort there[.]"[36]  "[A]n actual sale" for purposes of 35 U.S.C. §271 occurs where "contracting and performance" or other "essential activities" occur.[37]  In addition to documents listing Kaijet Taiwan ███████████████████████████

███████████████████████████████████

---

1977) (finding Lanham Act provided jurisdiction as to a foreign defendant where its agent acted as its instrumentality in the U.S.).

[36]  *N. Am. Philips Corp. v. Am. Vending Sales, Inc*., 35 F.3d 1576, 1579 (Fed. Cir. 1994) ("To hold otherwise would exalt form over substance in an area where the Supreme Court generally has cautioned against such an approach[.]") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985)).

[37]  *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp*., 420 F.3d 1369, 1377 (Fed. Cir. 2005); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp*., 21 F.3d 1558, 1571 (Fed. Cir. 1994) ("The "situs" of a patent infringement injury is the actual "place of the infringing sales.").

██████████████████.  The Court acknowledged these facts in its Order denying

Kaijet Taiwan's motion to dismiss, finding that Sanho's evidence at least raises an

inference that Kaijet Taiwan transacted business in Georgia.[38]  On this record, there

is at least a factual dispute whether Kaijet Taiwan transacted sales of the UltraDrive

to Kaijet U.S. within in the U.S., constituting direct infringement under 35 U.S.C. §

271(a).[39]

Indeed, the evidence shows that Kaijet Taiwan ████████████████

█████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████ Taken as a

whole, this evidence rebuts Kaijet Taiwan's contention that Kaijet U.S. <u>alone</u> bears

responsibility for any and all U.S. sales.

Kaijet Taiwan also relies on a reference to the term "FOB" on a few shipping

documents.[40]  The Federal Circuit has held, however, that international sales to the

United States can infringe under 35 U.S.C. § 271(a) even if they are FOB in a foreign

country.[41]  Moreover, the location of the FOB ████████████████████

---

[38]  D.E. 185, at 16-19.

[39]  *MEMC Elec. Mat.*, 420 F.3d at 1377 ("an actual sale" under § 271(a) occurs where "contracting and performance" or other "essential activities" in sale occur); *Beverly Hills Fan Co*, 21 F.3d 1558, 1571 (situs of tortious injury is "place of the infringing sales").

[40]  D.E. 446-1, at 4.

[41]  *Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353, 1369 (Fed. Cir. 2008)

████████████. Under these circumstances, there is a presumption in the industry, custom, and trade, that FOB means FOB point of destination, which here, was Atlanta.[42]  Here, as the Court observed earlier in this case, the negotiation, shipping and payment records support an inference that Kaijet Taiwan transacted business within the State of Georgia, including by selling infringing products to Kaijet U.S. in Georgia.[43]  Thus, even if Kaijet Taiwan is not jointly liable for any subsequent sales by Kaijet U.S. to Best Buy, Kaijet Taiwan is responsible for its sales of the infringing articles to Kaijet U.S.

### E.  Sanho's Pleadings Asserted Indirect Patent Infringement.

This is a motion for summary judgment, but Kaijet Taiwan sees fit to use this motion as some sort of *post hoc* motion to dismiss by challenging whether Sanho has pled a cause of action for inducement to infringe each of the patents at issue in this case.  As shown below, Sanho has set forth a cause for indirect patent infringement in this case.[44]

---

("GlowProducts bases its argument that these were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada.  Our case law, however, is inconsistent with such a theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271.").

[42] *Pulse Elecs., Inc. v. U.D. Elec. Corp.* 530 F. Supp. 3d 988, 1013 (S.D. Cal. 2021). (Under both the CISG and UCC, "[i]f the parties fail to indicate clearly whether their agreement is a shipment contract or a destination contract, the court will assume that the parties intended a shipment contract).

[43] D.E. 185, at 16-19.

[44] *See* D.E. 89, ¶¶15, 18-19, 22, 26, 56, 57, Prayer for Relief No. 2.

Specifically, Kaijet Taiwan asserts that "[n]either the First Action TAC nor the Second Action FAC pleads that KTIC, or any other party, had pre-suit knowledge of the Asserted Patents."[45]  This is false.

First, the Third Amended Complaint ("TAC") provides "Plaintiff provided actual notice to Defendant of its infringement, including without limitation the filing of the original complaint in the Northern District of California in 2018.  An additional cease and desist letter was sent to the defendants on November 12, 2019.  Notice was provided to Defendants through numerous other means."[46]

The First Amended Complaint in the Second Action ("FAC") likewise provides, "Plaintiff provided actual notice to Kaijet of its infringement."[47]  The FAC further states that "[i]n spite of such repeated notices, Kaijet has engaged in a pattern of conduct demonstrating: Kaijet's awareness of the [618 and 290] Patent[s]; the objectively high likelihood that Kaijet's actions constitute infringement of the valid and enforceable [618 and 290] Patent[s]; and that this objectively-defined risk was so obvious that Kaijet knew or should have known it."[48]

---

[45]  D.E. 446-1, at 31.
[46]  D.E. 89, TAC, ¶56; *see also* TAC, ¶57.
[47]  D.E. 418, FAC, ¶¶ 28, 37.
[48]  *Id.* at ¶¶ 29, 38.

Thus, the TAC and the FAC both "succeed[ ] in identifying facts that are suggestive enough to render [infringement by inducement] plausible."[49]  Sanho's pleadings are sufficient.

### F.    Disputed Material Facts Warrant Trial on Whether Kaijet Taiwan and Kaijet U.S. Are Alter Egos.

"Georgia courts pierce the corporate veil to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or evade contractual or tort responsibility."[50] Courts in this district interpreting Georgia law have recognized that the alter ego question should ordinarily be decided by a jury.[51]  Factors to be considered include whether one company uses another company as its "business conduit," including whether employees of one company also work on behalf of the other company.[52]

---

[49] *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 847 (11th Cir. 2016) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008)).

[50]  *Knieper v. Forest Grp. USA, Inc.*, No. 4:15-CV-00222-HLM, 2016 WL 9449794, at *7–9 (N.D. Ga. Sept. 12, 2016), *order clarified*, No. 4:15-CV-00222-HLM, 2017 WL 3449601 (N.D. Ga. Jan. 23, 2017) (quoting *Paul v. Destito*, 250 Ga. App. 631, 639, 550 S.E.2d 739, 747 (2001) (internal quotation marks, citation, and footnote omitted)).

[51]  *Travelers Prop. Cas. Co. of Am. v. Clucis*, No. 1:20-CV-00276-SDG, 2022 WL 4773493, at *7 (N.D. Ga. Sept. 30, 2022); *Brown v. Advantage Eng'g, Inc.*, 732 F. Supp. 1163, 1167 (N.D. Ga. 1990) (citing *Najran Co. v. Fleetwood Enters., Inc.*, 659 F. Supp. 1081, 1096 (S.D. Ga. 1986)).

[52]  *Travelers Prop. Cas. Co. of Am.*, 2022 WL 4773493, at *7.

Application of the alter ego theory "depends on the particular circumstances of the case and is a factual inquiry."[53]

"For inequity to result from recognition of corporate separateness, 'conduct rising to the level of actual fraud is not required.'"[54]  Instead, "the alter ego inquiry is conducted on a case by case basis and . . . if equity and good conscience dictate in a given situation that the corporate veil should be disregarded, then piercing this veil is proper."[55]  Indeed, "[t]he essence of the alter ego doctrine is that . . . liability is imposed to reach an equitable result."[56]

In the case at bar, Kaijet Taiwan is attempting to invoke its corporate "separateness" from Kaijet U.S. so that it may escape liability and hold onto the profits it made for the j5create group by engaging in infringement of Sanho's rights in the HyperDrive®.  Yet the facts of this case are egregious, and counsel against permitting such an injustice to occur.  Here, the evidence shows that Kaijet Taiwan and Kaijet U.S. have a unity of interest (the interests of the j5create group),  with "such unity of interest and ownership that the separate personalities of the

---

[53]  *In re Edelson*, Bankr. No. 08-77595-BEM, Adversary No. 11-05720-BEM, 2013 WL 5145714, at *8 (Bankr. N.D. Ga. July 3, 2013).
[54]  *Knieper v. Forest Grp. USA*, 2016 WL 9449794, at *8 (quoting *Najran Co. for Gen. Contracting & Trading v. Fleetwood Enters., Inc*., 659 F. Supp. 1081, 1097 (S.D. Ga. Oct. 1, 1986)
[55]  *Id*.
[56]  *Id*.

corporation and the owners no longer exist."[57]  First, ███████████
███████████████████████████████████
Second, ████████████████████████████████
████  Third, █████████████████, Kaijet Taiwan represented itself as owner of both the "j5create" and "UltraDrive" brands being used in interstate commerce in the U.S. *Id.*, ¶¶9-13.  Fourth, █████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████  *Id.*, ¶48.

Kaijet Taiwan also claims that Kaijet U.S. is an "Alias, Brand Names, Subsidiary Companies and Parent Companies[.]"  *Id.*, ¶24.[58]

     Moreover, Kaijet Taiwan's managers include █████████████████
████████████  The parties agree that ████████████████████
███████████████████████  *Id.*, ¶¶33, 36-37.  Liu and Lyu are also the owners of Kaijet U.S.  *Id.*, ¶¶33-34.  ████████

---

[57]  *Salas v. Statebridge Co., LLC*, No. 1:21-CV-3959-SDG-JCF, 2022 WL 5442903, at *13 (N.D. Ga. July 19, 2022), *report and recommendation adopted as modified*, No. 121CV03959SDGJCF, 2022 WL 4596338 (N.D. Ga. Sept. 30, 2022) (internal quotation omitted).

[58] Elsewhere, Kaijet Taiwan asserts that it is not in a parent-subsidiary relationship with Kaijet U.S. (D.E. 446-2, ¶25), giving rise to an inference that it views Kaijet U.S. as an "alias" of Kaijet Taiwan.

. *Id.*, ¶32.  Likewise, Yuki Tai acts as a manger on behalf of both Kaijet Taiwan and Kaijet U.S.  *Id.*, ¶5.

On these facts, the suggestion of a legal separateness between Kaijet Taiwan and Kaijet U.S. merely seeks to perpetuate "a sham, used to defeat justice . . . or to evade statutory, contractual or tort responsibility."[59]

---

[59]    *Salas*, 2022 WL 5442903, at *13 (internal quotation and citations omitted).

## III.    CONCLUSION

For the foregoing reasons, the Court should deny Kaijet Taiwan's Motion

for Summary Judgment.

This 9th day of February, 2024.

Respectfully submitted,

By:    */s/ Steven G. Hill*
Steven G. Hill
GA Bar No. 354658
David K. Ludwig *(admitted pro hac vice)*
CT Bar No. 435310
**HILL, KERTSCHER & WHARTON, LLP**
3625 Cumberland Blvd., SE, Suite 1050
Atlanta, Georgia 30339-6406
Tel:  (770) 953-0995
Fax:  (770) 953-1358
Email:   sgh@hkw-law.com
Email:   dludwig@hkw-law.com

**-and-**

Ali A. Aalaei *(admitted pro hac vice)*
CA Bar No. 254713
Benjamin Martin *(admitted pro hac vice)*
CA Bar No. 257452

**ARI LAW, P.C.,**
3130 Alpine Rd Ste 288 PMB 408
Portola Valley, CA 94028-7541
Tel:  (415) 830-9968
Fax: (415) 520-9456
Email:  ali@arilaw.com
Email:  bmartin@arilaw.com

*Attorneys for Plaintiff Sanho Corporation*

## **TYPE AND FONT CERTIFICATION**

The undersigned certifies that the foregoing complies with Local Rule 5.1(B)

regarding typeface and font.

_**/s/Steven G. Hill**_
GA Bar No. 354658

## **CERTIFICATE OF SERVICE**

I certify that on the 9th day of February, 2024, I caused to be electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following participants and law firm who are registered CM/ECF users, and will be served by the CM/ECF system.

*/s/Steven G. Hill*
GA Bar No. 354658

*Counsel for Plaintiff Sanho Corporation*