UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION, | Case No. 1:18-cv-05385-SDG |
| Plaintiff, | |
| v. | |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., dba "j5create;" and DOES 1-100, | |
| Defendants, | |
| SANHO CORPORATION, | Consolidated with Case No. 1:20-cv-02150-TCB |
| Plaintiff, | |
| v. | |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY INTERNATIONAL CORPORATION; MAGIC CONTROL TECHNOLOGY; STARVIEW GLOBAL LIMITED, each doing business as "J5Create;" and DOES 1-10, | |
| Defendants. | |

**DEFENDANT KAIJET TECHNOLOGY INTERNATIONAL
CORPORATION'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND.................................................................. 2

    A. KTIC ................................................................................................ 2

        1. KTIC does not sell products in the U.S. or import products into
           the U.S. ........................................................................................ 3

        2. KaiJet US is not a subsidiary of KTIC. ............................................ 5

        3. Sanho relies on incorrect Statements of Fact. ................................. 6

    B. Accused Packaging ............................................................................ 7

III.  ARGUMENT........................................................................................ 8

    A. Summary Judgment in Defendants' Favor is Appropriate as to
       Sanho's Copyright Claim (First Action, Count IV). ............................ 9

        1. No reasonable jury could find accused packaging infringes
           copyright registration........................................................................ 11

            (a)    No evidence of KTIC's access to copyrighted work. ............ 12

            (b)    The Accused Packaging and Sanho's Copyright
                   Registration are not Substantially Similar as a Matter of
                   Law....................................................................................... 15

                i.    It is Appropriate for this Court to Resolve the Issue of
                      Substantial Similarity on Summary Judgment. ................. 17

                ii.   No Reasonable Jury would find Sanho's copyright
                      registration and Defendants' packaging are substantially
                      similar................................................................................. 20

        2. Copyright Act Is Not Applicable to KTIC's Alleged Conduct......... 23

    B. Summary Judgment in KTIC's Favor is Appropriate as to Sanho's
       Lanham Act Claims (First Action, Counts II-III; Second Action,
       Count IV). .......................................................................................... 26

      1.  KTIC Is Not a United States citizen. ................................................ 28

      2.  There Is No Use in U.S. Commerce .................................................. 28

  C. Summary Judgment in KTIC's Favor is Appropriate as to Sanho's Lanham Act Claims (First Action, Counts II-III; Second Action, Count IV). ............................................................................................... 28

      1.  KTIC does not directly infringe U.S. atents ..................................... 29

      2.  Sanho Did Not Allege Claim for Indirect Infringement .................. 30

  D. As a Matter of Law, KTIC is Not an Alter Ego of KaiJet US. ............. 31

IV.   CONCLUSION ......................................................................................... 34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
143 S. Ct. 2522 (2023) ..................................................................................1, 27

*Advanced Screenworks, LLC v. Mosher*,
No. 2:19-cv-758-FtM-29MRM, 2020 U.S. Dist. LEXIS 2767
(M.D. Fla. Jan 8, 2020) ......................................................................................30

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*,
955 F. Supp. 220 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 948 (Fed. Cir.
1998) ...................................................................................................................27

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................................8, 9

*Baby Buddies, Inc. v. Toys "R" Us, Inc.*,
611 F.3d 1308 (11th Cir. 2010) ...................................................................*passim*

*Beal v. Paramount Pictures Corp.*,
20 F.3d 454 (11th Cir. 1994) .............................................................................11

*Calhoun v. Lillenas Publ'g*,
298 F.3d 1228 (11th Cir. 2002) .........................................................................11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................................8, 9

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)............................................................................................31

*Design Basics, LLC v. Lexington Homes, Inc.*,
858 F.3d 1093 (7th Cir. 2017) ...........................................................................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)............................................................................................17

*Ferguson v. NBC*,
584 F.2d 111 (5th Cir. 1978) .......................................................................12, 13

*Herzog v. Castle Rock Ent.*,
   193 F.3d 1241 (11th Cir. 1999) .................................................................*passim*

*Hickson Corp. v. N. Crossarm Co.*,
   357 F.3d 1256 (11th Cir. 2004) ...........................................................26

*Int'l Café, S.A.L. v. Hard Rock Café Int'l (USA), Inc.*,
   252 F.3d 1274 (11th Cir. 2001) ...........................................................27

*Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*,
   554 F.3d 914 (11th Cir. 2008) ...........................................................18, 19, 20

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
   299 F.3d 1242 (11th Cir. 2002) ...........................................................26

*Leigh v. Warner Bros., Inc.*,
   212 F.3d 1210 (11th Cir. 2000) ...........................................................16

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017) ...........................................................31

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ...........................................................15

*Maley v. Carroll*,
   381 F.2d 147 (5th Cir. 1967) ...........................................................33

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...........................................................9

*Mattel, Inc. v. Goldberger Doll Mfg. Co.*,
   365 F.3d 133 (2d Cir. 2004) ...........................................................22

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005) ...........................................................29

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007) ...........................................................28, 29

*Naga Hanuman Fish Packers v. Sivani Int'l LLC*,
   No. 1:23-CV-2019-SEG, 2023 U.S. Dist. LEXIS 222147 (N.D. Ga.
   Oct. 20, 2023) ...........................................................33

iv

*Palmer v. Braun*,
  376 F.3d 1254 (11th Cir. 2004) ..........................................................23

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013) ..........................................................29

*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) ...........................................................11

*Towler v. Sayles*,
  76 F.3d 579 (4th Cir. 1996) .................................................12, 13, 21

*United States v. Fidelity Cap. Corp.*,
  920 F.2d 827 (11th Cir. 1991) .....................................................33, 34

*United Steelworkers of Am. v. Connors Steel Co.*,
  855 F.2d 1499 (11th Cir. 1988) ..........................................................34

*Vanity Fair Mills, Inc. v. T. Eaton Co.*,
  234 F.2d 633 (2nd Cir. 1956), *cert. denied*, 352 U.S. 871 (1956) ....................27

*Watt v. Butler*,
  457 F. App'x 856 (11th Cir. 2012) ...............................................10, 11

*Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*,
  No. 00 Civ. 9605 (DFE), 2002 U.S. Dist. LEXIS 789 (S.D.N.Y.
  Jan. 16, 2002).............................................................................23, 24

*zIT Consulting GmbH v. BMC Software, Inc.*,
  No. 6:15-cv-1012-Orl-37KRS, 2016 U.S. Dist. LEXIS 5346 (M.D.
  Fla. Jan. 15, 2016)..............................................................................30

**Statutes**

17 U.S.C. § 101 ....................................................................................16

17 U.S.C. § 102(a) .........................................................................16, 17

35 U.S.C. § 271 .............................................................................29, 31

**Other Authorities**

37 C.F.R. § 202.1 .....................................................................17, 21, 22

Fed. R. Civ. P. 56 ................................................................................................8, 9

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair
    Competition* § 29:55.25 (5th ed.) ...................................................................1, 27

4 Nimmer on Copyright § 13D.05 (2022) ..............................................................12

U.S. Copyright Office, Compendium of U.S. Copyright Office
    Practices § 313.3(E) (3d ed. 2021) ....................................................................17

U.S. Copyright Office, Compendium of U.S. Copyright Office
    Practices § 313.4(C) ..........................................................................................17

U.S. Copyright Office, Compendium of U.S. Copyright Office
    Practices § 313.4(F) ..........................................................................................21

**TABLE OF ABBREVIATIONS**

| FULL NAME | ABBREVIATION |
|---|---|
| U.S. Design Patent No. D807,290 | '290 Patent |
| U.S. [Utility] Patent No. 10,572,429 | '429 Patent |
| U.S. Design Patent No. D844,618 | '618 Patent |
| Original Packaging for JCD382 Product | Accused Packaging |
| Copyright Reg. No. VA 2-103-336 | Copyrighted Registration or Copyrighted Packaging |
| *Sanho Corp. v. KaiJet Technology Int'l Ltd.*, No. 1:18-cv-05385 (N.D. Ga.) | First Action |
| Defendants KaiJet Technology International Corporation and KaiJet Technology International Limited, Inc, collectively | KaiJet or Defendants |
| Defendant KaiJet Technology International Limited, Inc. | KaiJet US |
| Transcript and exhibits to the July 14, 2022 deposition of KaiJet Technology International Limited, Inc. | KaiJet US 30(b)(6) |
| Transcript and exhibits to the June 30, 2022 deposition of KaiJet Technology International Corporation | KTIC 30(b)(6) |
| Defendant KaiJet Technology International Corporation | KTIC or KaiJet Taiwan |
| Transcript and exhibits to the May 26, 2020 deposition of Jessica Liu | Liu Depo |
| Plaintiff Sanho Corporation | Sanho |
| *Sanho Corp. v. KaiJet Technology Int'l Ltd.*, No. 1:20-cv-02150 (N.D. Ga.) | Second Action |
| Complaint, D.E. 204, filed May 19, 2020 | Second Action Complaint |

| FULL NAME | ABBREVIATION |
|---|---|
| First Amended Complaint, D.E. 418, filed Dec. 19, 2023 | Second Action FAC |
| Third Amended Complaint, D.E. 89, filed Nov. 14, 2019 | TAC or First Action TAC |

# I.   INTRODUCTION

This case concerns allegations of infringement of United States intellectual property – namely patents, trademark, and copyright.[1] As the Supreme Court has recently emphasized, intellectual property rights are limited to the territory of the country where they have been granted.[2] Sanho's intellectual property rights were granted in the United States, and therefore, are limited to this country.[3] But Defendant KaiJet Technology International Corporation ("KTIC" or "KaiJet Taiwan") does not operate in the United States.[4] It is a Taiwanese corporation operating entirely and solely in Taiwan.[5] It is a separate company from the United States corporation KaiJet Technology International Limited, Inc. ("KaiJet US").[6]

Plaintiff Sanho fails to make any allegations against KTIC specifically in either operative complaint.[7] Instead, Sanho bases its entire case against KTIC on an unsupportable theory of "alter ego liability" in an attempted end-run around the

---

[1] Statement of Undisputed Facts ("SUF"), ¶ 4.

[2] *Abitron Austria GmbH v. Hetronic Int'l, Inc.,* 143 S. Ct. 2522, 2529 (2023) (Lanham Act's trademark infringement provisions do not apply extraterritorially); Ex. 1 (Lydia Lundstedt, *Territoriality in Intellectual Property Law* (Stockholm University, 2016)) at 91; 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 29:55.25 (5th ed.).

[3] SUF, ¶ 5.

[4] SUF, ¶ 10.

[5] SUF, ¶ 9.

[6] *Id.*

[7] SUF, ¶ 8.

territorial limitations of its intellectual property rights.[8] Because no reasonable jury could find that KTIC is an alter ego of KaiJet US, Sanho's attempts to impart responsibility on KTIC for any actions of KaiJet US fail. Summary judgment should be granted in favor of KTIC on Counts I-IV of the First Action and Counts II-IV of the Second Action.

## II.    FACTUAL BACKGROUND

On May 25, 2018, Sanho filed its initial Complaint in the first case against KaiJet US.[9] On November 14, 2019, Sanho filed its Third Amended Complaint in the First Action, adding KTIC as a named Defendant.[10] On May 19, 2020, Sanho filed the Second Action against KaiJet US, KTIC, MCT, and Starview Global Limited.[11] On December 19, 2023, Sanho filed its First Amended Complaint in the Second Action.[12]

## A. KTIC

KTIC is a corporation organized under the laws of the Republic of China ("R.O.C.," commonly known as Taiwan).[13] It has a principal place of business at 8F, No. 109, Zhongcheng Rd., Tucheng Dist., New Taipei City 236, Taiwan R.O.C.[14]

---

[8] *Id.*
[9] SUF, ¶ 1.
[10] SUF, ¶ 2.
[11] SUF, ¶ 3.
[12] *Id.*
[13] SUF, ¶ 9.
[14] *Id.*

Although KTIC has a customer based in the United States, KaiJet US, KTIC has no presence in the United States.[15] KTIC does not direct advertisements to the United States.[16] KTIC's employees do not visit the United States.[17] In fact, KTIC's primary contact at KaiJet US is the CEO of KaiJet US, Jessica Liu, who is also based in Taiwan.[18]

### 1. KTIC does not sell products in the U.S. or import products into the U.S.

KTIC does not make, use, offer to sell, or sell products in the United States.[19] KTIC does not participate in sales within the United States.[20] KaiJet US purchases products from KTIC in Taiwan.[21] The contract outlining the supplier-buyer relationship between KTIC and KaiJet US is written in Chinese.[22] It mandates that all disputes between KTIC and KaiJet US be resolved in Taiwan.[23]

Negotiations between KTIC and KaiJet US primarily take place between the CEOs of the respective companies, Ms. Yuki Tai and Ms. Jessica Liu.[24] Both Ms. Tai and Ms. Liu are based in Taiwan.[25] When a purchase agreement is reached, Ms.

---

[15] SUF, ¶ 10.
[16] SUF, ¶¶ 11-12.
[17] SUF, ¶ 13.
[18] SUF, ¶ 15.
[19] SUF, ¶ 14.
[20] *Id*.
[21] SUF, ¶ 18.
[22] SUF, ¶ 16.
[23] *Id*.
[24] SUF, ¶ 15.
[25] SUF, ¶ 15.

Liu then forwards the pricing information to KaiJet US employees in the United States.[26]

KTIC does not import any products into the United States.[27] KTIC delivers its products FOB Taiwan.[28] It is up to the distributor, such as KaiJet US, to facilitate shipping and importing the purchased products to their destination country.[29] For the Accused Products, after taking title in Taiwan, KaiJet US shipped the products to the United States and was the entity that imported the products into the United States.[30] KTIC was not involved after the products were delivered in Taiwan.[31]

KTIC does not advertise its products in the United States.[32] KTIC does not participate in marketing in the United States; it provides KaiJet US with sample products for KaiJet US's marketing efforts.[33] While KTIC hosts the j5create.com website, it is KaiJet US that is responsible for its English language content.[34]

---

[26] SUF, ¶ 17.
[27] SUF, ¶¶ 18-20.
[28] SUF, ¶¶ 18-19.
[29] SUF, ¶¶ 18-20.
[30] SUF, ¶ 20.
[31] SUF, ¶ 21.
[32] SUF, ¶¶ 11-12.
[33] *Id*.
[34] SUF, ¶ 22.

### 2. KaiJet US is not a subsidiary of KTIC.

KTIC operates separately from its distributors, including KaiJet US.[35] KTIC does not operate out of or use KaiJet US's offices.[36] KaiJet US is not a subsidiary of KTIC and KTIC does not have the ability to control the operations of KaiJet US.[37]

KTIC and KaiJet US have no owners in common.[38] Jessica Liu, an owner and the CEO of KaiJet US, has not had an ownership stake in KTIC since 2014.[39] Decisions regarding KTIC operations are made by Ms. Tai.[40] Decisions regarding KaiJet US's operations are made by KaiJet US employees.[41]

KTIC and KaiJet US do not commingle any funds.[42] They do not have any shared bank accounts or commonly owned assets.[43] When products are purchased by KaiJet US, KTIC issues an invoice and KaiJet US transmits payment, no differently than any of KTIC's other distributors.[44] KaiJet US files its own annual report with the Georgia Secretary of State, independent of KTIC.[45]

---

[35] SUF, ¶ 23.
[36] SUF, ¶ 24.
[37] SUF, ¶ 25.
[38] SUF, ¶ 26.
[39] *Id*.
[40] SUF, ¶ 27.
[41] SUF, ¶ 28.
[42] SUF, ¶ 29.
[43] *Id.*
[44] SUF, ¶ 30.
[45] SUF, ¶ 31.

### 3. Sanho relies on incorrect Statements of Fact.

Sanho apparently contends that KTIC and KaiJet US are "the same company," based on a single hearsay letter sent by an employee of the FCC in regard to a FOIA request from Sanho's counsel. Notably, there is no history of agency action or fact-finding by the FCC. The letter is from an employee with no knowledge of the business of either KTIC or KaiJet US, who made the incorrect assumption that these entities were the same because they once had similar names.[46] The circumstances of Sanho's communication with this individual suggest that Sanho's counsel likely led the FCC worker to draw that inaccurate conclusion.[47]

Sanho further appears to rely on the fact that some workers employed by KaiJet US have an email address ending in "j5create.com," a domain registered by KTIC, as if all those having a "gmail.com" address were employed by Google.

Sanho's false assertions are directly contradicted by the testimony of those who know the facts. KTIC's President and CEO, Yuki Tai, testified that none of the owners or directors of KTIC are owners or employees of KaiJet US; that KaiJet US is not a subsidiary of KTIC; that KTIC does not have the ability to control the operations of KaiJet US, nor do the day-to-day operations of the two companies overlap; and KTIC does not provide financing to KaiJet US.[48]

---

[46] SUF, ¶ 32.
[47] *Id.*
[48] SUF, ¶ 26.

## B. Accused Packaging

Sanho's accuses packaging for KTIC's JCD382 product ("Accused Packaging") of copyright infringement. After receiving the JCD382 product design from a third-party manufacturer, KTIC designed the packaging for the product:[49]



KaiJet US had minimal involvement in the design of the Accused Packaging.[50] A first draft of the packaging design was completed on September 14, 2017 and the

---

[49] SUF, ¶ 33.
[50] SUF, ¶ 34.

Accused Packaging was finalized on September 18, 2017.[51] KTIC used its standard style and representative colors on the Accused Packaging.[52] No other companies' packaging, including any Sanho packaging, was considered when the Accused Packaging was created.[53]

### III.    ARGUMENT

Summary Judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[54] A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles.[55] "Factual disputes that are irrelevant or unnecessary" are not material.[56] A factual dispute is "genuine … if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[57]

"A party seeking summary judgment" has the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record that] demonstrate the absence of a genuine issue of material fact."[58] The party opposing summary judgment must then present evidence showing either (1) a

---

[51] SUF, ¶ 35.
[52] SUF, ¶ 36.
[53] SUF, ¶ 37.
[54] Fed. R. Civ. P. 56(a).
[55] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[56] *Id.*
[57] *Id.*
[58] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law.[59] The non-movant "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is genuine issue for trial."[60] If the evidence relied on by the non-movant is "merely colorable, or is not significantly probative, summary judgment may be granted."[61] Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[62]

## A. Summary Judgment in Defendants' Favor is Appropriate as to Sanho's Copyright Claim (First Action, Count IV).

Sanho accuses Defendants of infringing its copyright registration for "Retail Packaging of Hyperdrive TB3 USB-C Hub for MacBook Pro (Model:GN28B)," (the "Copyrighted Packaging") reproduced below: [63]

---

[59] *Id*. at 324.
[60] *Anderson*, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)).
[61] *Id*. at 249.
[62] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Anderson,* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").
[63] SUF, ¶ 38.



Sanho alleges that the Accused Packaging, (the original packaging of the JCD382 sold by KaiJet US), infringes the Copyrighted Packaging.[64] But no reasonable jury could find that Sanho succeeds on either prong of the test for copyright infringement: 1) access or 2) substantial similarity. Additionally, KTIC has not taken any action in the United States which would subject it to US Copyright law.

---

[64] SUF, ¶ 38.

1. **No reasonable jury could find accused packaging infringes copyright registration.**

"The gravamen of a copyright infringement suit is copying."[65] As such, "[t]he plaintiff must show that the defendant copied elements of an original work that is protected by the plaintiff's valid copyright."[66] Because "[d]irect evidence of copying is rarely available, [ ] the law provides a method of proving copying indirectly, which creates a presumption of copying that may be negated with evidence of independent creation."[67]

To establish prima facie evidence of copying, a plaintiff must show:

> (1) that the defendant had <u>access</u> to the plaintiff's work; that is, a reasonable opportunity to come across the work, **and** (2) that there is a <u>substantial similarity</u> between the protectable portions of plaintiff's and defendant's work; that is, an average lay observer would recognize defendant's work as having been taken from plaintiff's work. If the plaintiff is able to make the showing, then a presumption of copying arises and the burden of production shifts to the defendant.[68]

However, if a plaintiff fails to show both access and substantial similarity, the plaintiff's copyright infringement claim fails.[69]

---

[65] *Watt v. Butler*, 457 F. App'x 856, 858 (11th Cir. 2012).

[66] *Id.*

[67] *Id.; Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232, 1233 n.11 (11th Cir. 2002); *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1249 (11th Cir. 1999).

[68] *Watt*, 457 F. App'x at 858-859 (emphasis added); *Calhoun*, 298 F.3d. at 1232.

[69] *See Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 460 (11th Cir. 1994) (quoting *Shaw v. Lindheim*, 919 F.2d 1353, 1361 (9th Cir. 1990) ("Access without similarity cannot create an inference of copying."); *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1105 (7th Cir. 2017) ("Without access, there can be no copying

**(a) No evidence of KTIC's access to copyrighted work.**

To establish access, a plaintiff must demonstrate there was a reasonable possibility that the author, in this case KTIC employees, came across the plaintiff's work.[70] A "reasonable opportunity [to view] does not encompass any bare possibility in the sense that anything is possible. Access may not be inferred through mere speculation or conjecture."[71] While an inference of access may be based on a third party's possession of the plaintiff's work, this requires "more than a mere allegation that someone known to the [accused infringer] possessed the work in question."[72] Instead, the third-party intermediary must have a "close relationship with the infringer. An intermediary will fall within this category, for example, if she supervises or works in the same department as the infringer or contributes creative ideas to him."[73]

For example, in *Towler*, plaintiff submitted her screenplay to an individual whom plaintiff believed had ties to defendant.[74] Plaintiff alleged that the individual

---

and no viable claim for copyright infringement."); 4 Nimmer on Copyright § 13D.05 (2022) ("It is axiomatic that, in order to have appropriated expression from a protected work, defendant first must have had access to it.")

[70] *Herzog*, 193 F.3d at 1250 (this circuit regards a "reasonable opportunity to view" as access); *see also Ferguson v. NBC*, 584 F.2d 111, 113 (5th Cir. 1978).

[71] *Herzog*, 193 F.3d at 1250; *see also* 4 Nimmer on Copyright § 13D.05 (2022); *Ferguson*, 584 F.2d at 113 ("To support a finding of access there must be a reasonable possibility of access not a bare possibility.")

[72] *Herzog*, 193 F.3d at 1248 (citations omitted).

[73] *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996).

[74] *Id.*

agreed to forward the screenplay to defendant; however, plaintiff failed to show the individual actually provided the screenplay to defendant, and defendant's unrefuted testimony was he never received the screenplay.[75] The Fourth Circuit affirmed the district court's judgment in favor of defendant, finding "[a] mere possibility that such an opportunity [for the defendant to view or copy plaintiff's work] could have arisen will not suffice. Rather, it must be reasonably possible that the paths of the infringer and infringed work crossed."[76]

Here, similar to the facts in *Towler*, Sanho cannot produce any evidence— other than speculation—demonstrating anyone at KTIC had a reasonable opportunity to view Sanho's work prior to the creation of the Accused Packaging. Undisputed evidence demonstrates Sanho never advertised its product online with the Copyrighted Packaging.[77] Although Sanho displayed its packaging in a single comment on its Kickstarter campaign, Sanho has no evidence that anyone at KTIC ever accessed the Kickstarter campaign, let alone viewed the one comment containing photos of the Copyrighted Packaging.[78]

---

[75] *Id.*

[76] *Id.* at 582; *see also Herzog*, 193 F.3d at 1248 (no access where plaintiff delivered screenplay to members of her thesis committee and one of the members of thesis committee was an acquaintance of defendant); *see also Ferguson*, 584 F.2d at 113 (no access where plaintiff sent copies of unpublished musical composition to four individuals and two companies, all copies were returned to plaintiff, and defendant admitted to having some contact with one of the recipients).

[77] SUF, ¶ 39.

[78] SUF, ¶ 40.

Besides the single Kickstarter comment, the only way one could view the Copyrighted Packaging was in retail stores or after purchasing the product.[79] There is no evidence that anyone at KTIC viewed the Copyrighted Packaging in a retail store, and such access is unlikely given that Sanho did not sell the product with the Copyrighted Packaging in Taiwan.[80]

There is also no evidence that KaiJet US viewed the Copyrighted Packaging and then conveyed it to KTIC.[81] KaiJet US did not become aware of Sanho or its products until the summer of 2017.[82] By that time, Sanho had abandoned its use of the Copyrighted Packaging and switched to a new packaging design.[83] If KaiJet US did view any Sanho packaging prior to KTIC's completion of the Accused Packaging, it could only have been Sanho's new packaging design (the longer, taller box shown side-by-side with the Accused Packaging in Exhibit B to Sanho's cease-and-desist letter).[84] Additionally, there is no evidence that KaiJet US conveyed any Sanho packaging design to KTIC prior to completion of the Accused Packaging.[85] Simply put, there is no evidence KTIC had any access to Sanho packaging, let alone the Copyrighted Packaging, prior to designing the Accused Packaging.

---

[79] SUF, ¶ 41.
[80] SUF, ¶ 42.
[81] SUF, ¶ 43.
[82] SUF, ¶ 44.
[83] SUF, ¶ 45.
[84] SUF, ¶ 46.
[85] SUF, ¶ 47.

**(b) The accused packaging and Sanho's copyright registration are not substantially similar as a matter of law.**

In addition to access, Sanho has the burden of demonstrating the two works are substantially similar. Proving substantial similarity requires a two-part analysis.[86] First, plaintiff must show—typically with the aid of expert testimony—that the works in question are extrinsically similar because they contain substantially similar ideas that are subject to copyright protection.[87]

> Under the extrinsic test, a court will inquire into whether, as an objective matter, the works are substantially similar in *protected expression*. As a part of this test, a court will determine whether a plaintiff seeks to protect only uncopyrightable elements; if so, the court will grant summary judgment for defendant.[88]

Second, a plaintiff must satisfy the subjective, or intrinsic, portion of the test by showing substantial similarity in how those ideas are expressed.[89] This portion of the test considers whether the intended audience could determine that the works are substantially similar, usually without the aid of expert testimony.[90]

In general, a list comparing "random similarities scattered throughout the works" is "inherently subjective and unreliable,"[91] "particularly where the list

---

[86] *Herzog*, 193 F.3d at 1257.
[87] *Id.* ("expert testimony and analytic dissection are appropriate").
[88] *Id.* (emphasis added) (internal citations omitted).
[89] *See id.*
[90] *Id.*
[91] *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984)

contains random similarities, and many such similarities could be found in very dissimilar works."[92] "At the same time, '[a]nalyzing relatively amorphous characteristics of the [work] as a whole (such as the 'mood' or 'combination of elements') creates a danger of unwittingly extending copyright protection to unoriginal aspects of the work.'"[93]

Although copyright protection extends to "pictorial, graphic, and sculptural works," 17 U.S.C. § 102(a)(5), which "include two-dimensional and three-dimensional works of fine, graphic, and applied art … [s]uch works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned."[94] The statute elaborates:

> the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.[95]

"A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."[96] Thus, "a useful article, as a whole, does not receive copyright protection, but any

---

[92] *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1316 (11th Cir. 2010).
[93] *Id.* (quoting *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1215 (11th Cir. 2000)).
[94] 17 U.S.C. § 101.
[95] *Id.*
[96] *Id.*

constituent design elements that can be physically or conceptually separated from the underlying article can receive copyright protection."[97]

Additionally, "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author."[98] As a general rule, the format or layout of a book, page, poster, form, or the like is not copyrightable because it is a template of expression.[99] Furthermore, "[w]ords and short phrases such as names, titles, and slogans, are not copyrightable because they contain a *de minimis* amount of authorship."[100] Nor are basic shapes, symbols, or coloring.[101]

### i. It is appropriate for this Court to resolve the issue of substantial similarity on summary judgment.

As discussed above, summary judgment is appropriate where there is no evidence to establish access. Even if access is shown, the Eleventh Circuit makes

---

[97] *Baby Buddies*, 611 F.3d at 1316.

[98] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991); *see also* 17 U.S.C. § 102(a) ("Copyright protection subsists…in original works of authorship.").

[99] *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 313.3(E) (3d ed. 2021).

[100] *Id.* at § 313.4(C) (using examples of an individual's name, a business, a product, or catchwords, catchphrases, mottoes, slogans, or other short expressions as not being copyrightable); *see also* 37 C.F.R. § 202.1(a) ("[w]ords and short phrases such as names, titles, and slogans" and "mere listing of ingredients or contents" are not copyrightable).

[101] 37 C.F.R. § 202.1(a) (prohibiting registration of "familiar symbols or designs…lettering or coloring").

clear that summary judgment is appropriate in cases where substantial similarity is
not shown, i.e.,

> in cases where: (1) because access has been established, the
> crucial issue is substantial similarity; (2) there may be
> substantial similarity with respect to the non-copyrightable
> elements of the two works compared; and, (3) as to the
> protectable elements, there is substantial dissimilarity. In fact,
> when the crucial question in a dispute involving compilations is
> substantial similarity at the level of protectable expression, it is
> often more reliably and accurately resolved in a summary
> judgment proceeding. This is so because a judge is better able
> to separate original expression from the non-original elements
> of a work where the copying of the latter is not protectable and
> the copying of the former is protectable. The judge understands
> the concept of the idea/expression dichotomy and how it should
> be applied in the context of the works before him.[102]

For example, in *Intervest*, the Eleventh Circuit examined a set of architectural
house plans and found that, although the plans shared the same overall layout, no
reasonable jury could deem them substantially similar at the level of protected
expression due to numerous, subtle differences in the plans' otherwise standard
architectural features.[103] Common elements among the two floor plans included four
bedrooms, a two-car garage, living room, dining room, family room, foyer, kitchen,
two bathrooms, a nook, and a porch.[104] However, the plans contained differences as
well, such as different room dimensions, different garage entrance locations, the

---

[102] *Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 920 (11th
Cir. 2008) (internal citations omitted).
[103] *Id.* at 921.
[104] *Id.* at 916.

inclusion of a "bonus room" above the garage in one model but not the other, different locations of the air conditioning unit and water heater, the inclusion of windows in the garage in one model but not the other, and several differences between the various bedrooms across the two models.[105] The court, therefore, concluded that no reasonable jury could find the two floor plans at issue "substantially similar," and granted summary judgment in the defendant's favor.[106]

Likewise, in *Baby Buddies*, the plaintiff obtained a copyright registration for a pacifier holder featuring a white, plastic teddy bear attached to a blue ribbon tether with a bow.[107] The defendant's pacifier holder also featured a small white plastic bear with a blue ribbon tether and a bow.[108] The district court granted summary judgment in favor of the defendant, finding no infringement, and the Eleventh Circuit affirmed, finding that when "focusing on only the elements protected by the copyright laws (that is, setting aside the unoriginal and nonexpressive elements of the Baby Buddies pacifier holder)," the pacifier holders were not substantially similar.[109]

The Eleventh Circuit determined that the plastic bears and bows were the only elements of the design eligible for copyright protection, as the remainder of the

---

[105] *Id.* at 916-17.
[106] *Id.* at 921.
[107] *See Baby Buddies,* 611 F.3d at 1311.
[108] *Id.* at 1312.
[109] *Id.* at 1317-21.

design served the utilitarian function of connecting a baby's pacifier to his clothes.[110] The court then compared the bears and found that while they shared the same basic anatomical features, this was not a sufficient basis to find similarity because "every sculpture of a teddy bear shares these features simply because these features are what defines a teddy bear."[111] "To protect this basic combination of features would in effect give Baby Buddies exclusive rights over the very idea of a plastic sculpted teddy bear, which is expressly precluded under the copyright laws."[112] The court then considered the "particularized expression" of the two bears and found distinctive features such that "[n]o properly instructed juror could find these bears substantially similar."[113] Thus, the Eleventh Circuit found the defendant's work did not infringe as a matter of law.

### ii. No reasonable jury would find Sanho's copyright registration and Defendants' packaging to be substantially similar.

Similar to *Baby Buddies* and *Intervest*, no reasonable juror could conclude Defendants infringed any *protectable* elements of Sanho's copyrighted work. As an initial matter, Sanho provided no expert analysis regarding whether "the works in question are extrinsically similar because they contain substantially similar ideas that

---

[110] *Id.* at 1317-18.
[111] *Id.* at 1317.
[112] *Id.*
[113] *Id.* at 1318-19.

are subject to copyright protection."[114] To the contrary, it is apparent that copyright

protection does not extend to a number of elements contained in Sanho's packaging.

First, the term HYPERDRIVE, by itself, is the name of a product and is not entitled

to copyright protection.[115] Next, the short phrase "Thunderbolt 3 USB-C Hub for

MacBook Pro" is also not subject to copyright protection because it is a short phrase

which merely describes to consumers the contents of Sanho's product.[116] The

window on the front of Sanho's packaging is a commonly-used element of product

packaging, and is purely functional—it allows consumers to view Sanho's product;

thus, the "mechanical, utilitarian" aspect of the box window is not protectable by

copyright.[117] The phrases "4K HDMI" and "50 Gb/s Speed" again merely describe

the capabilities of Sanho's product.[118] Sanho's basic color scheme is not

protectable.[119] The photo of the MacBook Pro with Sanho's product also serves the

functional purpose of showing consumers how Sanho's product is used, and simply

explains the different ports contained in Sanho's product.[120] Finally, the wording

displayed on the back of Sanho's packaging is factual information which describes

---

[114] *Towler*, 76 F.3d at 583.

[115] *See* 37 C.F.R. § 202.1(a).

[116] *Id.*; 37 C.F.R. § 202.1(d).

[117] *See Baby Buddies*, 611 F.3d at 1317 (ribbon, tether, clip, and snap served functional purpose).

[118] 37 C.F.R. § 202.1(a), (d); Compendium of U.S. Copyright Office Practices § 313.4(F) ("mere listing of ingredients not copyrightable").

[119] 37 C.F.R. § 202.1(a).

[120] *See id.*

the benefits of Sanho's product, and thus not protectible expression.[121] Thus, very little of the packaging is protected by copyright, and Sanho's copyright protection is limited to the design elements, if any, that can be extracted from the noncopyrightable portions of its packaging.

Not only is little of Sanho's Copyrighted Packaging protectable, but the part that is protectable does not match the Accused Packaging. As explained in the expert report from Antonio Sarabia, there are *at least* 180 substantial *differences* between Sanho's Copyright Registration and the Accused Packaging.[122] These differences include the color, font, wording, and layout, to name just a few.[123] Sanho cannot claim protection for a basic combination of features to give it a monopoly on all boxes which contain a window, the color orange, and basic facts about a product's features. Such a monopoly is expressly precluded under copyright law, and the mere fact that there could be other ways to design packaging is irrelevant to a finding of substantial similarity.[124] Therefore, no reasonable jury could find that the protectable

---

[121] *Id.*

[122] SUF, ¶ 48.

[123] *Id.*

[124] *See e.g., Baby Buddies*, 611 F.3d at 1320 ("this type of creative competition is entirely consistent with the copyright laws," and that while Baby Buddies "has the right to prevent others from copying its creative expression," it does not have the ability to stop others "from expressing similar ideas differently."); *see also Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135-36 (2d Cir. 2004) ("[Plaintiff's] copyright in a doll visage with an upturned nose, bow lips, and widely spaced eyes will not prevent a competitor from making dolls with upturned noses, bow lips, and widely spaced eyes, even if the competitor has taken the idea from [plaintiff's]

elements of the Copyright Registration are substantially similar to the Accused Packaging. Summary judgment in KTIC's favor is appropriate.

## 2. Copyright Act is not applicable to KTIC's alleged conduct.

"[F]ederal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States. Thus, it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action."[125] Where all of a defendant's allegedly infringing conduct occurred outside of the United States, that defendant may not be found liable for direct copyright infringement.[126]

In *Well-Made Toy*, a New York Court held that a foreign corporation could not infringe a U.S. Copyright registration under nearly identical circumstances.[127] The defendants in *Well-Made Toy* were the supplier, a Hong Kong corporation, and its customer, a Delaware corporation.[128] "[Hong Kong Supplier] made toy doll strollers in Hong Kong; the fabric carried a design copyrighted by Plaintiff. [Hong Kong Supplier] sold the strollers in Hong Kong to [Delaware Customer], which then

---

example, so long as the competitor has not copied [plaintiff's] particularized expression.").
[125] *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004).
[126] *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*, No. 00 Civ. 9605 (DFE), 2002 U.S. Dist. LEXIS 789, at *1 (S.D.N.Y. Jan. 16, 2002)
[127] *Id.*
[128] *Id.* at *2.

shipped the strollers to its inventory in the U.S."[129] The New York Court held that, while the US based customer was subject to U.S. copyright law, "[Hong Kong Supplier] cannot be found liable for direct infringement given the absence of a predicate act in the U.S."[130]

The facts of *Well-Made Toy* are analogous to the undisputed facts here. KTIC cannot be found liable for copyright infringement because it committed no predicate act in the United States. Like the Hong Kong supplier in *Well-Made Toy*, KTIC is a foreign company that sells products entirely in its home country.[131] While KTIC did sell products in the Accused Packaging to a U.S. Company in Taiwan, that alone is not a predicate act in the U.S. which would give rise to U.S. copyright infringement. Therefore, regardless of the lack of similarity between the JCD382 packaging and the copyrighted work, KTIC is not liable for U.S. copyright infringement.

## B. Summary Judgment in Defendants' Favor is Appropriate as to Sanho's False Advertising Claim (Second Action, Count IV).

Sanho alleges that the JCD382 packaging that displayed an "8-in-1" label "misrepresents the nature, characteristics, and qualities of the JCD382 device as having … 8 port modules, despite the fact that there are only 7 on the JCD382 device."[132] But the "8-in-1" label counts the number of functions of the JCD382

---

[129] *Id.*
[130] *Id.* at *4.
[131] *See supra* Section II.A.1; SUF, ¶¶ 9-21.
[132] SUF, ¶ 49.

device. This description is clearly indicated on the packaging, which counts out the

eight functions:[133]



A false advertising claim requires a plaintiff to demonstrate that the advertising statement is either literally false or that it is true but misleading in context, conveys a false impression, or is likely to deceive customers.[134] If the statement is literally false, the movant need not present evidence of consumer deception. But if the statement is misleading, *the plaintiff must present proof of consumer deception.*[135] In order to prove deception, consumer survey research is often "key" evidence but … if "full-blown consumer surveys or market research" are not available, the Plaintiff must still provide "expert testimony or other evidence."[136]

It is undisputed that the "8-in-1" label on the JCD382 is, at a minimum, not literally false. And Sanho has not presented any survey evidence, expert testimony, or a single instance of consumer deception to support its claim.[137] Therefore, no reasonable jury could find that the "8-in-1" label constitutes false advertising.

## C. Summary Judgment in KTIC's Favor is Appropriate as to Sanho's Lanham Act Claims (First Action, Counts II-III; Second Action, Count IV).

The Supreme Court has recently confirmed that the Lanham Act's prohibitions against trademark infringement do not apply extraterritorially, i.e. to

---

[134] *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260-61 (11th Cir. 2004).
[135] *Id.*
[136] *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1247 (11th Cir. 2002).
[137] SUF, ¶ 51.

use in commerce outside the United States.[138] The sale of allegedly trademark-infringing goods in a foreign country will be governed by the law of that foreign country, *not the United States*.[139]

> This is true because, among other reasons, principles of international comity and the general principles of tort law – which ordinarily give jurisdiction in an infringement and unfair competition case at the place where the passing off occurs – dictate that each nation grant and control the exercise of trademark rights within its own borders.[140]

The Lanham Act does not apply to the alleged acts of KTIC because (i) KTIC is not a United States citizen and (ii) the alleged infringing conduct does not have the requisite effect on United States commerce to warrant application of the Lanham Act.[141] Thus, two factors are not satisfied. Federal courts have made clear that "the absence of one of the above factors might well be determinative," and the absence of two "is certainly fatal."[142] There is no evidence KTIC used an allegedly infringing mark in United States commerce.

---

[138] *Abitron*, 143 S. Ct. at 2529; *see generally* 5 McCarthy § 29:55.25 ("Any application of the federal Lanham Trademark Act to conduct occurring outside the territory of the United States must find an exception to the general presumption against extraterritorial application.").

[139] *Id.; See also Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 955 F. Supp. 220, 225 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 948 (Fed. Cir. 1998).

[140] *Aerogroup Int'l*, 955 F. Supp. at 225-226; *see also Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2nd Cir. 1956), *cert. denied*, 352 U.S. 871 (1956).

[141] *See Abitron*, 143 S. Ct. at 2529.

[142] *Vanity Fair*, 234 F.2d at 643; *see also Int'l Café, S.A.L. v. Hard Rock Café Int'l (USA), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001).

### 1. KTIC is not a United States citizen.

It is undisputed that KTIC is a Taiwanese company that operates entirely in Taiwan with no presence in the United States.[143] The evidence is that KaiJet US, not KTIC, imports and sells goods in the U.S. under the Ultradrive trademark.[144]

### 2. There is no use in U.S. commerce.

Sanho fails to show any use of the accused mark by KTIC in commerce in the United States.[145] As stated above, *KTIC* is not responsible for importing or selling any products in the United States.[146] Any effect on U.S. commerce is solely the result of KaiJet US importing and selling the Accused Products in the United States, not KTIC selling the Accused Products in Taiwan.

### D. Summary Judgment in KTIC's Favor is Appropriate as to Sanho's Patent Claims (First Action, Count I; Second Action, Counts II and III).

Count I of the First Action and Counts II and III of the Second Action allege that KTIC *directly* infringes four United States patents. Sanho attempts to enforce U.S. patents for actions that took place entirely outside of this country. There is a strong presumption against enforcing United States patent laws abroad because doing so would trample on the sovereignty of those countries.[147] "The presumption

---

[143] *See supra* Section II.A; SUF, ¶ 9.

[144] SUF, ¶ 20.

[145] SUF, ¶ 52.

[146] *See supra* Section II.A.1; SUF, ¶ 20.

[147] *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007) ("Foreign conduct is generally is the domain of foreign law," and in patent cases, foreign law "may

that United States law governs domestically but does not rule the world applies with particular force in patent law."[148] "It is axiomatic that U.S. Patent law does not operate extraterritorially to prohibit infringement abroad."[149]

### 1. KTIC does not directly infringe U.S. patents.

An act of direct patent infringement under §271(a) occurs when an entity "without authority … offers to sell, or sells any patented invention, *within the United States* …"[150] It is well established that direct infringement liability is "limited to infringing activities that occur within the United States."[151] "Mere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability under section 271(a)."[152] Whether activities are sufficient to establish an "offer to sell" or "sale" within the United States within the meaning of § 271(a) may be resolved on summary judgment.[153]

---

[148] *Id.* at 454-55.

[149] *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013).

[150] 35 U.S.C. § 271(a) (emphasis added).

[151] *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005).

[152] *Id.* at 1377.

[153] *Id.* at 1375-77.

KTIC did not make, use, sell, or offer to sell the Accused Products in the United States or import the Accused Products into the United States. [154] Therefore, it cannot be liable for direct patent infringement.

### 2. Sanho did not allege claim for indirect infringement.

It is beyond dispute that neither the First Action TAC nor the Second Action FAC properly pleads indirect infringement. A patent infringement complaint may not combine multiple types of infringement in one count.[155] All three patent claims allege only a single count of infringement – <u>direct infringement</u>.[156] Therefore, if Sanho contends that each count includes both direct infringement against KaiJet US and indirect infringement against KTIC, the pleadings are deficient and should be dismissed.

Additionally, Sanho has not sufficiently pleaded the elements of indirect infringement. The two forms of indirect infringement recognized by the patent

---

[154] *See supra* Section II.A.1; SUF, ¶ 14.

[155] *zIT Consulting GmbH v. BMC Software, Inc.*, No. 6:15-cv-1012-Orl-37KRS, 2016 U.S. Dist. LEXIS 5346, at * 9 (M.D. Fla. Jan. 15, 2016) (court dismissed a complaint as a shotgun pleading where it "improperly lump[ed] numerous distinct claims and legal theories together in a single count" including indirect and direct infringement theories); *see also Advanced Screenworks, LLC v. Mosher,* No. 2:19-cv-758-FtM-29MRM, 2020 U.S. Dist. LEXIS 2767 (M.D. Fla. Jan 8, 2020) (dismissing complaint without prejudice as an improper shotgun pleading where it alleged one claim of "directly infringing and/or inducing infringement and/or contributorily infringing the [] patent.").

[156] SUF, ¶ 4.

statute are active inducement to infringe and contributory infringement.[157] To state a claim for relief for induced patent infringement, "a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement."[158] "Like induced infringement, contributory infringement also requires knowledge of the patent in suit and knowledge of patent infringement."[159] Neither the First Action TAC nor the Second Action FAC pleads that KTIC, or any other party, had pre-suit knowledge of the Asserted Patents.[160] Therefore, Sanho has not asserted claims of indirect infringement against KTIC.

## E. As a Matter of Law, KTIC is Not an Alter Ego of KaiJet US.

Sanho alleges that KTIC and KaiJet US are under such unity of interest and ownership that "[a]lter ego liability is appropriate."[161] Sanho falsely alleges that "Kaijet US was formed by Kaijet Taiwan," and that "Kaijet Taiwan operates through a physical office located in Georgia."[162] Sanho falsely alleges that "officers, directors, and the shareholders or owners of the defendant entities are the same, and these overlapping individuals exercise control over the internal affairs and/or daily

---

[157] 35 U.S.C. §§ 271 (b) and (c), respectfully.
[158] *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376-77 (Fed. Cir. 2017) (internal quotations and citations omitted).
[159] *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).
[160] SUF, ¶ 6.
[161] *Id.*
[162] SUF, ¶¶ 8, 10, 13, 24.

operations of both entity defendants."[163] All these allegations are patently false, and despite extensive discovery demonstrating the true facts, Sanho has never withdrawn these baseless allegations. Instead, Sanho relies on an inadmissible hearsay letter it procured from a worker at the FCC, and the true but irrelevant fact that some of the employees of KaiJet US have email addresses on the KTIC-owned "j5create" domain.[164]

In reliance on these allegations, Sanho urges that the corporate forms of each entity should be disregarded to avoid fraud and injustice, i.e. that KTIC and KaiJet US should be legally treated as alter egos of one another. But instead, as described in the Background Facts above, KTIC operates wholly independently from all its distributors, including KaiJet US; KTIC operates out of its offices in Taiwan, does not operate out of KaiJet US's Georgia office, and has no presence in the United States at all. The two companies are not parent and subsidiary; they have no corporate affiliation whatsoever, and neither company has any authority to control the other. The two companies have no common officers, directors, or owners. They each operate independently: decisions regarding the day-to-day operations of KaiJet US are made by employees of KaiJet US, without participation or direction from KTIC. The two companies negotiate sales terms for products KTIC sells to KaiJet

---

[163] SUF, ¶¶ 8, 26-28.
[164] SUF, ¶ 32.

US; KTIC invoices for product sold and KaiJet US transfers funds for payment. The two companies do not comingle funds. Both companies observe all corporate reporting requirements for their respective country and state of formation.

As a result, these entities are not alter egos as a matter of law. Georgia law and Eleventh Circuit authority strongly support the protections afforded a corporate entity, and allow the corporate form to be ignored only under very limited circumstances, none of which apply here.[165] For example, even where two corporations were formed by the same party and have the same officers, that "does not mean that the two corporations are interchangeable."[166] Instead, one advancing an alter ego theory of liability must show evidence that the corporate form was abused, that the separate personality of the corporation does not exist, and that to respect the corporate entity "would promote injustice or protect fraud."[167] Thus, an alter ego inquiry may be appropriate where a plaintiff proves that a controlling person commingled corporate assets with his own, or failed to maintain corporate records separately.[168] By contrast, even the use of shared offices, a single telephone

---

[165] *United States v. Fidelity Cap. Corp.*, 920 F.2d 827, 837 (11th Cir. 1991) ("courts must exercise 'great caution,' and must not disregard the corporate entity without a showing that the corporate form has been abused," citing *Maley v. Carroll*, 381 F.2d 147, 153 (5th Cir. 1967), applying Georgia law.)

[166] *Fidelity Cap. Corp.*, 920 F.2d at 837.

[167] *Naga Hanuman Fish Packers v. Sivani Int'l LLC*, No. 1:23-CV-2019-SEG, 2023 U.S. Dist. LEXIS 222147, at *5-9 (N.D. Ga. Oct. 20, 2023), (citations omitted).

[168] *Id.,* citing Georgia case authority.

number, the filing of consolidated tax returns, use of the same stationery, and common management whereby one corporation had no employees of its own, are all insufficient to prove alter ego status.[169]

In fact, even where the asserted alter ego is a corporate subsidiary of the parent, alter ego status cannot be shown without proof that the parent so controls the subsidiary as to make it a mere instrumentality of the parent, together with proof that such control is used for the purpose of committing fraud or violating a legal duty.[170]

There is no genuine issue of material fact that Sanho has not shown, and cannot show, any of the elements needed to establish its contention that KTIC should have liability for the actions of KaiJet US under an alter ego theory. Sanho's meritless allegation will not preclude summary judgment in favor of KTIC.

## IV.    CONCLUSION

Sanho's claims fail because its intellectual property cannot be enforced beyond its proper subject matter and territorial scope. When Sanho's patents, trademark, and copyright are given their appropriate boundaries, no reasonable jury could find KTIC liable for the causes of action challenged in this motion. Therefore, summary judgment in favor of KTIC is appropriate.

---

[169] *Fidelity Cap. Corp.*, 920 F.2d. at 839-40.

[170] *United Steelworkers of Am. v. Connors Steel Co.*, 855 F.2d 1499, 1505-06 (11th Cir. 1988) (federal common law).

Respectfully submitted, this 31st day of January, 2024.

/s/ *Ryan P. Gentes*
Ryan P. Gentes
GA Bar No. 421695
Robert A. Madayag, III
GA Bar No. 123699
William B. Dyer III
GA Bar No. 236915
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com
Email: robm@leehayes.com
Email: bill.dyer@leehayes.com

Robert J. Carlson
WSBA Number 18455
*Admitted Pro Hac Vice*
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: carlson@leehayes.com

Rhett V. Barney
WSBA Number 44764
*Admitted Pro Hac Vice*
Johanna Tomlinson
WSBA Number 57582
*Admitted Pro Hac Vice*
LEE & HAYES, P.C.
601 W. Riverside Ave., Ste. 1400
Spokane, WA 99201
Telephone: (509) 324-9256
Email: rhettb@leehayes.com
johanna.tomlinson@leehayes.com

*Attorneys for Defendants*
*KaiJet Technology International*

*Limited, Inc. and KaiJet Technology*
*International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2024, I filed a true and correct copy of the foregoing document with the CM/ECF filing system of this Court, which will serve an electronic copy to all attorneys of record.

/s/ *Ryan P. Gentes*
Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com

*Attorney for Defendants KaiJet Technology*
*International Limited, Inc. and KaiJet*
*Technology International Corporation*

37

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

/s/ *Ryan P. Gentes*
Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.

*Attorney for Defendants KaiJet Technology*
*International Limited, Inc. and KaiJet*
*Technology International Corporation*