# EXHIBIT 5

```
 1                    UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3                           ---OOO---

 4   SANHO CORPORATION,                )
                                       )CIVIL ACTION
 5           PLAINTIFF,                )NO.:
                                       )1:18-CV-05385-SDG
 6      VS                             )
                                       )
 7   KAIJET TECHNOLOGY                 )
     INTERNATIONAL LIMITED, INC.,      )
 8   dba "j5create," and DOES 1-100,)
                                       )
 9           DEFENDANTS.               )
     _____  )
10                                     )
     SANHO CORPORATION,                )CIVIL ACTION
11                                     )NO.:
             PLAINTIFF,                )1:20-CV-02150-SDG
12                                     )(Consolidated Case)
        VS                             )
13                                     )
     KAIJET TECHNOLOGY                 )
14   INTERNATIONAL LIMITED, INC.;      )
     KAIJET TECHNOLOGY                 )
15   INTERNATIONAL CORPORATION;        )
     MAGIC CONTROL TECHNOLOGY;         )
16   STARVIEW GLOBAL LIMITED, each     )
     dba "j5Create;" and DOES 1-10,    )
17                                     )
             DEFENDANTS.               )
18   _____ /

19        VIDEOTAPED DEPOSITION OF KIEN HOE DANIEL CHIN

20                        JULY 21, 2022

21
     REPORTED BY:  JEANIE C. ALMA, CSR #10920
22   DIVISION HUSEBY WEST REGION, CHARLOTTE
     CORPORATE HEADQUARTERS
23   1230 WEST MOREHEAD STREET, SUITE 408
     CHARLOTTE, NC 28208
24   TEL:  800-333-2082
     JOB NO.:  405097
25                           ---oOo---
```

**Sanho Corporation vs Kaijet Technology International Limited, Inc., et al.**
**Kien Hoe Daniel Chin, Vol. 1 on 07/21/2022**                    Pages 2..5

---

**Page 2**

```
 1              UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION
                           ---oOo---
 3
 4  SANHO CORPORATION,              )
                                    )CIVIL ACTION
 5        PLAINTIFF,                )NO.:
                                    )1:18-CV-05385-SDG
 6     VS                          )
                                    )
 7  KAIJET TECHNOLOGY              )
    INTERNATIONAL LIMITED, INC.,   )
 8  dba "j5create," and DOES 1-100,)
                                    )
 9        DEFENDANTS.              )
    _____)
10
    SANHO CORPORATION,              )CIVIL ACTION
11                                  )NO.:
          PLAINTIFF,                )1:20-CV-02150-SDG
12                                  )(Consolidated Case)
       VS                          )
13                                  )
    KAIJET TECHNOLOGY              )
14  INTERNATIONAL LIMITED, INC.;   )
    KAIJET TECHNOLOGY              )
15  INTERNATIONAL CORPORATION;     )
    MAGIC CONTROL TECHNOLOGY;      )
16  STARVIEW GLOBAL LIMITED, each  )
    dba "j5Create;" and DOES 1-10, )
17                                  )
          DEFENDANTS.              )
18  _____/
19       Videotaped deposition of KIEN HOE DANIEL CHIN, taken
20  on behalf of Defendants at the Regus Business Center,
21  2033 Gateway Place, 5th Floor, San Jose, California,
22  commencing at 9:00 a.m. on July 21, 2022, reported by
23  Jeanie C. Alma, CSR No. 10920, a Certified Shorthand
24  Reporter in and for the State of California, pursuant to
25  notice.
```

**Page 3**

```
 1         A P P E A R A N C E S:
 2  FOR THE PLAINTIFF:
 3  Ari Law, PC
       BY:  Ali Ari Aalaei, Attorney at law (via remote video)
 4     BY:  Tatiana Delogramatic, Attorney at law
    90 New Montgomery St., Suite 900
 5  San Francisco, CA 94105
       Ph:  415-830-9968
 6  ali@arilaw.com
 7  FOR THE DEFENDANT STARVIEW GLOBAL LIMITED, INC.:
 8  Norton Rose Fulbright US LLP
       BY:  Yitai Hu, Attorney at law
 9  555 California Street, Suite 3300
    San Francisco, California 94104
10     Ph:  1-628-231-6808
    yitai.hu@nortonrosefulbright.com
11
12  FOR THE DEFENDANT KAIJET US AND KAIJET TAIWAN:
13  LEE & HAYES, PLLC
       BY:  Ryan Gentes, Attorney at law
14  ryan.gentes@leehayes.com
       BY:  Robert J. Carlson, Attorney at law
15  carlson@leehayes.com
       BY:  Hala Mourad, Attorney at law (via remote video)
16  75 14th Street, Suite 2500
    Atlanta Georgia 30309
17     Ph:  404-815-1900
18
19
20
21              ---oOo---
22
23
24
25
```

**Page 4**

```
 1                      INDEX
 2                    EXAMINATION
 3  Witness Name                                    Page
 4  KIEN HOE DANIEL CHIN
 5     BY MR. HU ..................................... 7
 6     BY MR. CARLSON ............................... 101
 7
 8                     EXHIBITS
 9
    Exhibit     Description               Marked Admitted
10  1100        Defendant KaiJet Technology   8
                International Limited, Inc.s,
11              Third Amended Notice of Rule
                30(B)(6) deposition of
12              plaintiff Sanho Corporation
13  1101        settlement agreement between  32
                intelliARMOR and Sanho
14              Corporation, Bates SAN2603 to
                2616
15  1102        Settlement agreement between  37
                ALOGIC and Sanho Corporation,
16              Bates # SAN2528 to SAN2534
17  817         (Previously marked) Agreement 38
                between GoPod and Sanho
18              Corporation
19  1103        Declaration of Daniel Chin in 69
                support of plaintiff's motion
20              for preliminary injunction
21
22             Instructed Not to Answer
23  Instructed Not to Answer              Page   Line
24                                         11     23
25                                         13     23
                                           21     8
```

**Page 5**

```
 1                      INDEX
 2  Instructed Not to Answer              Page   Line
 3                                         23     9
 4              ---oOo---
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Sanho Corporation vs Kaijet Technology International Limited, Inc., et al.**
**Kien Hoe Daniel Chin, Vol. 1 on 07/21/2022          Pages 110..113**

Page 110

1    A.  BY THE WITNESS:  I have a rough concept, and I
2   worked together with Wise Studio on the packaging.  It
3   was a quick turnaround, so I can't imagine the process
4   taking too long.
5    Q.  BY MR. CARLSON:  Okay.  And was there ever a
6   time that you removed product from the version 1
7   packaging and put it into this new packaging?
8        MR. AALAEI:  Objection to form.
9    A.  BY THE WITNESS:  I don't think so.
10    Q.  BY MR. CARLSON:  Okay.  Is it correct that the
11   first version of the hub that went into this version 2 of
12   the packaging was the GN28B hub?
13        MR. AALAEI:  Objection to form.
14    A.  BY THE WITNESS:  No.  Version 1, the version
15   before this, was the version that first got into Best
16   Buy.
17    Q.  BY MR. CARLSON:  Okay.  And GN28B was the
18   product SKU in that package at Best Buy?
19        MR. AALAEI:  Objection to form.
20    A.  BY THE WITNESS:  The product is the same, just
21   at a later stage we changed the packaging.
22    Q.  BY MR. CARLSON:  Okay.  Did you consult with
23   Best Buy about making that packaging change?
24        MR. AALAEI:  Objection to form.
25    A.  BY THE WITNESS:  Yes.  We have to.

Page 111

1    Q.  BY MR. CARLSON:  When you say "we have to," what
2   does that mean?
3    A.  We have to inform Best Buy of our decision to
4   make a packaging change.
5    Q.  Is that because of your agreement with Best Buy?
6        MR. AALAEI:  Objection to form.
7    A.  BY THE WITNESS:  I'm not sure if it's an
8   agreement or not, but the dimensions of the packaging is
9   different, so logistically we have to make sure that the
10   new packaging will still fit in the space that Best Buy
11   has for us.
12    Q.  BY MR. CARLSON:  I see.  Who at Sanho
13   communicated with Best Buy about this packaging change?
14        MR. AALAEI:  Objection to form.
15    A.  BY THE WITNESS:  I would have told Powerplay and
16   Powerplay communicate that to Best Buy.
17    Q.  BY MR. CARLSON:  Okay.  And then did Powerplay
18   also communicate back to you what their conversation with
19   Best Buy was?
20    A.  Well, obviously Best Buy said okay because we
21   proceeded with subsequent orders.  Subsequent new orders
22   were delivered in the new packaging.
23    Q.  Okay.  I guess my question is, was that approval
24   communicated to Powerplay or to you directly?
25        MR. AALAEI:  Objection to form.

Page 112

1    A.  BY THE WITNESS:  If I recall correctly, they
2   communicate to Powerplay and Powerplay communicate to me.
3    Q.  BY MR. CARLSON:  Okay.  Was there a concern when
4   you made the change to version 2 of the packaging that
5   you were giving up goodwill that you had built up in
6   version 1 packaging?
7        MR. AALAEI:  Objection to form.
8    A.  BY THE WITNESS:  I believe we conceived version
9   2 of packaging before knowledge of KaiJet UltraDrive, so
10   we did not expect KaiJet to copy our packaging, our
11   product, our brand and insert a similar looking product
12   into Best Buy.  So, had I known that, I might not have
13   changed the packaging.
14    Q.  BY MR. CARLSON:  And why do you say that?
15    A.  Because of our successful crowd funding campaign
16   and our successful initial sales at Best Buy, the
17   original packaging is synonymous with the product.  So
18   when we switched to the new packaging and KaiJet had the
19   look of our old packaging, it created a lot of confusion
20   in the market.  So customers probably thought that --
21   customers who are familiar with the old packaging
22   probably thought that the UltraDrive was HyperDrive.  And
23   us switching to new packaging did not help the matter.
24    Q.  You said you made the decision to switch to this
25   version 2 before you knew about KaiJet entering the

Page 113

1   market?
2    A.  I believe so.
3    Q.  So you made the decision to change that
4   packaging and not to go back, and it was your intention
5   to abandon version 1 of the packaging; isn't that
6   correct?
7        MR. AALAEI:  Objection to form.
8    A.  BY THE WITNESS:  We constantly update our
9   packaging.
10    Q.  BY MR. CARLSON:  Even if there's goodwill in the
11   packaging?  I mean, if there's consumer recognition?
12        MR. AALAEI:  Objection to form.
13    A.  BY THE WITNESS:  Again, we did not expect KaiJet
14   to come out with a copy of our product, with a copy of
15   our packaging.  Whatever goodwill we have is with our
16   product, with our brand name that unfortunately KaiJet
17   has misappropriated as its own.
18    Q.  BY MR. CARLSON:  Okay, but you didn't actually
19   focus on the goodwill in the packaging when you decided
20   to change it.  It didn't matter to you that there was
21   goodwill in the packaging; is that what you're saying?
22    A.  We have other --
23        MR. AALAEI:  Objection to form.
24    A.  BY THE WITNESS:  We have other forms of
25   goodwill.

**Sanho Corporation vs Kaijet Technology International Limited, Inc., et al.**
**Kien Hoe Daniel Chin, Vol. 1 on 07/21/2022          Pages 122..125**

Page 122

1    Q.   And those have been produced to us?
2    A.   Yes.
3    Q.   Okay.  Do you happen to know the production
4    numbers?
5    A.   No.
6    Q.   All right.  We've been talking about returns
7    from Best Buy of products originating from a different --
8    from KaiJet.  Do you ever get product returns from Best
9    Buy of products from other manufacturers that are not
10   Sanho?
11   A.   Yes.
12   Q.   What are the manufacturers?
13        MR. AALAEI:  Objection to form.
14   A.   BY THE WITNESS:  I can't remember.  All I
15   remember was I walked in the warehouse, and I saw a bunch
16   of products that are not ours, and I asked the warehouse
17   manager what are this and he told me these are returns
18   from Best Buy.
19   Q.   BY MR. CARLSON:  Okay.  When you had this
20   conversation with the warehouse manager, how many things
21   were you talking about?  How many different products were
22   you looking at to talk to him about?
23   A.   50 to hundred products.
24   Q.   All from some other manufacturer that had been
25   returned by Best Buy to Sanho by mistake?

Page 123

1    A.   Yes.
2    Q.   So, apparently, this is something that happens
3    rather frequently with Best Buy?
4        MR. AALAEI:  Objection to form.
5    A.   BY THE WITNESS:  What I suspect is customer
6    bought the HyperDrive from Best Buy, but when they did a
7    return, they returned a different product, or it could be
8    Best Buy.  It's just a theory.
9    Q.   BY MR. CARLSON:  Do you know anything about the
10   process by which return products from Best Buy get
11   returned to Sanho?
12        MR. AALAEI:  Objection to form.
13   A.   BY THE WITNESS:  I can only speak from my
14   personal experience when I return a product to Best Buy.
15   If you have a receipt, they will scan the receipt to
16   process the return.  If you don't have the receipt, they
17   will scan your credit card; they scan the bar code of the
18   return product packaging to process the return.  I think
19   that's how returns are normally processed at retailers.
20   They will scan the bar code of the product.
21   Q.   BY MR. CARLSON:  And then they print out a label
22   of some kind and the label gets stuck on the product?
23   A.   Yes.
24   Q.   Do you know -- let's focus -- we've been talking
25   about N28B.  Let's talk about any other hub product, like

Page 124

1    the 21 or 22 series.
2        Has Sanho experienced returns of those products
3    from manufacturers that weren't Sanho?
4        MR. AALAEI:  Objection to form.
5    A.   BY THE WITNESS:  I don't know.  All I can say is
6    we received products that are non-Sanho from Best Buy.
7        MR. AALAEI:  Counsel, I see we're going to stop
8    at 5 p.m.  Is that a fair assumption?
9        MR. CARLSON:  Let's take a short break, I mean a
10   real short break and I'll consult.  Let's stay on, in
11   fact.
12        MR. AALAEI:  Sure.
13        MR. CARLSON:  We'll talk.
14        (Discussion off the record.)
15        MR. CARLSON:  Okay.  Thanks.  I'd say this.  We
16   don't want this to splash over into a second day.  We
17   have not been at it for seven hours of on-record time,
18   and I would hope that we can wrap up by 6 p.m. but I
19   don't think we can stop by 5:00, so...
20        MR. AALAEI:  I don't think I can go past 5:00,
21   counsel.  I've got two small kids with Covid.  And 5 p.m.
22   is the end of the workday.  The witness is available for
23   two days.  So I need to convene this at 5 p.m. and we
24   will be back tomorrow at 9:00 a.m.
25        MR. CARLSON:  Let's go off the record for a

Page 125

1    second.
2        THE VIDEOGRAPHER:  We're off the record.  The
3    time is 4:48 p.m.
4        (Discussion off the record.)
5        THE VIDEOGRAPHER:  We are on the record.  The
6    time is 5:02 p.m.
7        MR. CARLSON:  Okay.  We have agreed that we're
8    going to reconvene 8 a.m. tomorrow, and we're going to do
9    it by Zoom so we don't have to get back together.  Thank
10   you, Mr. Chin, for your flexibility in that.  We'll have
11   to straighten things out with Huseby to get a
12   videographer.  I believe Jeanie, the Reporter, had said
13   she would be available, and we'll expect to go no longer
14   than probably 90 minutes in the morning.
15       I want to leave with you a couple of big
16   exhibits so that you have them and we'll use them
17   tomorrow so we don't have to try to send those to you.
18   But everything else, I think, we'll use for exhibits
19   we'll just to do it by uploading into the chat.
20       Okay.  Thank you.
21       MR. AALAEI:  Thank you.
22       THE VIDEOGRAPHER:  This is the end of the video
23   deposition of Sanho Corporation taken on Thursday, July
24   21st, 2022.  The time is 5:03 p.m.  We are now off the
25   record.

**Sanho Corporation vs Kaijet Technology International Limited, Inc., et al.**
**Kien Hoe Daniel Chin, Vol. 1 on 07/21/2022          Pages 126..129**

Page 126

```
1   (The deposition concluded at 5:03 p.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 128

```
1                    DEPONENT AFFIDAVIT:
2
3        I, the undersigned, declare under penalty of
4   perjury that I have read the foregoing transcript, and I
5   have made any corrections, additions or deletions that I
6   was desirous of making; that the foregoing is a true and
7   correct transcript of my testimony contained therein.
8        Executed this _____ day of _____, 2022 at
9   _____, _____.
10   (City)                    (State)
11
12
13                    _____
14                    KIEN HOE DANIEL CHIN
15
16
17
18
19
20
21
22
23
24
25
```

Page 127

```
1                 REPORTER'S CERTIFICATE
2
3        I, JEANIE C. ALMA, CSR #10920, CERTIFIED
4   SHORTHAND REPORTER FOR THE STATE OF CALIFORNIA, DO HEREBY
5   CERTIFY:
6        THAT THE FOREGOING PROCEEDINGS WERE TAKEN BEFORE
7   ME AT THE TIME AND PLACE THEREIN SET FORTH, AT WHICH TIME
8   THE WITNESS WAS PUT UNDER OATH BY ME;
9        THAT THE TESTIMONY OF THE WITNESS AND ALL
10   OBJECTIONS MADE AT THE TIME OF THE EXAMINATION WERE
11   RECORDED STENOGRAPHICALLY BY ME AND WERE THEREAFTER
12   TRANSCRIBED;
13        THAT THE FOREGOING IS A TRUE AND CORRECT
14   TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN.
15        I FURTHER CERTIFY THAT I AM NOT A RELATIVE OR
16   EMPLOYEE OF ANY ATTORNEY OR OF ANY OF THE PARTIES NOR
17   FINANCIALLY INTERESTED IN THE ACTION.
18        I DECLARE UNDER PENALTY OF PERJURY UNDER THE
19   LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS
20   TRUE AND CORRECT.
21        DATED AUGUST 2, 2022
22
23        _____
24        JEANIE C. ALMA, CSR #10920
25
```

Page 129

```
1              CHANGES AND SIGNATURE
2   WITNESS NAME: Kien Hoe Daniel Chin, Vol. 1, 07/21/2022
3   PAGE   LINE    CHANGE          REASON
4   _____
5   _____
6   _____
7   _____
8   _____
9   _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16       I, Kien Hoe Daniel Chin, Vol. 1, have read the foregoing
17   transcript and hereby affix my signature that same is
18   true and correct, except as noted above.
19
20        _____
21              Kien Hoe Daniel Chin, Vol. 1
22   Sworn to and Subscribed before me
23   _____, Notary Public.
24   This_____day of _____, 20____.
25   My Commission Expires:
```

**SANHO CORPORATION vs KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., ET AL.**
**Kien Hoe Daniel Chin on 07/22/2022**

```
 1                 UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION

 3                        ---OOO---

 4   SANHO CORPORATION,              )
                                     )CIVIL ACTION
 5          PLAINTIFF,               )NO.:
                                     )1:18-CV-05385-SDG
 6      VS                           )
                                     )
 7   KAIJET TECHNOLOGY               )
     INTERNATIONAL LIMITED, INC.,    )
 8   dba "j5create," and DOES 1-100,)
                                     )
 9           DEFENDANTS.             )
     _____ )
10                                   )
     SANHO CORPORATION,              )CIVIL ACTION
11                                   )NO.:
            PLAINTIFF,               )1:20-CV-02150-SDG
12                                   )(Consolidated Case)
        VS                           )
13                                   )
     KAIJET TECHNOLOGY               )
14   INTERNATIONAL LIMITED, INC.;    )
     KAIJET TECHNOLOGY               )
15   INTERNATIONAL CORPORATION;      )
     MAGIC CONTROL TECHNOLOGY;       )
16   STARVIEW GLOBAL LIMITED, each   )
     dba "j5Create;" and DOES 1-10,  )
17                                   )
             DEFENDANTS.             )
18   _____/

19   VIDEOTAPED REMOTE ZOOM DEPOSITION OF KIEN HOE DANIEL CHIN

20                      JULY 22, 2022

21

     REPORTED BY:  JEANIE C. ALMA, CSR #10920
22   DIVISION HUSEBY WEST REGION, CHARLOTTE
     CORPORATE HEADQUARTERS
23   1230 WEST MOREHEAD STREET, SUITE 408
     CHARLOTTE, NC 28208
24   TEL:  800-333-2082
     JOB NO.:  409509
25                        ---oOo---
```

**SANHO CORPORATION vs KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., ET AL.**
**Kien Hoe Daniel Chin on 07/22/2022          Pages 131..134**

**Page 131**

```
1                    UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF GEORGIA
2                          ATLANTA DIVISION
3                            ---oOo---
4    SANHO CORPORATION,          )
                                 )CIVIL ACTION
5          PLAINTIFF,            )NO.:
                                 )1:18-CV-05385-SDG
6      VS                        )
                                 )
7    KAIJET TECHNOLOGY           )
     INTERNATIONAL LIMITED, INC.,)
8    dba "j5create," and DOES 1-100,)
                                 )
9          DEFENDANTS.           )
     _____)
10                               )
     SANHO CORPORATION,          )CIVIL ACTION
11                               )NO.:
           PLAINTIFF,            )1:20-CV-02150-SDG
12                               )(Consolidated Case)
       VS                        )
13                               )
     KAIJET TECHNOLOGY           )
14   INTERNATIONAL LIMITED, INC.;)
     KAIJET TECHNOLOGY           )
15   INTERNATIONAL CORPORATION;  )
     MAGIC CONTROL TECHNOLOGY;   )
16   STARVIEW GLOBAL LIMITED, each)
     dba "j5create; and DOES 1-10,)
17                               )
           DEFENDANTS.           )
18   _____/
19        Videotaped remote Zoom deposition of KIEN HOE DANIEL
20   CHIN, taken on behalf of Defendants, commencing at 8:00
21   a.m. on July 22, 2022, reported by Jeanie C. Alma, CSR
22   No. 10920, a Certified Shorthand Reporter in and for the
23   State of California, pursuant to notice.
24
25
```

**Page 132**

```
1              A P P E A R A N C E S:
2    FOR THE PLAINTIFF:
3    Ari Law, PC
       BY:  Ali Ari Aalaei, Attorney at law (via remote video)
4    90 New Montgomery St., Suite 900
     San Francisco, CA 94105
5    Ph:  415-830-9968
     ali@arilaw.com
6
     FOR THE DEFENDANT STARVIEW GLOBAL LIMITED, INC.:
7
     Norton Rose Fulbright US LLP
8    BY:  Yitai Hu, Attorney at law
     555 California Street, Suite 3300
9    San Francisco, California 94104
     Ph:  1-628-231-6808
10   yitai.hu@nortonrosefulbright.com
11   FOR THE DEFENDANT KAIJET US AND KAIJET TAIWAN:
12   LEE & HAYES, PLLC
       BY:  Ryan Gentes, Attorney at law
13   ryan.gentes@leehayes.com
       BY:  Robert J. Carlson, Attorney at law
14   carlson@leehayes.com
       BY:  Hala Mourad, Attorney at law (via remote video)
15   75 14th Street, Suite 2500
     Atlanta Georgia 30309
16   Ph:  404-815-1900
17
18
19
20              ---oOo---
21
22
23
24
25
```

**Page 133**

```
1                         INDEX
2                      EXAMINATION
3    Witness Name                                    Page
4    KIEN HOE DANIEL CHIN
5      BY MR. CARLSON .......................... 136
6
                         EXHIBITS
7
     Exhibit    Description          Marked    Admitted
8
     1108       Chat conversation    140
9               amongst Mr. Chin, Mr.
                Liao and Mr. Liu,
10              Bates #58179
11   1109       printout of email or 146
                chat exchanges
12              between Lisa Nguyen
                and Joseph Inocencio,
13              Bates #59358
14   1110       printout of email or 146
                chat exchanges
15              between Lisa Nguyen
                and Joseph Inocencio,
16              Bates #58981
17   1111       Bates 58141         149
18   831        Surety agreement    161
                (previously marked)
19
20   1112       2-page document     168
                titled "New message
21              about HyperDrive"
                from Ravi Budruk from
22              Kickstarater, dated
                Wednesday, June 14,
23              2017
24
25
```

**Page 134**

```
1              INDEX (continued):
2    Exhibit        Description          Marked    Admitted
3    1113       Document titled      169
                "Hyper support,
4               support assignment,
                gadget website using
5               Kickstarter video, et
                cetera." from Erik
6               Schendel, dated
                Monday, June 5, 2017
7
     1114       Document titled      169
8               "Hyper support,
                support for
9               assignment,
                UltraDrive for
10              MacBook,
                nonfunctional" email
11              from Jamie Dillon and
                Kelvin Chow and
12              others, dated June
                28, 2018
13
     804        (Previously marked)  172
14              document describing
                registration of the
15              HyperDrive trademark
16                    ---oOo---
17
18
19
20
21
22
23
24
25
```

**SANHO CORPORATION vs KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., ET AL.**
Kien Hoe Daniel Chin on 07/22/2022                    Pages 135..138

Page 135

1  REMOTE ZOOM VIDEO            FRIDAY, JULY 22, 2022
2                      8:00 A.M.
3                      ---oOo---
4           THE VIDEOGRAPHER:  Media number 1, in the
5  deposition of 30(B)(6) Sanho Corporation, in the matter
6  of Sanho Corporation vs KaiJet Technology International
7  Limited, Inc., case number 1:20-CV-02150-SDG.
8           Today's date is the 22nd of July 2022.  The time
9  on the monitor is 8:03 a.m.  My name is Conrad Szuladzi
10 and I'm the videographer.  The Court Reporter is Jeanie
11 Alma.  We are here with Huseby Global Litigation.
12          Counsel, please introduce yourselves after which
13 we will proceed.
14          MR. CARLSON:  Good morning.  This is the
15 continuation of the 30(B)(6) deposition of plaintiff
16 Sanho Corporation.  I'm Robert Carlson for defendants
17 KaiJet U.S. and KaiJet Taiwan in the shorthand version
18 we've been referring to them as, and my colleague Ryan
19 Gentes is on as well, and I believe Hala Mourad of our
20 office is appearing all on behalf of the KaiJet
21 defendants.
22          MR. HU:  And this is Yitai Hu on behalf of
23 defendant Starview Global.
24          MR. AALAEI:  Good morning.  This is Ali Ari
25 Aalaei on behalf of Sanho Corporation.

Page 136

1      (Whereupon, KIEN HOE DANIEL CHIN, previously sworn
2  to tell the truth, the whole truth and nothing but the
3  truth, testified as follows.)
4                      EXAMINATION:
5  BY MR. CARLSON:
6      Q.   Very good.  Mr. Chin, good morning.
7      A.   Good morning.
8      Q.   This is a continuation of the deposition from
9  yesterday afternoon, and you're still under oath; is that
10 true you understand?
11     A.   Yes.
12     Q.   Okay.  We have loaded into the chat window
13 Exhibit 601 that we referred to yesterday, which is the
14 first iteration of the packaging drawing.  I wonder if
15 you could download that from the chat and have that
16 available for you to look at.
17     A.   Yes.
18     Q.   Now, sir, you described that yesterday, I
19 believe, as the first iteration of the packaging for the
20 GN28 product.
21          My first question for you is, when you began the
22 Kickstarter campaign for that product, this packaging
23 design had not been completed yet; is that correct?
24     A.   Well, we have definitely initiated the packaging
25 design, because we were on a short timeline.  Kickstarter

Page 137

1  was scheduled to start delivering end of December, so
2  that means design had started and will be close to
3  completion by the time we started the Kickstarter
4  campaign.
5      Q.   When the product was first proposed on
6  Kickstarter and promoted on Kickstarter, however, the
7  packaging was not featured in that promotion; is that
8  correct?
9           Mr. Chin, did you hear the question?
10     A.   Yes.  I'm just recalling.  We were probably
11 still working on the packaging.
12     Q.   That means that the package itself was not
13 featured as part of the promotional images associated
14 with the Kickstarter campaign?
15     A.   Not at launch, but shortly after launch, we did
16 provide an update showing the final packaging.
17     Q.   So that was part of the images that were
18 displayed in the Kickstarter promotion after the product
19 launched?
20     A.   Yes, in one of the updates.
21     Q.   Okay.  Let me ask you about when the product was
22 released to Best Buy in this version one packaging, this
23 first iteration packaging.  Was the box itself ever
24 featured in Best Buy's online marketing?
25          MR. AALAEI:  Objection to form.

Page 138

1      A.   BY THE WITNESS:  I don't know.
2      Q.   BY MR. CARLSON:  Are you aware of any print
3  marketing when the product was released into Best Buy
4  that featured this iteration of the packaging as part of
5  the print marketing?
6           MR. AALAEI:  Objection to form.
7      A.   BY THE WITNESS:  I don't think I'm aware of all
8  of Best Buy's print marketing.
9      Q.   BY MR. CARLSON:  Okay.  But you're not able to
10 recall an instance in which any of Best Buy's print
11 marketing featured this package; is that correct?
12          MR. AALAEI:  Objection to form.
13     A.   BY THE WITNESS:  I was not paying attention to
14 all of Best Buy's print marketing.
15     Q.   BY MR. CARLSON:  So you have no recollection to
16 be able to say that Best Buy's print marketing featured
17 this package?
18          MR. AALAEI:  Objection to form.
19     Q.   BY MR. CARLSON:  That's correct, isn't it?
20          MR. AALAEI:  Same objection.
21     A.   BY THE WITNESS:  I may or may not have seen it.
22 I cannot recall.
23     Q.   BY MR. CARLSON:  Okay.
24     A.   One thing for certain is this packaging was
25 featured in the store on the shelf.  When we first sold

**SANHO CORPORATION vs KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., ET AL.**
Kien Hoe Daniel Chin on 07/22/2022                    Pages 139..142

Page 139

1 the product to Best Buy, it was in the iteration of this
2 packaging.
3     Q.   I understand.  Can you think of any instances in
4 which iteration of this packaging would have been seen by
5 a customer prior to actually viewing it in the Best Buy
6 store?
7     A.   Yes.  I believe in our -- one of our Kickstarter
8 update around December 2017, we did show pictures of the
9 front and back of this packaging.  The update was seen by
10 our Kickstarter backers which numbered in tens of
11 thousands.  We also showcased this packaging at the
12 consumer electronic show in Las Vegas.  So, this
13 packaging was widely disseminated and seen by many people
14 online and in person around in 2017 early -- sorry.  I
15 correct myself.  Earlier what I meant to say is December
16 2016.  So, this packaging was widely disseminated both
17 online and showed at the consumer electronic show in
18 early 2017.  So, it's around late 2016, early 2017 where
19 we showed this packaging to the public months before this
20 was brought to Best Buy.
21     Q.   Okay.  Do you recall yesterday you reviewed the
22 agreement between Sanho and GoPod that referenced the
23 Satechi product?
24          MR. AALAEI:  Objection to form.
25     Q.   BY MR. CARLSON:  Do you recall that agreement,

Page 140

1 sir?
2          MR. AALAEI:  Objection to form.
3     A.   BY THE WITNESS:  I recall but I don't have the
4 exhibit in front of me.
5     Q.   BY MR. CARLSON:  Okay.  But the question is
6 whether aside from that agreement there are any other
7 agreements between Sanho and GoPod that relate in any way
8 to intellectual property, meaning copyright, trademark,
9 trade dress, patents?
10          MR. AALAEI:  Objection to form.
11     A.   BY THE WITNESS:  Not that I'm aware of.
12          MR. CARLSON:  Okay.  Ryan, can I ask you to load
13 58179?
14     Q.   BY MR. CARLSON:  So, Mr. Chin, Ms. Gentes loaded
15 another exhibit into the meeting.
16          MR. CARLSON:  Let's see.  We should mark that.
17 Can we refer to that as -- what number are we on, 1106?
18 1108.  Okay.
19          (Whereupon, Exhibit 1108 was marked for
20           identification.)
21     Q.   BY MR. CARLSON:  Sir, I ask you if you could
22 download that PDF.  It's production number 58179, and
23 that will be marked as Exhibit 1108.
24          Do you have that in front of you, sir?
25     A.   Yes.  I'm reading to familiarize myself.

Page 141

1     Q.   That was going to be my next request.
2          Have you had a chance to read that, sir?
3     A.   Almost done.  Yes.
4     Q.   Okay.  This was produced to us by Sanho.  Do you
5 recognize what this document is?
6     A.   Yes.
7     Q.   And what is it, sir?
8     A.   Looks like chat conversation between me, Alan
9 and Bill.
10     Q.   Okay.  Alan is Alan, A-l-a-n, Liao, L-i-a-o, of
11 GoPod; is that correct?
12     A.   Yes.
13     Q.   He is identified as the inventor on the patents
14 that are asserted in this case?
15          MR. AALAEI:  Objection to form.
16     A.   BY THE WITNESS:  I believe so.
17     Q.   BY MR. CARLSON:  And you also said Bill Liu,
18 L-i-u.  He is the sales -- I guess sales agent at GoPod
19 that deals with Sanho; is that correct?
20          MR. AALAEI:  Objection to form.
21     A.   BY THE WITNESS:  Yes.
22     Q.   BY MR. CARLSON:  The dates that are given here
23 for the chat are December 4, 2019.  Let me ask you to
24 look on page 2 of this Exhibit 1108, about the fourth
25 line down where you begin saying, "Assignment form is

Page 142

1 actually for 21B."  Do you see that?
2     A.   Yes.
3     Q.   What you were doing in this chat was asking Mr.
4 Liu if he would assign a patent to Sanho; isn't that
5 correct?
6          MR. AALAEI:  Objection to form.
7     A.   BY THE WITNESS:  It would appear so.
8     Q.   BY MR. CARLSON:  The patent that you were asking
9 him to assign was the 290 patent that related to the 21B
10 product?
11          MR. AALAEI:  Objection to form.
12     A.   BY THE WITNESS:  It would appear so.
13     Q.   BY MR. CARLSON:  Okay.  If you go to the third
14 page of this Exhibit 1108, this is your chat to Alan from
15 December 4, 2019 at 12:47 p.m.  You say, "Yes, I promise
16 to return 21B patent to you and protect your rights."  Do
17 you see that?
18     A.   Yes.
19     Q.   Can you explain what you were communicating to
20 Alan Liao when you wrote that?
21          MR. AALAEI:  Objection to form.
22     Q.   BY MR. CARLSON:  Let's approach it this way.
23          Were you promising that you would reassign the
24 290 patent to GoPod at some future date?
25          MR. AALAEI:  Objection to form.

**SANHO CORPORATION vs KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., ET AL.**
**Kien Hoe Daniel Chin on 07/22/2022              Pages 171..174**

Page 171

1  product accidentally left negative reviews on the
2  HyperDrive.
3         MR. AALAEI:  Objection to form.
4     A.  BY THE WITNESS:  I believe I've seen those
5  reviews which is why I made that statement.
6     Q.  BY MR. CARLSON:  Okay.  Those reviews are only
7  on the Best Buy and the Amazon sites?
8     A.  Mainly on Amazon and Best Buy.
9     Q.  You can't think of any other sites?
10        MR. AALAEI:  Objection to form.
11    A.  BY THE WITNESS:  These are the two main
12  marketplaces.
13    Q.  BY MR. CARLSON:  But you can't recall any other
14  sites other than those two that you used to base as
15  evidence for your opinion that you had expressed?
16        MR. AALAEI:  Objection to form.
17    A.  BY THE WITNESS:  I don't recall seeing such
18  reviews at other platforms.
19    Q.  BY MR. CARLSON:  Okay.  Has Sanho/Hyper
20  undertaken any research to determine how the public
21  perceives its products?
22        MR. AALAEI:  Objection to form.
23    A.  BY THE WITNESS:  No.
24    Q.  BY MR. CARLSON:  Has Sanho/Hyper undertaken any
25  research to determine how the public perceives its

Page 172

1  trademarks?
2         MR. AALAEI:  Objection to form.
3     A.  BY THE WITNESS:  No.
4     Q.  BY MR. CARLSON:  Has Sanho/Hyper undertaken any
5  research to determine how the public perceives its
6  copyright?
7         MR. AALAEI:  Objection to form.
8     A.  BY THE WITNESS:  No.
9         MR. CARLSON:  Could we load Exhibit 804, please?
10        (Whereupon, Exhibit 804 previously marked for
11         identification.)
12    Q.  BY MR. CARLSON:  Mr. Chin, loaded into the chat
13  now is Exhibit 804 from your individual deposition.
14        Have you been able to access that?
15    A.  Yes.
16    Q.  I'll represent to you that this is a document
17  describing registration of the HyperDrive trademark.  Do
18  you recognize that?
19    A.  Yes.
20    Q.  And if you will look on the first page right
21  next to the exhibit sticker, there's a statement that
22  says "Use in commerce August 1, 2012."  Do you see that?
23    A.  Yes.
24    Q.  And to the left of that on the same line, it
25  says "first used August 1, 2012"?

Page 173

1     A.  Yes.
2     Q.  Was there a product that was first used under
3  the HyperDrive mark in August 2012?
4         MR. AALAEI:  Objection to form.
5     A.  BY THE WITNESS:  As I have testified earlier, we
6  have been using the HyperDrive mark since the inception
7  of the company since around 2006.  At all times from 2006
8  until now, we have been using HyperDrive for all our data
9  connectivity products.
10    Q.  If you'd focus specifically on this allegation
11  for first use of August 1, 2012, do you know what product
12  that's in reference to?
13        MR. AALAEI:  Objection to form.
14    A.  BY THE WITNESS:  During that time, we would have
15  many products that covered, that used the HyperDrive
16  mark.  It will be memory card backup device, wireless,
17  USB port and adapter for smart phone.  Yeah, during
18  August 2012, those will be the products that were branded
19  HyperDrive.
20    Q.  Okay.  Memory card, wireless USB port and --
21    A.  Memory card backup devices.
22    Q.  Yeah, sorry.  Memory card backup, wireless USB
23  port and adapter for smart phone, correct?
24    A.  Yes.
25    Q.  Is that adapter for the smart phone a power

Page 174

1  adapter or just a data?
2     A.  Data adapter.
3     Q.  Does not supply power?
4     A.  No.
5     Q.  Do any of those three products that you
6  described supply power?
7         MR. AALAEI:  Objection to form.
8     A.  BY THE WITNESS:  The wireless USB port and the
9  memory card backup devices would have a built-in power
10  supply.
11    Q.  Can it be used as power adapters?
12        MR. AALAEI:  Objection to form.
13    A.  BY THE WITNESS:  They have built-in power supply
14  and can supply power to the devices that they're
15  connected to.
16    Q.  BY MR. CARLSON:  Are they power adapters?
17        MR. AALAEI:  Objection to form.
18    Q.  BY MR. CARLSON:  Are they power adapters,
19  Mr. Chin?
20        MR. AALAEI:  Objection to form.
21    Q.  BY MR. CARLSON:  Mr. Chin, are they power
22  adapters?
23        MR. AALAEI:  Objection to form.
24    A.  BY THE WITNESS:  No.
25    Q.  BY MR. CARLSON:  Are any of those products a

**SANHO CORPORATION vs KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., ET AL.**
Kien Hoe Daniel Chin on 07/22/2022                                      Pages 175..178

Page 175

1   battery?
2       A.   They have built-in batteries and can be used as
3   a battery for devices that they're connected to.
4       Q.   So the memory card backup and the wireless USB
5   port can be used as a battery for devices they are
6   connected to?
7       A.   Yes.
8       Q.   Were they marketed as a battery?
9            MR. AALAEI:  Objection to form.
10      A.   BY THE WITNESSES:  They were marketed to have
11  built-in batteries and can be used to power devices that
12  they're connected to.  So, in a sense, yes, they do work
13  as a battery.
14      Q.   BY MR. CARLSON:  Are any of those products an
15  electrical power cord?
16           MR. AALAEI:  Objection to form.
17      A.   BY THE WITNESS:  They do come with electrical
18  power cords.
19      Q.   BY MR. CARLSON:  But were they marketed as
20  electrical power cords?
21      A.   BY THE WITNESS:  Yes.
22      Q.   BY MR. CARLSON:  Those products were never
23  marketed as electrical power cords, were they, Mr. Chin?
24           MR. AALAEI:  Objection to form.
25      Q.   BY MR. CARLSON:  Those products were never

Page 176

1   marketed as electrical power cords, were they, Mr. Chin?
2            MR. AALAEI:  Objection to form.
3       A.   BY THE WITNESS:  Well, they do come with -- they
4   do come with USB cables and we know that USB cables can
5   deliver power.
6       Q.   BY MR. CARLSON:  Are you saying that those
7   products were marketed by Sanho as electrical power
8   cords?
9            MR. AALAEI:  Objection to form.
10      Q.   BY MR. CARLSON:  Is that your testimony?
11      A.   BY THE WITNESS:  We sold products that are
12  multi-function so they can be used for -- they can be
13  used for various purposes.
14      Q.   BY MR. CARLSON:  Were those products marketed as
15  electrical power cords, Mr. Chin?
16           MR. AALAEI:  Objection to form.
17      Q.   BY MR. CARLSON:  They weren't, were they?
18  That's a simple answer.
19      A.   They were marketed to have electrical power
20  cords.
21      Q.   Sanho marketed the memory card backup as an
22  electrical power cord?
23      A.   They were marketed to have electrical power
24  cords.  That's one of the items that is included with the
25  product.

Page 177

1       Q.   Sanho marketed the wireless USB port as an
2   electrical power cord under the name HyperDrive?
3            MR. AALAEI:  Objection to form.
4       A.   BY THE WITNESS:  We sold many products under the
5   HyperDrive brand.
6       Q.   BY MR. CARLSON:  Did you ever sell a stylus
7   under the HyperDrive brand?
8            MR. AALAEI:  Objection to form.
9       A.   BY THE WITNESS:  I believe during that time, we
10  have been -- we have many brands, and brands was
11  sometimes loosely used for various products.  So, to
12  answer your question, we did sell stylus, and it may have
13  been marketed under the HyperDrive brand.
14      Q.   BY MR. CARLSON:  Can you testify today that
15  Sanho sold a HyperDrive brand stylus?
16           MR. AALAEI:  Objection to form.
17      A.   BY THE WITNESS:  I would say back in 2012, we
18  don't have proper brand management.  We have many
19  products.  We have many brands.  It is possible that some
20  products are sold -- are marketed under different brands
21  under Sanho.
22      Q.   BY MR. CARLSON:  Are you able to offer sworn
23  testimony today that the Sanho Corporation sold a stylus
24  under the mark HyperDrive?
25      A.   The stylus may not be branded HyperDrive.  I

Page 178

1   don't think they were branded HyperDrive, but they may
2   have been featured at the retail store under the overall
3   brand of HyperDrive.
4       Q.   Can you testify that they were offered at a
5   retail store under the brand HyperDrive?
6       A.   We have many products and many brands, and there
7   may be occasions where we offer those products to
8   retailer or reseller or distributor.  Instead of marking
9   all different products with different brands, they will
10  mark the product under our most well-known brand, which
11  is HyperDrive.
12      Q.   And Sanho had no objection to resellers and
13  retailers doing that?
14           MR. AALAEI:  Objection to form.
15      A.   BY THE WITNESS:  Back in 2012, we will have no
16  issue.
17      Q.   BY MR. CARLSON:  Just to close the loop, did
18  Sanho Corporation sell a cover for a tablet computer
19  under the mark HyperDrive?
20           MR. AALAEI:  Objection to form.
21      A.   BY THE WITNESS:  Sanho never sold covers for
22  tablet computers.  It may or may not have been branded
23  HyperDrive, but as I mentioned earlier, we sold products
24  under many brands.  But when it's being sold to retailer,
25  or reseller or distributor, they will just mark it under

**SANHO CORPORATION vs KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., ET AL.**
Kien Hoe Daniel Chin on 07/22/2022                           Pages 179..182

Page 179

1   our most prominent brand, which is HyperDrive.
2          MR. CARLSON:  Okay.  I don't have any other
3   questions, Mr. Chin.  Thank you.
4          MR. AALAEI:  Bob, can I take maybe one or two
5   minutes just to see if I have anything?  I'm just going
6   to run through my notes.  Just give me maybe like two
7   minutes.
8          MR. CARLSON:  Sure thing.
9          THE VIDEOGRAPHER:  We'll go off the record?
10         MR. CARLSON:  Yeah.
11         MR. AALAEI:  Either way is fine.  It doesn't
12  matter.
13         THE VIDEOGRAPHER:  We're off the record 9:44
14  a.m.
15             (Brief recess.)
16         THE VIDEOGRAPHER:  Back on the record at 9:47
17  a.m.
18         MR. AALAEI:  I'll just note that the witness
19  reserves his right to read and sign the transcript.  That
20  goes for Mr. Chin and also for Ms. Chong, Mrs. Chong.
21         MR. CARLSON:  Very good.  Thank you again.
22         MR. AALAEI:  Thank you, everyone.
23         THE WITNESS:  Thank you.
24         MR. AALAEI:  Have a nice day.
25         THE VIDEOGRAPHER:  This concludes the deposition

Page 180

1   of 30(B)(6) witness for Sanho Corporation.  For the
2   record, the time is 9:47 a.m.
3          MR. CARLSON:  Jeanie, before I leave, we will
4   order, obviously.  And if you would, will you please send
5   that to the Atlanta office rather than to my Seattle
6   office.
7              (The deposition concluded at 9:47 a.m.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 181

1                    REPORTER'S CERTIFICATE
2
3          I, JEANIE C. ALMA, CSR #10920, CERTIFIED
4   SHORTHAND REPORTER FOR THE STATE OF CALIFORNIA, DO HEREBY
5   CERTIFY:
6          THAT THE FOREGOING PROCEEDINGS WERE TAKEN BEFORE
7   ME AT THE TIME AND PLACE THEREIN SET FORTH, AT WHICH TIME
8   THE WITNESS WAS PUT UNDER OATH BY ME;
9          THAT THE TESTIMONY OF THE WITNESS AND ALL
10  OBJECTIONS MADE AT THE TIME OF THE EXAMINATION WERE
11  RECORDED STENOGRAPHICALLY BY ME AND WERE THEREAFTER
12  TRANSCRIBED;
13         THAT THE FOREGOING IS A TRUE AND CORRECT
14  TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN.
15         I FURTHER CERTIFY THAT I AM NOT A RELATIVE OR
16  EMPLOYEE OF ANY ATTORNEY OR OF ANY OF THE PARTIES NOR
17  FINANCIALLY INTERESTED IN THE ACTION.
18         I DECLARE UNDER PENALTY OF PERJURY UNDER THE
19  LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS
20  TRUE AND CORRECT.
21         DATED AUGUST 3, 2022
22
23         _____
24         JEANIE C. ALMA, CSR #10920
25

Page 182

1                    DEPONENT AFFIDAVIT
2
3          I, the undersigned, declare under penalty of
4   perjury that I have read the foregoing transcript, and I
5   have made any corrections, additions or deletions that I
6   was desirous of making; that the foregoing is a true and
7   correct transcript of my testimony contained therein.
8          Executed this _____ day of _____, 2022 at
9   _____, _____.
10     (City)                 (State)
11
12
13         _____
14         KIEN HOE DANIEL CHIN
15
16
17
18
19
20
21
22
23
24
25