**EXHIBIT C-2: DEFENDANT KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.'S OUTLINE OF THE CASE**

**I. DESIGN PATENT**

Sanho has accused KaiJet US of infringing four different design patents - U.S. Design Patent Nos. D813,875 ("the '875 Patent"), D855,616 ("the '616 Patent"), D844,618 ("the '618 Patent") and D807,290 ("the '290 Patent") (collectively the "Asserted Patents"). Except for the '616 Patent, these patents were applied for and issued to Sanho's supplier: GoPod Group. GoPod Group transferred the patents to Sanho for this litigation.

Below is a chart of which products Sanho accuses of infringing each patent:

| Patent No. | Accused Product |
|---|---|
| '875 Patent | JCD382 |
| '616 Patent | JCD382 |
| '618 Patent | JCD382, JCD389 |
| '290 Patent | JCD348, JCD386, JCD388 |

KaiJet US has a counterclaim or affirmative defense of noninfringement and invalidity for each of the Asserted Patents.

**A. Design Patent Infringement/Invalidity**

**1. '875 Patent**

KaiJet US intends to show that Sanho does not have standing to bring claims related to the '875 Patent. Until May 2020, the '875 Patent claimed Zhouwen Liao ("Liao") as its sole inventor. In December 2019, KaiJet US served Sanho invalidity contentions asserting that the '875 Patent was invalid in view of the '616 Patent

1

because the '616 Patent was earlier filed and had a different sole inventor, ("Chin"). Additionally, in January 2020, Sanho's Motion for Preliminary Injunction using the '616 Patent was denied based, in part, on the conflicting inventorship between the '616 Patent and the '875 Patent. After this transpired, Sanho filed a request for a certificate of correction with the USPTO naming Chin as an inventor on the '875 Patent. That certificate, filed in May 2020, issued in November 2022 correcting the '875 Patent to name both Liao and Chin as inventors. Therefore, Chin is a joint owner of the '875 Patent and had not assigned his rights in the '875 Patent to Sanho before the case began or at any time since. KaiJet US intends to show that Chin's failure to assign his rights in the '875 Patent to Sanho means Sanho never had standing to assert the '875 Patent.

KaiJet US also intends to show that Sanho does not have standing with respect to the '875 Patent because it is no longer a patentee or an exclusive licensee of the '875 Patent. In November 2022, Sanho transferred its rights to the '875 Patent including "any and all claims and causes of action with respect to any of the [patents], whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, misappropriation, violation, misuse, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages" – thus transferring any

rights in this action from Sanho to Targus. In December 2023, Sanho served KaiJet US with a document production containing a *nunc pro tunc* "exclusive license agreement" between Hyper Products, Inc. (f/k/a Sanho) ("Sanho") and Targus International, LLC ("Targus"). KaiJet US intends to show this license agreement is ineffective as it does not reflect the actual relationship between Sanho and Targus. KaiJet US intends to assert that since the 2022 assignment of the '875 Patent to Targus, Sanho lacks standing to bring its patent claims or, at a minimum, Targus International, LLC is an indispensable party to this action.

In addition to the challenge to standing, KaiJet US intends to show that the JCD382 product does not infringe the '875 Patent because an ordinary observer, familiar with the prior art and giving such attention as a purchaser usually gives, would not find the resemblance such as to deceive the observer, inducing them to purchase one supposing it to be the other. KaiJet US intends to use expert testimony to identify numerous differences between the two designs which would be apparent in view of analogous prior art.

KaiJet US intends to show that the '875 Patent is invalid because it is obvious in view of the prior art and because it is indefinite. KaiJet US will support this assertion with expert testimony.

If the '875 Patent is valid and infringed, Sanho's damages are limited to profits of the JCD382 product after KaiJet US received actual notice of its alleged

infringement of the JCD382. KaiJet US intends to show that Sanho and its licensees including GoPod Group and GoPod Group's customers sold products embodying the '875 Patent and did not mark them with the '875 Patent. Therefore, Sanho is not entitled to pre-notice damages. KaiJet US also intends to assert that damages are limited to the profits attributable to sales of the article of manufacture shown in the '875 Patent, which is the exterior housing of the device, not the entire device.

### 2. '616 Patent

KaiJet US intends to show that Sanho does not have standing to bring claims related to the '616 Patent. Until May 2020, the '616 Patent named Chin as its sole inventor. In December 2019, KaiJet US served Sanho invalidity contentions asserting that the '875 Patent was invalid in view of the '616 Patent because the '616 Patent was earlier filed and had a different sole inventor. Additionally, in January 2020, Sanho's Motion for Preliminary Injunction using the '616 Patent was denied based, in part, on the conflicting inventorship between the '616 Patent and the '875 Patent. After this transpired, Sanho filed a request for a certificate of correction with the USPTO naming Liao as an inventor on the '616 Patent. That certificate, filed in May 2020, issued in November 2022 correcting the '616 Patent to name both Liao and Chin as inventors. Therefore, Liao is a joint owner of the '616 Patent and had not assigned his rights in the '616 Patent to Sanho before the case began or since.

KaiJet US intends to show that Liao's failure to assign his rights in the '616 Patent to Sanho means Sanho never had standing to assert the '616 Patent.

KaiJet US intends to show that Sanho does not have standing with respect to the '616 Patent or that Targus is an indispensable party to this action for the same reasons recited above as to the '875 Patent.

In addition to the challenge to standing, KaiJet US intends to show that the JCD382 product does not infringe the '616 Patent because an ordinary observer, familiar with the prior art and giving such attention as a purchaser usually gives, would not find the resemblance such as to deceive the observer, inducing them to purchase one supposing it to be the other. KaiJet US intends to use expert testimony to identify numerous differences between the two designs which would be apparent in view of analogous prior art.

KaiJet US intends to show that the '616 Patent is invalid because it is obvious in view of the prior art. KaiJet US will support this assertion with expert testimony.

If the '616 Patent is valid and infringed, Sanho's damages are limited to profits of the JCD382 product after KaiJet US received actual notice of its alleged infringement of the JCD382. KaiJet US intends to show that Sanho and its licensees including GoPod Group and GoPod Group's customers sold products embodying the '616 Patent and did not mark them with the '616 Patent. Therefore, Sanho is not entitled to pre-notice damages. KaiJet US also intends to assert that damages are

limited to profits attributable to the article of manufacture shown in the '616 Patent, which is the exterior housing of the device, not the entire device.

### 3. '618 Patent

KaiJet US intends to show that Sanho does not have standing with respect to the '618 Patent or that Targus is an indispensable party to this action for the same reasons recited above as to the '875 and '616 Patents.

In addition to the challenge to standing, KaiJet US intends to show that neither the JCD382 nor the JCD389 product infringes the '618 Patent because an ordinary observer, familiar with the prior art and giving such attention as a purchaser usually gives, would not find the resemblance such as to deceive the observer, inducing them to purchase one supposing it to be the other. KaiJet US intends to use expert testimony to identify numerous differences between the two designs which would be apparent in view of analogous prior art.

KaiJet US intends to show that the '618 Patent is invalid because it is obvious in view of the prior art. KaiJet US will support this assertion with expert testimony.

If the '618 Patent is valid and infringed, Sanho's damages are limited to profits of the JCD382 product after KaiJet US received actual notice of its alleged infringement of the JCD382. KaiJet US intends to show that Sanho and its licensees including GoPod Group and GoPod Group's customers sold products embodying the '875 Patent and did not mark them with the '618 Patent. Therefore, Sanho is not

6

entitled to pre-notice damages. KaiJet US also intends to assert that damages are limited to profits attributable to the article of manufacture shown in the '618 Patent, which is the exterior housing of the device, not the entire device.

**4. '290 Patent**

KaiJet US intends to show that Sanho never had standing to enforce the '290 Patent because the assignment from Liao to Sanho was not signed by Liao. KaiJet US intends to show that Sanho does not have and never had standing to assert the '290 Patent.

In addition to the challenge to standing, KaiJet US intends to show that neither the JCD386, JCD388, nor JCD348 product infringes the '290 Patent because an ordinary observer, familiar with the prior art and giving such attention as a purchaser usually gives, would not find the resemblance such as to deceive the observer, inducing them to purchase one supposing it to be the other.[1] KaiJet US intends to use expert testimony to identify numerous differences between the two designs which would be apparent in view of analogous prior art.

KaiJet US intends to show that the '618 Patent is invalid because it is obvious in view of the prior art. KaiJet US will support this assertion with expert testimony.

---

[1] In its Order on Summary Judgment, this Court ruled that Sanho no longer asserts that the JCD382 Patent infringes the JCD382. Sanho has filed a Motion for Reconsideration of this ruling. In the event that motion is successful, KaiJet US will make the same assertions with respect to the JCD382.

## B. Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law

### 1. Standing

(a) 35 U.S.C. § 100(d)

(b) 35 U.S.C. § 261

(c) 35 U.S.C. § 281

(d) Fed. R. Civ. P. 19(b)

(e) *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379 (Fed. Cir. 2015).

(f) *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283 (Fed. Cir. 2016).

(g) *Morrow v. Microsoft Corp.,* 499 F.3d 1332 (Fed. Cir. 2007).

(h) *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998).

(i) *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991).

(j) *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378 (Fed. Cir. 2002).

(k) *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273 (Fed. Cir. 2007).

(l) *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir. 1995).

(m) *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007).

(n) *Textile Prods., Inc. v. Mead Corp.,* 134 F.3d 1481 (Fed. Cir. 1998).

(o) *Go Med. Indus.. v. C.R. Bard, Inc.*, No. 1:93-cv-1538-HTW, 1995 U.S. Dist. LEXIS 22200 (N.D. Ga. Aug. 28, 1995).

(p) *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374 (Fed. Cir. 2020).

### 2. Invalidity

(a) 35 U.S.C. § 101

(b) 35 U.S.C. § 102

(c) 35 U.S.C. § 103

(d) 35 U.S.C. § 112

(e) 35 U.S.C. § 171

(f) *LKQ Corp. v. GM Glob. Tech. Operations LLC*, No. 2021-2348, 2024 U.S. App. LEXIS 12139 (Fed. Cir. May 21, 2024)

(g) *Graham v. John Deere Co.*, 383 U.S. 1 (1966)

**3. Infringement**

(a) 35 U.S.C. § 102

(b) 35 U.S.C. § 171

(c) 35 U.S.C. § 289

(d) *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).

(e) *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997).

(f) *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015).

(g) *In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988).

(h) *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (*en banc*).

(i) *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308 (Fed. Cir. 2001)

(j) *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233 (Fed. Cir. 2009).

(k) *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895 (Fed. Cir. 2020).

(l) *Crocs, Inc. v. ITC*, 598 F.3d 1294 (Fed. Cir. 2010).

(m) *Sun Hill Indus. v. Easter Unlimited, Inc.*, 48 F.3d 1193 (Fed. Cir. 1995)

(n) *Gorham Co. v. White*, 81 U.S. 511 (1871)

(o) *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934 (Fed. Cir. 2022)

**4. Damages**

a) 35 U.S.C. § 289

b) *Samsung Elecs. Co.. v. Apple Inc.*, 580 U.S. 53 (2016).

c) *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350 (Fed. Cir. 2017)

## II. TRADEMARK/TRADE DRESS

Sanho has accused KaiJet US of infringing U.S. Trademark Registration No. 5,442,707 for the standard character mark HYPERDRIVE for use in association with the following goods in International Class 9: "Components for personal computers, tablet computers, MP3 players, cell phones and smart phones, namely, electrical power cords, power adapters, and batteries; styluses and covers for tablet computers" (the "707 Mark"). Sanho alleges trademarks used by KaiJet in association with various products infringes its 707 Mark. Sanho also asserts the product packaging for the JCD382 infringes Sanho's "trade dress" rights in its copyrighted product packaging for the HYPERDRIVE product.

### A. Trademark Registration

#### 1. Invalidity

KaiJet US intends to prove Sanho's 707 Mark is void *ab initio* because Sanho failed to use its 707 Mark on any of the above-listed goods on the date of Sanho's alleged first use in commerce: August 1, 2012. On December 3, 2017, Sanho submitted a use specimen which is a screenshot of a Kickstarter campaign with images of its Thunderbolt 3 USB-C Hub for MacBook Pro (the "Specimen"). Sanho does not dispute that Sanho's Specimen is not an electrical power cord, a battery, a

stylus, or a cover for a tablet computer. KaiJet US intends to use Sanho's 30(b)(6) testimony and expert testimony to demonstrate Sanho never sold electrical power cord, a battery, a stylus, or a cover for a tablet computers under its 707 Mark as of the date of Sanho's alleged first use in commerce. KaiJet US also intends to prove Specimen does meet the commonly understood definition of a "power adapter." KaiJet US intends to use expert testimony and Sanho's 30(b)(6) testimony to demonstrate consumers would not commonly understand a USB-C Hub to be a "power adapter."

### 2. Likelihood of Confusion

To the extent Sanho's 707 Mark is valid, KaiJet US intends to prove there is no likelihood of confusion between the 707 Mark and KaiJet US's ULTRADRIVE line of products. KaiJet US intends to utilize witness testimony to demonstrate it has been selling products with the prefix "ULTRA" since as early as mid-2012. Witness testimony will also demonstrate the "ULTRA" line of products includes computer peripherals including the UltraStation (JUD500) product. In June 2017, KaiJet US first became aware of Sanho and the HYPERDRIVE product, and wanted to sell a product that competed with the Sanho products and competing products of other sellers. KaiJet US inquired with its Taiwanese supplier, KaiJet Technology International Corporation ("KaiJet Taiwan"), about products with similar functions to the Sanho product. KaiJet Taiwan had a product available in the summer of

11

2017—the JCD382. KaiJet Taiwan packaged the JCD382 using its typical packaging scheme and named the product using the preexisting "ULTRA" tradename. KaiJet US purchased the JCD382 from KaiJet Taiwan in Taiwan, imported it to the United States, and ultimately sold it to Best Buy.

KaiJet US intends to use expert and witness testimony to demonstrate Sanho's 707 Mark is weak in the relevant industry, that Sanho's 707 Mark and marks used by KaiJet US including ULTRADRIVE, ULTRADRIVE Mini Dock, ULTRADRIVEMINIDOCK and ULTRADRIVE KIT are not similar in sight, sound, or commercial impression, that KaiJet US had no intent to infringe the 707 Mark, and that there is no actual consumer confusion in the marketplace.

### 3. Damages

If the 707 Mark is infringed, KaiJet US intends to demonstrate through expert testimony that Sanho's damages are limited to a disgorgement of KaiJet US's profits from any products found to have been sold under an infringing mark. Sanho never pleaded in its complaint a claim for trademark counterfeiting, so Sanho is not entitled to enhanced damages. This case is not exceptional and cannot justify an award of attorney fees.

## B. Trade Dress Infringement

### 1. Distinctiveness

KaiJet US intends to demonstrate through expert and witness testimony that Sanho cannot establish its copyrighted product packaging is unique, unusual, or

unexpected such that it will be perceived by consumers to indicate the origin of its goods. Indeed, Sanho abandoned its copyrighted product packaging by the summer of 2017. Sanho's copyrighted product packaging is a common rectangular shape with unexceptional dimensions, and a commonly-used hangtag arrangement. Sanho uses a conventional typeface, basic colors and symbols, and no text other than basic factual information providing the product specifications. Sanho's copyrighted product packaging is common in the industry. Sanho also cannot demonstrate its copyrighted product packaging acquired secondary meaning. KaiJet US intends to use expert and witness testimony and exhibits to demonstrate Sanho did not display its copyrighted product packaging in its advertising. Further, Sanho's copyrighted packaging was used to fulfill Kickstarter orders, but Sanho cannot show that it was ever displayed at Best Buy. Best Buy business records also establish that even if Sanho's copyrighted product packaging could have been supplied to Best Buy, it could not have been displayed in brick-and-mortar stores before October 2017—after KaiJet Taiwan finalized its accused product packaging.

### 2. Likelihood of Confusion

To the extent Sanho is able to prove its asserted trade dress is distinctive, which KaiJet US denies, KaiJet US intends to utilize both expert and witness testimony to demonstrate there is no likelihood of confusion between Sanho's asserted product packaging and KaiJet US's JCD382 product packaging, as

13

explained in subsection A, *supra*.

### 3. Damages

If the asserted product packaging is infringed, KaiJet US intends to demonstrate through expert testimony that Sanho's damages are limited to a disgorgement of KaiJet US's profits attributable to its JCD382 accused product packaging. On this theory, Sanho cannot access enhanced damages nor attorney fees.

## C. Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law

### 1. Registered Trademark Invalidity

(a) 15 U.S.C. §1051

(b) 15 U.S.C. § 1057(b)

(c) 15 U.S.C. § 1119

(d) 15 U.S.C. § 1064

(e) 37 C.F.R. § 2.32(a)

(f) TMEP § 804.01

(g) TMEP § 1402

(h) *Amicus Commc'ns, L.P. v. Hewlett-Packard Co.*, No. SA-98-CA-1176-PM, 2000 U.S. Dist. LEXIS 23208 (W.D. Tex. Jan. 10, 2000)

(i) *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350 (Fed. Cir. 2009)

(j) *GDM Enters., LLC v. Astral Health & Beauty, Inc.*, No. 17-1069-CV-W-SRB, 2019 U.S. Dist. LEXIS 167756 (W.D. Mo. Sep. 30, 2019)

(k) *In re Cordua Rests., Inc.*, 823 F.3d 594 (Fed. Cir. 2016)

(l) *In re Faucher Indus. Inc.*, 107 U.S.P.Q.2d 1355, 2013 TTAB LEXIS 313, 2013 WL 5407312 (T.T.A.B. 2013)

    (m) *In re SICPA Holding SA*, 2021 U.S.P.Q.2d 613, 2021 TTAB LEXIS 202 (T.T.A.B. 2021)

    (n) *Nat'l Nonwovens, Inc. v. Consumer Prods. Enters., Inc.*, 397 F. Supp. 2d 245 (D. Mass. 2005)

2. **Trade Dress Distinctiveness**

    (a) *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312 (11th Cir. 2012)

    (b) *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197 (Fed. Cir. 2004)

    (c) *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2000)

    (d) *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 722 F. Supp. 719 (S.D. Fla. 1989), *aff'd*, 931 F.2d 1519 (11th Cir. 1991)

    (e) *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815 (Fed. Cir. 1992)

    (f) *Am. Television & Commc'ns Corp. v. Am. Commc'ns & Television, Inc.*, 810 F.2d 1546 (11th Cir. 1987)

3. **Likelihood of Confusion**

    (a) 15 U.S.C. § 1052(d)

    (b) 15 U.S.C. § 1114

    (c) 15 U.S.C. § 1125(a)

    (d) *Tana v. Dantanna's*, 611 F.3d 767 (11th Cir. 2010)

    (e) *Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 19-10771, 2021 U.S. App. LEXIS 29284 (11th Cir. Sep. 28, 2021)

    (f) *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188 (11th Cir. 2001)

    (g) *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir. 1983)

    (h) *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242 (11th Cir. 2016)

(i) *Boost Beauty, LLC v. Woo Signatures, LLC*, No. 2:18-cv-02960-CAS-Ex, 2022 U.S. Dist. LEXIS 24515 (C.D. Cal. Feb. 7, 2022)

(j) *Conagra, Inc. v. Singleton*, 743 F.2d 1508 (11th Cir. 1984)

(k) *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293 (N.D. Ga. 2008)

(l) *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279 (11th Cir. 2018)

(m) *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159 (11th Cir. 2019)

(n) *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343 (11th Cir. 2019)

(o) *Custom Mfg. & Eng'g, Inc. v. Midway Servs.*, 508 F.3d 641 (11th Cir. 2007)

(p) *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312 (11th Cir. 2012)

(q) *Spireon, Inc. v. Flex Ltd.*, 71 F.4th 1355 (Fed. Cir. 2023)

(r) *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330 (11th Cir. 1999)

(s) *Alaven Consumer Healthcare, Inc. v. DrFloras, LLC*, No. 1:09-CV-705-TWT, 2010 U.S. Dist. LEXIS 9366 (N.D. Ga. Feb. 4, 2010)

(t) *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931 (11th Cir. 2010)

(u) *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982)

4. **Trademark/Trade Dress Damages**

   (a) 15 U.S.C. § 1114

   (b) 15 U.S.C. § 1117

   (c) 15 U.S.C. § 1125

   (d) 15 U.S.C. § 1127

   (e) *Tobinick v. Novella*, 884 F.3d 1110 (11th Cir. 2018)

16

  (f) *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161 (11th Cir. 1994)

  (g) *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295 (N.D. Ga. 2017)

  (h) *Sportswear Co. S.p.A. v. A Cheap Body Shop*, No. 1:21-CV-02906-JPB, 2021 U.S. Dist. LEXIS 242751 (N.D. Ga. Dec. 21, 2021)

## III. COPYRIGHT

Sanho has accused KaiJet US's product packaging of its JCD382 of infringing Copyright Reg. No. VA 2-103-336 for its asserted copyrighted product packaging.

### A. Authorship

KaiJet US contends that Sanho cannot establish that Sanho is the author of the creative aspects of Sanho's copyrighted product packaging. Witness testimony will demonstrate Ying Ching Chen was hired as an independent contractor for Sanho to perform contract graphic design work. There were no written agreements between Sanho and Ying Ching Chen regarding the ownership or transfer of any intellectual property. Ying Ching Chen would submit invoices to Sanho for payment for her work. Daniel Chin would provide black and white hand-written drawings to Ying Ching Chen, and Ying Ching Chen would then take the handwritten drawings and create the packaging, with further instructions from Daniel Chin. For the asserted copyrighted packaging, Sanho initially received black and white packaging artwork from GoPod Group. GoPod Group's product packaging design included the product window. Daniel Chin then provided additional hand-written drawings to Ying Ching Chen, who created the copyrighted product packaging using Adobe software.

KaiJet US will also demonstrate through United States Copyright Office documents that Sanho initially applied for copyright protection in its copyrighted product packaging by alleging the copyrighted product packaging was transferred to Sanho by written agreement. Sanho later removed the statement and instead alleged Sanho was the original author.

### B. Access

KaiJet US will also demonstrate through witness testimony and Best Buy business records that it did not have access to the copyrighted product packaging prior to or during the design of the accused product packaging. The accused product packaging was designed by KaiJet Taiwan, a separate and distinct entity, not KaiJet US. Furthermore, Best Buy's business records demonstrate that even if Sanho could prove that Best Buy received the product in the copyrighted packaging, the Sanho product was not in any brick-and-mortar Best Buy store until October 2017—after the accused product packing design was finalized by KaiJet Taiwan. Sanho's copyrighted product packaging was never displayed on any online retailers such as Best Buy or Amazon. Moreover, KaiJet US and KaiJet Taiwan witnesses affirmatively state they did not have access to the copyrighted product packaging prior to the finalization of the accused product packaging.

### C. Substantial Similarity

KaiJet US also intends to demonstrate the accused product packaging and Sanho's copyrighted product packaging are not substantially similar. Sanho's expert Tony Sarabia will testify there are over 180 differences between the accused product packaging and Sanho's copyrighted product packaging, which include color, shape, location, lettering, and numbering.

### D. Damages

If the accused product packaging is found to have infringed the copyrighted product packaging, KaiJet US intends to demonstrate through expert testimony that Sanho's damages for copyright infringement are limited to KaiJet US's profits on the accused product packaging. Sanho cannot obtain statutory damages or attorney's fees because Sanho did not register its copyright within three months of publication.

### E. Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law

1. **Copyright Authorship**

    (a) 17 U.S.C. § 102

    (b) 17 U.S.C. § 201

    (c) *Howard v. Sterchi*, 974 F.2d 1272 (11th Cir. 1992)

    (d) *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)

    (e) *Keyfer & Assocs. v. Brock*, No. 1:07-CV-2297-CC, 2010 U.S. Dist. LEXIS 152414 (N.D. Ga. Mar. 29, 2010)

2. **Copyright Access**

    (a) *Watt v. Butler*, 457 F. App'x 856 (11th Cir. 2012).

    (b) *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228 (11th Cir. 2002)

  (c) *Herzog v. Castle Rock Entm't*, 193 F.3d 1241 (11th Cir. 1999)

  (d) *Beal v. Paramount Pictures Corp.*, 20 F.3d 454 (11th Cir. 1994)

  (e) *Towler v. Sayles*, 76 F.3d 579 (4th Cir. 1996)

3. **Substantial Similarity**

  (a) *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308 (11th Cir. 2010)

  (b) *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)

  (c) *Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914 (11th Cir. 2008)

  (d) 17 U.S.C. § 102(a)

  (e) 37 C.F.R. § 202.1(a)

  (f) U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 313.3(E) (3d ed. 2021)

4. **Damages**

  (a) 17 U.S.C. § 504

  (b) 17 U.S.C. § 412

  (c) *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255 (11th Cir. 2015)

  (d) *Pronman v. Styles*, 676 F. App'x 846 (11th Cir. 2017)

  (e) *William A. Graham Co. v. Haughey*, 646 F.3d 138 (3d Cir. 2011)