## EXHIBIT C-1:  OUTLINE OF PLAINTIFF'S CASE

**(a)  Succinct Factual Statement of Plaintiff's Cause of Action that Is Neither Argumentative nor Recites Evidence**

Plaintiff Sanho, now known as Hyper Products, Inc. is a technology company headquartered in California that makes and sells accessories for electronic devices like laptop computers and mobile phones. Sanho has been selling a series of electronic accessories under the "HyperDrive" name since 2005, including MacBook dongles (complying with the USB-Type C standard) since 2015.  The HyperDrive dongle was a successful product for Sanho.  Best Buy carried it in all of their stores and on its web site www.bestbuy.com, and it was also sold via Amazon.

Starting in 2017, Defendant Kaijet Technology International Limited ("Kaijet US"), a company headquartered in Kennesaw, Georgia, commenced selling a line of competing 'UltraDrive' MacBook dongles. Defendant Kaijet Technology International Corporation (Kaijet Taiwan), which is headquartered in Taiwan, served as Kaijet US's principal US supplier of UltraDrive products, along with Defendant Star View Global Limited (Starview).   For a brief time period commencing after this suit was filed, Defendant Starview also served as a supplier of UltraDrive products to Kaijet US.

The UltraDrive products were essentially knock-off products – products with equivalent visual appearance and functionality – which were borne of an intent on

1

the part of the Defendants to copy the HyperDrive dongle.  In an effort to divert sales of the HyperDrive in the Best Buy retail channels to the Defendants knock-off, the Defendants designed the UltraDrive to look like the HyperDrive, designed the product packaging for the UltraDrive to look like the HyperDrive packaging, used marketing photos which resembled the same photos used by Sanho to market the HyperDrive, and adopted the similar product name "UltraDrive," which led to some confusion between the Plaintiff and Kaijet US in the marketplace.

Sanho brought this suit against Defendants for their sales of the MacBook-compatible USB-C UltraDrive hubs sold between 2017 and 2022. Sanho alleges that Defendants' manufacturing, marketing, import, sale, and offering for sale of the accused products infringe its design patents, its HyperDrive trademark, and its copyrighted and trade dress packaging for the HyperDrive.

With respect to the design patents, Sanho specifically alleges that:

- UltraDrive model JCD382 infringes U.S. Patent No. D813,875;

- UltraDrive model JCD382 infringes U.S. Patent No. D855,616;

- UltraDrive models JCD382 and JCD389 infringe U.S. Patent No. D644,618; and

- UltraDrive models JCD348, JCD 382, JCD386, and JCD388 infringe U.S. Patent No. D807,290.

Collectively, these JCD models are referred to as the "UltraDrive units."  Plaintiff

Sanho also alleges that Defendants' deliberate business practices of marketing and

selling the UltraDrive units was confusingly similar to that of the HyperDrive

products and that Defendants used a confusingly similar name using similar

packaging, thus constituting trademark infringement, unfair competition, trade

dress infringement and deceptive trade practices under federal and state law.  Due

to the similarities in the UltraDrive product packaging and Sanho's copyrighted

packaging of its HyperDrive product, Sanho also asserts a cause of action for

copyright infringement under federal copyright law.

During the pendency of this litigation, Targus International acquired Sanho.

However, Targus has given Sanho an exclusive license, including all of the

essential and substantial intellectual property rights for the intellectual property at

issue in this case so that Sanho may continue to enforce its rights against the

Defendants.

**(b)    A separate listing of all rules, regulations, statutes, ordinances, and
illustrative case law creating a specific legal duty relied upon by
plaintiff.**

1.    Design Patent Infringement:

> 35 U.S.C. § 271(a) ("Except as otherwise provided in this title,
> whoever without authority makes, uses, offers to sell, or sells any
> patented invention, within the United States or imports into the United
> States any patented invention during the term of the patent therefor,
> infringes the patent.")

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) ("'[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.'") (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)); *id.* at 678 ("[W]hen the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art . . . .")

35 U.S.C. § 289 ("Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties. Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement.")

*Samsung Elecs. Co. v. Apple Inc.*, 580 U.S. 53, 58-59 (2016) ("Section 289 allows a patent holder to recover the total profit an infringer makes from the infringement. It does so by first prohibiting the unlicensed 'appli[cation]' of a 'patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale' or the unlicensed sale or exposure to sale of 'any article of manufacture to which [a patented] design or colorable imitation has been applied.' It then makes a person who violates that prohibition 'liable to the owner to the extent of his total profit, but not less than $250.' "Total,' of course, means all. The 'total profit' for which § 289 makes an infringer liable is thus all of the profit made from the prohibited conduct, that is, from the manufacture or sale of the 'article of manufacture to which [the patented] design or colorable imitation has been applied.'") (citations omitted) (quoting 35 U.S.C. § 289)

2.    Copyright infringement:

4

17 U.S.C. § 101 *et seq.*, including 17 U.S.C. §§ 106, 501-505.  *See, e.g.*:

> 17 U.S.C. § 501(a) ("Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. . . .")

> 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.")

> 17 U.S.C. § 504(a) ("Except as otherwise provided by this title, an infringer of copyright is liable for either—(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c).")

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.")

*Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010) ("A plaintiff may prove copying directly, but because direct evidence of copying is rare a plaintiff may instead rely on indirect proof. How the plaintiff uses indirect evidence to prove copying depends on whether the plaintiff can prove that the defendant had access to the copyrighted work. If the plaintiff cannot prove access, the plaintiff must prove that the defendant's work is 'strikingly similar' to the plaintiff's work. Alternatively, the plaintiff can prove that the defendant had access to the copyrighted work and that the defendant's work is 'substantially similar' to the copyrighted work.") (citations omitted)

*Olem Shoe Corp. v. Washington Shoe Corp.*, 591 F. App'x 873, 882 (11th Cir. 2015) ("Access requires proof of 'a reasonable opportunity

to view' the work in question. In some instances, proof that a copyright holder's work was 'widely disseminated' has been held to constitute circumstantial evidence of access.") (citation omitted)

3.    Lanham Act Section 32 (registered trademark infringement):

15 U.S.C. § 1111 *et seq.*, including 15 U.S.C. §§ 1114-1118, 1125. *See, e.g.*:

15 U.S.C. § 1114(1) ("Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.")

15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction . . . .")

15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a

willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.")

15 U.S.C. § 1116(1)(B) ("As used in this subsection the term 'counterfeit mark' means—(i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of title 36; but such term does not include any mark or designation used on or in connection with goods or services of which the manufacture [1] or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.")

15 U.S.C. § 1117(b) ("In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title or section

220506 of title 36, in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of—(1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services; or (2) providing goods or services necessary to the commission of a violation specified in paragraph (1), with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation. In such a case, the court may award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of title 26, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate.")

15 U.S.C. § 1118 ("In any action arising under this chapter, in which a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) of this title, or a willful violation under section 1125(c) of this title, shall have been established, the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or, in the case of a violation of section 1125(a) of this title or a willful violation under section 1125(c) of this title, the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed. . . .")

15 U.S.C. § 1125(a)(1) ("Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or

misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.")

*Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989) ("To prevail under Section 32, "the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion.")

*Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010) ("In evaluating whether there is a likelihood of confusion between two marks, our court applies a multifactor test, evaluating the following seven factors: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.")

*Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 133536 (11th Cir. 1999) ("Classifying the type of mark Plaintiff has determines whether it is strong or weak. The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives. There are four categories of marks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. The categories are based on the relationship between the name and the service or good it describes. Generic marks are the weakest and not entitled to protection—they refer to a class of which an individual service is a member (e.g., 'liquor store' used in connection with the sale of liquor). Descriptive marks describe a characteristic or quality of an article or service (e.g., 'vision center' denoting a place where

glasses are sold). Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive. For instance, 'penguin' would be suggestive of refrigerators. An arbitrary mark is a word or phrase that bears no relationship to the product (e.g., 'Sun Bank' is arbitrary when applied to banking services). Arbitrary marks are the strongest of the four categories.") (citations and quotations omitted)

*Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982) (Evidence of confusion by "actual customers of a business is worthy of substantial weight.")

*Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1307 (N.D. Ga. Feb. 8, 2017) (Where it exists, actual consumer confusion may be "the best evidence of likelihood of confusion.") (internal quotation omitted)

*Romag Fasteners, Inc. v. Fossil, Inc*., 590 U.S. 212, 218-20 (2020) (willfulness is not a prerequisite to recover of infringer's profits under the Lanham Act)

4. Lanham Act Section 43 (unfair competition):

15 U.S.C. § 1111 *et seq.*, including 15 U.S.C. §§ 1114-1118, 1125. *See, e.g.*, subsections quoted *supra* in connection with Lanham Act Section 32.

See cases cited *supra* in connection with Lanham Act Section 32.

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022-23 (11th Cir. 1989) ("Under the common law, trademark rights are appropriated only through actual prior use in commerce. Trademark ownership is always appurtenant to commercial activity. Thus, actual and continuous use is required to acquire and retain a protectible interest in a mark. . . . [A]n owner of a common law trademark may use its mark on related products or services and may enjoin a junior user's use of the mark on such related uses. The doctrine 'gives the trademark owner protection against the use of its mark on any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner.'") (internal citations omitted)

*Romag Fasteners, Inc. v. Fossil, Inc*., 590 U.S. 212, 218-20 (2020) (willfulness is not a prerequisite to recover of infringer's profits under the Lanham Act)

*Sprint Commc'ns, Inc. v. Calabrese*, No. 22-11717, 2024 WL 1463416, at *2 (11th Cir. Apr. 4, 2024) (election between infringer's profits and statutory damages made after trial); *Tommy Hilfiger Licensing, Inc. v. Goody's Fam. Clothing, Inc.*, No. 100-CV-1934-BBM, 2003 WL 22331254, at *30 (N.D. Ga. May 9, 2003) (same).

5.      Georgia's Uniform Deceptive Trade Practices Act

O.C.G.A. § 10-1-370, *et. seq. See, e.g.*:

O.C.G.A. § 10-1-372(a) "A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: (1) Passes off goods or services as those of another; (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; (4) Uses deceptive representations or designations of geographic origin in connection with goods or services; (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have; (6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand; (7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; (8) Disparages the goods, services, or business of another by false or misleading representation of fact; (9) Advertises goods or services with intent not to sell them as advertised; (10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity; (11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or (12) Engages in

any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

O.C.G.A. § 10-1-373(a) ("A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source.")

O.C.G.A. § 10-1-373(b) ("Costs shall be allowed to the prevailing party unless the court otherwise directs. The court, in its discretion, may award attorney's fees to the prevailing party if: . . . [t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive.")

*Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1413 (11th Cir. 1998) ("Georgia's Deceptive Trade Practices Act, O.C.G.A. § 10-1-372, involves 'the same dispositive question' as the Lanham Act claim . . . .")

6.    Georgia Unfair Competition

O.C.G.A. § 23-2-55 ("Any attempt to encroach upon the business of a trader or other person by the use of similar trademarks, names, or devices, with the intention of deceiving and misleading the public, is a fraud for which equity will grant relief.")

*Com. Roofing Specialties, Inc. v. CRS Roofing Co.*, No. 1:21-CV-02758-SDG, 2023 WL 1965276, at *5 (N.D. Ga. Feb. 13, 2023) ("Unfair competition claims under O.C.G.A. § 23–2–55 and deceptive trade practices claims under O.C.G.A. § 10–1–372 implicate the same likelihood-of-confusion test.")

O.C.G.A. §10-1-451

*Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 78–82, 140 S. Ct. 1936, 1942–44, 207 L. Ed. 2d 401 (2020) (equity power of the Court includes power to disgorge ill-gotten gains)

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc*., 921 F.3d 1343, 1355-1357 (11th Cir. 2019) (accounting and disgorgement of infringer's profits)

7. Common Law Unfair Competition by Trademark infringement

*Tarsus Connect, LLC v. Cvent, Inc.*, 452 F. Supp. 3d 1334, 1362–63 (N.D. Ga. 2020) ("Common law trademark infringement and unfair competition . . . is dependent on the success of [the] claims under the Lanham Act, as each claim requires the same analysis.")

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc*., 921 F.3d 1343, 1355-1357 (11th Cir. 2019) (common law remedies for trademark infringement and unfair competition include accounting and disgorgement of infringer's profits)

*Hagan & Dodd Co. v. Rigbers,* 1 Ga.App. 100 (1907) (same)

8. Punitive Damages

O.C.G.A. § 51-12-5.1. *See, e.g.*:

"(b) Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."

"(c) Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant."

"(d)(1) An award of punitive damages must be specifically prayed for in a complaint. In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings. (2) If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter,

13

penalize, or punish the defendant in light of the circumstances of the case. It shall then be the duty of the trier of fact to set the amount to be awarded according to subsection (e), (f), or (g) of this Code section, as applicable."

"(g) For any tort action not provided for by subsection (e) or (f) of this Code section in which the trier of fact has determined that punitive damages are to be awarded, the amount which may be awarded in the case shall be limited to a maximum of $250,000.00."

*Hi-Tech Pharms., Inc. v. Wyant*, No. 1:16-CV-639-AT, 2017 WL 11358731, at *6 (N.D. Ga. Apr. 19, 2017) ("Georgia common law also provides for exemplary damages 'for injuries wantonly, recklessly, or maliciously inflicted.'") (quoting *K-Mart Corp. v. Hackett*, 514 S.E.2d 884, 888-89 (Ga. Ct. App. 1999)

9.    Prejudgment Interest

"[P]rejudgment interest should be awarded under [35 USC] § 284 absent some justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)

*Acceleron, LLC v. Dell Inc.*, No. 1:12-CV-4123-TCB, 2022 WL 1087683, at *20–21 (N.D. Ga. Mar. 7, 2022), *aff'd*, No. 2022-1620, 2023 WL 4503189 (Fed. Cir. July 13, 2023) (Court calculates interest after jury finds damages; "Generally, an award of prejudgment interest should cover "the time period from the beginning of the infringement to the date of the judgment.")

*Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1568 (11th Cir. 1986) ("We have examined the partners' other contentions of error and find them meritless. We also conclude that the district court did not abuse its discretion in trebling the damages, <u>awarding prelitigation interest</u>, and awarding Ramada Inns $20,000 in attorney's fees. For the foregoing reasons, the judgment of the district court is affirmed.") (emphasis added).

*Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1317 (S.D. Fla. 1998) ("In Lanham Act cases, prejudgment interest is available in the Court's discretion to successful plaintiffs.").

14

*Atlanta Attachment Co. v. Leggett & Platt, Inc*., No. 1:05-CV-1071-ODE, 2007 WL 9701122, at *11 (N.D. Ga. June 20, 2007) (same).

Where a federal statute allows for pre-judgment interest, the Court has discretion to set the rate and to determine whether and when to compound the interest. *Osterneck v. E.T. Barwick Indus., Inc*., 825 F.2d 1521, 1536 (11th Cir. 1987), *aff'd sub nom. Osterneck v. Ernst & Whinney*, 489 U.S. 169 (1989).

*Glock, Inc. v. Wuster*, No. 1:14-CV-00568-AT, 2020 WL 11025586, at *10–11 (N.D. Ga. Sept. 15, 2020) (Court adds prejudgment interest to Lanham Act disgorgement damages; Court used the average of the IRS's interest rate for underpayments under 26 U.S.C. § 6621(a)(2) from the filing of the Complaint in February 2014 through the hearing in July 2020, which worked out to be 4.15%. And "this adjusted prime rate, established periodically by the Secretary of the Treasury and codified in 26 U.S.C. § 6621, has been used regularly by district courts to calculate prejudgment interest" in other types of cases.") (internal quotation omitted).

10.    Election of remedies to be made after trial

*Sprint Commc'ns, Inc. v. Calabrese*, No. 22-11717, 2024 WL 1463416, at *2 (11th Cir. Apr. 4, 2024) (electing between award of infringer's profits under 15 USC 1117(a) and statutory damages for counterfeiting between the jury verdict awarding both, and the time of the final judgment)

*Tommy Hilfiger Licensing, Inc., v. Goody's Fam. Clothing, Inc*., No. 100-CV-1934-BBM, 2003 WL 22331254, at *30 (N.D. Ga. May 9, 2003) ("Hilfiger will have ten days from the issuance of this order to elect the award of statutory damages under section 1117(c) or the award of profits under section 1117(b). See Jordan v. Time, Inc., 111 F.3d 102 (11th Cir. 1997); Glazier v. First Media Corp., 532 F. Supp. 63, 68 (D. Del. 1982). If no election is made, the court will enter judgment for the profits award assessed under section 1117(b).").

11.    Exclusive licensee permitted to enforce intellectual property rights

*Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp*., 604 F.3d 1354, 1357-58 (Fed. Cir. 2010) ("A patent owner may transfer all

substantial rights in the patents-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee, conferring standing to sue solely on the licensee"); *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc*., 19 F.4th 1315, 1319–20 (Fed. Cir. 2021);

**(c)    Omitted (inapplicable).**

**(d)    A separate statement for each item of damage claimed containing a brief description of the item of damage, dollar amount claimed, and citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.**

Sanho seeks compensatory damages, including Defendants' profits from its

Ultradrive sales, and/or punitive damages, shown as follows.

| Item | Brief Description | Amount Claimed/Defendant | Citation |
|------|------------------|--------------------------|----------|
| Case II Count III - Design patent (290 Patent) | Infringer's profits (UltraDrive units) | $2,040,312/total<br>* $1,211,852/Kaijet US<br>* $685,950/Kaijet Taiwan<br>*$142,510/Star View | 35 USC §289 |
| Infringement of 290 Patent | Interest | $682,426 (see breakout in Table 6 below) | 35 USC 284 |
| Willful infringement - 290 Patent | Treble damages | 3X the damages sought above for each defendant | 35 USC §284 |
| Case I Count I - Design patent infringement (875 Patent) | Infringer's profits (UltraDrive units) | *$1,106,323/ Kaijet US<br>*$504,877/ Kaijet Taiwan | 35 USC §289 |

| Infringement of the 875 Patent | Interest | see breakout in Table 7 below | 35 USC §284 |
| Willful infringement of 875 Patent | Treble damages | 3X the damages sought above for each defendant | 35 USC §284 |
| Design patent infringement (618 Patent) | Infringer's profits (UltraDrive units) | $952,857/total *$686,562/Kaijet US *$171,823/Kaijet Taiwan *$94,472/Star View | 35 USC §289 |
| Infringement of 618 Patent | Interest | $256,231 (see breakout in Table 7 below) | 35 USC §284 |
| Willful infringement of 618 Patent | Treble damages | 3X the damages sought above for each defendant | 35 USC §284 |
| Design patent infringement (616 Patent) | Infringer's profits (UltraDrive units) | *$374,607/ Kaijet US *$51,757/ Kaijet Taiwan | 35 USC §289 |
| Infringement of 616 Patent | Interest | see breakout in Table 7 below | 35 USC §284 |
| Willful infringement of 616 Patent | Treble damages | 3X the damages sought above for each defendant | 35 USC §284 |
| Infringement of any design patent | Costs | At least $493,000 (and continuing) | 35 USC §284 |
| Infringement of any design patent | Attorney's fees | At least $2,000,000 (and continuing) | 35 USC §285 |

| | | | |
|---|---|---|---|
| Case I Count IV – Copyright infringement | Profits attributable to infringement (UltraDrive units bearing the infringing packaging) | $910,141/Kaijet US $657,323/ Kaijet Taiwan | 17 U.S.C. §504(b)(1) |
| Copyright infringement | Interest | See breakout  in Table 5 below) | Federal common law (see authorities above) |
| Copyright infringement | Costs | At least $493,000 (and continuing) | 17 U.S.C. §505 |
| Case I Count II - Registered trademark infringement | Defendant's profits (UltraDrive units) | $1,455,612/Kaijet US $697,258/Kaijet Taiwan | 15 U.S.C. §1117(a) |
| Registered trademark infringement | Costs | At least $493,000 (continuing) | 15 U.S.C. §1117(a) |
| Registered trademark infringement | Attorney's fees | $2 million (and continuing) | 15 U.S.C. §1117(a) |
| Registered trademark infringement | Interest | $707,968 (see breakout in Table 3 below) | 15 U.S.C. 1117(a) and federal common law (see authorities cited above) |
| Registered trademark infringement | Treble damages | $6,960,660/total (3X the damages sought above for each defendant) | 15 U.S.C. §§1114(a)(1) and 1117(b); |

| Registered trademark infringement | Statutory damages | $2 million for each of JCD 324, 348, 382, 386, 387, 388, and 389 | 15 U.S.C. §1117(c) |
|---|---|---|---|
| Case I Count III - Unfair competition (Lanham Act Section 43) | Defendant's profits (UltraDrive units) | $1,654,949/ Kaijet U.S. $1,012,515/ Kaijet Taiwan<br><br>Of these, damages for product packaging/trade dress amounts to: $910,141/Kaijet US: $657,323/Kaijet Taiwan | 15 U.S.C. §1117(a) |
| Unfair competition (Lanham Act Section 43) | Costs | $493,000 (continuing) | 15 U.S.C. §1117(a) |
| Unfair competition (Lanham Act Section 43) | Interest | $918,826 | 15 U.S.C. 1117 and federal common law (see authorities cited above) |
| Unfair competition (Lanham Act Section 43) | Attorney's fees | $2 million (and continuing) | 15 U.S.C. §1117(a) |
| Case I Count VI – Georgia Unfair Competition | Defendant's profits (UltraDrive units) | $1,654,949/ Kaijet U.S. $1,012,515/ Kaijet Taiwan<br>Of these, damages for product packaging/trade dress amounts to: | Under OCGA §23-2-55 and court's equity powers (see authorities cited above). |

| | | $910,141/Kaijet US: $657,323/Kaijet Taiwan | Separately, under Georgia common law unfair competition due to common law trademark infringement, (see authorities cited above). |
|---|---|---|---|
| Case I Count VI – Georgia Unfair Competition | Prejudgment interest | $918,826 | Federal common law (see authorities cited above) |
| Case I Count VII – Common Law Misappropriation and Unfair Competition | Defendant's profits (UltraDrive units) | $1,654,949/Kaijet U.S. $1,012,515/ Kaijet Taiwan<br><br>Of these, damages for product packaging/trade dress amounts to: $910,141/Kaijet US: $657,323/Kaijet Taiwan | Georgia common law of unfair competition and common law trademark infringement (see authorities above) |
| Case I Count VII – Common Law Misappropriation and Unfair Competition | Prejudgment interest | $918,826 | federal common law (see authorities cited above) |
| Case I Count IX – Punitive damages | | At least $250,000 per each defendant | O.C.G.A. § 51-12-5.1 |







