UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>       Plaintiff,<br><br>   v.<br><br> KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.,<br>dba "j5create;" and DOES 1-100,<br><br>      Defendants, | Case No. 1:18-cv-05385-SDG |
| SANHO CORPORATION,<br><br>       Plaintiff,<br><br>   v.<br><br>KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.;<br>KAIJET TECHNOLOGY<br>INTERNATIONAL CORPORATION;<br>MAGIC CONTROL TECHNOLOGY;<br>STARVIEW GLOBAL LIMITED, each<br>doing business as "J5Create;" and DOES<br>1-10,<br><br>      Defendants. | Consolidated with<br>Case No. 1:20-cv-02150-TCB |

**EXHIBIT H-1:  KAIJET DEFENDANTS' TRIAL BRIEF**

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................1

II.  PREEMPTION OF STATE LAW CLAIMS....................................................1

   A. Counts V-VII Are Preempted in Part by the Copyright Act .......................2

      1.   Count V (GUPTDA) is based in part on copyright infringement. ........2

      2.   Count VI (Georgia Unfair Competition) is based in part on
           copyright infringement. ...................................................3

      3.   Count VII (Common Law Misappropriation and Unfair
           Competition) is based in part on copyright infringement. ...............3

   B. Counts V-VII Are Also Preempted in Part by the Patent Act .....................4

      1.   Count V (GUPTDA) is based in part on patent infringement..............4

      2.   Count VI (Georgia Unfair Competition) is based in part on patent
           infringement. ..................................................................4

      3.   Count VII (Common Law Misappropriation and Unfair
           Competition) is based in part on patent infringement.....................5

   C. Plaintiff's Counterarguments Fail ...................................................5

      1.   Plaintiff's state law claims do not plead fraud or tortious
           interference......................................................................5

      2.   The "extra element" test is not satisfied...............................7

      3.   Likelihood of confusion test applies to trademarks, not patents or
           copyrights. .....................................................................8

      4.   *Duer* is highly analogous and instructive...........................9

III. PUNITIVE DAMAGES ARE NOT A CAUSE OF ACTION......................11

IV. SANHO'S LACK OF STANDING .............................................................12

i

V. NO INFRINGEMENT OF SANHO'S ALLEGED INTELLECTUAL PROPERTY ........................................................................................13

   A. No Design Patent Infringement .................................................................13

     1.   The Asserted Patents are invalid. .........................................................13

     2.   KaiJet US' products are plainly dissimilar from the Asserted Patents. ..................................................................................................15

   B. No Trademark Infringement .....................................................................16

     1.   The 707 Mark is invalid. .....................................................................16

     2.   There is no likelihood of confusion ....................................................17

        i.    Sanho's evidence does not demonstrate actual confusion of relevant consumers. ...........................................................18

   C. No Trade Dress Infringement ...................................................................19

     1.   Sanho has no trade dress rights in its product packaging. .................20

     2.   KaiJet product packaging is not confusingly similar to Sanho's product packaging. ...........................................................................21

   D. No Copyright Infringement ......................................................................21

     1.   Sanho did not author the copyrighted packaging. ..............................22

     2.   KaiJet Taiwan did not have access to the copyrighted packaging. .....22

     3.   The packaging is not substantially similar. ........................................23

   E. Preempted State Law Claims Fail Too .....................................................23

VI. DAMAGES .................................................................................................23

   A. Even if Infringement of Sanho's IP Is Found, It Was Not Willful ............23

   B. Even if the State Law Claims Survive, Punitive Damages Are Not Available ................................................................................................24

   C. Sanho Cannot Seek Statutory Damages Under the Lanham Act or Copyright Act ..........................................................................................24

VII.    EVIDENTIARY ISSUES ........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. D'Souza,*
  No. 1:22-cv-04259-SDG, 2023 U.S. Dist. LEXIS 176638
  (N.D. Ga. Sept. 30, 2023) ...................................................................................11

*AntennaSys, Inc. v. AQYR Techs., Inc.,*
  976 F.3d 1374 (Fed. Cir. 2020) .........................................................................12

*Blakey v. Victory Equip. Sales, Inc.,*
  576 S.E.2d 288 (Ga. Ct. App. 2002) ...................................................................6

*Bonito Boats v. Thunder Craft Boats,*
  489 U.S. 141 (1989).............................................................................................9

*Campbell Soup Co. v. Gamon Plus, Inc.,*
  10 F.4th 1268 (Fed. Cir. 2021)..........................................................................15

*Carter v. Progressive Mountain Ins.,*
  761 S.E.2d 261 (Ga. 2014).................................................................................24

*Cmty. for Creative Non-Violence v. Reid,*
  490 U.S. 730 (1989)...........................................................................................22

*Crocs, Inc. v. ITC,*
  598 F.3d 1294 (Fed. Cir. 2010) .........................................................................16

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,*
  508 F.3d 641 (11th Cir. 2007)...........................................................................18

*Dieter v. B & H Indus. of Sw. Fla., Inc.,*
  880 F.2d 322 (11th Cir. 1989).............................................................................9

*Duer v. Bensussen Deutsch & Assocs., Inc.,*
  No. 1:14-CV-01589-ELR, 2015 U.S. Dist. LEXIS 192255
  (N.D. Ga. July 8, 2015)..........................................................................4, 5, 9, 10

*Ethicon, Inc. v. U.S. Surgical Corp.,*
  135 F.3d 1456 (Fed. Cir. 1998) .........................................................................12

*In re Faucher Indus. Inc.*,
No. 85202870, 2013 TTAB LEXIS 313 (T.T.A.B. 2013) ...............................17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)...................................................................................21

*Foley v. Luster*,
249 F.3d 1281 (11th Cir. 2001).........................................................................7

*Foster v. Sikes*,
42 S.E.2d 441 (Ga. 1947).................................................................................24

*Fuss v. Bensch*,
601 F. Supp. 3d 1329 (N.D. Ga. 2022)............................................................6, 7

*Giant Mart Corp. v. Giant Disc. Foods, Inc.*,
279 S.E.2d 683 (Ga. 1981).................................................................................8

*Hard Candy, LLC. v. Anastasia Beverly Hills, Inc.*,
921 F.3d 1343 (11th Cir. 2019)..........................................................................18

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*,
931 F.2d 1100 (6th Cir. 1991)............................................................................18

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
153 F.3d 1318 (Fed. Cir. 1998)............................................................................4

*Int'l Gamco, Inc. v. Multimedia Games, Inc.*,
504 F.3d 1273 (Fed. Cir. 2007) ........................................................................12

*Keyfer & Assocs. v. Brock*,
No. 1:07-CV-2297-CC, 2010 U.S. Dist. LEXIS 152414
(N.D. Ga. Mar. 29, 2010)...................................................................................22

*LKQ Corp. v. GM Glob. Tech. Operations LLC*,
No. 2021-2348, 2024 U.S. App. LEXIS 12139
(Fed. Cir. May 21, 2024)............................................................................14, 15

*Mandala v. Tire Stickers, LLC*,
829 F. App'x 896 (11th Cir. 2020)......................................................................6

*Massey v. Kelly, Inc.*,
742 F. Supp. 1156 (N.D. Ga. 1990)....................................................................11

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
  702 F.3d 1312 (11th Cir. 2012) .......................................................19

*Nabisco, Inc. v. PF Brands, Inc.*,
  191 F.3d 208 (2d Cir. 1999) ...........................................................17

*Prima Tek II, LLC v. A-Roo Co.*,
  222 F.3d 1372 (Fed. Cir. 2000) .......................................................12

*Sportswear Co. S.p.A. v. A Cheap Body Shop*,
  No. 1:21-CV-02906-JPB, 2021 U.S. Dist. LEXIS 242751
  (N.D. Ga. Dec. 21, 2021) ................................................................25

*Tana v. Dantanna's*,
  611 F.3d 767 (11th Cir. 2010)..........................................................17

*Tidikis v. Network for Med. Commc'ns & Rsch., LLC*,
  619 S.E.2d 481 (Ga. 2005) ................................................................6

*Wade v. Culpepper*,
  279 S.E.2d 748 (Ga. Ct. App. 1981) ...............................................24

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
  795 F.3d 1255 (11th Cir. 2015) .......................................................24

**Statutes**

15 U.S.C. § 1117.................................................................................25

15 U.S.C. § 1127.................................................................................25

17 U.S.C. § 106 ..............................................................................2, 3

17 U.S.C § 201(a) ..............................................................................22

17 U.S.C. § 412 .................................................................................25

35 U.S.C. § 103 .................................................................................13

O.C.G.A. § 10-1-453 ...........................................................................8

**Other Authorities**

1 Gilson on Trademarks § 2A.03 (2022) ............................................20

Fed. R. Civ. P. 9(b) ............................................................................................6

Local Rule 16.4(B)(21) .......................................................................................1

McCarthy on Trademarks § 8:8.50 ..................................................................20

TMEP § 1402.01(a) ..........................................................................................17

Pursuant to Local Rule 16.4(B)(21), Defendants KaiJet Technology International Limited, Inc. (herein "KaiJet US"), and KaiJet Technology International Corporation ("KaiJet Taiwan") (collectively, "KaiJet Defendants") by and through their undersigned attorneys, submit this trial brief.

## I.    INTRODUCTION

Plaintiff Sanho Corporation ("Plaintiff" or "Sanho") has alleged infringement of four design patents, plus copyright infringement, trademark infringement, unfair competition, and state law claims based on the federal theories of infringement. Pursuant to the Court's Pretrial Order, the KaiJet Defendants present this brief to summarize why Sanho should not prevail at trial on any of its claims.

## II.    PREEMPTION OF STATE LAW CLAIMS

The KaiJet Defendants previously filed a motion for judgment on the pleadings regarding the federal preemption of Plaintiff's state law claims.[1] This Court denied the motion as untimely under the local rules, but noted that the KaiJet Defendants could raise these preemption issues at trial.[2] Accordingly, they will maintain their preemption arguments.

---

[1] D.E. 494.
[2] D.E. 513 at 65.

1

## A. Counts V-VII Are Preempted in Part by the Copyright Act

In the Eleventh Circuit, copyright preemption occurs if the rights at issue (1) fall within the subject matter of copyright and (2) are equivalent to the exclusive rights of 17 U.S.C. § 106.[3] As explained in detail below, each of Plaintiff's state law claims meets the requirements for copyright preemption.

### 1. Count V (GUPTDA) is based in part on copyright infringement.

Plaintiff's GUDTPA claim (Count V) is clear that it is based on "intellectual property infringement."[4] Specifically, the GUDTPA claim is based on an assertion of "misappropriation" of Plaintiff's "multi-function docking station **packaging** … and **the copyright**."[5] Clearly "the copyright" falls within the subject matter of the Copyright Act.[6]

As for the second element, Plaintiff alleged "infringement" and "misappropriation" of its rights in its product packaging and copyrights.[7] This is equivalent to a violation of the exclusive rights granted by 17 U.S.C. § 106, specifically one of the subsections (1)-(3).[8] Therefore, the portion of Plaintiff's

---

[3] *See* D.E. 494-1 at 7-8.

[4] D.E. 88 at ¶ 95.

[5] *Id.* at ¶ 96.

[6] Defendants do not contend that the portion of Plaintiff's GUDTPA claim based on Plaintiff's alleged "trademark, and patent relating thereto" is preempted by the Copyright Act.

[7] D.E. 88 at ¶¶ 95-96.

[8] "[T]he owner of the copyright under this title has the exclusive rights … (1) to

GUDTPA claim that asserts its copyright is preempted.

### 2. Count VI (Georgia Unfair Competition) is based in part on copyright infringement.

Count VI is likewise clear that it is based in part on "Defendant's unauthorized use of Plaintiff's … packaging."[9] As explained above, any alleged rights in Plaintiff's packaging fall under the scope of the Copyright Act. Further, any "unauthorized use" is equivalent to a violation of the exclusive rights granted by 17 U.S.C. § 106, specifically one of the subsections (1)-(3).[10] Therefore, Plaintiff's Count VI – to the extent it is based on any alleged rights in Plaintiff's product packaging – is preempted by the Copyright Act.

### 3. Count VII (Common Law Misappropriation and Unfair Competition) is based in part on copyright infringement.

Count VII is undeniably based in part on "misappropriation of Plaintiff's … **copyrights**."[11] There can be no argument that the misappropriation of a copyright falls under the Copyright Act and is equivalent to a violation of the exclusive rights granted by 17 U.S.C. § 106. Therefore, Count VII – as based on "Plaintiff's … copyrights" is preempted by the Copyright Act.

---

reproduce the copyrighted work … (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership[.]" 17 U.S.C. § 106(1)-(3).

[9] D.E. 88 at ¶ 105.

[10] *Supra* n.8.

[11] D.E. 88 at ¶ 112.

**B. Counts V-VII Are Also Preempted in Part by the Patent Act**

"[F]ederal law preempts a conflicting state law claim that 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"[12] Because Plaintiff's Counts V-VII each are based, in part, on the KaiJet Defendants' alleged infringement of Plaintiff's patents, these claims are preempted (in part) by the Patent Act.

### 1. Count V (GUPTDA) is based in part on patent infringement.

Plaintiff's Count V is an allegation of "intellectual property infringement" based in part on Defendants' "misappropriation and use" of Plaintiff's "patent."[13] It is indisputable that Plaintiff's GUDTPA claim is, in part, a claim for patent infringement. Because only federal law, the Patent Act, provides remedies for federally granted patent rights, Count V's patent allegation is preempted.

### 2. Count VI (Georgia Unfair Competition) is based in part on patent infringement.

Plaintiff's Count VI likewise explicitly states that it is based on, in part, the allegation that Defendants made "unauthorized use of Plaintiff's patent."[14] This is a claim for patent infringement, and therefore is preempted by federal law.

---

[12] *Duer v. Bensussen Deutsch & Assocs., Inc.*, No. 1:14-CV-01589-ELR, 2015 U.S. Dist. LEXIS 192255, at *15-16 (N.D. Ga. July 8, 2015) (quoting *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1332 (Fed. Cir. 1998)).

[13] D.E. 88 at ¶¶ 95-96.

[14] *Id.* at ¶ 105.

### 3. Count VII (Common Law Misappropriation and Unfair Competition) is based in part on patent infringement.

Plaintiff's Count VII is also clearly a patent infringement claim, as it is based in part on "Defendant's … misappropriation of Plaintiff's … patent."[15] Thus, Count VII's patent allegation is likewise preempted.

## C. Plaintiff's Counterarguments Fail

In response to the KaiJet Defendants' previously filed motion on the issue of preemption, Plaintiff offered a litany of counterarguments.[16] If Plaintiff raises the same counterarguments at trial, they should be given no credence, as they misrepresent the law and Plaintiff's own complaint.

### 1. Plaintiff's state law claims do not plead fraud or tortious interference.

Plaintiff contended that its GUDTPA claim (Count V) includes an allegation of "interference with contractual relations"[17] and that all of its state law claims are based on "fraud and interference with plaintiff's contractual relationships with Best Buy."[18] Plaintiff did not plead "interference with contractual relations" in Counts V-VII of Plaintiff's complaint.[19]  Neither did Plaintiff plead "fraud" in Counts V or

---

[15] D.E. 88 at ¶ 112.

[16] D.E. 498.

[17] *Id.* at 15.

[18] *Id.* at 21.

[19] *See* D.E. 88 at ¶¶ 94-115; Tortious interference with contract or business relations is its own cause of action under Georgia state law, requiring a plaintiff to prove each of the following: "(1) improper action or wrongful conduct by the defendant without

VII,[20] much less plead with sufficient specificity to meet the heightened pleading requirements for a fraud claim.[21] Thus, Plaintiff's arguments relying on allegations it did *not plead* should be given no credence.

But even if Plaintiff had pleaded fraud, the claims would still be preempted by the Copyright Act and Patent Act. Plaintiff cited *Fuss v. Bensch*, arguing that it holds that "fraud claims may not be preempted by the Copyright Act."[22] But the fraud claim in *Fuss* "required the plaintiff to prove" the extra element of a "false representation of a material fact," which the court held was sufficient to make the fraud claim "qualitatively differ[]" from the copyright claim.[23] Plaintiff has never alleged that Defendants made a false representation of a material fact as part of its

---

privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Tidikis v. Network for Med. Commc'ns & Rsch., LLC*, 619 S.E.2d 481, 486 (Ga. 2005) (quoting *Blakey v. Victory Equip. Sales, Inc.*, 576 S.E.2d 288, 292 (Ga. Ct. App. 2002)). Plaintiff did not plead tortious interference as a cause of action, neither did it plead the required elements..

[20] Count VI makes a passing reference to "fraud" but fails to plead any particular facts beyond Defendants alleged infringement of its intellectual property. *See* D.E. 88 at ¶¶ 104-110.

[21] *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 901 (11th Cir. 2020) ("any allegations based in fraud must comply with the heightened pleading standard in Rule 9(b) of the Federal Rules of Civil Procedure").

[22] D.E. 498 at 22 (citing *Fuss v. Bensch*, 601 F. Supp. 3d 1329, 1335-36 (N.D. Ga. 2022)).

[23] *Fuss*, 601 F. Supp. 3d at 1335-36.

state law claims.[24] Plaintiff's state law claims merely allege copyright, trademark, and patent infringement. Because the state law claims do not assert the additional element of a "false representation of a material fact," *Fuss v. Bensch* is inapplicable.

### 2. The "extra element" test is not satisfied.

Plaintiff previously argued that its state law claims all require an "extra element" of an "intent" and therefore preemption does not apply.[25] The Plaintiff knows (or should know) this is not true. Plaintiff cited the Eleventh Circuit's opinion in *Foley v. Luster* discussing the "extra element" test.[26] While Plaintiff noted that preemption does not apply if the extra element renders the state law claim "qualitatively different," they omitted the following passage from *Foley*: "awareness and intent are not considered to be qualitatively different elements substantial enough to serve as an 'extra element.'"[27] Plaintiff's argument is defeated by its own cited case law.

Even if "intent" could serve as an "extra element" (it cannot), neither GUDTPA or common law unfair competition requires the element of intent. The plain text of GUDTPA makes no mention of any *mens rea* requirement. Plaintiff

---

[24] This Court granted summary judgment against Plaintiff, dismissing its false advertising claim regarding KaiJet's use of "8-in-1" because it is "not literally false." D.E. 513 at 39.

[25] D.E. 498 at 22.

[26] *Id*. at 21, n.54 (citing *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001)).

[27] *Foley*, 249 F.3d at 1285.

misrepresented *Giant Mart Corp.* to support its argument that GUDTPA requires "some intention, fraud or neglect." Specifically, Plaintiff argued that GUDTPA requires a "showing … that use of a name cause confusion to others despite *using reasonable care*" and cited to *Giant Mart Corp.*[28] Plaintiff represented that this means that GUDTPA requires a showing of intent to deceive. This is wrong. It means that the analysis of whether a defendant's actions cause confusion must assume that the consumer is "using reasonable care" as compared to a careless consumer.[29] Thus, neither the statute itself nor its cited case law supports Plaintiff's contention that GUDTPA requires the "extra element" of an "intent to deceive." As to the common law claim, the only support Plaintiff offers for the intent requirement is *Giant Mart Corp.* But *Giant Mart Corp.* does not state common law unfair competition requires intent as an extra element.[30]

### 3. Likelihood of confusion test applies to trademarks, not patents or copyrights.

Plaintiff also made multiple mentions of trademark infringement and the likelihood of confusion test, arguing that neither the Copyright Act or Patent Act

---

[28] D.E. 498 at 16.

[29] *Giant Mart Corp. v. Giant Disc. Foods, Inc.*, 279 S.E.2d 683, 686 (Ga. 1981).

[30] Plaintiff also confusingly cited to language from O.C.G.A. § 10-1-453, seemingly to support its argument that the state law claims require "intent" as an "extra element." But Plaintiff has not plead a claim under O.C.G.A. § 10-1-453, nor does this random statute have any bearing on whether *other* statutes or common law claims require intent.

preempt trademark claims. Defendants will not argue that the trademark claims are preempted. Accordingly, any reliance by Plaintiff on *Bonito Boats*[31] is misplaced.

To the extent Plaintiff will argue that the likelihood of confusion test applies to its copyrights or patent, that is false. The likelihood of confusion test determines whether there is ***trademark*** infringement.[32] It does not apply to patents or copyrights.

### 4. *Duer* is highly analogous and instructive.

Plaintiff tried to distinguish *Duer* in order to avoid preemption, but the factual and legal parallels are undeniable. In *Duer*, the plaintiff brought a GUDTPA claim and a tortious interference with contract claim based on "the same conduct alleged in her patent, copyright, and trade dress infringement."[33] It is the same here: Plaintiff's GUDTPA claim (which purportedly includes tortious interference as a basis) is based in part on the same conduct as its patent, copyright, and trade dress infringement claims.[34] The court in *Duer* held that a GUDTPA claim based on

---

[31] D.E. 498 at 24 ("Patent Act does not preempt state law … causes of action based on trademark) (citing *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 154 (1989)).

[32] Plaintiff's own description of the likelihood of confusion test is telling: "Determination of likelihood of confusion requires analysis of the following seven factors: (1) type of ***mark***, (2) similarity of ***mark***, (3) similarity of the products [or services] the ***marks*** represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion." D.E. 498 at 8, n.4 (quoting *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989)) (emphasis added).

[33] *Duer*, 2015 U.S. Dist. LEXIS 192255, at *15.

[34] *See* Sections II(A)(1) & (B)(1).

patent, copyright, and trade dress infringement was essentially a "'reverse passing off claim,' which is conduct courts routinely find to be preempted by federal law."[35] Here too, Plaintiff's GUDTPA claim amounts to a reverse passing off claim, and therefore is preempted by federal law.

Plaintiff offered two arguments to distinguish *Duer*, but neither passes muster. First, Plaintiff argued that *Duer* did not involve trademark infringement as a basis of the state law claims. This is a meaningless distinction, as Defendants will not move to dismiss the state law claims as far as they rely on trademark infringement as their basis. Second, Plaintiff argued that *Duer* does not apply because Plaintiff alleges "passing off," not "reverse passing off."[36] This is mere semantics. Passing off and reverse passing off claims are two sides of the same coin, with the heart of the claim being that the defendant has misrepresented the source of the goods. The preemption analysis is the same, regardless of which type of passing off is at issue. Further, the facts here are identical to the "reverse passing off" in *Duer*: "the conduct alleged amounts to an allegation that Defendants took Plaintiff's intellectual property and represented to the public that the actual product was Defendants."[37] Here too, Plaintiff has alleged that Defendants took Plaintiff's intellectual property (in the

---

[35] *Duer*, 2015 U.S. Dist. LEXIS 192255, at *16.
[36] D.E. 498 at 20.
[37] *Duer*, 2015 U.S. Dist. LEXIS 192255, at *17.

form of copyrights, trademarks, trade dress, and patents) and represented the allegedly infringing product to the public as Defendants' product.

## III.    PUNITIVE DAMAGES ARE NOT A CAUSE OF ACTION

As with the state law claims, the KaiJet Defendants previously moved for judgment on the pleadings regarding Plaintiff's claim for punitive damages. This Court denied the motion as untimely under the local rules, but noted that Defendants could raise the issue at trial.[38]

Sanho's Count VIII alleges "Punitive Damages." However, this Court has already determined that punitive damages "is not a stand-alone claim."[39] Because Plaintiff pled it as a stand-alone claim (Count VIII),[40] no further analysis is necessary, and Count VIII should be dismissed.

Plaintiff did separately plead punitive damages as part of Count VI. Plaintiff's other state law claims (Counts V & VII) do not plead punitive damages, and thus Plaintiff should not be allowed to seek punitive damages based on those claims.

---

[38] D.E. 513 at 65.

[39] *Andrews v. D'Souza*, No. 1:22-cv-04259-SDG, 2023 U.S. Dist. LEXIS 176638, at *38 n.147 (N.D. Ga. Sept. 30, 2023) (citing *Massey v. Kelly, Inc.*, 742 F. Supp. 1156, 1158 (N.D. Ga. 1990) ("[T]he Georgia statute for punitive damages is not grounds for an independent cause of action.")).

[40] D.E. 88 at ¶¶ 116-118.

## IV.   SANHO'S LACK OF STANDING

The KaiJet Defendants contest Sanho's standing to assert some or all of the design patents and the "707 Mark." In November 2022, Sanho assigned its rights to the asserted design patents and the 707 Mark to its corporate parent Targus International LLC ("Targus"). In December 2023, Sanho served KaiJet US with a document production containing an undated *nunc pro tunc* "exclusive license agreement" between Hyper Products, Inc. (f/k/a Sanho) and Targus ostensibly effective as of November 2022.

In addition to the patent owner, "[a]n exclusive licensee has standing to sue in its own name, without joining the patent holder, where 'all substantial rights' in the patent are transferred."[41] That is, an entity that lacks any of the bundle of rights in the patent lacks standing to assert the patent.

Sanho has obtained certificates of correction from the USPTO, changing the inventorship of design patents to name two individuals as joint inventors and therefore co-owners. When there are multiple co-owners, all must be a party to the suit in order to maintain standing.[42] The KaiJet Defendants anticipate that the

---

[41] *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007) (quoting *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000)).

[42] *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1378 (Fed. Cir. 2020) ("'An action for infringement,' moreover, 'must join as plaintiffs all co-owners.'"). (quoting *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998)).

evidence will not establish that all co-owners assigned their rights to Targus, such that the "exclusive license" is not sufficient to convey standing to Sanho.

## V.    NO INFRINGEMENT OF SANHO'S ALLEGED INTELLECTUAL PROPERTY

Sanho has levied a number of intellectual property claims against KaiJet US, including infringement of design patents, trademark, trade dress, and copyright. These claims are all fatally flawed, as each underlying piece of intellectual property is void. Further, even if Sanho had valid intellectual property rights, KaiJet has not violated any of them.

### A. No Design Patent Infringement

Sanho has alleged that KaiJet US has infringed the Asserted Patents. KaiJet US will prove at trial that (1) the Asserted Patents are each invalid; and (2) KaiJet US has not infringed any of the Asserted Patents.

#### 1.  The Asserted Patents are invalid.

A design patent is invalid if it is obvious in view of the prior art.[43] Up until a few weeks ago, the *Rosen-Durling* test placed strict requirements on the invalidity analysis of design patents, requiring that:

> (1) the primary reference be 'basically the same' as the challenged design claim; and (2) any secondary references be 'so related' to the

---

[43] 35 U.S.C. § 103.

primary reference that features in one would suggest application of those features to the other.[44]

But on May 21, 2024, the Federal Circuit overturned the *Rosen-Durling* test.[45] Instead, "the framework for evaluating obviousness of design patent claims…[is] application of the *Graham* factors."[46]

The first *Graham* factor requires considering the scope and content of the prior art. The requirement that prior art be "basically the same" has been abolished, and instead the scope of prior art includes a broader field of "analogous art."[47] The Federal Circuit declined to fully outline the contours of "analogous art" for design patents, but held that at a minimum, art from the same field of endeavor as the article of manufacture would be "analogous."[48]

The second *Graham* factor requires determining the differences between the prior art designs and the design claim at issue. This involves "compar[ing] the visual appearance of the claimed design with prior art designs… from the perspective of an ordinary designer in the field of the article of manufacture."[49]

---

[44] *LKQ Corp. v. GM Glob. Tech. Operations LLC*, No. 2021-2348, 2024 U.S. App. LEXIS 12139, at *19 (Fed. Cir. May 21, 2024)

[45] *Id.*

[46] *Id.* at *25.

[47] *Id.*

[48] *Id.* at *30.

[49] *LKQ*, 2024 U.S. App. LEXIS 12139, at *32.

The third *Graham* factor requires determining "the level of ordinary skill in the pertinent art."[50] In the context of design patents, the "obviousness of a design patent claim is assessed from the viewpoint of an ordinary designer in the field to which the claimed design pertains."[51] In other words, *Graham* factor three considers the knowledge of a designer of ordinary skill who designs products of the type involved in the design patent.[52]

With these three *Graham* factors determined, the obviousness of the claimed design is evaluated, asking "whether an ordinary designer in the field to which the claimed design pertains would have been motivated to modify the prior art design 'to create the same overall visual appearance as the claimed design.'"[53]

At trial, KaiJet US will present the expert testimony of Mr. Bressler, who will demonstrate to the jury that each of the Asserted Patents is obvious in view of the analogous prior art and therefore invalid.

## 2. KaiJet US' products are plainly dissimilar from the Asserted Patents.

Design patent infringement requires comparing the accused product with the ornamental (i.e. non-functional) elements of the claimed design. The test is whether

---

[50] *Id.* at *33.

[51] *Id.*

[52] *Id.*

[53] *LKQ*, 2024 U.S. App. LEXIS 12139, at *34 (quoting *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021)).

"an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design."[54]

At trial, KaiJet US will present the jury with relevant prior art and expert testimony regarding a number of differences between the two designs which would be particularly noticeable in view of analogous prior art.

## B. No Trademark Infringement

Sanho has alleged that KaiJet Defendants' various uses of "Ultradrive" on its USB-c hubs infringes the 707 Mark ("HYPERDRIVE"). KaiJet will prove at trial that (1) the 707 Mark is invalid; and (2) KaiJet has not infringed the 707 Mark.

### 1. The 707 Mark is invalid.

Sanho registered the mark "HyperDrive" for a very specific set of goods: "components for personal computers, tablet computers, MP3 players, cell phones and smart phones, namely, electrical power cords, power adapters, and batteries; styluses and covers for tablet computers." Sanho only argues that its HyperDrive can technically be considered a power adapter. But the question is not whether the HyperDrive technically could be considered a power adapter – the question is whether "power adapter" properly describes the HyperDrive "so that an English speaker could understand what" the HyperDrive is.[55] KaiJet US will present

---

[54] *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).

[55] *In re Faucher Indus. Inc.*, No. 85202870, 2013 TTAB LEXIS 313, at *20 (T.T.A.B. 2013) (citing TMEP § 1402.01(a)).

evidence that HyperDrive was never marketed as a power adapter and expert testimony that the HyperDrive product does not meet the commonly understood meaning of the term "power adapter."

### 2. There is no likelihood of confusion

Sanho alleges that any use of "Ultradrive" by is likely to cause confusion about the source of the KaiJet US' USB-C hub products. KaiJet US will present evidence that conclusively demonstrates that none of KaiJet US' USB-C hub products cause a likelihood of confusion.

The Eleventh Circuit has established a multi-factor test to evaluate the likelihood of confusion between two marks:

> (1) strength of the mark alleged to have been infringed;
> (2) similarity of the infringed and infringing marks;
> (3) similarity between the goods and services offered under the two marks;
> (4) similarity of the actual sales methods used by the holders of the marks,  such as their sales outlets and customer base;
> (5)  similarity of advertising methods;
> (6) intent of the alleged infringer to misappropriate the proprietor's good will; and
> (7)  the existence and extent of actual confusion in the consuming public.[56]

Whether there is any actual confusion is the most important factor, particularly where "there has been ample opportunity for consumer confusion."[57] Even so, the

---

[56] *Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010)

[57] *Hard Candy, LLC. v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362 (11th Cir. 2019) (quoting *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999)).

above factors are merely a guide, and the "ultimate question" for the jury is "whether relevant consumers are likely to believe that" KaiJet US' products are affiliated with Sanho.[58]

The KaiJet Defendants will present evidence at trial that (1) the 707 Mark is weak due to wide-spread use of "Hyperdrive," "Hyper," and "Drive," along with similar variants; (2) that "Ultradrive," "ULTRADRIVEMINIDOCK®," "Ultradrive Mini Dock," and "ULTRADRIVEKIT®" are plainly dissimilar for "HyperDrive"; (3) that KaiJet US had a history of use of the term "Ultra" on products and no intent to copy Sanho; and (4) despite Sanho and KaiJet US selling collectively over 550,000 of the products at issue, there is no evidence of actual confusion by consumers.

### i. Sanho's evidence does not demonstrate actual confusion of relevant consumers.

Sanho has indicated that it will present purported evidence of actual confusion. KaiJet Defendants will move to exclude any such evidence as inadmissible hearsay. Even if admitted, KaiJet will demonstrate through testimony that Sanho's evidence does not demonstrate actual confusion of the relevant consumers. *First*, the message from a HyperDrive Kickstarter supporter cannot evidence confusion, as the message pre-dates the release of KaiJet's Ultradrive product by over four months. *Second*, the

---

[58] *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 650 (11th Cir. 2007) (quoting *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991)).

email from "Jamie Dillion" does not show that they, the consumer, were confused as to the source of their Ultradrive. Instead, the email and attachments demonstrate that an employee at Best Buy told Jamie Dillion to contact Sanho. This unidentified Best Buy employee is not a relevant consumer, and therefore their confusion is irrelevant. *Third*, the evidence of Sanho receiving returns of the Accused Products from Best Buy only shows at most that some unidentified Best Buy employee was not paying attention – a common phenomenon that Daniel Chin and other witnesses will confirm. It fails to show that the actual consumer believed at the time of their purchase that the KaiJet product actually was a Sanho product, and thus is irrelevant.

## C. No Trade Dress Infringement

Sanho alleges that KaiJet Taiwan has infringed the trade dress of the HyperDrive product packaging. To bring a successful trade dress infringement claim under the Lanham Act, Sanho must prove that (1) the KaiJet product packaging is confusingly similar to the HyperDrive product packaging; (2) the similar features of the packaging are primarily non-functional; and (3) the Hyperdrive product packaging is distinctive.[59] Sanho will not be able to satisfy any of these required elements at trial.

---

[59] *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1322 (11th Cir. 2012).

### 1. Sanho has no trade dress rights in its product packaging.

It is Sanho's burden to prove that either its trade dress is inherently distinctive or it has acquired secondary meaning. Sanho will not be able to prove either at the trial. There is nothing intrinsic about the HyperDrive packaging that inherently makes it source-indicating. To the contrary, the KaiJet Defendants will present evidence that the packaging is similar to the packaging of many other products in the computer accessory field. As for secondary meaning, Sanho has no evidence to present at trial that consumer's associate the elements of its purported trade dress with Sanho.[60] At most, Sanho will show sales numbers and advertising expenditures, but these are insufficient alone. Advertising can only demonstrate secondary meaning if Sanho can prove that the advertisements "draw attention to the alleged trade dress."[61] It cannot. As for sales numbers, "there must be some proof that the sales were generated by the alleged trade dress."[62] Sanho has no such proof. Thus, Sanho will fail to meet its burden at trial to prove it has trade dress rights.

---

[60] *See* 1 Gilson on Trademarks § 2A.03 (2022) ("[e]vidence of secondary meaning must show that the purchasing public associates the trade dress elements with the plaintiff as the source of the products."）

[61] *See* McCarthy on Trademarks § 8:8.50.

[62] *Id*.

2.   **KaiJet product packaging is not confusingly similar to Sanho's product packaging.**

The KaiJet Defendants will present to the jury the expert testimony of Mr. Sarabia, who will testify regarding the many differences between KaiJet Defendants' packaging and Sanho's product packaging.

### D. No Copyright Infringement

Sanho has accused KaiJet Taiwan's product packaging of its JCD382 of infringing Copyright Reg. No. VA 2-103-336 for its asserted copyrighted product packaging. To prove copyright infringement, Sanho must establish that (1) it is the valid owner of the copyright; and (2) KaiJet Taiwan copied "constituent elements of the work that are original."[63] Because Sanho has no direct proof of copying, Sanho must instead try to prove that KaiJet Taiwan had access to Sanho's copyrighted packaging and that there is "substantial similarity" between KaiJet Taiwan's product packaging and Sanho's copyrighted packaging.

The KaiJet Defendants expect to prove at trial that (1) Sanho is not the author of the copyrighted work and therefore not the owner; (2) KaiJet Taiwan did not have access to the copyrighted product packaging before KaiJet Taiwan's product packaging was designed; and (3) that KaiJet Taiwan's product packaging is not substantially similar to Sanho's copyrighted packaging.

---

[63] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)

### 1.  Sanho did not author the copyrighted packaging.

Ownership of a copyright "vests initially in the author…of the work."[64] The "author" of a work is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."[65] KaiJet Taiwan will present witness testimony that Ying Ching Chen is the author of the copyrighted Sanho product packaging. Further, testimony will reveal that Ying Ching Chen was not an employee of Sanho and that she never conveyed ownership of the copyright to Sanho. KaiJet Taiwan will also introduce evidence that Sanho's copyright application originally contended that ownership was transferred to Sanho by written agreement, but that Sanho later changed its story to claim it was the original author. That is because the evidence will show Ying Ching Chen never transferred ownership to Sanho by written agreement, as is required.

### 2.  KaiJet Taiwan did not have access to the copyrighted packaging.

KaiJet Taiwan will also demonstrate through witness testimony and Best Buy business records that it did not have access to the copyrighted product packaging prior to or during the design of the accused product packaging, and thus could not

---

[64] 17 U.S.C § 201(a).

[65] *Keyfer & Assocs. v. Brock*, No. 1:07-CV-2297-CC, 2010 U.S. Dist. LEXIS 152414, at *57 (N.D. Ga. Mar. 29, 2010) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)).

have copied Sanho's packaging. Witness testimony and website screenshots will confirm that Sanho's copyrighted product packaging was never displayed on any online retailers such as Best Buy or Amazon. Moreover, witnesses will testify they did not have access to the copyrighted product packaging prior to the finalization of the accused product packaging.

### 3.  The packaging is not substantially similar.

The KaiJet Defendants' expert Tony Sarabia will testify there are over 180 differences between the accused product packaging and Sanho's copyrighted product packaging, which include color, shape, location, lettering, and numbering.

### E. Preempted State Law Claims Fail Too

As Sanho's state law claims are all based on the alleged infringement of its IP – the same IP covered in its patent, Lanham Act, and copyright claims – neither party will present any additional evidence specific to these claims.

## VI.    DAMAGES

Sanho seeks to disgorge profits. The KaiJet Defendants will present testimony from expert Michael Pellegrino regarding profits on each accused product for the relevant time period for each of Sanho's claims.

### A. Even if Infringement of Sanho's IP Is Found, It Was Not Willful

Sanho has alleged that KaiJet US willfully infringed its trademark, trade dress, copyright and design patents. Willful infringement is "more than just 'knowing' infringement[]," instead it requires a "reckless disregard of the possibility that one's

actions are infringing."[66] There is no evidence of the KaiJet Defendants acting with the requisite reckless disregard. Further, with respect to the design patents, the KaiJet Defendants will present witness testimony that they had no prior knowledge of the design patents and thus could not have willfully infringed them.

## B. Even if the State Law Claims Survive, Punitive Damages Are Not Available

Under Georgia state law, punitive damages can only be awarded if the plaintiff proves that they have suffered actual damages.[67] Sanho has no evidence of any actual damages it suffered. Sanho's damages expert is limited to testifying regarding the defendants' profits. Thus, Sanho will not be able to meet its burden of proving actual damages in order to seek punitive damages.

## C. Sanho Cannot Seek Statutory Damages Under the Lanham Act or Copyright Act

To the extent Sanho seeks statutory damages under the Lanham Act, they are not available. Statutory damages are only available for the use of counterfeit marks.[68] A

---

[66] *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1272 (11th Cir. 2015)

[67] *Wade v. Culpepper*, 279 S.E.2d 748, 750 (Ga. Ct. App. 1981) ("The award of punitive damages and attorney fees, in the absence of any finding of actual damages, is improper as a matter of law."); *Carter v. Progressive Mountain Ins.*, 761 S.E.2d 261, 264 (Ga. 2014) ("punitive damages must arise from and be based upon a compensable injury, as a claim for punitive damages has efficacy only if there is a valid claim for actual damages to which it could attach. Punitive damages may not be recovered where there is no entitlement to compensatory damages.") (cleaned up); *Foster v. Sikes*, 42 S.E.2d 441, 444 (Ga. 1947) ("Since no injury is shown to the plaintiff . . ., he has no cause of action for punitive damages.").

[68] 15 U.S.C. § 1117. Statutory damages are also available for violations of section

24

counterfeit mark is "'a spurious mark which is identical with, or substantially indistinguishable from,' a mark that is registered on the Principal Register."[69] Sanho has no cause of action for trademark counterfeiting.

Statutory damages are also not available for Sanho's copyright claim. 17 U.S.C. § 412 states that "no award of statutory damages or of attorney's fees" are available if the copyright was not registered within "3 months after the publication of the work or 1 month after the copyright owner has learned of the infringement." Sanho began selling its HyperDrive product in the copyrighted packaging in 2017. Sanho also learned of KaiJet US' sales using the Accused Packaging in 2017. But Sanho did not register the copyright until May of 2018. As a matter of law, Sanho cannot seek statutory damages or attorney's fees for its copyright claim.

## VII.    EVIDENTIARY ISSUES

KaiJet US will address potential evidentiary issues in its motion in limine, to be filed with the Court by June 18, 2024.

---

1125(d)(1), but that statutory section addresses cyberpiracy.

[69] *Sportswear Co. S.p.A. v. A Cheap Body Shop*, No. 1:21-CV-02906-JPB, 2021 U.S. Dist. LEXIS 242751, at *7 (N.D. Ga. Dec. 21, 2021) (quoting 15 U.S.C. § 1127).

Respectfully submitted, this 4th day of June, 2024.

/s/ *Ryan P. Gentes*

Ryan P. Gentes (GA Bar No. 421695)
Robert A. Madayag, III (GA Bar No. 123699)
William B. Dyer III (GA Bar No. 236915)
Steven Philbin (GA Bar No. 516724)
James Avery Rollins (GA Bar No. 776439)
**LEE & HAYES, P.C.**
75 14TH Street, NE, Suite 2500
Atlanta, GA 30361
Telephone:  (404) 815-1900
Facsimile:  (404) 815-1700
Email:  ryan.gentes@leehayes.com
Email:  robm@leehayes.com
Email:  bill.dyer@leehayes.com
Email:  steven.philbin@leehayes.com
Email:  james.rollins@leehayes.com


Robert J. Carlson *(admitted pro hac vice)*
WSBA Number 18455
**LEE & HAYES, P.C.**
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email:  carlson@leehayes.com


Rhett V. Barney *(admitted pro hac vice)*
WSBA Number 44764
Johanna Tomlinson *(admitted pro hac vice)*
WSBA Number 57582
**LEE & HAYES, P.C.**
601 W. Riverside Ave., Ste. 1400
Spokane, WA 99201
Telephone: (509) 324-9256
Email: rhettb@leehayes.com

26

*Attorneys for Defendant KaiJet Technology International Limited, Inc. and Defendant KaiJet Technology International Corporation*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

/s/ *Ryan Gentes*
Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.

*Attorney for Defendants*
*KaiJet Technology International*
*Limited, Inc. and KaiJet Technology*
*International Corporation*