UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>       Plaintiff,<br><br>   v.<br><br> KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., dba "j5create;" and DOES 1-100,<br><br>       Defendants, | Case No. 1:18-cv-05385-SDG |
| SANHO CORPORATION,<br><br>       Plaintiff,<br><br>   v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY INTERNATIONAL CORPORATION; MAGIC CONTROL TECHNOLOGY; STARVIEW GLOBAL LIMITED, each doing business as "J5Create;" and DOES 1-10,<br><br>       Defendants. | Consolidated with<br>Case No. 1:20-cv-02150-TCB |

**PLAINTIFF'S OMNIBUS MOTION IN LIMINE**

For its Omnibus Motion in Limine, Sanho Corporation shows the Court the following:

**A. Motion in Limine # 1:  The Defendants should be precluded from introducing evidence or argument contesting that "HyperDrive" is a "strong mark."**

**1.   The Defendants should not be permitted to introduce evidence or to argue that "HyperDrive" is anything other than a strong mark that is either suggestive or arbitrary.**

Marks are categorized as "strong" or "weak" depending on their distinctiveness.[1]  For the Defendants to argue to the jury that HyperDrive® is weak, they must have evidence that is relevant to the question of either (a) whether the mark is generic; or (b) whether the mark is descriptive.  On the first point, as the Court has noted, "HyperDrive" is not generic, as it is not a class of products.[2] Defendants have not raised genericism in the pretrial order.  Likewise, Defendants should be precluded from arguing that the mark is descriptive due to its use of "drive."  "Nor is it descriptive,  because a hub is not a 'drive' in the common computing sense: it is neither '[a]n apparatus for reading and writing data to or from a mass storage device,' nor the mass storage device itself."[3]  Defendants ought not be permitted to introduce evidence or argument to the jury attempting to define "-drive" in such a way as to contravene the Court's prior finding that the

---

[1]  D.E. 513, at 28.

[2]  *Id*.

[3]  *Id*.

product on which the mark is used is not a "drive" in the common computing

sense.[4]

**2. Defendants should also be precluded from introducing evidence of third-party usage, and from arguing to the jury that HyperDrive® is not a strong mark or has been weakened by third party usage.**

"[T]he strength of the '707 Mark is not significantly reduced by third party

use, for two reasons.  First, third-party use of the '707 Mark's component words

"hyper" and "drive" (or of their homophones) is not probative of strength."[5]  To be

relevant to the issue of commercial strength of a mark, the third-party user must

use "the <u>entire name</u> a third party uses."[6]

In contravention of the foregoing, Defendants seek to rely at trial on the

third-party marks which are located at Exhibit H to the Sarabia Report (entitled

"Nine Trademark Registrations in Classes 9 and 42 Owned by Third Parties Which

are Phonetically Identical and Visually Identical or Very Similar to 'Hyper'") and

Exhibit I to the Sarabia Report (showing use of "Hiper" at amazon.com).[7]  In

accordance with the foregoing, neither the Defendants, nor their "expert" Mr.

---

[4]  FRE 402, 403.

[5]  D.E. 513, at 29.

[6]  *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord.*, 809 F.3d 1171, 1186 (11th Cir. 2015) (emphasis in original).

[7]  D.E. 521, at 12; D.E. 521-1, at Exhibits H-I (pages 91-103 of the file).  These exhibits are also listed as Defendants' Trial Exhibits 639-40 in the pretrial order.

Sarabia, may employ this third-party usage or registration of "hyper" or its phonetic equivalents (*e.g.*, "hiper" or "hypr").  This evidence is irrelevant because it is not a use of the "entire mark," and this Court has already so held.[8]  Moreover, the evidence of third-party usage or registration of "hyper" has a tendency to suggest to the jury that this evidence should bear on the question of the mark's strength, and is therefore also inadmissible because of its tendency to confuse the jury.[9]  The Defendants should therefore be precluded from introducing evidence or argument relating to third-party usage of registration of "hyper" and "hyperdrive" and their phonetic equivalents.  This includes the nine third party trademark registrations of "HYPER,"  "Hiper," "HYPUR," "HYPR," "HYP3R," "HYPIR," and "HYPPR" that Defendants intend to introduce at trial (all of which are catalogued at Exhibit H of the Sarabia Report).[10]

Turning to the evidence of third-party uses of the "entire mark," that evidence is only relevant is the usage is competitive in nature with Sanho's usage of HyperDrive®.  "Second, third-party use of 'HyperDrive' in connection with unrelated products is <u>not</u> probative of the '707 Mark's strength."[11]

---

[8]  *See* FRE 402.
[9]  *See* FRE 403; *Noorani Trading, Inc. v. Bijani*, No. 1:17-CV-1344-LMM, 2018 WL 1426364, at *3 (N.D. Ga. Feb. 7, 2018) (motion in limine may be used to exclude evidence that would be overly prejudicial or confusing to the jury).
[10]  These nine marks are also irrelevant because they are registrations for use on unrelated goods.  *See* FRE 402.
[11]  D.E. 513, at 30 (emphasis added).

At trial, Defendants are expected to seek to rely on "Six Phonetically Identical Trademark Registrations Not Owned by Sanho," which are catalogued at Exhibit J to the Sarabia Report.[12]  However, this Court reviewed each of these registrations and already found that they are not relevant because they cover unrelated goods.[13]  If Defendants are permitted to introduce these registrations at trial, it would present an unnecessary risk of juror confusion over whether these registrations weaken the Sanho mark.[14]

Moreover, because these third party registrations are inadmissible, the evidence showing the _use_ of these third party registrations[15] in commerce is also likewise inadmissible for the same reasons.

Lacking any relevant evidence of third-party usage of "HyperDrive" on related goods, the Court should hold that the Defendants are precluded from arguing that the Sanho mark is not strong, much less commercially weak.

**B. Motion in Limine #2:  The Defendants should be precluded from introducing evidence of the date of their first use of "Ultra," and arguing that they are senior users, with superior trademark rights.**

The first person to use a mark acquires rights in the mark through priority of

---

[12]  D.E. 521-1 (pages 106-118 of the file) and listed as Defendants' Trial Ex. 641.

[13]  D.E. 513, at 30 (internal quotation omitted); FRE 402.

[14]  FRE 403; _United States v. Paul_, 175 F.3d 906, 909 (11th Cir. 1999) (district courts can exclude evidence that would confuse the jury).

[15]  Exhibits K and L to the Sarabia Report, filed as D.E. 521-1, at pages 119-124 of the file, and listed as Defendants' Trial Ex. 642-643.

use.[16] But the whole mark must be used.[17] The Defendants did not plead a "senior user" defense.[18] Thus, Defendants have waived their right to advance a priority of use defense.[19]

In the pretrial order, the Kaijet Defendants have asserted that "KaiJet US intends to utilize witness testimony to demonstrate it has been selling products with the prefix 'ULTRA' since as early as mid-2012."[20] The Kaijet Defendants likely intend to build on this evidence (prior use of "Ultra," but not "Ultradrive"[21]) by arguing that the Kaijet Defendants are therefore the "senior user" of the mark, with priority of trademark ownership. Indeed, they have proffered the following testimony from Sarabia, revealing this very intention:

> **Priority of trademark rights refers to which party has superior rights**. Priority in trademarks can be obtained a number of ways. One way is first use. KaiJet first began using the trademark "Ultra" on electronic products in mid-2012 on a product known as an "ultra station" (JUD500). A few years later KaiJet launched its "HyperDrive." Sanho began using the mark "Hyper" on electronic products in August 2012. About the same time, it began using "HyperDrive." **This means that even if one assumes "hyper" and "ultra" are similar,**

---

[16] *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist*, 889 F.2d 1018, 1023 (11th Cir. 1989).

[17] *Id.* (analyzing whether the mark was used, not just part of the mark).

[18] *See* D.E. 115, at 43-46.

[19] *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir. 2003).

[20] D.E. 527-6, at 11.

[21] Sanho recognizes that the fact that the Kaijet Defendants used "ultra" for "ultra station" before the switched their mark to "Ultradrive" after Sanho started selling the HyperDrive is relevant, and therefore it is only the date of earliest use of "ultra" in commerce – mid-2012 – that is inadmissible. *See* D.E. 513, at 34.

**Sanho does not have priority over KaiJet based on use.[22]**

Because the use of "ultra" by itself is irrelevant to any of the legal issues in the case, the Court should preclude the Defendants from offering evidence of the date of first use of "ultra" at trial.[23]  Otherwise, it could confuse the jury into believing that the Kaijet Defendants have a date-based defense to infringement[24] – a defense they failed to raise in the pleadings.  Likewise, the Defendants should not be permitted to argue that they are the "senior user" or that Sanho is the "junior user" based on the merely on the use of "ultra" or "ultra station."  Such terminology will mislead a jury about how to analyze first use and priority of use in this case, which depends upon the priority of use of the marks at issue in the case, not merely the use of a part of the mark.  Alternatively, if and to the extent that any Defendant or defense witness asserts that any defendant used "ultra" before Sanho used "hyper," or asserts that any Defendant is the "senior user" of the mark (or that Sanho is the "junior user" of the mark), then the Court should give a corrective instruction that the usage of "ultra" alone is insufficient to render any Defendant a "senior user" with respect to "Ultradrive" or to vest any Defendant

---

[22]  D.E. 521-1, Report at 16 (page 19 of the file) (emphasis added).
[23]  D.E. 521-1, Report at 16 (page 19 of the file) (emphasis added).
[24]  FRE 403; *Frederick v. Kirby Tankships, Inc*., 205 F.3d 1277, 1285 (11th Cir. 2000) (districts courts can exclude prejudicial evidence on a motion in limine).

with priority trademark rights over Sanho.  That way, juror confusion may be avoided.[25]

### C. Motion in Limine #3:  The Kaijet Defendants should not be able to introduce evidence or argument about other "Ultradrive" trademark registrations in Class 09, including their own post-suit trademark registrations.

As the Court is aware, there is a well-established seven-factor test in the Eleventh Circuit for determining a likelihood of confusion.[26]  The decision by a USPTO examining attorney made <u>without</u> the benefit of the record in the case at bar is <u>not</u> a part of this established test.  "The Court gives little weight to the decision of the [USPTO] examining attorney, as he presumably did not have the benefit of the evidence and counsel's argument available to this Court."[27]  Stated simply, the Court should afford no weight to a USPTO's decision to register an "Ultradrive" application in Class 09.[28]

---

[25] *See Bunch v. Pac. Cycle, Inc*., No. 4:13-CV-0036-HLM, 2015 WL 11622954, at *4 (N.D. Ga. Apr. 27, 2015) ("The Court … does not intend to allow Defendant to confuse the jury as to its liability by arguing that it is a distributor, not a manufacturer.").

[26] *See* D.E. 513, at 27.

[27] *Hi-Tech Pharms., Inc. v. Nutrition Res. Servs., Inc*., No. 1:23-CV-5536-TCB, 2024 WL 649235, at *6 n.3 (N.D. Ga. Feb. 15, 2024) (rejecting Hi-Tech's argument that the USPTO examining attorney performed a likelihood of confusion analysis and did not find Hi-Tech's KRANK3D mark to be confused with any other mark).

[28] *See Rice v. Brand Imports, LLC*., No. 1:09-CV-3254-MHS, 2010 WL 11549769, at *3 (N.D. Ga. Sept. 16, 2010); *Dixie Consumer Prod., LLC v. Huhtamaki Americas, Inc*., 691 F. Supp. 2d 1372, 1376 n.2 (N.D. Ga. 2010).

There are three "Ultradrive" registrations that the Defendants may seek to introduce at trial.  They are:

| "Ultra" mark |
|---|
| U.S. Reg. No. 2791539 (Dec. 9, 2003) – Ultradrive |
| U.S. Reg. No. 6086955 (June 23, 2020) – ULTRADRIVE KIT and logo |
| U.S. Reg. No. 5765836 (May 28, 2019) for ULTRADRIVEMINIDOCK and logo |

These marks are catalogued in Exhibit M to the Sarabia Report.[29]

The "Ultradrive" registration ending in '539 pertains to <u>unrelated</u> goods, namely, sound amplifiers, speakers and mixers.[30]  Accordingly, it is entitled to no weight and inadmissible under FRE 402 (irrelevant) and 403 (undue prejudice outweighs any probative value).[31]

The "Ultradrive" registrations ending in '955 and '836 are also entitled to no weight, and are each inadmissible.  They are irrelevant because, among other things, Kaijet Taiwan, the applicant, applied for these marks <u>after</u> this lawsuit began, and did <u>not</u> inform the USPTO examiner during prosecution of (a) this lawsuit; (b) Sanho's contention that "Ultradrive" was confusingly similar to

---

[29]  D.E. 521-1 (at 125-133 of the file) and listed as Defendants' Trial Ex. 644.
[30]  D.E. 521-1 (at 128-129 of the file).
[31]  *See* D.E. 513, at 30.

"HyperDrive;" or (c) any of the evidence in this case (e.g., that the competing

HyperDrive and Ultradrive products are each offered for sale to the same

customers at Best Buy locations throughout the U.S.).[32]  Consistent with *Hi-Tech*,

*Rice* and *Dixie Consumer Prod.*, the Court should hold that these registrations are

of no relevance (FRE 402), and that their probative weight is outweighed by the

risk of undue prejudice to Sanho (FRE 403).[33]

### D. Motion in Limine #4:  The Kaijet Defendants should not be able to introduce evidence or argument relating to the co-existence of unrelated "Hyper" and "Ultra" trademark registrations.

As noted above, the focus in trademark litigation is and must be on the mark

as a whole:  HyperDrive® versus Ultradrive, not mere subparts of the marks like

"hyper" or "ultra" used in other marks.[34]

Defendants may seek to introduce these co-existing "Hyper-" and "Ultra-"

registrations:

---

[32] *See* D.E. 521-3 and 521-4 (each trademark's prosecution history file).

[33] *See Flir Sys., Inc. v. Fluke Corp.*, No. 3:10-CV-00971-HU, 2012 WL 13054267, at *6 (D. Or. Nov. 29, 2012) (granting motion in limine to preclude evidence of newly issued trademark because "[t]he PTO did not have before it the great mass of evidence which the parties have presented to this court in support of their claims").

[34] *See* D.E. 513, at 29; *Tally-Ho*, 889 F.2d at 1023 (focusing on the entirety of the mark, not on a subpart).

| U.S. Reg. No. 4779637 (July 28, 2015) – HYPERHYBRID | U.S. Reg. No. 6597836 (Dec. 21, 2021) – ULTRAHYBRID |
|---|---|
| U.S. Reg. 5651957 (Jan. 15, 2019) – HYPERFLOW | U.S. Reg. No. 5803047 (July 16, 2019) – ULTRAFLOW |
| U.S. Reg. No. 3272406 (July 31, 2007) – HYPERSPEC | U.S. Reg. No. 4418268 (Oct. 15, 2013) – ULTRA SPEC |
| U.S. Reg. No. 3720089 (Dec. 1, 2009) – HYPERBOND | U.S. Reg. No. 2516694 (Dec. 11, 2001) – ULTRA BOND |
| U.S. Reg. No. 4633063 (Nov. 4, 2014) – UVEX HYPERSHOCK | U.S. Reg. No. 5716079 (April 2, 2019) – ULTRA-SHOCK with logo |

These registrations are catalogued in Exhibit M to the Sarabia Report.[35]  Each of these registrations is entitled to no weight, and is irrelevant.  None of the registrations relate to the products at issue in this case, and there is no way to explore the rationale behind the USPTO examining attorney's decision to permit these unrelated registrations to issue.  Moreover, permitting the jury to hear about these co-existing marks may confuse the jury with respect to the application of the likelihood of confusion factors by suggesting that the jury defer to the USPTO decisions.  Thus, this evidence is inadmissible under FRE 402-403.

**E. Motion in Limine #5:  The Defendants should be barred from introducing evidence or arguing at trial that Sanho lacks standing to pursue any of its claims, or that the Court lacks subject matter jurisdiction over this matter based on lack of standing.**

---

[35]  D.E. 521-1 (pages 134-153 of the file) and listed as Defendants' Trial Ex. 644.

The Defendants have stated "Subject matter jurisdiction[] is dependent upon a plaintiff's standing to bring its claims. Issues of subject matter jurisdiction may emerge at trial regarding whether Sanho has standing to bring its patent claims or its trademark claim under 15 U.S.C. § 1114."[36] None of the defendants raised a lack of standing defense in their pleadings.[37] Thus, Defendants have waived their right to challenge standing.[38]

In response, Sanho expects the Defendants to argue that patent, trademark and copyright standing is a non-waivable defense because constitutionally, standing to sue is tied to the Court's subject matter jurisdiction. However, this argument misses the mark for at least the following reasons.

**Design Patents.** The rule of standing regarding patent ownership is "prudential rather than constitutional in nature."[39] Issues of prudential standing may be waived.[40]

---

[36] D.E. 523, at 3.

[37] D.E. 115, at 43-45; D.E. 189, at 42-45; D.E. 422, at 25-26; D.E. 423, at 23-25; D.E. 424, at 22-24 of the file.

[38] *See Drs. Hosp. of Augusta, Inc. v. Horton Homes, Inc.*, No. 1:02-CV-3165-CAP, 2005 WL 8154292, at *5 (N.D. Ga. Jan. 27, 2005), *on reconsideration in part*, No. 1:02-CV-3165-CAP, 2005 WL 8154300 (N.D. Ga. Sept. 28, 2005) (failure to raise lack of standing until after discovery had closed and motions for summary judgment were submitted waived this defense).

[39] *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377-78 (Fed. Cir. 2000) (emphasis added).

[40] *Young v. City of E. Point*, No. 1:18-CV-1206-TCB, 2018 WL 8949790, at *2 (N.D. Ga. Oct. 23, 2018) ("certain prudential limitations on federal court

In *Extreme Networks, Inc. v. Enterasys Networks, Inc.,*[41] more than four years after the case was filed, Extreme filed a motion on the eve of trial "to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of standing and subject matter jurisdiction. Extreme argued that Enterasys lacked standing to sue on the '181 patent because it lacked all substantial rights to the patent.  Extreme did not deny that Enterasys was the current assignee of the patent, but argued that Enterasys granted creditors the right to prohibit assignments of the '181 patent as part of a security agreement and that the creditors possessed an immediate and fully vested right to the '181 patent because Enterasys was in default.  Thus, Extreme asserted that Enterasys was required to join the creditors as plaintiffs before it could sue under the '181 patent. The Court <u>rejected</u> Extreme's argument, stating that "Extreme has no excuse for remaining silent" and not raising the issue when it learned of it.[42]

Here, the acquisition of Sanho by Targus was announced in May 2021, and subsequent assignment of Sanho's IP rights to Targus, occurred in 2022.[43]  The defendants contended before the Court in December 2023 that Targus, not Sanho, was the owner of Sanho's IP rights, and attached a copy of the 2022 assignment of

---

adjudication are waivable"); *RK Co. v. See*, 622 F.3d 846, 851-52 (7th Cir. 2010) ("Prudential standing issues are subject to waiver").

[41]  No. 07-CV-229-BBC, 2012 WL 12862828, at *1–2 (W.D. Wis. July 11, 2012).

[42]  *Id.*

[43]  *See* **Exhibit A**, filed herewith (Declaration of Kenneth Frazier), ¶2.

IP rights.[44]  Yet no defendant in its amended pleadings filed in January 2024 raised any standing defense.[45]  Thus, like *Extreme*, defendants have "no excuse for remaining silent" during the last three years, when they could have filed a motion to dismiss for lack of prudential standing, or to join Targus as an indispensable party.

**Trademark and Copyright.**  Sanho owned both the registered trademark and copyright at issue when the original suit was filed.  Moreover, in the context of the Copyright Act, courts have generally held that a finding that a plaintiff does not own a valid interest in a copyright is properly construed as a determination that a plaintiff lacks statutory, not constitutional, standing.[46]  Lack of statutory as opposed to constitutional standing is waivable.[47]

Likewise, "[t]rademark ownership is a type of statutory or prudential standing. … nothing indicates an intent by Congress to designate trademark ownership as a jurisdictional requirement."[48]  "[S]tatutory standing issues can be

---

[44]  *See* **Exhibit B**, filed herewith (Gentes Dec. 21, 2023 email).

[45]  D.E. 422-424.

[46]  *See, e.g., Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015); *Fahmy v. Jay-Z*, No. 207CV05715CASPJWX, 2016 WL 409644, at *2 (C.D. Cal. Feb. 1, 2016).

[47]  *See Merrimon v. Unum Life Insurance Co. of America*, 758 F.3d 46, 53 n.3 (1st Cir. 2014).

[48]  *I & I Hair Corp. v. Beauty Plus Trading Co.*, No. 3:18-CV-03254-M, 2019 WL 7838077, at *3 (N.D. Tex. Sept. 13, 2019) (citing cases).

waived or cured."[49]  "As a non-jurisdictional issue, Plaintiff's lack of ownership of the EZBRAID Mark was both waived by Defendant by agreeing to the Consent Judgment and cured through the nunc pro tunc assignment between Plaintiff and Ms. Son."[50]  The acquisition of Sanho, and subsequent assignment of Sanho's IP rights to Targus, occurred in 2022.  In the years that followed, no defendant ever amended its pleadings to raise a standing challenge.  Thus, defendants waived any right to challenge standing in this case.  Moreover, there is no doubt that Sanho is the victim of IP infringement and related unfair competition in this case, has suffered injury and therefore has constitutional standing to maintain this suit.  At most, Defendants' issue goes to prudential standing, and has been waived and cured by the exclusive license back from Targus to Sanho granting Sanho all substantial rights in the Sanho IP at issue in this case.[51]

### F.  Motion in Limine #6:  The Defendants should be precluded from asserting, arguing or attempting to introduce evidence showing that Targus is an indispensable party to this litigation.

The defendants have raised the issue in the pretrial order of whether Targus, as owner of Sanho and owner of the intellectual property asserted in this case, is an indispensable party and should be a plaintiff or co-plaintiff.[52]

---

[49]  *Id.*
[50]  *Id.*
[51]  *See* Frazier Dec., ¶2 and attached Exhibit 1.
[52]  D.E. 527, p. 2 ("Targus International, LLC may be a necessary party but has never been joined.").

Targus acquired Sanho in 2022, while this case as pending.[53]  Targus wanted
Sanho to retain the substantial rights in the intellectual property that Sanho needed
to continue to maintain this lawsuit.[54]  Thus, as reflected in the "Exclusive
Intellectual Property License Agreement" between Targus and Sanho,[55] Sanho
retained an "exclusive license to" and "all substantial rights in" the patents,
copyright, and trademark at issue in this case.  Because Sanho holds <u>all substantial
rights</u> in the intellectual property, which includes the exclusive right to sue, there is
no legal requirement for Targus to be a party.[56]  Indeed, Targus would not have had
standing to join as a plaintiff even if it had wanted to be a party.[57]  Targus of course
cannot be an indispensable plaintiff where it has no standing to sue.[58]

---

[53]  Frazier Dec., ¶ 2.

[54]  *Id.*

[55]  Exhibit 1 to Frazier Dec.

[56]  *See Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1343 (Fed.
Cir. 2000) ("It is well established that the holder of all substantial patent rights, by
assignment or by exclusive license, has standing to sue for infringement in its own
name."); *see also Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*,
264 F. Supp. 3d 1294, 1300 (M.D. Fla. 2017), *aff'd*, 920 F.3d 704 (11th Cir. 2019)
("To qualify as an exclusive licensee, with the attendant standing to enforce a
trademark, the license agreement must grant the licensee 'all substantial rights' to
the trademark.  These contractual rights include the right of exclusivity, the right to
transfer and *most importantly the right to sue infringers*.") (internal citation and
quotations omitted) (emphasis in original).

[57]  *Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1359-
60 (Fed. Cir. 2010).

[58]  *See, e.g.*, *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No.
CV0110396MMMCWX, 2009 WL 10699035, at *13 (C.D. Cal. July 14, 2009)
("either Aspex has standing and Chic is not a necessary or indispensable party, or
Aspex lacks standing and Chic is a necessary or indispensable party.").

Moreover, Targus is aware of the instant litigation and has agreed to be bound by the final decision of the litigation for purposes of collateral estoppel and *res judicata*, as if Targus were itself a party to the litigation.[59]  Courts have found parties not indispensable in the face of such undertakings.[60]  Thus, even if Targus had retained any interest in the asserted intellectual property—which it has not—it would still not be an indispensable party.

The Court should accordingly preclude the defendants from suggesting to the jury, presenting evidence and/or arguing at trial that Targus is an indispensable party.

### G. Motion in Limine #7:  Kaijet Taiwan and Star View should be precluded from introducing evidence and/or argument that its sales of Ultradrives to Kaijet U.S. are "foreign sales" that are extraterritorial and therefore beyond the reach of U.S. law.

The Court stated in the summary judgment order that "Kaijet Taiwan's activity in the United States subjects it to U.S. intellectual property law."[61]  The Court reached a similar conclusion as to Star View.[62]  In the wake of these rulings,

---

[59]  Frazier Dec., ¶ 3.

[60]  *Amerada Hess Corp. v. Diamond Servs. Corp.*, 69 F.3d 547 (10th Cir. 1995) (party not indispensable where it "agreed to be bound by [the case's] outcome"); *James River Ins. Co. v. Dimauro*, 258 F.R.D. 543, 545 (S.D. Fla. 2009) (same); *Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 62 F. Supp. 2d 1116, 1120 (S.D.N.Y. 1999) (same); *Hancotte v. Sears, Roebuck & Co.*, 93 F.R.D. 845, 847 (E.D. Pa. 1982) (same).

[61]  D.E. 513, at 47.

[62]  *Id*. at 57-59.

neither Kaijet Taiwan nor Star View has listed the question of foreign sales or extraterritoriality as issued to be tried in the pretrial order.[63]  Accordingly, Kaijet Taiwan and Star View ought not be permitted to introduce evidence or argument at trial regarding whether they have engaged in foreign sales that avoid the reach of U.S. law.  Granting this motion will significantly lessen the amount of time (and the number of trial exhibits) Sanho needs to present its case-in-chief.

### H. Motion in Limine #8:  The Defendants should be precluded from mentioning in the presence of the jury the withdrawal or dismissal of any claims or counterclaims in the case.

The Court's summary judgment order dismissed with prejudice Sanho's claim for false advertising, as well as Kaijet U.S.'s counterclaims for false advertising and false patent marking.  D.E. 513, at 65-66.  Sanho also withdrew its allegation of infringement of the '429 Patent.  D.E. 418.  Pursuant to FRE 403, the parties should not be able to attempt to cause the jury to question the validity of the remaining claims by pointing out that any party has brought claims or counterclaims which were dismissed from the case.

---

[63] *See* D.E. 523, at 8-13 (defendants' statement of issued to be tried).

**I.  Motion in Limine #9:  The Defendants should be precluded from introducing evidence or argument that the HyperDrive does not practice the Sanho design patents (false marking).**

This Court has now held that no reasonable jury could find Sanho liable for false patent marking.[64]  In the recently-revised supplemental report on design patent invalidity dated June 4, 2024, defense expert Kevin Shankwiler repeated his original opinion that "the Hyperdrive does not embody the '618 Patent."[65]  But with no false marking claim in the case, this opinion is not relevant to the remaining issues in the case.  , Moreover, it suggests that the Kaijet Defendants remain intent on arguing that Sanho has falsely represented that the HyperDrive embodies the '618 (or potentially other) patent(s) in the hopes of prejudicing the jury against Sanho.  Pursuant to FRE 402 and 403, the Court should bar this evidence and argument.

**J.  Motion in Limine #10:  Kaijet Defendants should be precluded from introducing evidence or argument that Sanho was involved in any unauthentic or fake product reviews, or unauthentic review campaigns.**

The Court granted Sanho's motion for summary judgment on the false advertising counterclaim dealing with Kaijet's claims of unauthentic product reviews.[66]

---

[64]  D.E. 513, at 62-64.
[65]  D.E. 520-2, ¶85.
[66]  D.E. 513, at 59-62.

A Chinese company known as Popeye appears to have promised refunds of monies paid for the Sanho Hyperdrive to at least 2 people in return for their leaving favorable product reviews on Amazon.com for the Hyperdrive model GN28B.[67]  At least 5 people were given refunds on their purchase price in return for product reviews.[68]

Kaijet also argued that "Evidence indicates that Sanho employees engaged in a system of creating unauthentic reviews. … Evidence also indicates that Popeye, as an agent of Sanho, engaged in a campaign to produce unauthentic reviews or have third parties produce favorable reviews or remove unfavorable reviews."[69]

On the Defendants' trial exhibit list, Kaijet has listed the same summary judgment evidence upon which it relied in making its summary judgment arguments, to wit, that Sanho and/or Popeye engaged in efforts to generate unauthentic reviews, including its accusations of fake review campaigns including but not limited to refunding the purchase price, a "Buy and Review Plan," having employees write fake reviews, and providing "free units of the Hyper VR Virtual

---

[67] D.E. 483, at 12, ¶16.
[68] *See id*. at 12-13, ¶17.
[69] *Id*. at 14, ¶19.

Reality Headset for Smartphones in exchange for posting a five-star review of

Hyperdrive products."[70]

This evidence is no longer relevant – and therefore inadmissible per FRE

402 – now that the Court has dismissed the false advertising issues from the case.

But apparently, Kaijet is intent on using this evidence in an effort to bias the jury

against Sanho.  The Court should therefore declare this evidence and other similar

evidence of unauthentic reviews, as well as related arguments to the jury,

inadmissible.[71]

### K. Motion in Limine #11:  The Court should admit certain Sanho trial evidence of consumer state of mind and present sense impression as exceptions to the hearsay rule, business records of Sanho or both.

Evidence of consumer confusion is treated as an exception to the hearsay

rule under both the state of mind and present sense impression exceptions.[72]

---

[70]  *Compare id.* at 28-30, ¶¶86-98 (citing evidence) with Def. Trial Exhibit Nos. 326, 333, 353, 388, 438, 445, 477 and 486.

[71]  *See* FRE 403; *Frederick*, 205 F.3d at 1285 (districts courts can exclude prejudicial evidence on a motion in limine); *United States v. Paul*, 175 F.3d at 909 (district courts can exclude evidence on a motion in limine that would confuse the jury).

[72]  *See* FRE 803(1); 803(3);*Pods Enterprises, Inc. v. U-Haul Int'l, Inc.*, No. 812CV01479T27MAP, 2014 WL 12630066, at *2 (M.D. Fla. June 18, 2014) (citing *Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1546 (11th Cir. 1985) (accepting as evidence of actual confusion an affidavit discussing confused inquiries received by the affiant without identifying the inquirers)).

The evidence in this case shows confused consumers writing misdirected product reviews and emails.  Plaintiff's Trial Exhibit 78[73] is an Amazon.com customer review on the Sanho HyperDrive page.  The posting plainly evidences the customer's present sense impression and confused state of mind, as shown by the device, (mistakenly) believed to be a HyperDrive, and "j5" (Defendants' brand) being contacted for support accordingly.[74]

Similarly, Plaintiff's Trial Exhibit 92[75] is an email sent to Sanho by a customer referring to an "Ultradrive" that was purchased at BestBuy.  The customer is under the impression that Sanho was the source of his "Ultradrive."

---

[73] Filed herewith as **Exhibit C**.

[74] *See Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1350, 1363–64 (M.D. Fla. 2012) (admitting emails to show the state of mind of potential customers as evidence of actual confusion ); *Gianni Versace, S.p.A., v. Versace 19.69 Abbigliamento Sportivo SRL*, 328 F. Supp. 3d 1007, 1019 (N.D. Cal. 2018) (admitting product reviews by purchasers as present sense impressions).

[75] Filed herewith as **Exhibit D**.



The evidence at trial will also show that this exhibit is a Sanho that was kept in the course of a regularly conducted activity of its business as a business record.[76]

Finally, Sanho Trial Exhibit 126[77] is an email from a customer to Sanho revealing the customer's state of mind – specifically, his understanding of "Ultradrive" to refer to "HyperDrive."  Instead of asking Sanho where his "HyperDrive" is, the customer advised Sanho that he has "not received this Ultradrive yet."  This email should also be admitted for the same reasons as the other, similar exhibits.[78]

---

[76] *See* FRE 803(6)(B).
[77] Filed herewith as **Exhibit E**.
[78] FRE 803(1), 803(3) and 803(6)(B).

This 18th day of June, 2024.

Respectfully submitted,

By:    **_/s/ Steven G. Hill_**
Steven G. Hill
GA Bar No. 354658
David K. Ludwig
GA Bar No. 616971
HILL, KERTSCHER & WHARTON, LLP
3625 Cumberland Blvd., SE, Suite 1050
Atlanta, Georgia 30339-6406
Tel:  (770) 953-0995
Fax:  (770) 953-1358
Email:  sgh@hkw-law.com
Email:  dludwig@hkw-law.com

**-and-**

Ali A. Aalaei *(admitted pro hac vice)*
CA Bar No. 254713
Benjamin Martin *(admitted pro hac vice)*
CA Bar No. 257452
ARI LAW, P.C.,
3130 Alpine Rd Ste 288 PMB 408
Portola Valley, CA 94028-7541
Tel:  (415) 830-9968
Fax: (415) 520-9456
Email:  ali@arilaw.com
Email:  bmartin@arilaw.com

*Attorneys for Plaintiff Sanho Corporation*

24

## **TYPE AND FONT CERTIFICATION**

The undersigned certifies that the foregoing complies with Local Rule

5.1(B) regarding typeface and font.

_**/s/Steven G. Hill**_
GA Bar No. 354658

## **CERTIFICATE OF SERVICE**

I certify that on the 18th day of June, 2024, I filed a true and correct copy of

the foregoing document with the CM/ECF filing system of this Court, which will

serve an electronic copy to all attorneys of record.


**_/s/Steven G. Hill_**
GA Bar No. 354658

*Counsel for Plaintiff Sanho Corporation*