UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>                    Plaintiff,<br><br>        v.<br><br> KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.,<br>dba "j5create;" and DOES 1-100,<br><br>                    Defendants, | Case No. 1:18-cv-05385-SDG |
| SANHO CORPORATION,<br><br>                    Plaintiff,<br><br>        v.<br><br>KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.;<br>KAIJET TECHNOLOGY<br>INTERNATIONAL CORPORATION;<br>MAGIC CONTROL TECHNOLOGY;<br>STARVIEW GLOBAL LIMITED, each<br>doing business as "J5Create;" and DOES<br>1-10,<br><br>                    Defendants. | Consolidated with<br>Case No. 1:20-cv-02150-TCB |

**DEFENDANTS KAIJET TECHNOLOGY INTERNATIONAL LIMITED,
INC. AND KAIJET TECHNOLOGY INTERNATIONAL CORPORATION'S
MOTIONS IN LIMINE**

# TABLE OF CONTENTS

I.  MIL NO. 1: Preclude Sanho from introducing evidence, argument or inferences relating to Best Buy returns .........................................................1

II.  MIL NO. 2: Preclude Sanho from introducing evidence, argument, or inferences relating to other settlement agreements. ....................................4

III.  MIL NO. 3: Preclude Sanho's expert witness Cenatempo from testifying to matters outside of the scope of his expertise............................5

IV.  MIL NO. 4: Preclude Sanho from introducing evidence, argument, or inferences relating to claims dismissed from this case.................................7

V.  MIL NO. 5: Preclude Sanho from introducing evidence, argument, or inferences relating to Kickstarter message. ...................................................7

VI.  MIL NO. 6: Preclude Sanho from introducing evidence, argument, or inferences relating to the Jamie Dillion email. .............................................9

VII.  MIL NO. 7: Preclude Sanho from introducing evidence, argument, or inferences relating to the Amazon review by "HudsAL."...........................12

VIII.  MIL NO. 8: Preclude Sanho from introducing evidence, argument, questions, or inferences relating to expert opinions on design patent invalidity prior to *LQK Corp.* ruling. ...........................................................12

IX.  MIL NO. 9: Preclude Sanho from introducing evidence or argument that KaiJet US and KaiJet Taiwan are alter egos. .......................................14

X.  MIL NO. 10: Preclude any references to "j5create group."........................14

XI.  MIL NO. 11: Preclude Sanho from introducing evidence, argument, or inferences relating to the j5create Company Profile presentation...............15

XII.  MIL NO. 12: Preclude Sanho from introducing evidence, argument, or inferences to KaiJet's use of "Ultradrive" as being "counterfeit." ............17

XIII.  MIL NO. 13: Preclude improper testimony from Daniel Chin ...................18

XIV.   MIL NO. 14: Preclude Sanho from asserting to the jury that it is
       entitled to or should be awarded treble or enhanced damages in this
       matter. ...................................................................................................22

XV.    MIL NO. 15: Preclude Sanho from asserting to the jury that it is
       entitled to or should be awarded attorneys' fees or costs in this matter......23

XVI.   MIL NO. 16: Preclude Sanho from introducing evidence, argument, or
       inferences relating to potential buy-out of HyperDrive at Best Buy...........24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Babbit Elecs., Inc. v. Dynascan Corp.*,
 38 F.3d 1161 (11th Cir. 1994) ...............................................................17

*Braun Inc. v. Dynamics Corp. of Am.*,
 975 F.2d 815 (Fed. Cir. 1992) ...............................................................23

*Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge,
 LLC*,
 605 F.3d 931 (11th Cir. 2010) .................................................................2

*Candonoza v. Royston*,
 No. 4:16-CV-0048-HLM, 2018 U.S. Dist. LEXIS 238227 (N.D.
 Ga. Mar. 5, 2018) ...................................................................................7

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
 931 F.2d 1472 (11th Cir. 1991) .............................................................17

*Chavez v. Arancedo*,
 No. 17-20003-Civ-TORRES, 2018 U.S. Dist. LEXIS 165211 (S.D.
 Fla. Sept. 26, 2018) ...............................................................................24

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,
 508 F.3d 641 (11th Cir. 2007) ...........................................................1, 2

*Davis v. Wyeth, Inc.*,
 No. 4:03-CV-128 (CDL), 2004 U.S. Dist. LEXIS 26499 (M.D. Ga.
 June 10, 2004) .......................................................................................21

*Day v. Edenfield*,
 No. 5:19cv506-MCR/MJF, 2022 U.S. Dist. LEXIS 60187 (N.D.
 Fla. Mar. 31, 2022) ...............................................................................21

*Duling v. Domino's Pizza, LLC*,
 No. 1:13-CV-01570-LMM, 2015 U.S. Dist. LEXIS 71477 (N.D.
 Ga. Jan. 14, 2015) ...................................................................................6

*Duluth News-Tribune v. Mesabi Publ'g Co.*,
    84 F.3d 1093 (8th Cir. 1996) .................................................................9, 10, 12

*Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*,
    830 F.3d 1242 (11th Cir. 2016) ........................................................................8

*FTC v. Fleetcor Techs., Inc.*,
    No. 1:19-cv-5727-AT, 2022 U.S. Dist. LEXIS 143169 (N.D. Ga.
    Aug. 9, 2022) .....................................................................................................6

*Gordils v. Ocean Drive Limousines, Inc.*,
    No. 12-24358-cv-KING, 2014 U.S. Dist. LEXIS 140310 (S.D. Fla.
    Oct. 2, 2014) ...................................................................................................24

*Hall v. United Ins. Co. of Am.*,
    367 F.3d 1255 (11th Cir. 2004) ......................................................................21

*LKQ Corp. v. GM Glob. Tech. Operations LLC*,
    No. 2021-2348, 2024 U.S. App. LEXIS 12139 (Fed. Cir. May 21,
    2024) ...............................................................................................................13

*Matal v. Tam*,
    582 U.S. 218 (2017) ..........................................................................................1

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
    40 F.4th 454 (6th Cir. 2022) ...........................................................................23

*Most Worshipful Nat'l Grand Lodge v. United Grand Lodge GA AF &*
    *AYM, Inc.*,
    813 F. App'x 455 (11th Cir. 2020) ...................................................................9

*Olay Co. v. Cococare Prods., Inc.*,
    No. 81 Civ. 4102, 1983 U.S. Dist. LEXIS 17613 (S.D.N.Y. Apr.
    19, 1983) ...........................................................................................................2

*Pledger v. Reliance Tr. Co.*,
    No. 1:15-CV-4444-MHC, 2019 U.S. Dist. LEXIS 45668 (N.D. Ga.
    Feb. 25, 2019) (Cohen, J.) ................................................................................6

*RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*,
    No. 18-CV-6449 (JS)(ARL), 2023 U.S. Dist. LEXIS 39005
    (E.D.N.Y. Mar. 7, 2023) ...................................................................................2

*Saint-Vil v. City of Miami Beach*,
  No. 19-24640-CIV-SCOLA/TORRES, 2022 U.S. Dist. LEXIS
  106221 (S.D. Fla. June 14, 2022) ........................................................21

*Sharkey v. J.P. Morgan Chase & Co.*,
  978 F. Supp. 2d 250 (S.D.N.Y. 2013) ...................................................6

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
  851 F.3d 440 (5th Cir. 2017) ...............................................................11

*Tana v. Dantanna's*,
  611 F.3d 767 (11th Cir. 2010) ........................................................2, 20

*Tarsus Connect, LLC v. Cvent, Inc.*,
  452 F. Supp. 3d 1334 (N.D. Ga. 2020)................................................11

*Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*,
  790 F.3d 1253 (11th Cir. 2015) ...........................................................20

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
  295 F.3d 623 (6th Cir. 2002) ...............................................................10

*United States v. Binzel*,
  907 F.2d 746 (7th Cir. 1990) ...............................................................21

*United States v. Torkington*,
  812 F.2d 1347 (11th Cir. 1987) .............................................................1

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,
  898 F.3d 1279 (11th Cir. 2018) ...........................................................25

**Statutes**

15 U.S.C. § 1114 ........................................................................................17

15 U.S.C. § 1117 ...................................................................17, 22, 23, 24

15 U.S.C. § 1127 ........................................................................................17

17 U.S.C. § 505 ..........................................................................................24

35 U.S.C. § 284 .............................................................................22, 23, 24

35 U.S.C. § 285 ..........................................................................................24

35 U.S.C. § 289 ......................................................................................................22, 23

**Other Authorities**

Fed. R. Civ. P. 26(a)(2) ...........................................................................................18

Fed. R. Evid. 401 ...........................................................................................*passim*

Fed. R. Evid. 402 .........................................................................................5, 14, 22

Fed. R. Evid. 403 ...........................................................................................*passim*

Fed. R. Evid. 701 ...............................................................................18, 19, 20

Fed. R. Evid. 702 ...................................................................................6, 18, 20

Fed. R. Evid. 801(d)(2) ............................................................................................16

Fed. R. Evid. 802 .....................................................................................................16

Pursuant to this Court's Standing Order, Defendants Kaijet Technology International Limited, Inc. and Kaijet Technology International Corporation (collectively, "KaiJet Defendants"), by and through its undersigned attorneys, submits this Memorandum of Law in support of its Motions *in Limine*.

## I.    MIL NO. 1: Preclude Sanho from introducing evidence, argument or inferences relating to Best Buy returns

Sanho plans to introduce pictures of around 30 items that were returned by Best Buy to Sanho at some unknown time.[1] Sanho has argued that the photos prove that there was actual confusion.[2] They do not and are not relevant to the issues at hand.

All of the Best Buy return evidence is irrelevant because it does not show actual confusion of a ***consumer***. The principle underlying trademark protection is to help "*consumers* identify goods and services that they wish to purchase, as well as those they want to avoid."[3] As such, trademark and trade dress infringement depends on whether there is a likelihood of confusion of *consumers*.[4] In determining whether *consumers* are likely to be confused, evidence of actual confusion by "*consumers* of

---

[1] ECF 527-16, PTX-83.

[2] ECF 470-1, at 37-39.

[3] *Matal v. Tam*, 582 U.S. 218, 224 (2017) (emphasis added).

[4] *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 650 (11th Cir. 2007) ("the relevant audience [for trademark infringement] is the 'purchasing public.'") (quoting *United States v. Torkington*, 812 F.2d 1347, 1352 (11th Cir. 1987)).

1

the relevant product...turn the key."[5] This is because "[a] product is viewed differently by a purchaser with money in hand than it is by a store employee."[6] As argued by Sanho, Best Buy is a customer and these pictures evidence confusion of the "Best Buy Product Return Center."[7] Even accepting that as true, the evidence is irrelevant because the Best Buy Product Return Center is not Sanho or KaiJet Defendants' *consumer*. Returns at Best Buy are handled first by the individual retail stores, and then are collected at two Reverse Logistics Centers.[8] A wholly separate group at Best Buy makes purchasing decisions from suppliers such as Sanho and KaiJet US.[9] Presenting this evidence at trial as evidence of "actual confusion of consumers" would be legal error and create a substantial risk of jury confusion regarding who the customer is.[10]

---

[5] *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 936-937 (11th Cir. 2010) (emphasis added); *see also Custom Mfg. & Eng'g*, 508 F.3d at 648 (the actual confusion factor asks "whether there is evidence that *consumers* were actually confused") (emphasis added); *Tana v. Dantanna's*, 611 F.3d 767, 779 (11th Cir. 2010) ("[t]he last factor, actual confusion in the *consuming public*, is the most persuasive evidence in assessing likelihood of confusion.") (emphasis added); 1A Gilson on Trademarks § 5.04 ("Actual confusion has occurred when one or more members of the *purchasing public* has seen or heard the defendant's mark and believed the defendant's product was made or sponsored by the plaintiff.") (emphasis added).

[6] *Olay Co. v. Cococare Prods., Inc.*, No. 81 Civ. 4102, 1983 U.S. Dist. LEXIS 17613, at *37 (S.D.N.Y. Apr. 19, 1983).

[7] ECF 470-1, at 38.

[8] Declaration of Charles Akins in support of KaiJet Defendants' Motions in Limine ("Akins Dec."), ¶ 5.

[9] Akins Dec., ¶¶ 4-6.

[10] *See RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 18-CV-

In addition, Sanho admits that at most, only four of the 30 products photographed are the relevant accused products.[11] In fact, only three of the photos show accused products – the fourth alleged photo is of non-KaiJet products, as they are missing the "j5create" stamp KaiJet Defendants have on all of their USB-C hub products.[12] The other photographed products, which include various cable adapters,[13] webcams,[14] monitor adapters,[15] and other non-accused docking stations/hubs[16] are irrelevant to the claims in this matter and would be highly prejudicial and confusing to the jury.

Lastly, photos of returns without the product packaging should be excluded. Only two of the accused products were returned in their packaging.[17] The other two returns (only one of which was KaiJet Defendants' product)[18] were without packaging – just the UCB-C hubs themselves.[19] This is important, as the USB-C hubs do not say "UltraDrive" on them, and Sanho's trade dress claim is based on the

---

6449 (JS)(ARL), 2023 U.S. Dist. LEXIS 39005, at *13 (E.D.N.Y. Mar. 7, 2023) ("the Court rules that evidence [of actual confusion] from purely non-consumers, i.e. those who were not prospective customers of Plaintiff, is irrelevant and thus excluded pursuant to Rule 401.").

[11] ECF 472-1, at ¶ 113; see also ECF 506-7, at 15 (SAN0059811).

[12] ECF 506-7, at 7; Akins Dec., ¶¶ 7-8.

[13] ECF 506-7, at 5; 9; 12; 16; 19; 24; 25; 26; 27; 28.

[14] ECF 506-7, at 18; 22.

[15] ECF 506-7, at 11; 20; 29.

[16] ECF 506-7, at 2-4; 6; 8; 10; 13; 14; 17; 21; 23.

[17] ECF 506-7, at 15; 31.

[18] Akins Dec., at ¶¶ 7-8.

[19] ECF 506-7, at 7; 30.

product packaging. Therefore, for the returns without the product packaging, Best Buy could not have been confused based on KaiJet Defendants' alleged trademark or trade dress infringement. These photos of package-less returns should also be excluded as irrelevant as a matter of law.

However, if the Court allows any portion of Plaintiff's Trial Exhibit 83 into evidence, then KaiJet Defendants request that the entirety of the exhibit be admitted. This grouping of random, non-accused products is relevant to show that Best Buy's mistaken returns were not the result of similarities in the trademarks or trade dress, but rather an inherent flaw with Best Buy's return system.

## II.    MIL NO. 2: Preclude Sanho from introducing evidence, argument, or inferences relating to other settlement agreements.

Whether settlement agreements are admissible in patent cases for purposes of determining actual damages (typically in the form of lost royalties) depends heavily on the facts of the case and the circumstances under which the agreements were reached. That is not an issue here because Sanho is seeking disgorgement of the KaiJet Defendants for all of its claims.[20] Sanho is ***not*** seeking actual damages (e.g., lost royalties).[21] Thus, whether – and for how much – Sanho has settled lawsuits regarding any of the intellectual property asserted in this case is irrelevant and

---

[20] ECF 528-1, at 16-20.
[21] *Id.*

Sanho's damages expert did not rely on them to form his damages opinions.[22] Neither do the settlements make it more or less likely that there is infringement or that Sanho's intellectual property is valid and enforceable. Therefore, exclusion is proper under Federal Rules of Evidence 401 and 402.

Further, the introduction of evidence regarding any settlements or licenses would confuse the jury and prejudice KaiJet Defendants. The jury could mistakenly interpret other settlements or licenses as proof that Sanho's intellectual property must be valid. But whether some unrelated third-party decided that settlement/license was a smarter business move than risking prolonged litigation is irrelevant to the validity of Sanho's intellectual property. As the risk of prejudice and jury confusion substantially outweighs any probative value, exclusion is also proper under Federal Rule of Evidence 403.

## III. MIL NO. 3: Preclude Sanho's expert witness Cenatempo from testifying to matters outside of the scope of his expertise.

Sanho will proffer Mr. Cenatempo as an expert witness to testify as to his opinions on the amount that the KaiJet Defendants and Starview have profited on the allegedly infringing sales of the accused products. Mr. Cenatempo's opinions solely relate to the Defendants profits.[23] Yet his expert report includes a twenty-page long narrative on the (disputed) factual background and his opinions on what

---

[22] *See generally*, Ex. 1 (Cenatempo Report).
[23] Ex. 1 (Cenatempo Report) at 12-14.

evidence supports Sanho's claims.[24] For example, Sanho has indicated that Mr. Cenatempo will testify as to the "[s]ignificant industry praise for, and copying and commercial success of, Sanho's HyperDrive."[25] Courts in this district have held that "it is inappropriate for experts to become a vehicle for factual narrative" as they "are not helpful to the trier of fact and are therefore not proper expert evidence."[26] Further, Mr. Cenatempo lacks the requisite expert qualifications to opine on whether "the Kaijet UltraDrive JCD832 is a copy of the Sanho HyperDrive 28 Series,"[27] or whether anyone else copied HyperDrive.[28] Neither is Mr. Cenatempo's testimony on "HyperDrive's commercial success"[29] proper expert testimony or relevant to the amount of damages.[30] Therefore, KaiJet Defendants request that Mr. Cenatempo's testimony be limited to his opinions on the Defendants' profits.

---

[24] *Id.* at 16-35.

[25] ECF 528-2, at 9.

[26] *FTC v. Fleetcor Techs., Inc.*, No. 1:19-cv-5727-AT, 2022 U.S. Dist. LEXIS 143169, at *42 (N.D. Ga. Aug. 9, 2022) (quoting *Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2019 U.S. Dist. LEXIS 45668, at *31 (N.D. Ga. Feb. 25, 2019) (Cohen, J.)); *see also Duling v. Domino's Pizza, LLC*, No. 1:13-CV-01570-LMM, 2015 U.S. Dist. LEXIS 71477, at *34-35 (N.D. Ga. Jan. 14, 2015); *Sharkey v. J.P. Morgan Chase & Co.*, 978 F. Supp. 2d 250, 252 (S.D.N.Y. 2013) ("Simply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702.") (citations omitted).

[27] Ex. 1 (Cenatempo Report) at 24-28.

[28] ECF 528-2, at 10.

[29] *Id*. at 10-11.

[30] This may have been relevant to a reasonable royalty analysis, but Sanho only sought a reasonable royalty for the now-dismissed utility patent claim.

IV.   **MIL NO. 4: Preclude Sanho from introducing evidence, argument, or inferences relating to claims dismissed from this case.**

Sanho's utility patent claim has been dismissed from this case.[31] Any evidence or reference to the utility patent or the dismissed claim for infringement would be irrelevant and prejudicial to KaiJet Defendants. It would only serve to insinuate that KaiJet Defendants copied the inner workings of Sanho's product, which is irrelevant to any of the remaining copyright, trademark, trade dress, or design patent claims.

Similarly, the parties false advertising and false marking claims were dismissed at summary judgment.[32] Those dismissed claims bear no relevance to the case. Any reference to the dismissed claims would only confuse the issues and prejudice KaiJet Defendants. Therefore, any evidence or references to the claims based on false advertising, false marking, or utility patent infringement should be prohibited under Federal Rules of Evidence 401 – 403.[33]

V.   **MIL NO. 5: Preclude Sanho from introducing evidence, argument, or inferences relating to Kickstarter message.**

Sanho has included as Plaintiff's Trial Exhibit 126 a message sent by one Ravi

---

[31] ECF 513, at 8 ("all claims and counterclaims concerning one of Sanho's patents— U.S. Patent No. 10,572,429—were voluntarily dismissed.").

[32] *Id*. at 1.

[33] *Candonoza v. Royston*, No. 4:16-CV-0048-HLM, 2018 U.S. Dist. LEXIS 238227, at *6 (N.D. Ga. Mar. 5, 2018) (granting motion *in limine* regarding "[e]vidence or argument relating only to previously-dismissed claims" because it "is irrelevant… Alternatively, the evidence or argument would be subject to exclusion under Rule 403 as unduly prejudicial, as substantially likely to confuse the jury, or as time-wasting.").

Budruk through the Kickstarter website regarding Sanho's HyperDrive, wherein Mr. Budruk calls it the "Ultradrive."[34] Sanho has previously argued that this is evidence of actual confusion.[35] It is not. The message is dated June 14, 2017.[36] Per Sanho's own words, KaiJet US "unveiled" its first accused "UltraDrive" product on October 19, 2017.[37] Therefore, although Mr. Budruk used the wrong name, he could not have been confused as to any affiliation between KaiJet Defendants' products – which were not available nor advertised until months later – and Sanho. Therefore, this evidence should be excluded as irrelevant.

Even if this evidence had some quantum of probative value, the substantial risk of the jury misinterpreting such evidence necessitates exclusion. Actual confusion evidence is given the most weight of all the likelihood of confusion factors,[38] and therefore the proffering of evidence that would likely be mistakenly interpreted by the jury as actual confusion evidence poses a great risk of prejudice to KaiJet Defendants. Therefore, this evidence should alternatively be excluded under Federal Rule of Evidence 403.

---

[34] *See* Ex. 2 (SAN0000158A).
[35] ECF 470-1, at 38 (citing ECF 472-1, ¶ 112).
[36] Ex. 2 (SAN0000158A).
[37] ECF 470-1, at 12 ("On October 19, 2017, Kaijet unveiled its counterfeit HyperDrive®, called the JCD382 UltraDrive").
[38] *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016).

## VI.    MIL NO. 6: Preclude Sanho from introducing evidence, argument, or inferences relating to the Jamie Dillion email.

Sanho included in its trial exhibit list an email to Sanho from Jamie Dillion.[39] Sanho has previously cited this email as evidence that "a consumer confused the HyperDrive® with the UltraDrive."[40] As explained below, Sanho should be precluded from introducing this email or making any arguments or references to it because it is hearsay, irrelevant, and highly prejudicial.

First, the email constitutes inadmissible hearsay. Sanho seeks to use the out of court statement of Jamie Dillion for the truth of the matter asserted – that she believed her Ultradrive product came from Sanho. This is classic hearsay "of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion.'"[41]

Second, the email is irrelevant because it is not evidence of confusion at the time of the purchase. Actual confusion evidence requires that the consumer was confused as to the source of the alleged infringer's product when they bought it.[42]

---

[39] ECF 527-16, PTX-92.

[40] ECF 472-1, at ¶ 117.

[41] *Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) ("vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion.'").

[42] *Most Worshipful Nat'l Grand Lodge v. United Grand Lodge GA AF & AYM, Inc.*, 813 F. App'x 455, 459 (11th Cir. 2020) ("Actual confusion requires that a deceived customer buy[] the infringer's product in the belief that it in some way is affiliated with the owner of the trademark or trade dress.") (citations omitted) (cleaned up).

The email itself is dated June 28, 2018.[43] The attached receipt shows that Ms. Dillion purchased the JCD382 product on June 6, 2018.[44] Therefore, Ms. Dillion's email is not evidence that she was confused at the time of the purchase.

Third, the email is irrelevant because it does not show confusion as to source or affiliation. In an attachment to the email, a second receipt shows that on the same day Ms. Dillion purchased the JCD382 (June 6, 2018), Best Buy created this second receipt for a Hyperdrive product (SKU: 6109303)[45] that Ms. Dillion had previously purchased on January 7, 2018.[46] Per her email, Ms. Dillion had tried to return the previously purchased HyperDrive to Best Buy, but it was "beyond their scope of return or assistance and that [Ms. Dillion] needed to contact [Sanho] directly."[47] That is exactly what Ms. Dillion did: she contacted Sanho regarding the Hyperdrive (SKU 6109303) that she had purchased on January 7, 2018. She did ***not*** contact Sanho regarding the Ultradrive she purchased to replace the broken HyperDrive. At most, Ms. Dillion's reference to UltraDrive shows inattentiveness on her part, not actual confusion.[48]

---

[43] ECF 512-22.
[44] ECF 490-20.
[45] Ex. 3 (Best Buy webpage).
[46] ECF 490-20 ("Original Tran…01/07/18…SKU: 6109303").
[47] ECF 512-22.
[48] J. Thomas McCarthy, Trademarks and Unfair Competition, § 23.2, p.52, n.1 (2d ed. 1984); *Duluth News-Tribune*, 84 F.3d at 1098 ("we find such evidence [of misdirected mail and phone calls] to be de minimis and to show inattentiveness on the part of the caller or sender rather than actual confusion."); *Therma-Scan, Inc. v.*

Fourth, for the same reasons detailed above, any probative value is substantially outweighed by the risk of prejudice. Without testimony from Ms. Dillion, the jury has no ability to determine why she wrote "UltraDrive" in her email. Maybe she mixed up her receipts. Maybe she wrote the email quickly and was not paying attention. The jury cannot determine if Ms. Dillion was confused because of any alleged similarities between "UltraDrive" and "HyperDrive" , or if she just mixed up which of her USB-C hubs she was trying to get fixed, or if she just was not paying attention and had an inadvertent slip-of-the-tongue (or in this case, fingers). Without any indication of *why*, the probative value is greatly diminished, "as courts have expressly 'rejected anecdotal evidence of actual confusion when the proponent did not show that a misleading representation by the defendant, as opposed to some other source, caused a likelihood of confusion.'"[49] The limited, if any, probative value is substantially outweighed by the risk that the jury is misled into taking the email at face value and crediting it as actual confusion evidence.

For the above reasons, KaiJet Defendants request that Sanho be precluded from offering evidence, argument, or inferences relating to Jamie Dillion's email.

---

*Thermoscan, Inc.*, 295 F.3d 623, 636 (6th Cir. 2002) (holding that misdirected emails were "weak" evidence of actual confusion because of the possibility that the "consumers…were inattentive or carless, as opposed to being actually confused.").
[49] *Tarsus Connect, LLC v. Cvent, Inc.*, 452 F. Supp. 3d 1334, 1356 (N.D. Ga. 2020) (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 457 (5th Cir. 2017)).

## VII.    MIL NO. 7: Preclude Sanho from introducing evidence, argument, or inferences relating to the Amazon review by "HudsAL."

Sanho's Trial Exhibit No. 78 is an Amazon review of the HyperDrive by an unknown person using the alias "HudsAL." Same as the Jamie Dillion email, this is inadmissible hearsay. KaiJet Defendants would have no ability to cross examine this unknown person to verify that they did in fact contact "j5" regarding the HyperDrive.[50] Cross examination is necessary here to understand the underlying facts, especially since Sanho admits that KaiJet Defendants did not sell any of the accused products on Amazon at that time.[51] Without knowing the underlying facts and circumstances of the review, the probative value is close to nothing. But there is a substantial risk of prejudice to KaiJet Defendants if Sanho is allowed to present this unsubstantiated hearsay as evidence of confusion. For these reasons, this hearsay evidence should be excluded.

## VIII.    MIL NO. 8: Preclude Sanho from introducing evidence, argument, questions, or inferences relating to expert opinions on design patent invalidity prior to *LQK Corp.* ruling.

Up until May 21, 2024, the applicable test for design patent invalidity was the *Rosen-Durling* test. The *Rosen-Durling* test was very restrictive in the scope of prior

---

[50] *See Duluth News-Tribune*, 84 F.3d at 1098 ("vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion.'").

[51] ECF 484, at 16.

art that could be considered: the primary reference had to be "basically the same" as the challenged design claim, and the secondary references had to be "so related" to the primary reference that "features in one would suggest application of those features to the other."[52] KaiJet Defendants' expert – Kevin Shankwiler – submitted his original design patent invalidity report based on the *Rosen-Durling* test. Years later, on May 21, 2024, the Federal Circuit overruled the *Rosen-Durling* test, holding that the less rigid *Graham* factors should govern the analysis.[53] As Mr. Shankwiler's original expert report was based on a now overruled test, KaiJet Defendants filed a motion for leave to submit an updated expert report, which this Court granted.[54]

Sanho should not be allowed to use Mr. Shankwiler's previous report or testimony that conflicts with his updated report and testimony. References to Mr. Shankwiler's old opinions that were made under the *Rosen-Durling* test and have since changed are irrelevant. They also present a clear and substantial risk of confusing the jury. The legal test for invalidity is complex enough – introducing old opinions based on the now overruled *Rosen-Durling* test would make the jury's task even more confusing. Sanho should be confined to questioning Mr. Shankwiler based on his updated report and testimony.

---

[52] *LKQ Corp. v. GM Glob. Tech. Operations LLC*, No. 2021-2348, 2024 U.S. App. LEXIS 12139, at *19 (Fed. Cir. May 21, 2024).
[53] *Id*. at *24-25.
[54] ECF 538.

## IX.    MIL NO. 9: Preclude Sanho from introducing evidence or argument that KaiJet US and KaiJet Taiwan are alter egos.

KaiJet Taiwan had previously raised as an extraterritoriality defense based on its lack of conduct in the United States. In response, Sanho alleged that KaiJet US and KaiJet Taiwan were alter egos and therefore the two could be treated as the same company. Whether KaiJet US and KaiJet Taiwan are alter egos are now moot, as this Court ruled that KaiJet Taiwan's activities were sufficiently "in the United States" and therefore it is "subject[]…to U.S. intellectual property law."[55] Yet Sanho includes a large number of exhibits that appear to only be relevant to Sanho's alter ego argument. For example, Plaintiff includes as PTX-130 a "Letter From Federal Agency Finding Kaijet US Same as Kaijet Taiwan."[56] The contents of this letter, along with the many other alter ego exhibits, are irrelevant to the remaining issues in this case. Introduction of these alter ego exhibits would only serve to waste time, confuse the issues, and prejudice KaiJet Defendants by maligning them as a foreign company abusing American corporate laws. Therefore, any evidence or argument relating to KaiJet US and Kaijet Taiwan being alter egos should be excluded under Federal Rules of Evidence 401-403.

## X.    MIL NO. 10: Preclude any references to "j5create group."

Sanho's counsel has referred to KaiJet Defendants as the "j5create group"

---

[55] ECF 513, at 47.
[56] ECF 527-16, PTX-130 (citing ECF 168-1).

numerous times.[57] There is no "j5create group." This is nothing more than a fictional term coined by Sanho's counsel in order to create the illusion that the KaiJet Defendants are one-in-the-same. As explained above for MIL No. 8, whether the KaiJet Defendants are alter egos or two distinct companies is no longer at issue, and therefore the only purpose of using "j5create group" is to improperly prejudice the jury against KaiJet Defendants. Sanho and its witnesses should be precluded from referring to KaiJet Defendants as "j5create group."

## XI.    MIL NO. 11: Preclude Sanho from introducing evidence, argument, or inferences relating to the j5create Company Profile presentation.

Sanho included on their trial exhibit list a document titled "j5create Company Profile."[58] While they failed to further identify the document, assumingly it is the document listed at ECF 152-4. This document should be excluded for multiple reasons. *First*, its only potential relevance is to Sanho's alter ego theory, which is now moot.[59] Therefore, for the same reasons as MIL Nos. 8 and 9, this evidence should be excluded under Federal Rule of Evidence 401.

*Second*, the presentation is hearsay. Sanho would present this out-of-court statement for the truth of the matter asserted: that the corporate structure and relationship between KaiJet US and KaiJet Taiwan shown in this document is true.

---

[57] *See, e.g.*, ECF 460-1, at 38-39 ("Ms. Liu also controls the j5create group.")
[58] ECF 527-16, PTX-129.
[59] ECF 513, at 47.

No hearsay exception applies, including the opposing party's statement exception.[60] This document was prepared by a brand new KaiJet US employee,[61] without knowledge of the actual corporate structure and relationship, merely as an example of the type of presentation that can be created using the "Prezi" platform.[62] The subject matter of the presentation was outside the scope of the employee's role and knowledge, and was never adopted or authorized by KaiJet US or ever used in any official or unofficial capacity.[63] Therefore, this evidence should be excluded as hearsay under Federal Rule of Evidence 802.

*Third*, for the same reasons explained above, this document has no probative value but presents substantial risk of prejudice to KaiJet Defendants.[64] It will also waste time, as KaiJet Defendants will be forced to rebut this evidence with testimony regarding who the author is, what her job was, why she created this, the inaccuracies, and how this was never an official presentation used internally or externally by KaiJet US. Therefore, this evidence should alternatively be excluded under Federal Rule of Evidence 403.

---

[60] Fed. R. Evid. 801(d)(2).

[61] DeAnna Harris, the author of the presentation, was only employed by KaiJet US from January 21, 2019 until March 5, 2019. ECF 160-7, at ¶ 4. The presentation was created on February 13, 2019. *Id*. at ¶ 3.

[62] ECF 160-7, at ¶¶ 3-9.

[63] *Id*.

[64] *See supra* Sections IX (MIL NO. 9) & X (MIL NO. 10).

**XII.    MIL NO. 12: Preclude Sanho from introducing evidence, argument, or inferences to KaiJet's use of "Ultradrive" as being "counterfeit."**

Sanho has raised the allegation that "Ultradrive" is a counterfeit mark under the Lanham Act for the first time as part of the proposed pretrial order. Counterfeit claims are brought under 15 U.S.C. § 1114(1)(a). [65] A counterfeiting claim requires Sanho to prove (and allege) both infringement of the registered Hyperdrive mark and that KaiJet Defendants "intentionally used" Ultradrive "knowing such mark is a counterfeit mark."[66] But "counterfeit" is noticeably absent from Count II (Sanho's only claim based on 15 U.S.C. § 1114) of Sanho's complaint, much less any allegation that KaiJet Defendants *knew* that Ultradrive was a counterfeit of HyperDrive.[67] Sanho failed to plead counterfeiting, and should not be allowed to raise the issue for the first time mere weeks before trial.

Had Sanho properly plead counterfeiting, the claim would not have survived summary judgment. A "counterfeit mark" is a "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."[68] Simply put,

---

[65] *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 (11th Cir. 1991) ("The Lanham Act prohibits, among other things, the use in commerce of a counterfeit trademark in a manner likely to cause confusion; and the Act further provides that anyone using a counterfeit trademark in such manner shall be liable in a civil action to the registrant of the trademark.) (citing 15 U.S.C. § 1114(1)(a)).

[66] *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994) (quoting 15 U.S.C. § 1117(b)).

[67] ECF 89, at ¶¶ 65-74.

[68] *Babbit Elecs., Inc.*, 38 F.3d at 1181 n.6 (quoting 15 U.S.C. § 1127).

Ultradrive is not identical or indistinguishable from HyperDrive. As held by this Court, "[t]he marks are dissimilar in appearance."[69] This alone renders any counterfeiting claim non-viable.[70] Therefore, Sanho should not be allowed to waste the time of the Court and the jury with a non-pleaded, non-viable claim.

## XIII.    MIL NO. 13: Preclude improper testimony from Daniel Chin

Sanho has stated that it will call Daniel Chin, who co-owned Sanho and is still the CEO of Sanho, as a witness. Mr. Chin has offered sworn testimony and affidavits in this case, and in each has given improper opinion testimony as to a number of topics and legal conclusions. Sanho should be precluded from eliciting any improper testimony from Mr. Chin.

Rule 26(a)(2) requires the disclosure of expert witnesses. Sanho never disclosed Mr. Chin as an expert witness, and thus he may only testify as a lay witness. Opinion testimony from a lay witness is only admissible if it is:

> (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[71]

Mr. Chin has offered a number of opinions, none of which fall within the

---

[69] ECF 513, at 31.

[70] *See* 3 McCarthy on Trademarks and Unfair Competition § 25.15.50 ("'substantially indistinguishable' connotes a degree of similarity that is close to 'identical.'").

[71] Fed. R. Evid. 701.

narrow exception of Federal Rule of Evidence 701. These improper opinions include: (1) that Sanho's "HyperDrive" mark has secondary meaning;[72] (2) that the "HyperDrive's patent-protected design" was infringed;[73] (3) that there was confusion in the marketplace between Sanho's and KaiJet Defendants' products;[74] (4) that Best Buy was also confused;[75] (5) that KaiJet Defendants copied Sanho's product;[76] and (6) that Sanho has goodwill in the HyperDrive name and product packaging.[77] As explained below, Mr. Chin should not be allowed to testify as to these improper opinions and speculations at trial.

**Secondary meaning in HyperDrive.** Secondary meaning is a conclusion for

---

[72] ECF 93-2, at ¶ 10 ("The HyperDrive developed a secondary meaning and built and amassed a loyal following of consumers.").

[73] ECF 93-2, at ¶ 15.

[74] ECF 93-2, at ¶¶ 21 & 23 ("[t]here is rampant confusion in the marketplace between the HyperDrive and the Ultradrive."); ECF 344 (Chin 30b6 7/21/22 Dep.), at 112:17-22 ("So when we switched to the new packaging and KaiJet had the look of our old packaging, it created a lot of confusion in the market. So customers probably thought that – customers who are familiar with the old packaging probably thought that the UltraDrive was HyperDrive.").

[75] ECF 344 (Chin 30b6 7/21/22 Dep.), at 84:13 – 86:16 ("I know for certain even Best Buy was confused… Best Buy was confused and thought the UltraDrive was HyperDrive because of the similarity in the product and packaging…But the fact remains each and every store, in each and every store, there are Best Buy employees who are confused by the UltraDrive, thinking that it's HyperDrive and mislabeling them.").

[76] ECF 344 (Chin 30b6 7/21/22 Dep.), at 112:10-12 ("we did not expect KaiJet to copy our packaging, our product, our brand and insert a similar looking product into Best Buy.").

[77] ECF 344 (Chin 30b6 7/21/22 Dep.), at 114:13-16 ("there's goodwill in our HyperDrive brand name; there's goodwill in how our product functions and look, and yes, there's certainly some goodwill with the packaging.").

the jury to make, not Mr. Chin; it is not the subject of lay opinion. Secondary meaning is a legal term of art that means that a mark's primary significance "in the minds of the consuming public is not the product but the producer."[78] Secondary meaning is proven through either direct evidence (consumer surveys) or circumstantial evidence (length and nature of use; nature and extent of advertising; efforts to promote a connection; and degree of actual recognition).[79] Mr. Chin's unqualified and speculative opinion is not evidence of secondary meaning, and should not be allowed to confuse or mislead the jury.

**Patent infringement.** A lay witness is precluded from providing opinions that are based on "scientific, technical, or other specialized knowledge within the scope of Federal Rule of Evidence 702."[80] Whether the accused products infringe Sanho's design patents requires technical or other specialized knowledge – hence why Sanho and KaiJet Defendants both retained expert witnesses to testify regarding infringement. Mr. Chin's lay opinion is improper and should be excluded.

**Confusion.** Whether there was confusion in the marketplace or by Best Buy is a question the jury must answer, not Mr. Chin. He lacks any foundational knowledge to form opinions on whether there is confusion in the marketplace or

---

[78] *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015), quoting *Tana*, 611 F.3d at 774.
[79] *Tartell*, 790 F.3d at 1257.
[80] Fed. R. Evid. 701(c).

whether Best Buy employees in "each and every store" are confused.[81] Further, his opinions are conclusory and would not be helpful to the jury.[82]

**Copying.** Mr. Chin's opinion that KaiJet Defendants copied Sanho's HyperDrive product is "nothing more than conclusory, self-serving allegations" that fail to help the jury determine any relevant questions of fact.[83] Mr. Chin lacks the requisite foundational knowledge to opine as to whether "HyperDrive" or the product packaging (which has changed multiple times) symbolize Sanho's goodwill (if it has any). Further, as a legal term of art, Mr. Chin's incorrect lay usage will confuse the jury. Therefore, Mr. Chin should be precluded from testifying regarding goodwill as it relates to the HyperDrive mark or any of Sanho's product packaging.

**Goodwill.** Goodwill is a legal term of art, meaning "consumer willingness to purchase and repurchase trademarked products and services."[84] It is property of the

---

[81] *Davis v. Wyeth, Inc.*, No. 4:03-CV-128 (CDL), 2004 U.S. Dist. LEXIS 26499, at *16 (M.D. Ga. June 10, 2004) ("an opinion of a lay witness may be considered only if a sufficient and admissible factual foundation for the opinion is given.") (citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255 (11th Cir. 2004)).

[82] *See Saint-Vil v. City of Miami Beach*, No. 19-24640-CIV-SCOLA/TORRES, 2022 U.S. Dist. LEXIS 106221, at *16 (S.D. Fla. June 14, 2022) ("[A] sweeping conclusory opinion from Mr. Masten that has no tangible evidentiary support does not satisfy that [helpful to the trier of fact] standard."); *Day v. Edenfield*, No. 5:19cv506-MCR/MJF, 2022 U.S. Dist. LEXIS 60187, at *27 (N.D. Fla. Mar. 31, 2022) ("Bedard's opinions are conclusory and unreliable, based on mere conjecture, assumption, credibility calls, and amounting to no more than *ipse dixit*, which is neither reliable nor helpful.").

[83] *Hall*, 367 F.3d at 1260 (quoting *United States v. Binzel*, 907 F.2d 746, 749 (7th Cir. 1990)).

[84] 1 Gilson on Trademarks § 1.03.

business, and the trademark or trade dress functions as a symbol of said goodwill.[85]

## XIV.    MIL NO. 14: Preclude Sanho from asserting to the jury that it is entitled to or should be awarded treble or enhanced damages in this matter.

Sanho has asserted that one of the issues to be tried is whether "Plaintiff is entitled to a trebling or other enhance of its damages by the Court at the conclusion of the action" in relation to its design patent and Lanham Act claims. Sanho is correct that whether to award enhanced damages under the Patent Act or the Lanham Act is an issue for the Court, not the jury.[86] For that reason, Sanho should be precluded from arguing or referencing enhanced damages to the jury. It is irrelevant to any question the jury must answer and would serve only to confuse or mislead the jury, prejudicing KaiJet Defendants. Thus exclusion under Federal Rules of Evidence 401-403 is appropriate.

Further, Sanho is wrong that it is entitled to enhanced damages under either Patent Act or Lanham Act. With regards to its design patent claims, Sanho is seeking disgorgement of KaiJet Defendants' profits under 35 U.S.C. § 289.[87] But that statutory section does not allow for enhanced damages, in fact it explicitly precludes

---

[85] *Id.*

[86] 15 U.S.C. § 1117(a) ("In assessing damages **the court** may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.") (emphasis added); 35 U.S.C. § 284 ("**the court** may increase the damages up to three times the amount found or assessed") (emphasis added).

[87] *See* ECF 528-1, at 16-17.

it.[88] Similarly, Sanho's Lanham Act claims seek disgorgement of profits, not actual damages. But 15 U.S.C. § 1117(a) only allows for trebling of "actual damages."[89] For disgorged profits, the Court can only adjust the amount recovered if it is "either inadequate or excessive."[90] Importantly, the amount awarded must be "compensation and not a penalty."[91] Therefore, there are no "enhanced" or "trebled" awards of disgorged profits.[92] To the extent that Sanho relies on 15 U.S.C. § 1117(b) for treble damages, such reliance is misplaced as there is no claim for use of a counterfeit mark.[93]

## XV.  MIL NO. 15: Preclude Sanho from asserting to the jury that it is entitled to or should be awarded attorneys' fees or costs in this matter.

Sanho claims that it is entitled to attorneys' fees and costs based on its patent,

---

[88] *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 (Fed. Cir. 1992) (holding that the district court erred in awarding three times the profits, because Section 289 is distinct from Section 284, and "[n]othing in 35 U.S.C. § 289 authorizes an increase in a patentee's total profit.").

[89] 15 U.S.C. § 1117(a) ("In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as **actual damages**, not exceeding three times such amount.") (emphasis added).

[90] *Id.* ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.").

[91] 15 U.S.C. § 1117(a).

[92] *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 473 (6th Cir. 2022) ("On the one hand, the court may increase a profits award for a compensatory reason, such as a concern that the award does not encompass the defendant's full profits… On the other hand, the court may not increase a jury's profits award for a punitive reason. The record might show such an improper purpose, for example, if the court highlighted the defendant's bad faith as the basis for the increase.").

[93] *See supra* Section XII, MIL NO. 12.

copyright, and Lanham Act claims.[94] KaiJet Defendants ask the Court to preclude Sanho from asserting to the jury that it is entitled to attorneys' fees or costs in this case. Entitlement to an award of attorneys' fees or costs is an issue for the Court to resolve post-trial.[95] Accordingly, assertions of attorneys' fees are not relevant to any issue that will be decided by the jury, and courts routinely exclude this kind of evidence and argument.[96] Sanho, its counsel, and its witnesses should be precluded from referring to any asserted entitlement to an award of attorneys' fees.

**XVI.  MIL NO. 16: Preclude Sanho from introducing evidence, argument, or inferences relating to potential buy-out of HyperDrive at Best Buy.**

Sanho has included in its trial exhibit list an email conversation that includes

---

[94] ECF 528-1, at 16-19.

[95] 15 U.S.C. § 1117 ("**The court** in exceptional cases may award reasonable attorney fees to the prevailing party.") (emphasis added); 35 U.S.C. § 285 ("**The court** in exceptional cases may award reasonable attorney fees to the prevailing party.") (emphasis added); 35 U.S.C. § 284 ("the court shall award … costs as fixed by **the court**.") (emphasis added); 17 U.S.C. § 505 ("**the court** in its discretion may allow the recovery of full costs … **the court** may also award a reasonable attorney's fee to the prevailing party as part of the costs.") (emphasis added).

[96] *See Gordils v. Ocean Drive Limousines, Inc.*, No. 12-24358-cv-KING, 2014 U.S. Dist. LEXIS 140310, at *2 (S.D. Fla. Oct. 2, 2014) (granting motion in limine to preclude references to attorneys' fees because "there is no legal basis for referring to attorneys' fees and costs at trial. Attorneys' fees and costs are post-trial issues for the Court that do not relate to any question of fact for the jury to answer."); *see also Chavez v. Arancedo*, No. 17-20003-Civ-TORRES, 2018 U.S. Dist. LEXIS 165211, at *6 (S.D. Fla. Sept. 26, 2018) (holding that there is no basis for referring to attorneys' fees and costs to the jury, as "[t]he Eleventh Circuit's current pattern jury instructions also removed instructions on attorneys' fees and costs which had previously been included.").

the phrase "Hyperdrive buyout."[97] As explained by Chuck Akins, Best Buy will occasionally offer to allow KaiJet US to "buy out the business of a smaller brand."[98] Whether KaiJet US ever considered buying out Sanho's HyperDrive is irrelevant to any of the issues in this case.

While Sanho may argue that it is relevant to KaiJet US's intent, it is not. First, as evidenced by the email itself, any discussions of buying the HyperDrive out of Best Buy happened in December of 2018. KaiJet had introduced the Ultradrive more than a year earlier. [99] Therefore the buyout discussions are not indicative of what KaiJet US's intent was when it adopted the name "UltraDrive" or designed the product packaging. Second, this at most shows that KaiJet US had an intent to *compete*, **not confuse**. An intent to compete – which is undisputed – is not relevant, "the only kind of intent that is relevant to the issue of likelihood of confusion is the intent to confuse."[100]

Respectfully submitted, this 18th day of June, 2024.

/s/ *Ryan P. Gentes*
Ryan P. Gentes
GA Bar No. 421695

---

[97] ECF 527-16, PTX-116; *see* Ex. 4.
[98] ECF 346 (Akins 30b1 Dep.), at 50:6-15.
[99] ECF 470-1, at 12 ("On October 19, 2017, Kaijet unveiled its counterfeit HyperDrive®, called the JCD382 UltraDrive").
[100] *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1293 (11th Cir. 2018) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:110 (5th ed. 2017)).

Robert A. Madayag, III
GA Bar No. 123699
William B. Dyer III
GA Bar No. 236915
Steven Philbin
GA Bar No. 516724
James Avery Rollins
GA Bar No. 776439
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com
Email: robm@leehayes.com
Email: bill.dyer@leehayes.com
Email: steven.philbin@leehayes.com
Email: james.rollins@leehayes.com

Robert J. Carlson
WSBA Number 18455
*Admitted Pro Hac Vice*
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: carlson@leehayes.com

Rhett V. Barney
WSBA Number 44764
*Admitted Pro Hac Vice*
Johanna Tomlinson
WSBA Number 57582
*Admitted Pro Hac Vice*
LEE & HAYES, P.C.
601 W. Riverside Ave., Ste. 1400
Spokane, WA 99201
Telephone: (509) 324-9256
Email: rhettb@leehayes.com
Email:
johanna.tomlinson@leehayes.com

26

*Attorney for Defendants*
*KaiJet Technology International*
*Limited, Inc. and KaiJet Technology*
*International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2024, I filed a true and correct copy of the foregoing document with the CM/ECF filing system of this Court, which will serve an electronic copy to all attorneys of record.

/s/ *Ryan P. Gentes*
Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com

*Attorney for Defendants*
*KaiJet Technology International Limited, Inc.*
*and KaiJet Technology International*
*Corporation*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

/s/ *Ryan Gentes*
Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.

*Attorney for Defendants*
*KaiJet Technology International*
*Limited, Inc. and KaiJet Technology*
*International Corporation*