# EXHIBIT 1



FairValue Advisors, LLC
3455 Peachtree Road NE, Ste. 500
Atlanta, Georgia 30326
Phone: 888.212.0495
www.fairvalueadvisors.com

**Expert Report of Daniel J. Cenatempo in**
***Sanho Corporation v. Kaijet Technology International Limited, Inc. et al.***

<span style="color:red">**RESTRICTED – ATTORNEYS' EYES ONLY
SUBJECT COURT'S STIPULATED PROTECTIVE ORDER**</span>

Prepared On:        August 29, 2022

Prepared By:        Daniel Cenatempo CVA, MAFF
                    Executive Director
                    FairValue Advisors, LLC

Submitted To:       Ari Law, P.C.
                    317 University Ave., Suite 100
                    Palo Alto, CA 94301

RESTRICTED – ATTORNEYS' EYES ONLY

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 5

   1.1.    Assignment ................................................................................................. 5

   1.2.    Qualifications and Testimony ..................................................................... 6

   1.3.    Compensation ............................................................................................. 7

   1.4    Scope of Work ............................................................................................ 7

   1.5    Abbreviations ............................................................................................. 8

II.    SUMMARY OF OPINIONS ............................................................................... 9

   2.1    Assumptions ............................................................................................... 9

   2.2    The Counts, Asserted IP, and Accused Products ....................................... 9

   2.3    Summary of Findings and Opinions ......................................................... 12

III.    BACKGROUND ON THE SUBJECT PRODUCTS AND ALLEGED WRONGFUL ACTS 16

   3.1    Sanho and the HyperDrive 28 Series ....................................................... 16

   3.2    Second Generation HyperDrive Mini Docks ........................................... 22

   3.3    Kaijet's  Alleged Copying of Sanho's HyperDrive GN28 For Best Buy ...................... 24

   3.4    Kaijet's  Subsequent UltraDrive Mini Docks .......................................... 28

IV.    The DEFENDANTs' SALES AND PROFITS ..................................................... 36

   4.1    The Defendants' Summary Financial Information ................................... 36

RESTRICTED – ATTORNEYS' EYES ONLY

4.2    Kaijet US's Expense Deductions ................................................................. 37

4.3    Incremental Versus Fully Allocated Expenses ............................................. 40

4.4    Changes In Kaijet U.S.'s Allocated Expenses Relative To Sales ................... 43

4.5    Kaijet Taiwan's Expenses ........................................................................... 51

4.6    Star View's Expenses ................................................................................. 52

4.7    Defendants' Profit Implications .................................................................. 52

V.    THE DEFENDANTS' PROFITS SUBJECT TO DISGOREMENT ................................... 57

5.1    Trademark Infringement, Unfair Competition, and Copyright Infringement Counts.... 57

5.2    Kaijet's Sales and Profits Subject to Disgorgement for Trademark Infringement and Unfair Competition ................................................................................................ 58

5.3    Kaijet's Sales and Profits Subject to Copyright Infringement ....................... 65

VI.   DESIGN PATENT INFRINGEMENT DAMAGES ............................................... 66

6.1    Design Patents: The Infringer's Profits and The Article of Manufacture .................... 66

6.2    Peter Bressler's Findings Regarding the SG's Test and Damages Implications .......... 67

6.3    The '290 Patent – Design Patent Damages .................................................. 67

XII.  THE '429 PATENT - UTILITY PATENT DAMAGES ....................................... 72

7.1    The Hypothetical Negotiation for A Reasonable Royalty ............................. 72

7.2    The GP Factors ......................................................................................... 76

7.3    Sanho's Reasonable Royalty Damages ....................................................... 114

RESTRICTED – ATTORNEYS' EYES ONLY

<u>Appendices</u>

A – Certification…………………………………………………………………………...117

B – Qualifications…………………………………………………………………………....118

C – Documents Considered……...…………………………………………………………...129

D – Kaijet Tawain's Financials……………………………………………………………134

E – Kaijet U.S.'s Financials……………………………………………………………141

F – Star View's Financials……………………………………………………………...151

G – The Defendants' Financials……………………………………………………......155

H – Sanho's Financials…………………………………………………………163

RESTRICTED – ATTORNEYS' EYES ONLY

# I.    INTRODUCTION

## 1.1.    ASSIGNMENT

I, Daniel Cenatempo of FairValue Advisors, LLC, was retained by Sanho Corporation ("Sanho") to determine damages int the following two cases (collectively hereinafter the "Case"):

1. *Sanho Corporation v. Kaijet Technology International Limited, Inc. and Kaijet Technology International Corporation, Inc. doing business as "J5Create"; and Does 1-10*.  This is C.A. NO. 1:18-cv-05385-SDG in the United States District Court for the Northern District of Georgia, Atlanta Division; and

2. *Sanho Corporation v. Kaijet Technology International Limited, Inc.; Kaijet Technology International Corporation; Magic Control Technology; Starview Global Limited, each doing business as "J5Create"; and Does 1-10*.  This is C.A. No. 1:20-cv-02150-TCB, again in United States District Court for the Northern District of Georgia, Atlanta Division (hereinafter the "Court").

This report was prepared in accordance with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. It describes my work to date and summarizes my opinions and the basis for those opinions. My opinions and findings expressed in this report are based upon information obtained during my investigation. Unless otherwise stated, I assumed the information obtained through my investigation from both public sources and the discovery process was accurate. I reserve the right to issue a supplemented or amended report responding to new information and new opinions that become available between the date of this report and the date that I may testify.

This report has been prepared solely to assist the Court, the jury and the parties involved in the Case to determine the amount of compensatory damages. This Report is not intended for any other use. Further, this report is subject to the Certification in Appendix A. The distribution of this report is limited by the Court's Stipulated Protective Order dated March 15, 2019.

I anticipate preparing various demonstrative exhibits for use at trial as an aid to the Court and jury to present my analysis and opinions. The specific exhibits to be used have not been prepared or determined as of the date of this report. At this time, I expect that any trial exhibits prepared will be supported by the information contained in this report and /or future amended and supplemental

versions of this report, the reports of other experts, the documents produced to date, and/or documents yet to be produced.

## 1.2.   QUALIFICATIONS AND TESTIMONY

My curriculum vitae ("CV") is provided in Appendix B - Qualifications. I have experience in, and specialized training and education for, determining damages in both business and intellectual property matters including:

- Receiving and maintaining the Master Analyst in Financial Forensics ("MAFF") designation from the National Association of Valuators and Analysts ("NACVA") since 2007 and with a triple concentration in a) Commercial Damages and Lost Profits; b) Business and Intellectual Property Damages; and c) Forensic Accounting;

- Receiving and maintaining the Certified Valuation Analyst ("CVA") designation from NACVA since 2002;

- Serving as an expert on damages in over 110 matters;

- Having been previously qualified as a damages expert by, and testifying in, court in 35 previous matters including patent infringement, copyright infringement, trademark infringement, and Lanham Act cases; [1] and

- Over 28 years of combined valuation and consulting experience at Deloitte & Touche, Jacobs Engineering Group, Inc., and FairValue Advisors, LLC and its predecessors.

The majority of my litigation experience has been in intellectual property matters and I have been previously qualified and testified on lost profits, profit disgorgement, and reasonable royalties.

My work outside of litigation focuses on the valuation of businesses, intangible assets, and intellectual property and providing financial and economic analyses in support of transactions such as patent and trademark licensing, strategic investment analyses, and mergers and acquisitions.

---

[1] This includes cases where my testimony was offered in the form of an affidavit / declaration instead of live testimony and accepted and relied upon by the court. It also includes cases before the Court.

RESTRICTED – ATTORNEYS' EYES ONLY

Note that I previously submitted a declaration on commercial considerations relating to Sanho's HyperDrive on January 18, 2022 in Case IPR2021-00886 for U.S. Patent No. 10,572,429 before the USPTO Patent Trial and Appeal Board ("Cenatempo Declaration").

## 1.3.    COMPENSATION

FairValue Advisors, LLC is compensated on an hourly basis for the preparation of this Report, and associated depositions and testimony, at the standard rates charged for all of its consulting, litigation, and valuation assignments. The specific schedule of tasks and associated hourly rates are provided in TABLE-1 below.

**TABLE-1**
**FairValue Advisors' Compensation Schedule**

| Activity | Hourly Rate |
|---|:---:|
| Research and data management activities | $210 |
| Document review, analyses, report writing and discovery assistance | $400 |
| Deposition and testimony related activities | $450 |

## 1.4    SCOPE OF WORK

I was asked to determine Sanho's compensatory damages that resulted from the defendants alleged wrongful acts. The following summarizes the scope of work I performed:

- Requested and reviewed information from Sanho, Kaijet Technology International Limited, Inc., Kaijet Technology International Corporation, Inc., Magic Control Technology; and Star View Global Limited through Sanho's counsel;

- Had discussions with Daniel Chin, Founder and President, of Sanho;

- Performed independent research related to the economic, industry, product, company, technology, patent, and royalty factors that are relevant to the Case;

- Re-reviewed the literature on the subject of damages and remedies for the alleged wrongful acts in the Case; and

- Analyzed this information, developed my opinions, and wrote this report.

7

RESTRICTED – ATTORNEYS' EYES ONLY

The documents that I considered are listed in Appendix C to this report – Documents Considered.

## 1.5 ABBREVIATIONS

I will use the following abbreviations throughout this report and the Appendices:

These abbreviations may be further defined and repeated in the report to assist the reader.

- "'290 Patent" for U.S. Design Patent No. D80,290;
- "'429 Patent" for U.S. Utility Patent No. 10,572,429;
- "Accused Products" for the Kaijet / j5Create UltraDrive JCD324, JCD348, JCD382, JCD386, JCD387, JCD388, and JCD389;
- "Asserted Clams" for claim 1 of the '429 Patent and the single-design claim of the '290 Patent;
- "Asserted IP" for the '290 Patent, '429 Patent, HyperDrive Mark, and Sanho Copyright;
- "Defendants" for Kaijet U.S., Kaijet Taiwan, and Star View collectively;
- "Dr. Baker" for Jacob Baker, Ph.D. P.E.;
- "Guan Hong" for Guan Hong International Enterprises LTD;
- "HyperDrive Mark" for U.S. Trademark Registration No. 5,442,707;
- "Kaijet" for Kaijet U.S. and / or Kaijet Taiwan unless they need to be individually identified;
- "Kaijet Taiwan" for Kaijet Technology International Corporation;
- "Kaijet U.S." for Kaijet Technology Company, Limited, Inc.;
- "Sanho" for Sanho Corporation;
- "Sanho Copyright" for U.S. copyright VA 2-103-336;
- "Sanho Patents" refers to the '290 Patent and the '429 Patent; and
- "Star View" for Star View Global Limited.

RESTRICTED – ATTORNEYS' EYES ONLY

## II.    SUMMARY OF OPINIONS

### 2.1    ASSUMPTIONS

In order to determine Sanho's compensatory damages, I assumed:

- The Asserted intellectual property is valid and enforceable by Sanho;

- The Asserted Claims (of the '429 Patent and the '290 Patent) are valid;

- Kaijet will be found liable for its alleged wrongful acts;

- Profit disgorgement is an available legal remedy for design patent infringement, trademark infringement, unfair competition, and copyright infringement; and

- Unless otherwise stated, the information I obtained from Sanho and Kaijet through their respective counsel, the discovery process, and publicly available sources is accurate.

Note that I am not offering any opinions about these assumptions. I made these assumptions in odder to analyze alleged damages for the causes of action described in the report and to assist the factfinder. Further, I am not offering any legal or technical expert opinions or conclusions as to these assumptions.

The analyses that I provide in this report are the same type that I normally perform when performing damages analysis, valuations, and when providing economic consulting services. All of my opinions are based on my investigation and were developed from a financial, economic, and damages perspective. All my opinions are based on my investigation and were developed from an economic and damages perspective.

### 2.2    THE COUNTS, ASSERTED IP, AND ACCUSED PRODUCTS

Sanho alleges that Kaijet engaged in the following wrongful acts related to the making, using, importing, offering to sell, and selling of the Accused Products in the United States:

- Patent infringement under 35 U.S.C. § 271, *et seq;*

- Trademark infringement under Lanham Act §32, 15 U.S.C. 1114;

- Lanham Act False Advertising under 15 U.S.C. § 1125, et seq;

- Unfair Competition under the Lanham Act §43(a), 15 U.S.C.  1125(a);

RESTRICTED – ATTORNEYS' EYES ONLY

- Copyright Infringement in violation of Act, 17 U.S.C. §§ 106 and 501;

- Violation of Georgia's Uniform Deceptive Trade Practices Act (O.C.G.A. § 10-1-370, et. seq.);

- Unfair Competition in violation of O.C.G.A. § 23-2-55; and

- Common law misappropriation and unfair competition.[2]

The specific Sanho intellectual property that is being asserted and Kaijet products that are being accused per my understanding of the case is summarized in TABLE-2.

---

[2] Third Amended Complaint in Case 1:18-cv-05385-SDG in the USDC for the Norther District of Georgia, Atlanta Division, 11/14/2019; Complaint in Case 1:20-cv-02150-TCB, in the USDC for the Norther District of Georgia, Atlanta Division, 5/19/2020; and Sanho's counsel.

RESTRICTED – ATTORNEYS' EYES ONLY

**TABLE-2**
**Summary of the Asserted Intellectual Property and Accused Products[3]**

| Line Item | '290 Patent | '429 Patent | HyperDrive Mark | Sanho Copyright |
|---|---|---|---|---|
| Type | design patent | utility patent | trademark | U.S. copyright |
| Number | U.S. D807,290 | U.S. 10,572,429 | U.S. 5,442,707 | VA 2-103-336 |
| Title | Multi-Function Connector | Port Extension Apparatus | NA | Retail packaging of HyperDrive TB3 USB-C Hub for MacBook Pro (Model: GN28B) |
| Filing date | April 14, 2015 | March 28, 2018 | August 15, 2017[4] | May 4, 2018 |
| Issue or registration date | January 9, 2018 | February 25, 2020 | April 10, 2018 | May 4, 2018 |
| Expiration date | January 9, 2032 | April 21, 2038 | NA | NA |
| Asserted Claims | NA - single claim | 1-4, 13-15, and 17 | NA | NA |
| Accused Products | JCD348, JCD382, JCD386, and JCD388 | JCD 382 | "UltraDrive" on the JCD324, JCD348, JCD382, 386, JCD387, JCD388, and JCD389 | Packaging of the JCD382 |

---

[3] The Case complaints; USPTO.gov.; the face of the patents; patents.google.com;  at Expert Report of R. Jacob Barke, Ph.D. , P.E., 8/29/2022. pp. 47-72 at nos. 92-138.; and Sanho's counsel.

[4] I am advised that before applying for registration of trademark, Sanho used "HyperDrive" in commerce in Best Buy and other stores and web sites throughout the United States, and accordingly, has also acquired common law trademark rights in "HyperDrive."

RESTRICTED – ATTORNEYS' EYES ONLY

**2.3    SUMMARY OF FINDINGS AND OPINIONS**

Given the preceding, the following is a summary of my overall findings and opinions based on the preceding assumptions. My more detailed analysis and the bases for these opinions and findings are provided in Sections III. through VII. and the Appendices.

**The Defendants and Accused Product Sales**

1. Sanho is seeking to disgorge the Defendant's profits as a measure of damages for some of the counts in the complaint. The Defendants' financial performance also inform Sanho's damages.  Therefore I reviewed the Defendants' financial information.

2. I understand that the Accused Products are:
   a. Supplied to Kaijet Taiwan and Star View by MCT  / Guan Hong;
   b. Sold by Kaijet Taiwan and Star View to Kaijet U.S.; and
   c. Sold by Kaijet U.S. to customers - primarily to the retailer Best Buy.

3. In the period from 2017 through partial 2022, the Defendants' financial information and testimony indicates:
   a. Kaijet U.S sold ███████ of Accused Products and generated ██████████ in gross profits and ████████ in net income on these sales;
   b. Kaijet Taiwan sold ████████ of the Accused Products to Kaijet U.S. and generated ██████████ in gross profits and ████████ in net income on these sales;
   c. Star View sold ████████ of the Accused Products to Kaijet U.S. and generated ████████ in gross profits and ████████ in net income on these sales;
   d. The Defendants' combined gross profits and net income from the sale of the Accused Products totaled ████████ and ████████, respectively.

4. The preceding sales and profits appear to be understated for Kaijet Taiwan and Star View because:
   a. Kaijet U.S. Reported ████████ in UltraDrive JCD387 mini dock sales during the preceding period;
   b. The information that I reviewed indicated that Kaijet Taiwan and Star View supplied all of the subject products to Kaijet U.S;
   c. ███████████████████████████████████████████████ ██████████████████

RESTRICTED – ATTORNEYS' EYES ONLY

5. The Defendants' did not provide any documentation or details of the expenses they deducted, or indicated should be deducted, from gross profits to arrive at the preceding net income figures. I understand that these deductions of total company operating expenses were allocated as a percentage of sales to the Accused Products. However, the Defendants have not shown:

   a. What the actual level of the allocated expenses were by type by year;

   b. That each of these categories or individual types of expenses were incurred either directly or indirectly for the Accused Products;

   c. If these expenses were incurred for the Accused products, they were incurred at the same level relative to sales for the Accused Product as their other products; or

   d. That these allocated expenses were incremental to the Accused Product sales.

6. Further, my review indicates that the expenses Kaijet U.S. allocated to its Accused Products did not, as Kaijet U.S. assumed, behave like purely variable / incremental expenses.

**The Defendants' Profits Subject To Disgorgement for Trademark Infringement, Unfair Competition and Copyright Infringement**

7. I calculated the Defendants' profits subject to disgorgement for trademark infringement, unfair competition and copyright infringement. Given the unsupported nature of the Defendants' operating expenses, I calculated profits subject to disgorgement as follows

   a. Gross profits less commissions for Kaijet U.S.;

   b. Gross profit Kaijet Taiwan; and

   c. Gross profit for Star View.

8. If the fact finder determined that all of the Accused Products fall under the trademark and unfair competition claims and these damages begin with the first sale of the UltraDrive JCD382 in 2017, then, the sales and profits for all of the Accused Products starting in 2017 would be subject to disgorgement. This is

   a. ███████ in sales and ███████ in profits for Kaijet U.S. through partial 2022;

   b. ███████ in sales and ███████ in profits for Kaijet Taiwan through 2021;

   c. ███████ in sales and ███████ in profits for Star View through 2020;

   d. A total of ███████ in profits for all of the Defendants;

13

RESTRICTED – ATTORNEYS' EYES ONLY

    e.   The preceding again appears to be understated because █████████████ ███████████████████████████████████████████ and

    f.   The preceding are also before any alleged apportionment or further deductions, if any, by Kaijet.

9.  If, in the alternative to the preceding, the fact finder did not begin the damages period for trademark infringement and/or unfair competition until the HyperDrive Mark registration on April 10, 2018, then the profits for all of the Accused Products subject to disgorgement would fall to ████████ This value would again be understated by the Kaijet Tawain and Star View profits from the UltraDrive JCD387, if any.

10. If, in the alternative to the preceding, the fact finder found that the UltraDrive JCD382 product packaging was the sole basis for the claim of trademark infringement/unfair competition, the damages would be further reduced to ████████ in profits.

11. Sanho's copyright infringement claim against Kaijet relates to the same Accused Packaging discussed above. As such, the Defendants' profits subject to disgorgement for copyright infringement would again be ████████

## Design Patent Infringement Damages for Infringement of the '290 Patent

12.  Sanho is seeking to disgorge the Defendants' profits for design patent infringement under 35 U.S.C. §289.

13. Based on the expert opinions of Peter Bressler, an experienced industry designer and Sanho's design patent infringement expert, I have assumed that the '290 Patent is addressed to an entire connector as the article of manufacture, and that the relevant articles of manufacture are the accused Kaijet JCD348, JCD382, JCD386 and JCD388 in their entirety.

14. As a result, Sanho's damages for the alleged infringement of the '290 Patent total ████████ These damages are as follows by defendant:

    a.   ████████ in profits from Kaijet U.S.;

    b.   ████████ in profits from Kaijet Taiwan; and

    c.   ████████ in profits from Star View.

RESTRICTED – ATTORNEYS' EYES ONLY

**Utility Patent Infringement Damages for the '429 Patent**

15. I determined Sanho's damages for the Defendants' alleged infringement of the '429 Patent in the form of a reasonable royalty.

16. I used the multi-factor framework from *Georgia-Pacific v. U.S. Plywood Corp.*, as well as other subsequent cases ("GP Factors").

17. The fifteenth GP Factor sets the stage for conducting a hypothetical negotiation between Sanho, on the one hand, and the Defendants on the other hand, at the start of the infringement. The '429 Patent issued on February 25, 2020. Kaijet began selling the accused UltraDrive JCD382 in 2017. Therefore, the Negotiation would have taken place on or about February 24-25, 2020 ("Negotiation Date").

18. My review indicates that the smallest salable patent practicing unit in this case is the entire UltraDrive JCD382 product. However, using information that was known on the Negotiation Date, I further apportioned the selling price of the UltraDrive JCD382 to reflect the sales value attributable to the '429 Patent. This resulted in a reduction from the total selling price of ▮▮▮▮▮ per unit to an apportioned price of ▮▮▮▮▮

19. I determined that in the Negotiation, the parties would have agreed to:

    a. A running rather than lump-sum royalty;

    b. A reasonable running royalty of:

        i. 40% of the apportioned ▮▮▮▮ sales price of the UltraDrive JCD382; or

        ii. The mathematically equivalent ▮▮▮ per unit.

20. I applied my preceding reasonable royalty finding to Sanho's UltraDrive JCD sales starting February 25, 2020. As a result, Sanho's reasonable royalty damages for the alleged infringement total ▮▮▮▮▮ through partial 2022.

RESTRICTED – ATTORNEYS' EYES ONLY

## III.    BACKGROUND ON THE SUBJECT PRODUCTS AND ALLEGED WRONGFUL ACTS

### 3.1    SANHO AND THE HYPERDRIVE 28 SERIES

Sanho is a business that designs, develops and sells consumer electronics products and is headquartered in Fremont, California.[5] In concert with its Chinese manufacturer █████, Sanho developed a multi-functioning docking station for the new port configuration on the 2016 Gen MacBook Pro.[6] The original version of this docking station was a 7-in-2 HyperDrive model GN28A, which Sanho began selling on December 5, 2016.[7] The original Sanho 28 series product is pictured in FIGURES 1 to 3.

---

[5] Sanho Corporation's Brief in Support of Motion for Preliminary Injunction, *Sanho Corporation vs. Kaijet Technology International Limited, Inc. et al.*, C.A. No. 1:118-cv-05385-SDG in the USDC for the Northern District of Georgia, Atlanta Division, 11/15/2019, p. 4 at I. S&P CapitalIQ.
[6] Deposition of Kien Hoe Daniel Chin, 4/1/2022, pp. 47:13-14:14, 53:19-61:13.
[7] . Deposition of Kien Hoe Daniel Chin, 4/1/2022, pp. 60:8-62:10 and "Hyper 28 Series Hub Sales.xlsx."

RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE 1**
**The Original 7-In-2 HyperDrive Packaging - Front[8]**



---

[8] Ex. 2032: Declaration of Yuwen Chen, USPTO Patent Trial and Appeal Board, Case IPR2021-00886, U.S. Patent No. 10,572,429, p. 3, ¶8.

17

RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE 2**
**The Original 7-In-2 HyperDrive[9]**



[9] Ex. 2032: Declaration of Yuwen Chen, USPTO Patent Trial and Appeal Board, Case IPR2021-00886, U.S. Patent No. 10,572,429, pp. 4-5 at ¶10.

18

RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE 3**
**The Original 7-In-2 HyperDrive on Amazon.com[10]**



Sanho expanded from the 7-in-2 adapter above to similarly designed HyperDrive products that also were for use with the two Thunderbolt USB-C ports on the 2016 Gen MacBook Pro and 2018 Gen MacBook Air. These products varied only in the specific number, and/or arrangement, and/or type of the input female ports and included (collectively the "HyperDrive 28 Series"):

- The HyperDrive 7-in-2 adapter (GN28A, GN28B, and GN28C);

- The HyperDrive 8-in-2 adapter (GN28D); and

- The HyperDrive 6-in-2 (GN28N).

Examples of the HyperDrive 28 Series are pictured in FIGURE-4 through -5.

---

[10] Exhibit 2032: Declaration of Yuwen Chen, USPTO Patent Trial and Appeal Board, Case IPR2021-00886, U.S. Patent No. 10,572,429, p. 4 at ¶9. Also see https://www.amazon.com/HyperDrive-Type-C-Adapter-50Gbpps-MacBook/dp/B083LN6F5B?th=1.

RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE-4**
**8-in-2 HyperDrive on Amazon.com[11]**



---

[11] https://www.amazon.com/HyperDrive-Adapter-Multi-port-2018-2016-
Thunderbolt/dp/B0779GXWXV/ref=sr_1_1_sspa?gclid=Cj0KCQiA8vSOBhCkARIsAGdp6RRrzUiWB_R9TGWF
FWX0MpGhcOXOti2JdZDks5XyQZjKnAEb_2TgpLYaAq_bEALw_wcB&hvadid=322166266735&hvdev=c&hvl
ocphy=9010925&hvnetw=g&hvqmt=e&hvrand=3599226891115787695&hvtargid=kwd-
746442372678&hydadcr=18032_9433277&keywords=HyperDrive+pro+8-in-2&qid=1641938468&sr=8-1-
spons&psc=1&spLa=ZW5jcnlwdGVkUXVhbGlmaWVyPUFMWkJRMU9SMUdMS0wmZW5jcnlwdGVkSWQ9Q
TAxOTcxMDIyREpYUDdUQVRTWTQmZW5jcnlwdGVkQWRJZD1BMDgxOTA2MTMxQk04WjlCSzdZRjgmd
2lkZ2V0TmFtZT1zcF9hdGYmYWN0aW9uPWNsaWNrUmVkaXJlY3Q3QmZG9Ob3RMb2dDbGljaz10cnVl

RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE-5**
**6-in-2 HyperDrive on Amazon.com[12]**



I understand the preceding HyperDrives:

- Practice claim 1 of the '429 Patent;[13];

- Are promoted using the HyperDrive Mark; and

- Were sold in copyrighted retail packaging.  In particular, the retail packaging of the HyperDrive TB3 USB-C Hub for MacBook Pro (Model: GN28B) was covered by U.S. copyright VA 2-103-336.  Note that the letter at the end of the model number typically indicates the finish / color of the device such as "S" for silver, "B" for black, etc.

---

12 https://www.amazon.com/HyperDrive-Adapter-Multi-port-Thunderbolt-Ethernet/dp/B07D35JNSJ?th=1.
13 Declaration of Yuwen Chen, USPTO Patent Trial and Appeal Board, Case IPR2021-00886 for U.S. Patent No. 10,572,429, 1/14/2022, pp. 6-17 at nos. 12-32; Declaration of Zhuowen Liao, USPTO Patent Trial and Appeal Board, Case IPR2021-00886 for U.S. Patent No. 10,572,429, 1/20/2022 pp. 9-14 at no. 25; and Declaration of Kien Hoe Daniel Chin, USPTO Patent Trial and Appeal Board, Case IPR2021-00886 for U.S. Patent No. 10,572,429, 1/20/2022.

RESTRICTED – ATTORNEYS' EYES ONLY

## 3.2    SECOND GENERATION HYPERDRIVE MINI DOCKS

Sanho's financial records indicate that it began recognizing sales for two new HyperDrive min-docks in 2020.  These are the HD28C and the HD575 in FIGURE-6 and FIGURE–7 below.

### FIGURE-6
### Sanho's HyperDrive HD28S on Hypershop.com[14]



---

[14] https://www.hypershop.com/products/new-2020-HyperDrive-duo-7-in-2-usb-c-hub?variant=31775726272574.

RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE-7**
**Sanho's HyperDrive HD575 on Hypershop.com[15]**



---

[15] https://www.hypershop.com/products/HyperDrive-duo-pro-7-in-2-usb-c-hub?variant=39732013531198.

RESTRICTED – ATTORNEYS' EYES ONLY

**3.3    KAIJET'S ALLEGED COPYING OF SANHO'S HYPERDRIVE GN28 FOR BEST BUY**

Kaijet began selling the j5Create UltraDrive type-C mini dock model JCD382 in 2017 ("UltraDrive JCD382").[16] Kaijet sold various mini docking stations, full docking stations, and adaptors prior to, and at the same time as, the UltraDrive JCD382.[17] I understand that the UltraDrive JCD382 was / is:

- Supplied to Kaijet Taiwan and Star View by MCT / Guan Hong;[18]
- Sold by Kaijet Taiwan and Star View to Kaijet U.S.;[19] and
- Sold by Kaijet U.S. to customers - primarily to the retailer Best Buy.[20]

Sanho claims, among other things, that the Kaijet UltraDrive JCD382 is a copy of the Sanho HyperDrive 28 Series.[21] I found the following evidence that supports Sanho's copying claims.

As indicated previously, Sanho began selling the HyperDrive GN28A in December 2016.[22] In the summer of 2017 and after it had already begun selling the HyperDrive, Kaijet contents that Best Buy requested a product from Kaijet to compete with the HyperDrive. This request was made through Andrew Miller, a Sales Representative for Select Sales, Inc., and is summarized in the declaration excerpts from Mr. Miller, Sale Representative for Select Sales, and Mr. Charles Akins, Kaijet's Vice President of Global Sales and Marketing, in FIGURES-8 and -9.

---

[16] KIAJET_028330 and Kaijet_028331.
[17] 30(b)(6) Deposition of Kaijet Technology International Limited Incorporated through Chuck Akins, July 14, 2022, pp. 159:2-160:3.
[18] 30(b)6) Deposition of Kaijet Taiwan through Yuki Tai, 7/1/2022, pp 53:1-53:14, 64:23-65:11; KAIJET027481-027490; and Yuki Tai deposition 6/29/2022, pp. 43:6-43:10 and 55:23-56:2.
[19] 30(b)(6) Deposition of Kaijet Taiwan through Yuki Tai, 7/1/2022, pp 96:2-97:2; 30(b)(6) Deposition of Kaijet Technology International Limited Incorporated through Chuck Akins, July 14, 2022, pp. 17:14-17:16; and Yuki Tai deposition 6/29/2022, pp. 22:7-23:10, 46:7-46:19, and 49:15-49:21 and Exhibit 5.
[20] KAIJET_028330 and KAIJET_028333.
[21] For example, see the Declaration of Yuwen Chen, Case IPR2021-00886 for U.S. Patent No. 10,572,429, USPTO Patent Trial and Appeal Board, 1/14/2022 pp. 18-23 at nos. 33-43.
[22] Deposition of Kien Hoe Daniel Chin, 4/1/2022, pp. 60:8-62:10 and "Hyper 28 Series Hub Sales.xlsx."

RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE-8**
**Best Buy Requested A Product That Competed With HyperDrive[23]**

1.    My name is Andrew Miller, and I am over the age of eighteen years and otherwise competent to testify to my knowledge about the matters set forth in this declaration.

2.    I am a Sales Representative or "Sales Rep" for Select Sales, Inc. in Bloomington, MN. KaiJet Technology International Limited, Inc. ("KaiJet") is one of my clients. As a Sales Rep, I facilitate sales of KaiJet products to retailers, including Best Buy. I also talk to retailers about market needs and relay that information to my clients.

3.    At some point in June 2017, a buyer from Best Buy, a buyer I knew and worked with regularly, drew my attention to the HyperDrive – USB Type-C Hub (Model: GN28B) ("HyperDrive") sold by Hyper. I now understand that Hyper is a brand name used by Sanho Corporation. The Best Buy buyer said his company liked the product concept.

4.    Later in the summer of 2017, I contacted Chuck Akins at KaiJet to ask if KaiJet could provide a competing product to the HyperDrive. Eventually KaiJet was able to supply the Ultra Drive Dock (Model JCD382) ("Ultra Drive").

---

[23] Exhibit 2015: Declaration of Andrew Miller in Support of Kaijet Technology International Limited Inc.'s Response to Plaintiff's Motion for Preliminary Injunction, Case No. 1:18-cv-05385-SDG in the USDC Norther District of Georgia, Atlanta Division, 12/3/2019), p. 2. Note that model GN28B is a gray 7-in-2 HyperDrive. For example, see the item model number at https://www.bestbuy.com/site/hyper-HyperDrive-duo-7-port-usb-c-hub-usb-c-docking-station-for-apple-macbook-pro-and-air-gray/6402923.p?skuId=6402923 and https://www.amazon.com/HyperDrive-Type-C-Adapter-50Gbps-MacBook/dp/B01MUAEI7J?th=1.

RESTRICTED – ATTORNEYS' EYES ONLY

## FIGURE-9
## Kaijet Confirmed Best Buy's Request to Produce A HyperDrive Competitor[24]

> 1.    My name is Charles "Chuck" Akins, and I am over the age of eighteen years and otherwise competent to testify to my knowledge about the matters set forth in this declaration.
>
> 2.    I am the Vice President of Global Sales and Marketing at KaiJet Technology International Limited, Inc. ("KaiJet").

> 6.    Later in the summer of 2017, I was contacted by Andrew Miller of Select Sales, Inc., a Sales Representative who represents KaiJet with certain retailers. Mr. Miller told me that Best Buy asked whether KaiJet could supply Best Buy a product to compete with the HyperDrive product. I contacted KaiJet Technology International Corporation ("KaiJet Taiwan") about possibly manufacturing a product to compete with the HyperDrive product.

Next, I reviewed emails that indicated:

- On June 28, 2017, Mr. Akins sent Steven Lyu, Chief Operating Officer of Kaijet, and "j5-jessica" (jessica@j5create.com) an email with a link to the HyperDrive being advertised for sale by Best Buy and the statements "BBY really like this" and "Maybe we should look into something similar to pitch";[25]

---

[24] Exhibit 2051: Declaration of Charles Akins In Support of Kaijet Technology International Limited Inc.'s Response to Plaintiff's Motion for Preliminary Injunction, Case No. 1:18-cv-05385-SDG in the USDC Northern District of Georgia, Atlanta Division, 12/3/2019, pp. 2-3.
[25] Exhibit 2033: KAIJET_000082. "BBY" is the NYSE ticker symbol, and common abbreviation for, Best Buy.

RESTRICTED – ATTORNEYS' EYES ONLY

- On Friday, September 1, 2017, Kaijet indicated that it had had completed, among other things, the task "HyperDrive spec sheet";[26]

- On September 13, 2017, Kaijet referred to the product that would become the UltraDrive as the "HyperDrive SKU" and referenced the color / finish of the HyperDrive when selecting the color of the UltraDrive;[27]

- From September 13th through 19th, 2017:

  - Ms. Cindy Lin of j5create requested help from Mr. Akins to purchase a HyperDrive to "send back to Taiwan for us";[28]

  - Mr. Akins responded "Will get these tomorrow";

  - Ms. Lin requested that Mr. Akins "Please let us know the tracking No as soon as you ship-out"; [29]

  - Mr. Akins confirmed "The Hyperdock was sent today" and provided the FedEx priority tracking number to Ms. Lin; [30] and

  - Ms. Lin confirmed with Mr. Akins that "We have received the Hyperdock today"; [31]

- During the period from October 5th through 16th, 2017, j5create corresponded internally on the selling points for the UltraDrive that included a link to the HyperDrive page at hypershop.com;[32]

- Kaijet began invoicing sales for the UltraDrive on October 26, 2017;[33] and

---

[26] Exhibit 2035: KAIJET_000051.

[27] Exhibit 2036: KAIJET_000003.

[28] Exhibit 2037: KAIJET_002516-002526 at KAIJET_002517-002518.

[29] Ibid. (at KAIJET_002516).

[30] Ibid. (at KAIJET_002516).

[31] Ibid. (at KAIJET_002526).

[32] Ex. 2038: KAIJET_5994-_5996.

[33] Ex. 2039: KAIJET_027126.

RESTRICTED – ATTORNEYS' EYES ONLY

- On November 17, 2017, j5create announced on Twitter the UltraDrive was available exclusively at Best Buy.[34]

Finally, Yuwen Chen, Sanho's Head of Product, compared the UltraDrive to the HyperDrive. He found Kaijet copied the HyperDrive with the UltraDrive based on:

- Its arrangement of the twin USB-C input connectors;

- The same 7 output ports;

- Form factor;

- The location of the HDMI port;

- Product design;

- Product packaging;

- Product name; and

- Internal circuit architecture.[35]

## 3.4    KAIJET'S SUBSEQUENT ULTRADRIVE MINI DOCKS

Kaijet subsequently began selling other UltraDrive j5Create mini dock models after the JCD382 including, among others, the JCD348, JCD386, JCD387, JCD388, JCD389, and JCD324.[36] As described below, the UltraDrive JCD 382, JCD348, JCD386, JCD387, JCD388, JCD389, and JCD324 are the accused products in this Case ("Accused Products").

Current screen captures of certain of the Accused Products from the en.j5create.com website are provided in FIGURES-10 through -16.

---

[34] Ex. 2016 J5create tweet.pdf: IPR2021-00886.

[35] Ex. 2032: Declaration of Yuwen Chen, USPTO Patent Trial and Appeal Board, Case IPR2021-00886, U.S. Patent No. 10,572,429 pp. 18-22, ¶¶33-43.

[36] KAIJET_028330 and KAIJET_028331.

RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE-10**
**Kaijet j5Create UltraDrive JCD382**



RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE-11**
**Kaijet j5Create UltraDrive JCD348**



RESTRICTED – ATTORNEYS' EYES ONLY

## FIGURE-12
### Kaijet j5Create UltraDrive JCD386



RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE-13**
**Kaijet j5Create UltraDrive JCD387**



RESTRICTED – ATTORNEYS' EYES ONLY

## FIGURE-14
### Kaijet j5Create UltraDrive JCD388



RESTRICTED – ATTORNEYS' EYES ONLY

### FIGURE-15
### Kaijet j5Create UltraDrive JCD389



RESTRICTED – ATTORNEYS' EYES ONLY

**FIGURE-16**
**Kaijet j5Create UltraDrive JCD324**



RESTRICTED - ATTORNEYS' EYES ONLY

## A - CERTIFICATION

I certify that, under the penalties of perjury:

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and are my personal, impartial, and unbiased professional analyses, opinions and conclusions;
- I have no present or prospective interest in the parties related to the Case;
- I have no bias with respect to any product or party related to the Case;
- My engagement in this assignment was not contingent upon developing or reporting predetermined results; and
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined damages amount or direction in damages amount that favors the cause of one or more parties to the Case, the amount of the damages opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

Signed:

Daniel J. Cenatempo CVA, MAFF
Executive Director
FairValue Advisors, LLC