# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION, | |
| Plaintiff, | |
| v. | C.A. No. 1:18-cv-05385-SDG |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., dba "j5create"; and DOES 1-100, | |
| Defendants, | |
| SANHO CORPORATION, | |
| Plaintiff, | |
| v. | C.A. No. 1:20-cv-02150-TCB |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY INTERNATIONAL CORPORATION; MAGIC CONTROL TECHNOLOGY; STAR VIEW GLOBAL LIMITED, each dba "j5create"; and DOES 1-100, | (Consolidated Case) |
| Defendants. | |

## PLAINTIFF SANHO CORPORATION'S BRIEF IN OPPOSITION TO DEFENDANTS KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC. AND KAIJET TECHNOLOGY INTERNATIONAL CORPORATION'S MOTIONS IN LIMINE

# TABLE OF CONTENTS

**PAGE**

RESPONSE TO MIL 1
(Evidence of Best Buy Returns of the Ultradrive to Sanho) ................................. 1

RESPONSE TO MIL 2
(Sanho settlement agreements) ............................................................... 2

RESPONSE TO MIL 3
(Expert Witness Cenatempo testifying to matters outside of the scope of his
expertise)............................................................................. 2

RESPONSE TO MIL 4
(Claims dismissed from case) ................................................................ 4

RESPONSE TO MIL 5
(PTX 126 – Kickstarter message) ........................................................... 4

RESPONSE TO MIL 6
(PTX 92 – the Jamie Dillion email)......................................................... 5

RESPONSE TO MIL 7
(PTX 78 – Amazon review) ..................................................................... 10

RESPONSE TO MIL 8
(Expert opinion on design patent invalidity prior to LKQ) .................................. 12

RESPONSE TO MIL 9
(Alter ego of Kaijet U.S. and Kaijet Taiwan) ........................................... 12

RESPONSE TO MIL 10
(Reference to "j5create group") ........................................................... 13

RESPONSE TO MIL 11
(PTX 129) ................................................................................. 15

RESPONSE TO MIL 12
  (Counterfeit)..................................................................................................... 15

RESPONSE TO MIL 13
  (Daniel Chin opinion testimony) ............................................................ 16

RESPONSE TO MIL 14
  (Treble or enhanced damages) ................................................................ 18

RESPONSE TO MIL 15
  (Attorney's fees) .................................................................................... 18

RESPONSE TO MIL 16
  (PTX 116 – Best Buy "buyout" email) ................................................... 18

# TABLE OF AUTHORITIES

***Cases:***                                                                          **PAGE**

*Armstrong v. HRB Royalty, Inc.,*
  392 F. Supp. 2d 1302 (S.D. Ala. 2005) ............................................................. 2

*AWGI, L.L.C. v. Atlas Trucking Co., L.L.C.,*
  No. 17-12131, 2019 WL 7288766 (E.D. Mich. Dec. 30, 2019) ........................ 9, 12

*Brunswick Corp. v. Spinit Reel Co.,*
  832 F.2d 513 (10th Cir. 1987) ............................................................................ 1

*Cache, Inc. v. M.Z. Berger & Co.,*
  No. 99 CIV. 12320 (JGK), 2001 WL 38283 (S.D.N.Y. Jan. 16, 2001)................ 1

*Canes Bar & Grill of S. Fla., Inc. v. Sandbar Bay, LLC,*
  343 F. Supp. 3d 1236 (S.D. Fla. 2018) .............................................................. 6, 10

*City of Almaty, Kazakhstan v. Ablyazov,*
  No. 15-CV-5345 (JGK), 2022 WL 16901995 (S.D.N.Y. Nov. 11, 2022)........... 15

*Comphy Co. v. Comfy Sheet,*
  No. 220CV03029ODWEX, 2021 WL 5051929 (C.D. Cal. Nov. 1, 2021) ......... 1

*Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC,*
  No. 23-20884-CIV, 2024 WL 1025265 (S.D. Fla. Mar. 4, 2024) ....................... 6, 11

*Glock, Inc. v. Wuster,*
  No. 1:14-CV-568-AT, 2019 WL 13043038 (N.D. Ga. Aug. 9, 2019)................. 8, 10, 11

*Glow Indus., Inc. v. Lopez,*
  252 F. Supp. 2d 962 (C.D. Cal. 2002)................................................................ 1

*Home Comfort Heating & Air Conditioning, Inc. v. Ken Starr, Inc.,*
  No. 818CV00469JLSDFM, 2018 WL 3816745 (C.D. Cal. July 24, 2018) ....... 11

*Cases:*                                                             **PAGE**

*J-B Weld Co. v. Gorilla Glue Co.*,
   978 F.3d 778 (11th Cir. 2020) ............................................................................ 18, 19

*Long-Hall v. USA Ready Mix*,
   No. 1:08-CV-1546-CAP-AJB, 2010 WL 11496945 (N.D. Ga. Feb. 2, 2010),
   *report and recommendation adopted*, No. 1:08-CV-1546-CAP-AJB, 2010
   WL 11507392 (N.D. Ga. Mar. 3, 2010) ................................................................ 15

*Most Worshipful Nat'l Grand Lodge v. United Grand Lodge GA AF & AYM, Inc.*,
   813 F. App'x 455 (11th Cir. 2020) ........................................................................ 8

*Nakava, LLC v. S. Pac. Elixir Co.*,
   No. 19-81128-CV, 2022 WL 3025306 (S.D. Fla. July 31, 2022),
   *aff'd*, No. 22-13567, 2023 WL 4364502 (11th Cir. July 6, 2023) ......................... 11

*Nat'l Fire Prot. Ass'n, Inc. v. Int'l Code Council, Inc.*,
   No. CIV.A.03-10848 DPW, 2006 WL 839501 (D. Mass. Mar. 29, 2006) ........... 6

*Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*,
   741 F. Supp. 1546 (S.D. Fla. 1990) ...................................................................... 11

*PlayNation Play Sys., Inc. v. Velex Corp.*,
   924 F.3d 1159 (11th Cir. 2019) ........................................................................... 7

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ) ........................................................................... 2

*RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*,
   No. 18-CV 6449 (JS)(ARL), 2023 U.S. Dist. LEXIS 39005
   (E.D.N.Y. Mar. 7, 2023) ...................................................................................... 1, 5

*Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*,
   675 F.2d 1160 (11th Cir.1982) ............................................................................ 1

*Cases:*                                                                                           **PAGE**

*Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta
v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of
Jerusalem, Knights of Malta, The Ecumenical Ord.*,
    809 F.3d 1171 (11th Cir. 2015) .............................................................. 6

*Starter Corp. v. Converse, Inc.*,
    170 F.3d 286 (2d Cir. 1999) ................................................................... 2

*Suarez Corp. Indus. v. Earthwise Techs., Inc.*,
    636 F. Supp. 2d 1139 (W.D. Wash. 2008) ............................................. 5

*Tarsus Connect, LLC v. Cvent, Inc.*,
    452 F. Supp. 3d 1334 (N.D. Ga. 2020) .................................................. 9

*United States v. House*,
    684 F.3d 1173 (11th Cir. 2012) ............................................................ 19

*United States v. McCarrick*,
    294 F.3d 1286 (11th Cir. 2002). ........................................................... 19

*University of Georgia Athletic Ass'n v. Laite*,
    756 F.2d 1535 (11th Cir. 1985) ............................................................ 11

*Wreal, LLC v. Amazon.com, Inc.*,
    38 F.4th 114 (11th Cir. 2022) ..................................................... 6, 8, 10

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,
    898 F.3d 1279 (11th Cir. 2018) ............................................................ 19


*Other:*

*11th Circuit Pattern Jury Instructions*, Section 10.1. ........................................ 13

**Response to MIL 1 (Evidence of Best Buy Returns of the Ultradrive to Sanho):**

Best Buy is a customer as a wholesale buyer and retailer. The motion presents no law to the Court in support the motion's attempt to eliminate parts of a customer from other parts of a customer when the customer is a business.[1] Best Buy is a corporation and thus is <u>one person</u> (not two) within established black-letter corporate law. Moreover, the motion does not show that Best Buy is a "**purely** non-consumer[ ]" within the meaning of the case law that it relies upon.[2]

Furthermore, the case law supports the notion that product returns are relevant to the likelihood of confusion inquiry.[3] For all of these reasons, the first motion in limine should be denied.

---

[1] For example, the motion states that "Best Buy <u>Product Return Center</u> is not Sanho or KaiJet Defendants' consumer," as opposed to stating that "Best Buy" is or is not a consumer. D.E. 544, at 2.

[2] *RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc*., No. 18-CV 6449 (JS)(ARL), 2023 U.S. Dist. LEXIS 39005, at *13 (E.D.N.Y. Mar. 7, 2023) ("the Court rules that evidence [of actual confusion] from **purely** non-consumers, i.e. those who were not prospective customers of Plaintiff, is irrelevant and thus excluded pursuant to Rule 401") (emphasis added).

[3] *Brunswick Corp. v. Spinit Reel Co*., 832 F.2d 513, 522 (10th Cir. 1987) ("evidence of an actual buyer communicating with the wrong source of the product is worthy of consideration") (citing *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1167 (11th Cir.1982)); *Comphy Co. v. Comfy Sheet*, No. 220CV03029ODWEX, 2021 WL 5051929, at *5 (C.D. Cal. Nov. 1, 2021) (confusion evidence included complaints from customers seeking to return Comfy sheets they had purchased due to their inferior quality); *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 999–1000 (C.D. Cal. 2002) ("retailers and wholesalers attempting to return unused copies of defendant's books to plaintiff ... constitutes substantial evidence of actual confusion"); *Cache, Inc. v. M.Z. Berger & Co*., No. 99 CIV. 12320 (JGK), 2001 WL 38283, at *9–10 (S.D.N.Y. Jan. 16, 2001) ("The

1

**Response to MIL 2 (Sanho settlement agreements):**

Evidence of prior settlement agreements are admissible when offered "for a purpose other than to prove or disprove the validity of the claims that [the agreement was] meant to settle."[4]  Here, the settlement agreements all involve the same or at least some of the same intellectual property at issue in the instant case, and show Sanho's policing of its intellectual property.  Moreover, with regard to at least one third-party settlement, the agreement is relevant to the strength of the 707 Mark in the relevant industry because pursuant thereto ███████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████[5]  Rule 403 is implicated only when prejudice is "unfair."[6]  Nothing about the settlement agreements in question is demonstrably confusing or unfair.  Accordingly, MIL 2 two should be denied.

**Response to MIL 3 (expert witness Cenatempo testifying to matters outside of the scope of his expertise):**

---

plaintiff points to five instances of actual confusion.  Three of the instances, as related by the plaintiff's sales representatives, involve people attempting to return the defendants' "CACHE" watches[.]").

[4] *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010).

[5] *See* Settlement Agreement, filed as **Exhibit A** under seal herewith, at section 2, pp.3-4.

[6] *Armstrong v. HRB Royalty, Inc.*, 392 F. Supp. 2d 1302, 1311 (S.D. Ala. 2005).)

Regarding the "twenty-page long narrative"[7] of Mr. Cenatempo's opening report, some of the contents of that section of the report are useful and necessary background for Mr. Cenatempo to explain why he calculated infringer profits against each of the Defendants, and the appropriate start date for his calculations.

For example, Mr. Cenatempo states:

- Kaijet began selling the j5Create UltraDrive type-C mini dock model JCD382 in 2017 ("UltraDrive JCD382").[8]

- UltraDrive JCD382 was / is:

  o Supplied to Kaijet Taiwan and Star View by MCT / Guan Hong;

  o Sold by Kaijet Taiwan and Star View to Kaijet U.S.; and

  o Sold by Kaijet U.S. to customers - primarily to the retailer Best Buy.[9]

Mr. Cenatempo also goes through a brief description of what each of the other Ultradrive models are that are relevant to his damages testimony, and it is helpful to the jury to be shown the pictures of each of the devices that go with each of the device model numbers (e.g., JCD 382, JCD 324) as shown in Section 3.4 of the opening Cenatempo Report[10] so the jury can better understand Mr.

---

[7] D.E. 544, at 5 and the citation to pages 16-35 of the Cenatempo Opening Report at D.E. 544, n.24.
[8] D.E. 544-3, at 24.
[9] *Id*.
[10] *Id*., at 28-35.

Cenatempo's testimony on Defendants' sales and profits at a device model-specific level.

At the same time, Sanho does <u>not</u> intend to direct questions to Mr. Cenatempo during his direct examination that would elicit testimony regarding the remaining subject matter addressed in Sections 3.1, 3.2 or 3.3 of his report.[11] Likewise, Sanho does not intend to direct questions to Mr. Cenatempo during his direct examination that would elicit testimony regarding industry praise for, and copying and commercial success of, Sanho's HyperDrive.[12]  This should resolve MIL 3.

**<u>Response to MIL 4</u> (claims dismissed from case):**

No objection.  Sanho has no intention of offering evidence or argument as to any claims or counterclaims dismissed from the case.

**<u>Response to MIL 5</u> (PTX 126 - Kickstarter message):**

Sanho Trial Exhibit 126 is an email from a customer to Sanho revealing the customer's state of mind – specifically, his understanding of "Ultradrive" to refer to "HyperDrive."  Instead of asking Sanho where his "HyperDrive" is, the customer advised Sanho that he has "not received this Ultradrive yet."

---

[11]  *Id.*, at 16-27.
[12]  D.E. 544, at 6 and n.25.

Movants argue that this evidence should be excluded as irrelevant. However, the evidence is highly relevant to whether the marks have the same or similar meaning, and whether consumers understand the terms to be the same thing.  It helps Sanho to show that the marks in question are "similar in sound, meaning, and usage."[13]

Sanho does not intend to present this exhibit as a statement which was made <u>after</u> the Ultradrive entered the marketplace.  Furthermore, the Defendants can easily point out to the jury that the statement was made before the Ultradrive was released.  Thus, there is no likely juror confusion, nor any basis for exclusion.

**<u>Response to MIL 6</u> (PTX 92 - the Jamie Dillion email):**

**Hearsay.**  Sanho has already shown that hearsay is not a basis upon which to exclude this evidence because it is reflective of state of mind and present sense impression exceptions, and not for its truth.[14]  "[I]f the Instagram Post is offered for the limited purpose of demonstrating general confusion on the part of customers, the customer complaint would not be hearsay …[.]  Moreover, … a customer complaint may also be admissible under Rule 803(3) as a statement showing the declarant's then-existing state of mind."[15]  With respect to PTX 92,

---

[13]  D.E. 513, at 31.
[14]  D.E. 542, at 21 and n.72 (citing authorities).
[15]  *RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 18-CV-6449 (JS)(ARL), 2023 WL 2403258, at *8–9 (E.D.N.Y. Mar. 7, 2023).  *See also Suarez Corp. Indus. v. Earthwise Techs., Inc.*, 636 F. Supp. 2d 1139, 1143 (W.D. Wash.

Sanho does not introduce the exhibit to prove the truth of the matter asserted, only that the customer was confused.  Thus, Sanho "correctly points out that [it is] not hearsay to the degree [it is] being proffered as [an example] of actual confusion and not to prove the truth of the matter asserted therein."[16]  Therefore, PTX 92 is admissible over the hearsay objection and "this Court will consider [it] as probative of the declarant's state of mind."[17]

    **Relevance vs. Prejudice**.  "But in assessing the quantum of actual confusion required for a finding in the plaintiff's favor, even a 'very little' amount of actual confusion is **highly probative**."[18]  "[E]mails and publicly posted online reviews from consumers of Defendants that support actual confusion" should be "afforded '**substantial weight**' by Eleventh Circuit standards."[19]

---

2008) (emails are offered to demonstrate the apparent confusion of Earthwise customers and not to prove the truth of the matters asserted in the emails).

[16] *Nat'l Fire Prot. Ass'n, Inc. v. Int'l Code Council, Inc*., No. CIV.A.03-10848 DPW, 2006 WL 839501, at *4 (D. Mass. Mar. 29, 2006).

[17] *Canes Bar & Grill of S. Fla., Inc. v. Sandbar Bay, LLC*, 343 F. Supp. 3d 1236, 1245–46 (S.D. Fla. 2018) (admitting online reviews as evidence of confused state of mind).

[18] *Wreal, LLC v. Amazon.com, Inc*., 38 F.4th 114, 137 (11th Cir. 2022) (emphasis added); *accord Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord*., 809 F.3d 1171, 1189 (11th Cir. 2015).

[19] *Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*, No. 23-20884-CIV, 2024 WL 1025265, at *12–13 (S.D. Fla. Mar. 4, 2024) (emphasis added).

Despite Kaijet's efforts to sow confusion of its own with respect to the content of the email that is PTX 92[20], the email plainly reflects that a customer of a JCD382 reached out to Sanho, not Kaijet, for customer service.  Confronted with similar evidence that purchasers of the plaintiff's product contacted the defendant for customer service, the Eleventh Circuit has held that "the actual confusion factor weighed in favor of a likelihood of confusion.  PlayNation produced two ultimate purchasers of PlayNation's Gorilla Playsets swing sets who contacted Velex for customer service.  The consumers believed Velex manufactured both Gorilla Gym and Gorilla Playsets products.  Consumers also posted on retail websites selling Gorilla Playsets swings and trapeze bars asking if those items work 'with the Gorilla Gym indoors.'"[21]  Rejecting the argument that the consumers who indicated confusion must have been careless – the same argument now espoused by Movants – the Eleventh Circuit stated "nothing in the actual confusion analysis requires the plaintiff to produce the most careful consumer, who diligently researched and meticulously examined the inner and outer packing to determine the provenance of the product she purchased."[22]  "While numerous instances of

---

[20]  *See* D.E. 544, at 11, where the Kaijet Defendants admit that "taking the email at face value," it is "actual confusion evidence."

[21]  *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1167–68 (11th Cir. 2019).

[22]  *Id.*

actual confusion add greater weight in favor of confusion, 'the quantum of evidence needed to show actual confusion is relatively small.'"[23]

In *Glock, Inc. v. Wuster,*[24] Glock presented evidence of a customer email to Airsplat, wherein the customer expressed the desire to return the "WE G-17" pistol he had purchased, stating that he was "unaware" that this product "was an unlisenced [sic] Airsoft gun because glock never issued a remake model." Judge Totenberg held that this email was relevant to the likelihood of confusion inquiry, including actual confusion.[25]

Movants cite *Most Worshipful Nat'l Grand Lodge v. United Grand Lodge GA AF & AYM, Inc.*[26] for the proposition that actual confusion requires that a deceived customer buy the infringer's product in the belief that it in some way is affiliated with the owner of the trademark or trade dress. However, not only is this assertion inconsistent with the preceding authorities, the Eleventh Circuit in *Wreal*[27] dealt with evidence that a customer had asked over Twitter, "Did you guys just merge with Amazon?" And one of Amazon's customers communicated with Amazon to ask whether he could access "adult content" on his Amazon "fyre" TV. The Eleventh Circuit, reversing the grant of summary judgment, held that both

---

[23] *Id.*

[24] No. 1:14-CV-568-AT, 2019 WL 13043038, at *15 (N.D. Ga. Aug. 9, 2019).

[25] *Id.*

[26] 813 F. App'x 455, 459 (11th Cir. 2020).

[27] 38 F.4th 114, 139–40 (11th Cir. 2022).

instances suggested confusion.[28]  "[T]he two reported instances of actual confusion here are sufficient to make the issue one of triable fact and thus weighs in *Wreal*'s favor."[29]

Distilled to its essence, Kaijet's argument that PTX 92 is too prejudicial is really an argument that PTX 92 is too **probative**.  Most if not all customer emails and customer reviews on social media exhibiting actual confusion would need to be excluded under the rationale for exclusion now proffered by the Kaijet Defendants.  However, because PTX 92 is evidence of actual confusion, it is highly probative in accordance with the preceding authorities, and should not be excluded as "prejudicial" at all.  The question of the exact strength of its probative value will be for the jury to assign in the context of all of the evidence.  The Court should not exclude relevant, probative evidence as too prejudicial just because it the evidence does not fit the narrative of the Kaijet Defendants.[30]

The Kaijet Defendants' citation to *Tarsus Connect, LLC v. Cvent, Inc.*,[31] does not warrant exclusion under FRE 402 or 403.  Tarsus was not an evidentiary issue,

---

[28]  *Id.*

[29]  *Id.*

[30]  *See AWGI, L.L.C. v. Atlas Trucking Co., L.L.C.*, No. 17-12131, 2019 WL 7288766, at *5 (E.D. Mich. Dec. 30, 2019) (emails describing customer confusion were not inadmissible under FRE 402 and/or 403).

[31]  452 F. Supp. 3d 1334, 1355–56 (N.D. Ga. 2020), cited at D.E. 544, at n.49.

but an issue addressed to how the Court weighed the admissible evidence within the framework of the likelihood of confusion test on summary judgment.

In sum, the foregoing authorities refute Kaijet's basis for its motion, and warrant the denial of said motion.

**Response to MIL 7** (**PTX 78 - Amazon review**):

**Hearsay.**  As Sanho has already briefed, PTX 78 is an exception to the hearsay rule.[32]  Sanho furthermore relies on the additional cases cited above in response to MIL 6.[33]

**Relevance vs. Prejudice**.  As noted above, *Wreal* affirmed that customer reviews on social media are relevant.  *Glock* illustrates this point as well.  In *Glock*, in multiple screenshots of online social media, individuals (appearing to be actual or potential customers) incorrectly referred to images of Airsplat pistols as "Glock" products.  The Court held that a "reasonable jury could conclude that these customer comments do indeed show actual confusion about whether the at-issue pistols come from Glock, even in light of the website's disclaimer.  The disclaimer itself does not necessarily diminish the likelihood of confusion, as 'the critical question remains whether the disclaimer effectively dispels a likelihood of

---

[32]  D.E. 542, at 22 and n.74 (citing authorities).

[33]  *E.g., Canes Bar & Grill of S. Fla., Inc*., 343 F. Supp. 3d at 1245–46 (admitting online reviews as evidence of confused state of mind).

confusion and whether actual confusion still exists.'"[34]  "While *Glock*'s evidence of actual confusion is not extensive, the circumstances of the confusion carry some weight."[35]

Here, PTX 78 is a negative online review intended for Kaijet (j5), and thus exhibits a confused state of mind.  It is not being offered for its truth, but for the present sense impression and state of mind of the poster.  It is relevant evidence of actual confusion.[36]

Kaijet, of course, is free to raise the point that it did not sell its products on Amazon.com, in the hopes of reducing the weight that the factfinder gives this evidence.  However, the Kaijet Defendants have not substantiated their claim that "there is a substantial risk of prejudice to KaiJet Defendants if Sanho is allowed to present this unsubstantiated hearsay as evidence of confusion."[37]  As with PTX 92, and the authorities discussed above, there is no basis for FRE 402 or 403 exclusion

---

[34]  2019 WL 13043038, at *15 (citing *Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*, 741 F. Supp. 1546, 1558 (S.D. Fla. 1990) (citing to *University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1547 (11th Cir. 1985)).

[35]  *Id*.  *Accord Nakava, LLC v. S. Pac. Elixir Co.,* No. 19-81128-CV, 2022 WL 3025306, at *9 (S.D. Fla. July 31, 2022), *aff'd*, No. 22-13567, 2023 WL 4364502 (11th Cir. July 6, 2023) (evidence of confusion included a customer posting of an online review); *Earth, Wind & Fire IP*, 2024 WL 1025265, at *12–13 (online customer reviews support actual confusion).

[36]  *See Home Comfort Heating & Air Conditioning, Inc. v. Ken Starr, Inc.*, No. 818CV00469JLSDFM, 2018 WL 3816745, at *9 (C.D. Cal. July 24, 2018).

[37]  D.E. 544, at 12.

here because the probative value of PTX 78 on the question of actual confusion exceeds the unsubstantiated risk of undue prejudice.[38]

**Response to MIL 8 (expert opinion on design patent invalidity prior to *LKQ*):**

To the extent that defense expert Kevin Shankwiler confines his testimony on patent invalidity to the issues raised in his post-*LKQ* supplemental report, Sanho has no intention of interjecting his pre-*LKQ* invalidity opinions into the case. Therefore, Sanho is not opposed to an order barring the parties, Shankwiler and Bressler from referring to invalidity opinions of Shankwiler which pre-dated *LKQ*.

**Response to MIL 9 (alter ego of Kaijet U.S. and Kaijet Taiwan):**

The evidence in question bears on the closeness of Kaijet US and Kaijet Taiwan, which is an issue the jury can and should take into consideration as to several issues in the case. First, Kaijet Taiwan's notice of the allegations of infringement when the original demand for infringement was made upon Kaijet U.S. before the first suit was filed. Kaijet Taiwan's prior notice of infringement and continued use of "Ultradrive" and the Ultradrive packaging and designs is important to the potential willfulness of Kaijet Taiwan's infringement. Second, the closeness of the relationship between the companies goes to the likelihood that Kaijet Taiwan had "access" to the copyrighted Sanho packaging before completing

---

[38] *See AWGI,* 2019 WL 7288766, at *5 (denying motion to exclude emails relating to consumer confusion).

the design of the Ultradrive packaging (given that Jessica Liu, the CEO of Kaijet U.S. viewed the HyperDrive packaging before the Ultradrive packaging was finalized).[39]  Finally, the closeness of Kaijet Taiwan to Kaijet U.S. is relevant to the factors relevant to the jury's decision whether to award Sanho infringer's profits: (a) whether the conduct was willful and deliberate; (b) whether the defendants were unjustly enriched; or (c) an award of the defendants' profits is necessary to deter defendants' future conduct.[40]  Evidence bearing on the closeness of the relationship between the defendants is therefore relevant regardless of whether Kaijet U.S. and Kaijet Taiwan are "alter egos" as a matter of law.

**<u>Response to MIL 10</u> (references to "j5create group"):**

"j5 group" is used to denote that j5create is an organization comprised of Kaijet U.S. and Kaijet Taiwan.  Movants falsely claim that "the only purpose of using 'j5create group' is to improperly prejudice the jury against KaiJet Defendants.  This is not true.  The term is used to denote the closeness and cohesiveness of the relationship of Kaijet U.S. and Kaijet Taiwan, which is an issue for the jury to consider in the case.

---

[39]  *See* D.E. 513, at 41 ("From this evidence, a jury could find that the Kaijet Defendants had a reasonable opportunity to view (if not actual access to) the copyrighted packaging").

[40]  *11th Circuit Pattern Jury Instructions*, Section 10.1.

The movants concede that Plaintiff's Trial Exhibit 129 is an exhibit created by DeAnna Harris, who was at the time a marketing employee of Kaijet U.S. in February 2019.  The presentation, which is plainly related to marketing using the j5create brand, shows that Ms. Harris was at the time the marketing representative of the "Leadership and Sales Team" of the j5create "USA Team:"



The first page of the presentation refers to the j5create "company profile":



The company's profile includes references in the exhibit to Kaijet U.S. and Kaijet Taiwan.  It is therefore reasonable for Sanho to refer to the Kaijet Defendants are part of "j5create," "the j5create company" or "the j5create group."  Although Kaijet has tried to downplay the content of this presentation, Mr. Akins, upon

reviewing the presentation, said "██████████████████████████"[41]

Kaijet offers no explanation for why its Vice President would take the time to

"████████████" if the content of the presentation (marketing of j5create and

Kaijet U.S.) was not within the scope of the assignment, or was not meaningful to

the company.

Because Ms. Harris was admittedly an employee of Kaijet U.S.[42], the exhibit

is admissible (and not hearsay) as "made by the party's agent or employee on a

matter within the scope of that relationship and while it existed" and "offered

against an opposing party" to show that there is a j5create group that includes

Kaijet U.S. and Kaijet Taiwan.[43]  Therefore, the exhibit is relevant, and is not

hearsay.  Accordingly, this motion should be denied.

**Response to MIL 11 (PTX 129):**

*See* response to MIL 10 above.

**Response to MIL 12 (counterfeit):**

---

[41]  **Exhibit B**, a February 11, 2019 email from C. Akins to D. Harris, filed under seal herewith (bates-marked KAIJET_011539).

[42]  D.E. 160-7, ¶ 4.

[43]  FRE 801(d)(2)(D); *see City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (JGK), 2022 WL 16901995, at *2 (S.D.N.Y. Nov. 11, 2022) ("if offered by Triadou, the spreadsheets are admissible in full as non-hearsay statements of the employees of a party-opponent"); *Long-Hall v. USA Ready Mix*, No. 1:08-CV-1546-CAP-AJB, 2010 WL 11496945, at *11 (N.D. Ga. Feb. 2, 2010), *report and recommendation adopted*, No. 1:08-CV-1546-CAP-AJB, 2010 WL 11507392 (N.D. Ga. Mar. 3, 2010) (admitting statements of employee as statements of a party opponent).

No objection.

**Response to MIL 13 (Daniel Chin opinion testimony):**

**(1) that Sanho's "HyperDrive" mark has secondary meaning**. Mr. Chin may testify as to sales, exposure of the product in Best Buy stores, and any other facts that may be relevant to the determination of secondary meaning, but he will not be asked to give a legal conclusion as to whether "HyperDrive" has attained "secondary meaning." This should resolve the issue.

**(2) that the "HyperDrive's patent-protected design" was infringed**.

Mr. Chin may testify as a percipient witness to various observations he made relating to the closeness of the patented designs Sanho owned (and that he invented in many cases) versus the appearance of the Ultradrive product designs that he was seeing in the marketplace.[44]  Again, Sanho does not intend to ask him for an ultimate opinion about whether the Ultradrive designs are an "infringement" of his patents.  This should resolve the issue.

**(3) that there was  confusion in the marketplace between Sanho's and KaiJet Defendants' products.**

Mr. Chin should be able to testify to the facts that he is aware of relating to customers exhibiting a confused state of mind between HyperDrive and Ultradrive (e.g., PTX 78 and PTX 92), as well as his knowledge of Best Buy product returns

---

[44]  *See* D.E. 512-1, ¶¶81-84.

to Sanho of Kaijet Ultradrive and other products, as discussed above in relation to MIL 1.[45]

**(4) that Best Buy was also confused.**

As discussed above, Mr. Chin is entitled to testify to his knowledge of Best Buy product returns to Sanho of Kaijet Ultradrive and other products, as discussed above.[46]

**(5) that KaiJet Defendants copied Sanho's product**.

Mr. Chin is expected to testify to the obvious visual similarities between the competing products and product designs in this case. At a minimum, the Court should defer ruling on this until the time of trial because, depending on what evidence is already in the record at the time of Mr. Chin's testimony, there may be a sufficient factual predicate (*e.g.*, "email communications repeatedly referencing Sanho's design, and expressing a desire to use similar elements in its own product"[47]) upon which Mr. Chin could offer testimony that the Ultradrive copied the Hyperdrive.[48]  **(6) that Sanho has goodwill in the HyperDrive name and product packaging.**

---

[45]  Prior to the release of the Ultradrive, Sanho did not have issues with Best Buy's PRC returning Kaijet products to Sanho.  D.E. 512-1, ¶77.

[46]  *See* D.E. 512-1, ¶¶74-77.

[47]  D.E. 513, at 34 internal citations omitted).

[48]  *See id*.

17

Mr. Chin is entitled to testify to underlying facts tending to show that Sanho has goodwill, but does not intend to testify that "Sanho <u>has</u> goodwill." This may include, for example, evidence of the relationship with Best Buy and Amazon.com as resellers of the HyperDrive, the extent to which HyperDrive was sold and offered for sale online and in brick and mortar Best Buy stores, the facts relating to the HyperDrive's Kickstarter campaign (number of participants, for example and the relative success of the campaign), and his knowledge of extensive positive media coverage of the HyperDrive.[49]

**<u>Response to MIL 14</u> (treble or enhanced damages):**

No objection.

**<u>Response to MIL 15</u> (attorney's fees):**

No objection.

**<u>Response to MIL 16</u> (PTX 116 – Best Buy "buyout" email):**

PTX 116 is relevant to Kaijet's intention to capitalize on plaintiff's goodwill and likelihood of confusion, which is born out through a series of emails and evidence, not only PTX 116.[50] ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████ [51]

---

[49] *See, e.g.,* D.E. 512-1, ¶¶12-24, and 27.
[50] *See J-B Weld Co. v. Gorilla Glue Co.*, 978 F.3d 778, 792 (11th Cir. 2020).
[51] PTX 102, filed under seal herewith as **Exhibit C**.

A reasonable juror could find that Kaijet's stated plan, "to pick up a big chunk of business," was referring to picking up plaintiff's chunk of business or goodwill. Evidence of defendants' attempts to "buy out" plaintiff's inventory is not irrelevant to prove Kaijet's intent to copy with the replacement product, rather it shows that Kaijet put the original plan into action.[52]  Kaijet provides no logical basis to exclude such evidence either.

Kaijet cites *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,[53] for the proposition that Mr. Akins' subsequent declarations evince an "intent to compete," not copy, and thus preclude a finding of intent to copy.[54]  The Eleventh Circuit in *J-B Weld v. Gorilla Glue Co.*[55] expressly rejected this reasoning because one ulterior motive does not preclude a finding of a different intent.[56]  The Court held further that *Yellowtail Yachts* was distinguishable because here, there are additional supporting emails which in combination evince a larger scheme to copy.[57]  In the

---

[52] In evaluating intent, "a series of individual actions that 'support an innocent explanation,' when 'viewed in a vacuum,' may in combination provide sufficient evidence for a reasonable juror to infer a defendant's intent."  *United States v. House*, 684 F.3d 1173, 1200 (11th Cir. 2012).  In addition, "the defendant's 'subsequent conduct may be considered if it supports a reasonable inference as to [his] prior intent.'"  *House*, 684 F.3d at 1200 (alteration in original) (*quoting United States v. McCarrick*, 294 F.3d 1286, 1291 (11th Cir. 2002)).

[53] 898 F.3d 1279, 1293 (11th Cir. 2018).

[54] D.E. 544, at 25.

[55] 978 F.3d 778 (11th Cir. 2020).

[56] *See J-B Weld Co.*, 978 F.3d at 791-792.

[57] *Id.*; *see also* D.E. 513, at 33-34 (determining that the analysis of *J.B. Weld* is persuasive on the facts of the instant case).

present case, plaintiff on summary judgment submitted numerous exhibits which evidence a concerted scheme to copy, ranging from references to HyperDrive in Kaijet's own emails, "email communications repeatedly referencing Sanho's design, and expressing a desire to use similar elements in its own product."[58]  And, as this Court has already stated:

> Sanho, moreover, has compelling evidence of Kaijet US's intent to copy that the J-B Weld plaintiff did not: evidence that Kaijet US changed its existing product name from "ultrastation" to "UltraDrive"—in effect conforming it more closely to the trademark-protected "HyperDrive"—after Sanho began selling its hubs, and as Kaijet US was preparing to introduce a competing product into the same market.[59]

A reasonable juror could infer that the attempt to "buy out" Sanho at Best Buy was part of the larger scheme to copy HyperDrive and replace it with Ultradrive at Best Buy.  Such evidence is relevant to the issue of unfair competition and more specifically, the intent to copy, and is not outweighed by any risk of prejudice or juror confusion.

Accordingly, defendants' MIL 16 should be denied.

---

[58]  D.E. 513, at 34 (citing D.E. 491-2, ¶¶ 40–47).
[59]  D.E. 513, at 34 (citing D.E. 491-2, ¶¶ 51–59).

Dated:  June 25, 2024            Respectfully submitted,

***/s/ Steven G. Hill***
Steven G. Hill
GA Bar No. 354658
David K. Ludwig
GA Bar No. 616971
**HILL, KERTSCHER & WHARTON, LLP**
3625 Cumberland Blvd., SE, Suite 1050
Atlanta, Georgia 30339-6406
Tel:  (770) 953-0995
Fax:  (770) 953-1358
Email:  sgh@hkw-law.com
Email:  dludwig@hkw-law.com

   **-and-**

Ali A. Aalaei *(admitted pro hac vice)*
CA Bar No. 254713
**ARI LAW, P.C.,**
3130 Alpine Road Suite 288 PMB 408
Portola Valley CA 94028
Tel: (415) 235-2069
Fax: (415) 520-9456
Email:  ali@arilaw.com

*Attorneys for Plaintiff Sanho Corporation*

## **TYPE AND FONT CERTIFICATION**

The undersigned certifies that the foregoing complies with Local Rule

5.1(B) regarding typeface and font.

> *__/s/Steven G. Hill__*
> GA Bar No. 354658
>
> *Counsel for Plaintiff Sanho Corporation*

## **CERTIFICATE OF SERVICE**

I certify that on the 25th day of June, 2024, I caused to be electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following participants and law firm who are registered CM/ECF users, and will be served by the CM/ECF system.

*/s/Steven G. Hill*
GA Bar No. 354658

*Counsel for Plaintiff Sanho Corporation*