UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>    Plaintiff,<br><br> v.<br><br> KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.,<br>dba "j5create;" and DOES 1-100,<br><br>    Defendants, | Case No. 1:18-cv-05385-SDG |
| SANHO CORPORATION,<br><br>    Plaintiff,<br><br> v.<br><br>KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.;<br>KAIJET TECHNOLOGY<br>INTERNATIONAL CORPORATION;<br>MAGIC CONTROL TECHNOLOGY;<br>STARVIEW GLOBAL LIMITED, each<br>doing business as "J5Create;" and DOES<br>1-10,<br><br>    Defendants. | Consolidated with<br>Case No. 1:20-cv-02150-TCB |

**DEFENDANTS KAIJET TECHNOLOGY INTERNATIONAL LIMITED,
INC. AND KAIJET TECHNOLOGY INTERNATIONAL CORPORATION'S
OPPOSITION TO PLAINTIFF'S OMNIBUS MOTION *IN LIMINE***

# TABLE OF CONTENTS

I.      MIL NO. 1: Evidence of the strength of "HyperDrive" is relevant. .............1

    A.  Conceptual strength and commercial strength are fact questions for the jury. ................................................................................................2

    B.  Third-party use is relevant. ...........................................................................2

    C.  Sanho bears the burden at trial to prove the strength of its mark. .................5

II.     MIL NO. 2: Evidence of KaiJet Defendants' prior use of "Ultra" is relevant to their intent in adopting the term "Ultradrive." ...........................5

III.    MIL NO. 3: Evidence of Ultradrive trademark registrations is relevant..........................................................................................................6

IV.     MIL NO. 4: Evidence that "Hyper" and "Ultra" trademarks coexist for the same classes of goods is relevant............................................................9

V.      MIL NO. 5: KaiJet Defendants have not waived the issue of Sanho's lack of standing. ..........................................................................................10

VI.     MIL NO. 6: Sanho likely lacks standing. ...................................................16

VII.    MIL NO. 7: KaiJet Taiwan will not contravene this Court's Summary Judgment Order ..........................................................................................18

VIII.   MIL NO. 8: KaiJet Defendants will not mention the withdrawn and dismissed claims to the jury...........................................................................18

IX.     MIL NO. 9: KaiJet Defendants will not argue false marking. ....................18

X.      MIL NO. 10: KaiJet Defendants will only introduce evidence or argument of Sanho's fake or paid-for product reviews if Sanho relies on product review evidence. ........................................................................19

XI.     MIL NO. 11: Sanho's purported evidence of actual confusion is inadmissible. ................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AIG Specialty Ins. Co. v. Pegatron Corp.*,
  No. 1:18-cv-03701-SDG, 2021 U.S. Dist. LEXIS 177057 (N.D.
  Ga. Sept. 17, 2021) ..................................................................................13

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994) ..................................................................18

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................1

*AntennaSys, Inc. v. AQYR Techs., Inc.*,
  976 F.3d 1374 (Fed. Cir. 2020) ..............................................................11

*Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*,
  950 F.3d 860 (Fed. Cir. 2020) ................................................................18

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) .................................................................................14

*Carling Brewing Co. v. Philip Morris, Inc.*,
  297 F. Supp. 1330 (N.D. Ga. 1968) ..........................................................6

*Citibank v. Pietranico*,
  No. 1:11-CV-1802-SSC, 2012 U.S. Dist. LEXIS 193289
  (N.D. Ga. Aug. 17, 2012) ........................................................................15

*Cone Corp. v. Fla. Dep't of Transp.*,
  921 F.2d 1190 (11th Cir. 1991) ..............................................................13

*D.H. Pace Co. v. OGD Equip. Co., LLC*,
  78 F.4th 1286 (11th Cir. 2023) ...............................................................14

*Davidoff & Cie, S.A. v. PLD Int'l Corp.*,
  263 F.3d 1297 (11th Cir. 2001) ................................................................5

*Drone Techs., Inc. v. Parrot S.A.*,
  838 F.3d 1283 (Fed. Cir. 2016) ..............................................................11

*Drs. Hosp. of Augusta, Inc. v. Horton Homes, Inc.*,
    No. 1:02-CV-3165-CAP, 2005 U.S. Dist. LEXIS 57516
    (N.D. Ga. Jan. 27, 2005) ......................................................................12

*Duluth News-Tribune v. Mesabi Publ'g Co.*,
    84 F.3d 1093 (8th Cir. 1996) .........................................................20, 22

*Ethicon, Inc. v. United States Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998) .............................................................11

*FCOA LLC v. Foremost Title & Escrow Servs. LLC*,
    57 F.4th 939 (11th Cir. 2023) .............................................................2, 5

*Fin. Inv. Co. (Bermuda) v. Geberit AG*,
    165 F.3d 526 (7th Cir. 1998) ................................................................17

*Fishman v. Tiger Nat. Gas Inc.*,
    No. C 17-05351 WHA, 2018 U.S. Dist. LEXIS 159425
    (N.D. Cal. Sept. 18, 2018) ...................................................................13

*Fla. Ass'n of Med. Equip. Dealers v. Apfel*,
    194 F.3d 1227 (11th Cir. 1999) ...........................................................13

*Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*,
    830 F.3d 1242 (11th Cir. 2016) ...........................................................25

*Frehling Enters. Inc. v. Int'l Select Grp., Inc.*,
    192 F.3d 1330 (11th Cir. 1999) ......................................................3, 7, 9

*FW/PBS, Inc. v. Dallas*,
    110 S. Ct. 596 (1990)............................................................................13

*H.R. Techs., Inc. v. Astechnologies, Inc.*,
    275 F.3d 1378 (Fed. Cir. 2002) ...........................................................14

*Hi-Tech Pharms., Inc. v. Nutrition Res. Servs., Inc.*,
    No. 1:23-cv-5536-TCB, 2024 WL 649235
    (N.D. Ga. Feb. 15, 2024) .......................................................................6

*I & I Hair Corp. v. Beauty Plus Trading Co.*,
    No. 3:18-cv-03254-M, 2019 U.S. Dist. LEXIS 226586
    (N.D. Tex. Sept. 13, 2019)....................................................................16

*Insect Sci. Res., LLC v. Timberline Fisheries Corp.*,
No. 1:07-CV-2662-JEC, 2010 U.S. Dist. LEXIS 9934 (N.D. Ga.
Feb. 3, 2010) ...................................................................................................15

*Int'l Gamco, Inc. v. Multimedia Games, Inc.*,
504 F.3d 1273 (Fed. Cir. 2007) .......................................................................17

*Isr. Bio-Eng'g Project v. Amgen, Inc.*,
475 F.3d 1256 (Fed. Cir. 2007) .......................................................................12

*J & J Sports Prods., Inc. v. Vizcarra*,
No. 11-1151 SC, 2011 U.S. Dist. LEXIS 109732
(N.D. Cal. Sept. 27, 2011) ...............................................................................14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)..........................................................................................14

*Merrimon v. Unum Life Ins. Co. of Am.*,
758 F.3d 46 (1st Cir. 2014)...............................................................................15

*Miss Universe, Inc. v. Little Miss U.S.A., Inc.*,
No. C80-1364A, 1981 U.S. Dist. LEXIS 17254 (N.D. Ga. June 19,
1981) ...................................................................................................................6

*Pilot Corp. of Am. v. Fisher-Price, Inc.*,
501 F. Supp. 2d 292 (D. Conn. 2007)..................................................................8

*Playnation Play Sys., Inc. v. Velex Corp.*,
924 F.3d 1159 (11th Cir. 2019) ....................................................................4, 9

*Royal Oak Enters., LLC v. Nature's Grilling Prods., LLC*,
No. 1:10-CV-2494-JEC, 2011 U.S. Dist. LEXIS 133856 (N.D. Ga.
Nov. 21, 2011) ....................................................................................................4

*Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*,
675 F.2d 1160 (11th Cir. 1982) ....................................................................3, 4

*Shum v. Intel Corp.*,
629 F.3d 1360 (Fed. Cir. 2010) .......................................................................12

*Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John*,
    809 F.3d 1171 (11th Cir. 2015) ............................................................3

*Sream, Inc. v. LB Smoke Shop, Inc.*,
    No. 16-CV-24936-PCH, 2017 U.S. Dist. LEXIS 97406 (S.D. Fla. June 23, 2017) ...............................................................17

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
    851 F.3d 440 (5th Cir. 2017) ............................................................23

*Syntex Labs., Inc. v. Norwich Pharmacal Co.*,
    437 F.2d 566 (2d Cir. 1971) ..............................................................8

*Tarsus Connect, LLC v. Cvent, Inc.*,
    452 F. Supp. 3d 1334 (N.D. Ga. 2020)............................................23

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
    295 F.3d 623 (6th Cir. 2002) ............................................................22

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
    524 F.3d 1229 (11th Cir. 2008) ........................................................13

*Underwood v. City of Bessemer*,
    11 F.4th 1317 (11th Cir. 2021) ......................................................1, 4

*United States v. Acad. Mortg. Corp.*,
    No. 16-cv-02120-EMC, 2020 U.S. Dist. LEXIS 226154 (N.D. Cal. Dec. 2, 2020) ................................................................14

## Statutes

15 U.S.C. § 1114 ................................................................................14

15 U.S.C. § 1115(a) .............................................................................8

15 U.S.C. § 1116(c) .............................................................................8

35 U.S.C. § 287 ................................................................................18

35 U.S.C. § 289 ................................................................................14

## Other Authorities

Fed. R. Civ. P. 8(c) ................................................................................12

Fed. R. Civ. P. 12(b)(1) .........................................................................13

Fed. R. Civ. P. 19(b) .............................................................................16

Fed. R. Evid. 403 .............................................................20, 21, 24, 25

J. Thomas McCarthy, Trademarks & Unfair Competition, § 23.2,
    p. 52, n.1 (2d ed. 1984) .................................................................22

Defendants Kaijet Technology International Limited, Inc. and Kaijet Technology International Corporation (collectively, "KaiJet Defendants") submit this opposition to Plaintiff Sanho Corporation's ("Sanho") Omnibus Motion *in Limine*.

## I.    MIL NO. 1: Evidence of the strength of "HyperDrive" is relevant.

This Motion is premised upon Sanho's argument that the Court definitively held that "HyperDrive" is a strong mark. Sanho misunderstands the posture of this Court's summary judgment order. KaiJet US had moved for summary judgment on the issue of trademark infringement. In resolving that motion, the Court was required to weigh all evidence and inferences in favor of Sanho to determine if a reasonable jury *could* find in Sanho's favor.[1] The Court held "a jury ***could*** reasonably find that the '707 Mark is strong."[2] But the Court made no finding of fact, and the strength of the '707 Mark remains an issue for the jury. KaiJet Defendants must be allowed to present evidence and argument as to the weakness of the mark.

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Underwood v. City of Bessemer*, 11 F.4th 1317, 1327 (11th Cir. 2021) ("When considering a motion for summary judgment… courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, they must credit the nonmoving party's version.") (internal quotations and citations omitted).

[2] ECF 513, at 28 (emphasis added).

### A. Conceptual strength and commercial strength are fact questions for the jury.

Sanho further misconstrues the Court's order, arguing that "HyperDrive" is strong because the Court held that it was either suggestive or arbitrary. This is wrong in two ways. First, Sanho again ignores the posture of the summary judgment order; the Court made no finding of fact that the relevant product is never referred to as a "drive;" it held only that a reasonable jury *could* find the '707 Mark is suggestive or arbitrary. It is for the jury to make the ultimate determination of fact at trial. Second, the strength of a mark depends on both its conceptual strength and its commercial strength.[3] Sanho's motion refers only to conceptual strength – i.e., where on the distinctiveness scale "HyperDrive" falls.[4] Both the conceptual and the commercial strength of "HyperDrive" remain at issue.

### B. Third-party use is relevant.

The Court did not hold that third-party use was irrelevant to strength, but instead that (as to the summary judgment determination) the third-party use did "not *significantly* reduce[]" the strength of the '707 Mark.[5] Sanho makes two arguments:

---

[3] *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 948 (11th Cir. 2023) ("We have described two steps in assessing the strength of a mark: conceptual strength and commercial strength.")

[4] ECF 542, at 2 ("Marks are categorized as 'strong' or 'weak' depending on their distinctiveness."); *see FCOA*, 57 F.4th at 949 (explaining that conceptual strength is measured by "placing a mark on the sliding scale of" distinctiveness).

[5] ECF 513, at 29.

that third-party marks using "hyper" are wholly irrelevant because they are not the "entire name;" and that other "hyperdrives" are irrelevant because they are used with "unrelated products." Both arguments fail.

Sanho's reliance on *Sovereign Military* is misplaced.[6] While that opinion suggests that the significance of third-party use depends on the entire name used by the third-party, it does not support an argument that other uses of "hyper" are irrelevant. The 11th Circuit in *Sovereign Military* was evaluating the Plaintiff's 13-word trademark (together with its other marks totaling a further 15 words) against a defendant's mark involving a different combination of 11 of those words, under the Circuit's prior decision in *Safeway*. In *Safeway*, the 11th Circuit stated that the "entire name a third party uses" is important because "users that incorporate the word Safeway *along with distinctive additional words*…may not diminish the strength of the Safeway mark."[7] The third-party uses of "hyper" (and its phonetic equivalents) do not have "distinctive additional words." To the contrary, the dominant portions in the '707 Mark and all the third-party uses are "hyper."[8] The *Sovereign Military*

---

[6] *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John*, 809 F.3d 1171, 1186 (11th Cir. 2015); ECF 542 at 3 n.6.

[7] *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1165 (11th Cir. 1982) (emphasis added).

[8] *See Frehling Enters. Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999) (holding "the overall impression the marks create is one of striking similarity--they are strikingly similar in sight, sound, and meaning" in view of the "dominant

decision is of minimal guidance to the present case, and this evidence remains relevant to the strength of the '707 Mark.

As for the third-party uses of "hyperdrive," this Court did not hold as a matter of law that the registrations were irrelevant. Again, Sanho ignores that in ruling on KaiJet US's summary judgment motion, the Court was required to weigh all evidence and inferences in the light most favorable to Sanho.[9] The Court ruled that a reasonable jury *could* find that the third-party registrations are for unrelated goods and therefore would not affect the strength of Sanho's mark. But again, this is a fact question reserved for the jury.[10] And how related (or unrelated) the goods are goes to the weight of the evidence, not its admissibility.[11]

---

portion" of the marks being the same.); *Playnation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1168 (11th Cir. 2019) (affirming that the two marks are substantially similar because "[t]he dominant portion of both marks is an image of a large gorilla and the word 'gorilla.'").

[9] *Underwood*, 11 F.4th at 1327.

[10] *Royal Oak Enters., LLC v. Nature's Grilling Prods., LLC*, No. 1:10-CV-2494-JEC, 2011 U.S. Dist. LEXIS 133856, at *7 (N.D. Ga. Nov. 21, 2011) ("Whether there is a likelihood of confusion is a question of fact, determined by weighing the following factors: (1) strength or distinctiveness of the allegedly infringed mark…").

[11] *Safeway*, 675 F.2d at 1165 (finding that twenty marks containing "Safeway" did not "***significantly*** diminish the strength of the [plaintiff's] mark" because the other marks were used by "businesses not closely related" to the plaintiff's business they also included "relatively precise description of the goods or services the business provides" in their names.).

**C. Sanho bears the burden at trial to prove the strength of its mark.**

Sanho claims that because there is no relevant evidence of third-party usage, KaiJet Defendants should be precluded from arguing that the '707 Mark is weak. As shown above, the third-party use evidence should not be excluded, but even if it were, Sanho would still be wrong. It is Sanho's burden to prove there is a likelihood of confusion.[12] Although the '707 Mark is registered, there is no presumption that it is commercially strong.[13] This is a jury question, and KaiJet Defendants must be allowed to present evidence and argument to counter Sanho's contention that the mark is strong.

## II.    MIL NO. 2: Evidence of KaiJet Defendants' prior use of "Ultra" is relevant to their intent in adopting the term "Ultradrive."

Sanho's Motion is correct that KaiJet Defendants do not intend to advance a priority of use defense. Instead, KaiJet Defendants will present evidence that their products were branded with the prefix "ULTRA" as early as 2012, to prove that the use of "Ultradrive," "ULTRADRIVEMINIDOCK®," and "ULTRADRIVE KIT®" was merely a continuation of prior branding, not an intentional copy of Sanho's mark. As KaiJet Defendants' intent is one of the factors for likelihood of confusion, this evidence is unquestionably relevant and admissible. Sanho's suggestions that

---

[12] *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300-01 (11th Cir. 2001).

[13] *FCOA*, 57 F.4th at 950 (a registered mark's strength "can be rebutted by looking to the … commercial strength.").

the Court give some form of limiting instruction is premature.

## III.    MIL NO. 3: Evidence of Ultradrive trademark registrations is relevant.

Sanho argues that the Court should give "no weight" to the fact that trained trademark examiners determined there was no likelihood of confusion between three registrations containing "ULTRADRIVE" and Sanho's "HyperDrive" mark. Sanho's sole support is a single footnote in a non-controlling case, where "*little weight*" was given to evidence that the trademark examiner found no likelihood of confusion.[14] "Little weight" is different from "no weight." Further, other courts in this district have given weight to such evidence.[15]

Sanho next argues that the "Ultradrive" Trademark Registration No. 2,791,539 ("'539 Mark") is irrelevant because it was not registered for USB-C hubs (though neither was the '707 Mark).[16] But note that Sanho's '707 Mark registration

---

[14] ECF 542, at 8 (citing *Hi-Tech Pharms., Inc. v. Nutrition Res. Servs., Inc.*, No. 1:23-cv-5536-TCB, 2024 WL 649235, at *6 n.3 (N.D. Ga. Feb. 15, 2024)).

[15] *See, e.g., Carling Brewing Co. v. Philip Morris, Inc.*, 297 F. Supp. 1330, 1337 (N.D. Ga. 1968) ("While the various Patent Office decisions referred to are not binding upon this court, they are certainly entitled to the most respectful consideration because of the Patent Office's day-to-day expertise in adjudicating cases wherein the ultimate question decided is the question of "likelihood of confusion" as that term is employed in various parts of the Lanham Act."); *Miss Universe, Inc. v. Little Miss U.S.A., Inc.*, No. C80-1364A, 1981 U.S. Dist. LEXIS 17254, at *6 n.6 (N.D. Ga. June 19, 1981) ("At the same time, because of the Patent Office's expertise in this field, the court, however, is not inclined to ignore or discount its findings.").

[16] ECF 542, at 9.

includes, in the description of goods, "components for … MP3 players" while "Ultradrive" is registered for "electric and digital sound equipment for home and professional use, namely, sound amplifiers, audiospeakers and audio mixers."[17] The governing question is whether the goods are sufficiently related that a consumer could believe that the goods emanate from a single source. For example, the 11th Circuit has held that wine and brandy could come from a single producer, as could decorative furniture made of exotic materials (e.g., marble) and ready-to-assemble cabinets for electronic equipment.[18] Audiospeakers ('539 Mark), components for MP3 players ('707 Mark, though not used), and USB-C hubs (what Sanho actually uses the '707 Mark on) are all computer accessories, used in digital audio applications. Therefore, "it is not unreasonable to fathom that the goods emanate from the same source."[19]

Lastly, Sanho moves to exclude KaiJet Defendants' registered trademarks as irrelevant, even though Sanho is accusing these registered trademarks as infringing the '707 Mark. <u>The Lanham Act itself</u> states that KaiJet Defendants' trademark registrations are admissible:

> Any registration … of a mark registered on the principal register provided by this chapter and owned by a party to an action ***shall be admissible in evidence*** and shall be prima facie evidence of the validity

---

[17] ECF 452-1; Ex. 1 ('539 Mark certificate).

[18] *Frehling*, 192 F.3d at 1338.

[19] *Id*.

of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration.[20]

Sanho makes an "accusation" that KaiJet Taiwan's trademark counsel did not inform the USPTO of this case.[21] However, Congress does not impose a disclosure duty upon parties to litigation, but upon the Clerk of Court, and then only in cases where, as here, injunctive relief is sought.[22] Therefore, by the plain wording of the Lanham Act itself, KaiJet Defendants' trademark registrations are admissible.

Moreover, these registrations are very relevant to the question of the Defendants' intent in selecting the trademarks. Intent is one factor the jury will be instructed to consider in analyzing Sanho's contention that a likelihood of confusion exists between the Sanho '707 Mark and the accused marks. These registrations demonstrate that KaiJet Defendants had a good faith belief that their use of "ULTRADRIVE KIT" and "ULTRADRIVEMINIDOCK" did not infringe the '707

---

[20] 15 U.S.C. § 1115(a) (emphasis added); *see also Pilot Corp. of Am. v. Fisher-Price, Inc.*, 501 F. Supp. 2d 292, 302-03 (D. Conn. 2007) ("In addition to the *Polaroid* factors, the court should also consider the fact that the United States Patent and Trademark Office has approved Fisher-Price's 'Doodle Pro' mark for publication and likely registration, which means that the Patent and Trademark Office has determined that the use of the 'Doodle Pro" mark is not likely to cause confusion. That approval is 'a factor, which, while not conclusive, is entitled to great weight.'") (quoting *Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir. 1971)).

[21] ECF 542, at 9.

[22] 15 U.S.C. § 1116(c); *see* ECF 6.

Mark. It would be highly prejudicial to the KaiJet Defendants to exclude the fact that trained examiners at the USPTO, concluding no likelihood of confusion exists, approved the registrations.

## IV.    MIL NO. 4: Evidence that "Hyper" and "Ultra" trademarks coexist for the same classes of goods is relevant.

As stated above, the 11th Circuit compares the dominant portions of marks in determining if two marks are similar.[23] The evidence shows that trained trademark examiners at the USPTO determined that "hyper" and "ultra" marks for the same goods – and that were otherwise identical – were not likely to cause confusion and therefore were registered. For example, the USPTO determined that "HYPERFLOW" and "ULTRAFLOW" could both be registered for control software.[24] While Sanho again argues that the Court should ignore the USPTO, the law is clear that the actions of trained trademark examiners are to be given at least some weight.[25] Ay potential prejudice can be forestalled by the Court's limiting instruction that the jury need not defer to USPTO decisions.

---

[23] *See Frehling*, 192 F.3d at 1337 (holding "the overall impression the marks create is one of striking similarity--they are strikingly similar in sight, sound, and meaning" in view of the "dominant portion" of the marks being the same.); *Playnation Play Sys.*, 924 F.3d at 1168 (affirming that the two marks are substantially similar because "[t]he dominant portion of both marks is an image of a large gorilla and the word 'gorilla.'").

[24] ECF 521-1, at 19.

[25] *Supra* Section III, nn.14, 15 & 20.

## V.    MIL NO. 5: KaiJet Defendants have not waived the issue of Sanho's lack of standing.

Sanho misrepresents the timeline of events to paint KaiJet Defendants as being in the wrong, going as far as to claim KaiJet Defendants have "no excuse for remaining silent during the last three years."[26] But it is Sanho who is in the wrong. Until December 2023, Sanho asserted it was the owner of the design patents and the '707 Mark. As Sanho now admits, that stopped being true in 2022.[27] Despite having a continuing duty to supplement discovery and disclose relevant documents, including a specific order via minute entry from this Court to "produce acquisition-related documents that identify or reference the intellectual property at issue in this case," Sanho **never** produced to the KaiJet Defendants its assignment of intellectual property to Targus.[28]

Instead, KaiJet Defendants found the assignment document on the USPTO website.[29] This case had been stayed pending resolution of Sanho's appeal of the PTAB Decision invalidating Sanho's '429 utility patent. To lift the stay and restore this action to the trial calendar, Sanho presented Defendants with a covenant not to sue, but during due diligence, the KaiJet Defendants determined that Sanho's

---

[26] ECF 542, at 14.

[27] ECF 542-1, at ¶ 2.

[28] ECF 285; Declaration of Ryan P. Gentes in support of KaiJet Defendants' Opposition to Plaintiff's Omnibus Motion *in Limine* ("Gentes Dec."), at ¶ 3.

[29] Gentes Dec., at ¶ 4.

covenant would be ineffective, because Sanho had assigned the IP assets to Targus in November 2022. It was not until December 22, 2023, over a year after discovery had ended, that Sanho finally produced the purported "Exclusive Intellectual Property License Agreement" between Hyper Products (f/k/a Sanho) and Targus (the "License Agreement").[30] These indisputable facts show that it is Sanho who ignored its duty and remained silent for months about the ownership of the IP at issue.

Sanho also ignores, or does not realize, that the assignment to Targus is not its only standing issue. To have standing to bring a patent infringement suit, all co-owners of the patent must join the suit.[31] The '875 Patent originally listed Zhouwen Liao as the sole inventor.[32] Zhouwen Liao assigned the '875 Patent to GoPod, then GoPod assigned it to Sanho, and eventually the '875 Patent was assigned to Targus on November 10, 2022.[33] But on October 14, 2022, a certificate of correction was granted, naming Daniel Chin as a co-inventor.[34] This made Mr. Chin a co-owner as of that date.[35] There is no evidence that Daniel Chin ever assigned his newfound

---

[30] ECF 420-2; Gentes Dec., at ¶ 5.

[31] *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1378 (Fed. Cir. 2020) ("'An action for infringement,' moreover, '*must join as plaintiffs* all co-owners.'") (quoting *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998)).

[32] ECF 89-1, at 2.

[33] Ex. 2 (patent assignments).

[34] Ex. 3 (certificate of correction).

[35] *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016) ("When multiple inventors are listed on the face of a patent, 'each co-owner presumptively

rights in the '875 Patent. It is a similar story with the '616 Patent: Zhouwen Liao was added as a co-inventor (and therefore co-owner) through a certificate of correction,[36] but there is no evidence that he ever assigned his ownership rights to either Sanho or Targus. Importantly, Sanho failed to disclose these certificates of correction – which issued in 2022 – until **last month**.[37] Sanho cannot rely on a strategy of belated disclosures to avoid its standing issues.

Sanho seeks to use its strategy of belated disclosures to its advantage by arguing that KaiJet Defendants "waived their right to challenge standing" because they failed to raise standing in their pleadings. Sanho relies on dictum from the 2005 order in *Doctors Hospital* to suggest that a defendant must affirmatively plead lack of standing.[38] But that order is explicit in confining its reach to the specific and unusual facts of that case: "[t]his court concludes that lack of standing as a defense *in the instant action* falls within the scope of Federal Rule of Civil Procedure 8(c),

---

owns a pro rata undivided interest in the entire patent, no matter what their respective contributions.'") (quoting *Isr. Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007)); *Shum v. Intel Corp.*, 629 F.3d 1360, 1371 (Fed. Cir. 2010) (jury held that Shum was a joint inventor of five patents, and was therefore named a co-owner despite the other inventor having sold the patents to Intel for over $400M).

[36] Ex. 4 (certificate of correction).

[37] ECF 527-16, PTX-17 & PTX-19 (no bates number or source identified); Gentes Dec., at ¶ 6.

[38] ECF 542 at 12 & n.38; citing *Drs. Hosp. of Augusta, Inc. v. Horton Homes, Inc.*, No. 1:02-CV-3165-CAP, 2005 U.S. Dist. LEXIS 57516, at *11 (N.D. Ga. Jan. 27, 2005).

and Horton Homes was required to plead this challenge as an affirmative defense."[39]

The court explained the unique circumstances warranting waiver, as standing was not challenged until after the statute of limitations had run, thus foreclosing the plaintiff from taking action to remedy the standing issue.

In a different matter, this Court has rejected Sanho's argument that a challenge to standing can be waived:

> AIG responds, first, that Pegatron waived this standing argument as to Successor's claims because it did not plead standing as an affirmative defense. Standing, however, implicates the Court's subject matter jurisdiction and cannot be waived.[40]

Standing to sue is an element of a plaintiff's prima facie case, and upon which the plaintiff bears the burden of proof. That is, lack of standing is not an affirmative defense.[41]

---

[39] *Id.*, emphasis supplied.

[40] *AIG Specialty Ins. Co. v. Pegatron Corp.*, No. 1:18-cv-03701-SDG, 2021 U.S. Dist. LEXIS 177057, at *7 (N.D. Ga. Sept. 17, 2021) (citing *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).") (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991))); *see also Fla. Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999) ("every court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates.") (citing *FW/PBS, Inc. v. Dallas*, 110 S. Ct. 596, 607-08 (1990) (partially overruled on other grounds)).

[41] *Fishman v. Tiger Nat. Gas Inc.*, No. C 17-05351 WHA, 2018 U.S. Dist. LEXIS 159425, at *15-16 (N.D. Cal. Sept. 18, 2018) ("Because a plaintiff must plead and ultimately prove standing, lack of standing is not an affirmative defense under

Sanho tries to save its waiver argument by casting its lack of standing as "prudential" in nature, which it argues can be waived.[42] But the Supreme Court has clarified that the "'class of persons who could maintain a private damages action under'" a "legislatively conferred cause of action" was a matter of "statutory, not 'prudential,' considerations."[43] The question is whether Congress "conferred [a] cause of action" that "encompasses [Sanho's] claim."[44] Here, Congress required that patent infringement claims be brought by the patent owner,[45] and that trademark infringement claims be brought by the trademark registrant.[46] Sanho has not been the patent owner or trademark registrant for the asserted patents and trademark since 2022. Sanho cannot avail itself of statutory causes of action that Congress explicitly barred Sanho from maintaining.

---

federal law.") (quoting *J & J Sports Prods., Inc. v. Vizcarra*, No. 11-1151 SC, 2011 U.S. Dist. LEXIS 109732, at *6 (N.D. Cal. Sept. 27, 2011)); *United States v. Acad. Mortg. Corp.*, No. 16-cv-02120-EMC, 2020 U.S. Dist. LEXIS 226154, at *11 (N.D. Cal. Dec. 2, 2020).

[42] ECF 542, at 12.

[43] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 529, 532 (1983)); *see also D.H. Pace Co. v. OGD Equip. Co., LLC*, 78 F.4th 1286, 1292 n.5 (11th Cir. 2023).

[44] *Lexmark*, 572 U.S. at 127.

[45] 35 U.S.C. § 289 ("…shall be liable to the [patent] owner."); *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002).

[46] 15 U.S.C. § 1114 ("…shall be liable in a civil action by the registrant.").

Further, KaiJet Defendants denied Sanho's claim of intellectual property ownership (and therefore standing) as an issue in its pleadings. In their respective Answers to Sanho's most recent amended complaint – where Sanho first disclosed the transfer and back-license to the relevant intellectual property – KaiJet Defendants denied that Sanho is the exclusive licensee of the relevant intellectual property with the right to sue for infringement.[47] Prior to that, KaiJet Defendants had denied Sanho's allegations of ownership of the intellectual property.[48] Sanho cannot argue that it is surprised that its rights to the intellectual property, and therefore standing and statutory ability to bring related claims in this suit, have been disputed by KaiJet Defendants. Sanho has had notice for over four years.

In sum, standing is an issue that can be raised at any time, even at trial.[49] Neither has Sanho identified any law to support that the statutory requirements of ownership can be waived.[50] It is Sanho's fault that standing is only now being

---

[47] ECF 422, at ¶ 15; ECF 423, at ¶ 15.

[48] ECF 115, at ¶¶ 31-33; ECF 189, at ¶¶ 31-33.

[49] *Citibank v. Pietranico*, No. 1:11-CV-1802-SSC, 2012 U.S. Dist. LEXIS 193289, at *19-20 (N.D. Ga. Aug. 17, 2012) ("standing may be raised at any time by either the parties or the Court") (quoting *Insect Sci. Res., LLC v. Timberline Fisheries Corp.*, No. 1:07-CV-2662-JEC, 2010 U.S. Dist. LEXIS 9934, at *7 (N.D. Ga. Feb. 3, 2010)).

[50] Sanho cites to a First Circuit case for the proposition that "statutory" standing can be waived. ECF 542, at 14 n.47. But the holding there was that statutory standing was waived **on appeal** "because the issue was not raised below." *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 53 n.3 (1st Cir. 2014). The other case Sanho cites is a Northern District of Texas case, but that court held that the statutory requirement

addressed, as they withheld crucial documents until well after discovery ended, including providing certificates of correction last month. KaiJet Defendants were deprived of the opportunity to explore these documents and issues during discovery, so now they must be explored at trial. KaiJet Defendants must be able to present evidence and argument related to Sanho's lack of standing.

## VI.    MIL NO. 6: Sanho likely lacks standing.

In this motion, Sanho mischaracterizes the question at issue. The issue is not whether Targus is an indispensable party under Rule 19(b), but whether Sanho has standing to bring its patent and trademark claims. For the reasons set forth in the foregoing section, this question must be explored at trial.

Targus is currently the owner of all the intellectual property being asserted in this case.[51] As explained above, both the Patent Act and Lanham Act statutorily require the owner to be the party asserting its patent and trademark, respectively.[52] Therefore, Sanho can only have standing if it is the exclusive licensee of the patents and trademarks. This requires that the license from Targus transferred "all substantial rights" to Sanho, such that Sanho essentially owns the patents and

---

of trademark ownership was "waived by Defendant by agreeing to the Consent Judgment." *I & I Hair Corp. v. Beauty Plus Trading Co.*, No. 3:18-cv-03254-M, 2019 U.S. Dist. LEXIS 226586, at *9 (N.D. Tex. Sept. 13, 2019).

[51] ECF 542-1, at ¶ 2.

[52] *Supra* Section V, nn.45 & 46.

trademark.[53] As explained before, Sanho did not disclose that it assigned ownership of the relevant IP to Targus until December 2023, well over a year after discovery had closed.[54] Sanho's unexcused late disclosure deprived KaiJet Defendants of the opportunity to seek discovery on the assignment or the license agreement. For example, KaiJet Defendants still do not know when the "exclusive" license agreement was written or signed.[55] Neither were KaiJet Defendants given the chance to explore whether Sanho and Targus abide by the license agreement or act in a manner that reflects a truly "exclusive" license agreement as would be required by the Patent Act and Lanham Act. Sanho's dereliction of its duty to produce these documents in a timely manner should not also deprive KaiJet Defendants of being able to explore these issues at trial.

---

[53] *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007); *Sream, Inc. v. LB Smoke Shop, Inc.*, No. 16-CV-24936-PCH, 2017 U.S. Dist. LEXIS 97406, at *9 (S.D. Fla. June 23, 2017) ("'a truly exclusive licensee, one who has the right even to exclude his licensor from using the mark[,] is equated with an assignee'" for the purpose of bringing suit to enforce the mark.") (quoting *Fin. Inv. Co. (Bermuda) v. Geberit AG*, 165 F.3d 526, 531-32 (7th Cir. 1998)).

[54] ECF 304 ("Close of Fact Discovery…July 29, 2022").

[55] *See* ECF 542-1 (Frazier's declaration is silent on the dates, as is the license agreement itself.).

**VII.    MIL NO. 7: KaiJet Taiwan will not contravene this Court's Summary Judgment Order**

KaiJet Taiwan acknowledges that the Court ruled that its "actions in the United States gave rise to liability under U.S. intellectual property law."[56] Accordingly, KaiJet Taiwan will not argue or present evidence at trial regarding the extraterritoriality of its sales of the accused products. KaiJet Taiwan reserves the right to appeal the Court's order on this issue and to make an offer of proof at trial.

**VIII.    MIL NO. 8: KaiJet Defendants will not mention the withdrawn and dismissed claims to the jury.**

KaiJet Defendants do not oppose this motion *in limine*.

**IX.    MIL NO. 9: KaiJet Defendants will not argue false marking.**

The Patent Act only allows a patent owner to recover damages after the alleged infringer has notice.[57] More specifically, the patent owner can put the alleged infringer on either "constructive notice" or "actual notice."[58] Constructive notice requires the patent owner to properly mark its product with the patent number.[59] "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."[60] Therefore, whether the

---

[56] ECF 513, at 55.

[57] 35 U.S.C. § 287.

[58] *Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020).

[59] *Id.*

[60] *Id.* (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994)).

HyperDrive practices the asserted design patents and were properly marked is relevant to whether KaiJet Defendants were put on constructive notice of their alleged infringement.

If Sanho stipulates that it cannot rely on constructive notice and must prove actual notice, then KaiJet Defendants do not oppose this motion *in limine*. Absent that stipulation, KaiJet Defendants must be allowed to show that Sanho did not mark patent numbers or trademark registration on the Sanho product at issue, such that any recovery of profit Sanho may obtain is limited to the date(s) of actual notice.

## X.    MIL NO. 10: KaiJet Defendants will only introduce evidence or argument of Sanho's fake or paid-for product reviews if Sanho relies on product review evidence.

KaiJet Defendants acknowledge that their false advertising counterclaims were denied. But if Sanho presents or refers to customer reviews (or aggregate average reviews), or the content of such reviews at trial, then KaiJet Defendants must be able to present evidence that Sanho paid for reviews, created fake reviews, and had unfavorable reviews removed. The relevance of such evidence is clear, as it would discredit any arguments Sanho presents that rely on customer reviews.

## XI.    MIL  NO.  11:  Sanho's  purported  evidence  of  actual  confusion  is inadmissible.

KaiJet Defendants filed motions *in limine* to exclude Sanho's Trial Exhibits 78, 92, and 126[61] – the very same exhibits that Sanho's motion *in limine* argues should be admitted.[62] Accordingly, KaiJet Defendants incorporate the arguments of its own motions *in limine*.[63]

Sanho argues that as a rule, evidence of consumer confusion falls under the state of mind and present sense impression exceptions to hearsay. There is no such broad rule.[64] This is clear from Sanho's citations, which amounts to a few non-controlling district court cases.[65] Instead, courts must make an evidentiary ruling on a case-by-case basis as to whether the evidence constitutes inadmissible hearsay. Further, Federal Rule of Evidence 403 requires the court to weigh the probative value of the evidence against its risk of prejudice.

**Sanho's Trial Exhibit No. 78**: This exhibit should be excluded as inadmissible hearsay. Sanho's own argument demonstrates why – Sanho assumes

---

[61] ECF 544, MIL Nos. 5-7.

[62] ECF 542, at 22-23.

[63] ECF 544, MIL Nos. 5-7.

[64] *See, e.g.*, *Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) ("vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion.'")

[65] ECF 542, at 21 n.72 & 22 n.74.

that the customer "(mistakenly) believed" the device he bought was a "HyperDrive" and that he contacted "j5…for support."[66] But Sanho has no way of knowing that this is true, as they never sought testimony from the anonymous reviewer. The jury will not know if the reviewer bought a HyperDrive product, or an Ultradrive (or neither). The jury will not know if the reviewer actually contacted "j5," or what the reviewer understood "j5" to be. Without testimony from the reviewer, the facts are too unclear for this evidence to reveal what the reviewer was thinking when he wrote that review. Sanho cannot possibly lay an adequate foundation for admission, and this hearsay evidence cannot be admitted under the present sense impression or state of mind exceptions.

For the same reasons, the probative value of this evidence is minimal – the jury cannot determine from this exhibit alone whether the reviewer was confused due to any purported similarities in the product names, or if some other circumstances explain the review. The substantial risk of prejudice is clear, a juror could mistakenly take this review at face value and believe (as Sanho will argue) that the reviewer must have bought an Ultradrive but thought that the HyperDrive was the same thing. Therefore, this evidence should also be excluded under Federal Rule of Evidence 403.

---

[66] ECF 542, at 22.

**Sanho's Trial Exhibit 92:** This email likewise comprises inadmissible hearsay that does not fall under either the present sense impression or state of mind exceptions. Simply put, it is impossible to know what "Ms. Dillion" was thinking when she sent this email. The attachment to the email (which Sanho chose to not include in its trial exhibit)[67] shows that Ms. Dillion purchased a Hyperdrive product (SKU: 6109303) on January 7, 2018.[68] Per her email, Ms. Dillion had tried to return the previously purchased HyperDrive to Best Buy, but was told it was "beyond their scope of return or assistance and that [Ms. Dillion] needed to contact [Sanho] directly."[69] That is apparently what Ms. Dillion did: she contacted Sanho regarding the Hyperdrive (SKU 6109303) that she had purchased on January 7, 2018. She did not contact Sanho regarding the Ultradrive she purchased to replace the broken HyperDrive. Courts have recognized that emails such as this reflect no more than "inattentiveness on the part of the…sender."[70] Therefore, this email does not reflect

---

[67] ECF 542-4.

[68] ECF 490-20 ("Original Tran … 01/07/18 … SKU: 6109303").

[69] ECF 542-4.

[70] J. Thomas McCarthy, Trademarks & Unfair Competition, § 23.2, p.52, n.1 (2d ed. 1984); *Duluth News-Tribune*, 84 F.3d at 1098 ("we find such evidence [of misdirected mail and phone calls] to be de minimis and to show inattentiveness on the part of the caller or sender rather than actual confusion."); *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 636 (6th Cir. 2002) (holding that misdirected emails were "weak" evidence of actual confusion because of the possibility that the "consumers...were inattentive or carless, as opposed to being actually confused.").

Ms. Dillion's state of mind or present sense impression about any confusion between Sanho and KaiJet Defendants – it merely reflects her inattentiveness.

For the same reasons detailed above, any probative value is substantially outweighed by the risk of prejudice. Without testimony from Ms. Dillion, the jury has no ability to determine why she wrote "Ultradrive" in her email. Maybe she mixed up her receipts. Maybe she wrote the email quickly and was not paying attention. The jury cannot determine if Ms. Dillion was confused because of any alleged similarities between "Ultradrive" and "HyperDrive," if she intended to convey that she bought an Ultradrive product because the HyperDrive was poor quality, if she just mixed up which of her USB-C hubs she was trying to get fixed, or if she just was not paying close attention to the product name. Without any indication of why, the probative value is greatly diminished, "as courts have expressly 'rejected anecdotal evidence of actual confusion when the proponent did not show that a misleading representation by the defendant, as opposed to some other source, caused a likelihood of confusion.'"[71] The limited, if any, probative value is substantially outweighed by the risk of prejudice. Sanho's brief itself makes the risk of prejudice clear, as they argue the email shows that "[t]he customer is under the

---

[71] *Tarsus Connect, LLC v. Cvent, Inc.*, 452 F. Supp. 3d 1334, 1356 (N.D. Ga. 2020) (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 457 (5th Cir. 2017)).

impression that Sanho was the source of his 'Ultradrive.'"[72] But as explained above, Ms. Dillion contacted Sanho about the Hyperdrive she had purchased and tried to return. The risk that the jury confuses the evidence just as Sanho did substantially outweighs the minimal (if any) probative value, warranting exclusion under Fed. R. Evid. 403.

**Sanho's Trial Exhibit 126:** Whether this evidence is hearsay or not is a red herring – regardless, it is clearly irrelevant. The email is dated June 14, 2017.[73] Per Sanho's own words, KaiJet US "unveiled" its first accused "Ultradrive" product on October 19, 2017.[74] Therefore, although Mr. Budruk used the wrong name, he could not have been confused as to any affiliation between KaiJet Defendants' products – which were not available nor advertised until months later – and Sanho. Therefore, this evidence should be excluded as irrelevant.

Even if this evidence had some quantum of probative value, the substantial risk of the jury misinterpreting such evidence necessitates exclusion. Sanho admits it plans to present this email as evidence of actual confusion.[75] Actual confusion

---

[72] ECF 542, at 22.

[73] ECF 542-5.

[74] ECF 470-1, at 12 ("On October 19, 2017, Kaijet unveiled its counterfeit HyperDrive®, called the JCD382 UltraDrive").

[75] ECF 542, at 23.

evidence is given the most weight of all the likelihood of confusion factors,[76] and therefore allowing Sanho to present this evidence with the purpose of misleading the jury into believing it evidences actual confusion poses a great risk of prejudice to KaiJet Defendants. Therefore, this evidence should alternatively be excluded under Federal Rule of Evidence 403.

Respectfully submitted, this 25th day of June, 2024.

/s/ *Ryan P. Gentes*
Ryan P. Gentes
GA Bar No. 421695
Robert A. Madayag, III
GA Bar No. 123699
William B. Dyer III
GA Bar No. 236915
Steven Philbin
GA Bar No. 516724
James Avery Rollins
GA Bar No. 776439
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com
Email: robm@leehayes.com
Email: bill.dyer@leehayes.com
Email:  steven.philbin@leehayes.com
Email:  james.rollins@leehayes.com

Robert J. Carlson
WSBA Number 18455
*Admitted Pro Hac Vice*

---

[76] *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016).

LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: carlson@leehayes.com

Rhett V. Barney
WSBA Number 44764
*Admitted Pro Hac Vice*
Johanna Tomlinson
WSBA Number 57582
*Admitted Pro Hac Vice*
LEE & HAYES, P.C.
601 W. Riverside Ave., Ste. 1400
Spokane, WA 99201
Telephone: (509) 324-9256
Email: rhettb@leehayes.com
Email:
johanna.tomlinson@leehayes.com

*Attorney for Defendants*
*KaiJet Technology International*
*Limited, Inc. and KaiJet Technology*
*International Corporation*

26

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2024, I filed a true and correct copy of the foregoing document with the CM/ECF filing system of this Court, which will serve an electronic copy to all attorneys of record.

/s/ *Ryan P. Gentes*

Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com

*Attorney for Defendants*
*KaiJet Technology International Limited, Inc.*
*and KaiJet Technology International*
*Corporation*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

/s/ *Ryan Gentes*

Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.

*Attorney for Defendants*
*KaiJet Technology International*
*Limited, Inc. and KaiJet Technology*
*International Corporation*