IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SANHO CORPORATION,
   Plaintiff,

v.

KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., *et al.*,
   Defendants.

Civil Action No.
1:18-cv-05385-SDG

**OPINION AND ORDER**

This matter is before the Court on the parties' cross-motions to exclude expert witness testimony: Plaintiff Sanho Corporation's motion to exclude the expert testimony of Antonio R. Sarabia II [ECF 521], and Defendants Kaijet Technology International Limited, Inc. and Kaijet Technology International Corporation's (the Kaijet Defendants') motion to exclude the expert testimonies of R. Jacob Baker and Peter Bressler [ECF 526]. Undersigned heard oral argument on the parties' cross-motions during the pretrial conference held on July 2, 2024, and orally ruled from the bench, granting in part and denying in part both motions.[1] This Opinion & Order further explains the reasoning for those rulings.

**I.    LEGAL STANDARD**

Expert testimony admissibility is governed by Federal Rule of Evidence 702, as well as the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509

---

[1]    *See* ECF 566.

1

U.S. 579 (1993), and its progeny. The Eleventh Circuit has "distilled" Rule 702 and *Daubert*'s guidance into an analysis of the following three factors:

(1) *Qualification* of the expert to competently testify;

(2) *Reliability* of the expert's methodology; and

(3) *Helpfulness* of the expert's testimony to the jury.

*Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850–51 (11th Cir. 2021). "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Even if expert evidence is admissible under Rule 702 and *Daubert*, however, it may still be excluded under Federal Rule of Evidence 403 if its "probative value … is substantially outweighed by its potential to confuse or mislead the jury." *Id.* at 1263. The Rule 403 analysis is particularly critical for expert testimony, given the "talismanic significance" such evidence can assume in the jury's mind. *Id.*

## II. DISCUSSION

### A. Sanho's Motion to Exclude Sarabia

Sarabia has been tendered by the Kaijet Defendants as an expert on the issues of trademark, trade dress, and copyright infringement.[2] Sanho has moved to exclude Sarabia's testimony, in whole or in part, for the following reasons:

---

[2] ECF 521-1, at 11–12.

1. He is a lawyer who is unqualified to testify about electronics products packaging;[3]

2. His methodology of tallying up visual differences is unreliable and unhelpful;[4]

3. His application of the wrong legal standard is unhelpful;[5]

4. His reference to irrelevant evidence is unhelpful;[6]

5. His testimony about Sanho's conduct in China is irrelevant;[7] and

6. His testimony about returning products to Best Buy is fact-witness hearsay.[8]

The Court considers these reasons in turn.

### 1. Sarabia Is Unqualified to Testify About Electronics Products Packaging: GRANTED IN PART and DENIED IN PART.

Sanho argues that Sarabia is unqualified because he is not a package designer but a lawyer, and lacks relevant experience both with consumer electronics and with copyright and trade dress. The Court largely disagrees. Sarabia's 35-year experience in the development and protection of visual design elements qualifies him as an expert on issues in this case relating to the

---

[3]   ECF 521, at 8–9.

[4]   *Id.* at 11–15.

[5]   *Id.* at 15–18.

[6]   *Id.* at 18–25.

[7]   *Id.* at 25–27.

[8]   *Id.* at 27–28.

protectability of visual design elements.[9] However, the Court agrees with Sanho that Sarabia's legal background is irrelevant and potentially prejudicial. Defendants are accordingly precluded, in accordance with their representation at the pretrial conference,[10] from eliciting testimony relating to Sarabia's legal knowledge, training, or experience.

### 2. Sarabia's Quantitative Methodology Is Unreliable and Unhelpful: DENIED.

Sanho argues that Sarabia's methodology, which it characterizes as the mere tallying up of obvious visual differences between two designs, is "unscientific and unhelpful."[11] However, the fact that a jury could, in theory, quantify differences between two designs does not necessarily render Sarabia's testimony here inadmissible.

Instructive here is *United States v. Brown*, a case referenced by Sanho in briefing a separate issue.[12] 415 F.3d 1257 (11th Cir. 2005). *Brown* concerned the admissibility of experts whose testimony that two chemical compounds were substantially similar relied solely "on visual comparisons of the molecular models combined with expert knowledge of chemistry." *Id.* at 1267. The lower court

---

[9] ECF 521-1, at 6.

[10] ECF 566.

[11] ECF 521-1, at 14.

[12] ECF 541, at 19 n.37.

admitted the experts because it found, based on the experts' own testimony, that this visual-comparison methodology was generally accepted and accordingly reliable, and the Eleventh Circuit affirmed. *Id.* at 1268.

Here, like in *Brown*, the issue is the admissibility of an expert's testimony on the similarity between two objects. Here, like in *Brown*, the expert's analysis relies solely on visual comparisons between the objects, combined with the expert's knowledge of the relevant field. Here, like in *Brown*, the expert has testified that his methodology is generally accepted in the industry.[13] And here, like in *Brown*, the Court credits the expert's testimony as to general acceptance and accordingly concludes that the expert's testimony is reliable. Sarabia is permitted to testify that the number of differences that he tallied between the parties' designs supports the inference of their dissimilarity.

### 3. Sarabia's "Secondary Meaning" Analysis Applies an Incorrect Statement of Law: GRANTED.

Sanho argues that Sarabia's analysis of whether Sanho's "Hyper" and "HyperDrive" trademarks have acquired secondary meaning is inconsistent with

---

[13] Sarabia has declared in a supplemental report that the methods used in his report are the same "processes and methods" through which businesses evaluate differences in product packaging. ECF 543-1, ¶ 5. Though the Court agrees with Sanho that the supplemental report is untimely filed, ECF 546, at 2, the Court in its discretion considers it in evaluating Sarabia's reliability.

Eleventh Circuit law. The Court agrees. Courts in the Eleventh Circuit determine secondary meaning of a mark by looking to four factors:

1. The "length and manner of its use";
2. The "nature and extent of advertising and promotion";
3. The plaintiff's efforts to promote a conscious public connection between its business and the mark; and
4. The extent of actual public recognition.

*Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1525 (11th Cir. 1991). Other Eleventh Circuit cases have indicated that these factors are nonexclusive. *See Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983) ("[P]roof of intentional copying is probative evidence on the secondary meaning issue.").

Sarabia's report, by contrast, opines that a mark that cannot meet the two requirements of (1) "exclusive use of a mark" and (2) "first use of the mark" cannot achieve secondary meaning.[14] Sarabia's testimony, in effect, displaces the Eleventh Circuit's nonexclusive four-factor test with an exclusive two-factor test. Based on that two-factor test, Sarabia concludes that Sanho's marks have not acquired secondary meaning "because [Sanho] is neither the exclusive user nor the first user" of its marks.[15] That conclusion is clearly based on the application of an

---

14   ECF 521-1, at 15.

15   *Id.* at 17.

6

incorrect legal standard. And a conclusion based on an incorrect legal standard is unhelpful and misleading to the jury, and thus inadmissible under both Rules 702 and 403. Sarabia is accordingly precluded from testifying as to secondary meaning regarding both "Hyper" and "HyperDrive."

> **4.      Sarabia Improperly Looks to Subparts of the "HyperDrive" Mark in Analyzing the Mark's Commercial Strength: DENIED.**

Sanho argues that Sarabia considers irrelevant evidence in analyzing the alleged infringement of the "HyperDrive" mark. According to Sanho, Sarabia's analysis improperly breaks "HyperDrive" into its component words "Hyper" and "Drive" and analyzes those components individually instead of considering the mark as a whole. While the Court agrees that, in reaching a verdict on infringement, the jury must consider "HyperDrive" in its entirety, it does not agree that Defendants are legally precluded from focusing on the individual components of the word "HyperDrive" in making their arguments. *See In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985) ("[I]n articulating reasons for reaching a conclusion on the issue of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties.").

Thus, Sarabia is permitted to testify about third-party uses of the words "Hyper," "Drive," or their homophones in "class 9" products; about third-party uses of "HyperDrive" or its homophones in class 9 products; about the co-existence of trademark registrations for products like "Hyperflow" and "Ultraflow" that differ only in their relevant prefixes; and about the existence of trademark registrations for "UltraDriveMiniDock" and "UltraDriveKit." Sanho may propose a limiting instruction to the jury on its consideration of the above evidence.

### 5. Sanho's Conduct in China Is Irrelevant: GRANTED.

Sanho argues that Sarabia's report includes an irrelevant discussion of Sanho's compliance with certain standards of care in its dealings with Chinese manufacturers. In light of the parties' representations at the pretrial conference—that Defendants only intend to use the evidence to rebut a claim for actual damages, and that Sanho is not seeking to recover actual damages[16]—Sarabia is precluded from testifying about Sanho's conduct in China without leave of Court.

### 6. Sarabia's Testimony About His Best Buy Visit Is Inadmissible: DENIED WITHOUT PREJUDICE.

Sanho argues that Sarabia's personal experience returning products to Best Buy is inadmissible because it is both fact testimony and inadmissible hearsay. The

---

[16] ECF 566.

Court rules that Sarabia is not necessarily precluded from testifying about his experience at Best Buy in his personal capacity as an investigator. Of course, his testimony must still be admissible under the Federal Rules of Evidence. The Court defers consideration of the admissibility of this testimony until trial.

### B. Defendants' Motion to Exclude Baker: DENIED WITHOUT PREJUDICE.

Baker has been tendered by Sanho as a rebuttal expert on trademark invalidity, and in particular on the issue of whether the HyperDrive is a power adapter.[17] Defendants argue that Baker's testimony is inadmissible because it is overly technical and thus unhelpful to the ultimate question of "what an average person would consider a 'power adapter.'"[18] But given Sanho's representation that Baker will only be presented as a rebuttal witness, the Court defers consideration of the admissibility of Baker's testimony until after the close of Defendants' case-in-chief.

The Court nevertheless notes its skepticism of Defendants' position. As a threshold matter, it does not appear that Baker's opinion is wholly reliant on a technical definition of "power adapter": for example, Baker's report references search results from Amazon.com and USBGear.com.[19] In addition, that a computer

---

[17] ECF 512-4, ¶ 1.

[18] ECF 526, at 14.

[19] ECF 512-4, ¶¶ 30–31.

accessory is capable of adapting power as a matter of engineering and physical fact seems relevant to the question of whether that accessory is a "power adapter" in the eyes of an average person.

### C. Defendants' Motion to Exclude Bressler

Bressler has been tendered by Sanho as an expert on product design and patent infringement.[20] Defendants argue that Bressler should be excluded because he fails at least in part on all three of the expert-admissibility criteria—qualification,[21] helpfulness,[22] and reliability. The Court considers these factors in turn.

#### 1. Bressler Is Unqualified: DENIED.

Defendants do not dispute that Bressler is an expert in product design, and Bressler is clearly qualified to offer his product-design opinion in this case. Defendants' objection that Bressler's analysis improperly invokes principles of visual psychology is addressed below in the discussion of Bressler's reliability.[23] *See Moore*, 995 F.3d at 851 ("Qualifications and reliability remain separate prongs of the *Daubert* inquiry that answer two separate questions.").

---

[20] ECF 512-3, ¶ 24.

[21] ECF 526, at 16–27.

[22] *Id.* at 21–25.

[23] *Id.* at 27–28.

### 2.      Bressler's Analysis of Prior Art Is Unhelpful: DENIED.

Defendants argue that Bressler's analysis of prior art is inconsistent with the Federal Circuit's guidance in *Egyptian Goddess* and thereby unhelpful. According to Defendants, Bressler's "one-by-one in isolation" analysis, comparing the claimed and accused designs with a single instance of prior art, cannot be squared with *Egyptian Goddess*'s instruction to consider the relevant prior art as a whole.[24] However, the Court does not read *Egyptian Goddess* as precluding parties from pointing out differences between the claimed design and individual instances of prior art, so long as the factfinder is ultimately instructed on the proper "ordinary observer" legal standard. Bressler is accordingly permitted to testify about his comparison analysis.

### 3.      Bressler's Theory of Visual Perception Is Unreliable: GRANTED.

Defendants argue that Bressler's analysis is unreliable because it is based on a theory of visual perception that does not satisfy *Daubert*, and that incorporates principles of visual psychology in which Bressler has no expertise. The Court agrees.

Under *Daubert*, expert testimony is admissible if it relies on a methodology that (1) can be and has been tested; (2) has been subject to peer review and

---

[24] *Id.* at 24.

publication; (3) has known or potential error rates; and (4) is generally accepted in the field. Here, Bressler's hierarchy-of-visual -elements methodology for assessing design similarity only satisfies one of the four factors: Sanho has not established that Bressler's methodology (1) is testable or tested; (2) been subject to peer review or publication; or (3) has known error rates or is subject to operational standards.

Of course, it is true that Sanho *has* proffered evidence, in the form of Bressler's own testimony, (4) that Bressler's methodology is generally accepted in the field of product design.[25] It is also true that general acceptance alone *can* be a sufficient basis for reliability. *Brown*, 415 F.3d at 1267. But the Court concludes that it is insufficient here.

The Court finds that Bressler's *ipse dixit* as to the widespread use of his "hierarchy" methodology does not, by itself, establish reliability when his methodology purports to incorporate scientific principles from outside his core area of expertise. Bressler's methodology relies on a particular understanding of how people process visual stimuli: namely, that people understand the visual world through hierarchies of visual elements.[26] Bressler theorizes, for example, that a viewer looking at another person recognizes first the "primary" visual element of overall profile, then progresses to "secondary" elements like

---

[25]   ECF 512-3, ¶¶ 38, 40.

[26]   *Id.* ¶ 38.

individualized facial features, before arriving at "tertiary" elements like eye color.[27] Bressler supports this theory by citing research "that the brain recognizes outlines or edges of an image first and then attempts to construct remembered forms from within the edges"—research from a 1997 book titled *Eye and Brain, the Psychology of Seeing* by neuropsychologist Richard L. Gregory.[28] In other words, Bressler's analytical framework of visual hierarchies appears to originate, not in principles of product design, but in "principles of the psychological science of how people see things"[29]—a subject in which the Court finds Bressler is not an expert.

Two factors compound the Court's doubts about the reliability of Bressler's methodology. The first is that *Eye and Brain* does not itself appear to propound a "hierarchy" theory of visual recognition.[30] This means that Bressler's methodology could be based, neither on scientific tenets of product design nor on scientific tenets of visual psychology, but on a pseudo-scientific hybrid: on a product designer's lay extrapolation out of a visual psychology book. It is likewise concerning that Bressler's only other reference to scientific literature is to unspecified "eye tracking tests"[31]—tests that are not only unverifiable here, but

---

[27] *Id.* ¶ 39.

[28] *Id.* ¶ 37.

[29] *Id.* ¶ 35.

[30] *See* ECF 526-2.

[31] ECF 512-3, ¶ 39.

again seemingly more at home in the world of visual psychology than of product design. The second factor is Bressler's willingness to ascribe numerical percentages to the weight that design features should be given in assessing similarity. The Court finds that use of numbers potentially imbues Bressler's testimony with a false sense of objectivity. A claim, for example, that tertiary design features are entitled to "15 percent, 20 percent" weight[32] — as opposed to merely being less important—could give Bressler's testimony an undeserved veneer of scientific rigor.

The Court accordingly finds that Sanho has failed to carry its burden in establishing the reliability of Bressler's methodology, and Bressler is precluded from invoking his "hierarchy" theory to justify conclusions about how product designs are perceived by ordinary observers.

### III. CONCLUSION

The parties' motions are **GRANTED IN PART** and **DENIED IN PART**. Sanho's motion to exclude Sarabia's testimony [ECF 521] is **GRANTED** as to Sarabia's legal knowledge, training, and experience, his analysis of secondary meaning, and his discussion of Sanho's conduct in China, and **DENIED** as to all

---

[32] ECF 343, at 38.

else. Defendants' motion to exclude Baker and Bressler's testimonies [ECF 526] is **GRANTED** as to Bressler's theory of visual perception and **DENIED** as to all else.

**SO ORDERED** this 8th day of July, 2024.

                                               Steven D. Grimberg
                                            United States District Judge