UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION, | Case No. 1:18-cv-05385-SDG |
| Plaintiff, | |
| v. | |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., dba "j5create;" and DOES 1-100, | |
| Defendants, | |
| SANHO CORPORATION, | Consolidated with Case No. 1:20-cv-02150-TCB |
| Plaintiff, | |
| v. | |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY INTERNATIONAL CORPORATION; MAGIC CONTROL TECHNOLOGY; STARVIEW GLOBAL LIMITED, each doing business as "J5Create;" and DOES 1-10, | |
| Defendants. | |

**DEFENDANTS KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC. AND KAIJET TECHNOLOGY INTERNATIONAL CORPORATION'S SUPPLEMENTAL BRIEFING ON THE ORAL JOINT MOTION FOR JUDGMENT AS A MATTER OF LAW**

In open court then afternoon of July 12, 2024, counsel for Defendants KaiJet Technology International Limited, Inc. and KaiJet Technology International Corporation ("Defendants" or collectively, "KaiJet Defendants") made an oral Joint Motion for Judgment as a Matter of Law ("JMOL") on all of Plaintiff's causes of action. In further oral motion by its counsel, Defendant Star View joined in KaiJet Defendants' motion as to all claims asserted against Star View. KaiJet Defendants now submit this Supplemental Briefing to provide the Court with more detail and supporting authority as to certain aspects of the oral motion.

## I.    LEGAL STANDARD.

The standard for granting judgment as a matter of law mirrors that of the standard for granting summary judgment.[1] Therefore, "judgment as a matter of law 'is appropriate when a plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action.'"[2] Purely legal questions may be resolved by a motion for judgment as a matter of law.[3]

---

[1] *Chapman v. AI Transp.*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

[2] *Swoope v. CSX Transp., Inc.*, 666 F. App'x 820, 822 (11th Cir. 2016) (quoting *Christopher v. Fla.*, 449 F.3d 1360, 1364 (11th Cir. 2006)).

[3] *London v. Fieldale Farms Corp.*, No. Civ. 2:01-CV-202-WCO, 2003 WL 23750660, at *1 (N.D. Ga. Dec. 22, 2003), *aff'd,* 410 F.3d 1295 (11th Cir. 2005).

## II.    ARGUMENT.

### A. Sanho Is Barred from Recovering Damages Prior to Dates of Actual Notice.

Sanho conceded during oral arguments that it is barred from seeking pre-suit damages on its design patent infringement claims. KaiJet Defendants provide the following case law and argument to confirm the appropriateness of Sanho's concession.

#### 1. Sanho Did Not Meet the Burden of Proving Patent Marking or That the HyperDrive Product Does Not Embody the Asserted Design Patents.

The Patent Act only allows a patent owner to recover damages after the alleged infringer has notice.[4] More specifically, the patent owner must prove that the alleged infringer has either "constructive notice" or "actual notice."[5] "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."[6] Constructive notice requires the patent owner to properly mark its product with the patent number[7] or to prove that it does not sell a product that embodies the patents it is asserting.[8] Sanho failed to offer evidence

---

[4] 35 U.S.C. § 287.

[5] *Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020).

[6] *Id*. (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994)).

[7] *Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017).

[8] *Id*. at 1368.

that it provided constructive notice, and therefore as a matter of law Sanho can only rely on notice as of the date it proves actual notice to the KaiJet Defendants.

"There is no dispute that the patentee bears the burden of pleading and proving he complied with § 287(a)."[9] If the patentee sells products that embody the asserted patent, then they bear the burden of proving that the products were properly marked.[10] If the patentee does not sell any products that embody the asserted patent, then there is no requirement of marking. The alleged infringer may challenge the patentee's compliance with 35 U.S.C. § 287(a) by identifying products of the patentee that embody the asserted patent but were not properly marked. The alleged infringer's burden of production "is a low bar," requiring only that the alleged infringer "put … on notice" the patentee which "specific unmarked products [] the alleged infringer believes practice the patent."[11] This is a "burden of production, not one of persuasion or proof."[12] Once the alleged infringer's burden is met, the patentee bears the "burden to prove the products identified do not practice the patented invention."[13]

---

[9] *Id*. at 1367.

[10] 35 U.S.C. § 287(a).

[11] *Arctic Cat Inc.*, 876 F.3d at 1368.

[12] *Id*.

[13] *Id*.

Sanho's witnesses testified that each of the asserted products covered the HyperDrive products. Mr. Chin, whom Sanho contends is the co-inventor of the HyperDrive, testified that Sanho acquired the '290 Patent as

> part of our strategy to expand our IP portfolio … to protect our products. We felt that this patent, this design patent is highly related to the HyperDrive product, and we … wanted to secure all the IP necessary to protect our product.[14]

Mr. Chin also testified that he was added as a coinventor to the '875 Patent because "it's without a doubt that me and Alen coinvented the HyperDrive."[15] He testified the same for the '616 Patent: Alen Liao was added as a coinventor "because Alen was the co-inventor of the HyperDrive."[16] As for the '618 Patent, Mr. Chin testified that Sanho acquired this patent because Sanho was "consolidating all of the necessary IP to protect our invention, the HyperDrive."[17] Sanho cannot deny that it sells products (the HyperDrive) that embody the asserted patents. Therefore, Sanho had a duty to mark its products accordingly. Sanho presented ***no*** evidence of patent marking, and thus no reasonable juror could find that Sanho met its burden under 35 U.S.C. § 287(a). Thus, as a matter of law, Sanho can only recover damages that accrued after each party was on actual notice.[18]

---

[14] Trial Transcript 7/10/24 Morning, at 58:4-58:9.

[15] *Id*. at 59:4-19.

[16] *Id*. at 61:7-18.

[17] *Id*. at 62:11-18.

[18] 35 U.S.C. § 287(a).

The HyperDrive's embodiment of the asserted design patents isn't news to Sanho. For the '875 and '616 Patents, Sanho itself alleged that these design patents "embody[] the HYPERDRIVE."[19] Similarly, Sanho's design expert offered opinions on the numerous similarities between the '618 Patent and the HyperDrive.[20] Valerie Chong, co-founder of Sanho, confirmed that the HyperDrive embodies the '618 Patent.[21] As to the '290 Patent, KaiJet Defendants' design expert opined that the HyperDrive (model GN21B) embodied the patent.[22] Thus, Sanho knows, or should have known, it bore the burden to prove that its HyperDrive did *not* embody the asserted design patents. Sanho failed that burden: it provided no expert testimony or any other evidence that would allow a reasonable jury to find that the HyperDrive does not embody the asserted design patents, nor did it provide any evidence of properly marking the HyperDrive products with the asserted design patents.

Once again, Sanho bears the burden of proving when each defendant was on actual notice.[23] Here too, Sanho failed to meet its burden. Sanho provided no

---

[19] ECF 89, ¶ 31; *see also* Trial Transcript 7/9/24 Afternoon, 112:13-14 ("This is design patent '875 S. This is a design patent for HyperDrive USB adapter.").

[20] ECF 490-6 (Expert Report of Peter Bressler on Patent Validity), ¶¶ 99-104.

[21] Trial Transcript 7/9/24 Afternoon, 113:4-5 ("This is design patent '618 S. And this is a design patent for USB-C and HyperDrive USB-C adapter.").

[22] ECF 450-10 (Shankwiler Responsive Report), ¶ 55 ("As shown in advertisements for the GN21B product, which I understand is the commercial embodiment of the '290 Patent sold by Sanho ….").

[23] *Sentry Prot. Prod., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005) ("[I]n reference to … actual notice … 'the duty of alleging and the burden of

evidence of providing actual notice to any of the Defendants. Therefore, Sanho can only recover damages accrued after each patent was asserted against each Defendant.[24] Those dates are as follows:

| Design Patent | KaiJet US | KaiJet Taiwan | Starview |
|---|---|---|---|
| '875 | May 25, 2018[25] | Nov. 14, 2019[26] | N/A |
| '616 | Nov. 14, 2019[27] | Nov. 14, 2019[28] | N/A |
| '618 | Oct. 28, 2020[29] | Oct. 28, 2020[30] | Oct. 28, 2020[31] |
| '290 | Oct. 28, 2020[32] | Oct. 28, 2020[33] | Oct. 28, 2020[34] |

**B. KaiJet Defendants' Oral Motion for JMOL on Sanho's Claim for Infringement of the '616 Patent for to Failure to Satisfy the Statutory Prerequisites of Joining All Co-Owners.**

**1. Zhouwen Liao is a co-owner of the '616 Patent.**

Sanho cannot assert the '616 Patent because Zhouwen Liao remains a co-owner of the patent. The Patent Act statutorily requires that an infringement suit

---

proving either of these facts is upon the plaintiff.'") (quoting *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)).

[24] 35 U.S.C. § 287(a) ("Filing of an action for infringement shall constitute such notice.").

[25] ECF 1 (Complaint in Case No. 1:18-cv-05385).

[26] ECF 89 (Third Amended Complaint in Case No. 1:18-cv-05385).

[27] *Id*.

[28] *Id*.

[29] ECF 204 (Complaint in Case No. 1:20-cv-02150).

[30] *Id*.

[31] *Id*.

[32] *Id*.

[33] *Id*.

[34] *Id*.

"must join as plaintiffs all co-owners" of the asserted patent.[35] Whether all co-owners have been joined is a threshold question – if not, then the case cannot move forward.[36] The uncontroverted evidence in this case establishes the following:

- On August 6, 2019, Daniel Chin was originally the only inventor listed for '616 Patent;[37]

- On August 19, 2019, Daniel Chin assigned his ownership rights to Sanho;[38]

- On November 22, 2022, Alen Liao was added as a coinventor for '616 Patent,[39] making him a co-owner of the '616 Patent;[40] and

---

[35] *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1378 (Fed. Cir. 2020) ("'An action for infringement,' moreover, 'must join as plaintiffs all co-owners.'") (quoting *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998)).

[36] *Id.* at 1378-1379 ("Put simply, if AntennaSys does not meet the statutory requirements for bringing its patent infringement claim against AQYR, either because Windmill was not joined as a co-plaintiff or because AntennaSys does not adequately state a claim under the Patent Act against AQYR, we need not delve into the district court's claim construction.").

[37] PTX-11; Trial Transcript 7/10/24 Morning, 60:5-12.

[38] PTX-22; Trial Transcript 7/10/24 Morning, 60:18-23.

[39] PTX-18 & PTX-19; Trial Transcript 7/10/24 Morning, 61:7-25.

[40] *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016) ("When multiple inventors are listed on the face of a patent, 'each co-owner presumptively owns a pro rata undivided interest in the entire patent, no matter what their respective contributions.'") (quoting *Isr. Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007)); *Shum v. Intel Corp.*, 629 F.3d 1360, 1371 (Fed. Cir. 2010) (jury held that Shum was a joint inventor of five patents, and was therefore named a co-owner despite the other inventor having sold the patents to Intel for over $400M).

- As of July 10, 2022, Alen Liao had never transferred his ownership rights in the '616 Patent to Sanho or Targus.[41]

Based on the above evidence, Sanho is not an exclusive licensee of the '616 Patent and therefore does not meet the statutory requirements to maintain its cause of action for infringement of the '616 Patent. Accordingly, KaiJet Defendants move for the Court to dismiss Count I (as based on the '616 Patent) from Case No. 1:18-cv-05385.

### 2. Sanho's failure to meet the statutory requirements is not an affirmative defense, but an unproven element of Sanho's *prima facie* case, and therefore cannot be "waived."

KaiJet Defendants have previously briefed why the issue of Sanho's failure to meet the statutory requirements cannot be waived, and therefore incorporate its prior arguments herein.[42] But in the course of oral argument in open court, Sanho's counsel reiterated an argument based on Sanho's theory that Defendants were required to plead that failure as an affirmative defense. That is false. Sanho must plead and prove patent ownership or exclusive licensure as part of its *prima facie* case, and Sanho has no and cannot do so here.

Even if this were not so, there can be no waiver here because Sanho failed to disclose the certificate of correction until May of 2024.[43] Therefore, the issue of Mr. Liao being made a co-inventor and co-owner only arose two months prior to trial.

---

[41] Trial Transcript 7/10/24 Afternoon, 62:4-9.

[42] ECF 554, at 12-15.

[43] ECF 527-16, PTX-19 (no bates number or source identified); ECF 554-1, at ¶ 6.

Sanho tries to excuse its clear violation of its disclosure obligations[44] by pointing to disclosures made in a separate proceeding.[45] But what was disclosed were not the certifications of correction, but *requests* to correct inventorship.[46] Sanho did not inform KaiJet Defendants that the inventorship had been changed until providing its trial exhibit list for the pretrial order.[47] Sanho essentially argues that by putting KaiJet Defendants on notice (in a separate proceeding) of a request to change inventorship, they were absolved of their disclosure duties and could place the burden on KaiJet Defendants to constantly monitor Sanho's patent docket. This is an absurd attempt to avoid their clear failure to disclose and to do an end-around on the statutory requirement of joining all co-owners. Statutory requirements written into law by Congress cannot be avoided through a strategy of late disclosures of crucial evidence.

For the convenience of the Court, KaiJet Defendants previous briefing on the issue of waiver is reproduced below:

---

[44] Fed. R. Civ. P. 26(a)(1)(ii) ("a party must, without awaiting a discovery request, provide to the other parties…a copy…of all documents…that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses").

[45] *See* ECF 555 ("Sanho filed the following documents in *KaiJet Technology International Limited, Inc. d/b/a j5create v. Sanho Corporation*, IPR2021-00886 (PTAB).").

[46] ECF 555-1 & 555-2.

[47] ECF 527-16, PTX-19 (no bates number or source identified); ECF 554-1, at ¶ 6.

Sanho seeks to use its strategy of belated disclosures to its advantage by arguing that KaiJet Defendants "waived their right to challenge standing" because they failed to raise standing in their pleadings. Sanho relies on dictum from the 2005 order in *Doctors Hospital* to suggest that a defendant must affirmatively plead lack of standing.[48] But that order is explicit in confining its reach to the specific and unusual facts of that case: "[t]his court concludes that lack of standing as a defense *in the instant action* falls within the scope of Federal Rule of Civil Procedure 8(c), and Horton Homes was required to plead this challenge as an affirmative defense."[49] The court explained the unique circumstances warranting waiver, as standing was not challenged until after the statute of limitations had run, thus foreclosing the plaintiff from taking action to remedy the standing issue.

In a different matter, this Court has rejected Sanho's argument that a challenge to standing can be waived:

> AIG responds, first, that Pegatron waived this standing argument as to Successor's claims because it did not plead standing as an affirmative defense. Standing, however, implicates the Court's subject matter jurisdiction and cannot be waived.[50]

---

[48] ECF 542 at 12 & n.38; citing *Drs. Hosp. of Augusta, Inc. v. Horton Homes, Inc.*, No. 1:02-CV-3165-CAP, 2005 U.S. Dist. LEXIS 57516, at *11 (N.D. Ga. Jan. 27, 2005).

[49] *Id.*, emphasis supplied.

[50] *AIG Specialty Ins. Co. v. Pegatron Corp.*, No. 1:18-cv-03701-SDG, 2021 U.S. Dist. LEXIS 177057, at *7 (N.D. Ga. Sept. 17, 2021) (citing *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same

Standing to sue is an element of a plaintiff's prima facie case, and upon which the plaintiff bears the burden of proof. That is, lack of standing is not an affirmative defense [51].

Sanho tries to save its waiver argument by casting its lack of standing as "prudential" in nature, which it argues can be waived.[52] But the Supreme Court has clarified that the "'class of persons who could maintain a private damages action under'" a "legislatively conferred cause of action" was a matter of "statutory, not 'prudential,' considerations."[53] The question is whether Congress "conferred [a] cause of action" that "encompasses [Sanho's] claim."[54] Here, Congress required that

---

effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).") (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991))); *see also Fla. Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999) ("every court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates.") (citing *FW/PBS, Inc. v. Dallas*, 110 S. Ct. 596, 607-08 (1990) (partially overruled on other grounds)).

[51] *Fishman v. Tiger Nat. Gas Inc.*, No. C 17-05351 WHA, 2018 U.S. Dist. LEXIS 159425, at *15-16 (N.D. Cal. Sept. 18, 2018) ("Because a plaintiff must plead and ultimately prove standing, lack of standing is not an affirmative defense under federal law.") (quoting *J & J Sports Prods., Inc. v. Vizcarra*, No. 11-1151 SC, 2011 U.S. Dist. LEXIS 109732, at *6 (N.D. Cal. Sept. 27, 2011)); *United States v. Acad. Mortg. Corp.*, No. 16-cv-02120-EMC, 2020 U.S. Dist. LEXIS 226154, at *11 (N.D. Cal. Dec. 2, 2020).

[52] ECF 542, at 12.

[53] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 529, 532 (1983)); *see also D.H. Pace Co. v. OGD Equip. Co., LLC*, 78 F.4th 1286, 1292 n.5 (11th Cir. 2023).

[54] *Lexmark*, 572 U.S. at 127.

patent infringement claims be brought by the patent owner,[55] and that trademark infringement claims be brought by the trademark registrant.[56] Sanho has not been the patent owner or trademark registrant for the asserted patents and trademark since 2022. Sanho cannot avail itself of statutory causes of action that Congress explicitly barred Sanho from maintaining.

Further, KaiJet Defendants denied Sanho's claim of intellectual property ownership (and therefore standing) as an issue in its pleadings. In their respective Answers to Sanho's most recent amended complaint – where Sanho first disclosed the transfer and back-license to the relevant intellectual property – KaiJet Defendants denied that Sanho is the exclusive licensee of the relevant intellectual property with the right to sue for infringement.[57] Prior to that, KaiJet Defendants had denied Sanho's allegations of ownership of the intellectual property.[58] Sanho cannot argue that it is surprised that its rights to the intellectual property, and therefore standing and statutory ability to bring related claims in this suit, have been disputed by KaiJet Defendants. Sanho has had notice for over four years.

---

[55] 35 U.S.C. § 289 ("…shall be liable to the [patent] owner."); *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002).

[56] 15 U.S.C. § 1114 ("…shall be liable in a civil action by the registrant.").

[57] ECF 422, at ¶ 15; ECF 423, at ¶ 15.

[58] ECF 115, at ¶¶ 31-33; ECF 189, at ¶¶ 31-33.

In sum, standing is an issue that can be raised at any time, even at trial.[59] Neither has Sanho identified any law to support that the statutory requirements of ownership can be waived.[60] It is Sanho's fault that standing is only now being addressed, as they withheld crucial documents until well after discovery ended, including providing certificates of correction last month. KaiJet Defendants were deprived of the opportunity to explore these documents and issues during discovery, so now they must be explored at trial. KaiJet Defendants must be able to present evidence and argument related to Sanho's lack of standing.

## C. Sanho's Patent Infringement Claims Should Be Denied Because It is Not an Exclusive Licensee

Only a "patentee" or an "exclusive licensee" can bring an action for patent infringement.[61] Sanho claims to be an exclusive licensee.[62] But the evidence proves

---

[59] *Citibank v. Pietranico*, No. 1:11-CV-1802-SSC, 2012 U.S. Dist. LEXIS 193289, at *19-20 (N.D. Ga. Aug. 17, 2012) ("standing may be raised at any time by either the parties or the Court") (quoting *Insect Sci. Res., LLC v. Timberline Fisheries Corp.*, No. 1:07-CV-2662-JEC, 2010 U.S. Dist. LEXIS 9934, at *7 (N.D. Ga. Feb. 3, 2010)).

[60] Sanho cites to a First Circuit case for the proposition that "statutory" standing can be waived. ECF 542, at 14 n.47. But the holding there was that statutory standing was waived **on appeal** "because the issue was not raised below." *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 53 n.3 (1st Cir. 2014). The other case Sanho cites is a Northern District of Texas case, but that court held that the statutory requirement of trademark ownership was "waived by Defendant by agreeing to the Consent Judgment." *I & I Hair Corp. v. Beauty Plus Trading Co.*, No. 3:18-cv-03254-M, 2019 U.S. Dist. LEXIS 226586, at *9 (N.D. Tex. Sept. 13, 2019).

[61] *Mentor H/S, Inc. v. Med. Device All., Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001) (citing 35 U.S.C. § 281).

[62] PTX 15.

it is not. Sanho entered into an agreement with its supplier Gopod Group, whereby Sanho "agree[d] not to sue Satechi" "[r]egarding Satechi's product in similar specification as HyperDrive."[63] Daniel Chin confirmed that Satechi held up their end of the agreement.[64] And Daniel Chin and his wife Valerie Chong confirmed – and Sanho's counsel implicitly conceded during oral arguments – that the HyperDrive embodies the design patents.[65] Therefore, Sanho's covenant not to sue bars it from suing Satechi for infringement of the design patents asserted in this case. This is "equivalent to a nonexclusive…license."[66]

By definition, Sanho cannot be an *exclusive* licensee if Satechi is also a licensee. This fact also illustrates the facile argument of Sanho's counsel that "if granting a license had the effect KaiJet Defendants urge, no one could ever enforce a licensed patent." Nonsense – the patent *owner* can enforce no matter how many others it has licensed. But Sanho cannot enforce because it is not the owner, and on the uncontroverted evidence of Sanho's own CEO, Sanho is not an exclusive licensee.

---

[63] DTX 155.

[64] Trial Transcript 7/10/24 Afternoon, 110:3-5.

[65] Trial Transcript 7/10/24 Morning, at 58:4-58:9, 59:4-19, 61:7-18, 62:11-18.

[66] *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 946 F.3d 1354, 1360 (Fed. Cir. 2020).

For the above reasons, KaiJet Defendants are entitled to JMOL on Count I in Case No. 1:18-cv-05385 and Counts II & III in Case No. 1:20-cv-02150.

### D. KaiJet Defendants are entitled to JMOL on Sanho's Copyright Claims Because Sanho Was Never the Rightful Owner of the Copyright.

### 1. YiChing Chen – the "pixel monkey" – is the author and owner.

It is Sanho's burden to prove "(1) that it *owns* a valid copyright in the work allegedly infringed, and (2) that the defendant copied that work."[67] Sanho has failed to meet that burden. In fact, its own witnesses confirm that YiChing Chen—not Daniel Chin or Sanho—is the author and owner of the work purportedly covered by U.S. Copyright Registration No. VA 2-103-336.

Copyright ownership "vests initially in the author … of the work."[68] Though Sanho derides Ms. Chen as a "pixel monkey,"[69] copyright law recognizes that an author is a person "who actually creates the work, that is, **the person who translates an idea into a fixed, tangible expression** entitled to copyright protection."[70] Ms. Chong testified that Ms. Chen was used as a "pixel monkey" to put together the

---

[67] *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1490 n.7 (11th Cir. 1990) (emphasis in original).

[68] 17 U.S.C. § 201(a).

[69] Trial Transcript 7/10/24 Morning, 33:13-24; Trial Transcript 7/10/24 Afternoon, 81:8-20.

[70] *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (emphasis added); *see also PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1369 (Fed. Cir. 2007); *Keyfer & Assocs. Inc. v. Brock*, No. 1:07-CV-2297-CC, 2010 WL 11505875, at *18 (N.D. Ga. Mar. 30, 2010).

designs as directed by Mr. Chin.[71] Per Ms. Chong, Sanho used independent contractors such as Ms. Chen to "use software like Adobe Photoshop" to create the packaging design, because it would "take a lot of time" for either Ms. Chong or Mr. Chin to "do it [them]selves."[72] Mr. Chin confirmed his wife's testimony, describing Ms. Chen as "the scribe" and noting that she "lay out the packaging and did the packaging to [Mr. Chin's] specification."[73] In other words, Mr. Chin came up with ideas for the copyrighted product packaging, but it was Ms. Chen who translated the idea into a fixed, tangible expression using Adobe Photoshop. But "[c]opyright cannot protect an idea, only the expression of that idea."[74] Copyright thus protects Ms. Chen's authorship; as a matter of law, Ms. Chen is the author and owner of the copyrighted work.

Neither can Sanho rely on the work-for-hire doctrine. The Copyright Act states that an employer is considered the author only for "a work prepared by an employee within the scope of his or her employment" or for "a work specially

---

[71] Trial Transcript 7/10/24 Morning, 33:21-34:2 ("I know we use her to like, you know, in layman term we call it like a pixel monkey, basically is like help us put things together for designs. But a lot of our packaging and product is like Daniel is -- is directing all the designs and directing all the contents and everything.").

[72] Trial Transcript 7/10/24 Morning, 34:7-12.

[73] Trial Transcript 7/10/24 Afternoon, 82:10-11.

[74] *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1263 (11th Cir. 2001); 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea…[or] concept…regardless of the form in which it is described, explained, illustrated, or embodied in such work.").

ordered or commissioned … if the parties agree in a written instrument signed by them that the work shall be considered a work made for hire."[75] Mr. Chin and Mrs. Chong both testified that Ms. Chen was an independent contractor. Thus, she is not an employee for purposes of the Copyright Act.[76] And Mr. Chin confirmed that "she did not assign any authorship rights to Sanho Corporation" because he did not believe she was an author. Therefore, Sanho failed to present evidence that would allow a reasonable jury to find that the copyrighted product packaging was a work made for hire.

For the above reasons, KaiJet Defendants move for judgment as a matter of law in their favor on Sanho's copyright claim, Count IV of Case No. 1:18-cv-05385.

### 2. Even if Daniel Chin qualifies as a co-author, Sanho lacks standing

The Copyright Act confers standing to bring an infringement suit only to the "legal or beneficial owner of an ***exclusive right***" in a copyright.[77] For the same reasons stated above, YiChing Chen is at least a co-author and therefore co-owner.

---

[75] 17 U.S.C. § 201(b); 17 U.S.C. § 101.

[76] *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1531 (11th Cir. 1994) (stating that "the 'work-for-hire' doctrine does not confer authorship upon the employer of an independent contractor"); *see also, e.g.*, *Van Cleef & Arpels, S.A. v. Tenn Angel, Inc.*, No. 08-80688-CIV-ZLOCH, 2009 U.S. Dist. LEXIS 74362, at *10 (S.D. Fla. Aug. 21, 2009) ("The copyright in a work created by an independent contractor, absent assignment, is not the property of the hiring party.") (citing *Howard v. Sterchi*, 974 F.2d 1272, 1278 (11th Cir. 1992)).

[77] 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled… to institute an action for any infringement of that particular right committed while he or she is the owner of it.").

Therefore, Sanho never owned "an exclusive right" to the copyright at issue. For the same reason, its license from Targus cannot be an exclusive license granting an exclusive right to the copyright.[78] Thus, even if Daniel Chin (and therefore Sanho) was a co-author with Ms. Chen, it never owned the exclusive right required to have standing to bring a copyright infringement claim. KaiJet Defendants move for the Court to dismiss Sanho's copyright claim for lack of standing.

### E. KaiJet Defendants are Entitled to JMOL on Sanho's Trademark Claims Because the Hyperdrive Trademark Registration Is Void Ab Initio.

As recognized by this Court in its prior order, Sanho did not plead common law trademark infringement:

> The Court notes, however, that it does not identify allegations in either of Sanho's operative complaints that would put KaiJet US on notice that a common law trademark infringement claim is being asserted against it.[79]

Thus, Plaintiff's trademark claims are based solely on its federal registration

---

[78] *See, e.g., Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008) (holding that the plaintiff lacked standing for its copyright infringement claim because it was not an exclusive licensee: "unless all the other co-owners of the copyright joined in granting an exclusive right to Sybersound, TVT, acting solely as a co-owner of the copyright, could grant only a nonexclusive license to Sybersound because TVT may not limit the other co-owners' independent rights to exploit the copyright.").

[79] ECF 513 at 36 n.99 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.")).

of the Hyperdrive mark ("707 Mark").[80] But that registration is invalid, requiring that Plaintiff's trademark claims be denied as a matter of law.

Trademark registration requires use of the mark in U.S. commerce with the goods applied for.[81] More specifically, the U.S. Patent and Trademark Office mandates that the identification of goods listed in a trademark application "must be specific, definite, clear, accurate, and concise."[82] The language used to describe goods should be understandable to the average person and should not require an in-depth knowledge of the relevant field.[83] To accomplish that goal, the goods listed in a trademark application need to be identified by their "common name" as "generally understood" by the consuming public.[84] These tenets are important, as "a registration is prima facie evidence that the registrant is using the registered mark on the goods or services specified in the registration."[85] If these requirements are not met, the "registration .… is void ab initio," rendering it invalid and unenforceable.[86]

---

[80] *See* ECF 89 at 23 ("Defendant's use of the ULTRADRIVE name IS … infringing on the ***707 Mark*** and trade dress.") (emphasis added).

[81] 15 U.S.C. § 1051(a)(2) ("The application shall include specification of . . . the goods in connection with which the mark is used, . . .").

[82] TMEP § 1402.01 (quoting *In re Carlton Cellars, LLC*, 2020 USPQ2d 10150, at *3 (TTAB 2020)).

[83] TMEP § 1402.01.

[84] TMEP § 1402.01; TMEP § 804.01.

[85] 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:48 (5th ed. 2024, Westlaw).

[86] *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009).

The 707 Mark is registered for the following products: "electrical power cords, power adapters, and batteries; styluses and covers for tablet computers."[87] The parties agree that Sanho never used the HyperDrive mark on electrical power cords, batteries, or styluses and covers for tablet computers.[88] Therefore, the only type of good Sanho contends it has used the HyperDrive mark on are power adapters.

The evidence presented in the case has made it clear: Sanho's HyperDrive products are not generally understood to be power adapters, nor is that the common name used by the consuming public, retailers, KaiJet Defendants, or even Sanho to describe the Hyperdrive product (or related products such as the various Ultradrive products). None of the accused products or Sanho's own HyperDrive products say "power adapter" anywhere on them.[89] None of the articles discussing the HyperDrive call it a power adapter.[90] None of Sanho's marketing materials refer to the HyperDrive as a power adapter.[91] To the contrary, all of the above admitted evidence demonstrates that the HyperDrive is referred to as a hub or dock—*not a power adapter*. While there was minimal evidence supporting that the HyperDrive allows power delivery as a function, and may technically change the voltage, this is

---

[87] PTX-8; Trial Transcript 7/10/24 Afternoon, 25:9-17.
[88] Trial Transcript 7/10/24 Afternoon, 25:22-24.
[89] PTX 1-14.
[90] PTX 353-359.
[91] DTX 1002; PTX 24.

not probative of whether the *common name*—as understood by consumers—of the HyperDrive is a power adapter.

As there is no evidence upon which a reasonable jury could find that "power adapter" is the common name for USB-C hubs (the type of good that Sanho actually used the mark "Hyperdrive" on), the 707 Mark is, as a matter of law, void ab initio. Therefore, KaiJet Defendants move for the Court to enter judgment as a matter of law in favor of KaiJet Defendants on Sanho's trademark claims: Counts II & III of Case No. 1:18-cv-05385.

### F.  No Willful Trademark Infringement for Use of KaiJet Defendants' Registered Trademarks

KaiJet Taiwan owns federal trademark registrations for "ULTRADRIVEMINIDOCK"[92] and "ULTRADRIVE KIT"[93] (the "Ultradrive Registered Marks"). The Lanham Act states that federal registrations serve as a defense to infringement actions, as they are:

> prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in

---

[92] Trial Transcript 7/11/24 Afternoon, 39:12-15, 84:24-25; testimony of Yuki Tai on 7/12/24 regarding ULTRADRIVEMINIDOCK being registered and subject to a cancellation proceeding.

[93] *Id.* at 39:12-15; testimony of Yuki Tai on 7/12/24 regarding ULTRADRIVEMINIDOCK being registered and subject to a cancellation proceeding.

commerce on or in connection with the goods or services specified in the registration.[94]

Therefore, KaiJet Taiwan's federal registrations are prima facie evidence that the use of the Ultradrive Registered Marks on the accused products is not likely to cause confusion with Sanho's registered mark.[95]

Sanho failed to meet its burden of proof that KaiJet Defendants' use of the Ultradrive Registered Marks constitutes willful infringement. The 11th Circuit defines willful trademark infringement as "the infringer . . . knowingly and deliberately cashing in upon the good will of the infringed."[96] Sanho has presented no evidence that KaiJet Defendants *knew* that their ***federally registered*** trademarks were invalid. Sanho presented no evidence that KaiJet Defendants *knew* that the trained trademark examiners at the USPTO were wrong about there being no likelihood of confusion between the Ultradrive Registered Marks and Sanho's registered mark. Accordingly, no reasonable juror could find that KaiJet Defendants' use of the Ultradrive Registered Marks constitutes willful infringement.

---

[94] 15 U.S.C. § 1115(a).

[95] *See Pilot Corp. of Am. V. Fisher-Price, Inc.*, 501 F. Supp. 2d 292, 302-03 (D. Conn. 2007) ("In addition to the Polaroid factors, the court should also consider the fact that the [USPTO] has approved Fisher-Price's 'Doodle Pro' mark for publication and likely registration, which means that the [PTO] has determined that the use of the [] mark is not likely to cause confusion. That approval is 'a factor, which, while not conclusive, is entitled to great weight.'") (quoting *Syntex Labs., Inc. v. Norwich Parmacal Co.*, 437 F.2d 566, 569 (2nd Cir. 1971)).

[96] *Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 F. App'x 899, 903 (11th Cir. 2007) (cleaned up).

## III.    CONCLUSION

This briefing supplements KaiJet Defendants' oral Motion for JMOL in their favor on Sanho's copyright claim (Count IV in Case No. 1:18-cv-05385), trademark claims (Counts II & III in Case No. 1:18-cv-05385), infringement claim for the '616 Patent (Count I in Case No. 1:18-cv-05385), willful trademark infringement for the use of KaiJet Defendants' registered trademarks (Counts II & III in Case No. 1:18-cv-05385), and confirms that damages for Sanho's design patent infringement claims are only available after the actual notice dates (Count I in Case No. 1:18-cv-05385; Counts II & III in Case No. 1:20-cv-02150).

Respectfully submitted, this 12th day of July, 2024.

/s/ *Ryan P. Gentes*
Ryan P. Gentes
GA Bar No. 421695
Robert A. Madayag, III
GA Bar No. 123699
William B. Dyer III
GA Bar No. 236915
Steven Philbin
GA Bar No. 516724
James Avery Rollins
GA Bar No. 776439
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com
Email: robm@leehayes.com
Email: bill.dyer@leehayes.com
Email:  steven.philbin@leehayes.com
Email:  james.rollins@leehayes.com

Robert J. Carlson
WSBA Number 18455
Admitted Pro Hac Vice
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: carlson@leehayes.com

Rhett V. Barney
WSBA Number 44764
Admitted Pro Hac Vice
Johanna Tomlinson
WSBA Number 57582
Admitted Pro Hac Vice
Lee & Hayes, P.C.
601 W. Riverside Ave., Ste. 1400
Spokane, WA 99201
Telephone: (509) 324-9256

Email: rhettb@leehayes.com
Email: johanna.tomlinson@leehayes.com

*Attorneys for Defendants*
*KaiJet Technology International Limited,*
*Inc. and KaiJet Technology International*
*Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2024, I filed a true and correct copy of the foregoing document with the CM/ECF filing system of this Court, which will serve an electronic copy to all attorneys of record.

/s/ *Ryan P. Gentes*

Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com

*Attorney for Defendants*
*KaiJet Technology International Limited, Inc.*
*and KaiJet Technology International*
*Corporation*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

/s/ *Ryan Gentes*

Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.

*Attorney for Defendants*
*KaiJet Technology International*
*Limited, Inc. and KaiJet Technology*
*International Corporation*