UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., dba "j5create;" and DOES 1-100,<br><br>Defendants, | Case No. 1:18-cv-05385-SDG |
| SANHO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY INTERNATIONAL CORPORATION; MAGIC CONTROL TECHNOLOGY; STARVIEW GLOBAL LIMITED, each doing business as "J5Create;" and DOES 1-10,<br><br>Defendants. | Consolidated with<br>Case No. 1:20-cv-02150-TCB |

**DEFENDANTS KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC. AND KAIJET TECHNOLOGY INTERNATIONAL CORPORATION'S SUPPLEMENTAL BRIEF TO ITS ORAL MOTION FOR JUDGMENT AS A MATTER OF LAW**

## TABLE OF CONTENTS

I.      LEGAL STANDARD. ...................................................................................1

II.     ARGUMENT. .............................................................................................2

    A. No Common Law Trademark Infringement Claims. .....................................2

        1.   Sanho never pled it had common law rights in Hyperdrive, much
             less that those supposed rights were infringed....................................2

        2.   Sanho's arguments are legally and factually wrong. ...........................6

            a.   Sanho cannot amend its complaint through the pretrial
                 order. ....................................................................................6

            b.   KaiJet Defendants did not include common law
                 trademark infringement in their pretrial order. ........................9

            c.   Common law unfair competition is not limited to
                 assertion of common law trademark rights.............................10

            d.   Two scant references to "secondary meaning" does not
                 give notice that Sanho asserted common law trademark
                 rights....................................................................................12

    B. KaiJet Defendants' Motion for JMOL on Sanho's Claim for
       Infringement of the '875 Patent for to Failure to Satisfy the Statutory
       Prerequisites of Joining All Co-Owners.....................................................13

        1.   As Daniel Chin is a co-inventor of the '875 Patent, he has been a
             co-owner since its date of issue. .....................................................13

        2.   Evidence of an assignment made on the eve of trial must be
             excluded. .........................................................................................14

        3.   Even if the assignment is valid and received in evidence, Sanho
             failed to meet the statutory requirement as of the time of filing
             this suit. ...........................................................................................16

    C. Sanho is Precluded From Seeking Pre-Suit Damages For Its
       Trademark Claims. .....................................................................................18

    D. KaiJet Defendants Move for JMOL as to Sanho's Copyright Claim..........19

E. KaiJet Defendants Move for JMOL of Noninfringement of the '875
Patent and '618 Patent. ..................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABC Corp. I v. The P'ships*,
  52 F.4th 934 (Fed. Cir. 2022) ...................................................................21

*AntennaSys, Inc. v. AQYR Techs., Inc.*,
  976 F.3d 1374 (Fed. Cir. 2020) ..........................................................13, 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................2

*Bos. Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*,
  510 F.2d 1004 (5th Cir. 1975) ..................................................................12

*Carvel v. Godley*,
  404 F. App'x 359 (11th Cir. 2010) .............................................................2

*Chapman v. AI Transp.*,
  229 F.3d 1012 (11th Cir. 2000) ..................................................................1

*Christopher v. Fla.*,
  449 F.3d 1360 (11th Cir. 2006) ..................................................................1

*Drone Techs., Inc. v. Parrot S.A.*,
  838 F.3d 1283 (Fed. Cir. 2016) ................................................................14

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008) ............................................................21, 22

*Emerson Elec. Co. v. Sipco, LLC*,
  No. IPR2016-00984, 2020 WL 407144 (PTAB Jan. 24, 2020) .........................16

*Enzo APA & Son, Inc. v. Geapag A.G.*,
  134 F.3d 1090 (Fed. Cir. 1998) ................................................................17

*Erickson v. Pardus*,
  551 U.S. 89 (2007)......................................................................................2

*Ethicon, Inc. v. United States Surgical Corp.*,
  135 F.3d 1456 (Fed. Cir. 1998) ................................................................13

*FN Herstal SA v. Clyde Armory Inc.*,
    838 F.3d 1071 (11th Cir. 2016) ............................................................6

*Gilmour v. Gates, McDonald & Co.*,
    382 F.3d 1312 (11th Cir. 2004) ............................................................2

*Grayson v. K Mart Corp.*,
    79 F.3d 1086 (11th Cir. 1996) .............................................................7

*Isr. Bio-Eng'g Project v. Amgen, Inc.*,
    475 F.3d 1256 (Fed. Cir. 2007) .........................................................14

*London v. Fieldale Farms Corp.*,
    No. Civ. 2:01-CV-202-WCO, 2003 WL 23750660 (N.D. Ga. Dec.
    22, 2003), *aff'd,* 410 F.3d 1295 (11th Cir. 2005) ................................1

*Minter v. Prime Equip. Co.*,
    451 F.3d 1196 (10th Cir. 2006) ............................................................7

*MyMail, Ltd. v. Am. Online, Inc.*,
    476 F.3d 1372 (Fed. Cir. 2007) .........................................................16

*Paradise Creations, Inc. v. UV Sales, Inc.*,
    315 F.3d 1304 (Fed. Cir. 2003) ....................................................16, 17

*Parker v. Hinton*,
    2023 U.S. App. LEXIS 1931 (6th Cir. 2023) .....................................20

*Reeves v. Sanderson Plumbing Prod., Inc.*,
    530 U.S. 133 (2000).............................................................................1

*Roche Palo Alto LLC v. Ranbaxy Lab'ys Ltd.*,
    551 F. Supp. 2d 349 (D.N.J. 2008).....................................................16

*Shum v. Intel Corp.*,
    629 F.3d 1360 (Fed. Cir. 2010) .........................................................14

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ...........................................................20

*Sosa v. Airprint Sys., Inc.*,
    133 F.3d 1417 (11th Cir. 1998) ...........................................................8

*State Treasurer of Mich. v. Barry*,
    168 F.3d 8 (11th Cir. 1999) ...................................................................6

*Swoope v. CSX Transp., Inc.*,
    666 F. App'x 820 (11th Cir. 2016) ......................................................1

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*,
    889 F.2d 1018 (11th Cir. 1989) ..........................................................11

*Tana v. Dantanna's*,
    611 F.3d 767 (11th Cir. 2010) ............................................................11

*Thornton v. Wolpoff & Abramson, LLP*,
    No. 1:05-CV-0001-RWS, 2006 WL 8431895 (N.D. Ga. Sept. 5,
    2006) .................................................................................................7, 8

**Statutes**

15 U.S.C. § 1111 ....................................................................................18, 19

15 U.S.C. § 1114 .........................................................................................3

15 U.S.C. § 1114(1) .....................................................................................3

15 U.S.C. § 1125(a) .....................................................................................2

35 U.S.C. § 256 ....................................................................................16, 17

15 U.S.C.A. § 1052 ....................................................................................12

15 U.S.C. § 1111 (Lanham Act § 29) ......................................................19

15 U.S.C. § 1125 .........................................................................................4

**Other Authorities**

37 C.F.R. 1.324 .........................................................................................17

Fed. R. Civ. P. 8 .....................................................................................2, 12

Fed. R. Civ. P. 15 .......................................................................................7

Fed. R. Civ. P. 16 .......................................................................................8

1 McCarthy on Trademarks and Unfair Competition § 11:53 (5th ed.) .................12

2 McCarthy on Trademarks and Unfair Competition § 19:145 (5th ed.)..................................................................................................19

3 McCarthy on Trademarks and Unfair Competition § 20:52 (5th ed.)..................12

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 504.2 (3d ed. 2021). ...........................................................20

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1509.3(E)(2) .....................................................................20

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices, Glossary ...............................................................................20

Pursuant to Federal Rule of Civil Procedures 50, Defendants Kaijet Technology International Limited, Inc. and Kaijet Technology International Corporation ("Defendants" or collectively, "KaiJet Defendants") move for Judgment as a Matter of Law ("JMOL") on all of Plaintiff's causes of action. KaiJet Defendants reassert each of the grounds for this motion as made on oral motion on July 12, 2024. In addition, KaiJet Defendants provide additional arguments on the following: (1) Sanho failed to ever allege infringement of a common law trademark in Hyperdrive; (2) the '875 Patent should be dismissed due to Daniel Chin's untimely assignment; and (3) Sanho failed to make a prima facie case of substantial similarity.

## I.    LEGAL STANDARD.

The standard for granting judgment as a matter of law mirrors that of the standard for granting summary judgment.[1] Therefore, "judgment as a matter of law 'is appropriate when a plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action.'"[2] Purely legal questions may be resolved by a motion for judgment as a matter of law.[3]

---

[1] *Chapman v. AI Transp.*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).
[2] *Swoope v. CSX Transp., Inc.*, 666 F. App'x 820, 822 (11th Cir. 2016) (quoting *Christopher v. Fla.*, 449 F.3d 1360, 1364 (11th Cir. 2006)).
[3] *London v. Fieldale Farms Corp.*, No. Civ. 2:01-CV-202-WCO, 2003 WL 23750660, at *1 (N.D. Ga. Dec. 22, 2003), *aff'd,* 410 F.3d 1295 (11th Cir. 2005).

## II.  ARGUMENT.

### A. No Common Law Trademark Infringement Claims.

#### 1.  Sanho never pled it had common law rights in Hyperdrive, much less that those supposed rights were infringed.

This Court previously recognized that there were no "allegations in either of Sanho's operative complaints that would put Kaijet US on notice that a common law trademark infringement claim is being asserted."[4] That is exactly right – there is **nothing** in Sanho's complaint alleging that Sanho owns common law trademark rights in "Hyperdrive," nor that it was asserting any such common law rights against KaiJet Defendants.

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint include "a short and plain statement of the claim."[5] The Supreme Court has held that this means the complaint must "give the defendant fair notice of what the…claim is and the grounds upon which it rests."[6] Sanho failed this requirement. Sanho's complaint did not give KaiJet Defendants fair notice that their 15 U.S.C. § 1125(a) claim (Count III) or their state law claims (Counts V-VII) were based on infringement of common law trademark rights in "Hyperdrive."

---

[4] ECF 513, at 36 n.99 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.")).

[5] Fed. R. Civ. P. 8(a)(2).

[6] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Carvel v. Godley*, 404 F. App'x 359, 361 (11th Cir. 2010).

Sanho's operative complaint alleging trademark infringement does not contain the words "common law rights" or "common law trademark."[7] What it does contain is a listing of Sanho's Intellectual Property, which is the (1) '875 and '616 Patents;[8] (2) the copyright registration;[9] and (3) the registered '707 Mark, which it referred to as the "HYPERDRIVE trademark."[10] Thus, references to "HYPERDRIVE trademark" or "HYPERDRIVE mark" are references to the registered 707 Mark. Cementing that this is the only reasonable interpretation of Sanho's complaint is their 15 U.S.C. § 1114 claim (Count II), as it is based on their "'HYPERDRIVE' mark, registration number 5,422,707 (the '707 Mark')." 15 U.S.C. § 1114 only allows for the assertion of a registered trademark by the registrant,[11] therefore "HYPERDRIVE mark" must refer to the registered 707 Mark.

With the above context, it is clear that none of the trademark-based claims gave KaiJet Defendants fair notice that any common law trademark was being asserted:

---

[7] ECF 89.

[8] *Id*. at ¶ 31.

[9] *Id*. at ¶ 32.

[10] *Id*. at ¶ 33 ("A true and correct copy of the Trademark Electronic Search System (TESS) record for the registration of the HYPERDRIVE trademark is attached hereto as **Exhibit C**.").

[11] 15 U.S.C. § 1114(1) ("Any person who shall, without the consent of the **registrant**…use in commerce any reproduction…of a **registered mark**…") (emphasis added).

- Count III (Lanham Act, 15 U.S.C. § 1125) only accuses KaiJet Defendants of "infringing on the **707 Mark** and trade dress."[12]

- Count V (GUDTPA) merely refers to misappropriation of "Sanho's…trademark"[13] and to "Defendant's use of Plaintiff's HYPERDRIVE."[14] Neither "trademark" nor "HYPERDRIVE"[15] put KaiJet Defendants on notice of the assertion of any common law trademark rights. The only reasonable reading is that these are references to the 707 Mark, as that is the only trademark right that has been described in the complaint.

- Count VI (Georgia Unfair Competition) only refers to Defendant's unauthorized use of "Plaintiff's…marking"[16] and "Plaintiff's…marks."[17]

---

[12] ECF 89, at ¶¶ 76-77 ("Defendant's use of the ULTRADRIVE name is a deliberate and willful effort to deceive, mislead, and confuse consumers to enable Defendant to trade-off of Plaintiff's reputation and goodwill in the HYPERDRIVE by infringing on the **707 Mark** and trade dress.").

[13] *Id*. at ¶ 96 ("The knowingly and willful misappropriation and use by Defendant of Sanho's multi-function docking station packaging, trade dress, and the copyright, **trademark**, and patent relating thereto…"). (emphasis added).

[14] *Id*. at ¶ 97.

[15] "HYPERDRIVE" by itself is used throughout the complaint to refer to the actual product itself. *See, e.g.*, ECF 89, at ¶ 32 ("The packaging containing the HYPERDRIVE is the subject of a United States copyright registration."), ¶ 35 ("Plaintiff presented the HYPERDRIVE at numerous trade shows…consumers who seek out and purchase Plaintiff's products including specifically the HYPERDRIVE and related products.").

[16] ECF 89, at ¶ 105.

[17] *Id*. at ¶ 106.

4

Once again, "marking" and "marks" fails to give notice to KaiJet Defendants as to the assertion of any common law trademark rights. To the extent Sanho argues that a single, undefined reference to "marks" put KaiJet Defendants on notice that more than one trademark right was being asserted, the only other trademark right referred to in its complaint is "Hyper"[18][19], *not* a common law trademark right in Hyperdrive.

- Count VII (Common Law Misappropriation and Unfair Competition) likewise only refers to "Plaintiff's trademarks."[20] For the same reasons as above, this failed to give KaiJet Defendants notice that this claim was based on a purported common law right in Hyperdrive.

In sum, Sanho's complaint only specifically identifies its registered 707 Mark. Sanho's later vague references to its "marking" or "trademarks" can only be interpreted as references to the 707 Mark. Therefore, Sanho's claims must be constrained to what they properly pled: infringement of its registered 707 Mark.

---

[18] *Id*. at ¶ 36 ("Plaintiff had been using the Hyper and HYPERDRIVE mark on its products…").

[19] Sanho does not assert that KaiJet Defendants infringe "Hyper."

[20] *Id*. at ¶ 112.

**2. Sanho's arguments are legally and factually wrong.**

Sanho has raised a number of arguments as to why they should be allowed to pursue infringement based on common law trademark rights in Hyperdrive. Each argument fails.

**a. Sanho cannot amend its complaint through the pretrial order.**

First, it is telling that Sanho's arguments are not focused on the operative complaint itself. As made clear above, that is because the complaint is devoid of support for an infringement claim based on common law trademark rights. Instead, Sanho argues that they included "numerous recitations to the unfair competition claim" in the pretrial order, and that the pretrial order "supersedes the pleadings." This misrepresents the facts and the law.

Sanho cites to *FN Herstal SA* in support of its argument that the pretrial order supersedes the pleadings.[21] But *FN Herstal SA* and the case law it relies on hold that "any claims not preserved in the pretrial order" are waived.[22] When a party "fails to adequately plead a claim," an "attempt to add a new claim to the pretrial order is the

---

[21] ECF 581, at 16 n.7 (citing *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1088–89 (11th Cir. 2016) (quoting *State Treasurer of Mich. v. Barry*, 168 F.3d 8, 9–10 (11th Cir. 1999))).

[22] "Thus, 'a pretrial order supersedes the pleadings,' thereby '**eliminating' any claims not preserved in the pretrial order**." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1088–89 (11th Cir. 2016) (quoting *State Treasurer of Mich.*, 168 F.3d at 9–10) (emphasis added).

equivalent of seeking leave to amend the complaint."[23] Therefore, "the same standards which govern the amendment of pleadings" apply.[24] Thus, leave should be denied if there is "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment."[25] Here, there is clear undue delay. This case started six years ago. Sanho has amended its complaint multiple times. There is no excuse for not having added this new common law trademark basis to one of its multiple previous complaints at some point in the last six years. There is also clear prejudice to KaiJet Defendants. Had KaiJet Defendants realized that Sanho was asserting common law trademark rights in Hyperdrive, KaiJet Defendants would certainly have litigated this case differently. KaiJet Defendants would have focused on whether Sanho gained secondary meaning in its mark, including procuring survey evidence from a trademark expert. KaiJet Defendants had no fair notice of the assertion of any common law rights, and thus were deprived of the opportunity to fully investigate and litigate common law trademark right issues.

---

[23] *Thornton v. Wolpoff & Abramson, LLP*, No. 1:05-CV-0001-RWS, 2006 WL 8431895, at *2 (N.D. Ga. Sept. 5, 2006).

[24] *Id*.; *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (holding that assertion of claim for the first time in the pretrial order should be evaluated under Rule 15).

[25] *Thornton v. Wolpoff & Abramson, LLP*, No. 1:05-CV-0001-RWS, 2006 WL 8431895, at *3 (N.D. Ga. Sept. 5, 2006) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1110 (11th Cir. 1996)).

The Eleventh Circuit has also held that when there is a Rule 16 Scheduling Order, "motions to amend made after a deadline fixed in that order must first be evaluated under the Rule 16 standard."[26] Therefore, Sanho must show good cause and seek leave from the Court.[27] The good cause standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking extension."[28] This Court entered a scheduling order which set the "Deadline to Amend Pleadings" as **March 4, 2019**.[29] Further, the scheduling order states:

> amendments to the pleadings "submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law."[30]

Through leave of court, Sanho was allowed to amend its complaint multiple times after the deadline set by the scheduling order. There is no good cause for why they could not have added common law trademark rights to its complaint years ago – there are no new facts, these alleged rights are not new. They cannot be allowed to add this claim now; that would significantly prejudice KaiJet Defendants' ability to defend against such a claim.

---

[26] *Thornton*, 2006 WL 8431895, at *3 (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)).

[27] Fed. R. Civ. P. 16(b)

[28] *Thornton*, 2006 WL 8431895, at *3 (quoting *Sosa*, 133 F.3d at 1418).

[29] ECF 42-1.

[30] *Id.*

### b. KaiJet Defendants did not include common law trademark infringement in their pretrial order.

Sanho argues that KaiJet Defendants (1) did not object to Sanho's inclusion of common law trademark infringement claims in its pretrial order; and (2) that "Defendants themselves included the unfair competition claim on both their proposed form of jury verdict and their proposed jury instructions."[31] Both arguments misrepresent the facts and KaiJet Defendants' position. KaiJet Defendants included their own statement of the case, which explicitly states that the trademark claims are based on infringement of the registered 707 Mark.[32] Similarly, KaiJet Defendants' Trial Brief only discusses the 707 Mark – there is no mention of common law trademark rights.[33]

Neither does KaiJet Defendants' jury instructions or verdict form make any reference or admission regarding any assertion of common law trademark rights in Hyperdrive. The pages cited by Sanho in KaiJet Defendants' jury instructions state that the Georgia and common law unfair competition claims are based on KaiJet

---

[31] ECF 581, at 16.

[32] ECF 527-6, at 10 ("Sanho has accused KaiJet US of infringing U.S. Trademark Registration No. 5,442,707 for the standard character mark HYPERDRIVE."); ECF 527-7, at 10.

[33] ECF 527-21, at 16 ("Sanho has alleged that KaiJet Defendants' various uses of "Ultradrive" on its USB-c hubs infringes the 707 Mark ("HYPERDRIVE")."), 23 ("As Sanho's state law claims are all based on the alleged infringement of its IP – the same IP covered in its patent, Lanham Act, and copyright claims – neither party will present any additional evidence specific to these claims.").

Defendants' "usage of 'Ultradrive'" and that the "claim has the identical requirements as the Trademark Infringement Claim and Federal Unfair Competition Claim" – both of which are based on the 707 Mark, *not* common law trademark rights.[34] KaiJet Defendants' proposed verdict form further confirms their position that only the 707 Mark is at issue. The verdict form contains a single section on Trademark infringement, which refers singularly to "Sanho's trademark" – i.e., the 707 Mark.[35] As to the Georgia State Law Claims, the verdict form only asks whether there was willful misconduct.[36] There are no separate questions for whether any common law trademark was infringed. Instead, the verdict form tells jurors to skip the Georgia State Law Claims if they did not find trademark infringement (based on the 707 Mark).[37]

### c. Common law unfair competition is not limited to assertion of common law trademark rights.

Sanho's counsel accused KaiJet Defendants' counsel of "blatant misrepresentation of what their instructions says[sic]" and pointed to KaiJet Defendants' instructions on Georgia Unfair Competition Law. This assertion is without merit. As explained above, KaiJet Defendants did include an instruction on Georgia and common law unfair competition. But the instructions on Sanho's

---

[34] ECF 560-1, at 108-110.
[35] ECF 560-2, at pp. 13-14.
[36] *Id*. at pp. 28-30.
[37] *Id*.

assertion that KaiJet Defendants infringed the registered 707 Mark. Sanho seems to confuse the difference between a common law cause of action and a common law trademark right. "[C]ommon law trademark rights… are appropriated only through actual prior use in commerce"[38] and "the scope of protection accorded [to a common law] mark is coextensive only with the territory throughout which it is known and from which it has drawn its trade."[39] In contrast, a common law cause of action – such as common law unfair competition – is a judicially created cause of action based on a history of prior court decisions (as compared to statutory causes of action). They are not one in the same, and KaiJet Defendants acknowledgement of a common law cause of action does not imply acknowledgement or notice of the assertion of a common law trademark right.

Sanho made a similarly misguided argument in their recent brief, arguing that "common law unfair uncompetition…is always treated as a common law trademark infringement claim."[40] Sanho cites no authority to support this assertion, as there is no case law. Sanho's pleading assert its federal registration under common law

---

[38] *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989).
[39] *Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010).
[40] ECF 581, at 16.

unfair competition, and that is permitted.[41] Sanho relies on mere implication to substitute for a plain statement of a claim.[42]

### d. Two scant references to "secondary meaning" does not give notice that Sanho asserted common law trademark rights.

Sanho's operative complaint makes two references to secondary meaning.[43] Sanho's counsel argued that these two references imply that common law trademark rights were being asserted. Not so. Even a registered mark, if it is descriptive, must have secondary meaning in order to be registered.[44] In fact, because the 707 Mark has not reached the status of incontestability, it may still be cancelled if it does not have secondary meaning.[45] Therefore, Sanho's assertion in its pleadings that the HYPERDRIVE mark has secondary meaning is properly understood to be in support of the validity of its registered mark – the 707 Mark. Without a plain statement that Sanho has **common law rights** in the Hyperdrive, the pleading is insufficient.

---

[41] *Bos. Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1008 (5th Cir. 1975) (the plaintiffs asserted "a cause of action for common law unfair competition" based on their "federal registration[s] of their team symbols as service marks.").

[42] Fed. R. Civ. P. 8(a)(2).

[43] ECF 89, at ¶¶ 35-36.

[44] 1 McCarthy on Trademarks and Unfair Competition § 11:53 (5th ed.) ("Under the Lanham Act, even if a designation is descriptive, it can be federally registered as a mark under the provisions of Lanham Act § 2(f), 15 U.S.C.A. § 1052 upon sufficient proof of secondary meaning.").

[45] 3 McCarthy on Trademarks and Unfair Competition § 20:52 (5th ed.) ("Thus, for Principal Register marks not yet five years on the register, cancellation may be based on any ground in the Lanham Act that would have barred registration in the first instance.").

## B. KaiJet Defendants' Motion for JMOL on Sanho's Claim for Infringement of the '875 Patent for to Failure to Satisfy the Statutory Prerequisites of Joining All Co-Owners.

### 1. As Daniel Chin is a co-inventor of the '875 Patent, he has been a co-owner since its date of issue.

For the same reasons explained in KaiJet Defendants' Motion for JMOL regarding the '616 Patent, Sanho fails its threshold requirement of having joined all co-owners as plaintiffs in this suit.[46] The uncontroverted evidence in this case establishes the following:

- On March 27, 2018, Alen Liao was listed as the sole inventor of the '875 Patent, with GoPod listed as the assignee;[47]

- On April 17, 2018, GoPod assigned its ownership to Sanho;[48]

---

[46] *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1378-1379 (Fed. Cir. 2020) ("'An action for infringement,' moreover, 'must join as plaintiffs all co-owners.'… Put simply, if AntennaSys does not meet the statutory requirements for bringing its patent infringement claim against AQYR, either because Windmill was not joined as a co-plaintiff or because AntennaSys does not adequately state a claim under the Patent Act against AQYR, we need not delve into the district court's claim construction.") (quoting *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998)).

[47] PTX 10, p. 1.

[48] PTX 21, p. 1.

- On November 22, 2022, the USPTO issued a Certificate of Correction, clarifying Mr. Chin's coinventorship and co-ownership[49] of the '875 Patent;[50] and

- No assignment of the '875 Patent from Daniel Chin to Sanho was ever produced in this case or entered into evidence at trial. The only evidence of assignment was Mr. Chin's limited, self-serving testimony that he believed he signed an assignment.[51]

Based on the above evidence, Sanho is not an exclusive licensee of the '875 Patent and therefore does not meet the statutory requirements to maintain its cause of action for infringement of the '875 Patent.

### 2. Evidence of an assignment made on the eve of trial must be excluded.

Sanho relies on surprise evidence that was never disclosed to KaiJet Defendants. The Court will recall that Sanho filed a trademark cancellation proceeding days before trial, despite knowing about the existence of KaiJet Taiwan's registered trademarks for years. Sanho's intent is clear: to surprise KaiJet Defendants

---

[49] *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016) ("When multiple inventors are listed on the face of a patent, 'each co-owner presumptively owns a pro rata undivided interest in the entire patent, no matter what their respective contributions.'") (quoting *Isr. Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007)); *Shum v. Intel Corp.*, 629 F.3d 1360, 1371 (Fed. Cir. 2010) (jury held that Shum was a joint inventor of five patents, and was therefore named a co-owner despite the other inventor having sold the patents to Intel for over $400M).
[50] PTX 17.
[51] Trial Transcript 7/10/24 Afternoon, at 63:4-64:24.

14

at trial, and prevent KaiJet Taiwan from properly resolving the cancellation proceeding prior to trial. That permitted Sanho's counsel Mr. Aalaei to disparage KaiJet Taiwan's registrations, while depriving KaiJet Defendants from mounting a proper defense. Sanho used the same tactic with its late disclosed assignment from Daniel Chin. Outside the jury's presence, Sanho's counsel supplied documentation that on July 1, 2024, Daniel Chin executed an assignment to Sanho, which was published by the USPTO on July 8, 2024 – on the literal eve of trial.[52] Still, Sanho waited another week to spring the assignment on KaiJet Defendants, mere moments before KaiJet Defendants started their case-in-chief.[53] The prejudicial effect is clear: Sanho's unreasonable tactics have deprived KaiJet Defendants from any discovery into the assignment and any time to prepare its case regarding the ownership of the '875 Patent. This Court's standing order explicitly prohibits:

> the presentation of evidence at trial that was requested and not revealed during the discovery period unless the Court orders such material to be produced after completion of the discovery period.[54]

KaiJet Defendants requested the production of documents related to ownership of the asserted patents, yet Sanho never produced this. Instead, Sanho waited to execute this assignment until it would be too late for KaiJet Defendants to react, and

---

[52] *See* Exhibit A (Assignment and Recordation of '875).
[53] Trial Transcript 7/15/24 Morning, at 11:16-12:4.
[54] Judge Grimberg's Current Standing Order Regarding Civil Litigation, p. 18 (April 1, 2024).

exacerbated the issue by failing to disclose the assignment once it was executed. For all of the above reasons, Sanho should be precluded from entering the purported assignment into evidence or from offering testimony on this tactically-late assignment. For the same reason, Daniel Chin's prior testimony regarding his assignment of the '875 Patent should be stricken from the record.

### 3. Even if the assignment is valid and received in evidence, Sanho failed to meet the statutory requirement as of the time of filing this suit.

As described above, all co-owners of a patent must be joined to a lawsuit in order to enforce the patent.[55] Moreover, "legal title to the patent" must be present "at the inception of the lawsuit" in order "to be entitled to sue for patent infringement."[56] Sanho did not have sufficient legal title to the '875 Patent when it was initially asserted, as Sanho was merely a co-owner with Daniel Chin. Certificates of correction issued pursuant to 35 U.S.C. § 256 have retroactive effect.[57] The certificate of correction that added Daniel Chin as an inventor to the '875 Patent was

---

[55] *AntennaSys, Inc.*, 976 F.3d at 1378-1379.

[56] *MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1375 (Fed. Cir. 2007) (citing *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003)).

[57] *Emerson Elec. Co. v. Sipco, LLC*, No. IPR2016-00984, 2020 WL 407144, at *9 (PTAB Jan. 24, 2020) ("Accordingly, by stating that a patent shall not be invalidated if inventorship is corrected, § 256 provides for retroactive effect of a certificate correcting named inventorship. By stating that the error shall not invalidate the patent, certificates issued under this section have retroactive effect in general."); *Roche Palo Alto LLC v. Ranbaxy Lab'ys Ltd.*, 551 F. Supp. 2d 349, 359 (D.N.J. 2008) (treating certification of correction as "a 1.324 petition pursuant to Section 256" and therefore gave "retroactive effect" to the inventorship change.).

issued pursuant to 35 U.S.C. § 256,[58] and therefore has retroactive effect. And to the extent Sanho argues the assignment is retroactive or nunc pro tunc, the Federal Circuit has held that "nunc pro tunc assignments are not sufficient to confer retroactive standing."[59] The Federal Circuit explains its reasoning:

> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.[60]

Accordingly, Sanho did not have complete title to the '875 Patent when it was first asserted, and any untimely assignment by Daniel Chin cannot rectify its initial lack of complete title and ownership in the '875 Patent. Therefore Sanho is not entitled to sue for infringement of the '875 Patent.

---

[58] PTX 16 ("Applicant hereby requests that the inventorship be corrected….pursuant to 37 CFR 1.324 under the authority of 35 U.S.C. 256.")

[59] *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093–94 (Fed. Cir. 1998).

[60] *Id.*; *see also Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003).

**C. Sanho is Precluded From Seeking Pre-Suit Damages For Its Trademark Claims.**

Pursuant to 15 U.S.C. § 1111, "a registrant of a mark registered in the Patent Office, may give notice that his mark is registered by displaying with the mark the words 'Registered in U.S. Patent and Trademark Office' or 'Reg. U.S. Pat. & Tm. Off.' or the letter R enclosed within a circle, thus ®."[61] Further, "in any suit for infringement [the Lanham Act] by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this Act unless the defendant had actual notice of the registration."[62] Daniel Chin testified that the packaging merely lists, "HyperDrive [i]s a trademark of Sanho Corporation."[63] An inspection of the Hyperdrive box itself reveals the same – though it says on the back of the box that "HyperDrive is a trademark of Sanho Corporation," it does not include the specific language as required by 15 U.S.C. § 1111.[64] Because Sanho failed to include the specific language of 15 U.S.C. § 1111, Sanho failed to provide notice through marking. Therefore, Sanho's profits are limited to the actual notice date: January 29, 2019.[65]

---

[61] 15 U.S.C. § 1111.
[62] *Id*.
[63] Trial Transcript 7/10/24 Morning, at 93:11.
[64] PTX 1.
[65] ECF 39.

Sanho has made reference to its registration giving "constructive notice." This is true, but this constructive notice does not put KaiJet Defendants on sufficient notice to seek damages. Professor McCarthy explains the difference in his treatise:

> The interrelationship of "constructive notice" under § 22 of the Act and "statutory" or "actual" notice under § 29 must be understood. Lanham Act § 22 says that federal registration gives "constructive notice of the registrant's claim of ownership." This puts the burden of searching federal registrations on every person who adopts a trademark. Registration alone entitles the registered mark to the procedural and substantive benefits of the Lanham Act. The mark owner can then obtain an injunction against an infringer, whether or not either "statutory" or "actual" notice has been given. Since injunctive relief is the standard remedy in trademark infringement suits, failure to give § 29 notice is usually not a great loss. **But if the owner of a federally registered mark wishes to recover damages or profits from infringers, § 29 notice must be given**.[66]

Therefore, Sanho's constructive notice via registration is irrelevant to when Sanho may seek disgorgement of profits for. It is the actual notice date, per 15 U.S.C. § 1111 (Lanham Act § 29), that dictates when the damages/profits period begins.

## D. KaiJet Defendants Move for JMOL as to Sanho's Copyright Claim.

The Copyright Office instructs that "a registration for a work of authorship only covers the material that is included in the deposit copy(ies)" and "does not cover authorship that does not appear in the deposit copy(ies), even if the applicant expressly claims that authorship in the application."[67] As such, the scope of the

---

[66] 2 McCarthy on Trademarks and Unfair Competition § 19:145 (5th ed.) (emphasis added).

[67] U.S. Copyright Office, Compendium of U.S. Copyright Office Practices

copyright is limited by the deposit copy submitted to the copyright office.[68] Practical treatment of deposit copies underscores their importance.[69] The United States Copyright Office is clear that deposit material of three-dimensional works should be submitted as photographs of the three-dimensional work.[70] Sanho's two-dimensional deposit copy circumscribes the scope of Sanho's copyright protection in this case.[71] On the issue of substantial similarity, the comparison is between Sanho's two-dimensional deposit and the j5create accused packaging.[72]

Sanho put forth no evidence or witnesses to compare its deposit copy to the j5create product packaging for substantial similarities. In fact, the only evidence Sanho puts forth in support of its copyright infringement claim is the comparison of its Hyperdrive three-dimensional product packaging to the j5create packaging. Therefore, Sanho has failed to make its prima facie case of infringement of its registered copyright.

---

("Copyright Office Compendium") § 504.2 (3d ed. 2021).

[68] *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1063 (9th Cir. 2020) (citing cases and explaining the purpose of a deposit); *see also Parker v. Hinton*, 2023 U.S. App. LEXIS 1931, *11-12 (6th Cir. 2023) ("[B]oth the 1909 and 1976 Acts require authors to deposit "complete" copies of the work to provide the Copyright Office with sufficient material to identify the work in which the registrant claims a copyright … [and] prevent confusion about which work the author is attempting to register.").

[69] *See id.*

[70] *See* Copyright Office Compendium § 1509.3(E)(2); *see also* Copyright Office Compendium, Glossary (Identifying material definition).

[71] *Skidmore*, 952 F.3d at 1064.

[72] *See id.*

### E. KaiJet Defendants Move for JMOL of Noninfringement of the '875 Patent and '618 Patent.

To prove infringement, a plaintiff must demonstrate, by a preponderance of the evidence that "an ordinary observer, familiar with the prior art … would be deceived into believing the [accused product] is the same as the patented design."[73] When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art."[74] "In other words, where a dominant feature of the patented design and the accused products … appears in the prior art, the focus of the infringement substantial similarity analysis in most cases will be on other features of the design.[75] The prior art provides a contextual "background" or a "frame of reference" that "can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer."[76] As a background feature, the "shared dominant feature from the prior art will be … insufficient by itself to support a finding of substantial similarity."[77]

Applying these standards in *Egyptian Goddess*, the Federal Circuit affirmed a grant of summary judgment to the alleged infringer, holding that "no reasonable fact-

---

[73] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008).
[74] *ABC Corp. I v. The P'ships*, 52 F.4th 934, 942 (Fed. Cir. 2022).
[75] *Id.*
[76] *Egyptian Goddess*, 543 F.3d at 678.
[77] *ABC Corp.*, 52 F.4th at 942.

finder could find [the plaintiff] met its burden of showing, by a preponderance of the evidence, that an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design."[78] This Court should enter a judgment as a matter of law of noninfringement of the '875 Patent and the '618 Patent for the same reasons.

**'875 Patent Noninfringement**. Sanho has accused the JCD382 product of infringing the '875 Patent.[79] No reasonable jury could find that the JCD382 patent infringes the '875 Patent. The only evidence that Sanho presented relating the '875 Patent to the JCD382 is Daniel Chin's self-serving statements that the JCD382 looks more like the '875 Patent than two prior art references, the '083 Patent and the '366 Patent.[80] This scant evidence is insufficient for any reasonable juror to conclude that an ordinary observer, familiar with the body of prior art, would be deceived into believing the JCD382 is the same as the '875 Patent design. Additionally, Professor Shankwiler presented ample evidence that the JCD382 and the '875 Patent are not confusingly similar in view of the prior art.[81] That evidence was not contested on

---

[78] *Egyptian Goddess*, 543 F.3d at 682.
[79] ECF 528-1, at 2 ("UltraDrive model JCD382 infringes U.S. Patent No. D813,875").
[80] Trial Transcript 7/10/24 Morning, at 88:21-91:8.
[81] Trial Transcript 7/10/24 Morning, at 92:3-97:17.

cross examination.[82] Therefore, Sanho has not provided any evidence by which a reasonable juror could conclude that the JCD382 infringes the '875 Patent.

**'618 Patent Noninfringement**. Sanho has accused two products of infringement of the '618 Patent, the JCD389 and the JCD382.[83] Sanho has offered no evidence that the JCD389 infringes the '618 Patent. The issue was not discussed by any witness, including Mr. Chin and Mr. Bressler. The only evidence that Sanho presented relating the JCD382 to the '618 Patent is Mr. Chin's statement that the JCD382 looks more like the '618 Patent than one piece of prior art.[84] This scant evidence is insufficient for any reasonable juror to conclude that an ordinary observer, familiar with the body of prior art, would be deceived into believing the JCD389 or JCD382 is the same as the '618 Patent design. Additionally, Professor Shankwiler presented ample evidence that the JCD389 and JCD382 are not confusingly similar to the '618 Patent in view of the prior art.[85] That evidence was not contested on cross examination.[86] Therefore, Sanho has not provided any evidence by which a reasonable juror could conclude that either the JCD382 or the JCD389 infringe the '618 Patent.

---

[82] Trial Transcript 7/16/24 Afternoon, at 52:5-59:1.
[83] ECF 528-1, at 2 ("UltraDrive models JCD382 and JCF 389 infringe U.S. Patent No. D644,618").
[84] Trial Transcript 7/10/24 Morning, at 92:20-93:1.
[85] Trial Transcript 7/10/24 Morning, at 100:25-106:21.
[86] Trial Transcript 7/10/24 Afternoon, at 52:5-59:1.

Respectfully submitted, this 17th day of July, 2024.

/s/ *Ryan P. Gentes*
Ryan P. Gentes
GA Bar No. 421695
Robert A. Madayag, III
GA Bar No. 123699
William B. Dyer III
GA Bar No. 236915
Steven Philbin
GA Bar No. 516724
James Avery Rollins
GA Bar No. 776439
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com
Email: robm@leehayes.com
Email: bill.dyer@leehayes.com
Email:  steven.philbin@leehayes.com
Email:  james.rollins@leehayes.com

Robert J. Carlson
WSBA Number 18455
Admitted Pro Hac Vice
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: carlson@leehayes.com

Rhett V. Barney
WSBA Number 44764
Admitted Pro Hac Vice
Johanna Tomlinson
WSBA Number 57582
Admitted Pro Hac Vice
Lee & Hayes, P.C.
601 W. Riverside Ave., Ste. 1400
Spokane, WA 99201
Telephone: (509) 324-9256
Email: rhettb@leehayes.com

24

Email:  johanna.tomlinson@leehayes.com

*Attorneys for Defendants*
*KaiJet Technology International Limited,*
*Inc. and KaiJet Technology International*
*Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2024, I filed a true and correct copy of the foregoing document with the CM/ECF filing system of this Court, which will serve an electronic copy to all attorneys of record.

/s/ *Ryan P. Gentes*

Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com

*Attorney for Defendants*
*KaiJet Technology International Limited, Inc.*
*and KaiJet Technology International*
*Corporation*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

/s/ *Ryan Gentes*

Ryan P. Gentes (GA Bar No. 421695)
LEE & HAYES, P.C.

*Attorney for Defendants*
*KaiJet Technology International*
*Limited, Inc. and KaiJet Technology*
*International Corporation*