## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, and STAR VIEW GLOBAL LIMITED,<br><br>    Defendants. | Civil Action No.<br>1:18-cv-05385-SDG |

## JURY INSTRUCTIONS

I.     **GENERAL, PART I**

   A.     **Introduction**

Members of the jury: It is my duty to instruct you on the rules of law that you must use in deciding this case. When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

   B.     **Names of the Parties**

In referring to the parties in the case, I will use the same names that I used in my preliminary instructions, and which the parties have been using throughout this case. The Plaintiff, Sanho Corporation, I will refer to as "Sanho." For the Defendants, I will refer to Defendant KaiJet Technology International Limited as "KaiJet US"; I will refer to Defendant KaiJet Technology International Corporation as "KaiJet Taiwan"; and I will refer to Defendant Star View Global Limited as "Star View." I will use the term "KaiJet Defendants" when I mean to refer to both KaiJet

US and KaiJet Taiwan. And I will use the term "Defendants" when I mean to refer to all three Defendants together.

### C.     Duty to Follow Instructions

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone. You must follow the law as I explain it—even if you do not agree with the law— and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

### D.     Direct and Circumstantial Evidence; Arguments of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and is not binding on you. You should not assume from anything I've said that I have any opinion about any

factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts. Your own recollection and interpretation of the evidence is what matters. In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions.

You should not be concerned about whether the evidence is direct or circumstantial. "Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There is no legal difference in the weight you may give to either direct or circumstantial evidence.

### E.    Credibility of Witnesses

When I say you must consider all the evidence, I do not mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point does not necessarily matter. To decide whether you believe any witness I suggest that you ask yourself a few questions:

    1.    Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

**F.    Impeachment of Witnesses**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial. But keep in mind that a simple mistake does not mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

### G.    Expert Witness

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter. But that does not mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion. When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witnesses where court testimony is given with regularity and represents a significant portion of the witness's income.

### H.    Burden of Proof – Preponderance of the Evidence

In this case it is the responsibility of Sanho to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion." A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Sanho's claim is more likely true than not true. If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Sanho.

Sanho has multiple claims in this case. You must consider each claim separately. In deciding whether any fact has been proved by a preponderance of

the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them. If the proof fails to establish any essential part of one of Sanho's claims by a preponderance of the evidence, you should find for the Defendants as to that claim.

## I.    Burden of Proof – Clear and Convincing Evidence

In this case, the Defendants assert the affirmative defenses of trademark invalidity and design patent invalidity. This means that even if Sanho proves its claims by a preponderance of the evidence, the Defendants can prevail in this case if they prove their affirmative defenses by the applicable burden of proof. You should consider each affirmative defense of each Defendant separately.

The Defendants must prove their affirmative defense of trademark invalidity by a preponderance of the evidence, which I have already defined for you. The Defendants must prove their affirmative defense of patent invalidity by "clear and convincing evidence." "Clear and convincing evidence" is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain.

I caution you that the Defendants do not have to disprove Sanho's claims, but if Sanho satisfies its burden of proof as to a claim and the Defendants raise an

affirmative defense on that claim, the only way the Defendants can prevail is if they prove that defense by the applicable burden of proof.

## II.    PATENT

### A.    Claim Interpretation

Sanho claims that the Defendants are liable for design patent infringement. The three patents at issue in this case are the following:

- United States Patent No. D807,290 ("the '290 Patent");

- United States Patent No. D844,618 ("the '618 Patent"); and

- United States Patent No. D813,875 ("the '875 Patent").

Defendants claim that Sanho's design patents are invalid. Before you decide whether the Defendants have infringed Sanho's patents or whether Sanho's patents are invalid, I will provide a brief explanation of design patents in general, and of Sanho's design patent claims in particular.

A design patent protects the ornamental design claimed by the designer. Design patents include figure drawings that are intended to define the scopes of the claimed designs. The scope of a claim encompasses the design's visual appearance as a whole, as well as the visual impression that it creates. A design claim does not cover any broad general design concepts. Features in the drawings depicted in solid lines contribute to the overall appearance of the claimed design. Features shown in broken lines are excluded from the claimed design. The various

features of the overall appearance of a design may perform a function. If such functional features are illustrated in solid lines, they are part of the claimed design based on how they contribute to the overall visual appearance.

For this case, you must consider three of Sanho's design patents. You must consider each patent separately. I will not provide a detailed verbal description of the designs claimed in Sanho's patents because each claimed design is better represented by its drawings than by a description. You are to rely on the drawings to determine the scopes of Sanho's design patents. Sanho's three design patents were admitted by stipulation of the parties as Plaintiff's Exhibits 9, 10, and 12.

## B.    Prior Art

In addressing some of the issues in this case, you will consider what is disclosed in the "prior art." "Prior art" means designs that were available to the public before the effective filing date of the claimed design.

The parties agree that the following admitted exhibits are prior art::

- As to all three patents: Plaintiff Exhibits 396, 397, 398, 399, 400, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 413, 425, and 432; and

- As to the '875 and '618 Patents only: Defense Exhibits 47, 735, and 738.

The parties dispute whether Defense Exhibits 140 and 722 are prior art. These designs are prior art if they were patented, described in a printed publication, or

in public use, on sale, or otherwise available to the public before the following dates:

- As to the '290 Patent: March 30, 2015;

- As to the '618 Patent: May 6, 2017; and

- As to the '875 Patent: December 13, 2016.

### C.    Infringement – General

I will now instruct you as to the law you must follow when deciding whether Sanho has proven infringement of the '290, '618, and '875 patents.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented design within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, Sanho alleges that the Defendants' products infringe Sanho's patents as follows:

- The '290 Patent by the JCD348, the JCD386, and the JCD388 products;

- The '618 Patent by the JCD382 and the JCD389 products; and

- The '875 Patent by the JCD382 product.

You have heard evidence about both Sanho's "HyperDrive" products and the Defendants' "UltraDrive" products. However, unless I have instructed you otherwise, in deciding the issue of infringement you are not to compare the

Defendants' products to Sanho's products. Rather, you must compare the Defendants' products (referred to as "accused product(s)") to each of the asserted patents.

To assert a claim for design patent infringement, Sanho must prove by a preponderance of the evidence that Daniel Chin assigned his interest as a co-inventor of the '875 Patent to Targus. If you find that Mr. Chin has not transferred his entire ownership interest to Targus, you must find for the Defendants as to the '875 Patent.

To show infringement of each of its patents, Sanho must prove by a preponderance of the evidence that an accused product is substantially the same as the patented design in the eye of the ordinary observer, such that the observer would be induced to purchase one product thinking it to be the other. You are instructed that the ordinary observer gives a product the attention that a purchaser of such a product would usually give.

You are further instructed that the ordinary observer is familiar with the prior art. You may find that the prior art is relevant or helpful in analyzing infringement. In some instances, it may be clear without reference to prior art that the accused product and the patented design are not substantially the same. However, in other instances it may be helpful to compare the accused product and the patented design to the prior art in determining whether the accused product

and the patented design are substantially the same. Because the ordinary observer is presumed to be familiar with the prior art, the ordinary observer may find significant differences between two designs that look the same to someone unfamiliar with the prior art.

### D.    Infringement – Willfulness

Sanho contends that the Defendants infringed the asserted patents willfully. You are only to consider the issue of willful infringement if you have found that the Defendants infringed the asserted patents. Not all infringement is willful. Whether a party acts willfully rests on a determination of the party's state of mind. To show willful infringement, Sanho must prove by a preponderance of the evidence that the Defendants knew that they were infringing the patent or acted in reckless disregard of Sanho's rights. In making this determination, you should consider all of the evidence, including any evidence regarding whether the Defendants acted maliciously, deliberately, or in bad faith.

### E.    Invalidity – General

If you find that any of the Defendants infringed any of Sanho's patents, you must consider the Defendants' affirmative defense of invalidity as to those patents. The Defendants have challenged the validity of the '290 and '618 Patents on the ground of obviousness. The Defendants have also challenged the validity of the '875 Patent on the grounds of indefiniteness and obviousness. The Defendants

have the burden of proving invalidity by clear and convincing evidence, which I defined earlier. You must evaluate and determine separately the validity of each of the patents.

### F.    Invalidity – Person of Ordinary Skill

When deciding whether Sanho's patents are invalid, you will be asked to consider "a person of ordinary skill in the field of invention." In this case, the field of invention is the design of hubs and docking stations. I will therefore refer to the person of ordinary skill in the field of invention as the "designer of ordinary skill." It is up to you to decide the level of ordinary skill necessary in this case. In making this decision, you should consider all the evidence, including the following factors:

- The levels of education and experience of persons working in the field of the design;

- The types of problems encountered in the field of the design; and

- The sophistication of the technology in the field of the design.

### G.    Invalidity – Indefiniteness

The law requires that a patent be written with enough clarity that a designer of ordinary skill can determine what the design looks like based on the patent's drawings and descriptions. This is known as the "definiteness" requirement. The Defendants contend that the '875 Patent is invalid because it fails to meet the definiteness requirement. To succeed on this contention, the Defendants must

prove by clear and convincing evidence that the '875 Patent, read in light of the visual disclosure, fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention. The amount of detail required for a claim to be definite depends on the particular design, the prior art, and the description of the drawings contained in the patent.

### H.    Invalidity – Obviousness – General

The law requires that no patent be issued for a design that would have been obvious at the time the design was created to a designer of ordinary skill. The Defendants contend that each of Sanho's patents are invalid because they are obvious. To show that the claimed invention is obvious, the Defendants must prove by clear and convincing evidence that a designer of ordinary skill, with knowledge of the prior art existing before the effective filing date of each patent, would have conceived of the design at that time. Obviousness may be shown by considering one or more items of prior art in combination. In making your decision regarding obviousness, you are to consider each of the following factors:

1.  The scope and content of the prior art. You must only consider prior art that is analogous to the patent that you are considering.

2.  Any differences between the prior art and the invention in the patent claim that you are considering.

3.  The level of skill of an ordinary designer.

In light of these factors, you must evaluate whether an ordinary designer would have been motivated to modify the prior art design to create the same overall visual appearance as the design patent you are considering. If so, that design patent is obvious. You must consider each patent separately. Your inquiry must focus on the visual impression of the claimed design as a whole and not on selected individual features. In deciding obviousness, you must not use hindsight; in other words, you may not consider what is known now or what was learned from Sanho's patents. In addition, you may not use Sanho's patents as a roadmap for selecting and combining items of prior art.

## I.    Invalidity – Obviousness – Additional Factors

In deciding obviousness, you may consider any of the following questions, to the extent that they are applicable. Any answers in the affirmative may indicate that the design you are considering is nonobvious.

1. Has the invention achieved commercial success? If so, is that success based on the invention itself, rather than on advertising, promotion, sales tactics, or features of the product other than those found in the claimed invention?

2. Did others copy the invention?

3. Did others in the field praise the invention or express surprise at the making of the invention?

No question alone is dispositive, and you must consider the obviousness or nonobviousness of the design as a whole.

**J.      Damages – General**

If you find that any of the Defendants infringed any of Sanho's patents,  you

must determine the amount of damages to award to Sanho for that infringement.

If you do not find that the Defendants infringed any valid claim of the patents, you

should not consider the question of damages.

**K.      Damages – Start of the Damages Period**

Sanho can recover damages only for infringement that occurred after it filed

the complaint accusing each party of infringing each patent. Sanho's complaints

were filed on the following dates:

- Accusing KaiJet US of infringing the '875 Patent, on May 25, 2018.

- Accusing KaiJet Taiwan of infringing the '875 Patent, on November 14, 2019;

- Accusing all three Defendants of infringing the '290 and '618 Patents, on May 19, 2020.

**L.      Damages – Defendants' Profit**

In this case, Sanho has elected to seek the KaiJet Defendants' profit for

infringement of the '875 Patent. If you find that the KaiJet Defendants infringed

the '875 Patent, and you find that the '875 Patent is valid, you are to award Sanho

the KaiJet Defendants' total profit attributable to infringement of the '875 Patent.

The KaiJet Defendants' "total profit" means the entire profit from the accused

product, and not just the portion of profit attributable to the design or ornamental

aspects of the patent. "Total profit" does not include profit attributable to other products that may be sold in association with the accused product. A design patent owner can recover the profit not only of the manufacturer or producer of the accused product, but also of other sellers in the chain of distribution.

Total profit is determined by subtracting deductible expenses from gross revenue. Gross revenue is all of the KaiJet Defendants' receipts from using Sanho's design in the sale of the accused product. Sanho has the burden of proving the KaiJet Defendants' gross revenue by a preponderance of the evidence. Deductible expenses can include costs incurred in producing the gross revenue, such as the cost of goods. Other costs may be included as deductible expenses if they are directly attributable to the sales of the accused product resulting in a nexus between the accused products and the expense. The KaiJet Defendants have the burden of proving the deductible expenses and the portion of the profit attributable to factors other than use of Sanho's design by a preponderance of the evidence.

## M.    Other Remedy

In this case, Sanho has elected not to seek damages for infringement of the '290 and '618 Patents. If you find that any of the Defendants infringed either of those patents and return a verdict for Sanho, I will determine an appropriate remedy for that infringement.

III.    **TRADEMARK**

A.    **Infringement**

Sanho claims that the KaiJet Defendants have infringed its registered trademark. I will note here that the Defendants had no duty to disclose this lawsuit to the United States Patent and Trademark Office. That duty belonged to the Court.

You are instructed and must accept as a fact that Sanho owns a federal registration of the trademark it seeks to protect in this action. As a result, Sanho's trademark is presumed to be entitled to protection. To show registered trademark infringement, Sanho must prove by a preponderance of the evidence that the KaiJet Defendants were using Sanho's trademark in a way that was likely to confuse consumers. That is, you must determine if the KaiJet Defendants, without Sanho's consent, used the same or a similar trademark in connection with the sale of, or the offer to sell, goods in a manner that was likely to cause confusion among consumers as to the source, origin, affiliation, approval, or sponsorship of the goods. "Source," "origin," "affiliation," "approval," or "sponsorship" means that the public believed that the KaiJet Defendants' goods came from, were affiliated with, were approved by, or sponsored by Sanho. It is not necessary that the trademark used by the KaiJet Defendants be an exact copy of Sanho's trademark. Instead, Sanho must demonstrate, by a preponderance of the evidence, that the

KaiJet Defendants use was, when considered in its entirety, likely to cause confusion as to the source, origin, affiliation, approval, or sponsorship of the goods in question.

There are seven factors you can utilize to determine whether a likelihood of confusion existed. No single factor or consideration controls, and Sanho is not required to prove all, or even most, of the factors are present in any particular case. I will now describe the seven factors for your consideration.

### 1.     Type and Strength of Sanho's Trademark

Trademarks come in different categories or "types." Some types of trademarks are stronger than others. The types of trademarks, in order of increasing strength, are as follows: "generic," "descriptive without secondary meaning," "descriptive with secondary meaning," "suggestive," "arbitrary," and "fanciful/coined." The type of a claimed trademark is relevant to the trademark's strength. The "stronger" the trademark, the more protection should be given to it.

In this case, you should presume that Sanho's trademark is at least "descriptive with secondary meaning." As a result, it is the KaiJet Defendants' burden to prove by a preponderance of the evidence that the trademark is weaker than "descriptive with secondary meaning": that it is either "generic" or "descriptive without secondary meaning." Sanho retains the burden of proving by a preponderance of the evidence that the trademark is stronger than "descriptive

with secondary meaning": that it is either "suggestive," "arbitrary," or "fanciful/coined." I will now describe each type of trademark in the order of its general relative strength.

### a.    "Generic"

A claimed trademark is generic if it is the word, name, symbol, device, or any combination thereof, by which the good commonly is known. An example of a generic trademark is "Movers" for the name of a moving company. Whether a claimed trademark is generic does not depend on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap. Whether a claimed trademark is a generic term is viewed from the perspective of a member of the public evaluating the trademark.

### b.    "Descriptive"

A "descriptive" trademark only describes an ingredient, quality, characteristic, function, feature, purpose, or use of the good provided under it. An example of a descriptive trademark would be "Vision Center" for the name of an eyeglasses store. There are two sub-types of descriptive trademarks: those that have acquired "secondary meaning," and those that have not. A trademark has acquired secondary meaning if the primary significance of the trademark in the mind of the consuming public is not the associated good itself, but instead the

source or producer of the good. There are four factors you may use in determining

whether a descriptive trademark has acquired secondary meaning:

1. The length and nature of the trademark's use;

2. The nature and extent of advertising and promotion of the trademark;

3. The efforts of the trademark owner to promote a conscious connection between the trademark and its business; and

4. The degree to which the public recognizes the good by the trademark.

### c. "Suggestive"

A "suggestive" trademark suggests, rather than describes, qualities of the

underlying good. If a consumer's imagination is necessary to make the connection

between the trademark and the goods then the trademark suggests the features of

the good. An example of a suggestive trademark is "Iceberg" for the brand name

of a refrigerator.

### d. "Arbitrary" and "Fanciful/Coined"

An "arbitrary" trademark is a real word but has no logical relationship to

the underlying goods. An example of an arbitrary trademark is "Domino" for

sugar. A "fanciful" or "coined" trademark is a work created solely to function as

a trademark but which has no meaning beyond the trademark itself. An example

of a fanciful or coined trademark is "Exxon" for gasoline.

### e.    Additional Considerations Relating to Trademark Strength

When evaluating the strength of Sanho's trademark, you may also consider the extent of any use by third parties of similar trademarks on related goods, Sanho's promotional expenditures, and the volume of Sanho's sales under its trademark.

### 2.    Similarity of the Parties' Trademarks

In evaluating whether trademarks are similar, you may consider the "overall impression" that Sanho's and the KaiJet Defendants' trademarks create, including the sound, appearance, and manner in which they are used. You may look at the trademarks as a whole rather than simply comparing their individual features.

### 3.    Similarity of the Parties' Goods

This factor considers not only whether the consuming public can readily distinguish between the parties' goods, but also whether the goods at issue are of a kind that the public attributes to a single source.

### 4.    Similarity of the Parties' Sales Channels, Distribution, and Customers

This factor considers where, how, and to whom the parties' goods are sold. Similarities increase the possibility of consumer confusion, mistake, or deception.

### 5.    Similarity of the Parties' Advertising Media

This factor looks to each party's method of advertising. It is not a requirement that Sanho and the KaiJet Defendants advertise in the same magazines, publications, or other advertising outlets. The issue is whether the parties use the same forums and media outlets to advertise, leading to possible confusion.

### 6.    The KaiJet Defendants' Intent

You may also consider whether KaiJet US and/or KaiJet Taiwan intended to infringe on Sanho's trademark. That is, did KaiJet US and/or KaiJet Taiwan adopt their trademark with the intention of deriving a benefit from Sanho's reputation? There is a difference between mere intentional copying and intentional copying with intent to cause confusion. Intent, or lack thereof, does not affect the eyes of the viewer. If you determine that KaiJet US and/or KaiJet Taiwan intentionally ignored the potential for infringement, you may impute to KaiJet US and/or KaiJet Taiwan an intent to infringe.

### 7.    Actual Confusion

Because the presence of actual confusion usually is difficult to show, a finding of actual confusion is not required to find trademark infringement. Alternatively, the absence of actual confusion does not necessarily mean the KaiJet Defendants are not liable for trademark infringement. The evidence of actual

confusion of trademarks should be reasonably significant. You should weigh the alleged actual confusion using the following factors:

1. The amount and duration of the confusion;

2. The degree of familiarity the confused party has with the goods;

3. The type of person complaining of the alleged actual confusion (for example, whether that person is a customer or a noncustomer); and

4. The alleged number of people who are actually confused.

You may also use factors other than these seven to determine whether actual confusion existed. You should weigh all of the relevant evidence in making this determination.

### B.    Invalidity

You must consider the KaiJet Defendants' affirmative defense of trademark invalidity. The KaiJet Defendants claim that Sanho's registration is invalid because the registered trademark was not in use in commerce in connection with the goods specified in the trademark application. A trademark application is required to specify the goods in connection with which the trademark is used. The identification of goods listed in a trademark application should be specific, definite, clear, accurate, and concise. If a trademark is not used in commerce in connection with any of the specified goods as of the date indicated by the trademark application, that trademark is invalid. You must determine whether the

KaiJet Defendants have proved by a preponderance of the evidence that Sanho's registration is invalid.

### C.    Damages

If you find that Sanho has proven that one or both of the KaiJet Defendants infringed Sanho's trademark, and that the KaiJet Defendants have not proven an affirmative defense of invalidity, then you must consider whether, and to what extent, damages should be awarded. You may award damages based on an accounting of the profits of the KaiJet Defendants if you find that:

1. The KaiJet Defendants' conduct was willful and deliberate; or

2. The KaiJet Defendants were unjustly enriched; or

3. An award of the KaiJet Defendants' profits is necessary to deter the KaiJet Defendants' future conduct.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalized on and appropriated the goodwill of a plaintiff. "Unjust enrichment" occurs if the defendant in question received a benefit to which it was not entitled.

In calculating the KaiJet Defendants' profits, you should use the same method that I instructed you to use in determining profits for patent infringement.

## IV.    COPYRIGHT

### A.    General

Sanho claims that the KaiJet Defendants have infringed its copyright. To show copyright infringement, Sanho must prove by a preponderance of the evidence that (1) Sanho owned a valid copyright in a work; and (2) the KaiJet Defendants copied the work's original components.

### B.    Authorship and Originality

To qualify for copyright protection, the claimed work must be original to the author. "Original" means only that the author independently created the work—the author didn't copy it from other works—and it possesses at least a minimal degree of creativity. The author of a copyright is the person who translates an idea into a fixed, tangible expression. A copyrighted work may have more than one author.

### C.    Effect of Registration

For original works created after 1977, the work is automatically copyrighted at the moment of creation—even if the work is never registered with the United States Copyright Office. But generally, no suit for copyright infringement can be brought if the copyright hasn't been registered. A certificate of registration made within five years after the first publication of the claimed work is evidence of the copyright's validity and the facts stated in the certificate. Specifically, the copyright registration creates a rebuttable presumption of validity, meaning that

25

it becomes the KaiJet Defendants' burden to prove that the claimed copyright is invalid by a preponderance of the evidence.

### D.  Ideas and Expression

Copyright protection does not extend to all the elements of a copyrighted work. Elements covered by the copyright protection are called "protected matter," and non-covered elements are "unprotected matter." Because unprotected matter is not entitled to copyright protection, another author may copy it.

There are various types of unprotected matter. They include:

- A portion of the work that isn't original to the author;

- A portion of the work that's in the public domain; and

- An idea, concept, principle, discovery, fact, actual event, process, or method contained in a work.

A work that is "in the public domain" is one that does not have copyright protection, so anyone may use all or part of it in another work without charge. In copyright law, it's important to distinguish between the ideas in a work and the author's expression of the ideas. The ideas in a work are unprotected matter. But an idea must be expressed in some way, and the expression or means of expression of an idea is protected matter.

For example, copyright law does not protect the idea of a determined captain hunting a giant whale. But copyright law does protect the particular expression of this idea in the book Moby Dick. Put another way, the author of a

work has no exclusive right to the underlying ideas, concepts, principles, discoveries, facts, actual events, processes, or methods contained in a work. But the author's copyright does extend to the means by which those are expressed, described, depicted, implemented, or otherwise communicated in the work. You should exclude any unprotected matter from the material on which Sanho's copyright infringement claim can be based.

### E.    Compilations and Collective Works

One way that Sanho can show that its work is entitled to copyright protection is by proving that its work is an original compilation. A copyright in a compilation includes the selection, arrangement, and coordination of preexisting materials or data, but excludes the preexisting materials themselves. So, in a compilation, any material contributed by the author of the compilation, and any original selection, arrangement and coordination of preexisting materials, are protectible matter. Any preexisting material is unprotectible matter. A compilation is not original, and therefore not entitled to copyright protection, if its selection, arrangement, and coordination of preexisting materials or data is typical, commonplace, or expected as a matter of course. For example, the arrangement of last names in a telephone directory in alphabetical order is not original, and would not be entitled to copyright protection.

### F.    The Merger Doctrine

As I just explained, as a general rule, an author can copy unprotected matter, but cannot copy the way that another author used to express that unprotected matter. An exception to this rule applies if the unprotected matter in a work can only be expressed in very few ways. In such cases, an author may copy another author's expression, but only to the extent necessary to express the unprotected matter. The KaiJet Defendants claim that this exception applies in this case.

This exception is called the "merger doctrine" because when there are very few ways of expressing unprotected matter, an author's expression is said to have "merged" with the unprotected matter. The merger doctrine applies to pictorial, graphic, and sculptural works when there are very few ways of representing certain sorts of objects. For example, a sculpture that depicts a mermaid will necessarily have certain similarities to other sculptures of mermaids. It will have a female human's head, arms, and torso, and the tail of a fish. These necessary similarities among sculptures of mermaids cannot, under the merger doctrine, be the basis for a finding of infringement because copyright law would then protect the idea of a mermaid.

### G.    Ownership – General Charge

Now that I've explained validity, we'll move to the issue of ownership. In this case Sanho must prove, by a preponderance of the evidence, ownership of a

copyright entitled "Retail Packaging of HyperDrive TB3 USB-C Hub for MacBook Pro," which I will call the "copyrighted work." Sanho can prove ownership by evidence showing that it is an author of the work.

### H.  Ownership – Work Made for Hire

Sanho claims ownership of the copyrighted work as a work made for hire. If the copyrighted work is a work made for hire, Sanho is considered the author and the copyright's owner. To prove ownership of a work for hire, Sanho must prove that Sanho's employee created the copyrighted work within the scope of the employee's employment.

If the employment status of the individuals who created the work is disputed, you should consider the following factors to determine whether the creators were Sanho's employees or independent contractors when the copyrighted work was created:

1. Sanho's right to control the way the work was accomplished. The less control Sanho exercised, the more likely it is that the creators were independent contractors.

2. The skill required to create the work. The more skills required of the creators, the more likely it is that the creators were independent contractors.

3. The source of the instruments and tools. The more the creators were required to use their own tools and instruments to create the work, the more likely it is that the creators were independent contractors.

4. The location of the work. The more the creators worked at Sanho's offices, the more likely it is that the creators were employees.

5. The duration of the relationship between the parties. The longer the creators worked for Sanho, the more likely it is that the creators were employees.

6. Whether Sanho has the right to assign additional projects to the creators. The more ability the creators had to refuse additional work from Sanho, the more likely it is that the creators were independent contractors.

7. The extent of the creators' discretion over when and how long to work. The more control the creators had over their working schedule, the more likely it is that the creators were independent contractors.

8. The method of payment. The more the creators worked for one-time project fees or on commission, the more likely it is that the creators were independent contractors.

9. The creators' role in hiring and paying assistants. The more the creators hired and paid for their own assistants, the more likely it is that the creators were independent contractors.

10. Whether the work is part of Sanho's regular business. The more the creation of the work was a regular part of Sanho's business, the more likely it is that the creators were employees.

11. Whether Sanho is a business. If Sanho was not a business, the creators were more likely independent contractors.

12. The provision of employee benefits. The more the creators participated in benefit plans Sanho provided (such as pensions or insurance), the more likely it is that the creators were employees.

13. The creator's tax treatment. If Sanho didn't withhold taxes from payments to the creators or didn't issue a

Form 1099 to the creators, the creators were more likely independent contractors.

No single factor should be considered conclusive on its own. And some factors may not apply to the circumstances in this case. If you find that someone who was not Sanho's employee at the time the copyrighted work was created is a co-author, you should find for Defendants on the issue of copyright infringement.

## I.    Infringement – Introduction to Elements

If you're persuaded that Sanho owns a valid copyright, you can consider whether the KaiJet Defendants improperly copied Sanho's copyrighted material. It is the burden of Sanho to show that the KaiJet Defendants infringed on its valid copyright. This is called "infringement" of a copyright. In this case, Sanho claims that the KaiJet Defendants infringed its copyright in Sanho's copyrighted work by copying parts of it and including the copied material in the KaiJet Defendants' packaging for its JCD382 product. To succeed on this claim, Sanho must prove that the KaiJet Defendants copied the parts of Sanho's copyrighted work that the law protects.

There are two ways in which Sanho can prove copying. First, Sanho can show direct evidence that the KaiJet Defendants actually copied the copyrighted material. For example, Sanho could introduce believable eyewitness testimony or an admission by the KaiJet Defendants. Or second, Sanho can show indirect or circumstantial evidence that the KaiJet Defendants copied its work. For example,

indirect evidence of infringement may be proof that the KaiJet Defendants tried to get a copy of Sanho's work and then published product packaging that is substantially similar to Sanho's product packaging. There are two ways to prove copying through circumstantial evidence. The first way is by proving both access and substantial similarity. The second way is by proving striking similarity.

### J.    Infringement – Access

I'll now discuss proving copying through access and substantial similarity. Sanho can show that the author of the accused packaging had "access" to its work by showing that the author of the accused packaging had a reasonable opportunity to see the work. It isn't necessary to show that the author of the accused packaging actually saw Sanho's work before creating its own work if the evidence reasonably establishes that the author of the accused packaging could have seen it and could have copied it. But you can't base a finding of access on mere speculation, conjecture, or a guess. To support a finding of access, there must be more than just a slight possibility of access. There must be a reasonable possibility of access.

### K.    Infringement – Substantial Similarity

Sanho must further prove "substantial similarity," that is, it must prove that the KaiJet Defendants' accused work is substantially similar to Sanho's protectable expression in the copyrighted work. The KaiJet Defendants' accused work is substantially similar in expression to Sanho's if an ordinary observer would

conclude that the KaiJet Defendants unlawfully took Sanho's protectable expression by taking material of substance and value. Even if the degree of similarity between Sanho's copyrighted work and the KaiJet Defendants' accused work is small in quantity, you can still find substantial similarity if the copied portions of Sanho' copyrighted work are important in quality. But if the KaiJet Defendants' copying is minimal or trivial, you should not find substantial similarity.

Sanho does not need to prove access and substantial similarity if it can prove "striking similarity." To prove "striking similarity," Sanho must prove that the KaiJet Defendants' packaging is so strikingly similar to Sanho's copyrighted packaging that the similarity is unlikely to have occurred unless there was copying. Sanho must prove that its packaging and the KaiJet Defendants' packaging's work are so strikingly similar that a reasonable person would assume that the KaiJet Defendants copied from Sanho's work and that there is no possibility of independent creation, coincidence, or prior common source. "Strikingly similar" is a greater degree of similarity than "substantially similar."

If Sanho shows either (1) that the author of the accused packaging had access to the copyrighted material and that there is substantial similarity between the two works, or (2) that the works are strikingly similar, then the burden of proof shifts to the KaiJet Defendants to prove that their work is an independent creation, and

not a copy. Proof that a work is an independent creation overcomes a presumption of copying.

### L.   Damages – General

If you find that Sanho has proved by a preponderance of evidence that one or both KaiJet Defendants have infringed Sanho's copyright, then you must determine whether Sanho has proved damages. If you find that Sanho has failed to prove its copyright infringement claim by a preponderance of the evidence, you will not consider the question of damages.

### M.   Damages – Disgorgement of Profits

Sanho is entitled to the KaiJet Defendants' profits that are attributable to the infringement you found. In calculating the KaiJet Defendants' profits, you should use the same method that I instructed you to use in determining profits for patent infringement, with one modification: for purposes of copyright damages only, Sanho must also show a causal relationship between the infringement of its copyright and the KaiJet Defendants' profits. Sanho's burden to show a causal connection is low, but the existence of a causal connection cannot be speculative. If you find that Sanho has failed to prove a causal connection between the infringement of its copyright and KaiJet Defendants' profits, you must not award any profits.

## V.    GEORGIA UNFAIR COMPETITION

Sanho claims that the KaiJet Defendants' usage of "Ultradrive" on its products constituted unfair competition under Georgia law.  To show unfair competition, Sanho must prove by a preponderance of the evidence

1.    that Sanho owns an unregistered trademark that is entitled to protection; and

2.    that the KaiJet Defendants are using a product name that infringes Sanho's unregistered trademark.

### 1.    Protectability

Sanho proves that it has protectable rights to an unregistered trademark if it proves by a preponderance of the evidence that the unregistered trademark is (a) used in commerce and (b) distinctive.

#### a.    Use in Commerce

Use in commerce is sufficient to establish rights if it is public enough that it identifies the goods in question as those of the person using the trademark. Wide public recognition of an unregistered trademark is not required, but secret or undisclosed use is not adequate. To establish valid rights, use in commerce must be consistent and continuous. Use must also be genuine: Mere "token use" of an unregistered trademark—use made solely to reserve rights in the trademark—is not enough to establish valid rights. Finally, use must be in connection with goods. An unregistered trademark is used in connection with goods when (i) it is placed on (A) the goods or their containers or the associated displays, (B) the tags or labels

affixed to the goods or their containers, or (C) the documents associated with the goods or their sale; and (ii) the goods are sold or transported in commerce in more than one state, or in the United States and a foreign country.

### b.   Distinctiveness

To be distinctive, an unregistered trademark must be recognized in its market as a trademark. The distinctiveness of an unregistered trademark depends on its type and strength, on which I have already instructed you. I will remind you that the types of trademarks, in order of increasing strength, are "generic," "descriptive without secondary meaning," "descriptive with secondary meaning," "suggestive," "arbitrary," and "fanciful/coined." An unregistered trademark is distinctive if it is "descriptive with secondary meaning," "suggestive," "arbitrary," or "fanciful/coined." An unregistered trademark is not distinctive if it is "generic" or "descriptive without secondary meaning." You must look at the unregistered trademark as a whole when evaluating distinctiveness.

### 2.   Infringement

Infringement of an unregistered trademark has identical requirements to infringement of a registered trademark, on which I have already instructed you.

If you find that Sanho owns a valid unregistered trademark and that the KaiJet Defendants have infringed it, then you must consider whether, and to what extent, damages should be awarded. Damages for infringement of an unregistered

trademark is calculated in the same way as damages for infringement of a registered trademark, on which I have already instructed you.

Sanho also seeks punitive damages from the KaiJet Defendants under this claim. In certain cases, there may be aggravating circumstances that may warrant the awarding of additional damages called punitive damages. Before you may award punitive damages, Sanho must prove that the KaiJet Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences. Sanho must prove that the KaiJet Defendants are liable for punitive damages by a higher standard than that for proof of other damages; that is, by clear and convincing evidence, which I have explained to you earlier.

If the plaintiff fails to prove, by clear and convincing evidence, that the defendant was guilty of willful misconduct, malice, fraud, wantonness, oppression, or entire want of care that would raise the presumption of conscious indifference to consequences, then you would not be authorized to award punitive damages. Punitive damages, when authorized, are awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant. In your verdict, you should specify whether you do or do not decide to impose punitive damages.

## VI.     GENERAL, PART II

### A.     Duty to Deliberate

Of course, the fact that I have given you instructions concerning the issue of Sanho's damages should not be interpreted in any way as an indication that I believe that Sanho should, or should not, prevail in this case. Your verdict must be unanimous—in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone. Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with. Remember that, in a very real way, you're judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

### B.     Election of Foreperson; Verdict Form

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court. A verdict form has been prepared for your convenience.

[Explain verdict form]

38

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom. If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible — either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.