# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br>                    Plaintiff,<br>    v.<br>KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.,<br>dba "j5create"; and DOES 1-100,<br>                    Defendants, | C.A. No. 1:18-cv-05385-SDG |
| SANHO CORPORATION,<br>                    Plaintiff,<br>    v.<br>KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.;<br>KAIJET TECHNOLOGY<br>INTERNATIONAL CORPORATION;<br>MAGIC CONTROL TECHNOLOGY;<br>STAR VIEW GLOBAL LIMITED,<br>each dba "j5create"; and DOES 1-100,<br>                    Defendants. | C.A. No. 1:20-cv-02150-TCB<br><br>(Consolidated Case) |

## PLAINTIFF SANHO CORPORATION'S
## MOTION FOR A DETERMINATION OF EXCEPTIONAL
## CASE AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES.................................................................................. iii, iv

I.      INTRODUCTION .........................................................................................1

II.     LEGAL STANDARD ...................................................................................1

III.    ARGUMENT.................................................................................................3

        A.  Sanho Is the Prevailing Party ...........................................................3

        B.  The Weakness of Defendants' Litigation Positions Supports a Finding
            that the Case Is Exceptional  ..................................................................3

                1.  Kaijet's Willful Patent Infringement Supports a Finding of
                    Exceptional Case.......................................................................3

                2.  Defendants' Counterclaims Were Exceptionally Meritless ..........5

                3.  Defendants' Experts Presented Unreliable Opinions...................9

                        a.  Antonio Sarabia Invented His Own Test for Secondary
                            Meaning that Contradicted Controlling Precedent  ................9

                        b.  Michael Pellegrino Baselessly Told the Jury that Awarding
                            Profits Against Kaijet Taiwan and Kaijet U.S. would be
                            "Double Counting" ................................................................9

        C.  The Unreasonable Manner in Which Defendants Litigated the Case
            Supports a Finding that the Case Is Exceptional.....................................11

                1.  Defendants' Counsel Lied to the Court.............................................11

                        a.  Defendants' Counsel Misrepresented the Contents of Sanho's
                            Third Amended Complaint to Push a Baseless Waiver
                            Argument.......................................................................................11

       b.  Defendants Falsely Told the Court at *Daubert* that Paul Franzon Would Not Testify that "Power Adapter" is Limited to AC-DC Converters. ................................................................................13

       c.  Antonio Sarabia Testified as to the Strength of the HyperDrive Mark after Defendants Filed a Declaration Stating that He Had Not Analyzed the Issue ............................................................14

    2.  Kaijet U.S.'s CEO Jessica Liu Repeatedly Lied to the Jury and the Court ............................................................................................15

    3.  Defendants Unreasonably Withheld Financial Data in Contravention of Multiple Discovery Orders ...................................17

    4.  Defendants Used Only 3.5% of Their Pretrial Order Trial Exhibits and a Similarly Low Percentage of Their Deposition Designations..21

    5.  Defendants Filed a Rule 12(c) Motion After Summary Judgment and Without Requesting Leave ........................................................21

    6.  Star View Violated the Court's Motion in Limine Order Barring Star View's Foreign vs. U.S. Sales Argument...................................22

  D.  Sanho Seeks Reasonable Attorneys' Fees and Costs of Approximately $1.2 Million, which Corresponds to the Claims in Which It Prevailed ..23

IV.   CONCLUSION............................................................................................25

## TABLE OF AUTHORITIES

*Cases:*                                                                    **PAGE**

*Atlanta Attachment Co. v. Leggett & Platt, Inc.*,
   No. 1:05-CV-01071-ODE, 2007 WL 9701130 (N.D. Ga. Oct. 19, 2007 .......... 24, 25

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*,
   853 F.2d 1557 (Fed. Cir. 1988) ........................................................ 4

*Blue Lake Recovery Co., LLC v. Pryor*,
   No. 1:20-CV-3460-SCJ, 2021 WL 9720591 (N.D. Ga. Nov. 30, 2021 ............ 2

*Central Soya Co. v. Geo. A. Hormel & Co.*,
   723 F.2d 1573, 1577-78 (Fed. Cir. 1983) ........................................ 23

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) .......................................................... 2, 3

*EagleView Techs., Inc. v. Xactware Sols., Inc.*,
   522 F. Supp. 3d 40 (D.N.J. 2021) ................................................ 5, 8

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
   438 F.3d 1354 (Fed. Cir. 2006) ................................................... 4

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
   355 F.3d 1327 (Fed. Cir. 2004) ................................................... 4

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*,
   464 F.3d 1339 (Fed Cir. 2006) .................................................. 24

*Luv n' Care, Ltd. v. Laurain*,
   98 F.4th 1081 (Fed. Cir. 2024) ................................................... 2

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ................................................... 11

*NetSoc, LLC v. Chegg Inc.*,
   No. 18-CV-10262 (RA), 2020 WL 7264162 (S.D.N.Y. Dec. 10, 2020) .......... 4

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ........................................................................ 2, 5

*Quicklogic Corp. v. Konda Tech.*,
  No. 21-CV-04657, 2024 WL 3408225 (N.D. Cal. July 12, 2024) ................... 8

*Shum v. Intel Corp.*,
  629 F.3d 1360  (Fed. Cir. 2010) ....................................................... 2,3

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
  No. 5:19-CV-243-H, 2022 WL 1447946 (N.D. Tex. Feb. 9, 2022) ................. 11

## ***Other:***

28 U.S.C. §1920 ...........................................................................25

35 U.S.C. § 285. ...................................................................1, 23, 25

## I.    INTRODUCTION

Plaintiff Sanho Corporation ("Sanho"), pursuant to Local Rule 54.2, 35 U.S.C. § 285, and the inherent equitable powers of the Court, hereby moves the Court to declare the instant case exceptional and to award Sanho its reasonable attorneys' fees and nontaxable costs.  Not only were Kaijet Technology International Limited ("Kaijet US"), Inc., Kaijet Technology International Corporation ("Kaijet Taiwan"), and Star View Global Limited ("Star View") (collectively, "Defendants") each found to have willfully infringed Sanho's '618 patent, and further to have infringed Sanho's copyright, but Defendants also engaged in a prolonged pattern of litigation misconduct that spanned from the early stages of the case through the closing arguments at trial.  Among other things, Defendants' counsel attempted to mislead the Court, Defendants' witnesses attempted to mislead the jury, Defendants improperly delayed the production of financial data for years, and Defendants asserted multiple baseless counterclaims.  In view of this record, the Court should award reasonable attorneys' fees and nontaxable costs to Sanho.

## II.    LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."[1]  "To be a 'prevailing party,' [Federal Circuit] precedent requires that the party have received at least some relief on the merits.  That relief must

---

[1] 35 U.S.C. § 285.

materially alter the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party."[2]

"An 'exceptional' case is 'simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[3]  "The determination of whether a case is 'exceptional' requires the consideration of 'the totality of the circumstances' on a case-by-case basis."[4] Exceptionality can be proved by a preponderance of the evidence.[5]

Attorneys' fees and costs also "may be sought under the equitable or inherent powers of the Court."[6]  "[A] court may assess attorney's fees when a party has, e.g., 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[7]  The award of attorneys' fees and costs pursuant to a Court's inherent power "serv[es] the dual

---

[2] *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010).

[3] *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1105 (Fed. Cir. 2024) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

[4] *Id.*

[5] *Octane Fitness*, 572 U.S. at 557 ("Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one.  Indeed, patent-infringement litigation has always been governed by a preponderance of the evidence standard, and that is the standard generally applicable in civil actions . . . .") (citation and quotations omitted)).

[6] Local Rule 54.2(A).

[7] *Blue Lake Recovery Co., LLC v. Pryor*, No. 1:20-CV-3460-SCJ, 2021 WL 9720591, at *1 (N.D. Ga. Nov. 30, 2021) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)).

purpose of vindicating judicial authority . . . and making the prevailing party whole for expenses caused by his opponent's obstinacy."[8]

## III.    ARGUMENT

### A.    Sanho Is the Prevailing Party.

Sanho is the prevailing party in this action, as it secured a finding of willful patent infringement with respect to the '618 patent against Defendants as well as a finding of copyright infringement, resulting in an award of approximately $1.385 million, including pre-judgment interest, and an injunction against further sales of Defendants' JCD382 and JCD389 products.[9]  Defendants, by contrast, did not prevail on any of their counterclaims against Sanho.  The fact that Sanho did not prevail on all of its claims is inconsequential to the prevailing party determination.[10]

### B.    The Weakness of Defendants' Litigation Positions Supports a Finding that the Case Is Exceptional.

#### 1.    Kaijet's Willful Patent Infringement Supports a Finding of Exceptional Case.

A finding of willful patent infringement is a strong indicator that a case is exceptional, and it is even sufficient on its own to support a finding of exceptional

---

[8] *Chambers*, 501 U.S. at 45.

[9] D.E. 634; D.E. 635.

[10] *Shum,* 629 F.3d at 1367-68 ("A party is not required, however, to prevail on all claims in order to qualify as a prevailing party under Rule 54.").

case and the award of attorneys' fees and costs.[11]  The Federal Circuit's "cases uniformly indicate that the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner."[12]

Here, the jury found that each of the Defendants willfully infringed the '618 patent with respect to their JCD382 and JCD389 products,[13] supporting the finding of exceptional case and the award of attorneys' fees and costs against each of the Defendants in the consolidated cases.[14]

Moreover, at least Kaijet U.S. exhibited animosity towards Sanho.  This was admitted at trial.[15]  In fact, numerous trial exhibits demonstrate that Kaijet U.S. acted with specific knowledge of Sanho and the HyperDrive, e.g.:  Plaintiff's Exhibits 33 ("I have studied [the HyperDrive] spec before"); 37, 39, 41 ("hyperdrive sku" emails);

---

[11] *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1374 (Fed. Cir. 2006) ("Because the district court did not clearly err in finding that Peterson willfully infringed the '159 patent, we affirm the district court's judgment of willful infringement and the award of attorney fees based principally thereon.").

[12] *Golight, Inc. v. Wal-Mart Stores, Inc*., 355 F.3d 1327, 1340 (Fed. Cir. 2004) (quoting *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc*., 853 F.2d 1557, 1567 (Fed. Cir. 1988)).

[13] D.E. 597-1, pp. 2-3.

[14] *NetSoc, LLC v. Chegg Inc*., No. 18-CV-10262 (RA), 2020 WL 7264162, at *7 (S.D.N.Y. Dec. 10, 2020) (awarding attorney's fees under Section 285 in consolidated cases).

[15] Trial Tr., 7/12 PM (Miller), 28:18-20 ("Q. So was there maybe a little animosity between you and Hyper in this moment?  A. Yeah. I think that's fair to say."); *id.* at 11:19-12:1 ("It's cutthroat for sure.").

4

57 ("Please help to buy the . . . Hyperdrive for us"); 72 ("Go get 'em"); 76 ("stealing" from our "friends"); 121 ("hammer the Ultradrive to death" and "There is no way they can keep up without getting killed."). Such animosity heightens the grounds for imposing an award of fees in this case.[16]

## 2.     Defendants' Counterclaims Were Exceptionally Meritless.

As the Supreme Court noted in *Octane Fitness*, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."[17] Here, Defendants pursued "exceptionally meritless" counterclaims to drive up Sanho's litigation costs, including its counterclaims for false patent marking and false advertising.

As if Defendants did not already know of the fatal weaknesses of these counterclaims from the outset, Sanho pointed out the frivolous nature of the claims in a motion for partial summary judgment, filed December 23, 2022.[18] Specifically, Sanho explained that the false patent marking claim was frivolous at least because there was no evidence whatsoever of competitive injury, a critical element of the cause of action.[19] On the contrary, Sanho pointed out that the Kaijet Defendants' 30(b)(6) representative confirmed that they did not suffer *any* competitive injury as

---

[16] *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 69 (D.N.J. 2021).
[17] *Octane Fitness*, 572 U.S. at 546.
[18] D.E. 318-1.
[19] *Id.* at 17-19.

the result of the marking and that they were not even aware of the marking at the time it allegedly occurred.[20]

With respect to the false advertising claim, Sanho similarly explained in the original 2022 motion for partial summary judgment that Defendants could not prevail because, *inter alia*, Defendants presented no evidence that they had suffered any harm from the allegedly false Amazon.com reviews (where they did not sell any products), Defendants presented no competent evidence of consumer deception, and Defendants failed to establish that anything in the reviews was actually false.[21]  Defendants' demand for *$25 million* based on this claim—making it by far the largest dollar-value claim at issue in the litigation—was thus untethered from reality and the epitome of "exceptionally meritless."[22]

Even in the face of the weaknesses exposed by the *first* summary judgment motion, Kaijet continued to maintain these baseless counterclaims in their entirety. This in turn forced Sanho to incur the time and expense of preparing and filing a *second* motion for summary judgment on these same counterclaims in response to the Court's directive.[23]

---

[20] *Id.* at 17.
[21] *Id.* at 7-13.
[22] *Id.* at 12-13.
[23] *Compare* D.E. 318-1 *with* D.E. 439-1.

Upon review of the evidence, or lack thereof, the Court granted summary judgment dismissing these counterclaims with prejudice based on Kaijet's *lack of evidence* to substantiate its counterclaims.[24]  It found, for example, that "Defendants [did not] attempt to rebut the sworn testimony of Kaijet US's own officer and shareholder that Kaijet US has not been economically disadvantaged by Sanho's patent marking."[25]  It similarly found that "[n]o [] evidence ha[d] been produced" that "Sanho's alleged fake reviews caused consumers to buy Sanho's products instead of j5create's."[26]  The Court thus confirmed what Sanho had made explicit years before, and what both parties knew for long before that, namely that Defendants' counterclaims were meritless wastes of time and resources.  Defendants should not have required Sanho to *file*, much less *refile* its summary judgment motion, and they should not have required the Court to expend the time and effort required to *rule* on Sanho's successful summary judgment motion.  Rather, Defendants should have withdrawn the counterclaims by no later than December 23, *2022*.[27]

Moreover, Kaijet also asserted a counterclaim for trademark invalidity based on a theory of abandonment and failure to police the HyperDrive® mark.[28]  At trial,

---

[24] D.E. 513, pp. 59-64.

[25] *Id.* at 64.

[26] *Id.* at 61.

[27] *See* D.E. 318.

[28] *See* D.E. 115, ¶¶ 82-85.

Kaijet lacked evidence to support this counterclaim and abandoned it, again having wasted Sanho's resources responding to the baseless counterclaim for several years.

These frivolous counterclaims were the basis of significant and avoidable e-discovery[29]—including e-discovery of Sanho's email communications—and depositions (e.g., Kaijet's depositions of Kelvin Chow and Lisa Nyugen). They were also the basis for Kaijet's expert report quantifying the damages as $25 million,[30] forcing Sanho to expend time and money needlessly on an expert rebuttal report on damages.[31] The Defendants therefore "litigated this case in a manner that ignored the weaknesses of their own positions, advanced unreasonable arguments, and forced [Sanho] to spend significant sums rebutting those unreasonable positions and arguments," further warranting a finding of exceptional case and the award of attorney's fees and costs.[32]

---

[29] *See, e.g.*, **Exhibit A**, Defendants' Second Requests for Admission Nos. 37-54; **Exhibit B**, Defendants' Fifth Interrogatories Nos. 21-25; **Exhibit C**, Defendants' Third Requests for Production Nos. 63-69.
[30] D.E. 439-26 (Pellegrino Declaration), ¶ 87.
[31] D.E. 439-2, ¶ 30; D.E. 439-6; D.E. 482-1, ¶ 30.
[32] *EagleView Techs.,* 522 F. Supp. 3d at 69; *see also Quicklogic Corp. v. Konda Tech.*, No. 21-CV-04657, 2024 WL 3408225, at *6-7 (N.D. Cal. July 12, 2024) (weakness of counterclaims supported exceptional case determination).

**3.    Defendants' Experts Presented Unreliable Opinions.**

**a.    Antonio Sarabia Invented His
Own Test for Secondary Meaning
that Contradicted Controlling Precedent.**

Defendants served an expert report by Mr. Sarabia opining on whether Sanho's "Hyper" and "HyperDrive" trademarks had acquired secondary meaning.[33]  The Court struck that opinion because it used a methodology that contradicts Eleventh Circuit law, stating, "Sarabia's testimony, in effect, displaces the Eleventh Circuit's nonexclusive four-factor test with an exclusive two-factor test."[34]  Defendants' and Sarabia's decision to displace the established Eleventh Circuit law on secondary factors with Sarabia's exclusive two-factor test caused Sanho's counsel to have to expend needless hours addressing this issue, including in deposition, in the *Daubert* proceedings, and when compiling the pre-trial order.

**b.    Michael Pellegrino Baselessly Told the Jury
that Awarding Profits Against Kaijet Taiwan
and Kaijet U.S. Would Be "Double Counting."**

Mr. Pellegrino testified that "My job is to help do the math without passion or prejudice about what the value of [the case claims are]."[35]  He also testified that he assumed liability for each cause of action he evaluated.[36]  Despite Mr. Pellegrino's

---

[33] D.E. 521-1
[34] D.E. 571, at 5-7.
[35] Trial Tr., 7/16 PM (Pellegrino), at 124:21-23.
[36] *Id.*, at 130:4-10 and 135:13-17.

mission statement, his "job" seemingly was to persuade the jury that Kaijet Taiwan was not liable for any infringer's profits because Mr. Cenatempo supposedly "double counted" infringer's profits.[37]  This was junk science[38] parading as expert opinion before the jury, asserting (falsely) that if Kaijet U.S. is being divested of its profits, it would be "double counting" to disgorge Kaijet Taiwan's profits.[39]  This litigation tactic ultimately failed because Kaijet Taiwan's profits were from entirely different transactions than Kaijet U.S.'s profits, rendering any "double counting" extraneous to the facts of this case.[40]  It also failed because it collided head-on with one of this Court's instructions to the jury, which stated that Sanho "can recover the profit not only of the manufacturer or producer of the accused product but also of other sellers in the chain of distribution."[41]  Sanho was again forced to expend considerable time and effort refuting the novel and meritless theory devised by Defendants and Mr. Pellegrino.

---

[37] *Id.*, at 137:17-138:6.
[38] Trial Tr., 7/17 AM (Cenatempo), at 31:5-33:2.
[39] Trial Tr., 7/16 PM (Pellegrino), at 144:14-145:17, and Trial Tr., 7/17 AM (Pellegrino), at 15:2-17, and 26:1-27:3.
[40] Trial Tr., 7/17 AM (Pellegrino), at 25:7-18, 30:4-31:4.
[41] Trial Tr., 7/18 AM, at 22:22-23:2.

**C.    The Unreasonable Manner in which Defendants Litigated the Case Supports a Finding that the Case Is Exceptional.**

**1.    Defendants' Counsel Lied to the Court.**

**a.    Defendants' Counsel Misrepresented the Contents of Sanho's Third Amended Complaint to Push a Baseless Waiver Argument.**

Misrepresentations by counsel to the Court, coupled with other litigation misconduct, will give rise to an exceptional case finding.[42]  One district court that found a case to be exceptional, for example, referred to how a party "flatly lied to the Court" in opposing a motion to dismiss at the outset of the case.[43]  Defendants' conduct in this case was similarly dishonest—but *repeatedly* so—further warranting a finding of exceptional case and an award of attorneys' fees and costs.

At the informal charging conference, counsel for the Kaijet Defendants stated, "What's clear from their complaint is that it *never* says common law rights. The *only* trademark it talks about is the *registered* mark."[44]  Later, as part of the direct verdict motion presented on July 17, 2024, counsel for the Kaijet Defendants (falsely)

---

[42] *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919–20 (Fed. Cir. 2012) ("MarcTec engaged in litigation misconduct when it: (1) misrepresented both the law of claim construction and the constructions ultimately adopted by the court; and (2) introduced and relied on expert testimony that failed to meet even minimal standards of reliability, thereby prolonging the litigation and the expenses attendant thereto").

[43] *Soar Tools, LLC v. Mesquite Oil Tools, Inc*., No. 5:19-CV-243-H, 2022 WL 1447946, at *10 (N.D. Tex. Feb. 9, 2022) (misrepresentations regarding Diamond D's ownership, among others, rose to the level of unreasonable conduct warranting a finding of exceptionality).

[44] Trial Tr., 7/15 PM, (informal charging conference), at 154:6-8 (emphasis added).

11

advised the Court that Sanho's pleadings *exclusively* referred to the Hyperdrive

trademark as the "707 Mark."[45]  Kaijet counsel flatly told the Court that "by the time

we get down to the Georgia State law claims … there's *no other reference to a*

*trademark other than the '707 mark*."[46]  These misrepresentations were *not* merely

advocacy; they were utterly false statements to the Court.[47]  And they were oft-

repeated to the Court over a period of three days leading up to the Court's ruling on

the directed verdict motion.[48]

    Moreover, in their haste to have the Court dispense with the state law unfair

competition claim, at the informal charging conference, Kaijet Defendants' counsel

further misrepresented to the Court the basis for the Kaijet Defendants' having

submitted a jury verdict form and their own jury instructions relating to the state law

unfair competition claim by stating that the reason for their proposed instructions and

jury verdict form related to a common law *trade dress* claim.[49]  Sanho's counsel was

forced to alert the Court to this false statement.[50]

---

[45] Trial Tr., 7/17 AM, at 104:4-9; at 105:1-4, and 105:16-18.

[46] *Id*., at 104:6-9 (emphasis added).

[47] *See* D.E. 89, ¶¶ 94-115; Trial Tr., 7/17 AM (directed verdict argument rebutting Defendants' position), at 115:21-119:9

[48] Trial Tr., 7/17 PM (direct verdict rulings), at 5:20-6:9.

[49] Trial Tr., 7/15 PM, at 155:24-156:14 ("to the extent we've included in jury instructions is based on common law *trade dress*") (emphasis added).

[50] *Id*., at 156:23-157:8 ("So, Your Honor, I mean, this is blatant misrepresentation of what their instruction says. Page 108 of Docket Entry 560-1 is entitled Georgia Unfair Competition Claim.  Listen to what it says: "Sanho claims that the KaiJet defendants'

The Court ultimately rejected the Defendants' position, finding that "there are important differences between the allegations of federal versus state law trademark infringement" in the Third Amended Complaint.[51]  In other words, when the Court carefully reviewed the document itself, it saw that Defendants had been repeatedly misrepresenting its contents.

> **b.    Defendants Falsely Told the Court at *Daubert* that Paul Franzon Would Not Testify that "Power Adapter" Is Limited to AC-DC Converters.**

During the *Daubert* proceedings, Defendants told the Court that although "'[g]enerally, a power adapter also converts AC current to DC current,' [Dr. Franzon's] opinion that the HyperDrive is not a power adapter *was not based on that generalization*."[52]  Rather, Defendants argued that "Franzon defined a power adapter, as it is commonly known, as a[ny] device that 'plugs into an electrical outlet' and is 'an external power supply for an electronic device,'" which would include, e.g., "car charger[s]" that do not convert AC current to DC current.[53]

Defendants' representation to the Court regarding Dr. Franzon's testimony was false, as the trial record shows.  Mr. Carlson told the jury during his opening statement that the HyperDrive is "not a power adapter, because we know what a power adapter

---

usage of *UltraDrive* on its products constitutes unfair competition under Georgia law.") (emphasis added).
[51] Trial Tr., 7/17 PM (directed verdict motion rulings), at 5:20-6:9.
[52] D.E. 547, p. 8 (quoting D.E. 509-4, ¶¶ 84-85) (emphasis added).
[53] *Id.* at 8-9.

is, it's something that plugs into the wall and *supplies AC power to a DC source*."[54]

Then again at closing argument, Mr. Carlson reminded the jury, "If you'll recall Dr.

Franzon's testimony, he testified that power adapter is known, and the common term

is, this is an object that you plug into AC current or like your -- your laptop brick is

what he called it, *plug it into AC current, it puts out a DC current* that you can use to

power your computer."[55]  Defendants' misrepresentation to the Court regarding Dr.

Franzon's testimony is thus just another example of their habitual dishonesty during

this case.

> **c.    Antonio Sarabia Testified**
> **as to the Strength of the HyperDrive**
> **Mark after Defendants Filed a Declaration**
> **Stating that He Had Not Analyzed the Issue.**

During the *Daubert* proceedings, Defendants submitted a supplemental

declaration of Mr. Sarabia to assist in rebutting Sanho's motion to exclude his

testimony.[56]  That declaration explicitly stated that he "did ***not*** analyze the strength of

Sanho's HYPERDRIVE trademark registration."[57]  At trial, in an about-face from his

categorical denial to the Court, he testified that he had analyzed Sanho's Hyperdrive

---

[54] Trial Tr., 7/09 PM (opening statements), at 27:10-12 (emphasis added).
[55] Trial Tr., 7/18 AM (closing arguments), at 86:12-17 (emphasis added) (referencing, e.g., Trial Tr., 7/16 AM, at 32:22-33:2 (Franzon testimony)).
[56] D.E. 543-1.
[57] D.E. 543-1, ¶17 (emphasis added).

trademark and found it to be "relatively weak."[58]  Mr. Carlson then again emphasized that testimony in his closing argument, stating, "The other thing I want to talk about with respect to Mr. Sarabia's testimony was you'll recall that, you know, he did have the opinion that the mark was weak."[59]  Defendants' counsel and their expert thus again disregarded and contradicted their own representations to the Court.

### 2. Kaijet U.S.'s CEO Jessica Liu Repeatedly Lied to the Jury and the Court.

Jessica Liu testified at trial that she had studied the April 1, 2017 "Winstars spec" before she sent a June 28, 2017 email (Pl. Exhibit 30) that noted she had "studied this spec before," stating that the "spec" referenced in her email was the Winstars spec rather than the HyperDrive.[60]  Counsel for Defendants repeatedly elicited the April 1, 2017 date of the Winstars spec throughout the record.[61]  However, when confronted with the original version of the Winstars email (Pl. Exhibit 500) which established that Liu had not received the Winstars spec until July 24, 2017— after her "I studied this spec before" email—Liu was unable to resuscitate her testimony.[62]

---

[58] Trial Tr., 7/15 PM (Sarabia), at 68:12-22 ("one of the opinions you are tendering to the jury today is an opinion relating to the *relative strength* of the HyperDrive mark") (emphasis added).
[59] Trial Tr., 7/18 AM (closing arguments), at 92:22-24
[60] Trial Tr., 7/15 PM, at 95:25-104:6.
[61] *Id*.
[62] Trial Tr., 7/15 PM, at 106:1-112:7; 7/16 AM, at 11:24-25:9.

This was not the first time that Defendants attempted to mislead the Court on this issue. In Jessica Liu's February 7, 2023 declaration (D.E. 489), she again explicitly misrepresented that her "I studied this spec before" email referenced the Winstars spec that she admitted at trial she had not yet received.[63]

Jessica Liu also stated in a sworn declaration in support of Kaijet Taiwan's Motion to Dismiss that she is "not an officer, director, or manager of [Kaijet Taiwan and is therefore] not authorized to accept service on behalf of [Kaijet Taiwan]," but this too was false.[64] Rather, Ms. Liu was listed as "Manager" and "Contact" of Kaijet Taiwan in the FCC Registration System.[65] The FCC also determined Kaijet Taiwan to be "the same company" as Kaijet U.S.,[66] for which Ms. Liu is the CEO.[67] This and similar dishonesty by Ms. Liu and Defendants' counsel was the basis of Kaijet Taiwan's motion to dismiss and subsequent discovery disputes pertaining to Kaijet Taiwan.[68]

Another example of Ms. Liu's deception was Kaijet U.S.'s response to Sanho's Interrogatory No. 20, which Ms. Liu verified under penalty of perjury.[69] That

---

[63] D.E. 489, ¶ 3 (Liu SJ declaration); Trial Tr., 7/16 AM, at 1-4.
[64] D.E. 146-2, ¶ 4.
[65] D.E. 155-3
[66] D.E. 168-1, p. 2, n.1.
[67] D.E. 146-2, ¶ 2.
[68] *See, e.g.*, D.E. 111 (Order requiring Defendants to, e.g., "provide contact information . . . with regard to those requested individuals who serve as officers or key employees of Kaijet Taiwan").
[69] Pl.'s Ex. 439.

interrogatory required Kaijet U.S. to, *inter alia*, identify those "responsible for the concept, design, development, manufacture, sale, distribution, and marketing" of the accused products.  Ms. Liu responded by identifying certain individuals at Kaijet U.S., as well as Kaijet Taiwan generally, but did not identify Defendants' actual suppliers Magic Control Technology ("MCT") and Guon Hong, despite Ms. Liu having previously signed purchase orders from MCT and Guon Hong for various accused products.[70]  At trial, Ms. Liu admitted that "both [MCT and Guon Hong] are KaiJet Taiwan's supplier, and [] they work closely together,"[71] contradicting her sworn interrogatory response that made no mention of these entities.  This was thus yet another example of how Ms. Liu repeatedly lied under oath in an effort to shield the Defendants' partners from liability.

### 3.    Defendants Unreasonably Withheld Financial Data in Contravention of Multiple Discovery Orders.

Sanho first requested sales data and other relevant financial data from Defendants on August 24, 2018.[72]  Specifically, in requests directed to Kaijet U.S. and "any parent company, . . . subsidiary, affiliate," etc., Sanho requested "all DOCUMENTS relating to gross profit and cost information for each DOCKING STATION" and "all sales and financial reports for the APPLICABLE PERIOD,

---

[70] Pl.'s Ex. 132; Trial Tr., 7/12 AM, at 65:9-15.
[71] Trial Tr., 7/12 AM, at 65:18-23.
[72] **Exhibit D**, Sanho's First Requests for Production (1-42), dated August 24, 2018, p. 6 (¶¶ 3, 4).

RELATING TO each DOCKING STATION."[73]  *Eight months later* on April 15,

2019, Kaijet U.S. provided its formal responses to the requests for production and also

provided limited and highly redacted financial data that was inadequate for both

Kaijet Defendants.[74]  Although Kaijet U.S. stated in its response that its "search [wa]s

ongoing" and that it would "supplement production as additional documents, if any,

are identified," it never voluntarily did so (until close to the fact discovery cutoff date

of July 29, 2022, as discussed in more detail below).[75]  When Sanho brought the

matter of Kaijet U.S.'s nondisclosure of Kaijet Taiwan financial data to the Court,

Kaijet U.S. told the Court—*falsely*—that it did not have access to Kaijet Taiwan's

financial data.[76]  The Court rejected Kaijet U.S.'s representations, citing, e.g.,

evidence of common ownership between the two companies, the FCC's finding that

they are "the same company," and Jessica Liu's dual role in the two companies.[77]  The

Court therefore ordered Kaijet U.S., on July 29, 2020, to "respond to all discovery

requests made by Sanho—including all currently-pending and future requests—on

behalf of itself and KaiJet Taiwan."[78]

---

[73] *Id.*; *see also id.* at 2 (¶¶ 9, 10) and 3 (¶ 19).

[74] **Exhibit E**, Kaijet U.S.'s Responses to Plaintiff's First Requests for Production, dated April 15, 2019, pp. 6-7 (¶¶ 3, 4) ("Defendant herewith produces responsive, non-privileged documents . . . .").

[75] *Id.*

[76] D.E. 185, p. 28 ("purportedly [Kaijet Taiwan] will not permit KaiJet US to access [the requested documents]").

[77] *Id.* at 33-37.

[78] *Id.* at 39.

Kaijet U.S. proceeded to flout the Court's order, continuing to withhold important financial data. Sanho thus eventually served a set of requests for production on Kaijet Taiwan directly, on May 12, 2021.[79] Defendants again refused to comply with the request, and Sanho again brought the dispute to the Court on August 23, 2021.[80] Defendants responded by telling the Court—again, *falsely*[81]—that it had "produced documents relating to any Accused Products that KaiJet Entities know to have been made in, used in, sold in, offered for sale in, imported into, or entered the United States" and that it was merely withholding documents pertaining to products that "[n]ever touch[ed] the United States."[82] The Court rejected Defendants' argument and ordered them on August 26, 2021 to produce the requested documents by September 27, 2021.[83]

When Defendants finally produced the financial data, they provided it in an undecipherable and seemingly incomplete PDF printout rather than in the typical (native) excel format.[84] As Sanho's counsel explained to Defendants' counsel, "there

---

[79] **Exhibit F**, Sanho's Requests for Production to Kaijet Taiwan (1-17), dated May 12, 2021, pp. 10-11 (¶ 7) (requesting sales and cost information).

[80] D.E. 278

[81] The Court later determined that Kaijet Taiwan and Star View both shipped products into the United States, proving the falsity of Defendants' representation that Kaijet Taiwan's sales were unrelated to the U.S. market. D.E. 513, pp. 47-50 (finding, e.g., that "Kaijet Taiwan sold and shipped the allegedly infringing j5create products to the United States").

[82] D.E. 279, p. 1.

[83] Minute Order dated August 26, 2021 (no docket entry).

[84] *See* **Exhibit G**, Email from Ali Aalaei to Ryan Gentes, dated December 13, 2021.

were hundreds of PDF spreadsheet rows fragmented so that they cannot be read, also with no total columns. . . ."[85]  It was also unclear whether any of the data related to Kaijet Taiwan's sales as opposed to the sales of Kaijet U.S. or some other entity, which Defendants' counsel only clarified in a June 30, 2022 30(b)(6) deposition of Kaijet Taiwan's Yuki Tai, after Ms. Tai expressed confusion at the document.[86]  Ultimately, Defendants did not produce the financial data in usable, native form until June 27, 2022,[87] just one month before the close of fact discovery.[88]  Kaijet's unreasonable attempts to suppress the disclosure of sales and financial information— in the face of *two* Court orders requiring them to comply with Sanho's requests— resulted in significantly increasing litigation costs and prejudicing Sanho's ability to conduct related discovery and make strategic decisions.

---

[85] *Id.*

[86]  **Exhibit H**, Excerpt from Kaijet Taiwan 30(b)(6) Deposition of Yuki Tai, dated June 30, 2022 (43:21-44:23) (Ms. Tai:  "[A]s I remember, I -- this -- this is not what I provided.  MR. CARLSON:· Let me interrupt, if I may, because this may save us some time. . . .  [T]here is a table that begins on Bates No. 507 that you may want to ask the witness about. . . .  [T]his is a combination of both KaiJet U.S. and KaiJet Taiwan information . . . .").

[87] **Exhibit I**, Production email from Crystal Batson to Ali Aalaei, dated June 27, 2022. The native spreadsheet in question set forth comprehensive sales and cost data for each accused product which was lacking in prior document productions.  It was introduced at trial as Plaintiff Trial Exhibit 378, and it was relied upon extensively at trial by Plaintiff's damages expert Daniel Cenatempo.

[88] D.E. 304

### 4. Defendants Used Only 3.5% of Their Pretrial Order Trial Exhibits and a Similarly Low Percentage of Their Deposition Designations.

In the Pretrial Order, Defendants identified *1122* trial exhibits, needlessly forcing Sanho's counsel to expend considerable time listing objections to these exhibits and preparing for these exhibits to be presented at trial.[89]  At trial, Defendants only introduced about *40* of these exhibits, about 3.5% of the total.

Similarly, Defendants identified almost *1,000* deposition designations from eight witnesses in the Pretrial Order.[90]  Sanho's counsel was again needlessly forced to expend time listing objections and counter-designations to these designations.  At trial, the Defendants only read designations from the deposition of Yiching Chen, which accounted for roughly 5% of the deposition designations.[91]

### 5. Defendants' Filed a Rule 12(c) Motion After Summary Judgment and Without Requesting Leave.

After the Court's deadline for filing summary judgment motions expired, Defendants filed an eleventh-hour motion for judgment on the pleadings, which forced Sanho to again needlessly expend resources in response.[92]  Their motion blatantly disregarded the time limit imposed by LR 7.1(A)(1).[93]  In fact, as the Court

---

[89] *See* D.E. 527-15.
[90] *See* D.E. 527-19, 527-20.
[91] *See* D.E. 527-19.
[92] D.E. 494; D.E. 498.
[93] D.E. 513, p. 64.

noted, "Defendants' motion for judgment on the pleadings was filed *over four years later* [than their Answer], on March 26, 2024."[94]  As the Court stated in denying the motion, "Defendants do not explain why the instant motion could not have been filed months, if not years, earlier.  Nor do they explain why they did not seek the Court's leave before filing it in accordance with the Local Rules."[95]  Defendants' untimely Rule 12(c) motion is just another example of their meritless litigation tactics.

      **6.**      **Star View Violated the Court's Motion in Limine Order Barring Star View's Foreign vs. U.S. Sales Argument.**

Finally, Star View intentionally violated the Court's order granting Sanho's *unopposed* motion in limine number 7, which barred Star View from arguing that its sales were foreign and thus beyond the reach of U.S. law.[96]  The motion in limine and order were based on the Court's summary judgment order finding that Star View's activity in the United States subjected it to U.S. intellectual property law.[97]  Star View confirmed during direct verdict motion practice that it would comply with the order and not argue that its sales were extraterritorial:

MS. THORPE:  We're not raising that in closing, Your Honor.

---

[94] *Id*. at 65 (emphasis added).

[95] *Id*.

[96] D.E. 542, at 17-18; D.E. 566 (granting motion).

[97] D.E. 542, at 17-18; D.E. 513, at 57-59.

THE COURT:  All right.  So that is granted.  The motion in limine order applies equally to Starview.[98]

Later that afternoon, during the charging conference, Sanho's counsel and the Court again reminded Star View's counsel of the Court's ruling.[99]

Nevertheless, Star View's counsel proceeded to flout the Court's order granting the motion in limine in her closing argument, pronouncing to the jury, *inter alia*, that "*in the United States, we do not hold foreign companies liable for patent infringement if the conduct was not in the United States.*"[100]  Star View's outright defiance of the Court's order thus further demonstrates Defendants' continued misbehavior.

### D.   Sanho Seeks Reasonable Attorneys' Fees and Costs of Approximately $1.2 Million, which Corresponds to the Claims in Which It Prevailed.

Local Rule 54.2 provides that a motion seeking recovery for attorney's fees "shall state the amount (or provide a fair estimate of the approximate amount) of the fees and expenses sought."[101]  From May 2020 through the present date, a fair estimate of the aggregate amount of attorney's fees and non-taxable expenses[102]

---

[98] Trial Tr., 7/17 PM (directed verdict rulings), at 9:7-23.

[99] Trial Tr., 7/17 PM (charging conference), at 84:2-25 (The Court advised Ms. Thorpe, "just make sure that you review the order that's been entered on the motion in limine and make sure you comply with that in your closing," to which Star View counsel replied, "Of course").

[100] *Id.*, 7/18 AM (Star View closing argument), at 116:1-16.

[101] LR 54.2(A)(2).

[102] *See Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577-78 (Fed. Cir. 1983) (litigation expenses are recoverable under 35 U.S.C. § 285).

incurred by Sanho in connection with this case is approximately $3 million.

However, "attorneys' fees incurred *solely* in pursuing [non-prevailing] claims are not

compensable."[103]  Therefore, undersigned counsel is in the process of apportioning

these fees and expenses based on itemization of the work related to issues on which

Sanho prevailed on summary judgment and at trial, eliminating time entries and

expenses that are solely related to claims on which Sanho did not succeed.  Although

not all facts are common to all claims, "there is a very large common nucleus of facts

in this case that was ultimately important in resolving [Sanho's] claim for

infringement of the ['618] Patent."[104]  Moreover, although Sanho "did not prevail on

its claim concerning [unfair competition and the other patents at issue], much of the

work done on [those claims] was helpful" on an issue on which Sanho did prevail.[105]

Consistent with past precedent in this District, Sanho expects to divide the case

into phases and seek a percentage of the total fees it incurred in each phase[106]

(apportionment is not required for taxing costs[107]).  Although Sanho has not

completed this apportioning process, undersigned counsel anticipates that the total

---

[103]  *See Atlanta Attachment Co. v. Leggett & Platt, Inc.*, No. 1:05-CV-01071-ODE,
2007 WL 9701130, at *1 (N.D. Ga. Oct. 19, 2007) (emphasis added).
[104]  *Id*.
[105]  *Id*.
[106]  *See id.* (dividing case into phases and awarding a percentage of fees for each
phase).
[107]  *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d
1339, 1347-48 (Fed Cir. 2006) (partially prevailing plaintiff awarded full taxable costs
without apportioning them with partially prevailing defendant).

amount of fees and expenses sought by this motion will be in the range of 33% to 40% of the aggregate fees and non-taxable expenses ($1 million to $1.2 million).  The Court should find that "these fees are reasonable given the complexity of this case."[108]

Within 30 days, Sanho will "file and serve a detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation."[109]  Moreover, Sanho anticipates filing a Bill of Costs.[110]  To the extent any of the costs submitted pursuant to 28 U.S.C. §1920 are deemed to be non-taxable, Sanho asks that they be awarded pursuant to this motion.[111]

Sanho will also seek an adjustment in the attorneys' fees award to take into account the time value of money.  Consistent with past precedent in this district, Sanho asks that the Court award 7 percent interest on the fees incurred based on Georgia's statutory prejudgment interest rate.  "This is a fair and reasonable way to address the issue of the time value of money."[112]

## IV.    CONCLUSION

For the foregoing reasons, Sanho requests that the Court declare this case exceptional and award reasonable attorneys' fees and costs to Sanho.

---

[108]  *See Atlanta Attachment Co.*, 2007 WL 9701130, at *1.

[109]  LR 54.2(A)(2).

[110]  LR 54.1.

[111]  *See Atlanta Attachment Co.*, 2007 WL 9701130, at *3 ("The Court further concludes that, to the extent any of [Plaintiff's] requested costs are not recoverable under 28 U.S.C. § 1920, such costs are recoverable under 35 U.S.C. § 285").

[112]  *See Atlanta Attachment Co. v. Leggett & Platt,* at *2.

Respectfully submitted,

By:  */s/ Steven G. Hill*
        Steven G. Hill
        GA Bar No. 354658
        David K. Ludwig
        GA Bar No. 616971
        HILL, KERTSCHER & WHARTON, LLP
        3625 Cumberland Blvd., SE, Suite 1050
        Atlanta, Georgia 30339-6406
        Tel:  (770) 953-0995
        Fax:  (770) 953-1358
        Email:  sgh@hkw-law.com
        Email:  dludwig@hkw-law.com

           -and-

        Ali A. Aalaei *(admitted pro hac vice)*
        CA Bar No. 254713
        ARI LAW, P.C.,
        3130 Alpine Rd Ste 288 PMB 408
        Portola Valley, CA 94028-7541
        Tel:  (415) 830-9968
        Fax: (415) 520-9456
        Email:  ali@arilaw.com

        *Attorneys for Plaintiff Sanho Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 11th day of October, 2024, I filed a true and correct copy of the foregoing document with the CM/ECF filing system of this Court, which will serve an electronic copy to all attorneys of record.

<u>*/s/Steven G. Hill*</u>
GA Bar No. 354658

*Counsel for Plaintiff Sanho Corporation*