UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION, | Case No. 1:18-cv-05385-SDG |
| Plaintiff, | |
| v. | |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., dba "j5create;" and DOES 1-100, | |
| Defendants, | |
| | |
| SANHO CORPORATION, | Consolidated with Case No. 1:20-cv-02150-TCB |
| Plaintiff, | |
| v. | |
| KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY INTERNATIONAL CORPORATION; MAGIC CONTROL TECHNOLOGY; STARVIEW GLOBAL LIMITED, each doing business as "J5Create;" and DOES 1-10, | |
| Defendants. | |

**KAIJET DEFENDANTS' OPPOSITION TO PLAINTIFF SANHO CORPORATION'S MOTION FOR DETERMINATION OF EXCEPTIONAL CASE AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

I.   LEGAL STANDARD ........................................................................... 1

II.  ARGUMENT...................................................................................... 3

   A. Attorney Fees for the Copyright Claim are not available. ..................... 3

   B. Plaintiff is not the Prevailing Party for the Patent Claims. ................... 5

      1. Alternatively, there is no prevailing party......................................... 8

   C. KaiJet Defendants' Litigation Positions and Conduct do Not Render
      this Case Exceptional............................................................................. 9

      1. Jury verdict of willful patent infringement does not make this case
         exceptional................................................................................. 9

      2. Counterclaims were nonfrivolous and asserted in good faith. .......... 11

      3. *Daubert* motions are normal litigation practice. ............................... 13

   D. KaiJet Defendants Litigated this Case in a Reasonable Manner............ 14

      1. Mr. Philbin and Mr. Carlson did not lie to the Court. ....................... 14

         (a)  There were no misrepresentations as to Plaintiff's complaint
              or KaiJet Defendants' own jury instructions and verdict
              form. ........................................................................................ 14

         (b)  Dr. Franzon's testimony was consistent with his expert
              report. ..................................................................................... 17

         (c)  Sanho's *Daubert* motion regarding Mr. Sarabia's opinions
              on the strength of the HyperDrive mark was denied. ............ 18

      2. Ms. Liu did not lie. ........................................................................ 19

      3. KaiJet Defendants complied with all discovery orders..................... 21

      4. KaiJet Defendants trial exhibit list and deposition designations
         were reasonable for a complex trial. ................................................ 22

      5. The motion for judgment on the pleadings was not in bad faith........ 23

i

6. Star View's conduct is irrelevant. ...................................................... 24

E. The Alleged Misconduct is Unrelated to the '618 Patent Claim............ 24

F. Plaintiff Litigated in an Exceptional Manner. ........................................ 25

III.    CONCLUSION............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alyeska Pipeline Service Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975)........................................................................................2

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  23 F.3d 374 (Fed. Cir. 1994) .........................................................................4

*Baker Botts LLP v. ASARCO LLC*,
  576 U.S. 121 (2015)....................................................................................1, 2

*Beckman Instruments, Inc. v. LKB Produkter AB*,
  892 F.2d 1547 (Fed. Cir. 1989) .....................................................................8

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
  393 F.3d 1378 (Fed. Cir. 2005), *abrogated on other grounds by
  Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545
  (2014) ............................................................................................................6

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)......................................................................................4, 5

*Cybor Corp. v. FAS Techs., Inc.*,
  138 F.3d 1448 (Fed. Cir. 1998) .................................................................9, 10

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
  No. 2:12-CV-00764-WCB, 2015 WL 1284826 (E.D. Tex. Mar. 20,
  2015) ............................................................................................................14

*Digeo, Inc. v. Audible, Inc.*,
  505 F.3d 1362 (Fed. Cir. 2007) .....................................................................2

*Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*,
  782 F.2d 329 (2d Cir. 1986) ........................................................................24

*EagleView Techs., Inc. v. Xactware Sols., Inc.*,
  522 F. Supp. 3d 40 (D.N.J. 2021).................................................................11

*eBay, Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) ................................................................................. 7

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
    No. 6:11-CV-00201-JRG, 2018 WL 1156284 (E.D. Tex. Mar. 5,
    2018) ..................................................................................................... 25

*Fla. Int'l Univ. Bd. of Trs.v. Fla. Nat'l Univ., Inc.*,
    830 F.3d 1242 (11th Cir. 2016) ............................................................ 19

*Hardt v. Reliance Standard Life Ins. Co.*,
    560 U.S. 242 (2010) ................................................................................. 1

*Highway Equip. Co. v. FECO, Ltd.*,
    469 F.3d 1027 (Fed. Cir. 2006) ............................................................. 9

*Inland Steel Co. v. LTV Steel Co.*,
    364 F.3d 1318 (Fed. Cir. 2004) ............................................................. 9

*John H. Harland Co. v. Clarke Checks, Inc.*,
    711 F.2d 966 (11th Cir. 1983) .............................................................. 19

*Luv N' Care, Ltd. v. Laurain*,
    98 F.4th 1081 (Fed. Cir. 2024) .............................................................. 6

*Mach. Corp. of Am. v. Gullfiber AB*,
    774 F.2d 467 (Fed. Cir. 1985) .......................................................... 6, 24

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*,
    76 F.3d 1178 (Fed. Cir. 1996) ............................................................... 6

*Nautilus Grp., Inc. v. ICON Health & Fitness, Inc.*,
    372 F.3d 1330 (Fed. Cir. 2004) ........................................................... 19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ................................................................................. 2

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007) ............................................................. 7

*In re PersonalWeb Techs., LLC*,
    85 F.4th 1148 (Fed. Cir. 2023) ............................................................ 22

*Power Mosfet Techs., LLC v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004) ........................................................... 9

*Power-One, Inc. v. Artesyn Techs., Inc.*,
  No. 2:05-CV-463, 2008 WL 11348356 (E.D. Tex. Feb. 15, 2008) .................. 13

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
  851 F.3d 1218 (11th Cir. 2017) ....................................................... 4, 5

*In re Rembrandt Techs. LP Pat. Litig.*,
  899 F.3d 1254 (Fed. Cir. 2018) ......................................................... 24

*Royal Palm Props., LLC v. Pink Palm Props., LLC*,
  38 F.4th 1372 (11th Cir. 2022) .......................................................... 8

*Royal Palm Props., LLC v. Pink Palm Props., LLC*,
  950 F.3d 776 (11th Cir. 2020) ......................................................... 19

*SFA Sys., LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2015) ......................................................... 12

*Shum v. Intel Corp.*,
  629 F.3d 1360 (Fed. Cir. 2010) ....................................................... 6, 8

*SiOnyx LLC v. Hamamatsu Photonics K.K.*,
  981 F.3d 1339 (Fed. Cir. 2020) ......................................................... 10

*Site Update Sols., LLC v. CBS Corp.*,
  639 F. App'x 634 (Fed. Cir. 2016) ...................................................... 2

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.*,
  932 F.2d 1453 (Fed. Cir. 1991) .......................................................... 8

*Spectralytics, Inc. v. Cordis Corp.*,
  649 F.3d 1336 (Fed. Cir. 2011) ......................................................... 10

*Spineology, Inc. v. Wright Med. Tech., Inc.*,
  910 F.3d 1227 (Fed. Cir. 2018) ......................................................... 12

*Stickle v. Heublein, Inc.*,
  716 F.2d 1550 (Fed. Cir. 1983) .......................................................... 3

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
    892 F.3d 1175 (Fed. Cir. 2018) ............................................................ 2

*Taylor v. Teledyne Techs., Inc.*,
    338 F. Supp. 2d 1323 (N.D. Ga. 2004) ................................................. 5

*Thermolife Int'l LLC v. GNC Corp.*,
    922 F.3d 1347 (Fed. Cir. 2019) ............................................................ 3

*United Cannabis Corp. v. Pure Hemp Collective Inc.*,
    66 F.4th 1362 (Fed. Cir. 2023) ............................................................. 6

*Vampire Fam. Brands, LLC v. Dracula's Legacy, LLC*,
    No. 8:23-cv-1014-TPB-TGW, 2024 WL 4529256 (M.D. Fla. Oct.
    18, 2024) ............................................................................................... 13

*Welding Servs., Inc. v. Forman*,
    509 F.3d 1351 (11th Cir. 2007) .......................................................... 16

*WhitServe, LLC v. Comput. Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) ................................................................. 9

**Statutes**

17 U.S.C. § 412(2) ...................................................................................... 3

17 U.S.C. § 505 ........................................................................................... 3

35 U.S.C. § 285 .................................................................................. *passim*

35 U.S.C. § 1117(a) .................................................................................. 12

**Other Authorities**

Fed. R. Civ. Proc. 12(c) ........................................................................... 24

Fed. R. Civ. Proc. 54(d)(1) ......................................................................... 9

Local Rule 7.1(A)(2) ................................................................................. 23

## TABLE OF ABBREVIATIONS

| Full Name | Abbreviations |
|---|---|
| U.S. Design Patent No. D807,290 | '290 Patent |
| U.S. [Utility] Patent No. 10,572,429 | '429 Patent |
| U.S. Design Patent No. D855,616 | '616 Patent |
| U.S. Design Patent No. D844,618 | '618 Patent |
| U.S. Design Patent No. D813,875 | '875 Patent |
| Kaijet Technology International Corporation | KaiJet Taiwan |
| Defendant Kaijet Technology International Limited, Inc. | KaiJet US |
| Defendants Kaijet Technology International Limited, Inc. and Kaijet Technology International Corporation | KaiJet Defendants |

Plaintiff's motion for attorney fees is not only misguided as to the law and facts of this case, but it is an egregious attack on the character of KaiJet Defendants' counsel and witnesses. Plaintiff claims to be the prevailing party under the Patent Act, despite losing on four of the five patents it asserted and receiving no monetary or injunctive relief. Plaintiff seeks attorney fees related to its copyright claim, despite failing to meet the requirements under the Copyright Act. As for this case being "exceptional," Plaintiff exaggerates what amounts to nothing more than normal litigation conduct in a complex case such as this. Worse, Plaintiff attempts to bolster its weak exceptionality arguments by accusing KaiJet Defendants' counsel and its witnesses of *lying to the court*. Such attacks are not only wrong, but they are unbecoming of Sanho's counsel as officers of the court.

## I.    LEGAL STANDARD

The "bedrock principle" of litigation in the United States is the "American Rule," whereby each litigant pays their own attorney's fees "unless a statute or contract provides otherwise."[1] The Supreme Court has only recognized exceptions to the American Rule when there are "specific and explicit provisions for the

---

[1] *Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253 (2010)).

allowance of attorneys' fees under selected statutes."[2]

The Patent Act allows for the award of "reasonable attorney fees to the prevailing party" in "exceptional cases."[3] The Supreme Court has stated that:

> an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.[4]

Federal Circuit caselaw governs "the § 285 analysis, as it is unique to patent law."[5] Whether a case is "exceptional" is within the discretion of district courts, made on a "case-by-case" basis in view of "the totality of the circumstances."[6] The party seeking fees "must show exceptionality by preponderant evidence."[7] When deciding a request for fees under § 285, courts only look to the *patent* claims of the case unless the non-patent claims are "so intertwined with the patent issues that the

---

[2] *Id.* (quoting *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975)).

[3] 35 U.S.C. § 285.

[4] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

[5] *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1178 (Fed. Cir. 2018) (quoting *Digeo, Inc. v. Audible, Inc*., 505 F.3d 1362, 1366 (Fed. Cir. 2007)).

[6] *Stone Basket Innovations*, 892 F.3d at 1178 (quoting *Octane Fitness*, 572 U.S. at 554).

[7] *Site Update Sols., LLC v. CBS Corp.*, 639 F. App'x 634, 637 (Fed. Cir. 2016) (*citing Octane Fitness*, 572 U.S. at 557).

evidence would, in large part, be material to both types of issues."[8] However, the court may consider all patent claims of the case, including those that did not survive to trial.[9]

The Copyright Act also gives courts the power to award (or not) "a reasonable attorney's fee to the prevailing party."[10] But the award of attorney's fees is not available if the infringement "commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."[11]

## II.    ARGUMENT

### A. Attorney Fees for the Copyright Claim are not available.

The Copyright Act explicitly states that no award of attorney's fees is allowed unless Sanho either (1) registered the work prior to KaiJet Defendants' infringement;[12] or (2) Sanho registered the work "within three months after the first publication of the work."[13] Sanho did neither. The work was first published around

---

[8] *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564 (Fed. Cir. 1983).

[9] *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356-57 (Fed. Cir. 2019).

[10] 17 U.S.C. § 505.

[11] 17 U.S.C. § 412(2).

[12] KaiJet Defendants recognize that the jury determined they had infringed Sanho's copyright, but KaiJet Defendants maintain that there was no infringement.

[13] 17 U.S.C. § 412(2).

January 2017.[14] KaiJet Defendants' infringement began in October of 2017.[15] Sanho registered the copyright May 4, 2018.[16] Therefore, per Section 412 of the Copyright Act, Sanho may not recover attorney fees for its copyright claim.

As the Copyright Act and American Rule both prevent Sanho from recovering attorney fees on its copyright claim – the only claim it received any damages for – Sanho turns to an extremely narrow exception to justify its request: the Court's inherent power. Sanho cites *Chambers*, wherein the Supreme Court recognized that courts have the inherent power to "impose *sanctions*" such as attorney fees based on "a finding of fraud or bad faith" so serious that the "very temple of justice has been defiled."[17] The Eleventh Circuit has held that imposing a sanction under the inherent-powers theory requires there to be either "evidence of subjective bad faith…[or] an attorney's conduct is so egregious that it could only be committed in bad faith."[18] Such a sanction requires particularly "egregious"

---

[14] ECF 89 at ¶ 36.

[15] ECF 490-1 at ¶ 51; 7/9/24 Trial Tr. (afternoon) at 104:2-7.

[16] ECF 620-13 (PTX-13).

[17] *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-51 (1991)) (emphasis added).

[18] *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224–25 (11th Cir. 2017).

conduct.[19] Moreover, the inherent power is to be "exercised with 'restraint and discretion'" for the purpose of "vindicat[ing] [judicial] authority."[20] It is *not* to be used in the manner Sanho requests: "[t]his power is not a remedy for protracted litigation; it is for rectifying disobedience."[21] KaiJet Defendants and their counsel have not defiled the Court nor have they conducted themselves in an improper manner (let alone one so egregious as to justify a sanction under the Court's inherent powers).

### B. Plaintiff is not the Prevailing Party for the Patent Claims.

Sanho argues that it is the prevailing party because the jury found Defendants infringed the '618 Patent and Sanho's copyright. First, the jury did not find that Star View infringed the copyright.[22] Second, the copyright infringement finding is irrelevant.[23] The only relevant statutory authority to allow the award of attorney fees is § 285 of the Patent Act. But when a case includes "both patent and non-patent claims, no fees under § 285 can be awarded for time incurred in

---

[19] *See, e.g.*, *Taylor v. Teledyne Techs., Inc.*, 338 F. Supp. 2d 1323, 1367-68 (N.D. Ga. 2004) (denying motion for sanctions based on Respondent's failure to correct "material statements made to the Court that he knew to be untrue" and drafting a protective order that Respondent never intended to abide by).

[20] *Id*. at 1346, 1368 (quoting *Chambers*, 501 U.S. at 44-46).

[21] *Purchasing Power*, 851 F.3d at 1225.

[22] ECF 597-1; ECF 635.

[23] *Supra* Section III.A.

litigation of the non-patent issues."[24] Thus, only the patent claims are relevant to determine whether an award of attorney fees is appropriate. As detailed in KaiJet Defendants' own motion for attorney fees, KaiJet Defendants are the prevailing party for purposes of § 285.[25]

The Federal Circuit defines the prevailing party as one who receives at least some relief on the merits which alters the legal relationship of the parties.[26] "Determination of the prevailing party is based on the relation of the litigation result to the overall objective of the litigation."[27] A defendant is a prevailing party when the plaintiff can never again assert the same patents against the same accused products.[28] Sanho asserted five patents against KaiJet Defendants, with the objective of receiving money damages and to enjoin sales of the accused products. Sanho failed their objective, as they received no money and no injunction against sales. KaiJet Defendants achieved their objective: they were able to continue to sell

---

[24] *Mach. Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 475 (Fed. Cir. 1985).

[25] ECF 638-2 at 9-12.

[26] *Luv N' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1105 (Fed. Cir. 2024); *Shum v. Intel Corp.*, 629 F.3d 1360, 1366 (Fed. Cir. 2010) ("Federal Circuit law defines 'prevailing party' for the purposes of patent litigation.") (citing *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1182 (Fed. Cir. 1996)).

[27] *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005), *abrogated on other grounds by Octane Fitness*, 572 U.S. 545 (2014).

[28] *See Luv N' Care*, 98 F.4th at 1105-06; *United Cannabis Corp. v. Pure Hemp Collective Inc.*, 66 F.4th 1362, 1368 (Fed. Cir. 2023).

their products through their product lifecycle and owe Sanho no money for patent infringement. KaiJet Defendants prevailed on the patent claims, not Sanho.

Finally, Sanho states that it was awarded "an injunction against further sales of Defendants' JCD382 and JCD389 products."[29] Not true. While this Court's order states that Sanho is entitled to "injunctive relief," no injunction was actually granted – much less one preventing further sales of any product. Instead, the Court ordered a quarterly accounting of the accused products and held that "a permanent injunction against their future sale is unnecessary."[30] This is akin to an ongoing royalty, which is inherently not an injunction, as an injunction requires that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury."[31] In sum, Plaintiff's claim that they obtained "an injunction against further sales" is misleading. To the contrary, KaiJet Defendants had voluntarily ceased selling both products, which had reached the end of their product lifecycles, prior to Plaintiff filing its motion for an injunction.[32] So while the Court stated it granted injunctive relief, in actuality there is no injunction, nor

---

[29] ECF 637 at 8.

[30] ECF 634 at 7-8.

[31] *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007) ("Under some circumstances, awarding an ongoing royalty for patent infringement *in lieu of an injunction* may be appropriate.") (emphasis added).

[32] ECF 615-2 at ¶¶ 3-8.

is there any "relief" that "directly benefits" Plaintiff.[33] There will be no future sales of these products, so there will be no money awarded. KaiJet Defendants secured relief that benefits them directly, as Plaintiff cannot assert these claims again.

### 1. Alternatively, there is no prevailing party.

"[T]here is not always a prevailing party in every case."[34] The Federal Circuit has cautioned that when there is a mixed verdict, it may not be appropriate to award attorney fees to either party.[35] At best, Plaintiff won a hollow victory on one of the five patent claims it asserted, as no damages or injunction were awarded. KaiJet Defendants successfully defended against the other four asserted patents. Moreover, KaiJet Defendants invalidated the '429 Patent, causing Plaintiff to grant KaiJet Defendants a covenant not to sue and to dismiss its claim.[36] This

---

[33] *Shum*, 629 F.3d at 1367.

[34] *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1380 (11th Cir. 2022).

[35] *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1459 (Fed. Cir. 1991) ("the district court must take into account, in determining the amount of fees to be awarded, the extent to which Slimfold, having lost on the Type II door infringement issue, can be considered a "prevailing party" under 35 U.S.C. § 285."); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989) (questioning whether the patentee could be considered a "prevailing party" because only two of five asserted patent claims were found to have been infringed).

[36] ECF 419-7; ECF 614-1; ECF 614-2.

result is sufficient to make a defendant the prevailing party.[37] Therefore, even

interpreting Plaintiff's award of zero damages and no injunction as "prevailing" on

one of the five patent claims, this is a mixed verdict with no prevailing party.

### C. KaiJet Defendants' Litigation Positions and Conduct do Not Render this Case Exceptional.

#### 1. Jury verdict of willful patent infringement does not make this case exceptional.

A finding of willful infringement does not mandate an award of attorneys'

fees.[38] In *Cybor*, the Federal Circuit affirmed that a case was not exceptional

---

[37] *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006) (holding that the accused infringer is the prevailing party where the patentee voluntarily dismissed the claim after granting a covenant not to sue); *Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004) (holding that a patent infringement defendant obtained a disposition on the merits for purposes of Rule 54(d)(1) where patentee voluntarily dismissed its infringement claim with prejudice); *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1321 (Fed. Cir. 2004) (holding that a patent infringement defendant, who moved for dismissal after obtaining cancellation of patents through reexamination proceedings before the USPTO obtained a disposition on the merits in infringement action for purposes of obtaining attorney fees and costs). To the extent Plaintiff plans to argue that the '429 Patent claim was not dismissed with prejudice, that is an argument of form over substance. The '429 Patent has not only been invalidated, but Plaintiff granted a covenant not to sue to KaiJet Defendants. Plaintiff can *never* assert the '429 Patent against KaiJet Defendants again. To hold that Plaintiff's withdrawal (particularly after the patent had been invalidated) prevents KaiJet Defendants from being regarded as the prevailing party would force defendants to oppose such withdrawals and to simultaneously move for a dismissal with prejudice instead. This would create needless motion practice, unnecessarily bogging down the judicial system.

[38] *WhitServe, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 37 (Fed. Cir. 2012) ("an attorney fee award is not mandatory when willful infringement has been

despite a finding of willful infringement.[39] Though the defendant was unsuccessful, its arguments were "not frivolous or asserted for an improper purpose" and "resolution of those [arguments] in [plaintiff's] favor was far from a foregone conclusion."[40] Similarly, in *SiOnyx LLC*, the Federal Circuit affirmed that although the jury found willful infringement, the defendant's "noninfringement and invalidity defenses were not so weak as to be exceptional."[41] KaiJet Defendants made good faith, meritorious noninfringement and invalidity arguments regarding the '618 Patent. Plaintiff doesn't argue otherwise. In fact, Plaintiff did not even move for summary judgment on the '618 Patent,[42] indicating that it believed there was merit to KaiJet Defendants' arguments.[43]

Plaintiff attempts to bolster its argument by claiming KaiJet US exhibited animosity towards Plaintiff and had knowledge of Plaintiff and the HyperDrive. This argument lacks merit. First, in the sole (out-of-circuit) case it cites, fees were awarded due to "unreasonable arguments" and weak litigation positions, not due to

---

found") (quoting *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011)).

[39] *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1461 (Fed. Cir. 1998).

[40] *Id.* at 1460-1461.

[41] *SiOnyx LLC v. Hamamatsu Photonics K.K.*, 981 F.3d 1339, 1355 (Fed. Cir. 2020).

[42] ECF 439-1.

[43] *SiOnyx LLC*, 981 F.3d at 1355 (the court noted that plaintiff "failed even to move for summary judgment on those issues.").

any animosity.[44] Second, Plaintiff twists the evidence to fit its argument. There is no dispute that KaiJet US learned of Plaintiff and its HyperDrive product, or that it referred to the HyperDrive in internal emails. As explained at trial, Best Buy asked KaiJet US for a product to compete with the HyperDrive. Thus, it was not "exceptional" for KaiJet US to refer to the HyperDrive – it was natural. Plaintiff cites other emails that exhibit nothing more than a desire to outcompete Plaintiff in the market.[45] In sum, there is nothing exceptional about the '618 Patent claim.

### 2. Counterclaims were nonfrivolous and asserted in good faith.

KaiJet Defendants asserted a counterclaim of false advertising based on Sanho's fake review campaign. While the Court found at summary judgment that KaiJet Defendants failed to meet the materiality requirement,[46] KaiJet Defendants had made good faith arguments in support of the claim.[47] Likewise, KaiJet Defendants made good faith arguments in support of its counterclaim for false patent marking (for which Plaintiff did not deny that it falsely marked its product).[48] The fact that summary judgment was rendered against KaiJet

---

[44] *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 69 (D.N.J. 2021).

[45] ECF 637, at 10 (citing Plaintiff's Exhibits 72, 76, and 121).

[46] ECF 513 at 61.

[47] ECF 483-1 at 25-29.

[48] ECF 483-1; ECF 513 at 62 ("Sanho does not appear to contest that (1) the DUO was falsely marked").

Defendants on its counterclaims does not make the claims exceptionally "meritless."[49] Otherwise, Plaintiff's own false advertising claim must have also been exceptionally meritless, as it too was dispensed with by the Court on summary judgment after Plaintiff "failed to present evidence of customer confusion."[50] Plaintiff makes much of having to file a second motion for summary judgment on these counterclaims, per this Court's order. But the withdrawal of the '429 Patent claim was unrelated to the false advertising and false patent marking counterclaims, so Plaintiff's original motion could have been refiled as is.

Plaintiff refers to the $25 million dollar demand for the false advertising claim as being "the epitome of 'exceptionally meritless.'" Not so. The remedy for false advertising is defined by § 1117 of the Lanham Act, which includes the disgorgement of the offender's profits.[51] Importantly, KaiJet Defendants needed only to prove Plaintiff's profits related to the false advertisement.[52] Here, that was

---

[49] *Spineology, Inc. v. Wright Med. Tech., Inc.*, 910 F.3d 1227, 1228–29 (Fed. Cir. 2018) (affirming denial of attorney fees where plaintiff's motion for summary judgment was granted); *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) ("A party's position on issues of law ultimately need not be correct for them to not stand out, or be found reasonable.") (cleaned up).

[50] ECF 513, at 39.

[51] 35 U.S.C. § 1117(a) ("When…a violation under section 1125(a)…shall have been established…the plaintiff shall be entitled…to recover (1) defendant's profits.")

[52] *Id*. ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.").

$25 million. KaiJet Defendants merely followed what the Lanham Act dictates.

Finally, Plaintiff complains that KaiJet Defendants did not pursue their counterclaim for trademark invalidity based on abandonment and/or failure to police the mark. Parties are encouraged to streamline a case for trial in order to simplify the issues and reduce the burden on the jury and the Court.[53] Sanho too streamlined its case, as it abandoned trade dress as a basis for its unfair competition claims in the middle of trial,[54] after years of litigating trade dress, including expert testimony[55] and summary judgment briefing.[56] The strategic choice to not pursue a defense or claim at trial and to instead focus on others does not mean the defense or claim was meritless, and does not support this case being exceptional.

### 3. *Daubert* motions are normal litigation practice.

Plaintiff's argument regarding supposed "unreliable" expert opinions can be summarized as follows: (1) Mr. Sarabia's opinion was partially excluded via a *Daubert* motion; (2) Mr. Pellegrino offered an opinion Plaintiff disagrees with but never sought to exclude. Neither critique renders this case exceptional. *Daubert*

---

[53] *See, e.g., Power-One, Inc. v. Artesyn Techs., Inc.*, No. 2:05-CV-463, 2008 WL 11348356, at *1 (E.D. Tex. Feb. 15, 2008); *Vampire Fam. Brands, LLC v. Dracula's Legacy, LLC*, No. 8:23-cv-1014-TPB-TGW, 2024 WL 4529256, at *1 (M.D. Fla. Oct. 18, 2024).

[54] Trial Tr. 7/12/24 (Afternoon), 147:25-148:10.

[55] *See, e.g.*, ECF 521-1 at 13-14.

[56] ECF 453-1 at 41-46; ECF 470-1 at 39-40; ECF 491-1 at 19-20.

motions are filed in nearly every case. Sometimes they are successful, but that does

not render a case exceptional.[57] Plaintiff omits that their own expert, Mr. Bressler,

had his opinions based on an unreliable theory of visual perception excluded too.[58]

As for Mr. Pellegrino's "double counting" opinion, this was an opinion included in

his expert report.[59] If this were "junk science," they should have moved to exclude

Mr. Pellegrino's opinion or objected at trial. Plaintiff did neither.

### D. KaiJet Defendants Litigated this Case in a Reasonable Manner.

#### 1. Mr. Philbin and Mr. Carlson did not lie to the Court.

##### (a) There were no misrepresentations as to Plaintiff's complaint or KaiJet Defendants' own jury instructions and verdict form.

Plaintiff has levied serious, unfounded accusations against KaiJet

Defendant's attorneys of lying to the Court. Such accusations are disturbing and

entirely without merit. KaiJet Defendants will address each below.[60]

Plaintiff accused Mr. Philbin of lying to the Court based on his statement

that Plaintiff's complaint "never says common law rights. The only trademark it

---

[57] *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-CV-00764-WCB, 2015 WL 1284826, at *4 (E.D. Tex. Mar. 20, 2015) ("It is not unusual for evidence set forth in an expert's report to be limited or excluded altogether by the Court, but cases in which evidence is restricted or struck do not thereby become exceptional cases in which fee awards are granted.").

[58] ECF 571 at 11-14.

[59] Ex. 1 (Pellegrino 9.28 report), ¶¶ 44-51.

[60] KaiJet Defendants reserve the right to later file a motion for sanctions against Plaintiff and its counsel for these improper accusations.

talks about is the registered mark." Plaintiff also accuses Mr. Carlson of lying during his argument in court for making essentially the same argument. Mr. Philbin and Mr. Carlson's statements are true, and KaiJet Defendants fully briefed the issue as part of its motion for judgment as a matter of law.[61] While the Court denied KaiJet Defendants' motion, it did not find that KaiJet Defendants lied or misrepresented the contents of Plaintiff's complaint, but instead found that because the state law claims were vague as to what trademark was being asserted, it was allowed to later refine the claim to "be focused on the unregistered trademark." KaiJet Defendants respectfully disagree with the Court's ruling, but the issue was mooted by the jury's verdict. What is important is that Mr. Philbin's statement is *true*: the complaint does not ever refer to a common law trademark. The fact that the Court denied KaiJet Defendants' motion does not make Mr. Philbin and Mr. Carlson liars.

Plaintiff also accuses Mr. Philbin of lying to the Court when he stated that "to the extent we've included in jury instructions is based on common law trade dress." Below is the full statement:

> So all these common law rights that we've briefed on that we've -- to the extent we've included in jury instructions is based on common law trade dress. So it was not that we

---

[61] ECF 591 at 9-19.

> believed that there was common law -- like common law mark
> being asserted, so that's a misnomer.[62]

This statement is true. As KaiJet Defendants fully briefed, KaiJet Defendants did not include common law trademark infringement in their pretrial order, including their proposed jury verdict form and jury instructions.[63] To the contrary, KaiJet Defendants' jury instructions stated that the state law claims had "identical requirements as the Trademark Infringement Claim and Federal Unfair Competition Claim"– both of which are based on the registered mark, not common law trademark rights.[64] Common law trademark rights would require the additional step of proving that the term "HyperDrive" had gained secondary meaning – meaning that potential customers associated HyperDrive with Sanho.[65] KaiJet Defendants proposed no such jury instruction, nor does their proposed jury verdict form refer to any common law right associated with "HyperDrive." [66] Mr. Philbin was correct that KaiJet Defendants did offer an instruction on common law rights, and that instruction was specific to trade dress – *not* on trademark or in relation to

---

[62] Trial Tr. 7/15/24 (Afternoon), 156:9-14.

[63] ECF 591 at 16.

[64] *Id* at 17, citing ECF 560-1, at 115-117.

[65] *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358-59 (11th Cir. 2007).

[66] ECF 591 at 17, citing ECF 560-2, at 14-18 (making a singular reference to "Sanho's trademark" – i.e., the registered HyperDrive mark).

the state law claims.[67] Nor does the inclusion of instructions for the Georgia state law claims contradict Mr. Philbin's statement. As he stated, the fact that KaiJet Defendants included those instructions does not mean that "we believed there was…common law mark being asserted" because "you can still assert a registered mark under" the state law claims.[68] Mr. Philbin did not lie to the Court.

### (b) Dr. Franzon's testimony was consistent with his expert report.

Plaintiff is correct that KaiJet Defendants represented that Dr. Franzon "defined a power adapter, as it is commonly known, as a device that 'plugs into an electrical outlet' and is 'an external power supply for an electronic device.'"[69] That is the definition Dr. Franzon used in his expert report.[70] Dr. Franzon also stated in his report that *generally*, this means converting AC power to DC power.[71] KaiJet Defendants made no representation that Dr. Franzon would not discuss how power adapters generally convert AC power to DC power. It is implicit that any discussion of a device that plugs into an electrical outlet (which almost exclusively

---

[67] ECF 560-1 at 84-88 (instructions on "Unregistered Trade Dress" and the requirement of proving "acquired distinctiveness" or "secondary meaning.").

[68] Trial Tr. 7/15/24 (Afternoon), 154:20-22, 156:12-14.

[69] ECF 547 at 12.

[70] ECF 509-4 at ¶¶ 84-85 ("In my opinion, a power adaptor is a device that plugs into an electrical outlet and functions as an external power supply for an electronic device…. In my opinion, the HyperDrive is not a power adapter. It does not plug into an electrical outlet and function as an external power supply for an electronic device.").

[71] ECF 509-4 at ¶ 84.

all provide AC power) and supplies power for an electronic device (which almost exclusively require DC power) may refer to such terms. Regardless, Dr. Franzon confirmed that his opinion of what a layperson would understand a power adapter to be would not depend on knowledge of AC or DC power:

> Q. But isn't it true that an ordinary person wouldn't even be expected to understand the difference between alternating current and direct current?
>
> A. No. But they'd understand the difference about being plugged into the wall and being plugged into the computer.[72]

Dr. Franzon's testimony was consistent with his expert report, and KaiJet Defendants made no misrepresentations as to his opinions.

### (c) Sanho's *Daubert* motion regarding Mr. Sarabia's opinions on the strength of the HyperDrive mark was denied.

Plaintiff argues that Mr. Sarabia promised not to comment on the strength of Plaintiff's mark at all. Not true. Plaintiff tried to preclude Mr. Sarabia from testifying about third-party uses of the words "HyperDrive," "Hyper," "Drive," or their homophones in class 9 products.[73] The Court denied this motion, expressly holding that Mr. Sarabia could testify about third-party uses of similar marks.[74] Third-party uses of similar marks is directly related to the strength of Plaintiff's

---

[72] Trial Tr. 7/16/24 (Morning), 39:6-10.

[73] ECF 521 at 18-20.

[74] ECF 571 at 7-8.

mark.[75] And that is exactly what Mr. Sarabia's testimony was at trial:

> But here, you have five clustered trademarks phonetically identical, visually very similar, similar classes, and very similar goods or services. So that means that HyperDrive is a relatively weak trademark.[76]

Per his declaration, Mr. Sarabia did not offer an opinion as to the strength of the trademark registration itself, such as whether the mark was inherently distinctive or had acquired secondary meaning.[77] Confirming that KaiJet Defendants were open about the intent to have Mr. Sarabia testify as to the strength of Plaintiff's mark is their response to Plaintiff's *Daubert* motion: "Analysis: the HyperDrive mark is weak"[78] Plaintiff cannot feign surprise at Mr. Sarabia's testimony.

### 2. Ms. Liu did not lie.

At all times, Ms. Liu has denied that her email stating "I studied this spec before" referred to the HyperDrive.[79] Plaintiff contends it proved this was a lie at trial. Not so. The evidence they cite shows only that she received an email from

---

[75] *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973-75 (11th Cir. 1983); *see also Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1257 (11th Cir. 2016) (finding defendant successfully "rebutted the presumption of strength by showing extensive third-party use of the mark").

[76] Trial Tr. 7/15/24 (Afternoon), 22:20-24.

[77] *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 783–84 (11th Cir. 2020); *Nautilus Grp., Inc. v. ICON Health & Fitness, Inc.*, 372 F.3d 1330, 1340 (Fed. Cir. 2004).

[78] ECF 543 at 22-23.

[79] ECF 489, ¶ 3; Trial Tr. 7/15/24 (Afternoon), 103:10-105:10.

Winstar with a specification for a product very similar to the HyperDrive after she had already seen specifications for similar devices. As Ms. Liu testified at trial, multiple companies were all developing similar products in reaction to the new MacBook Pro having a dual USB-C port. Winstar's product, which was dated prior to KaiJet Defendants learning about the HyperDrive, was just one of many products being developed. While Ms. Liu could not remember specifically which specification she was referring to, that is understandable as the email was sent *seven (7) years ago*. While Plaintiff may have its own subjective theory on what happened, it fell far short of proving Ms. Liu lied.

Plaintiff accuses Ms. Liu of lying about her involvement with KaiJet Taiwan. Ms. Liu used to be an owner of KaiJet Taiwan. But as she testified, Ms. Liu sold the business to Ms. Yuki Tai over a decade ago.[80] That is why the FCC previously listed her as a "Manager" and "Contact," but it does not any longer.[81] As for the letter from the FCC, this inadmissible hearsay lacks any context as to why this specific FCC employee believed KaiJet US and KaiJet Taiwan were the same company.[82] But the testimony of both Ms. Liu and Ms. Tai (owner and CEO of KaiJet Taiwan) is clear: the two companies are separate, and Ms. Liu is no

---

[80] 7/12/24 Trial Tr. (morning) at 45:12-46:7.

[81] Ex. 2 (FCC Registration System printout).

[82] *See* ECF 488-1 at 9-10 (briefing on the inadmissibility of the FCC letter).

longer an officer, director or manager of KaiJet Taiwan.[83]

Plaintiff accuse KaiJet Defendants and Ms. Liu of purposefully not disclosing that Magic Control Technology ("MCT") and Guan Hong supplied the accused products to KaiJet Taiwan in order to "shield [them] from liability." While the parties disagree on how to interpret Plaintiff's Interrogatory No. 20,[84] there is no question that KaiJet Defendants provided documentation and testimony regarding the involvement of Guan Hong and MCT.[85]

### 3. KaiJet Defendants complied with all discovery orders.

Yet again, Plaintiff's complaint is based on their (incorrect) theory that KaiJet US and KaiJet Taiwan are the same company. They are not. For purposes of discovery, the Court did determine the companies were related enough, but this ruling was made after recognizing there was "conflicting evidence" and under the circumstances the Court had to "construe all reasonable inferences in Sanho's

---

[83] ECF 341 (5/26/20 Liu Dep. Tr.) at 34:7-10, 48:2-11; 7/11/24 Trial Tr. (afternoon) at 54:2-7, 55:17-18; 7/12/24 Trial Tr. (morning) at 45:2-11; 7/15/24 Trial Tr. (morning) at 56:12-57:4; 7/15/24 Trial Tr. (afternoon) at 79:18-20, 86:25-87:8, 89:7-12.

[84] Ex. 3 (PTX-439) at 2 (objecting to the term "responsible for" as being vague and undefined).

[85] See, e.g., ECF 340 (KTIC 30b6 6/30/22 tr.) at 52:21-54:2; 63:6-65:11; 75:8-76:10; 77:1-10; 77:17-78:3; ECF 463-1 (Tai 9/18/21 tr.) at 14:15-15:15; 20:13-21:1; 21:19-23:7; 24:4-8; 28:19-31:9; 32:4-11; 34:2-9; 35:17-21; 40:9-12; 40:25-41:13; 44:13-46:7; 46:21-47:18; 48:12-25; 50:23-25; 51:13-52:1; 54:5-10; 57:14-58:21; 67:15-68:2; 91:22-23; ECF 620-44 (PTX-60); ECF 621-15 (PTX-132); ECF 618-40 (DTX-1123).

favor."[86] Losing a motion does not make a case exceptional.[87]

Plaintiff also presents a one-sided version of the discovery process that omits Plaintiff's obstinance and lack of cooperation. For example, Plaintiff points out that the original production of financial documents was a "PDF printout rather than in the typical (native) excel format." That is because Plaintiff's counsel had until that time refused to enter into an ESI agreement. [88] Once the parties entered into an ESI agreement, whereby the parties agreed how electronic documents should be produced, KaiJet Defendants complied with the ESI agreement.[89] Ultimately, while discovery was difficult in this case, Plaintiff is at least equally as culpable for any difficulties. This does not favor an award of attorney fees.

### 4. KaiJet Defendants trial exhibit list and deposition designations were reasonable for a complex trial.

KaiJet Defendants had to be prepared to defend against claims for infringement of four design patents by seven accused products, infringement of a registered trademark, trade dress, alter ego theory, copyright infringement, and multiple state law claims.[90] Unlike the Plaintiff, KaiJet Defendants could not plan ahead of time which exhibits or deposition segments would be necessary, as KaiJet

---

[86] ECF 185 at 11.

[87] *See, e.g., In re PersonalWeb Techs., LLC*, 85 F.4th 1148, 1155 (Fed. Cir. 2023).

[88] Exs. 4 (06.21.19 Email) and 5 (06.23.22 Email).

[89] ECF 637-9 (production included native excel document).

[90] *See* ECF 528-1 (Outline of Plaintiff's case).

Defendants had to react to the case that Plaintiff put on at trial. Plaintiff fails to mention that many of the proposed exhibits overlapped with exhibits entered by Plaintiff at trial. As for deposition designations, KaiJet Defendants were forced to include testimony from Valerie Chong and Daniel Chin, as they are out-of-state witnesses that KaiJet Defendants could not guarantee would testify at trial. Last, Plaintiff ignores that claims were dropped at or before trial. At the pretrial conference, Plaintiff confirmed that they were not pursuing its alter ego theory at trial.[91] Then at trial, Plaintiff dropped its trade dress claim(s).[92] Further, KaiJet Defendants successfully moved for judgment as a matter of law on the '616 Patent infringement claim. Thus, exhibits and testimony related to those subjects were no longer necessary. There was no misconduct in KaiJet Defendants' trial preparation.

### 5. The motion for judgment on the pleadings was not in bad faith.

KaiJet Defendants admit the motion was not in compliance with Local Rule 7.1(A)(2).[93] This was an error, not a tactic. The substantive issues of the motion, which addressed the preemption of Plaintiff's state law claims to the extent they relied on Plaintiff's patents or copyright, were nonfrivolous. In fact, despite opposing the motion, Plaintiff later seemed to agree as they confined their state law

---

[91] ECF 567 (Pretrial Hearing Tr.) at 165:6-166:11.

[92] 7/12/24 Trial Tr. (afternoon) at 147:25-148:11.

[93] ECF 499 at 7.

claims to being based solely on trademark infringement.[94] To the extent any attorney fees are determined to be warranted due to this, they should be limited to the time spent on Plaintiff's opposition brief.

### 6. Star View's conduct is irrelevant.

Star View's counsel's conduct has no relevance to KaiJet Defendants.[95]

### E. The Alleged Misconduct is Unrelated to the '618 Patent Claim.

As explained above, "no fees under § 285 can be awarded for time incurred in the litigation of the non-patent issues."[96] Further, there must be a causal relationship between the litigation misconduct and any fees awarded.[97] Taken together, only conduct related to Plaintiff's '618 Patent claim is relevant to awarding attorney fees under § 285. Yet most the complained of conduct bears no relation to that claim: (1) the false advertising counterclaim; (2) Mr. Sarabia's trademark opinions; (3) Mr. Pellegrino's damages opinions; (4) whether Plaintiff plead common law trademark infringement; (5) Dr. Franzon's opinion on what a power adapter is; and (6) the Rule 12(c) motion. An award of attorney fees should not be based on these irrelevant acts of alleged misconduct.

---

[94] ECF 527 at 7, ¶¶ 14-15.

[95] *E.g.*, *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986) ("A finding that one defendant has acted in bad faith in conducting litigation does not justify an award of fees against a codefendant.").

[96] *Mach. Corp. of Am.*, 774 F.2d at 475.

[97] *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1277 (Fed. Cir. 2018).

### F. Plaintiff Litigated in an Exceptional Manner.

KaiJet Defendants previously detailed Plaintiff's exceptional conduct related to its patent claims. As a further, egregious example of Plaintiff's litigation misconduct is its filing of cancellation proceedings on the literal eve of trial[98] for the sole purpose of being able to surprise Ms. Tai on the stand and accuse KaiJet Taiwan of "fraud" in front of the jury.[99] The gamesmanship of this move (and complete lack of merit) was confirmed when Plaintiff withdrew both cancellation proceedings shortly after the trial.[100] It would be inequitable to award attorney fees to Plaintiff when their own litigation tactics were exceptionally vexatious.[101]

## III.   CONCLUSION

For the foregoing reasons, KaiJet Defendants respectfully request this Court deny Plaintiff's motion for attorney fees.

---

[98] Ex. 6 (ULTRADRIVEKIT proceedings) at 2-9;
Ex. 7 (ULTRADRIVEMINIDOCK proceedings) at 2-9.

[99] 7/12/24 Trial Tr. (morning) at 12:24-13:20, 34:1-3.

[100] Exs. 6-7.

[101] *See Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2018 WL 1156284, at *8 (E.D. Tex. Mar. 5, 2018).

Respectfully submitted, this 25th day of October, 2024.

/s/ *Robert J. Carlson*

Ryan P. Gentes
GA Bar No. 421695
Robert A. Madayag, III
GA Bar No. 123699
William B. Dyer III
GA Bar No. 236915
Steven Philbin
GA Bar No. 516724
James Avery Rollins
GA Bar No. 776439
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com
Email: robm@leehayes.com
Email: bill.dyer@leehayes.com
Email:  steven.philbin@leehayes.com
Email:  james.rollins@leehayes.com

Robert J. Carlson
WSBA Number 18455
Admitted *Pro Hac Vice*
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: carlson@leehayes.com

Rhett V. Barney
WSBA Number 44764
Admitted *Pro Hac Vice*
Johanna Tomlinson
WSBA Number 57582
Admitted *Pro Hac Vice*

26

LEE & HAYES, P.C.
601 W. Riverside Ave., Ste. 1400
Spokane, WA 99201
Telephone: (509) 324-9256
Email: rhettb@leehayes.com
Email:
johanna.tomlinson@leehayes.com

*Attorneys for Defendants*
*KaiJet Technology International Limited,*
*Inc. and KaiJet Technology International*
*Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2024, I filed a true and correct copy of the foregoing document with the CM/ECF filing system of this Court, which will serve an electronic copy to all attorneys of record.

/s/ *Robert J. Carlson*

Robert J. Carlson
WSBA Number 18455
Admitted *Pro Hac Vice*
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: carlson@leehayes.com

*Attorney for Defendants*
*KaiJet Technology International Limited, Inc.*
*and KaiJet Technology International*
*Corporation*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

/s/ *Robert J. Carlson*

Robert J. Carlson
WSBA Number 18455
Admitted *Pro Hac Vice*
LEE & HAYES, P.C.

*Attorney for Defendants*
*KaiJet Technology International*
*Limited, Inc. and KaiJet Technology*
*International Corporation*