# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br>              Plaintiff,<br>    v.<br>KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.,<br>dba "j5create"; and DOES 1-100,<br>              Defendants, | C.A. No. 1:18-cv-05385-SDG |
| SANHO CORPORATION,<br>              Plaintiff,<br>    v.<br>KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC.;<br>KAIJET TECHNOLOGY<br>INTERNATIONAL CORPORATION;<br>MAGIC CONTROL TECHNOLOGY;<br>STAR VIEW GLOBAL LIMITED,<br>each dba "j5create"; and DOES 1-100,<br>              Defendants. | C.A. No. 1:20-cv-02150-TCB<br><br>(Consolidated Case) |

# SANHO CORPORATION'S BRIEF IN OPPOSITION TO THE KAIJET DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND IN OPPOSITION TO KAIJET TECHNOLOGY INTERNATIONAL CORPORATION'S MOTION TO DISMISS COPYRIGHT CAUSE OF ACTION AND VACATE JUDGMENT THEREON

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. iii

I.    INTRODUCTION ........................................................................................1

II.   THE SUBJECT MATTER JURISDICTION ARGUMENT IS
      EXCEPTIONALLY WEAK ..........................................................................1

      A. Extraterritoriality Issues Implicate the Merits of the Copyright
         Claim, but Do Not Affect the Court's Subject Matter Jurisdiction to
         Hear a Copyright Case.............................................................................1

      B. The Court Already Determined Based on the Same Evidence
         Introduced at Trial that Kaijet Taiwan and Star View Conducted
         Sales and Shipping of the Infringing Articles in the U.S. .....................3

      C. "Direct vs. Contributory Infringement" Is a Red Herring......................5

      D. Kaijet Argument that the Act of "Copying" Took Place Outside of
         the U.S. Misses the Larger Picture. .........................................................7

III.  KAIJET'S COPYRIGHT ARGUMENT IS EXCEPTIONALLY WEAK...8

      A. The Jury Possessed the Evidence it Needed to Determine Copyright
         Infringement  ...........................................................................................8

      B. The Copyrighted Work Is the Basis for the HyperDrive Box, and
         Both Have the Key Elements Copied by Kaijet .....................................10

      C. Kaijet's Arguments Miss the Mark ........................................................12

      D. Kaijet Waived Objections to the "Mock Up." ........................................12

      E. Kaijet Waived any Objection to Showing the Jury the HyperDrive
         Box During Presentation of Evidence ....................................................15

F.  JMOL Is Inappropriate. ........................................................................16

IV.  KAIJET'S CHALLENGE TO THE JUDGMENT OF '618 PATENT INFRINGEMENT IS EXCEPTIONALLY WEAK ......................................17

A.  Kaijet's Directed Verdict Motion Was Based on a Lack of Supporting "Testimony," Which the Court Correctly Rejected ............17

B.  Kaijet Ignores the Primary Visual Evidence .............................................18

C.  Kaijet's Vague Invocation of "Prior Art" Is Exceptionally Weak ...........21

D.  It Is Too Late for Kaijet to Provide the Missing Specifics.....................22

V.  CONCLUSION..............................................................................................23

# TABLE OF AUTHORITIES

*Cases:*                                                                       **PAGE**

*Am. Builders Ins. Co. v. Southern-Owners Ins. Co.*,
  71 F.4th 847 (11th Cir. 2023) ......................................................................... 3, 22

*Arbaugh v. Y & H Corporation,*
  546 U.S. 500 (2006) ...................................................................................... 1, 2

*Crocs, Inc. v. ITC*,
  598 F.3d 1294 (Fed. Cir. 2010)...................................................................... 18

*Geophysical Serv., Inc. v. TG S-NOPEC Geophysical Co.*,
  850 F.3d 785 (5th Cir. 2017) ........................................................................... 2

*Kellner v. NCL (Bahamas), LTD.*,
  753 F.App'x 662 (11th. Cir. 2018) ................................................................ 22

*Litecubes, LLC v. Northern Light Prods. Inc.*,
  523 F.3d 1353 (Fed. Cir. 2008). ...................................................................... 2

*MGM Studios, Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ......................................................................................... 5

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
  747 F.3d 1326 (Fed. Cir. 2014)...................................................................... 21

*North American Philips Corp. v. American Vending Sales, Inc.*,
  35 F.3d 1576 (Fed. Cir. 1994)......................................................................... 6

*Palmer v. Braun*,
  376 F.3d 1254 (11th Cir. 2004).............................................................*passism*

*Sony Corp. of America v. Universal City Studios, Inc.*,
  464 U. S. 417 (1984) ........................................................................................ 5

**Other:**

17 U.S.C. §106(3) ................................................................................................6

## I.    INTRODUCTION

Unfortunately, Kaijet Technology International Limited, Inc. ("Kaijet U.S.") and Kaijet Technology International Corporation ("Kaijet Taiwan") (collectively, "Kaijet") have wasted this Court's time and resources, as well as those of Sanho Corporation ("Sanho").  Kaijet's Renewed Motion for JMOL recycles many of the same theories and arguments that this Court has previously evaluated and found lacking in its prior opinions and orders.  This motion confirms Kaijet's exceptionally weak litigating position.  Kaijet's arguments taste like old wine in a new bottle, for they lack merit now just as they did when the Court originally rejected them.

## II.    THE SUBJECT MATTER JURISDICTION ARGUMENT IS EXCEPTIONALLY WEAK.

### A.    Extraterritoriality Issues Implicate the Merits of the Copyright Claim, but Do Not Affect the Court's Subject Matter Jurisdiction to Hear a Copyright Case.

Two years after the Eleventh Circuit decided *Palmer v. Braun*, the Supreme Court in *Arbaugh v. Y & H Corporation* stated that "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination."[1]  If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and

---

[1] 546 U.S. 500, 511 (2006).

litigants will understand that subject matter jurisdiction is implicated; but when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.[2]

The Copyright Act does not express its limit on territorial reach. That limit arises from the background presumption that legislation reaches only domestic conduct. Because the domestic boundary is not "clearly state[d]" to "count as jurisdictional," courts now "treat the restriction as nonjurisdictional in character."[3] Therefore, "the Copyright Act's insistence that infringing conduct be domestic offers an essential element of a copyright infringement plaintiff's claim, not of jurisdiction."[4]

Thus, Kaijet's argument on extraterritoriality does not go to subject matter jurisdiction. In *Palmer*, "the Eleventh Circuit did not have the benefit of *Arbaugh*'s recent clarification of the boundary between subject matter jurisdiction and elements of the claim nor its suggestion that this confusion between subject matter jurisdiction and elements of a claim has extended to the issue of the extraterritorial scope of a statute."[5] "Moreover, *Palmer* simply assumed the issue was a jurisdictional one,

---

[2] *Id.*; *accord Geophysical Serv., Inc. v. TG S-NOPEC Geophysical Co.*, 850 F.3d 785, 791 (5th Cir. 2017); *Litecubes, LLC v. Northern Light Prods. Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008).

[3] *Geophysical Serv.*, 850 F.3d at 791.

[4] *Id.*

[5] *Litecubes*, 523 F.3d at 1368.

without any analysis of whether the question was more properly considered a question on the merits."[6]  Therefore, Kaijet has mischaracterized its argument as one of subject matter jurisdiction, which is a non-waivable issue.  When the issue is properly understood a non-jurisdictional, it is apparent that Kaijet has waived the issue by failing to raise it as part of its Rule 50 motion at the conclusion of trial.[7]  In fact, Kaijet waived the issue even before that by failing to assert extraterritoriality as a defense in the pretrial order.[8]

### B. The Court Already Determined Based on the Same Evidence Introduced at Trial that Kaijet Taiwan and Star View Conducted Sales and Shipping of the Infringing Articles in the U.S.

Kaijet's assertion that the Copyright Act "has no extraterritorial effect"[9] is premised on the <u>false</u> notion that it has not sold or shipped the infringing articles into the United States.  Yet this Court <u>already determined</u>—based on the same evidence that was admitted at trial[10]—that "Kaijet Taiwan does not dispute that it sent emails

---

[6] *Id.* (emphasis added).

[7] *Am. Builders Ins. Co. v. Southern-Owners Ins. Co.*, 71 F.4th 847, 857 n.1 (11th Cir. 2023) ("[D]istrict courts lack authority to grant a Rule 50(b) motion on a ground not previously raised in a Rule 50(a) motion prior to the submission of the case to the jury."); Trial Tr., July 17, 2024 (morning), at 102:10-114:23.

[8] D.E. 570.

[9] D.E. 641, at 3.

[10] PTX 133-332 comprise the same group of invoices, air freight waybills, bills of lading and other shipping documents (admitted at Trial Trans., July 11, 2024 (afternoon), at 66:8 through 71:8), that the Court reviewed in response to Kaijet Taiwan's motion to dismiss for lack of personal jurisdiction, and in response to Kaijet Taiwan's motion for summary judgment. *E.g.,* D.E. 152-19; D.E.153-6; D.E. 185, at

and other intangible communications <u>into Georgia</u> regarding price negotiations and

the ULTRADRIVE product."[11]  "Uncontroverted evidence shows that Kaijet Taiwan

sent communications, including emails, <u>into Georgia</u> in relation to transactions and

pricing of the ULTRADRIVE."[12]  "KaiJet Taiwan <u>ships and sells the ULTRADRIVE</u>

<u>in [Georgia]</u>."[13]  These U.S. sales of the infringing articles rupture the premise of

Kaijet's argument, that the sales/shipments occurred "in Taiwan."[14]  Incredibly, the

instant motion proceeds as though these arguments are being presented *tabula rasa*.

But they are not, for this Court decided based on a subset of the trial evidence that

Kaijet Taiwan's actions were undertaken <u>within</u> the U.S.[15]

     Moreover, like Kaijet Taiwan, Starview "ships … products to Kaijet U.S. …

The record contains packing and weight lists for shipments … to Kaijet U.S.; bills of

lading and air waybills that designate Starview as the 'shipper.'"[16]  It is therefore

established that the trial evidence (same as the summary judgment evidence) is

---

17-18, 22-23 (including citations in footnotes); D.E. 513, at 51, 58 (including citations
in footnotes); D.E. 462-1, ¶¶48-52 (and supporting evidence); D.E. 488-2, ¶¶49-52.

[11]  D.E. 185, at 17-18 (emphasis added).

[12]  *Id*. at 18 (emphasis added); *see, e.g*., PTX-86, -88, -90, -103, and -120.

[13]  *Id*. at 22-23 (emphasis added).

[14]  D.E. 641, at 4.

[15]  D.E. 185, at 17-18, 22-23; D.E. 513, at 54-55

[16]  D.E. 513, at 58 (footnotes to citations omitted); *see also* Trial Tr., July 15, 2024
(morning), at 30:18-23 ("products will enter warehouse of Kaijet Taiwan, …Kaijet
Taiwan will then ship the products…"); Packing Slips (PTX-137, -142, -152, -158, -
164, -170, -176, -181, -187, -194, -200, -207, -213, -218, -224, -230, -235, -242, -247,
-252, -258, -265, -270, -275, -282, -287, -292, -297, -303, -308, -314).

"sufficient to defeat Starview's extraterritoriality defense."[17]  If this type of evidence was strong enough to defeat Star View's extraterritoriality defense, the same type of evidence of Kaijet Taiwan's sales/shipments showing Kaijet Taiwan as shipper – evidence the Court relied on at the summary judgment stage – requires the rejection of Kaijet Taiwan's argument that its sales/shipments were exclusively in Taiwan.[18]

As the Eleventh Circuit explained, "[w]here a person imports an infringing work into the United States, the federal courts have jurisdiction over the action for infringement."[19]  *Palmer* was decidedly a case of <u>direct</u> infringement.[20]

### C.    "Direct vs. Contributory Infringement"[21] Is a Red Herring.

There is a "historical kinship" between patent and copyright law.[22]  Both patent and copyright law recognize direct and indirect infringement.[23]  Here, U.S. patent law imposes <u>direct</u> infringement liability on Kaijet Taiwan for conducting sales within the

---

[17]  D.E. 513, at 58.

[18]  Kaijet Taiwan is the registered importer of the infringing articles.  *See* , *e.g.*,Trial Tr., July 11, 2024 (afternoon), at 53:23-54:1; 89:22-25, 90:20-91:13 ("[Q.] KaiJet Taiwan provides the FCC registration for the purpose of importing these products into the United States; correct? [A.] Yes.").

[19]  *Palmer v. Braun* 376 F.3d 1254, 1258 (11th Cir. 2004).

[20]  *See id.*

[21]  *See* D.E. 641, at 6-9.

[22]  *Sony Corp. of America v. Universal City Studios, Inc*., 464 U. S. 417, 439 (1984); *see also MGM Studios, Inc. v. Grokster, Ltd*., 545 U.S. 913, 936 (2005) (Supreme Court "took the staple-article doctrine of patent law as a model for its copyright safe-harbor rule, [and] the inducement rule [of patent litigation], too, is a sensible one for copyright").

[23]  *See Grokster*, 545 U.S. at 936-37.

U.S.: "Kaijet Taiwan sold, shipped, and facilitated the importation of j5create products to the United States [which] supports the inference that it committed the alleged tort of infringement-by-sale in the United States."[24]  Kaijet Taiwan's "commercial ties with the United States vis-à-vis the infringing products are orders of magnitude stronger"[25] than the ties of the defendant to Illinois in *North American Philips Corp. v. American Vending Sales, Inc.*[26]

U.S. patent law prohibits "importing, making, using, offering to sell or selling the patented design within the United States,"[27] Here, the jury held that Kaijet Taiwan is liable for direct patent infringement.  It makes no sense that Kaijet Taiwan's sales and shipments give rise to liability for direct patent infringement, without also giving rise to direct infringement under U.S. copyright law—violating the copyright owner's exclusive right to distribute the copyrighted works in the U.S.[28]  The verdict

---

[24] D.E. 513, at 51 (emphasis added).

[25] *Id*.

[26] 35 F.3d 1576, 1577-1579 (Fed. Cir. 1994).  The Court also rejected Kaijet Taiwan's argument that it was not an importer because it shipped the allegedly infringing products "FOB Taiwan."  D.E. 513, at 51.  *See also* D.E. 488-2, ¶51 (Kaijet Taiwan invoking FOB clause).

[27] Trial Trans., July 18, 2024, at 15:21-23.  While the Court instructed the jury on direct patent infringement, it did not instruct the jury as to indirect patent infringement, either inducement to infringe or contributory infringement liability.  *See id*. at 15-18.  Thus, the jury's determination was that Kaijet Taiwan willfully and directly infringed the '618 Patent.

[28] *Palmer*, 376 F.3d at 1258, holds that sale and importation of infringing articles into the U.S. violates the copyright owner's exclusive rights of distribution codified at 17 U.S.C. §106(3).

reasonably decided that Kaijet Taiwan's sales/shipments of the infringing articles were importation and sales in the United States.  Accordingly, consistent with the Court's own prior decisions, the Court should deny the instant motion.

### D.    Kaijet's Argument that the Act of "Copying" Took Place Outside of the U.S. Misses the Larger Picture.

Kaijet asserts: "because the alleged <u>copying</u> by KaiJet Taiwan was outside of U.S. territory, such copying is not actionable under U.S. law."[29]  This misstates what is needed to support a claim.  In fact, infringement may be a violation of any of:

> the exclusive right to reproduce the copyrighted work,[ ] and the <u>exclusive right to distribute copies of the work</u>.[ ] Moreover, the statute provides that <u>importation of copies of a work</u> without the authorization of the copyright owner <u>is an infringement of the exclusive right to distribute copies</u>.[ ][30]

By selling/shipping the infringing works in Georgia, Kaijet Taiwan infringed Sanho's exclusive right to distribute copyrighted works in the U.S., and to control importation of copies.[31]

In sum, PTX 133-332 support the verdict and final judgment, just as they supported the Court's two prior decisions that Kaijet Taiwan sold and shipped the infringing articles in the U.S.

---

[29]  D.E. 641, at 5.

[30]  D.E. 641, at 3 (citing 17 U.S.C. §§ 106(1), 106(3) and 602(a)(1)).

[31]  *See Palmer*, 376 F.3d at 1258.

7

## III.   KAIJET'S COPYRIGHT ARGUMENT IS EXCEPTIONALLY WEAK.

The Court instructed the jury regarding copyright infringement *vel non*.  Kaijet

did not object to the instructions relating to infringement decision.  But now, Kaijet

challenges the sufficiency of the evidence, the use of a demonstrative aid, and the

presentation of additional evidence in the form of Sanho's own HyperDrive® box.

None of these points have any merit.

### A.    The Jury Possessed the Evidence it
### Needed to Determine Copyright Infringement.

At the close of the case, Kaijet argued that "what [Sanho] needed to prove was

infringement of the copyrighted work, which is the thing that's attached to their

registration certificate that Mr. Sarabia analyzed, infringement of that work by the

accused KaiJet package."[32]  Continuing on, Kaijet falsely asserted that Sanho "did not

bring up evidence of the copyrighted work."[33]  By "bring up," Kaijet was apparently

referring to statements of counsel rather than evidence, for the "thing that's attached"

to the registration certificate was introduced into evidence as part of the copyright

registration certificate.[34]  Moreover, Kaijet admitted that the copyright deposit copy

[PTX-13] as well as the accused Kaijet packaging [PTX-2] was evidence discussed by

its own expert, stating, "It was discussed by Mr. Sarabia as to why no reasonable juror

---

[32]  Trial Tr., July 17, 2024 (morning), at 112:12-16 (emphasis added).
[33]  *Id*. at 110:18-19.
[34]  *See* PTX-13, at 3.

could find that these elements <u>in the copyrighted work</u> have been -- have been copied in the accused packaging.  But no reasonable juror could make that finding and Sanho did not put on any evidence of infringement."[35]

Responding, Sanho pointed to the deposit copy of the copyrighted work as part of PTX-13, adding "this is the specimen that Mr. Carlson says you have to compare to.  <u>The contents of the specimen are identical to the contents of the box</u> [Plaintiff's Exhibit 1]."[36]

> [T]he product packaging on Exhibit 1 … is the living embodiment of … where those lines and tabs are in the two-dimensional sample.  <u>So it makes is easier, since we're accusing a three-dimensional product of infringement, to show the embodiment of the copyright specimen in three dimensions.</u>
>
> <u>Because the portions of the -- of the copyright that were misappropriated in this case, they're all on the two-dimensional specification.</u>  <u>There's nothing that we're pointing to … that doesn't emanate from that sample.</u>[37]

The Court then ruled that "The jury has the evidence it needs to reach a conclusion as to infringement."[38]  The elements copied by Kaijet in its packaging originated in the copyright registration's deposit copy [PTX-13].[39]  The two-dimensional packaging "deposit copy" (below, left) was in evidence,[40] as was the

---

[35]  Trial Tr., July 17, 2024 (morning), at 112:19-24 (emphasis added).
[36]  *Id*. at 123:9-12 (emphasis added).
[37]  *Id*. at 123, line 15 through 124, lines 1-15 (emphasis added).
[38]  *Id*. (afternoon session), at 8:21-22.
[39]  *Id*. at 8:22-25.
[40]  *See* PTX-13, at 3.

accused original Kaijet JCD382 box.[41]  Thus, the jury had the evidence it needed to decide infringement.  As shown below, the Sanho HyperDrive® box[42] reinforces the key copyrightable elements arranged in the copyrighted work.

### B.     The Copyrighted Work Is the Basis for the HyperDrive Box, and Both Have the Key Elements Copied by Kaijet.

Before the Court's ruling that the jury had all the evidence it needed to conclude infringement, the parties had argued the same issue at summary judgment. There, the Court placed the copyrighted work side-by-side with the accused Kaijet packaging.[43]  The Court was plainly aware of the key elements of the copyright deposit, the original arrangement of which justified the claim of copyright:

> [T]he Court catches a spark of creativity here in Sanho's arrangement and coordination of the packaging's otherwise unprotectible constituent elements—most notably in the alignment of the right side of the product-shaped cutout with the left edge of a depiction of a MacBook to suggest the physical docking of the hub to the laptop.[44]

The Court was referring to the arrangement of the elements that are shown in the following red box of Figure 1 (below):

### FIGURE 1 – RED BOX ON COPYRIGHT DEPOSIT COPY

---

[41]  *See* PTX 2.
[42]  *See* PTX-1.
[43]  D.E. 513, at 43.
[44]  D.E. 513, at 44 (emphasis added).



45

Whether one looks at the copyright deposit copy or the customer-facing side of the HyperDrive® box—the elements are identically arranged in both—the Court found the infringement evidence adequate to support a factfinder's determination of infringement:

> Significantly, j5create has appropriated the most original element of Sanho's design: the cutout in the center showing the product hub physically interfacing with a depiction of a MacBook to the right.[46]

> In addition, the front of j5create's packaging presents mostly the same information as Sanho's, and in the same layout: product name at top, product description at bottom, '4K' and '50 Gbps' callouts at bottom right.[47]

---

[45] PTX-13, at 3 (emphasis added).

[46] D.E. 513 at 45 (emphasis added).

[47] *Id.*

11

Of course, the Court recognized, "There are various other small differences which, according to the Kaijet Defendants' expert witness, total over 180."[48] "Here, the question is whether a large number of minor differences outweighs a smaller number of similarities in dominant design features."[49] "Because that question is best decided by a jury, Sanho's copyright infringement claim against the Kaijet Defendants will proceed to trial."[50] As such, any reasonable person would understand that the significant elements which were reproduced in the Kaijet packaging were elements that were present and similarly arranged in <u>both</u> the copyright deposit <u>and</u> in the HyperDrive® box. The HyperDrive® box only reinforces the jury's finding.

### C.    Kaijet's Arguments Miss the Mark.

Kaijet commences its copyright argument with this misleading tag line: "**No evidence related to deposit copy**."[51] As shown above, the deposit copy <u>itself</u> was in evidence, as was the accused Kaijet box.

### D.    Kaijet Waived Objections to the "Mock Up."

Kaijet devotes much of its argument to counsel's use of a "mock up" at trial.[52] First, the mock up is a demonstrative aid; it is not evidence. Second, Kaijet never

---

[48] *Id.*
[49] *Id.*
[50] *Id.* at 46-47.
[51] D.E. 641, at 6 (emphasis in original).
[52] *See id.* at 10-13.

objected to its use.  Kaijet did not even ask the Court to give the jury a limiting instruction regarding the use of the mock up.  It can hardly be heard at this late time to complain about the use of the mock up to demonstrate the arrangement of elements that were copied.

Although it waived the mock up issue, Kaijet now apparently complains that the mock up showed elements that were not in the copyrighted work, to no avail.  The mock up replicates the copyrightable elements from the copyright's deposit copy (*i.e.*, the elements shown in the red box of Figure 1, above):



The accused Kaijet box copied the same elements identified in the mock up.[53] The mock up therefore crystallizes Kaijet's appropriation of copyrightable material. It was effective to aid the comparison of the copyrighted work and the accused box.

The mock up indicates a "product name" at the top.  In the deposit copy, this is "Hyperdrive" (as shown in the red box of Figure 1).  In the accused Kaijet box, it is "Ultradrive" at the top of the customer-facing side of the box (PTX-2).  Next, moving

---

[53] *See* PTX 2.

from top to bottom, the mock up shows a "specially-shaped cut out" adjacent to an image of the left edge of a computer keyboard. This is shown in the red box of Figure 1 above. For the accused Kaijet box, it is shown in PTX-2. Moving towards the bottom, the mock up shows a "product description" on the left and product "callouts" for HDMI and speed to the right. In the copyright deposit, these are easily seen in the red box of Figure 1 above. In the accused Kaijet box, they are shown in a similar location and configuration in PTX-2. "These are <u>significant similarities</u> in the packagings' arrangement and coordination of <u>dominant design features</u>."[54] This point, apparent on the face of the trial evidence (regardless of the mock up), is fatal to Kaijet's position. Armed with the copyrighted work and Kaijet's accused box, a reasonable factfinder would, and did, find infringement.

Kaijet states that "protected elements of a plaintiff's copyright must appear in the work's deposit copy."[55] They do appear in the deposit copy. Kaijet never answers that question of what element in the mock up, if any, is <u>not</u> present in the deposit copy of PTX-13, because it knows that the answer is "none."

Kaijet is also wrong to state that "Sanho never once attempted to compare the j5create branded accused packaging to its two-dimensional deposit copy to establish substantial similarity."[56] Setting aside whether Sanho, as opposed to the jury, is

---

[54] D.E. 513, at 46 (emphasis added).
[55] D.E. 641, at 11.
[56] D.E. 641, at 13.

obligated to perform such a comparison explicitly as part of the presentation of trial evidence for there to be sufficient evidence of infringement, the mock up embodies just such a comparison.[57]

### E. Kaijet Waived any Objection to Showing the Jury the HyperDrive® Box During Presentation of Evidence.

Other than the mock up, Kaijet asserts that "the only comparisons Sanho made for substantial similarity used the HyperDrive box[.]"[58]  Kaijet has <u>not</u> shown that the jury lacked the means to conduct such a comparison (*i.e.*, that the jury lacked the copyrighted work or the accused Kaijet box), and as a result, they have failed to show that there was any insufficiency of evidence.

Kaijet did not object to the relevancy or prejudice arising from any questioning which may have elicited testimony about the HyperDrive® box.  Distilled to its essence, its complaint—long since waived—goes to the way Sanho questioned witnesses about the box, not whether the jury had sufficient evidence to compare the copyrighted work and the accused work.  Moreover, as Sanho showed at trial, there is no error in using the HyperDrive® box to compliment the copyright deposit copy. the

---

[57]  Sanho made a direct comparison in closing, showing a slide of the copyright deposit copy. *See* Trial Tr., July 18, 2024 (morning session), at 64:17-18 ("This is the specimen that is attached to that. It's two dimensional").
[58]  D.E. 641, at 13.

The box embodies the deposit copy.[59]  Thus, even if Kaijet had presented a timely

objection to the box, it would have been overruled.

Kaijet cites the Court to no case warranting JMOL where, as here, the accused

work appropriate the dominant copyrightable elements of the copyrighted work.[60]

Where, as here, the copyrighted work and the accused work are both in evidence,

sufficient evidence exists to support the finding of infringement.

### F.    JMOL is Inappropriate.

The two works do not need to be identical for there to be infringement.  The

only copyrightable (original) elements in the copyrighted work which were identified

at trial based on the evidence of other designs and pre-existing design elements were

the arrangement of the key elements of PTX-13, as illustrated in the red box of Figure

1 above.  Because the copyright covered the arrangement of these key elements as a

dominant feature, and because Kaijet misappropriated this arrangement in its own

box, the final judgment is rooted in the jury's reasonable finding of infringement.

Kaijet provides no basis to vacate the judgment.  Importantly, Kaijet cites no case for

the proposition that even a large number of minor differences "outweighs a smaller

number of similarities in dominant design features."[61]  In view of the Court's studied

rejection of Kaijet's position previously, and Kaijet's inability to show that any court

---

[59]  *See* Trial Tr., July 17, 2024 (morning), at 124:1-15.
[60]  *See* D.E. 513, at 45-47.
[61]  D.E. 513, at 46.

has ever held to the contrary, the Court should reject Kaijet's extremely weak
argument.

## IV. KAIJET'S CHALLENGE TO THE JUDGMENT OF '618 PATENT INFRINGEMENT IS EXCEPTIONALLY WEAK.

### A. Kaijet's Directed Verdict Motion Was Based on a Lack of Supporting "Testimony," Which the Court Correctly Rejected.

Here is the <u>totality</u> of Kaijet's directed verdict motion presented at trial
on the '618 Patent/infringement issue: "<u>given the limited testimony that was</u>
<u>provided on those [patents]</u>, no reasonable juror could find that an ordinary
observer viewing the prior art would find those to -- find the accused products
confusingly similar.[62]  Kaijet later filed a supplemental brief, but only one page
of it was addressed to this argument.[63]

Responding, Sanho counsel stated:

> The noninfringement of the '875 and '618 is not about testimony, Your
> Honor.  It's about <u>visual evidence</u>. . . .  regardless of what the testimony
> is . . . .  <u>The patents are in evidence</u>. <u>The product designs are in</u>
> <u>evidence</u>.[64]

> [T]he jury has <u>the same evidence that Your Honor had when it denied the</u>
> <u>summary judgment motion on infringement on these two patents</u>, based
> on the fact that a reasonable jury could find that the designs are not

---

[62]  Trial Tr., July 17, 2024 (morning), at 114:13-17.

[63]  D.E. 591, at 23.  The brief stated, "The issue was not discussed by any witness,
including Mr. Chin and Mr. Bressler."  *Id*.

[64]  *Id*. at 125:20-24.

substantially dissimilar. And <u>now the jury's seen a considerable amount of prior art</u>, so let's see what they say.[65]

The Court denied the motion, stating the "['618 Patent] and products are in the record. The jury could reasonably find infringement based on the evidence it has."[66] Kaijet's one-page brief of the argument also posited that its expert's testimony was unrebutted.[67] As shown herein, this point was also very weak. Kaijet's prior oral and written argument for JMOL on this issue never articulated either: (a) any specific, observable difference between the '618 Patent and the accused JCD382/389 product designs; or (b) how any specific item of proven prior art would affect the view of the ordinary observer.[68] These failures further undermine Kaijet's position.

## B.  Kaijet Ignores the Primary Visual Evidence.

The gist of a design patent infringement claim is that two things <u>look</u> the same[.]"[69] Therefore, the visual appearance of the '618 Patent design and the products (here, the JCD382 and JCD389) is necessary for the evaluation of

---

[65]  *Id*. at 125:25-126:5.
[66]  Trial Tr., July 17, 2024 (afternoon), at 9:6-9.
[67]  D.E. 591, at 23.
[68]  The infringement analysis focuses on "the design as a whole" rather than "particular features" of the design. *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010). Identicality of features is not required.
[69]  *Id*. at 11 (emphasis added).

infringement.[70]  With respect to DTX-140 ("the '728 Patent"), it was Kaijet's duty to show that it was prior art.[71]

"[Y]ou must compare the defendants' products, which I will refer to as the accused products, to each of the asserted patents."[72]  The comparison is a decidedly visual process: "an accused product is substantially the same as the patented design in the eye of the ordinary observer[.]"[73]  Kaijet consented to these instructions.

The '618 Patent was in evidence.[74]  "[E]ach claimed design is better represented by its drawings than by a [verbal] description."[75]  The JCD382 and JCD389 products were also in evidence.[76]  Thus, the jury could compare them:



---

[70]  D.E. 513, at 22-24.

[71]  *Id.*

[72]  Trial Tr., July 18, 2024 (morning), at 16:12-14.

[73]  *Id.* at 16:23-25 (emphasis added).

[74]  PTX-12.

[75]  Trial Tr., July 18, 2024 (morning), at 14:15-18 (emphasis added).

[76]  PTX-2 and PTX 6.  Further, pictures of the accused product designs were shown in several other admitted trial exhibits.

19



The Court instructed the jury as to what prior art was relevant to the '618 Patent.[77]  Thus, contrary to Kaijet's assertions, the <u>visual</u> evidence, including proven prior art, was admitted.  Sanho was under no duty to proffer testimony embellishing this primary visual evidence (Kaijet has identified no case law stating otherwise).  Therefore, Kaijet's suggestion that Sanho lacked adequate "testimony" about infringement is of no moment.

That leaves the question of whether Kaijet's own expert testimony, even if unassailed on cross, merits JMOL.  It does not.  Whether Kaijet proffered expert testimony of non-infringement, and whether Sanho attacked it, or let the visual evidence speak for itself, goes way beyond testing the <u>sufficiency</u> the evidence of

---

[77]  Trial Tr., July 18, 2024 (morning), at 15:3-8.  The Court did not include the 728 Patent in its identification of admitted prior art.  *Id*. at 15:9-10.

infringement.[78]  Regardless, differences between the designs at issue does not

necessarily defeat infringement.[79]

Moreover, Professor Shankwiler testified that his primary "prior art" reference

for the '618 Patent is the Chinese '728 Patent.[80]  But it was not proven prior art.  On

cross, Shankwiler revealed that he merely assumed the '728 Patent was prior art.

Lacking a translation, he lacked knowledge of a filing or publication of the

reference.[81]  Moreover, Shankwiler's non-infringement opinion was informed by his

consideration of the '728 Patent, so his inability (and Kaijet's inability) to show the

jury that the '728 Patent was prior art explains why the jury disregarded his testimony.

## C.    Kaijet's Vague Invocation of "Prior Art" Is Exceptionally Weak.

"An observer who has seen enough 'closely similar prior art designs' may find

significant design differences between two products that, to the unaccustomed eye,

look the same."[82]  Kaijet's JMOL argument makes several passing references to "prior

---

[78] The jury need not accept expert testimony: "As with any other witness's testimony, you must decide for yourself whether to rely upon the [expert] opinion." Trial Tr., July 18, 2024 (morning), at 11:9-11.

[79] *See MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1333 n.1 (Fed. Cir. 2014).

[80] Trial Tr., July 16, 2024 (morning), at 98:25-99:1.  The only other prior art that Shankwiler discussed regarding the '618 Patent was the '366 Patent's teaching of two protrusions (in the context of patent invalidity, not non-infringement). *See id*. at 100:10-14.

[81] Trial Tr., July 16, 2024 (afternoon), at 44:24-45:18, 45:25-46:14.

[82] D.E. 513, at 13 (internal citation omitted) (emphasis added).

art."[83]  However, Kaijet has not developed a single, specific non-infringing argument relating to any specific item of prior art.[84]  Kaijet has not identified even one "closely similar prior art design."  Kaijet's expert identified the '728 Patent as such a reference, but, as discussed, neither he nor Kaijet could prove that the '728 Patent is prior art.

### D.    It Is Too Late for Kaijet to Provide the Missing Specifics.

Kaijet had the opportunity during its directed verdict argument at trial to identify with specificity one or more differences between the accused products and the '618 Patent.  Kaijet failed to do so, in violation of Rule 50(a)(2).  Because Kaijet has waived its right to now come forward with any specific difference(s) and any specific item of prior art,[85] the instant motion again fails to identify any specific difference between the accused products and the patent, and also fails to specify a proven prior art reference that it claims was so close to the '618 Patent as to inform the opinion of an ordinary observer.  It is simply too late for Kaijet to offer any of the missing specifics in its reply brief.[86]

---

[83]  D.E. 641, at 16-17.

[84]  *See* Fed. R. Civ. P. 50(a)(2) ("A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment") (emphasis added).

[85]  *See Am. Builders Ins. Co.*, 71 F.4th at 857 n.1.

[86]  *See Kellner v. NCL (Bahamas), LTD.*, 753 F.App'x 662, 667 (11th. Cir. 2018) ("it is by now clear that we cannot consider arguments raised for the first time in a reply brief").

## V.    CONCLUSION

For the foregoing reasons, Sanho requests that the Court deny Kaijet's

Renewed Motion for JMOL to Dismiss Copyright Cause of Action and Vacate

Judgment Thereon.


Dated November 7, 2024

                                           Respectfully submitted,

                                           By:    ***/s/ Steven G. Hill***
                                                Steven G. Hill
                                                    GA Bar No. 354658
                      David K. Ludwig
                      GA Bar No. 616971
                      HILL, KERTSCHER & WHARTON, LLP
                      3625 Cumberland Blvd., SE, Suite 1050
                      Atlanta, Georgia 30339-6406
                      Tel:  (770) 953-0995
                      Fax:  (770) 953-1358
                      Email:  sgh@hkw-law.com
                      Email:  dludwig@hkw-law.com

                      -and-

                      Ali A. Aalaei *(admitted pro hac vice)*
                      CA Bar No. 254713
                      ARI LAW, P.C.,
                      3130 Alpine Rd Ste 288 PMB 408
                      Portola Valley, CA 94028-7541
                      Tel:  (415) 830-9968
                      Fax: (415) 520-9456
                      Email:  ali@arilaw.com

                      *Attorneys for Plaintiff Sanho Corporation*

## **TYPE AND FONT CERTIFICATION**

The undersigned certifies that the foregoing complies with Local Rule

5.1(B) regarding typeface and font.

<u>*/s/Steven G. Hill*</u>
GA Bar No. 354658

*Counsel for Plaintiff Sanho Corporation*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 7th day of November, 2024, I filed a true and correct copy of the foregoing document with the CM/ECF filing system of this Court, which will serve an electronic copy to all attorneys of record.

<u>*/s/Steven G. Hill*</u>
GA Bar No. 354658

*Counsel for Plaintiff Sanho Corporation*