IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., dba "j5create;" and DOES 1-100,<br><br>Defendants, | Case No. 1:18-cv-05385-SDG |
| SANHO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY INTERNATIONAL CORPORATION; MAGIC CONTROL TECHNOLOGY; STAR VIEW GLOBAL LIMITED, each doing business as "J5Create;" and DOES 1-10,<br><br>Defendants. | Consolidated with<br>Case No. 1:20-cv-02150-TCB |

**KAIJET DEFENDANTS' OPPOSITION TO SANHO'S ITEMIZATION IN SUPPORT OF ITS MOTION FOR ATTORNEY FEES**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................. 1

II.   LEGAL STANDARD ........................................................................... 2

III.  ARGUMENT....................................................................................... 2

  A. Sanho Incorrectly Computed Its Attorney Fees. .................................... 2

    1.  Sanho seeks compensation for fees unrelated to the '618 Patent...... 3

    2.  Sanho greatly overestimated the amount of time it billed to matters
        relating to the '618 Patent.................................................... 5

    3.  Sanho seeks compensation disproportionate to its success.............. 11

    4.  Apportioning the fees based on the number of claims is the most
        objective and fair method. ................................................... 12

  B. Sanho Should Recover No More Than $160,901.31............................. 17

  C. Sanho failed to relate the litigation costs to the '618 Patent. ................. 17

IV.   CONCLUSION.................................................................................. 17

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Biery v. U.S.*,
   818 F.3d 704 (Fed. Cir. 2016) ...........................................................................11

*Bywaters v. United States*,
   670 F.3d 1221 (Fed. Cir. 2012) ........................................................................11

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
   921 F.3d 1343 (11th Cir. 2019) ...........................................................................8

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
   811 F.3d 479 (Fed. Cir. 2016) .............................................................................2

*Mach. Corp. of Am. v. Gullfiber AB*,
   774 F.2d 467 (Fed. Cir. 1985) ........................................................................2, 3

*Popham v. City of Kennesaw*,
   820 F.2d 1570 (11th Cir. 1987) ........................................................................11

*In re Rembrandt Techs. LP Pat. Litig.*,
   899 F.3d 1254 (Fed. Cir. 2018) ...........................................................................2

*Use Techno Corp. v. Kenko USA Inc.*,
   No. C-06-02754 EDL, 2008 WL 2020505 (N.D. Cal. May 8, 2008) .................3

**Statutes**

15 U.S.C. § 1125(a) ...............................................................................................3

35 U.S.C. § 285 ...............................................................................................1, 2, 3

## TABLE OF ABBREVIATIONS

| Full Name | Abbreviations |
|---|---|
| U.S. Design Patent No. D807,290 | '290 Patent |
| U.S. [Utility] Patent No. 10,572,429 | '429 Patent |
| U.S. Design Patent No. D855,616 | '616 Patent |
| U.S. Design Patent No. D844,618 | '618 Patent |
| U.S. Design Patent No. D813,875 | '875 Patent |
| Defendant Kaijet Technology International Corporation | KaiJet Taiwan |
| Defendant Kaijet Technology International Limited, Inc. | KaiJet US |
| Defendants Kaijet Technology International Limited, Inc. and Kaijet Technology International Corporation | KaiJet Defendants |

## I.  INTRODUCTION

The Patent Act empowers the Court, in exceptional cases, to "award reasonable attorney fees to the prevailing party."[1] As previously briefed, this is not an exceptional case, Sanho is not the prevailing party and thus should not be awarded any fees under 35 U.S.C. § 285.[2] Nonetheless, if the Court determines otherwise, the amount Sanho requests is far too high.

Plaintiff Sanho Corporation ("Sanho" or "Plaintiff") requests $956,149.98 in attorney fees in connection with the jury verdict of infringement of the '618 Patent.[3] This figure represents nearly one-third of Sanho's total aggregate fee in this litigation and is based solely on the self-serving estimations of Sanho's counsel. Though it is impossible to discern the actual amount of time Sanho's attorneys billed litigating the '618 Patent due to their practice of block billing, there is no doubt that Sanho's estimate of one-third of its fees relating to the '618 Patent – a single design patent out of over a dozen different claims involving five different patents, a copyright, registered and common law trademark rights, trade dress, and false advertising claims – is much too high. Even if it were true, such an amount would reflect an unreasonable amount of hours spent litigating a claim

---

[1] 35 U.S.C. § 285.

[2] ECF 642 at 13-17.

[3] ECF 660-2, at ¶ 13 & FIG. 6.

with no damages that relates solely to two outdated products. KaiJet Defendants request the Court to award Sanho no more than $160,901.31, which is a more fair (and still generous) estimation of the effort reasonably expended by Sanho in connection with the '618 Patent claim.

## II.    LEGAL STANDARD

To calculate a "reasonable" attorney fee award, district courts usually apply the lodestar method.[4] To calculate the lodestar, the court "multipl[ies] a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case."[5] Under § 285, the lodestar should reflect only those *patent* claims that relate to the extent of the misconduct.[6]

## III.    ARGUMENT

### A. Sanho Incorrectly Computed Its Attorney Fees.

Sanho's itemization of attorney fees contains multiple errors that result in an overestimation of the number of hours that are recoverable. First, Sanho requests fees for many billing entries that comprise work wholly irrelevant to the '618

---

[4] *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016).

[5] *Id.*

[6] *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1279 (Fed. Cir. 2018); *Mach. Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 475 (Fed. Cir. 1985).

Patent.[7] Second, Sanho seeks fees for billing entries that have been fully redacted. Third, Sanho overestimates the portion of its block billed fees that are reasonably attributable to litigating the '618 Patent. After correcting these errors, a reasonable fee for litigating the '618 Patent is $160,901.31.

### 1. Sanho seeks compensation for fees unrelated to the '618 Patent.

#### (a) Sanho cannot recover for false advertising under Section 285.

A party is not entitled to attorney fees under § 285 "for time incurred in the litigation of [] non-patent issues."[8] False advertising arises under the Lanham Act, not the Patent Act.[9] Therefore, a plaintiff cannot recover for false advertising under § 285.[10] Sanho asks the Court to award its attorney fees accrued litigating Kaijet Defendants' false advertising counterclaim.[11] These fees must be denied.

---

[7] *See, e.g.,* Exhibit A to the Declaration of James Avery Rollins in support of KaiJet Defendants' Opposition to Sanho's Itemization in Support of Its Motion for Attorney Fees ("Rollins Dec."), at 35 (billing $2,612.50 for creating a chart related to the '875 Patent); *id.* at 50 (billing $1,615.00 for false advertising damages); Exhibit B to Rollins Dec., at 235 (billing $5,184.00 for work responding to Star View Global's motion for summary judgment).

[8] *Mach. Corp. of Am.*, 774 F.2d at 475.

[9] *See* ECF 115, at 63; 15 U.S.C. § 1125(a).

[10] *See Use Techno Corp. v. Kenko USA Inc.*, No. C-06-02754 EDL, 2008 WL 2020505, at *1 (N.D. Cal. May 8, 2008).

[11] *See* ECF 660-2, at ¶¶ 13 n.9, 75, 83, 91, 96-97.

**(b) Sanho includes fees for claims unrelated to the '618 Patent.**

Sanho mistakenly categorizes numerous billing entries as related to its '618 Patent that are in fact not related or only partially related. The timesheets from Sanho's counsel contain errors including:

- entries wholly related to other claims (including other asserted patents and trademark, trade dress, false advertising, copyright, and state law issues)[12]

- entries entirely redacted such that the Defendants cannot determine the claim(s) to which they relate.[13]

As discussed in Section A.1.a above, Sanho should not be awarded its attorney fees for claims that fall outside the Patent Act. Nor should they be awarded fees on billing entries that were completely redacted, preventing either Defendants or the Court from determining whether these entries properly relate to the '618 Patent claim. Therefore, the Court should deny these erroneous entries.

Attached to this brief are the invoices submitted by Sanho with further annotations made by KaiJet Defendants. Entries completely highlighted in blue

---

[12] *See, e.g.*, Exhibit A, at 35 (billing $2,612.50 for creating a chart related to the '875 Patent); *id.* at 50 (billing $1,615.00 for false advertising damages).

[13] *Compare, e.g.*, Exhibit A, at 83 (billing $7,455.00 for work with completely redacted descriptions) *with* ECF 660-2, at ¶ 22 ("[C]ertain time, amount and description information has not been redacted, so that the Court can see that the HKW time entries at issue are reasonable.").

and/or green are deductions made by Sanho.[14] Yellow highlights represent deductions made by Kaijet Defendants upon review of Sanho's billing entries.[15] A single entry is highlighted in orange, indicating that it relates solely to the '618 Patent.[16] Every other entry is a mixed billing entry, bearing some potential relation to the '618 Patent but also relating to other claims. After deducting the additional irrelevant entries identified by KaiJet Defendants (highlighted in yellow) – in addition to the deductions made by Sanho (highlighted in blue or green) – the total fees that may relate to the '618 Patent are $2,252,618.40. As explained below, this total should be apportioned further to reflect that the '618 Patent was only one of many claims in this case.

### 2. Sanho greatly overestimated the amount of time it billed to matters relating to the '618 Patent.

The overwhelming majority of Sanho's remaining billing entries are "mixed" entries.[17] Sanho requests various percentages the "mixed" time entries

---

[14] ECF 660-2, at ¶ 24. These annotations exist in Sanho's original versions of the documents. *See* ECF 660-3.

[15] Additionally, KaiJet Defendants highlighted a single entry in orange, as described above in Section A.1.c at footnote [21]. This entry is not a deduction; indeed, it is the only entry Kaijet Defendants could determine related solely to the '618 Patent claim.

[16] Exhibit A to Rollins Dec., at 35.

[17] *See generally* ECF 660-3; ECF 660-8. KaiJet Defendants have identified only a single billing entry from Sanho, before the parties began briefing post-trial

(time entries that relate to both the '618 Patent and other claims)[18] based on the phase of the litigation.[19] Sanho claims its multipliers are a "conservative estimation" of the work necessary for the '618 Patent claim.[20] Sanho offers **zero** support justifying these multipliers – only the estimates of Sanho's counsel.[21] These unsupported estimates are purely subjective, self-serving, and unreliable. This is plain from a cursory review: Sanho ultimately seeks one-third of its total fees for the litigation of the '618 Patent.[22] Yet infringement of the '618 Patent was but one of five patent claims, along with numerous other claims based on trademarks, trade dress, copyright, and false advertising.[23]

The most glaring example of overestimation is Sanho's claim that 50% of the "Time of Trial and in-Trial Preparation" related to the '618 Patent.[24] That is absurd. Sanho has admitted that they did *nothing* at trial to prove the infringement

---

motions, that in fairness wholly related to the '618 Patent claim. *See* Exhibit A, at 35 (highlighted in orange).

[18] *See* ECF 660-2, at 6 n.5, ¶¶ 67, 87.

[19] ECF 660-2 at 7 n.7 & FIG. 5.

[20] *Id.* at ¶¶ 67, 87.

[21] *Id.* at 7, n.7 ("I estimate that 50% of the billed time…"); ¶¶ 92 ("I therefore estimate that 37.5%..."), ¶ 97 ("Based on my recollection of the work and my review of the billing entries of HKW, at least 25% of the effort…), ¶¶ 124-125 (various estimates with no factual support).

[22] ECF 660-2 at 5 at FIG. 1 (Total fees: $2,952,187.75), 7 at FIG. 6 (Requested fees: $956,149.98).

[23] ECF 89; ECF 204.

[24] ECF 660-2 at ¶ 124.

of the '618 Patent beyond admitting the patent and accused products as exhibits.[25]

In an attempt to justify this apportionment, Sanho argues that even if every other claim had been dropped, "Plaintiff would have needed to call Peter Bressler as its expert to opine on prior art and explain the validity of the '618 Patent."[26] This is plainly false, as Mr. Bressler did not testify regarding infringement of the '618 Patent, nor did he testify regarding the validity of the '618 Patent *at the actual trial* despite these issues being litigated.[27] Sanho did not even cross examine Defendants' expert on either subject, except to point out that the '728 Patent is in Chinese.[28] Sanho also argues that it would have needed to call "Daniel Chin, Valerie Chong, Chuck Akins, Andrew Miller, Jessica Liu and Yuki Tai" but fails to explain *why* or to account for the much more limited testimony that each witness would need to offer.[29] Sanho fails to acknowledge the significant savings in having no damages experts, no experts on the definition of a power adapter, and no

---

[25] ECF 653 at 22-24 ("Sanho was under no duty to proffer testimony embellishing this primary visual evidence" – referring to the '618 Patent and the accused products).

[26] ECF 660-2 at ¶ 120.

[27] ECF 653 at 24 ("Sanho was under no duty to proffer testimony" to support its '618 Patent infringement claim); ECF 655 at 8 (admitting that "Sanho's expert Mr. Bressler did not give particularized rebuttal testimony with respect to the '618 Patent.")

[28] *See generally* 7/16/24 Trial Tr. (Afternoon), 10:3-66:13 (no mention of the '618 Patent).

[29] ECF 660-2 at ¶ 120.

experts on trademarks and copyrights.[30] Last, Sanho points to tasks related to the jury, such as the charging conference and voir dire.[31] But there is no right to a jury trial when only injunctive relief is at stake.[32]

Sanho similarly overestimates every other phase of the case. For "Phase I," Sanho estimates that one-third of all work related to the '618 Patent. This number was "chosen" by Sanho's counsel based on his "recollection" and "review of the billing entries."[33] There is no factual support or explanation as to why the litigation of a single design patent constituted one-third of the work during this phase. It was but one small part of a wide-array of intellectual property claims. "Phase II," which focused on expert discovery and summary judgment, was given a multiplier of 33% based again solely on Sanho's counsel's "recollection" and "review of the billing entries."[34] Of the seven total experts, only Mr. Bressler and Mr. Shankwiler addressed the '618 Patent. But even then, their opinions addressed all four design patents. As for summary judgment, the cross-motions included numerous topics beyond the '618 Patent, such as the '429 Patent, '875 Patent, '616 Patent, '290

---

[30] ECF 660-2 at ¶ 120.

[31] ECF 660-2 at ¶ 121.

[32] *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019) ("injunctive relief is the quintessential form of equitable remedy; it does not entitle a plaintiff to a jury trial.").

[33] ECF 660-2 at ¶ 67.

[34] *Id*. at ¶ 87.

Patent, trademark validity and infringement, trade dress, copyright, applicability of Copyright Act and Lanham Act to KaiJet Taiwan, and false advertising.[35]

Sanho claims that 25% of the work in Phase III related to the '618 Patent claim, yet again based solely on Sanho's recollection and review of its bills.[36] Phase III comprised refiling the summary judgment motions, which mirrored the prior filed motions save for the removal of the '429 Patent claim after its invalidation at the PTAB. As explained above, there were many other issues being litigated in the summary judgment motions. Sanho provides no factual basis for its claim that 25% of the work related to the '618 Patent when issues regarding three other patents, a trademark, a copyright, and two false advertising claims were being litigated.

Last, Sanho's estimated amount of time spent on the '618 Patent go against basic common sense. While Sanho sought millions in damages related to the trademark and copyright infringement claims,[37] and hundreds of thousands for the '875 Patent claim,[38] it only sought nominal damages – "one dollar" – for the '618

---

[35] ECF 333; ECF 325-2; ECF 318-1.

[36] ECF 660-2 at ¶ 97.

[37] 7/18/24 Trial Tr. (Morning) at 68:6-8 (copyright); 79:22-24 (trademark); 79:25-80:3 (unfair competition).

[38] *Id.* at 59:5-13.

Patent.[39] It would be nonsensical to spend so much time on a claim that, at best, would result in no damages and an injunction for outdated products. Sanho's conduct at trial aligns with this logic, as neither their damages expert nor technical expert testified regarding the '618 Patent.[40] In fact, Sanho admits that its entire case regarding the infringement of the '618 Patent was merely entering the accused product and the patent itself into evidence and allowing the jury to compare them themselves.[41] Sanho does not, and cannot, explain how 33% of its billable hours were spent litigating a claim that (1) had no damages and (2) it essentially ignored at trial. Because 33% overcompensates Sanho for its effort on the '618 Patent claim, the Court should lower its award for these mixed entries.

---

[39] 7/15/24 Trial Tr. (Afternoon) at 133:17-135:16.

[40] *See* 7/11/24 Trial Tr. (Morning) at 33:2-73:6 (direct examination of Mr. Peter Bressler); *id.* at 33:19-20 ("I have been asked to opine on the similarity of the accused products to the *'290 patent*.") (emphasis added); *id.* at 108:4-135:16 (direct examination of Mr. Dan Cenatempo); 7/11/24 Trial Tr. (Afternoon) at 3:11-30:22 (continued direct examination of Mr. Cenatempo).

[41] ECF 653 at 23-24 ("The '618 Patent was in evidence… The JCD382 and JCD389 products were also in evidence. Thus, the jury could compare them…Sanho was under no duty to proffer testimony embellishing this primary visual evidence.").

### 3. Sanho seeks compensation disproportionate to its success.

The Court may adjust the lodestar to account for the plaintiff's limited success.[42] This is true even if the unsuccessful claims are related to the successful claims.[43] The principal method for accounting for a party's limited success is by reducing the reasonable number of hours and reasonable rates:

> It is axiomatic that attorneys almost inevitably consider the amount involved in a particular case when determining a reasonable number of hours to expend on any given issue or when allocating personnel resources based upon the expertise or experience required. Where only a small amount is at stake, it certainly would not be reasonable to expend countless hours on such a small claim or to commit the most experienced or valued attorney in the firm to work on the case. Thus where the amount involved is small, reductions in the reasonable number of hours expended or the reasonable hourly rate can easily be made to reflect this fact.[44]

Sanho's limited success on the '618 Patent necessitates reducing the attorney fee award. Sanho requests more than 32% of its total attorney fee, totaling nearly

---

[42] *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578-79 (11th Cir. 1987); *see also Biery v. U.S.*, 818 F.3d 704, 712 (Fed. Cir. 2016) (holding that, because "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee … includ[ing] the measure of success achieved by a party," the Court "may simply reduce the award to account for the limited success").

[43] *See Popham*, 820 F.2d at 1579-80; *Biery*, 818 F.3d at 712.

[44] *Bywaters v. United States*, 670 F.3d 1221, 1231 (Fed. Cir. 2012).

one million dollars.[45] But Sanho did not seek damages[46] and failed to obtain an injunction, just a future accounting of profits on outdated products that are no longer for sale.[47] Moreover, Sanho's trial strategy regarding the '618 Patent was simplistic: enter the products and the patent into evidence and nothing more.[48] This simplistic strategy makes sense as the '618 Patent was unimportant, especially compared to other claims at issue with millions in potential damages. But it would not be reasonable to bill thousands of hours on a claim with no damages, where the products at issue have already been effectively replaced by newer products, and where the strategy is nothing more than entering a few exhibits unopposed at trial. Sanho's attorney fee, if awarded at all, should be reduced accordingly.

### 4. Apportioning the fees based on the number of claims is the most objective and fair method.

As discussed above, it is impossible to truly delineate the amount of time Sanho's attorneys spent on issues related to the '618 Patent due to their practice of

---

[45] Sanho represents that its total aggregate fees are $2,952,187.75. *See* ECF 660-2, at ¶ 13 FIG. 1. Sanho requests $956,149.98. *Id.* at ¶ 13 FIG. 6. This equals roughly 32.39% of Sanho's total fee.

[46] 7/12/24 Trial Tr. (Afternoon) at 143:11-23 (representing that Sanho would submit a jury instruction on "nominal damages on the design patent issue and seek injunctive relief"); 7/15/24 Trial Tr. (Afternoon) at 134:3-11 (representing that Sanho would ask for "$1" in nominal damages and that "we're only seeking injunctive relief"); ECF 581 at 2.

[47] ECF 634 at 7-8.

[48] ECF 653 at 23-24.

block billing and lack of specificity in their billing narratives. KaiJet Defendants recognize these difficulties in their own attorney bills too, as this was a long, complicated case with numerous claims, parties, and forms of intellectual property. As with their own itemization of requested attorney fees, KaiJet Defendants suggest the most objective and fair method for apportioning fees is based on the number of claims. Sanho brought 14 claims in this case;[49] the '618 Patent claim represents 1 of 14, or about 7%.[50] This is in line with what Sanho's counsel stated was fair for its Phase I fees, where it requested "only 8.5% of the total KHW billings" which Sanho described as "fair and reasonable."[51] With no other objective way of determining the amount of work actually spent related to the '618 Patent claim, apportionment based on the number of claims is appropriate and fair.

---

[49] Sanho asserted the following claims: (1) infringement of the '875 Patent; (2) infringement of the '616 Patent; (3) infringement of the '290 Patent; (4) infringement of the '618 Patent; (5) infringement of the '429 Patent; (6) infringement of Sanho's registered trademark; (7) infringement of Sanho's common law trademark; (8) infringement of Sanho's trade dress; (9) infringement of Sanho's copyright; (10) false advertising; (11) violation of Georgia's Uniform Deceptive Trade Practices Act; (12) Georgia Unfair Competition; (13) common law misappropriation and unfair competition; and (14) punitive damages. ECF 89; ECF 204; ECF 528-1. The Kaijet Defendants' various counterclaims and defenses were all related and in response to these claims brought by Sanho.

In an earlier filing, the Kaijet Defendants correctly listed each claim brought by Sanho but erroneously counted thirteen total claims. *See* ECF 662, at 7 n.9.

[50] Even if every mixed billing entry involving the '618 Patent related solely to the four design patents at issue—which Sanho does not contend—a conservative estimation would be 25%.

[51] ECF 660-2 at 7 n.11.

### (c) Sanho's criticisms of apportionment based on number of claims are meritless.

In a separate filing, Sanho argues that KaiJet Defendants' approach of apportioning fees based on the number of claims in the case is flawed. None of the flaws identified by Sanho are valid. Sanho claims that work overlapped between Sanho's numerous unsuccessful claims and the '618 Patent claim. Sanho's sole example is that "work performed analyzing the JCD382 product packaging would have overlapping the copyright infringement and trade dress claims."[52] This example is irrelevant. Sanho fails to demonstrate what overlapping work there is between the determination of whether the JCD382 and JCD389 infringe the '618 Patent and work done investigating other products, other patents, the copyright, trade dress, and trademarks.

Sanho also argues that Kaijet Defendants overlook their own counterclaims in their calculations. This is true (though it is noteworthy that Sanho also ignores the counterclaims – including the ones KaiJet Defendants prevailed on – when arguing that Sanho is the prevailing party). KaiJet Defendants raised fourteen counterclaims.[53] Of the counterclaims, nine are related to patents.[54] Of those nine,

---

[52] ECF 664 at 15.

[53] ECF 115; ECF 205.

[54] ECF 115 at 55 (Declaration of noninfringement of '875 Patent), 56 (Declaration of noninfringement of '616 Patent), 57 (Invalidity of '875 Patent), 59 (Invalidity of

only two counterclaims relate to the 618 patent.[55] Of those two, the false marking counterclaim involved three different patents.[56] Therefore, if the Court includes the counterclaims, a fair estimate of the amount of time billed to the '618 Patent claims would be 8.3%.[57]

Sanho argues that three separate claims it asserted[58] should be treated as "one common claim."[59] This is a complete reversal from Sanho's position at trial, where it argued that its Georgia state law claims were based on common law trademark infringement and its Lanham Act claim was based on Sanho's registered trademark.[60] Moreover, Sanho cannot complain that KaiJet Defendants included

---

'616 Patent); ECF 205 at 15 (Invalidity of '429 Patent), 19 (Invalidity of '618 Patent), 23 (Invalidity of '290 Patent), 25 (False Patent Marking), 30 (Unenforceability of '429 Patent).

[55] ECF 205 at 19 (Invalidity of '618 Patent), 25 (False Patent Marking).

[56] ECF 205 at 15 (Invalidity of '429 Patent), 19 (Invalidity of '618 Patent), 23 (Invalidity of '290 Patent), 25 (False Patent Marking), 30 (Unenforceability of '429 Patent).

[57] Sanho brought fourteen claims, KaiJet Defendants brought fourteen counterclaims, therefore a total of 28 claims at issue in this case. Three claims fully related to the '618 Patent (infringement and invalidity), and one claim related in part (false marking). Therefore, 2 1/3 claims related to the '618 Patent divided by 28 total claims equals 8.3%.

[58] ECF 89 at 21 (Count II: Trademark Infringement Under Lanham Act § 32), 25 (Count V: Violation of Georgia's Uniform Deceptive Trade Practices Act), 28 (Count VI: Unfair Competition under O.C.G.A. § 23-2-55).

[59] ECF 664 at 15.

[60] ECF 597 at 5 ("Did Sanho prove by a preponderance of the evidence that the Kaijet Defendants violated *Georgia's law* against unfair competition?") (emphasis added); *compare* ECF 528-1 at 18 ("Case I Count II – Registered trademark

Sanho's separately plead counts from its own complaint. Further, Sanho cannot claim they are all just the same common claim when the pleadings themselves demonstrate otherwise: Sanho's state law deceptive trade practices claim is based on not just the HyperDrive mark, but also on Defendants' "willful misappropriation…of Sanho's…packaging, trade dress, and the copyright…and patent relating thereto."[61] Similarly, Sanho's state law competition claim is based on "Defendant's unauthorized use of Plaintiff's patent…its packaging, design, and marking."[62] Therefore, it is appropriate to treat Sanho's three separately plead claims as three claims.

Sanho argues that the fees billed for one claim are not necessarily equal to the fees billed for a different claim. KaiJet Defendants agree. But due to Sanho's block billing, it is impossible to determine the actual amount of fees billed to one claim as compared to another. Sanho should not be allowed to make a self-serving, unsupported estimate. Apportioning based on the number of claims in the case is the most objective method for estimating the appropriate fees – it is the same method KaiJet Defendants used in their own itemization of attorney fees.[63]

---

infringement") *with* 19 ("Case I Count VI – Georgia Unfair Competition"); ECF 527 at 7-8.

[61] ECF 89 at ¶ 96.

[62] *Id.* at ¶ 105.

[63] ECF 662 at 7-9.

**B. Sanho Should Recover No More Than $160,901.31.**

By deducting the unrelated fees identified by Sanho and KaiJet Defendants, and then applying the apportionment rate of 7% to the remaining fees that potentially relate to the '618 patent, Kaijet Defendants calculate that Sanho's efforts related to the '618 Patent cost approximately $160,901.31. [64]

**C. Sanho failed to relate the litigation costs to the '618 Patent.**

Sanho asks for an award of $124,299.69 in "litigation costs."[65] But Sanho makes no attempt to tie these costs to the litigation of the '618 Patent. There can be no dispute that these costs were related to other claims too. Therefore, the 7% apportionment should be applied for the same reasons detailed above. At most, $8,700 in litigation costs should be awarded.

## IV.    CONCLUSION

For the foregoing reasons, KaiJet Defendants respectfully request this Court to award no more than $160,901.31 in attorney fees and $8,700 in costs to Sanho, if the Court determines any award at all is appropriate.

---

[64] Alternatively, if the Court determines it is appropriate to include the counterclaims, the Court can multiply $2,252,618.40 by 8.3%, resulting in a fee award of $186,967.32.

[65] ECF 660-2 at ¶ 13f.

Respectfully submitted, this 25th day of November, 2024.

/s/ *Robert J. Carlson*

Robert J. Carlson
WSBA Number 18455
Admitted *Pro Hac Vice*
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: carlson@leehayes.com

Ryan P. Gentes
GA Bar No. 421695
Robert A. Madayag, III
GA Bar No. 123699
William B. Dyer III
GA Bar No. 236915
Steven Philbin
GA Bar No. 516724
James Avery Rollins
GA Bar No. 776439
LEE & HAYES, P.C.
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Email: ryan.gentes@leehayes.com
Email: robm@leehayes.com
Email: bill.dyer@leehayes.com
Email:  steven.philbin@leehayes.com
Email:  james.rollins@leehayes.com

Rhett V. Barney
WSBA Number 44764
Admitted *Pro Hac Vice*
Johanna Tomlinson
WSBA Number 57582
Admitted *Pro Hac Vice*
Lee & Hayes, P.C.

18

601 W. Riverside Ave., Ste. 1400
Spokane, WA 99201
Telephone: (509) 324-9256
Email: rhettb@leehayes.com
Email:
johanna.tomlinson@leehayes.com

*Attorneys for Defendants*
*KaiJet Technology International Limited,*
*Inc. and KaiJet Technology International*
*Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2024, I filed a true and correct copy of the foregoing document with the CM/ECF filing system of this Court, which will serve an electronic copy to all attorneys of record.

/s/ *Robert J. Carlson*

Robert J. Carlson
WSBA Number 18455
Admitted *Pro Hac Vice*
LEE & HAYES, P.C.
701 Pike Street, Ste. 1600
Seattle, WA 98101
Telephone: (206) 315-4001
Email: carlson@leehayes.com

*Attorney for Defendants*
*KaiJet Technology International Limited, Inc.*
*and KaiJet Technology International*
*Corporation*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

/s/ *Robert J. Carlson*

Robert J. Carlson
WSBA Number 18455
Admitted *Pro Hac Vice*
LEE & HAYES, P.C.

*Attorney for Defendants*
*KaiJet Technology International*
*Limited, Inc. and KaiJet Technology*
*International Corporation*