IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SANHO CORPORATION,<br>    Plaintiff,<br>              v.<br>KAIJET TECHNOLOGY<br>INTERNATIONAL LIMITED, INC., *et al.*,<br>    Defendants. | Civil Action No.<br>1:18-cv-05385-SDG |

**OPINION AND ORDER**

This Order resolves the following post-trial motions in this intellectual property dispute over MacBook dongles or "hubs":

- Defendants Kaijet Technology International Limited, Inc. (Kaijet US) and Kaijet Technology International Corporation's (Kaijet Taiwan) renewed motion for judgment as a matter of law [ECF 641];

- Defendant Star View Global Limited's renewed motion for judgment as a matter of law [ECF 646];

- Kaijet Taiwan's motion to dismiss [ECF 641];

- Kaijet US and Kaijet Taiwan's (the Kaijet Defendants) motion for a new trial [ECF 643];

- Star View's motion for a new trial [ECF 645];

- Plaintiff Sanho Corporation's motion for attorneys' fees [ECF 637];

- The Kaijet Defendants' motion for attorneys' fees [ECF 638]; and

- The Kaijet Defendants' motion to deny or reduce Sanho's bill of costs [ECF 652].

1

For the following reasons, all pending motions are **DENIED** except the Kaijet Defendants' motion to deny or reduce Sanho's bill of costs, which is **GRANTED IN PART** and **DENIED IN PART**.

**I.     The Kaijet Defendants' and Star View's motions for judgment as a matter of law are denied.**

The Kaijet Defendants, joined in part by Star View, renew their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50,[1] arguing that the evidence does not support a verdict in Sanho's favor on copyright and patent infringement. The motion is denied. The Court rules, for the same reasons that it did on Defendants' pre-verdict motion for judgment as a matter of law under Rule 50(a), that the jury had a "legally sufficient evidentiary basis" to find in Sanho's favor on copyright and patent infringement. Fed. R. Civ. P. 50(a); *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016).[2] As to copyright infringement, there was sufficient evidence for the jury to find that the Kaijet Defendants' product packaging design was "substantially similar to the

---

[1]  ECF 641, at 7; ECF 646, at 1. Because Sanho did not assert a copyright claim against Star View, Star View joins the Kaijet Defendants' motion for judgment as a matter of law only as to patent infringement.

[2]  The Federal Circuit has exclusive jurisdiction over appeals from "any civil action arising under" patent law, 28 U.S.C. § 1295(a)(1), but applies regional circuit law to "nonpatent" procedural issues, *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999).

protected elements" of Sanho's design.[3] *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010). Similarly, as to patent infringement, there was sufficient evidence for the jury to find that "a purchaser familiar with the prior art would be deceived" by the visual similarity between the Sanho-owned U.S. Design Patent No. D844,618 ('618 Patent) and Defendants' JCD382 and JCD389 MacBook dongles.[4] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 683 (Fed. Cir. 2008). Defendants' Rule 50(b) motion is denied.

## II.     Kaijet Taiwan's motion to dismiss is denied.

Kaijet Taiwan moves to dismiss the copyright infringement claim against it for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3). Kaijet Taiwan argues for dismissal on extraterritoriality grounds; that is, it argues that Sanho's copyright infringement claim fails because there is no evidence that Kaijet Taiwan engaged in infringing activities within the United States.[5] In making this argument, Kaijet Taiwan cites the Eleventh Circuit case *Palmer v. Braun* for the proposition that extraterritoriality is a *jurisdictional* limit on

---

[3] ECF 594; *see also* ECF 513, at 39–47. The evidence before the jury included the two-dimensional "deposit copy" of Sanho's design that was submitted to the Copyright Office, as well as a physical example of Sanho's product packaging embodying that design. ECF 620-13.

[4] ECF 594; *see also* ECF 513, at 20–24. The evidence before the jury included the '618 Patent, the JCD382 and JCD389 dongles, and various examples of prior art. ECF 620-12; ECF 620-2; ECF 620-6; ECF 628.

[5] ECF 641, at 11.

a court's ability to adjudicate claims under the Copyright Act. 376 F.3d 1254, 1258 (11th Cir. 2004). Kaijet Taiwan cannot be faulted for its reliance on *Palmer*, given that the Court has relied on *Palmer* to analyze the extraterritorial application of the Copyright Act in this very case.[6] Nevertheless, a closer look at more recent case law reveals that extraterritoriality is a substantive bar, rather than a jurisdictional defect, to a copyright infringement claim.

The Court's extraterritoriality analysis here centers on a line of post-*Palmer* Supreme Court cases clarifying the distinction between *statutory prerequisites* to a claim on one hand, and a federal court's *subject matter jurisdiction* over a claim on the other. *See MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 297–98 (2023); *see also Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1359–60 (11th Cir. 2013). It is a distinction that courts have not always meticulously maintained. *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) ("Jurisdiction, it has been observed, is a word of many, too many, meanings."). Even the Supreme Court, by its own admission, has at times confused the issue by "mischaracterize[ing] claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that

---

[6] ECF 513, at 54–55.

characterization was not central to the case, and thus did not require close analysis." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010).

The distinction between statutory prerequisites and jurisdictional requirements can be critical, however, due to the "unique and sometimes severe consequences" of a jurisdictional defect. *MOAC*, 598 U.S. at 297. Jurisdictional defects deprive courts of the "power to hear a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Thus, jurisdictional issues "must be raised by courts *sua sponte*," "do not allow for equitable exceptions," and "cannot be waived." *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022). This case exemplifies why this issue can be so important. If territoriality here is *not* jurisdictional, then Kaijet Taiwan has waived it by failing to raise it in its pre-verdict motion for judgment as a matter of law under Rule 50(a). *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004). But if territoriality *is* jurisdictional, then it cannot be waived; the Court must enforce it even at this late stage in litigation, no matter how "many months of work on the part of the attorneys and the court may be wasted." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).

Endeavoring to limit that kind of waste and "bring some discipline to the use of the term 'jurisdictional,'" *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), the Supreme Court in the seminal case *Arbaugh v. Y&H Corp.* established a "bright line" rule, 546 U.S. 500, 516 (2006). Under *Arbaugh*, any "threshold limitation on a

statute's scope" is jurisdictional only if Congress has "clearly state[d]" that it is. *Id.* at 515. Whether Congress has spoken clearly is determined using the "traditional tools of statutory construction." *Boechler*, 596 U.S. at 203. While Congress need not "incant magic words in order to speak clearly," *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013), its statement "must indeed be clear," *MOAC*, 598 U.S. at 298. Anything less than clear—a jurisdictional reading that is merely "plausible," or "better than nonjurisdictional alternatives"—is not enough. *Id.* Absent a clear jurisdictional statement, limitations on a statute's scope are deemed to be "nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516.

Applying the *Arbaugh* rule, the Supreme Court has over the past two decades stripped the jurisdictional label from a variety of statutory "preconditions to relief." *MOAC*, 598 U.S. at 297 (collecting cases). Of particular relevance here is the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, which held—in abrogation of established circuit precedent—that extraterritoriality under § 10(b) of the Securities Exchange Act did *not* implicate subject matter jurisdiction. 561 U.S. 247, 253–54 (2010). As *Morrison* reasoned, "to ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits," and what conduct a statute prohibits is a "merits question." *Id.* at 254; *see also Arbaugh*, 546 U.S. at 511–12 (citing *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991)) (casting doubt on whether the extraterritorial reach of Title VII was truly a question of

subject matter jurisdiction). In the wake of *Morrison*, the Eleventh Circuit has held (albeit in an unpublished opinion) that "the extraterritorial application of a statute . . . is a merits question rather than a question of subject-matter jurisdiction." *Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, 604 F. App'x 841, 851 (11th Cir. 2015). Likewise, post-*Arbaugh* circuit court decisions on the extraterritorial reach of the Copyright Act—the precise question at issue here—have held that "the issue is not one of jurisdiction." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 791 (5th Cir. 2017); *accord Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1367 (Fed. Cir. 2008).

This Court agrees. *Morrison*'s logic applies as fully to the Copyright Act as it did to § 10(b): To ask what conduct the Copyright Act reaches is to ask what conduct it prohibits, and what conduct the Copyright Act prohibits is a merits question rather than one of subject matter jurisdiction. The same result is reached under *Arbaugh*'s bright-line rule: The territorial reach of the Copyright Act is not jurisdictional because Congress has not clearly stated that it is. Territorial limits on the Copyright Act arise, not from the text of the statute itself, but from the judicially created "background presumption that legislation reaches only domestic conduct." *Geophysical Serv.*, 850 F.3d at 791; *see also Morrison*, 561 U.S. at 255 (characterizing the presumption against extraterritoriality as "a canon of construction"). *Reed Elesevier* is instructive on this point: In that case, the Supreme

Court held that the Copyright Act's registration requirement was not jurisdictional because Congress had not co-located it with the jurisdiction-granting provisions in 28 U.S.C. §§ 1331 and 1338(a). 559 U.S. at 164–65. The same logic applies with greater force here, where the Copyright Act's territoriality requirement is not only "separate" from §§ 1331 and 1338(a) but does not arise out of the text of the statute at all. *Id.* at 164; *see also S. River Watershed All., Inc. v. Dekalb Cnty.*, 69 F.4th 809, 822 (11th Cir. 2023) (holding that the Clean Water Act's diligent prosecution bar was not jurisdictional because it was located "outside the [statute's] jurisdiction-granting provision").

*Palmer* does not require a different conclusion.[7] In light of the superseding Supreme Court case law in *Arbaugh*, *Morrison*, and *Reed Elsevier*, the jurisdictional ruling in *Palmer* is best understood as dicta. In *Palmer*, nothing "*turned on* whether the existence of a cause of action for [extraterritorial] violations was technically jurisdictional." *Steel Co.*, 523 U.S. at 91. Whether territoriality was jurisdictional "made no substantive [or procedural] difference . . . , had been assumed by the parties, and was assumed without discussion by the [c]ourt." *Id.*; *see also Litecubes*, 523 F.3d at 1368 (distinguishing *Palmer* because the Eleventh Circuit "assumed the

---

[7] The Court assumes without deciding that *Palmer* is binding precedent for purposes of this case. *But see Litecubes*, 523 F.3d at 1366 (applying Federal Circuit law to questions of subject matter jurisdiction in patent appeals).

8

issue [of territoriality] was a jurisdictional one, without any analysis of whether the question was more properly considered a question on the merits"). The Supreme Court has indicated that such "drive-by jurisdictional rulings" should be given "no precedential effect." *Reed Elsevier*, 559 U.S. at 174. The Court thus concludes, *Palmer* notwithstanding, that it has subject matter jurisdiction over Sanho's copyright infringement claim against Kaijet Taiwan, and Kaijet Taiwan's motion to dismiss is therefore denied.

### III. The Kaijet Defendants' and Star View's motions for a new trial are denied.

The Kaijet Defendants, joined by Star View, move for a new trial under Federal Rule of Civil Procedure 59(a)(1) on both their counterclaim for '618 Patent invalidity and Sanho's claim for '618 Patent infringement.[8] Their motion is denied. First, the verdict that the '618 Patent is valid is not against the "clear weight" of the evidence. *McGinnis*, 817 F.3d at 1254; *see also* Fed. R. Civ. P. 59(a)(1). Defendants argue that the '618 Patent is invalid because it is obvious in view of the prior art, and especially in view of the design disclosed in Chinese patent CN728.[9] But the question of whether CN728 is prior art to the '618 Patent was explicitly reserved

---

8   ECF 643-1, at 10; ECF 645, at 1.

9   ECF 643-1, at 11.

for the jury,[10] and Defendants have waived any challenge to the jury's finding as to that issue by raising it for the first time in their reply brief. *See, e.g., Reliance Ins. Co. of Ill. v. Richfield Hosp. Servs., Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000); *cf. United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("[T]his Court . . . repeatedly has refused to consider issues raised for the first time in an appellant's reply brief). Given that the jury was authorized to disregard the CN728 patent, it was not against the weight of the evidence for the jury to find in Sanho's favor on '618 Patent invalidity, on which claim a new trial is denied.

Second, the verdict that the JCD382 and JCD389 both infringed the '618 Patent does not "result in a miscarriage of justice." *McGinnis*, 817 F.3d at 1254. Defendants' argument here is premised on an alleged statement by a single juror that the '618 Patent was infringed only by the JCD382[11]—a statement elicited by Defense counsel after the verdict had been returned.[12] But the law is clear that "orally given findings cannot impeach the verdict." *Sims' Crane Serv., Inc. v. Ideal Steel Prods., Inc.*, 800 F.2d 1553, 1555 (11th Cir. 1986). A juror's "contemporaneous, extemporaneous exegesis" is not an "appropriate way to obtain specific answers

---

[10] The Court instructed the jury that a factual dispute existed as to whether the CN728 patent was prior art for purposes of Defendants' patent invalidity claims. ECF 595.

[11] ECF 643-1, at 11–12.

[12] *Id.*

from a jury." *Id.* at 1555–56. In fact, under the Federal Rules of Evidence, the juror's statement could not be used to disturb the verdict "even if [it] had been offered in the form of affidavits." *Id.* at 1556 (citing Fed. R. Evid. 606(b)).[13] The Court declines to consider the juror's statement here.

The '618 Patent infringement verdict will not result in a miscarriage of justice for the additional reason that Defendants have not been prejudiced by it. Sanho did not seek damages on the '618 Patent infringement claim at trial,[14] and the Court has denied Sanho's subsequent requests for disgorgement of profits and for a permanent injunction with regard to that patent.[15] In the section to follow, the Court will deny Sanho's attendant motion for attorneys' fees. What Sanho will get from the '618 Patent infringement verdict amounts, in Defendants' own words, to "no relief."[16] Keeping that verdict undisturbed is not a miscarriage of justice. Defendants' motion for a new trial is denied.

---

[13] The Federal Circuit applies the law of the regional circuit when "reviewing a district court's evidentiary rulings." *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1355 (Fed. Cir. 2024).

[14] ECF 589.

[15] ECF 634, at 5–8.

[16] ECF 643-1, at 12.

11

**IV.    The Parties' Motions for Attorneys' Fees Are Denied.**

Both Sanho and the Kaijet Defendants request an award of attorneys' fees under 25 U.S.C. § 185.[17] Section 185 allows fees to be awarded to the prevailing party in "exceptional cases." 35 U.S.C. § 285. A case is exceptional if it "stands out from others" under the totality of the circumstances—either with respect to the "substantive strength of a party's litigating position," or with respect to the "unreasonable manner in which the case was litigated." *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1105 (Fed. Cir. 2024).

This is not such an exceptional case. The fact that neither side's litigation position was overwhelmingly strong is reflected by the mixed verdict: Sanho won on copyright but lost on trademark; the Kaijet Defendants won on the '290 and '875 Patents but lost on the '618. Both sides lost claims at summary judgment.[18] On the balance, these are not exceptional results. In addition, though each side accuses the other of bad faith, the parties' conduct has not been so unreasonable as to justify an award of attorneys' fees to one side or the other. Sanho and the Kaijet Defendants' motions for attorneys' fees are accordingly both denied.

---

[17]   ECF 637, at 6; ECF 638, at 2. Sanho also requests attorneys' fees under "the inherent equitable powers of the Court." ECF 637, at 6. That request is denied for the same reasons the Court denies fees under § 185.

[18]   ECF 513, at 37–39 (granting summary judgment on Sanho's false advertising claim); *id.* at 59–64 (granting summary judgment on Defendants' false advertising and false patent marking counterclaims).

**V.     The Kaijet Defendants' motion to deny or reduce Sanho's bill of costs is granted in part and denied in part.**

The Kaijet Defendants ask the Court to deny or reduce Sanho's bill of costs.[19] Under Federal Rule of Civil Procedure 54(d), costs "shall be allowed as of course to the prevailing party unless the court directs otherwise." *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984). To qualify as a prevailing party, a litigant "must be awarded some relief on the merits of its claim by the court" that "materially alter[s] the legal relationship between the parties." *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1376 (11th Cir. 2022). "A judgment for damages in any amount" is sufficient to sustain prevailing party status. *Farrar v. Hobby*, 506 U.S. 103, 113 (1992). Under that standard, Sanho is the prevailing party here by virtue of the $1,385,509.00 judgment in its favor against the Kaijet Defendants.[20] *See Royal Palm*, 38 F.4th at 1382 ("[I]n the majority of cases whether there is a prevailing party and which party prevailed will be easily determined."). Sanho is therefore entitled to costs to the extent authorized by 28 U.S.C. § 1920. *Johnston v. Borders*, 36 F.4th 1254, 1287 (11th Cir. 2022).

---

[19]   ECF 652, at 2.

[20]   ECF 635 (entering judgment in favor of Sanho against Kaijet US in the amount of $774,626.00, and against Kaijet Taiwan in the amount of $610,883.00).

13

Sanho initially requested costs totaling $64,643.72,[21] but later adjusted that figure downward to $58,914.67.[22] The Kaijet Defendants' objections to the latter figure are sustained in part and overruled in part as follows:

1. <u>Interpreter fees for Michelle Tan and Grace Gao-Sheppard</u>: **Overruled**. Costs for interpreter fees are authorized by § 1920(6) and are taxed as to Tan at $1050.00 and as to Gao-Sheppard at $4,200.00. The Kaijet Defendants argue that Tan and Gao-Sheppard's fees are set by the Court Interpreters Act, but this argument has no merit: Section 1920(d) permits courts to tax costs for "compensation of interpreters" separate from any costs under the Court Interpreters Act. 28 U.S.C. § 1920(6).

2. <u>Deposition transcript for Zhuowen Liao</u>: **Overruled**. Costs for deposition transcripts are authorized by § 1920(2), and the Court finds that Sanho "could have reasonably believed" that Liao's deposition was necessary for use in this case.[23] *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000). Costs for Liao's deposition transcript are taxed at $811.00.

3. <u>Deposition transcripts for Kaijet US's Rule 30(b)(6) witness and Jessica Liu</u>: **Overruled**. Costs for deposition transcripts are authorized by § 1920(2), and the Kaijet Defendants do not dispute that the transcripts were necessarily obtained for use in this case. Costs are taxed as to Kaijet US's Rule 30(b)(6) witness at $2,931.58, and as to Liu at $2,842.25.[24]

4. <u>Airfare for Daniel Chin and Valerie Chong</u>: **Sustained**. Costs for witness travel are authorized by § 1920(3) and defined in 28 U.S.C. § 1821. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987). Under § 1821, a witness who travels by common carrier must "utilize a common carrier at the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1). Here, Sanho's witnesses did not do so, instead flying first class on airline tickets booked two days before a trial that had been scheduled months in advance. Because Sanho did not propose an alternative method for calculating travel

---

[21] ECF 640, at 1.

[22] ECF 664, at 29.

[23] ECF 664-4, at 2; ECF 664-5, at 9.

[24] This figure does not include costs for Liu's video deposition.

expenses, the Court adopts the Kaijet Defendants' proposed figure of $134 per witness.[25]

5. <u>Printing of defense trial exhibits</u>: **Overruled**. These costs are authorized by § 1920(3) and are taxed at $1,680.00.

6. <u>Video recordings of depositions</u>: **Overruled**. The longstanding rule in the Eleventh Circuit is that "when a party notices a deposition to be recorded . . . by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed."[26] *Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 465 (11th Cir. 1996). Because the Kaijet Defendants did not object to video recording at the time the depositions at issue were noticed, and because the Court finds that Sanho could have reasonably believed that video recordings were necessary for use in this case, Sanho is awarded the costs of conducting video depositions.

7. <u>Deposition exhibits</u>: **Overruled**. These costs are authorized by § 1920(2) and are taxed at $492.55. *See Kadribasic v. Wal-Mart Inc.*, No. 1:19-cv-03498-SDG, 2022 WL 898346, at *5 (N.D. Ga. Mar. 28, 2022).

8. <u>Deposition web-conferencing</u>: **Overruled**. These costs are authorized by § 1920(2). *See id.*

9. <u>Apportionment of costs</u>: **Overruled**. The Kaijet Defendants argue that the Court should reduce Sanho's award of costs, given that Sanho did not prevail on all of its claims. This case is poorly suited for apportionment, however, because—as the Kaijet Defendants themselves admit—there is "likely no feasible way to determine which costs are associated" with which claim.[27] Nor is the full amount of costs so disproportionate to Sanho's overall recovery that apportionment is needed to prevent injustice. *See TransWorld Food Serv., LLC v. Nationwide Mut. Ins. Co.*, No. 1:19-CV-3772-

---

[25] ECF 664, at 21.

[26] The Court does not read § 1920(c) as forbidding courts from awarding costs for both printed and electronically recorded transcripts, where the manner in which the deposition is to be recorded is properly noticed.

[27] ECF 652-1, at 30.

SDG, 2023 WL 2733378, at *3 (N.D. Ga. Mar. 30, 2023) (exercising discretion to reduce costs that "total[ed] nearly half of Plaintiffs' entire award").

10.     All other objections: **Sustained**. The Kaijet Defendants' objections to which Sanho has not specifically responded are sustained.

As a result, Sanho is awarded costs totaling $52,316.05, as follows:

| Cost | Award |
|---|---:|
| **Fees of the Clerk** | **$400.00** |
| **Summons and Subpoena Fees** | **$415.65** |
| - Kaijet Defendants | $147.65 |
| - Lyu | $65.00 |
| - Kaijet US IP Counsel | $65.00 |
| - Kaijet Taiwan IP Counsel | $65.00 |
| - Miller | $65.00 |
| - Star View | $8.00 |
| **Transcripts** | **$42,780.00** |
| - Miller | $1,170.20 |
| - Kaijet US 30(b)(6) | $2,931.58 |
| - Akins | $1,458.25 |
| - Bressler | $1,152.40 |
| - Cenatempo | $952.20 |
| - Chin | $2,362.40 |
| - Chong | $718.83 |
| - Baker | $1,197.60 |
| - Franzon | $951.40 |
| - Liu | $4,364.75 |
| - Chow | $1,302.00 |
| - Pellegrino | $786.25 |
| - Nguyen | $776.30 |
| - Liao | $811.00 |
| - Lyu | $2,059.95 |
| - Sarabia | $2,552.29 |
| - Shankwiler | $1,204.20 |
| - Tai | $2,057.25 |
| - Star View 30(b)(6) | $2,865.55 |
| - Kaijet Taiwan 30(b)(6) | $4,118.00 |
| - Trial | $6,987.60 |

| Cost | Award |
|---|---|
| **Witnesses** | **$1,070.00** |
| - Chin | $708.00 |
| - Chong | $362.00 |
| **Copies** | **$2,400.40** |
| **Interpreters** | **$5,250.00** |
| **Total** | **$52,316.05** |

## VI. CONCLUSION

Defendants' renewed motions for judgment as a matter of law [ECFs 641, 646] and for a new trial [ECFs 643, 645] are **DENIED**. Kaijet Taiwan's motion to dismiss [ECF 641] is **DENIED**. The parties' motions for attorneys' fees [ECFs 637, 638] are **DENIED**. The Kaijet Defendants' motion to deny or reduce Sanho's bill of costs [ECF 652] is **GRANTED IN PART** and **DENIED IN PART**. Sanho is **AWARDED** $52,316.05 in costs.

**SO ORDERED** this 1st day of July, 2025.

Steven D. Grimberg
United States District Judge